WILLIAM A. ISAACSON *(pro hac vice)*
(wisaacson@paulweiss.com)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7313; Fax: (202) 379-4937

STACEY K. GRIGSBY *(pro hac vice)*
(sgrigsby@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5238

DONALD J. CAMPBELL #1216
(djc@cwlawlv.com)
J. COLBY WILLIAMS #5549
(jcw@cwlawlv.com)
CAMPBELL & WILLIAMS
710 South 7th Street, Las Vegas, NV 89101
Telephone: (702) 382-5222; Fax: (702) 382-0540

*Attorneys for Defendants Zuffa, LLC*
*and Endeavor Group Holdings, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON and CLARENCE DOLLAWAY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ZUFFA, LLC, (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc., <br><br> Defendants. | Case No.: 2:21-cv-01189-RFB-BNW <br><br> **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT** <br><br> **(Oral Argument Requested)** |

## I.      INTRODUCTION

Plaintiffs do not dispute that they essentially lifted their entire Complaint from the seven-year-old complaint in *Le v. Zuffa*.  Notwithstanding their failure to allege any new anticompetitive acts, they added Endeavor as a defendant.  Plaintiffs' strategy raises serious statute of limitations issues.  The years since *Le* are critical to assessing the validity of Plaintiffs' claim under Section 2, yet Plaintiffs' Complaint pretends as if competition has remained stuck in time.  The different (and later) statutory period applicable in this action also means that Plaintiffs cannot solely rely on Zuffa's conduct from the prior case; they needed to allege new and independent anticompetitive acts in *this* statutory period that caused new injury for their claims to be timely.

Endeavor's addition as a defendant is nothing more than a ploy by Plaintiffs to pull in a parent company.  There are *no* factual allegations of monopolization by Endeavor; the Complaint alleges that Zuffa is the monopolist.  That is fatal to Plaintiffs' ability to keep Endeavor in this case because, as a matter of law, a Section 2 claim against a parent company (Endeavor) cannot rest solely upon the alleged monopoly or monopsony power of a subsidiary (Zuffa).  Plaintiffs' opposition confirms that they have no claim against Endeavor, and this Court should therefore dismiss Endeavor.

As for Zuffa, all Plaintiffs can muster to support their untimely Complaint is to argue that "UFC has engaged and continues to engage in the alleged scheme" described in the 2014 *Le* lawsuit.  But the Complaint is bare when it comes to factual allegations of Zuffa's conduct from 2014 onward.  That is fatal to Plaintiffs' claims because, to proceed to discovery, they must plead plausible allegations of ongoing anticompetitive conduct from 2017 to the present, not in years prior.  The only factual allegations of Zuffa's conduct and its alleged monopoly or monopsony power are identical to those in the *Le* complaint.  Those allegations include Zuffa's acquisitions and alleged threats from 2006 to 2011—*six years* or more before the beginning of the statutory period here—and are thus outside the limitations period.  Other than conclusory labels that Zuffa's conduct first challenged in 2014 in the *Le* action "continued," Plaintiffs plead no facts suggesting that Zuffa engaged in the requisite new, overt acts within the statutory period.  Claims against Zuffa must therefore be dismissed.

## II.    ARGUMENT

### A.    The Claims Against Endeavor Must Be Dismissed.

As set forth in Defendants' Motion, absent separate allegations of anticompetitive conduct, Endeavor cannot, as a matter of law, be held liable for the Section 2 claim brought against its subsidiary. Mot. 6-7.  In a monopolization (or monopsonization) case, the alleged monopolist (or monopsonist) can, by definition, only be a *single* entity.  *Rebel Oil, Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1443 (9th Cir. 1995) ("To pose a threat of monopolization, one firm *alone* must have the power to control market output and exclude competition"); *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1076 (N.D. Cal. 2014) ("A monopoly, by definition, consists of a single firm, and both monopolization and attempted monopolization are single-firm violations").  "A claim under § 2 requires the power to be in one entity rather than shared among multiple entities." *Lenhoff Enter., Inc. v. United Talent Agency, Inc.*, No. CV-15-01086-BRO-FFMx, 2015 WL 7008185, at *3 (C.D. Cal. Sept. 18, 2015) (citing authorities).  The narrow circumstances where a parent *can* be liable for the acts of its subsidiary (in contrast with liability for its own conduct) occurs by means of alter ego and agency principles.  *See* Mot. 6.

Plaintiffs' theory here (as in *Le*) is that *Zuffa*—not Endeavor—is the monopolist (or monopsonist).  Given that "[a]ntitrust doctrine has yet to adopt the theory that a shared monopoly is a violation of the antitrust laws," any claim that Endeavor is also a monopolist merely because it is the parent of an alleged monopolist, without more, must fail.  *In re Coordinated Pretrial Procs. in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 481, 485 (C.D. Cal. 1991); *see also Drinkwine v. Federated Publ'ns, Inc.*, 780 F.2d 735, 741 (9th Cir. 1985) (affirming dismissal of monopolization claim against parent company because it "cannot be sued directly simply because it owns [subsidiary's] stock").  At best, Plaintiffs' conclusory allegations regarding Endeavor suggest that Endeavor somehow contributed to the growth of Zuffa's alleged monopoly power.  But even such allegations, were they not conclusory, would be insufficient to state a monopolization claim against Endeavor, because it is not the claimed monopolist here (Zuffa is) and shared monopoly theories are not cognizable.  Stripped of its conclusory allegations, Plaintiffs' Complaint is merely an attempt to attach liability to a parent company for the alleged conduct of

- 2 -

its subsidiary, absent any alleged unlawful conduct on its own.  This has long been rejected.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *In re Optical Disk Drive Antitrust Litig.*, No. 10-MD-02143-RS, 2017 WL 11513316, at *7 (N.D. Cal. Dec. 18, 2017) ("[A] mere relationship between a parent corporation or shareholder and its subsidiary may not establish antitrust liability."); *Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*, No. C 93-20079, 1995 WL 32864, at *4 (N.D. Cal. Jan. 23, 1995).

Nothing in the Complaint alleges any anticompetitive conduct by Endeavor.  Plaintiffs' contention that Endeavor played a role in the "scheme" is a far cry from actually alleging that Endeavor negotiated any alleged anticompetitive terms in UFC's contracts.  Instead, Plaintiffs state, in conclusory fashion, that Endeavor "negotiates" and "executes" sponsorship and pay-per-view (PPV) agreements (in other words, *not* the supposedly anticompetitive contracts UFC executed with athletes).  Opp. 21.  There are no allegations regarding what Endeavor's role was—if any—in imposing any unlawful restrictions or in engaging in any of the alleged anticompetitive conduct.  There are also no allegations as to how Endeavor played any role in driving PPV prices to allegedly supracompetitive levels.[1]  Nor are there any allegations that, following its acquisition of Zuffa, Endeavor asserted any degree of control over Zuffa's business.[2]

In an attempt to manufacture a Section 2 claim against Endeavor, Plaintiffs rely heavily (and wrongly) on the Ninth Circuit's decision in *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623 (9th Cir. 2018).  But *Arandell* is of no help to Plaintiffs.  First and foremost, it involved claims of an anticompetitive *conspiracy* involving multiple firms, whereas Plaintiffs are asserting a Section 2 claim and not any sort of conspiracy.[3]  *Arandell* applied the longstanding

---

[1] Charging a high price does not violate Section 2.  *Pac. Bell Tel. Co. v. linkLine Commc'ns., Inc.*, 555 U.S. 438, 447-48 (2009); *Verizon Commc'ns. Inc. v. Law Off. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (holding that the "charging of monopoly prices" is not unlawful without "an element of anticompetitive *conduct*").  Moreover, Plaintiffs do not (and cannot) claim antitrust injury from higher PPV prices.

[2] Plaintiffs' suggestion that Endeavor's involvement "runs even deeper" given "Endeavor's own SEC filings" supposedly claiming "participation in the UFC's day-to-day business activities," Opp. 22, is also unavailing.  Endeavor's S-1 statement expressly included subsidiaries in all references to Endeavor throughout the document.  It provides zero basis for Plaintiffs' allegations regarding Endeavor.

[3] Plaintiff's alternative argument that Endeavor would be liable for conspiring with Zuffa if they are not treated as a single entity, Opp. 22-23 n.28, was not properly pled.

proposition, espoused in *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984), that a parent and its wholly owned subsidiary are not independent economic actors capable of conspiring to restrain trade under Section 1.   More specifically, the *Arandell* court applied *Copperweld*'s reasoning to hold that the plaintiff, a wholly owned subsidiary, could be liable under Wisconsin's analogous Section 1 statute for "engag[ing] in coordinated activity [with a third party] in furtherance of the anticompetitive scheme of its parent [company]." 900 F.3d at 632.  Because the plaintiff subsidiary and its parent were a "single 'economic unit'" under *Copperweld*, the plaintiff could not disclaim liability for its "critical contributions to [a price-fixing] conspiracy"—where its acts "were the immediate cause of Plaintiffs' injuries"—by claiming it lacked "knowledge" of the conspiracy when the parent entity did possess such knowledge and intent.  *Id.* at 632-35.

Contrary to what Plaintiffs suggest, *Arandell* does not support liability for a parent on the basis of the acts of its subsidiary; rather, the Ninth Circuit held the opposite—that the subsidiary "may be held liable *for its own acts* in purposeful and knowing furtherance of the alleged inter-enterprise price-fixing conspiracy." *Id.* at 634 (emphasis added); *see also id.* at 633 ("As with any antitrust defendant, Plaintiffs must put forth evidence that [the subsidiary] engaged in anticompetitive conduct.").  Consistent with the longstanding precedent that a parent cannot be liable for the anticompetitive conduct of its subsidiary, *Arandell* reiterated that *Copperweld* "does not supply a theory of unbounded vicarious liability for the acts of legally distinct entities," and that "a subsidiary shares the purposes and intentions of the parent when it acts in coordination with the parent, but *Copperweld* does not support holding a subsidiary liable for the parent's independent conduct." *Id.* at 633.  Nothing in *Arandell* supports Plaintiffs' theory that a parent company may be held liable under Section 2 merely because one of its subsidiaries is an alleged monopolist or monopsonist.

The Tenth Circuit's decision in *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017), is also of no help.  First, the Ninth Circuit has not adopted *Lenox*'s reasoning.  Second, *Lenox* made clear that, under *Copperweld*, a parent and a wholly owned subsidiary are incapable of conspiring under Section 2, just as they are incapable of conspiring under Section 1.  847 F.3d at 1234.  Third, it held that when evaluating non-conspiracy claims

- 4 -

under Section 2 against related defendants as a single enterprise, the plaintiff "was still required to come forward with evidence that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise." *Id.* at 1237.[4]   The Tenth Circuit made clear that its opinion should not "be read to suggest that a corporation can be held liable under § 2 for the anticompetitive conduct of one or more related entities, *merely by virtue of its place in the same corporate family.*" *Id.* (emphasis added).[5]

That is precisely what Plaintiffs are trying to do with respect to Endeavor.  Plaintiffs have not  alleged (nor could they) that Endeavor has any market power in the markets alleged in the Complaint.  Nor is this a case involving a group of affiliated companies that together allegedly hold market power.   The Complaint alleges that *Zuffa*—not Endeavor—is the alleged monopolist/monopsonist.  Compl. ¶ 54 ("At all relevant times, the UFC had monopoly power in the Relevant Output Market"); *see id.* ¶¶ 55, 56, 57, 60, 77, 79, 80, 112, 131.  And Plaintiffs could not in good faith allege that Endeavor is a competitor in the markets alleged in the Complaint because Endeavor does not contract with MMA athletes.  The inclusion of Endeavor in this lawsuit is nothing more than an attempt to hold a parent company liable for the alleged anticompetitive conduct of its subsidiary on the basis of ownership alone, and must, therefore, be dismissed.

**B.    Plaintiffs' Antitrust Claims, Which Are Identical to the 2014 Claims in *Le*, Are Time-Barred.**

Because they copied the factual allegations from the 2014 *Le* complaint, the *Johnson* Plaintiffs ignored their burden to allege the requisite overt acts ***within*** the statutory period to render their Complaint timely.   Absent an exception, the four-year statute of limitations on private antitrust actions accrues at the time of the alleged anticompetitive conduct.  *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1065 (N.D. Cal. 2016) (citing *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202-03 (9th Cir. 2014)).   The continuing violation doctrine only saves

---

[4] The *Lenox* court left for another day guidelines of exactly what a plaintiff would need to plead or prove to show that each defendant entity independently participated in the enterprise's scheme.  Thus that case provides no guidance for this Court on that point.

[5] Plaintiffs' other cases are distinguishable. *Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-01667, 2020 WL 7029148, at *10 (D. Nev. Nov. 30, 2020) (*Lenox* applied to a case involving an individual who wholly owned and managed a company as its alter ego); *Hightower v. Celestron Acquisition, LLC*, No. 5:20-cv-03639, 2021 WL 2224148 at *2, 11 (N.D. Cal. Jun. 2, 2021) (claims involved a "single, integrated enterprise" that "did not distinguish among entities").

otherwise untimely claims where the complaint alleges "new and independent act[s]" taken within the relevant period that cause new, accruing injury. *Samsung*, 747 F.3d at 1202 (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)); *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 999 (N.D. Cal. 2015) (dismissing complaint lacking allegations of "new or independent actions" taken within the relevant time period).

> 1. Conclusory Allegations that the Same Conduct Alleged in the 2014 *Le* Complaint Is "Continuing" Cannot Restart the Statute of Limitations.

Plaintiffs admit that the conduct by Zuffa described in this Complaint is "intertwined strands" of the "same scheme" that formed the basis of the 2014 *Le* complaint. Opp. 1-2. As Defendants explained, Mot. 13-15, that "scheme" allegedly involves UFC's acquisitions from 2006 to 2011, Compl. ¶¶ 108-09, 111-14, and the alleged "use of threats, intimidation, and retaliation" from 2006 to 2011, *id.* ¶¶ 104-07. That conduct thus occurred (and ended) well before 2017—the start of the relevant statutory period here. Plaintiffs attempt to stretch this alleged "scheme" into 2017 and beyond with conclusory claims that everything in the *Le* complaint is continuing. But one cannot avail itself of the continuing violations exception to revive otherwise stale claims merely by asserting that old conduct is "continuing." Doing so would render the statute of limitations meaningless. The law requires that "a plaintiff must allege that a defendant completed an overt act during the limitations period." *Samsung*, 747 F.3d at 1202. The same factual allegations that formed the basis of a complaint brought in 2014, without any new allegations of an overt act ***during*** this limitations period, cannot form the basis of a complaint brought in 2021. *See Bay Area Surgical*, 166 F. Supp. 3d at 999.

Plaintiffs point to paragraphs 100, 101, 107, and 110 of their Complaint as supposedly adequate allegations that the "three strands" of the same "scheme" alleged in the *Le* complaint "continue to the present." Opp. 3. But those paragraphs do not allege *facts* that Zuffa engaged in any new overt act in 2017 or after, as is necessary to trigger the continuing violations exception:

- Paragraph 100 alleges that UFC classifies its athletes as independent contractors, uses standard-form agreements, and supposedly "dominates" Plaintiffs' claimed relevant markets. Compl. ¶ 100.

- Paragraph 101 alleges, in conclusory fashion, that "UFC's standard agreements with Fighters have contained, during the 2000s and continuing into the Class Period" certain restrictive provisions. *Id.* ¶101. It does not allege any new conduct by UFC.

- Paragraph 107 contains only the conclusory allegation that UFC "continues to punish Fighters." *Id.* ¶ 107.

- Paragraph 110 repeats an allegation from the *Le* complaint and tacks on the conclusory assertion that UFC's anticompetitive campaign, which allegedly occurred between 2008 and 2011, is "continuing into the present." *Id.* ¶ 110.

These are all pro forma recitations lifted from the 2014 *Le* complaint that do not describe any new and independent acts by Zuffa that occurred since 2014. Adorning them with conclusory phrases that purported conduct is "continuing to the present" does not satisfy the need to allege timely overt acts. *See Azam v. Wells Fargo Bank, N.A.*, 677 F. App'x 326, 327 (9th Cir. 2017) (conclusory allegations insufficient to state a continuing violation); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 995 (N.D. Cal. 2020) (no continuing violation where complaint had "not plausibly alleged in a non-conclusory manner" "new and independent acts"); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 883 (N.D. Cal. 2015) (no continuing violation where complaint lacked details regarding specific conduct during the relevant period).

2.  Allegations About the Continued Effects of the Conduct Alleged in the 2014 *Le* Complaint Are Insufficient to Restart the Statute of Limitations.

Plaintiffs cannot rely on allegations that anticompetitive *effects* from pre-limitations conduct have continued through the present because Ninth Circuit law is clear that such allegations are insufficient to restart the statute of limitations. *See, e.g.*, *Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989) ("[T]he passive receipt of profits from an illegal contract by an antitrust defendant is not an overt act of enforcement which will restart the statute of limitations." (citing *Aurora Enters. v. Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir. 1982)). That is especially so here, where the competitive landscape has drastically changed. Plaintiffs' focus on "synergistic results" and alleged anticompetitive effects is unconvincing. If it were enough to plead acts outside the relevant period had a continued effect in the present, claims like those here would never be time-barred. The Ninth Circuit has expressly foreclosed the ability to circumvent the four-year limitations period in this way. *See Aurora*, 688 F.2d at 694; *Eichman*, 880 F.2d at 160.

3.  Plaintiffs' Challenges to UFC's Pre-Limitations Acquisitions Are Time-Barred and Must Be Dismissed.

Plaintiffs attempt to save their untimely allegations challenging UFC's 2006, 2007, and 2011 acquisitions by pointing to allegations about *other types* of anticompetitive conduct. Even if

the other alleged conduct was timely, Plaintiffs' position is flawed.  Courts routinely recognize that applying the continuing violation doctrine to mergers "makes no sense." *Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 271 (8th Cir. 2004); *see also Reveal Chat*, 471 F. Supp. 3d at 994-95 (The "continuing violation doctrine does not make sense in the context of anticompetitive mergers"); Mot. 13-14 (discussing authorities).  "It cannot be the case that if a merger leads to monopoly power then anything anticompetitive that the newfound monopolist does is a 'continuing violation' that began with the merger, allowing the merger to be challenged indefinitely under [S]ection 2 of the Sherman Act.  If that were true, the statute of limitations . . . would be written out of the law." *Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, No. CV 15-9814 DSF(AGRx), 2016 WL 3457177, at *1 (C.D. Cal. May 11, 2016) (footnote omitted).  Consistent with the principle of repose underlying the antitrust statute of limitations, allegedly anticompetitive conduct unrelated to a merger or acquisition cannot revive an untimely challenge to that merger or acquisition. *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 598-99 (6th Cir. 2014) (concluding a price increase following a merger or acquisition did not extend the statute of limitations).  Nor is it enough to claim that the acquisitions caused UFC's supposed monopoly power.  If such allegations were sufficient, acquisitions would be subject to the threat of antitrust challenge in perpetuity.

That is precisely what Plaintiffs attempt to do by roping UFC's acquisitions from a decade (and more) ago into this Complaint.  Plaintiffs challenge UFC's acquisition of World Extreme Cagefighting (in 2006), World Fighting Alliance (in 2006), Pride Fighting Championship (in 2007), and Strikeforce (in 2011).  Compl. ¶¶ 109-13.  Saying that these acquisitions are part of one strand of a "scheme" that supposedly continues into the present is not enough to render them timely.[6]  The only on-point case Plaintiffs cite supports dismissal.  UFC's acquisitions are no

---

[6] Plaintiffs are wrong that *Samsung* and *Oliver* so hold.  Neither decision addressed whether "intertwined" but distinct types of anticompetitive acts committed within the statutory period could render all prior, time-barred acts timely. *See Samsung*, 747 F.3d at 1203-04 (defendants' adoption of a patent license was a "new and independent act" that caused "new and accumulating injury" because the prior license did not cover technology or "future technological developments") (citations omitted); *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1087 (9th Cir. 2014) (plaintiffs' federal injunctive relief claim, premised on the same alleged conduct in *Samsung*, was not time-barred by the doctrine of laches).

different than those dismissed in *In re Google Digital Advert. Antitrust Litig.*, No. 20-CV-03556-BLF, 2021 WL 2021990, at *4 (N.D. Cal. May 13, 2021). There, the plaintiffs alleged that Google violated Section 2 of the Sherman Act by five distinct types of anticompetitive conduct, including the acquisition of its rivals in the digital advertising industry. *Id.* The court dismissed the acquisition-of-rival allegations because the complaint included no allegation that the over four-year-old acquisitions were completed in concert with other anticompetitive acts taken during the statutory period. Similarly, this untimely challenge to UFC's acquisitions must be dismissed.

### C. Plaintiffs' Allegations of Monopolization and Monopsonization Are Conclusory and Outdated.

It was incumbent upon Plaintiffs to allege facts of the market realities within the relevant timeframe that support the plausibility of their case. Plaintiffs instead lifted allegations from a 2014 complaint  without any acknowledgement of the current market realities. But this Court cannot adjudge the plausibility of Plaintiffs' claims in such a historical vacuum. The Court ***must*** rely on its judicial experience and common sense in order to determine whether or not the complaint satisfies the plausibility standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (determining a claim's plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

Plaintiffs' Complaint completely ignores the indisputable market realities from 2017 to the present that implicate the plausibility of its monopolization or monopsonization claim. There are no factual allegations to support the conclusory assertions that UFC's alleged monopoly or monopsony power remains unconstrained starting in 2017 onward, despite the emergence and growth of myriad viable competitors, many of which have recently obtained lucrative broadcasting deals and garnered hundreds of millions of dollars in financing. Plaintiffs seemingly admit to the presence of new entrants, but their Complaint and opposition ignore the impact of new entrants or growing competition in the proposed market. This is fatal.

Plaintiffs are wrong to suggest that Defendants are asking the Court to "resolve disputed factual matters contrary to Plaintiffs' allegations." Opp. 2. The issue is not whether the Court should weigh a factual dispute about whether the market conditions support Plaintiffs' Section 2 claim; rather, it is whether Plaintiffs can even state a plausible Section 2 claim when its Complaint

- 9 -

contains absolutely *no treatment* of the market conditions that correspond with the relevant timeframe of the alleged monopoly.  The current, indisputable conditions in the MMA market (such as public reports of new funding at competing promoters or well-documented movements of athletes to other promotions) reflect that the MMA industry has continued to change over the last seven years, while Plaintiffs' allegations of monopoly and monopsony power remain stuck in time. Plaintiffs simply cannot allege a plausible antitrust complaint in 2021 based on a description of competition from 2014 and before.

For example, Plaintiffs downplay PFL's emergence as a major MMA promotion in 2017, despite its massive financing success and ongoing growth.  Opp. 12.  Plaintiffs also attempt to paint ONE Championship as a failing promotion, *id.* at 12-13, even though it is the largest sports promotion in Asia and is currently making a bold expansion into the North American market. Plaintiffs' Complaint says nothing about the presence of PFL or ONE as it relates to their proposed relevant market.  Similarly, Plaintiffs' conclusory assertion that, despite Bellator's significant increase in revenue since 2014, it is still not a "competitive threat to the UFC," *id.* at 13, is unsupported by any factual allegations in the Complaint.  *See Reveal Chat*, 471 F. Supp. 3d at 1003 (dismissing complaint where allegations supporting monopolization claim were merely conclusory and lacked factual support); *Ryan*, 147 F. Supp. 3d at 883 (dismissing Sherman Act claims where complaint lacked dates or details describing the defendant's specific conduct during the relevant period).  In reality, judicially noticeable facts and market developments since 2017 do not suggest the presence of new anticompetitive conduct supporting this case.  To the contrary, they not only suggest that the *Johnson* Complaint should be dismissed, but they also call into question the foundation of the *Le* complaint.  There, plaintiffs alleged that new market entrants could not emerge, existing competitors could not grow, and athletes could not freely move among MMA promoters—yet the exact opposite has happened in the years covered by the *Johnson Complaint.*  And, at the same time, athlete wages continue to rise with UFC leading the way in athlete pay.  Plaintiffs have done nothing to suggest that allegations about a supposed UFC monopoly or monopsony in 2014 are equally plausible in 2017 and beyond.

### D. Plaintiffs Fail to Allege a Plausible Product Market.

Plaintiffs originally defined the input market as the market for "Professional MMA Fighter services," Compl. ¶¶ 3, 63, 77, 144, and the output market as the market for promoting "live Professional MMA bouts," *id.* ¶¶ 42, 144; and alleged that Zuffa's foreclosure of "top-ranked" athletes from competitor promotions depressed athlete compensation as part of an anticompetitive "scheme," *id.* ¶¶ 60, 62, 97-98. Yet, in opposition, Plaintiffs attempt to rewrite their Complaint, claiming that the input market is not MMA athletes, *see* Opp. 7, and that they need not define "top-ranked" or consider unsigned athletes as reasonable substitutes for any "Professional MMA Fighter," *id.* at 5-6. These shifting explanations cannot cure their improper market definitions.

#### 1. Plaintiffs' Proposed Input Market Is Improper.

Plaintiffs argue that if "Elite Professional MMA Fighters" survived a motion to dismiss in *Le*, then the broader market definition of "Professional MMA Fighters" must pass muster.[7] *Id.* But courts dismiss complaints that omit substitutes from the alleged market. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120-24 (9th Cir. 2018). Plaintiffs fail to explain how an input market limited to *current* professional MMA athletes—excluding prospective MMA athletes—is consistent with the Ninth Circuit's decision in *Hicks*. *See* Mot. 17-20. Plaintiffs' argument that prospective MMA athletes are irrelevant to the input market because they are not yet paid and therefore have "no bearing on the economics of the market," Opp. 7, ignores the value of a prospective professional MMA athlete as a replacement for athletes allegedly foreclosed by Zuffa's actions. A market without these athletes, who can serve as substitutes for "Professional MMA Fighters," is defective.

In addition, Plaintiffs repeatedly allege that Defendants engaged in conduct to prevent other promotions from becoming suitable alternatives for MMA athletes by foreclosing access to "top-ranked" athletes. Compl. ¶¶ 1, 9, 45, 60, 62, 75, 78, 79, 82, 96-98, 103, 119, 131, 136, 145, 147. In opposition, however, Plaintiffs argue that the "top-ranked" distinction is irrelevant for market definition because Plaintiffs never defined "top-ranked" athletes as a submarket. Opp. 6. That cannot be the case, given Plaintiffs' concession that the "top-ranked" distinction is relevant "for

---

[7] Plaintiffs are wrong that Zuffa conceded to a "Professional MMA Fighters" input market. Opp. 5; *see, e.g., Le* (N.D. Cal.), ECF No. 64 at 17 ("Plaintiffs do not define the contours of these markets, particularly in what distinguishes an 'Elite' fighter from other Professional MMA fighters, in any understandable, much less a legally cognizable, way").

assessing market power and foreclosure," *i.e.*, for defining where and how competition is affected. *Id.*; *see FTC v. Qualcomm, Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (defining the relevant market as "the area of effective competition") (citation omitted). Failing to properly define this relevant submarket is grounds for dismissal. *See Hicks*, 897 F.3d at 1121; Mot. 20-22.[8]

### 2. Plaintiffs' Relevant Output Market Excludes Reasonable Substitutes.

"[L]ive Professional MMA bouts" cannot be the relevant output market because it does not include other sports and entertainment that reasonably compete for the attention of MMA consumers. Mot. 22-23. Plaintiffs concede that a limited number of fans may switch to other sports, but provide no factual allegations for why only a negligible number would do so. Opp. 9. Nor do they explain why the Court should ignore ample case law recognizing that "a professional sport competes with other sports and other forms of entertainment." *Ky. Speedway v. NASCAR*, 588 F.3d 908, 917 (6th Cir. 2009) (internal citations omitted).

Further, the *Le* evidence that Plaintiffs claim is direct evidence of monopoly power in the output market is conclusory. For example, the alleged increased prices for live tickets and PPV since 2005 and 2001, Compl. ¶ 139, can be explained by a combination of lawful factors including inflation, the growing popularity of MMA, and improved quality of UFC's product. These allegations do not support a claim of monopoly power in the output market. Mot. 22-23.[9]

### III. CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

DATED: November 18, 2021

By ___ */s/ Stacey K. Grigsby* ___

---

[8] This Court need not accept the "top-ranked" market because it accepted an "Elite" athletes market in *Le*. *See* Opp. 6. The *Le* plaintiffs effectively dropped the term "Elite" after their witnesses could not agree on what constituted an "Elite" athlete. *Le*, ECF No. 574 at 17.

[9] If the Court denies this motion, Defendants will move separately to consolidate this action with *Le* under Rule 42(a). Plaintiffs—who are represented by the same attorneys as those in *Le*— have conceded that the two cases "involve virtually identical factual allegations related to the same series of events, facts, and circumstances, and assert identical claims for relief." ECF No. 9. Should this Court deny the instant motion, complete resolution of *Le* will require this Court to consider additional evidence and testimony over the last four years, which is the evidence that this Court would also need to adjudicate *Johnson*. Therefore, Defendants oppose Plaintiffs' suggestion that the cases proceed separately for trial and will outline a proposed schedule in Defendants' forthcoming motion for consolidation, if necessary.

William A. Isaacson *(pro hac vice)*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW Washington, DC 20006

Stacey K. Grigsby *(pro hac vice)*
COVINGTON & BURLING, LLP
850 10th Street, NW Washington, DC 20001

Donald J. Campbell (Nev. Bar No. 1216)
J. Colby Williams (Nev. Bar No. 5549)
CAMPBELL & WILLIAMS
710 South 7th Street Las Vegas, NV 89101

*Attorneys for Defendants Zuffa, LLC and Endeavor*
*Group Holdings, Inc.*

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing **Defendants' Reply to Plaintiffs'**
**Opposition to Defendants' Motion to Dismiss the Class Action Complaint** was served on the
18th day of November, 2021 via the Court's CM/ECF electronic filing system addressed to all
parties on the e-service list.

By    */s/ Stacey K. Grigsby*
       Stacey K. Grigsby