Don Springmeyer (Nevada Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Fl.
Las Vegas, Nevada 89169
Tel: (702) 385-6000
Fax: (702) 385-6001
Email: dspringmeyer@kempjones.com

*Counsel for Plaintiffs Kajan Johnson and Clarence Dollaway and the Proposed Class*

William A. Isaacson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7313
Email: wisaacson@paulweiss.com

Stacey K. Grigsby (*pro hac vice*)
COVINGTON & BURLING LLP
850 10th Street, NW
Washington, DC 20001
Telephone: (202) 662-5238
Email: sgrigsby@cov.com

Donald J. Campbell (Nev. Bar No. 1216)
J. Colby Williams (Nev. Bar No. 5549)
CAMPBELL & WILLIAMS
710 South 7th Street
Las Vegas, NV 89101
Telephone: (702) 382-5222
Email: djc@cwlawlv.com
Email: jcw@cwlawlv.com

*Attorneys for Defendants Zuffa, LLC and Endeavor Group Holdings, Inc.*

[Additional counsel listed on signature page]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| Kajan Johnson and Clarence Dollaway, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**[PROPOSED] DISCOVERY PLAN AND SCHEDULING ORDER** |

Under Fed. R. Civ. P. 26(f) and Local Rule 26-1, counsel for Plaintiffs[1] and Defendants[2] conducted a discovery planning conference on August 2, 2021, and submit the following [Proposed] Discovery Plan and Scheduling Order.

## I. Statement of the Case

### A. Plaintiffs' Statement

Plaintiffs filed this action because the UFC continues to violate the antitrust laws—including by imposing new long-term, exclusive contracts on fighters—enabling it to continue to harm fighters by paying them less than half the compensation they would receive in a competitive market. This litigation is based on a continuation of the same course of conduct at issue in *Le v. Zuffa, LLC*, No. 15-cv-1045 (D. Nev.) (the "*Le* Action"). The purpose of this action is to enable fighters to recover damages for the harms Defendants' continuing unlawful conduct has caused and continues to cause after the period for which plaintiffs seek damages in the *Le* Action.

Thus, as the Court is aware, this matter does not arise on a blank slate. Rather, it follows nearly seven years of hard-fought litigation. In the *Le* Action, the Court stated in a December 10, 2020 status conference that it would certify a "bout class" consisting of all Fighters who appeared in a UFC-promoted bout from December 16, 2010 to June 30, 2017. Like the *Le* plaintiffs, Plaintiffs here are Professional MMA Fighters who competed in live professional MMA bouts promoted by the UFC and received artificially suppressed compensation for their services. The key difference between the proposed class here and the "bout class" in the *Le* Action is the time period: Plaintiffs here bring this antitrust class action on behalf of a similarly situated proposed class of Fighters who competed in live professional MMA bouts promoted by the UFC from July 1, 2017 to the present, thus setting the class period in this case to begin the day after the class period in the *Le* Action ends. *Compare* Complaint in *Johnson v. Zuffa, LLC* ("Compl."), ECF No. 1, ¶34 (June 23, 2021), *with* Notice of Motion and Motion for Class Certification, *Le v. Zuffa, LLC*, ECF No. 518, at i (Feb. 16, 2018); *see also* Compl. ¶1 ("Because the class period ultimately proposed by the plaintiffs in *Le* closed on June 30, 2017,

---

[1] "Plaintiffs" refers to Kajan Johnson and Clarence Dollaway.
[2] "Defendants" refers to Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.

Plaintiffs Johnson and Dollaway bring this case on behalf of those like themselves who fought a bout promoted by the UFC from July 1, 2017 to the present.").

The substantive claims and underlying facts in this case significantly overlap with those in *Le*. Plaintiffs here allege that conduct challenged in the *Le* Action has continued through the present, and thus that all UFC Fighters who participated in UFC-promoted bouts since June 30, 2017 have suffered antitrust injury. Specifically, like the plaintiffs in the *Le* Action, Plaintiffs here allege that Zuffa illegally acquired, enhanced, and maintained dominant positions in the markets for (a) promoting live professional MMA bouts, and (b) Professional MMA Fighter services (the "Relevant Markets") through a continuing anticompetitive Scheme. *See, e.g.*, Compl. ¶¶1, 3-5, 95-129. In particular, Plaintiffs allege that the Scheme continues to involve Zuffa's locking the vast majority of top Professional MMA Fighters into long-term, exclusive contracts so as to foreclose actual and potential rival MMA promoters from accessing a critical mass of top Fighters as would be needed to compete with the UFC. *Id.* ¶¶95-103, 130-33. Further, like the *Le* plaintiffs, Plaintiffs here allege that the UFC's conduct, including its exclusive control over the vast majority of top Fighters, its acquisitions of potential rival MMA promoters, and its threats, intimidation and retaliation against Fighters who (a) challenge the UFC's positions or authority, (b) work with other MMA promoters, or (c) otherwise speak out against the UFC, causes Professional MMA Fighters to continue to enter into these long-term, exclusive contracts and perpetuate Defendants' market power. *See, e.g., id.* ¶¶95-114.

Plaintiffs further allege, as in *Le*, that through the alleged Scheme, Zuffa has artificially suppressed compensation to MMA Fighters. *See, e.g., id.* ¶¶134-40. By foreclosing actual and potential rival promoters from access to a critical mass of top Fighters, rivals' ability to compete with Zuffa has been impaired, enhancing Zuffa's monopsony power, enabling it to continue to pay artificially low compensation to its Fighters, and continuing to cause damages to Plaintiffs and the proposed class as a result. *Id.*

The other significant difference between this *Johnson* Action and the *Le* Action is that Plaintiffs in *Johnson* also allege that Zuffa, LLC's parent, Endeavor Group Holdings, Inc. ("Endeavor"), directly participated in the alleged anticompetitive conduct. As the Court is aware from the *Le* Action, Endeavor (under its former name WME-IMG), acquired Zuffa about two years after the *Le* Action was filed, *i.e.*,

in late 2016. The Complaint here alleges, *inter alia*, that Endeavor directly participated in the UFC's day-to-day business activities and anticompetitive conduct, promoted live professional MMA bouts and events featuring the Professional MMA Fighters in the proposed class, and negotiated pay-per-view, media, and sponsorship agreements on behalf of the UFC and its Fighters. *See, e.g.*, Compl. ¶¶29, 42-49, 95-96.

### B. Defendants' Statement

The purpose of the *Johnson* lawsuit is to tack on an additional class period to recover damages stemming from the same alleged conduct in the *Le* action. *Cung Le, et al. v. Zuffa, LLC d/b/a Ultimate Fighting Championship and UFC*, No. 2:15-cv-01045-RFB-BNW (D. Nev.) ("*Le*"). The *Johnson* Complaint is clear on this point: "Because the class period ultimately proposed by the plaintiffs in *Le* closed on June 30, 2017, Plaintiffs Johnson and Dollaway bring this case on behalf of those like themselves who fought a bout promoted by the UFC from July 1, 2017 to the present." Compl. ¶ 1. This follow-on action also seeks to add Zuffa's parent, Endeavor Group Holdings, Inc. ("Endeavor"), as a defendant, on the basis that Endeavor acquired a majority stake (50.1%) in Zuffa in 2016. *Id.* ¶ 29. As set forth in Defendants' pending motion to dismiss, the *Johnson* Complaint does not allege any new facts about Zuffa's purported anticompetitive conduct since the *Le* complaint was filed in 2014—including during the putative class period from July 1, 2017 to the present. Nor does the Complaint contain any allegations related to the conduct of Endeavor, Zuffa's parent company.

The *Johnson* Plaintiffs' reliance on stale allegations from the *Le* action presents substantive problems—including the antitrust statute of limitations and laches barring Plaintiffs' injunctive relief claim and the required dismissal of Endeavor—all of which have been presented in Defendants' pending motion to dismiss. From a case management perspective, there is no justification for Plaintiffs' request that this case proceed separately from the *Le* case. Indeed, Plaintiffs concede that both actions are "substantially similar" (*see, e.g.*, above at 1). The two actions should be consolidated and discovery should proceed promptly in this action, as well as to bring the discovery in *Le* current. If this action survives the motion to dismiss, both actions should jointly proceed to summary judgment and, if necessary, a single trial.

This Court is familiar with Plaintiffs' antitrust claims, given that they allege the identical so-

called anticompetitive "scheme" to monopsonize and monopolize the markets alleged in *Le*. According to Plaintiffs, the first part of the "scheme" is Zuffa's use of exclusive agreements with athletes, which include options to extend or toll the length of the agreements. Compl. ¶ 97. The second part of the alleged "scheme" is coercion. Specifically, Plaintiffs allege that Zuffa threatened to punish or ban athletes who contracted with, or considered contracting with, competing promoters. *Id.* ¶¶ 104-07. The third part is acquisitions. Referencing acquisitions from 2006 to 2011, Plaintiffs allege that Zuffa acquired other MMA promoters "to eliminate competing titles from the marketplace." *Id.* ¶146; *see also id.* ¶¶ 11-14, 108-09.

The Complaint here restates the history of MMA up until 2014—as did the *Le* complaint when it was filed. Discovery in *Le* ran until June 30, 2017. But even if the claims here are just an attempt to recover damages for a class period that begins at the end of the class period in *Le*, Plaintiffs must prove ongoing anticompetitive conduct throughout the class period alleged *in this action*. The time period from July 1, 2017 to present, and the additional years of change in the market dynamics, also bear directly on the validity of Plaintiffs' monopsony claims in both the *Le* and *Johnson* actions—including the continued proliferation of numerous competitors to the UFC, many backed by well-funded individuals or corporations with established television distribution and competing to attract the same athletes. *Id.* ¶¶ 121, 123 (Legacy Fighting Alliance); *id.* ¶ 122 (Titan Fighting Championship); *id.* ¶ 124 (Invicta Fighting Championship); *id.* ¶¶ 115, 126 (Bellator). In the *Johnson* Complaint, Plaintiffs also ignore the existence of several other large MMA promoters, including Professional Fighters League ("PFL"), Combate Global, and ONE Championship.

To prevail in *Le* or *Johnson*, Plaintiffs will not be able to merely rest on proving the alleged anticompetitive conduct from 2017 and before; at any trial, Zuffa will show that the alleged markets were always competitive, and available for entry to new competitors, by the evidence of continued and growing competition ongoing in 2021 (and 2022). To obtain injunctive relief in *Le* and to obtain any relief in *Johnson*, Plaintiffs will need to establish that the conduct alleged in *Le* actually continued into the relevant period alleged here. It is not clear that Plaintiffs have come to terms with this burden— they have not even alleged any ongoing anticompetitive conduct starting after July 1, 2017 for the *Johnson* Complaint to survive as explained in Defendants' pending motion to dismiss.

## II. Outstanding Motions

On September 10, 2021, Defendants filed a motion to dismiss Plaintiffs' Complaint. ECF No. 17. Plaintiffs filed their opposition brief on October 22, 2021. Defendants filed a reply on November 18, 2021.

## III. Schedule and Process for Coordination of this Action with *Le v. Zuffa, LLC*

### A. Plaintiffs' Statement

Plaintiffs believe that the *Johnson* Action should not interfere with the *Le* Action proceeding through class certification, summary judgment, and a damages trial. The *Le* Action—which was filed in December 2014 and includes class members who suffered injury beginning in 2010—is substantially advanced: pleadings issues have long since been resolved; fact and expert discovery has been completed; and the parties are awaiting the Court's class certification order. The *Le* class members should have their opportunity to obtain redress as soon as is practicable. Moreover, there are many overlapping factual and legal issues as between the *Le* and *Johnson* actions that would benefit from completing *Le* before proceeding to discovery in *Johnson*. Accordingly, Plaintiffs in both actions believe that the most efficient way to proceed would be for the jury trial in the *Le* Action to proceed with respect to liability and damages. Following that trial, Plaintiffs in *Johnson* propose that limited discovery be conducted, to be followed by class certification and summary judgment, and a jury trial with respect to liability and damages. Plaintiffs in both the *Le* and *Johnson* Actions propose holding the *Le* plaintiffs' request for injunctive relief in abeyance to be decided by the Court together with the *Johnson* plaintiffs' request for injunctive relief following the *Johnson* Action's trial on liability and damages.

In short, Plaintiffs request that the Court hold two trials:

(1) An initial jury trial in the *Le* Action to resolve liability and damages; and

(2) A subsequent trial at which a jury would resolve liability (consistent with preclusion doctrine based on the *Le* Action) and damages in the *Johnson* Action, and then the Court (again, consistent with preclusion doctrine) would decide equitable relief in both the *Le* and *Johnson* Actions.

If adopted, this proposal will produce significant efficiencies and case management benefits. A

jury would first make findings on liability and damages in the *Le* Action. The Court and the parties would then assess the status of the proceedings and focus on additional limited discovery, which would involve some assessment of current market circumstances. With respect to the *Johnson* Action, Plaintiffs would require some limited discovery (discussed below), including limited fact and expert discovery to address Endeavor issues, damages, and to address the events and circumstances following the June 30, 2017 end of the *Le* Action's bout class period. That limited discovery would bring damages through the present—for the *Johnson* Action—and assess the appropriateness of injunctive relief in the two cases. The Court could then decide class certification and summary judgment in the *Johnson* Action—likely on an expedited basis, given that the Court could likely rely on its legal and factual determinations in the *Le* Action, consistent with principles of issue and claim preclusion and the Seventh Amendment. *See, e.g.*, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 333-34 (1979); *Dairy Queen v. Wood*, 369 U.S. 469 (1962); *Beacon Theatres v. Westover*, 359 U.S. 500, 504 (1959); *Brady v. Daly*, 175 U.S. 148 (1899).

  The Court would then hold a second trial. It would address liability and damages in the *Johnson* Action—to the extent those issues remain open after the jury's findings in the *Le* Action. *See Parklane Hosiery*, 439 U.S. at 333-34. The second trial would also allow the Court to rule on equitable relief in both the *Le* and *Johnson* Actions, guided by the juries' findings in the *Le* and *Johnson* Actions. *Beacon Theatres*, 359 U.S. at 504.

  This process would be highly efficient. Resolving the *Le* Action would greatly narrow the issues in and expedite the resolution of the *Johnson* Action, and the juries' findings in both the *Le* and *Johnson* Actions would narrow the issues in and expedite this Court's resolution of equitable relief.

  To maximize the efficiency benefits, Plaintiffs propose staying the proceedings in this *Johnson* Action, once the motions to dismiss are resolved, until after the *Le* jury trial relating to liability and damages. While Plaintiffs recognize that stays are typically disfavored because they prevent timely resolution of disputes, this case presents unique circumstances, following as it does on the heels of a substantially related case. As set forth above, structuring proceedings as proposed would allow the *Le* plaintiffs and members of the bout class in *Le* to proceed forthwith to a trial on liability and damages; would permit additional discovery in the *Johnson* case to benefit from the outcome of the *Le* trial; and

would allow discovery relating to current market conditions that would guide the Court's decision on the injunctive relief claims in both cases to occur simultaneously.

As the *Le* Action's proceedings have demonstrated, there can be a significant gap between the close of discovery and the beginning of trial. That potential gap opens the door for Defendants to claim that the competitive landscape has changed significantly, and thus additional discovery would be needed pre-trial. In fact, not only have Defendants made such an argument in their Motion to Dismiss in the *Johnson* Action, they also have made clear in meet and confers that they assert additional discovery is necessary before resolution of injunctive relief issues in the *Le* Action as well. As a result, Plaintiffs' proposal to delay discovery concerning these post-June 2017 issues relevant to damages only in the *Johnson* Action and to injunctive relief in both actions, minimizes the prejudice to the *Le* plaintiffs and *Le* class members and enhances efficiencies across both cases for the Court and parties, including by avoiding duplication and delay. It should also be noted that the outcome of the *Le* trial may well provide insights that would allow the parties to settle the *Johnson* case, rendering further discovery and trial in *Johnson* unnecessary. Discovery should proceed only once more. It should not occur in the *Johnson* Action now only to take place yet again after the jury trial in the *Le* Action, as Defendants would surely request.

Thus, in short, Plaintiffs propose the following sequencing for coordinating the *Le* and *Johnson* Actions:

1. A Stay of Discovery in *Johnson* pending the completion of the damages trial in *Le*. Other than ruling on the motion to dismiss pending in *Johnson*, the Court should stay the action until the damages trial in *Le* concludes.

2. A Jury Trial Determining Liability and Damages in *Le*. *Le* should proceed through class certification, summary judgment, and a jury trial on liability and damages as expeditiously as possible and without additional discovery.

3. Lifting the Stay of Discovery in *Johnson* and Proceeding Through Pre-Trial Motions. Plaintiffs propose that: (a) the full discovery record in *Le*, including expert reports, depositions, and hearing testimony should be usable for all purposes in *Johnson* as if taken in *Johnson*; and (b) limited and clearly defined additional discovery as to liability and damages in *Johnson* and

injunctive relief in both *Le* and *Johnson* would proceed. Following that discovery, the *Johnson* Action should proceed through class certification and summary judgment.

4. <u>A Trial in which a Jury Would Determine Liability and Damages in *Johnson* and the Court Would Resolve Equitable Relief in *Le* and *Johnson*</u>. Following the additional discovery period and pre-trial motions in *Johnson*, *Johnson* should proceed through a jury trial on liability and damages. The Court should then proceed with determining the appropriateness of injunctive relief for the claims in both *Le* and *Johnson* in a manner consistent with preclusion doctrine and the Seventh Amendment right to trial by jury.

**B. Defendants' Statement**

Plaintiffs do not dispute that the *Johnson* lawsuit involves essentially the same factual allegations as the prior *Le* action. Nor do they dispute that the two cases involve similar legal theories. Plaintiffs admit that the purpose of this case is to add an additional damages class stemming from the same alleged conduct in *Le*. *See* Compl. ¶ 1. They are represented by the exact same attorneys who filed the *Le* complaint and concede that the two cases "involve virtually identical factual allegations related to the same series of events, facts, and circumstances, and assert identical claims for relief." Plaintiffs' Notice of Related Cases, ECF No. 9 (July 2, 2021). They even contend that the cases are so similar that "the full discovery record in *Le*, including expert reports, depositions, and hearing testimony should be usable for all purposes in *Johnson* as if taken in *Johnson*."

Despite this overlap, Plaintiffs' attorneys propose that these two cases proceed separately, with two separate trials and another equitable relief (bench trial) proceeding. There is nothing logical or efficient about this proposal. Plaintiffs' proposal would require this Court to sever the issues in the *Le* case into two proceedings: one on merits and damages, and one on injunctive relief. The latter would take place *after* the separate trial on liability and damages in *Johnson*. Plaintiffs further propose that discovery in this case would be stayed rather than advanced and joined with updated discovery in *Le*. The parties here would then have to wait for the Court to issue a class certification order in *Le*, for the resolution of any interlocutory appeal, and then, if the case survives summary judgment, for a trial in *Le*. In turn, the parties in *Le* would have to wait years for this lawsuit to begin discovery and then

proceed to trial before any resolution of the injunctive relief claims.

Rule 42 contemplates situations like this one, where two separation actions involve common facts and legal issues, and provides a court discretion to "consolidate" or "join for hearing or trial" any actions that "involve a common question of law or fact" to promote judicial economy. Fed. R. Civ. P. 42. If this action survives Defendants' pending motion to dismiss, Defendants will accordingly move to consolidate the *Le* and *Johnson* actions and the Court should consolidate this action with *Le* under Rule 42(a) and set a discovery schedule to allow for discovery, applicable in both actions, to update the record for the events following mid-2017 and to converge both cases onto the same track for summary judgment and trial. *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 90-92 (S.D.N.Y. 2007) ("Differences in . . . the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation").

Holding two separate liability and damages trials and delaying the resolution of *Le*'s injunctive relief claims makes no sense—both substantively and procedurally. Given the interrelated allegations in the *Le* action and its current procedural posture, the best way to proceed is a schedule that would allow the *Johnson* case to catch up to *Le*, which would avoid duplicative discovery and ensure that both cases—and this dispute as a whole—moves efficiently toward a resolution. There is sufficient time for discovery in *Johnson* to be completed and coordinated with *Le*. The parties are awaiting an order on class certification in *Le* (which would be appealed), updated discovery is required in *Le*, and the Court also will need to set a schedule to re-brief *Daubert* motions and summary judgment in that case. Moreover, it is also fundamentally unfair to structure the case in a way that permits Plaintiffs' multiple bites at the apple.

To the extent that Plaintiffs are suggesting that liability issues decided in their favor in a *Le* trial would be carried forward with preclusive effect here, they are wrong. Jury verdict forms do not ordinarily provide extensive findings of fact to permit the application of issue preclusion. *See generally* American Bar Association Antitrust Section, Model Jury Instructions in Civil Antitrust Cases (A.B.A., Chicago, Ill., 2016). A jury verdict for the plaintiffs for the period 2014 to mid-2017 in the *Le* action, even with the introduction of evidence in that trial from the period after mid-2017 to show the

growth of competition and ease of entry, would not be sufficient for issue preclusion with respect to liability (both the actual conduct and antitrust injury and impact) for the *Johnson* action and the period mid-2017 and after. To recover damages for the class period alleged in this action, Plaintiffs will need to prove ongoing anticompetitive conduct and antitrust injury and impact in subsequent periods, as well as that whatever anticompetitive conduct alleged in *Le* actually continued into the relevant statutory period here. *See Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014). Practically, for contracts entered into during the alleged class period in this case, proving any anticompetitive effects and injury to Plaintiffs here as a result of those contracts would require looking to the competitive market dynamics in *this* class period—something that cannot be carried over from evidence developed in the *Le* case. *Cf. Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1979) (to constitute a continuing violation, a defendant's act within the limitations period must be "a new and independent act that is not merely a reaffirmation of a previous act" *and must* "inflict new and accumulating injury on the plaintiff"). Moreover, Plaintiffs' acknowledgement that the injunctive relief sought in *Le* (and therefore complete resolution of *Le*) would require additional evidence and testimony over the last four years from this case only favors consolidation and a single trial in both actions.[3] Plaintiffs' proposal that the injunctive relief phase of both cases be relegated to a third proceeding, after two separate trials, only creates further complication and delay.

The more efficient path is to consolidate the two actions and conduct one trial. In particular, the Court should allow discovery in this case to commence, as to the parties involved in both the *Le* and *Johnson* actions, so that the parties may conduct the necessary discovery to update the record since mid-2017 and account for the additional class period the Plaintiffs are trying to add to the *Le* action. To avoid unnecessary and wasteful efforts by the parties, discovery into newly-added defendant Endeavor should be stayed until the Court has rendered a decision on Defendants' motion to dismiss. At the close of supplemental discovery, the *Le* and *Johnson* actions should then proceed, with summary judgment

---

[3] For the reasons explained in Zuffa's motion opposing class certification in *Le*, Defendants do not concede that the named plaintiffs in either action have standing to seek injunctive relief. *See* Opposition to Motion for Class Certification, *Le v. Zuffa, LLC*, ECF No. 540 at 40 (Apr. 6, 2018) ("Plaintiffs do not have standing to bring a Rule 23(b)(2) claim for injunctive relief because they are former UFC athletes.").

motions for both and a single trial. There is nothing economical about trying two "substantially similar" cases separately. Far from "produc[ing] significant efficiencies and case management benefits," Plaintiffs' plan would needlessly require this Court to hold multiple trials on the same alleged "scheme" supposedly causing ongoing injury beginning with the *Le* class period and continuing unto the *Johnson* class period, where Defendants' proposal—consolidation—would require only one.

## IV.   Discovery Topics

With respect to the *Johnson* Action, the parties agree that additional discovery will be necessary to supplement the evidentiary record from the *Le* Action. The Parties believe the following additional discovery is appropriate for this matter.

**Discovery to be sought by Plaintiffs (Plaintiffs' Statement).** After the *Le* liability and damages trial, Plaintiffs will seek limited additional discovery from both Defendants and third parties, including, *inter alia*:

- updated structured data on fighter compensation from both Defendants and third-party MMA promoters bringing their prior productions current to the present;
- document productions from a limited set of Defendants' custodians and third parties to update discovery from the *Le* Action;
- depositions of certain of Defendants' corporate representatives and certain employees, including depositions of a limited number of Endeavor witnesses, and limited further depositions of certain individuals previously deposed in the *Le* Action regarding facts and issues occurring since late 2016 when Endeavor's predecessor acquired Zuffa; and
- depositions of a limited number of current third-party promoters (either corporate representatives or key individuals, depending on the promoter) to address current market conditions and other issues regarding the injunctive relief claims.

**Discovery to be sought by Defendants (Defendants' Statement).** While discovery has not commenced, Defendants submit that discovery should commence in order to allow the parties to conduct the additional discovery necessary in these actions on an expedited basis so that this action can be consolidated with the *Le* action and set for a single trial.

If the cases are not consolidated, Plaintiffs' blanket proposal that "the full discovery record in

*Le*, including expert reports, depositions, and hearing testimony should be **'usable for all purposes in *Johnson* as if taken in *Johnson*'**" is flawed because such evidence, limited to the relevant class period in *Le*, should not, with a blanket ruling, be permitted for use to prove liability for alleged antitrust conduct in the different statutory period here. If the cases are to be tried separately, for example, then any potential efficiencies of relying on discovery from the *Le* action must be weighed against the burden of adding all of that material to the record wholesale, as well as potential prejudice to Defendants. Regardless, Plaintiffs' proposal to treat the discovery taken in *Le* as taken here only further supports consolidation and a single trial for both putative classes.

In the event that some of Plaintiffs' claims survive the pending motion, the Court's decision will inform the scope and focus of discovery in the *Johnson* action. If the Court does not grant Defendants' motion to dismiss the *Johnson* action in its entirety, Defendants will seek discovery from the *new* named plaintiffs and third parties, potentially including, *inter alia*:

- document productions and data from members of the putative class relating to their claims, including contracts, financial information, and communications with and about Zuffa;
- depositions of current third-party competing promoters, including corporate representatives and key individuals;
- document productions and data from third-party managers and agents related to their clients' contracts, negotiating history, and financial information;
- document productions and data from third-party competing promoters related to their contracts venues, sponsors, broadcasters and merchandisers, financial information, and business and strategic plans;
- document productions and data from third-party broadcasters relating to contracts with competing promoters and strategic plans;
- interrogatories and requests for admission to be served on each individual Plaintiff in the putative class;
- depositions of members of the putative class, third-party managers, and agents;
- depositions of individuals deposed in the *Le* action regarding facts and issues occurring during the relevant time period (July 1, 2017 to the present);

- supplemental document productions and data from custodians in the *Le* action regarding facts and issues occurring during the relevant time period (July 1, 2017 to the present).

Respectfully submitted,

January 14, 2022

| | |
|---|---|
| BERGER MONTAGUE PC | COVINGTON & BURLING LLP |
| By: */s/ Eric L. Cramer* | By: */s/ Stacey K. Grigsby* |
| Eric L Cramer (*pro hac vice*)<br>Michael Dell'Angelo (*pro hac vice*)<br>Patrick F. Madden (*pro hac vice*)<br>Mark R. Suter (*pro hac vice*)<br>BERGER MONTAGUE PC<br>1818 Market St., Suite 3600<br>Philadelphia, PA 19103<br>Telephone: +1 (215) 875-3000<br>Email: ecramer@bm.net<br>Email: mdellangelo@bm.net<br>Email: pmadden@bm.net<br>Email: msuter@bm.net | William A. Isaacson (*pro hac vice*)<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>2001 K Street, NW<br>Washington, DC 20006<br>Telephone: (202) 223-7313<br>Email: wisaacson@paulweiss.com<br><br>Stacey K. Grigsby (*pro hac vice*)<br>COVINGTON & BURLING LLP<br>850 10th Street, NW<br>Washington, DC 20001<br>Telephone: (202) 662-5238<br>Email: sgrigsby@cov.com |
| Richard A. Koffman (*pro hac vice*)<br>Benjamin Brown (*pro hac vice*)<br>Daniel Silverman (*pro hac vice* forthcoming)<br>COHEN MILSTEIN SELLERS & TOLL, PLLC<br>1100 New York Ave., N.W., Suite 500 East, Tower<br>Washington, DC 20005<br>Telephone: +1 (202) 408-4600<br>Facsimile: +1 (202) 408-4699<br>Email: rkoffman@cohenmilstein.com<br>Email: bbrown@cohenmilstein.com<br>Email: dsilverman@cohenmilstein.com | Donald J. Campbell (Nev. Bar No. 1216)<br>J. Colby Williams (Nev. Bar No. 5549)<br>CAMPBELL & WILLIAMS<br>710 South 7th Street<br>Las Vegas, NV 89101<br>Telephone: (702) 382-5222<br>Email: djc@cwlawlv.com<br>Email: jcw@cwlawlv.com<br><br>*Attorneys for Defendants Zuffa, LLC and Endeavor Group Holdings, Inc.* |
| Joseph R. Saveri (*pro hac vice*)<br>Kevin E. Rayhill (*pro hac vice*)<br>JOSEPH SAVERI LAW FIRM, INC.<br>601 California St., Suite 1000<br>San Francisco, CA 94108<br>Telephone: +1 (415) 500-6800<br>Facsimile: +1 (415) 395-9940<br>Email: jsaveri@saverilawfirm.com<br>Email: krayhill@saverilawfirm.com | |

Don Springmeyer (Bar No. 1021)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: + 1 (702) 385-6000
Facsimile: + 1 (702) 385-6001
Email:  dspringmeyer@kempjones.com

Robert C. Maysey (*pro hac vice*)
Jerome K. Elwell (*pro hac vice*)
WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: +1 (602) 264-7101
Facsimile: +1 (602) 234-0419
Email: rmaysey@warnerangle.com
Email: jelwell@warnerangle.com

*Attorneys for Plaintiffs Kajan Johnson and Clarence Dollaway*