Eric L. Cramer (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone:     (215) 875-3000
Facsimile:     (215) 875-4604
ecramer@bm.net

Joseph R. Saveri (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1200
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
jsaveri@saverilawfirm.com

Richard A. Koffman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL,
PLLC
1100 New York Ave., N.W., Suite 500, East
Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile:  (202) 408 4699
rkoffman@cohenmilstein.com

*Counsel and Attorneys for All Individual and
Representative Plaintiffs*

William A. Isaacson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone:     (202) 223-7313
Facsimile:     (202) 379-4937
Email: wisaacson@paulweiss.com

Donald J. Campbell
J Colby Williams
CAMPBELL & WILLIAMS
710 South Seventh Street, Ste. A
Las Vegas, NV 89101
Telephone:     (702) 382-5222
Facsimile:     (702) 382-0540
Email: djc@cwlawlv.com
Email: jcw@cwlawlv.com

*Attorney for Defendants Zuffa, LLC and
Endeavor Group Holdings, Inc.*

[Additional Counsel Listed on Signature
Page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **KAJAN JOHNSON and CLARENCE DOLLAWAY, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**ZUFFA, LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.,**<br><br>**Defendants.** | **No.: 2:21-cv-01189-RFB-BNW**<br><br><br>**[PROPOSED] JOINT DISCOVERY PLAN AND SCHEDULING ORDER** |

Pursuant to the Court's August 23, 2023 Minute Order (ECF No. 73), Plaintiffs Kajan Johnson, and Clarence Dollaway ("Plaintiffs") and Defendants Zuffa, LLC ("Zuffa") and Endeavor Group Holdings, Inc. ("Endeavor," together with Zuffa: "Defendants," and collectively with Plaintiffs: the "Parties"), jointly submit this [Proposed] Joint Discovery Plan And Scheduling Order.

Plaintiffs filed the *Johnson* Action on June 23, 2021. ECF No. 1.[1] On September 30, 2022, the Court denied Defendants' Motion to Dismiss and denied the parties' Proposed Discovery Plan and Scheduling Order, both without prejudice. ECF No. 68. The Court also stayed the case pending the issuance of its class certification order in *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev.) ("*Le*"). *Id.* At the September 30, 2020 status conference, the Court further noted that "there's enough there for the [*Johnson*] case to proceed, at least in terms of a motion to dismiss," but as to Endeavor, in particular, the Court stated it would allow certain discovery prior to ruling with prejudice on Endeavor's motion to dismiss. ECF No. 69 at 25. During the August 21, 2023 status conference, the Court lifted the discovery stay in *Johnson* and asked the Parties to submit a Joint Discovery Plan and Scheduling Order no later than September 20, 2023. ECF No. 73; Hrg. Tr. at 31, *Le*, ECF No. 846. The Court also stated, "if there is no resolution from the standpoint of the class being decertified or that decision being overturned or the Court grants summary judgment, this case in *Le* will be tried next year." Hrg. Tr. at 9, *Le*, ECF No. 846. The Court then offered a "potential trial date" of March or April 2024. *Id.* at 16. The Court set a deadline of October 24, 2023, for Zuffa to file a motion to reopen discovery in *Le* and/or a motion for summary judgment for the Bout Class regarding damages and liability.[2] Minute Order, *Le*, ECF No. 847. Subsequently, the Court tentatively set the *Le* case for trial on April 8, 2024 via

---

[1] Unless otherwise stated, citations herein refer to this action, *Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-1189 (D. Nev.).

[2] The Court stated that a class seeking injunctive relief "hasn't been certified" in *Le.*  Hrg. Tr. at 32, *Le*, ECF No. 846.

email pending the outcome and timing of Zuffa's Fed. R. Civ. P. 23(f) petition for appeal to the Ninth Circuit. *See* Email from Darci Reich-Smith to Counsel for the Parties (Sept. 5, 2023).

## I.    Outstanding Motions and Proposed Stipulations (Joint Statement)

There are no currently outstanding motions. However, Defendants contend that Endeavor's motion to dismiss has not been fully resolved and the legal basis for allowing Endeavor to remain as a defendant, despite the Court's acknowledgment of "the lack of sufficient specific allegations against Endeavor," Hrg. Tr. at 23, ECF No. 69, requires clarification by the Court before discovery may proceed against Endeavor. Plaintiffs disagree with Defendants' position. In Plaintiffs' view, the Court's Order denying Defendants' motion to dismiss without prejudice (1) considered Defendants' arguments concerning Endeavor, and nonetheless (2) denied the motion to dismiss in full. *See* ECF 69 at 26-29. Further, the Court lifted the discovery stay in *Johnson* on August 21, 2023. Hrg. Tr. at 31, *Le*, ECF No. 846. Thus, even if Defendants had a pending motion to dismiss, it would not create a barrier to proceeding with discovery.[3] Plaintiffs therefore believe that discovery should proceed against both Defendants as the Parties discussed with the Court at the September 30, 2022 hearing.

There are currently no pending proposed stipulations. However, as noted in Part III, *infra*, the Parties are negotiating whether certain stipulations from the *Le* matter should be ordered to apply with equal force to this *Johnson* matter, potentially with minor modifications.

---

[3] *Tradebay, LLC v. eBay, Inc.,* 278 F.R.D. 597, 601 (D. Nev. 2011) ("The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending."); *see also Turner Broadcasting System, Inc. v. Tracinda Corp.*, 175 F.R.D. 554 (D. Nev. 1997) ("A district court may … stay discovery when it is *convinced* that the plaintiff will be unable to state a claim for relief." (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (emphasis in *Turner*)); *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989) ("Some extraordinary justification [for a stay] must be shown to satisfy the good cause requirement[.]").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    Statement of the Case

### A.  Plaintiffs' Statement

#### 1.  Description of Plaintiffs' Claims

Plaintiffs in *Johnson*, two Mixed Martial Arts ("MMA") Fighters, allege that Defendants acquired, maintained, and enhanced monopsony power in the market for professional MMA fighters in violation of Section 2 of the Sherman Act.[4]  *See* Antitrust Class Action Complaint ("Compl."), ECF No. 1, (June 6, 2023); *see also* Opp. to Mot. to Dismiss, ECF No. 41 (Oct. 22, 2021). Plaintiffs allege that Defendants achieved and maintained their monopsony through an anticompetitive "Scheme" that included acquiring its main competitors for promoting live professional MMA events and then foreclosing all other promoters' access to a critical mass of top MMA fighters through exclusive contracts and predatory coercive conduct. *Id*. Plaintiffs allege further that as the dominant player in promoting live professional MMA events dating back to 2005 and continuing through the present, Zuffa has been able to coerce Fighters to accept Zuffa's restrictive, exclusive contracts and below-market compensation. *See, e.g.*, Compl. ¶¶3-6, 8-10, 18, 20, 55-57, 78-80, 90, 95-140. As in *Le*, the Johnson Plaintiffs assert that Defendants' exclusive contracts continue to include provisions and clauses that render Fighters like Plaintiffs and those in the proposed Class, "essentially stuck with UFC for the life of their careers." Slip Op., *Le v. Zuffa LLC*, No. 15-1045, ECF No. 839 at 43 (D. Nev. Aug. 9, 2023) ("*Le* Class Certification Order"); *see also, e.g.*, Compl. ¶101.

---

[4] Below, Defendants misstate the allegations of the Complaint, asserting that Plaintiffs allege that Zuffa is "responsible for building 'the most popular and fastest growing spectator sport in the U.S. and North America.'" *See infra* (citing Compl., ECF No. 1 ¶83). Not so. The Complaint, in fact, does not allege that Zuffa built anything. The Complaint alleges that Zuffa artificially suppressed compensation to fighters and reduced output of professional MMA bouts, the opposite of being responsible for building the sport. *E.g.*, Compl. ¶95. In any event, it is fighters that caused the sport to be the "most popular and fastest growing spectator sport in the U.S. and North America." Compl. ¶83; *see also id.* ¶4 (MMA promoters "can attract a significant live or Pay-Per-View audience based on the public notoriety of the Professional MMA Fighters scheduled to appear….").

Plaintiffs' claims in the instant *Johnson* action are substantively similar to the claims in the *Le* action, arising out of similar exclusive contracts and other exclusionary acts with similar exclusionary effects on rivals. Like in *Le*, the *Johnson* Plaintiffs allege that Defendants' Scheme artificially suppressed the pay of all UFC fighters. Notably, the *Johnson* Plaintiffs' claims have three important differences from those of the *Le* Plaintiffs:

**First**, the proposed Class in *Johnson* includes "All persons who compete in one or more live professional UFC-promoted MMA bouts taking place or broadcast in the United States during the period July 1, 2017 to the present." Compl. ¶34. The Class Period for the certified class in *Le* extends from December 16, 2010 through and including June 30, 2017. *See Le* Class Certification Order at 2. Plaintiffs in *Johnson* allege that the ongoing nature of the Scheme has enabled Defendants to continue to suppress compensation for the *Johnson* Plaintiffs and the proposed *Johnson* Class beyond the time period at issue in *Le* and through the present. *See, e.g.*, Compl. ¶¶3-6, 8-10, 18, 20, 55-57, 78-80, 90, 95-140. Discovery will be necessary to assess the three aspects of the alleged Scheme as it proceeded through the Class Period in *Johnson*, including the fighter contracts in place for the members of the proposed *Johnson* class, and other aspects of the alleged anticompetitive Scheme including mergers and coercion. *See, e.g.*, Compl. ¶¶95-140 (detailing the Scheme). Discovery will also be needed to assess and quantify the effects of the Scheme on competition, and the impact of the Scheme on the Class including quantifying damages to members of the Class.

Discovery in *Johnson* will address, in addition, the nature of any changes that Defendants may have made to key provisions of UFC Fighter contracts and the economic effects of Defendants' Scheme for purposes of liability and damages as well as injunctive relief. Notably, there also have been several changes in Zuffa's personnel since the June 2017 close of discovery in the *Le* matter. Many of the critical witnesses from the *Le* litigation (*e.g.*, Joe Silva (the UFC's former matchmaker), Lorenzo Fertitta (former Zuffa executive and owner), and Kirk Hendrick (former Chief Legal Officer)) no longer work for Zuffa, requiring discovery to be taken from their successors. Other Zuffa executives will need to have additional custodial document searches

and sit for new depositions to bring the record from the close of discovery in the *Le* matter through the present.[5]

**Second**, Defendants here include Endeavor, which purchased Zuffa in August 2016 for approximately $4 billion. Plaintiffs allege that Endeavor directly participated in the UFC's day-to-day business activities and anticompetitive conduct, promoted live professional MMA bouts and events featuring the professional MMA Fighters in the proposed Class, and negotiated pay-per-view, media, and sponsorship agreements on behalf of the UFC and its Fighters. *See, e.g.*, Compl. ¶¶29, 42-49, 95-96. Discovery will be necessary relating to the extent and nature of Endeavor's participation in, and alleged direction of, the anticompetitive Scheme.

**Third**, beginning in or around 2019, Plaintiffs understand that Defendants began adding arbitration clauses and/or class action bans to most or all of their Fighter contracts. While neither of the named Plaintiffs have arbitration clauses or class action bans in their contracts, many of the *Johnson* proposed Class members may have such clauses. Plaintiffs view these clauses in the UFC's exclusive Fighter contracts, to the extent enforceable under any circumstances, to be an exercise of Zuffa's monopsony power over Fighters gained through Defendants' continuing anticompetitive Scheme. Plaintiffs believe they are not enforceable. To the extent deemed enforceable, these arbitration clauses have the potential to have a significant effect on composition of the proposed Class and the progress of this case more generally. The Court has asked the Parties to provide a briefing schedule relating to any motions to compel arbitration that Defendants in *Johnson* intend to file. ECF No. 73. Plaintiffs believe, however, that because neither of the named Plaintiffs' contracts contain arbitration clauses or class action bans, it is possible that these issues would be more appropriately resolved in connection with class certification. In any event, before the it can be determined how best to bring these matters to the attention of the Court for resolution, further discovery relating to the extent and scope of these

---

[5] As noted *infra*, the Parties are discussing their respective positions concerning how discovery taken in *Le* and discovery taken in *Johnson* may be treated in the other case.

clauses, and Zuffa's intentions with regard to their enforcement in this case, will also be necessary.

### 2. Response to Defendants' statement concerning trials in the *Johnson* to the *Le* cases

Below, Defendants repeat their position that *Le* and *Johnson* should be tried together. Plaintiffs disagree.

**First**, as Plaintiffs understand it, the Court has already ruled that the *Le* and *Johnson* cases will be tried separately, with a *Le* trial on damages to go first. Hrg. Tr., *Le*, ECF 846 at 8 ("So let me just be clear from the outset. These cases will be tried separately. So *Le* will be tried *first on damages* and then *Johnson* will be tried later.") (emphasis added). This ruling is consistent with Plaintiffs' position, as set forth in Plaintiffs' Pre-Conference Report, *Le*, ECF No. 842, that the *Le* trial (currently scheduled for April 2024) should focus on liability and damages, deferring the *Le* Plaintiffs' injunctive relief claims to a later date (to be heard in conjunction with the *Johnson* matter). Given that the *Johnson* case will focus on present market conditions, as would the *Le* injunctive relief claims, it would be far more efficient and sensible to try the *Le* injunctive relief claims in conjunction with the later, separate, *Johnson* trial.

**Second**, Defendants' request for the Court to revisit its ruling that the *Le* and *Johnson* cases should be tried separately would impose many months if not many *years* of additional delay. Based on the agreed discovery schedule in *Johnson* below, trial could not occur until 2026 at the earliest. Defendants' suggestion that such delay is a "mere fraction" of the nine years that have already elapsed since filing the *Le* case disregards the Court's rulings on the matter and is insensitive to prejudice to the certified plaintiff class in *Le*. While Zuffa has continued to rake in monopoly profits, the fighters in the *Le* class—many of whom received poverty wages so that Zuffa could reap those profits—have patiently waited. Telling this fighter class that waiting years longer is a "mere fraction" of their existing wait is no solace to them. Of course, no one predicted

the once-in-a-century pandemic and its effect on the progression of this case, but that does not warrant additional delay; rather it counsels moving to trial as expeditiously as possible.

Further, the *Le* Plaintiffs and Class face a substantial disadvantage from delay at trial even now. Memories have faded with the passage of time. The prospect of trying a case to jury concerning events that took place over a decade ago is daunting. It would be more daunting still if the *Le* case was effectively stayed while the *Johnson* case went through two years or more of fact and expert discovery and other pretrial procedures (including class certification). These are the bases for the *Le* Plaintiffs' request for a trial in *Le* on liability and damages in the first half of 2024, and for an injunctive relief proceeding to occur after discovery in *Johnson* (which would bring in the record on present market conditions as required for injunctive relief proceedings).

Plaintiffs further incorporate their Pre-Conference Report, *Le*, ECF No. 842, in response to Defendants' rehashing of their rejected argument.

### B.  Defendants' Statement

According to the Complaint, Defendant Zuffa, LLC ("Zuffa"), is responsible for building "one of the most popular and fastest growing spectator sports in the U.S. and North America," mixed martial arts ("MMA"). Compl. ¶ 83. Before Ultimate Fighting Championship ("UFC") was founded in 1993, and later acquired by Zuffa in 2001, a professional MMA fighter had virtually no career prospects in this country—indeed, the sport was outlawed in many states. Even to this day, single-sport martial arts "are mainly amateur disciplines," and there is no "outlet for elite amateur wrestlers to continue their athletic careers as wrestlers professionally," the Complaint contends. *Id.* ¶¶ 46, 68. That is because it is incredibly difficult to build any new sports league, let alone build a new sport from scratch, like Zuffa did for MMA. Fans and sponsors only want to support quality bouts between fighters with notoriety and reputation, which requires extensive programming and marketing investments.[6] *Id.* ¶¶ 94, 96, 118. Zuffa made those

---

[6] Plaintiffs' argument above, *see supra* n.4, that instead fighter "notoriety" drove the growth of MMA in this country actually proves Defendants' point.  It is the promotor—in this case UFC— that makes the investment to create that "notoriety" and fan interest.

necessary investments to grow MMA and UFC from "fewer than 90,000 people purchas[ing] the UFC's first MMA PPV event" to "more than one million buyers" of UFC events in 2006—a growth of over 1,000% that Plaintiffs do not even attempt to allege that Zuffa achieved through anticompetitive means. *Id.* ¶ 94. Now, "approximately 1 billion TV households" view UFC content annually. *Id.* ¶ 29. Even the Complaint begrudgingly acknowledges that there are multiple outlets for MMA athletes to fight professionally (*e.g.*, Legacy Fighting Alliance, *id.* ¶¶ 121, 123, Titan Fighting Championship, *id.* ¶ 124, and Bellator, *id.* ¶¶ 115, 126). And the Complaint conspicuously ignores additional professional MMA promoters that are winning fans, fighters, and investment dollars, such as Professional Fighters League, Combate Global, and ONE Championship. From any objective view, the growth of MMA in this country is a story of expansion in opportunities for fighters, and UFC was the driving force behind that success.

Plaintiffs in the *Le* Action do not dispute the incredible growth of MMA in this country, but instead complain that Zuffa has not shared an adequate percentage of its earnings growth with fighters. Am. Compl. ¶¶ 90-91, *Le*, ECF No. 208 (Dec. 18, 2015) ("*Le* Compl."). Plaintiffs support their theory using an expert whose work another court in this Circuit recently found was "unreliable," supported by "no real analysis or data," and based on "wholly speculative assumptions" that were "unsuitable for admission at trial." *In re Google Play Store Antitrust Litig.*, 2023 WL 5532128, at *9-10 (N.D. Cal. Aug. 28, 2023) (excluding Plaintiffs' expert Hal Singer). So too here. Defendants' forthcoming motions for summary judgment and to exclude expert opinions will show that the *Le* Plaintiffs' claims should be thrown out before trial.

For the record, Zuffa maintains that there should be one trial of  *Le* and *Johnson*; the Complaint that Plaintiffs filed in the *Johnson* Action contains "virtually identical factual allegations related to the same series of events, facts, and circumstances" as the *Le* Action. Pls.' Notice of Related Action at 2, ECF No. 9 (July 2, 2021). The singular "purpose of this action," according to Plaintiffs, is to "recover damages for the harms Defendants' continuing unlawful conduct has caused . . . after the period for which plaintiffs seek damages in the *Le* Action." Pls.' Statement at 1, [Proposed] Discovery Plan and Scheduling Order ("Stipulated Discovery Plan"),

ECF No. 51 (Jan. 14, 2022).  The only supposed "unlawful conduct" that Plaintiffs identify as continuing in the post-July 2017 time period is Zuffa's continued use of the same "standard" contract provisions that the *Le* Plaintiffs challenged dating back to 2010.  *See* Compl. ¶ 101; *see also* Opp. to Mot. to Dismiss at 15-16, 18, ECF No. 41 (Oct. 22, 2021) (identifying these contracts as the only relevant "new, independent overt acts" in the *Johnson* time period); *see also supra* Part II.A.1, Pls.' Statement (not identifying any new challenged action except "similar exclusive contracts"). All of the Complaint's other allegations about supposedly unlawful acquisitions or "threats" are copied from the *Le* allegations about pre-2017 conduct. Thus, as Plaintiffs admit, "[t]he substantive claims and underlying facts in this case significantly overlap with those in *Le.*" Pls.' Statement at 2, Stipulated Discovery Plan; Pls.' Pre-Conference Statement at 6, ECF No. 71 (Aug. 17, 2023) ("[T]here is undoubtedly overlap between the two cases.").

Assuming separate trials as the Court has ordered, the Parties are currently negotiating a protocol concerning when discovery in *Le* and *Johnson* may be used in the respective cases.

## III.   Discovery From *Le* Case (Joint Statement)

The Parties are cognizant of the overlap between certain factual matters in the *Le* and *Johnson* cases. As a result, the Parties are meeting and conferring in an effort to come to agreement on whether discovery in each of the two actions should be treated as though taken in the other action, and if so, whether there should be any restrictions on such usage. Within the next thirty days, the Parties will either bring a stipulation to the Court for approval, or agree on an expedited briefing process to have the Court resolve the issue.

The Parties are currently negotiating whether the following orders from the *Le* case should be proposed for adoption and implementation in the *Johnson* case with or without certain minor modifications:   (a) the Stipulated Order Re: Discovery of Electronically Stored Information, *Le v. Zuffa, LLC*, No. 15-1045, ECF No. 160 (approved by Court Order at ECF No.

314); (b) the Stipulation and Protective Order, *Le v. Zuffa, LLC*, No. 15-1045, ECF No. 197;[7] and (c) the Stipulation and Order Regarding Expert Discovery, *Le v. Zuffa, LLC*, No. 15-1045, ECF No. 319. The Parties will present them to the Court in short order either as proposed stipulated orders or in the form of a motion or motions.

**IV.    Discovery Plan**

      **A.    Depositions (Joint Statement)**

      The Parties agree that a total of 50 depositions per side, including no more than 15 depositions per Defendant. i.e., Plaintiffs may take up to fifteen depositions of each Defendant's employees (including current and former employees). This proposal is comparable to the Court's Order in the *Le* matter, *see Le v. Zuffa, LLC*, No. 15-1045, ECF No. 207 (D. Nev. Dec. 8, 2015), but reflects 5 additional depositions to account for the additional defendant in this case. As in the *Le* matter, the proposal excludes custodian of records depositions as well as authentication depositions that are short in duration. *See id.*

      The Parties' proposal as to the number of depositions also excludes expert depositions. As to expert depositions, the Parties propose a limit of ten (10) hours of deposition time per expert that submits a report in *Johnson*, to the extent such expert submitted a report in *Le*. For any expert from whom a Party submits a report in *Johnson* on a significant economic issue relating to impact or damages, and that expert did not submit a report in *Le*, the opposing Party shall have fourteen (14) hours to depose such expert. To the extent a Party submits an expert report not contemplated by the schedule entered in this case, and such expert report is allowed by the Court, the opposing party shall have an opportunity to take an additional 7 hours of deposition time concerning the unscheduled report.

---

[7] Depending on the outcome of the Parties' ongoing meet and confer as to how the discovery record in one case be used in the other, the Orders in *Le* may need to be amended. The Parties will address these issues in any stipulation or briefing presented to the Court on the issue.

### B.     Interrogatories (Joint Statement).

The Parties propose that each side may collectively serve no more than 27 interrogatories on the other side. Thus, for example, Defendants may serve 10 interrogatories that require a separate response from each Plaintiff and 7 interrogatories that require a joint response from Plaintiffs. Similarly, Plaintiffs may, for example, serve 5 interrogatories to Defendant Endeavor, 10 interrogatories to Defendant Zuffa, and 12 interrogatories that require a joint response from Defendants.

### V.     Resolving Certain Injunctive Relief Issues in *Le*

In the *Le* Class Certification Order, the Court found that the *Le* Plaintiffs "have standing to bring their claims of injunctive relief." *Le* Class Certification Order at 73. However, the *Le* Plaintiffs only sought certification under Fed. R. Civ. P. 23(b)(3) in their motion for class certification, *Le v. Zuffa, LLC*, No. 15-1045, ECF No. 518, and the Court declined to certify a class under Fed. R. Civ. P. 23(b)(2) or rule on the propriety of injunctive relief under Fed. R. Civ. P. 23(b)(3) without further briefing. *Le* Class Certification Order at 74.

As Plaintiffs set forth in detail in their Pre-Conference Statement, Plaintiffs have proposed that, because the liability and damages claims in *Le* run through mid-2017, it would be most efficient for the injunctive relief claims in *Le* be heard in conjunction with the trial in *Johnson*. *See* Plaintiffs' Pre-Conference Statement, *Le*, ECF 842, at 1-7 (Aug. 17, 2023). Defendants have opposed this proposal as inefficiently requiring the duplicative presentation of evidence, and instead seek to have the *Le* injunctive relief claims (if any survive class certification and summary judgment) be tried with the *Le* damages and liability claims after additional discovery is permitted in *Le*.

The Court has requested that the Parties submit a briefing schedule concerning whether, "in fact a class can be certified" to seek injunctive relief. Hrg. Tr., *Le*, ECF No. 846 at 32-33 (Aug. 22, 2023). The Court sought from the Parties briefing on whether Plaintiffs in *Le* can seek injunctive relief as a procedural matter, either under Fed. R. Civ. P. 23(b)(2) or (b)(3), or otherwise.

The Parties, therefore, offer the following briefing schedule on these injunctive relief issues, keyed off the date that the Ninth Circuit denies Zuffa's Rule 23(f) petition:

| Case Event | Date |
|---|---|
| Plaintiffs' Motion re Injunctive Relief | 30 days after resolution of Zuffa's Fed. R. Civ. P. 23(f) |
| Defendants' Opposition re Plaintiffs' Motion re Injunctive Relief | 30 days after Plaintiffs file their Motion |
| Plaintiffs' Reply re Plaintiffs' Motion re Injunctive Relief | 30 days after Zuffa's Opposition |

## VI.    Proposed Case Schedule *Johnson*

| Case Event | Date |
|---|---|
| Fact Discovery Opens | September 22, 2023 |
| Rule 26(a) Disclosures | October 2, 2023 |
| Parties Begin Rolling Production of Documents Responsive to any Document Requests Served on or Before October 13, 2023 | November 1, 2023 |
| Parties Substantially Complete Production of Documents Responsive to any Document Requests Served on or Before October 13, 2023 | January 9, 2024 |
| Deadline to Amend Pleadings Without Leave of Court | June 17, 2024 |
| Close of Fact Discovery Including All Non-Expert Depositions | February 24, 2025 |
| Plaintiffs' Opening Expert Reports on All Issues, Including Class and Merits | March 28, 2025 |
| Last Day to Depose Experts Concerning Opening Reports | April 29, 2025 |
| Opposition Expert Reports on All Issues, Including Class and Merits | May 9, 2025 |
| Last Day to Depose Opposition Experts | June 10, 2025 |
| Plaintiffs' Rebuttal Expert Reports | June 20, 2025 |
| Last Day to Depose Experts Concerning Reply Reports | August 12, 2025 |
| *Daubert* Motion(s) | September 12, 2025 |
| Class Certification Motion | September 12, 2025 |
| *Daubert* Opposition Brief(s) | October 24, 2025 |
| Class Certification Opposition | October 24, 2025 |
| Reply in Support of *Daubert* Motion(s) | November 21, 2025 |
| Reply in Support of Class Certification | December 5, 2025 |
| Hearing on Class Certification and *Daubert* Motion(s) | At the Court's convenience |
| Motion(s) for Summary Judgment | 45 days after the Court's decision on class certification |
| Opposition to Motion(s) for Summary Judgment | 45 days after motions for summary judgment |

| Case Event | Date |
|---|---|
| Reply(ies) in Support of Summary Judgment | 30 days after oppositions to motions for summary judgment |
| Hearing on Motion(s) for Summary Judgment | At the Court's convenience following notice and opt-out period if the Court grants class certification |

Further, it is the Parties' understanding from the *Le* matter that courts in this district do not schedule trial deadlines at this stage of the case. To the extent the Court deems it helpful, the Parties can submit a proposed sequencing of trial-related deadlines arising out of both this case and the injunctive relief proceedings associated with the *Le* matter.

1   DATED: September 21, 2023                    Respectfully Submitted,

2                                                By:   _____/s/Eric L. Cramer_____
3                                                          Eric L. Cramer

4                                                BERGER MONTAGUE PC
                                                 Eric L. Cramer (admitted *pro hac vice*)
5                                                Michael C. Dell'Angelo (admitted *pro hac vice*)
                                                 Patrick F. Madden (admitted *pro hac vice*)
6                                                Najah Jacobs (admitted *pro hac vice*)
                                                 1818 Market Street, Suite 3600
7                                                Philadelphia, PA 19103
                                                 Phone: (215) 875-3000/Fax: (215) 875-4604
8                                                ecramer@bm.net
                                                 mdellangelo@bm.net
9                                                pmadden@bm.net
                                                 njacobs@bm.net
10
                                                 BERGER MONTAGUE PC
11                                               Joshua P. Davis (admitted *pro hac vice*)
                                                 505 Montgomery Street, Suite 625
12                                               San Francisco, CA 94111
                                                 jdavis@bm.net
13
                                                 JOSEPH SAVERI LAW FIRM, LLP
14                                               Joseph R. Saveri (admitted *pro hac vice*)
                                                 Kevin E. Rayhill (admitted *pro hac vice*)
15                                               601 California Street, Suite 1000
                                                 San Francisco, California 94108
16                                               Phone: (415) 500-6800/Fax: (415) 395-9940
                                                 jsaveri@saverilawfirm.com
17                                               krayhill@saverilawfirm.com

18
                                                 COHEN MILSTEIN SELLERS & TOLL, PLLC
19                                               Benjamin D. Brown (admitted *pro hac vice*)
                                                 Richard A. Koffman (admitted *pro hac vice*)
20                                               Daniel H. Silverman (admitted *pro hac vice*)
                                                 1100 New York Ave., N.W., Suite 500, East
21                                               Tower Washington, DC 20005
                                                 Phone: (202) 408-4600/Fax: (202) 408 4699
22                                               bbrown@cohenmilstein.com
                                                 rkoffman@cohenmilstein.com
23                                               dsilverman@cohenmilstein.com

24                                               *Co-Lead Counsel for the Proposed Class and*
                                                 *Attorneys for Individual and Representative*
25                                               *Plaintiffs Kajan Johnson and Clarence Dollaway*

26

27

28
_____
                         [PROPOSED] JOINT DISCOVERY PLAN AND SCHEDULING ORDER
                                                 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEMP JONES, LLP
Don Springmeyer (Nevada Bar No. 1021)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
(702) 385-6000/Fax: (702) 385-6001
d.springmeyer@kempjones.com

*Liaison Counsel for the Proposed Class and
Attorneys for Individual and Representative
Plaintiffs Kajan Johnson and Clarence Dollaway*

WARNER ANGLE HALLAM JACKSON &
FORMANEK PLC
Robert C. Maysey (admitted *pro hac vice*)
Jerome K. Elwell (admitted *pro hac vice*)
2555 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Phone: (602) 264-7101/Fax: (602) 234-0419
rmaysey@warnerangle.com
jelwell@warnerangle.com

*Counsel for the Proposed Class and Attorneys
for Individual and Representative Plaintiffs
Kajan Johnson and Clarence Dollaway*


By:  _____ */s/ William A. Isaacson*_____
              William A. Isaacson

William A. Isaacson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone:    (202) 223-7313
Facsimile:     (202) 379-4937
Email:  wisaacson@paulweiss.com

Donald J. Campbell
J Colby Williams
CAMPBELL & WILLIAMS
710 South Seventh Street, Ste. A
Las Vegas, NV 89101
Telephone:    (702) 382-5222
Facsimile:     (702) 382-0540
Email:  djc@cwlawlv.com
Email:  jcw@cwlawlv.com

*Attorney for Defendants Zuffa, LLC and
Endeavor Group Holdings, Inc.*

[PROPOSED] JOINT DISCOVERY PLAN AND SCHEDULING ORDER
15