1   ERIC L. CRAMER (*Pro hac vice*)
    BERGER MONTAGUE PC
2   1818 Market Street, Suite 3600
    Philadelphia, PA 19103
3   Telephone: (215) 875-3000
    Facsimile: (215) 875-4604
4   ecramer@bm.net

5   JOSEPH R. SAVERI (*Pro hac vice*)
    JOSEPH SAVERI LAW FIRM, LLP
6   601 California Street, Suite 1200
    San Francisco, California 94108
7   Telephone: (415) 500-6800
    Facsimile: (415) 395-9940
8   jsaveri@saverilawfirm.com

9   RICHARD A. KOFFMAN (*Pro hac vice*)
    COHEN MILSTEIN SELLERS & TOLL,
10  PLLC
    1100 New York Ave., N.W., Suite 500, East
11  Tower
    Washington, DC 20005
12  Telephone: (202) 408-4600
    Facsimile: (202) 408 4699
13  rkoffman@cohenmilstein.com

14  *Counsel for the Proposed Class and
    Attorneys for All Individual and*
15  *Representative Plaintiffs*

16  [Additional Counsel Listed on Signature
    Page]
17

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

DONALD J. CAMPBELL
J. COLBY WILLIAMS
CAMPBELL & WILLIAMS
710 South Seventh Street, Ste. A
Las Vegas, NV 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540
Email: djc@cwlawlv.com
Email: jcw@cwlawlv.com

*Attorneys for Defendant Zuffa, LLC, TKO
Operating Company, LLC, and Endeavor
Group Holdings, Inc.*

[Additional Counsel Listed on Signature
Page]

18              UNITED STATES DISTRICT COURT

19                  DISTRICT OF NEVADA

20  Kajan Johnson, Clarence Dollaway, and        **No.: 2:21-cv-01189-RFB-BNW**
    Tristan Connelly, on behalf of themselves
21  and all others similarly situated,           **JOINT STATUS REPORT**

22                  Plaintiffs,

23                      v.

24  Zuffa, LLC, TKO Operating Company, LLC
    f/k/a Zuffa Parent LLC (d/b/a Ultimate
25  Fighting Championship and UFC) and
    Endeavor Group Holdings, Inc.,
26
                    Defendants.
27

28

Pursuant to the Court's request at the August 19, 2024 Status Conference, Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly ("Plaintiffs") and Defendants Zuffa, LLC, TKO Operating Company, LLC, and Endeavor Group Holdings, Inc. ("Defendants," and collectively with Plaintiffs, the "Parties"), jointly submit this Status Report setting forth the Parties' respective positions and proposals on a schedule for the *Johnson, et al. v Zuffa, LLC*, No. 2:21-cv-1189 (D. Nev.) case.

The Parties previously exchanged proposed schedules on August 17, 2024, prior to the status conference. On August 28, 2024, the Parties met and conferred regarding their respective proposals. Following the meet and confer, Defendants and Plaintiffs exchanged revised proposed schedules. Due to the significant differences between the proposed schedules, the Parties agreed to submit this Joint Status Report presenting the Parties' respective positions regarding the proposed schedule. Following the Court's order of September 20, 2024, the parties jointly propose a status conference on either October 21 or 22, 2024, at the Court's convenience. (Dkt. 154.)

I.   **Proposed Schedules**

A.   **Plaintiffs' Proposed Schedule**

| Case Event | New/Proposed Date |
|---|---|
| Plaintiffs' Opposition to Endeavor's Motion to Dismiss Third Amended Complaint, or in the alternative, Deadline to Amend Pleadings Without Leave of Court | October 18, 2024 |
| Status Conference | October 21 or 22, 2024 |
| Endeavor's Reply iso Motion to Dismiss Third Amended Complaint, or in the alternative, Endeavor's Motion to Dismiss re Plaintiffs' Fourth Amended Complaint (if Plaintiffs choose to amend) | November 15, 2024 |
| Hearing on Endeavor's Motion to Dismiss re Third Amended Complaint | Court's Convenience |
| Plaintiffs' Opposition to Endeavor's Motion to Dismiss Plaintiffs' Fourth Amended Complaint (if Plaintiffs choose to amend) | December 16, 2024 |
| Endeavor's Reply iso Motion to Dismiss Fourth Amended Complaint (if Plaintiffs choose to amend) | January 17, 2025 |
| Hearing on Defendants' Motion to Dismiss Fourth Amended Complaint (if Plaintiffs choose to amend) | Court's Convenience |

1

| Case Event | New/Proposed Date |
|---|---|
| Parties Begin Rolling Production of Documents Responsive to any Document Requests Served Before December 31, 2023 | October 31, 2024 |
| Parties Substantially Complete Production of Documents Responsive to any Document Requests Served Before December 31, 2023 | December 13, 2024 |
| Parties Substantially Complete Production of Documents Responsive to any Document Requests Served on or Before December 6, 2024 | April 18, 2025 |
| Close of Fact Discovery Including All Non-Expert Depositions | October 17, 2025 |
| Plaintiffs' Opening Expert Reports on Class and Merits | November 14, 2025 |
| Opposition Expert Reports on Class and Merits | January 12, 2026 |
| Plaintiffs' Rebuttal Expert Reports on Class and Merits | March 9, 2026 |
| Last Day to Depose Parties' Respective Experts | April 10, 2026[1] |
| Plaintiffs' Class Motion/Parties' Daubert Motions | May 11, 2026 |
| Parties' Daubert Oppositions/Defendants' Class Opposition | June 8, 2026 |
| Daubert Replies | July 10, 2026 |
| Plaintiffs' Class Reply | July 17, 2026 |
| Class Hearing | Court's Convenience |
| Motion(s) for Summary Judgment | 60 days after the later of (a) the Court's order on class certification, (b) if a party takes an appeal under Fed. R. Civ. P. 23(f), 45 days after an order resolving the petition to appeal or appeal (if the petition is granted and an appeal is allowed). |
| Opposition(s) to Summary Judgment | 90 days after the filing of any motions for summary judgment |
| Summary Judgment Reply Briefs | 120 days after the filing of any motions for summary judgment |

---

[1] Each expert may be deposed once for a total of seven hours of on the record time.

2

| Case Event | New/Proposed Date |
|---|---|
| Hearing on Motion(s) for Summary Judgment | At the Court's convenience |

**B.      Defendants' Proposed Schedule**

| Case Event | New/Proposed Date |
|---|---|
| Plaintiffs' Opposition to Endeavor's Motion to Dismiss the Third Amended Complaint, or in the alternative, Deadline to Amend Pleadings Without Leave of Court | October 18, 2024 |
| Status Conference | October 21 or 22, 2024 |
| Endeavor's Reply in support of its Motion to Dismiss the Third Amended Complaint, or in the alternative, any Motion(s) to Dismiss Plaintiffs' Fourth Amended Complaint | November 15, 2024 |
| Hearing on Endeavor's Motion to Dismiss the Third Amended Complaint (if applicable) | At the Court's Convenience |
| Plaintiffs' Opposition to Defendants' Motion(s) to Dismiss Plaintiffs' Fourth Amended Complaint (if applicable) | December 16, 2024 |
| Defendants' Reply(ies) in support of Motions to Dismiss the Fourth Amended Complaint (if applicable) | January 17, 2025 |
| Hearing on Defendants' Motion(s) to Dismiss the Fourth Amended Complaint (if applicable) | At the Court's Convenience |
| Parties Substantially Complete Production of Documents Responsive to any Document Requests Served Before October 25, 2024 | May 2, 2025 |
| Plaintiffs' Class Certification Motion & Supporting Expert Reports | July 7, 2025 |
| Defendants' Class Certification Opposition & Supporting Expert Reports (and any *Daubert* motions regarding Plaintiffs' Class Experts) | August 4, 2025 |
| Plaintiffs' Reply in support of Class Certification (and Plaintiffs' Oppositions to any *Daubert* motions regarding Plaintiffs' Class Experts) | September 1, 2025 |
| Defendants' Reply(ies) in support of any *Daubert* motions regarding Plaintiffs' Class Experts | September 8, 2025 |
| Hearing on Class Certification | At the Court's Convenience |
| Close of Fact Discovery Including All Non-Expert Depositions | November 14, 2025 |
| Plaintiffs' Opening Expert Reports on Merits | February 9, 2026 |

3

| Case Event | New/Proposed Date |
|---|---|
| Last Day to Depose Plaintiffs' Experts Concerning Opening Reports | June 19, 2026 |
| Opposition Expert Reports on Merits | July 24, 2026 |
| Last Day to Depose Opposition Experts | August 21, 2026 |
| Plaintiffs' Rebuttal Expert Reports on Merits | September 18, 2026 |
| Last Day to Depose Experts Concerning Reply Reports | November 13, 2026 |
| Motion(s) for Summary Judgment & *Daubert* Motions on Merits Experts | December 11, 2026 |
| Opposition(s) to Motion(s) for Summary Judgment & *Daubert* Motions on Merits Experts | January 15, 2027 |
| Reply(ies) in Support of Summary Judgment and *Daubert* Motions on Merits Experts | February 12, 2027 |
| Hearing on Motion(s) for Summary Judgment and *Daubert* Motions on Merits Experts | At the Court's convenience following notice and opt-out period if the Court grants class certification |

## II.     The Parties' Positions

### A.     Defendants' Position

The Parties have been unable to reach agreement on a proposed pretrial schedule for *Johnson* primarily because Plaintiffs insist on merging class expert discovery with the Parties' Rule 26(a)(2) merits expert discovery and trial disclosures.  Defendants oppose such a proposal, as simultaneously conducting class and merits expert discovery and merging class and merits expert disclosures would be impractical and inefficient.  Rather, the parties should first brief and conduct class certification, and subsequently complete Rule 26(a)(2) expert disclosures, followed by summary judgment—which is consistent with the usual practice in antitrust cases.  For the following reasons, Defendants request that the Court adopt Defendants' proposed schedule.

1.     <u>Plaintiffs' Proposed Schedule Is Procedurally Improper</u>

Plaintiffs' proposal to simultaneously submit expert reports and conduct expert discovery regarding both class certification and merits issues makes little sense for the *Johnson* case, and will unnecessarily delay a decision on class certification in contravention of Rule 23's explicit

direction that courts must decide class certification "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). The "early practicable time" is "when the court has sufficient information to decide whether the action meets the certification criteria of Rules 23(a) and (b)." Manual for Complex Litigation (Fourth) § 21.131 (2023). Further, the Advisory Committee Notes to Rule 23 make clear that the class certification decision should not be postponed longer than is needed to develop an adequate record, and that "[a] court may not say something like 'let's resolve the merits first and worry about the class later.'" 1 McLaughlin on Class Actions § 3:1 (20th ed.) (citing *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001)). The need for a prompt class certification determination is rooted in the principle that "fundamental fairness requires that a defendant named in a suit be told promptly the number of parties to whom it may ultimately be liable for money damages." *Siskind v. Sperry Ret. Program, Unisys*, 47 F.3d 498, 503 (2d Cir. 1995); *Molina v. Café Rio, Inc.*, 2013 WL 7174022, at *2 (C.D. Cal. 2013) (stating that Rule 23's purpose is "to give a clear definition to the parameters of the putative class, to outline the claims involved to the class action and to apprise the defendants of their potential liability as soon as practicable").

Consistent with typical practice in antitrust cases, Defendants believe that the *Johnson* case schedule should prioritize briefing and a decision on class certification *before* the Parties are required to make their Rule 26(a)(2) expert disclosures on merits issues. Unsurprisingly, courts have repeatedly held that while class certification is pending, merits questions should be considered "to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). In *Amgen*, the Supreme Court noted that while courts' class-certification analysis may involve some overlap with the merits of a plaintiff's underlying claim, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.*[2] The overlap between merits and class certification questions should thus be cabined

---

[2] *Amgen* was a class action involving securities fraud allegations—in this context, courts have acknowledged that securities class action plaintiffs can satisfy the commonality requirements of Rule 23(b)(3) by establishing that the "fraud on the market" presumption applies. In doing so, plaintiffs by necessity must analyze the merits issue of whether their shares traded on an efficient

1    to analyzing any merits issues that arise when assessing whether Rule 23's requirements for class

2    certification have been met.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (2011)

3    (holding that while class certification is pending, court may examine merits "*only* inasmuch as it

4    must determine whether common questions exist") (emphasis added).  In *Ellis*, the Ninth Circuit

5    noted that the plaintiff "seems to equate a 'rigorous analysis' with an in-depth examination of the

6    underlying merits . . . This is incorrect."  *Id*. at n. 8.  The court emphasized that it would be

7    improper for courts to go beyond analyzing whether Rule 23's class certification requirements

8    apply to "determine whether class members could actually prevail on the merits of their claims."

9    *Id*.  To do so is directly contrary to Rule 23(c)(1)'s requirement that the court determine whether

10   a suit denominated as a class action may be maintained as such "[a]t an early practicable time"

11   after the commencement of the action.  Fed. R. Civ. P. 23(c)(1).

12          And courts have noted the impropriety of conflating these two procedural stages, stating

13   that while "some inquiry into the substance of a case may be necessary to ascertain satisfaction of

14   the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision

15   on the merits to the class certification stage."  *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir.

16   2003) (internal quotation marks omitted).  Assessing the validity of a plaintiff's claims is improper

17   at the class certification stage because when courts assess the propriety of a class action, "the

18   question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

19   merits, but rather whether the requirements of Rule 23 are met."  *Miller v. Mackey Int'l, Inc.*, 452

20   F.2d 424, 427 (5th Cir. 1971).  Engaging in a simultaneous exchange of expert reports, rebuttals,

21   and *Daubert* motions on merits issues before the Court has made a determination on class

22   certification is procedurally improper, a violation of the rules, and inefficient.

                        2.      Plaintiffs' Proposal Risks Significant Prejudice To Defendants

---

26   market.  However, even in this context, courts have noted that (1) the securities class action
     plaintiffs will still need to prove this merits-based issue again at trial to prevail on the merits, and
27   (2) this unavoidable overlap of merits and class issues does not grant courts authority to launch a
     preliminary inquiry into the merits of the suit beyond issues that bear on class certification
28   requirements.  *See Amgen*, 568 U.S. at 466; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, n. 6
     (2011).

1    Plaintiffs' proposal will also result in substantial prejudice to Defendants.  There is no good
2    reason for the Parties in this case to simultaneously submit expert reports and conduct expert
3    discovery on both class and merits issues.  Plaintiffs' proposal is almost certain to result in less
4    efficient discovery, and a less clear articulation of the issues for the benefit of all parties (including
5    absent members of the purported class) and the Court.  Plaintiffs' proposed schedule would require
6    the Parties' experts to pursue one of two equally burdensome and confounding options: (1) submit
7    two separate expert reports on class and merits issues at the same time, which will necessarily
8    evolve analysis of overlapping issues but analyzed pursuant to different standards, or (2) submit
9    one expert report that addresses both class and merits issues that will be analyzed pursuant to two
10   entirely different standards at class certification and summary judgment.  The former would result
11   in no greater efficiency than Defendants' proposal to brief and resolve class certification before
12   submitting expert reports on the merits.  And the latter would require experts to submit one report
13   to be simultaneously evaluated according to the various factors for class certification under Rule
14   23 and Rule 56 as to whether Plaintiffs have established a cognizable monopsonization claim on
15   the merits.   An expert report on class certification is relevant to arguments related to the
16   numerosity, commonality, typicality and adequacy requirements of Rule 23(a), and whether the
17   class action fits into one of the categories enumerated by Rule 23(b).  In contrast, a merits expert
18   report is relevant to the substantive allegations set forth in the complaint.   These two
19   determinations are separate, require an evaluation of different facts and factors, call for different
20   expert analysis and opinions, and necessitate review pursuant to different standards.

21   Courts have recognized the inherent risk associated with assessing merits claims at the
22   class certification stage, noting that a "preliminary determination of the merits may result in
23   substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules
24   and procedures applicable to civil trials."  *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178
25   (1974).  Instead, Defendants' proposal would eliminate this risk of confusion, by making clear
26   what the purpose of each expert opinion is, and making clear for the Parties and the Court how the
27   opinion impacts the vastly different analyses the Court must perform on class certification and
28   summary judgment.  To the extent that named Plaintiffs believe that their proposal is to their

7

1   strategic or tactical benefit (for whatever reason), that cannot overcome the clear prejudice

2   Defendants would suffer from effectively being required to litigate class and merits issues

3   simultaneously—as numerous courts in this Circuit have recognized. *Centeno v. Quigley*, No.

4   C14-200 MJP, 2015 WL 432537, at *3 (W.D. Wash. Feb. 2, 2015); *Villa v. San Francisco Forty-*

5   *Niners, Ltd.*, 104 F. Supp. 3d 1017, 1020 (N.D. Cal. 2015) (courts should prioritize ruling on class

6   certification prior to litigation of merits issues "to protect defendants from unfair 'one-way

7   intervention,' where the members of a class not yet certified can wait for the court's ruling on

8   summary judgment and either opt in to a favorable ruling or avoid being bound by an unfavorable

9   one"); *Gomez v. Rossi Concrete Inc.*, 08CV1442 BTM CAB, 2011 WL 666888, at *1 (S.D. Cal.

10  Feb. 17, 2011) ("allowing absent plaintiffs to [join a class] after the Court adjudicates issues of

11  liability in the underlying case would unfairly prejudice Defendants").  Although Plaintiffs are not

12  proposing that the Court rule on the merits on summary judgment prior to a ruling on class

13  certification, asking Defendants to conduct discovery and litigate regarding class and merits issues

14  at the same time presents a similar risk of prejudice to Defendants, as absent class members will

15  be able to watch from the sidelines while the Parties challenge each other's experts on the merits,

16  and decide based on that information whether to opt out of the class.  To avoid risk of prejudice to

17  Defendants, this case should follow suit and proceed to merits expert discovery only after the

18  conclusion of briefing and ruling on class certification (including submission of any expert reports

19  on class certification issues).

20             3.   Defendants' Proposed Schedule Promotes Clarity And Efficiency

21         Defendants' proposed schedule prioritizes a determination on class certification before

22  submission of merits expert reports, as is the usual practice in class actions in federal court, and

23  particularly in antitrust cases.  *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)

24  (indicating the Supreme Court's preference that judges decide class certification questions early

25  "to ensure that members of the class [are] identified before trial on the merits and [] bound by all

26  subsequent orders and judgments"); *see also* First Amend. Scheduling and Disc. Order, *First*

27  *Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n et al.*, No. 3:13-cv-00454-NJR (S.D. Ill.

28  June 9, 2015), ECF No. 148; Scheduling Order, *Moehrl v. Nat'l Ass'n of Realtors*, No. 1:19-cv-

8

01610 (N.D. Ill. Nov. 6, 2020), ECF No. 196; Order Approving Stipulation to Amend Case Schedule, *Affinity Credit Union et al. v. Apple Inc.*, No. 22-cv-04174-JSW (N.D. Cal. Aug. 5, 2024), ECF No. 81 (setting case schedules that conclude briefing and determination of class certification prior to commencing merits expert disclosure and discovery).  This straightforward approach allows the Parties and their experts to benefit from the Court's ruling on class certification, including whether any class will be certified, who may be in that class, and whether there are any subclasses.  The Parties must know the size and definition of the class(es) (if any), before they can properly assess expert opinions on merits issues and damages, as Rule 26(a)(2) contemplates.  This is particularly important in the *Johnson* case given the percentage of the putative class that signed contracts with arbitration provisions and class action waivers.

There are also several practical reasons for setting a schedule to determine class certification before requiring Rule 26(a)(2) expert reports.  The class certification decision in this case will frame the scope of the class (if any, given the individualized issues concerning who signed a contract with an agreement to arbitrate and/or a class action waiver) and claims, and final expert opinions cannot be formulated and disclosed without knowing the composition of the class, including the number of members who may opt out.  For instance, an expert cannot reasonably opine on the existence or quantum of damages without knowing the size and composition of the class.  Locking experts into reports and opinions without clarity on the class scope would also confuse the jury and diminish the usefulness of the expert's opinions.  Furthermore, if the Court denies class certification (as Defendants will argue it should), the focus and scope of any expert reports on the merits likely will be substantially different.  Under Plaintiffs' proposal, the Parties risk wasting significant time and expense hiring experts to write reports on issues that may become moot should class certification be denied.  And Plaintiffs' proposed schedule will cause unnecessary delay, as under their schedule the Court would not hold a hearing on class certification until late July 2026, at the earliest, whereas Defendants' proposed schedule contemplates a class certification hearing at the Court's convenience after September 2025—nearly a year earlier.  In other words, Plaintiffs' schedule would have the Parties potentially spend an additional year

litigating issues that may become irrelevant or inapplicable upon a class certification determination.

Defendants recognize that in the *Le* case, expert reports on class and merits issues were submitted at the same time.  In Defendants' view, this combined schedule contributed significantly to an elongated class certification process in *Le* that lasted for many years.  Defendants submit that the Parties should learn from that experience here and avoid similar delay and confusion.  Further, the *Johnson* case is differently situated given the arbitration/class action waiver issue that was not present in *Le*.  Defendants' proposal of staged class and merits expert reports is the most orderly and efficient way to manage this case.

## B.     Plaintiffs' Position

Based on modern best practices from many recent analogous antitrust class actions, to promote efficiency and to eliminate redundancy and unnecessary discovery battles, the case should proceed as Plaintiffs' schedule (attached as Exhibit "A") proposes: a single fact discovery period for all issues relating to class certification and merits; followed by a single expert discovery period for all issues including class and merits; followed by briefing and a hearing on class certification and *Daubert*, briefing and a hearing on summary judgment, and trial. Class Counsel successfully litigated the predecessor to this case to the eve of trial, *Le v. Zuffa, LLC*, No. 15-cv-1045 (D. Nev.), using this same structure—after Defendant Zuffa had stipulated to it. *See* Exhibit 1 (Discovery Plan and Scheduling Order at 1, *Le v. Zuffa, LLC*, No. 2-15-cv-01045- RFB-(PAL) (D. Nev. Oct. 14, 2016) (ECF No. 311). Given the class certification standards regarding which the Court is familiar, the structure of the schedule the Court adopted in *Le* has now become the standard in complex antitrust class action cases. *See* Exhibits 2-9 (examples of schedules in multiple recent antitrust class actions, including labor side antitrust class actions like this one, analogous to Plaintiffs' proposed schedule).[3]

---

[3] *See, e.g.*, Case Mgmt. Order No. 1, *In re: Broiler Chicken Grower Antitrust Litig.*, No. 6:17-cv-00033-RJS-SPS (E.D. Okla. Apr. 13, 2020) ("*Broilers I*"), ECF No. 312 (labor market class action) (Exhibit 2); Stipulated Order Regarding Amended Case Schedule As Modified, *Simon and Simon, PC, et al. v. Align Tech., Inc.*, No. 3:20-cv-03754-VC (N.D. Cal.) ("*Align*") (Exhibit 3); Further Amended Scheduling Order, *In re Lipitor Antitrust Litig.*, No. 3:12-cv-02389-PGS-DEA (D.N.J. Oct. 1, 2019), ECF No. 899 (Exhibit 4); Corrected Seventh Amended Scheduling

Under Plaintiffs' proposal, after the single period for fact discovery closes on October 17, 2025, there would be one period for expert discovery, where Plaintiffs would serve their Opening expert reports on both class and merits issues on November 14, 2025. Opposition expert reports would be served no later than January 12, 2026, and rebuttal expert reports would be due no later than March 9, 2026. Under this structure, all experts would work from the same, closed, factual discovery record in submitting their reports for all issues relevant to the case. After both sides serve expert reports, there would then be a four-week period for the parties to take expert depositions. And there would be a single seven-hour expert deposition for each expert. Expert discovery on all issues would be complete on April 10, 2026.

After the close of expert discovery, the parties would then simultaneously brief Plaintiffs' class certification motion and the parties' *Daubert* motions.[4] That briefing would be based on a

Order, *In re: Niaspan Antitrust Litig.*, No. 13-MD-2460 (E.D. Pa. Nov. 16, 2018), ECF No. 570 (Exhibit 5); Scheduling Order at 1, *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (BMC)(GRB) (E.D.N.Y. April 10, 2017), ECF No. 177 (Exhibit 6); Case Management Order #1, *Carbone v. Brown Univ.*, No. 22-cv-125 (N.D. Ill. Sept. 8, 2022), ECF No. 195 (Exhibit 7); Case Mgmt. Order, *In re Geisinger Health and Evangelical Community Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-cv-196 (M.D. Pa. Feb. 7, 2022), ECF No. 80 (Exhibit 8); *Scheduling Order, Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-cv-2600 (W.D. Tenn. Oct. 15, 2020), ECF No. 61 (Exhibit 9). Several of the above schedules were entered over the defendants' objections, *e.g., Broilers I* and *Geisinger*, whereas the three schedules Defendants cite here (*First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n et al.*, No. 3:13-cv-00454-NJR (S.D. Ill. June 9, 2015), ECF No. 148; *Moehrl v. Nat'l Ass'n of Realtors*, No. 1:19-cv-01610 (N.D. Ill. Nov. 6, 2020), ECF No. 196; *Affinity Credit Union et al. v. Apple Inc.*, No. 22-cv-04174-JSW (N.D. Cal. Aug. 5, 2024), ECF No. 81), were all entered with the consent of the parties on these disputed issues.

[4] As suggested in Plaintiffs' schedule (Exhibit A), class certification replies should come after the *Daubert* reply given that Plaintiffs' class certification motion and *Daubert* motions are likely to be relevant to class certification. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016) ("Once a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for a jury. Reasonable minds may differ as to whether the average time [plaintiffs' expert] calculated is probative as to the time actually worked by each employee. Resolving that question, however, is the near-exclusive province of the jury. The District Court could have denied class certification on this ground only if it concluded that no reasonable juror could have believed [the expert findings]."); *see also Le v. Zuffa, LLC*, 2023 WL 5085064, at *8 (D. Nev. Aug. 9, 2023) (noting the Court would "consider the arguments in the [Daubert] Motions and Responses in its review of the Motion to Certify Class"). Indeed, in *Le v. Zuffa, LLC*, the parties stipulated that the *Daubert* and Class Certification Motion records should both apply to Plaintiffs' Motion for Class Certification, *see* No. 15-cv-1045, ECF No. 545 (D. Nev. May 7, 2018) (agreeing "the Court may consider the class certification briefing and exhibits thereto as part of the record for purposes of the Daubert motions, and the Daubert briefing and exhibits thereto may be considered as part of the record for purposes of the Motion for Class Certification"). Defendants propose the *Daubert* reply would come one week after Plaintiffs' Reply in Support of Class Certification, thereby giving Defendants the last word on Plaintiffs' motion for class certification. There is no justification for such sequencing.

closed expert record, and would be completed by July 17, 2026. The Court would subsequently hold a hearing on the class certification and the parties' *Daubert* motions (or at least those relevant to class certification) at its convenience. Plaintiffs propose that summary judgment motions would then be filed after the later of 60 days after the Court's Order on Class Certification or 45 days after the resolution of any petition to the Ninth Circuit Court of Appeals under Fed. R. Civ. P. 23(f).

In short, Plaintiffs' proposed schedule would implement the same basic structure to which the parties stipulated in *Le* and which the Court imposed in *Le* based on that stipulation. The *Le* approach is now standard in antitrust cases. There are four material differences between Plaintiffs' proposed schedule and Defendants' outmoded approach. First, Plaintiffs propose a single round of expert reports on class and merits combined, whereas Defendants inefficiently propose two largely redundant rounds of expert reports, back-to-back. Second, Plaintiffs propose conducting all expert disclosures and discovery after the end of fact discovery, whereas Defendants propose to conduct class briefing (and class expert disclosures and discovery) *before the end* of fact discovery. Third, Plaintiffs propose that expert discovery would close before class briefing would begin. Under Plaintiffs' proposal, all parties are working from a closed and stationary factual and expert discovery record in briefing class certification. On the other hand, Defendants propose that the parties brief class certification well *before* expert discovery has been completed. Fourth, Plaintiffs' proposal embeds certain other efficiencies, such as (a) deadlines for beginning the rolling production of documents, and earlier deadlines for the substantial completion of discovery responses, and (b) a single expert deposition of each disclosed testimonial expert, whereas Defendants propose to take the depositions of each Plaintiffs' expert *four times*. Finally, Plaintiffs' efficiencies provide for a shorter overall schedule by about four months. Plaintiffs elaborate on each of the four main benefits of their approach below.

## 1. The Efficiency of Combined Class & Merits Expert Discovery

Plaintiffs' schedule avoids two rounds of enormously expensive and largely redundant expert reports. Defendants' alternative requiring a round of class reports followed by a round of merits reports is wasteful and unnecessary because, under current jurisprudence, there are

12

substantial issues that overlap between class and merits. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (requiring courts to conduct a "rigorous analysis" of class certification issues that will "frequently . . . entail some overlap with the merits of the plaintiff's underlying claims"). As the Court is well aware, at class certification, Plaintiffs have the burden of showing that their case is capable of being proved with predominantly classwide evidence. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047-49 (2016); *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 459-60, 467-70 (2013); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal quotation marks and citations omitted) (class certification analysis in antitrust cases will "frequently entail overlap with the merits of the plaintiff's underlying claim," because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action"); *Olean Wholesale Grocery Cooperative, Inc. v. Bumblebee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) ("[I]f 'each class member could have relied on [the plaintiffs' evidence] to establish liability if he or she had brought an individual action,' and the evidence could have sustained a reasonable jury finding' on the merits of a common question, then a district court may conclude that the plaintiffs have carried their burden…."); *Le*, 2023 WL 5085064, at *12 (same).

In short, under Fed. R. Civ. P. 23(b)(3), Plaintiffs must show that their case as a whole, or one or more of its constituent parts, is capable of proof on a predominantly class-wide basis. *Tyson Foods*, 136 S. Ct. at 1045 ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3).") (quotation omitted); *Le*, 2023 WL 5085064, at *12 (same). The best way to show that Plaintiffs' case *is capable of* class-wide proof *is to lay out workable methods of class-wide proof*.[5] That is what Plaintiffs' experts will do in their class certification reports, and that is also what

---

[5] Defendants argue that having experts set out both class and merits opinions at the same time would require the experts to submit report(s) on issues that the Court would need to analyze pursuant to different standards. Noticeably absent from Defendants' discussion herein is any statement of what these different standards are or why experts would conduct their analyses differently under different standards of review. Defendants offer no basis on which the Court could conclude that combining class and merits expert reports— which is frequently done in antitrust class actions (including by this Court in *Le*) as Plaintiffs set out above—creates any such difficulty.

1   Plaintiffs' experts will do in any required merits reports. Thus, bifurcating expert discovery

2   between class and merits and requiring separate reports, as Defendants propose, would be

3   needlessly expensive, largely redundant, and wholly inefficient. It would cause both sides to spend

4   millions of dollars in expert costs and lawyer time to produce two rounds of mostly redundant

5   expert reports, and take and defend largely duplicative expert depositions.

6   Defendants' proposed schedule is antiquated given the current standards for class certification.

7   Defendants propose not only two rounds of redundant expert reports, but two rounds of *Daubert*

8   briefing, with the first round (related to class certification) not closing until September 2025. Under

9   Defendants' proposal a hearing on Plaintiffs' class motion would not likely occur for some period

10  of months after the close of the first round of *Daubert* briefing, with a decision to come only some

11  period of months after that. And Defendants propose a second round of expert reports on the merits

12  (necessarily retreading to much of the same ground) to be due in February 2026 (just five months

13  after briefing closes on the first round of *Daubert* briefing), followed by a second round of *Daubert*

14  motions.

15          Inevitably, given that merits expert reports would follow quickly on the heels of class

16  reports, under Defendants' schedule the parties would be submitting merits expert reports well

17  before class certification would have been adjudicated. This inefficiency has highly problematic

18  implications for fairness and efficiency because the very benefits Defendants claim for doing two

19  rounds of expert reports would only arise if the Court decided class certification and *Daubert*

20  before merits expert discovery begins. But in their effort to make their schedule seem much shorter

21  than it actually would be, Defendants propose that merits expert reports come only a few months

22  after class expert reports—without sufficient time for class or *Daubert* related issues to be

23  adjudicated. Thus, the parties would be submitting a second round of expensive expert reports

24  without having any more information about the ultimate resolution of multiple issues (like the

25  enforceability of arbitration clauses) than under Plaintiffs' proposed schedule. In short, under

26  Defendants' proposal, the parties would be submitting a round of class reports and then a round of

27  merits expert reports—back-to-back—without even the possibility of any benefits. Indeed, in this

28  likely scenario, the parties would use the round of merit expert reports as sur-rebuttals and sur-sur

14

1    rebuttals on class and merits issues, and then seek to submit that information to the Court to

2    consider at class certification. The only way to obtain the benefits Defendants claim would flow

3    from two rounds of expert reports would be to require that the second, merits, round would wait

4    until after class and *Daubert* are decided, and any appellate petition pursuant to Rule 23(f)

5    resolved, before conducting merits expert discovery. That would inject at least another year into

6    Defendants' schedule. In short, Defendants' proposal is inefficient for the parties and the Court.

7         Defendants defend their proposed schedule by claiming "prejudice" resulting from having

8    all experts submit reports on a closed factual record on all issues related to both class and merits.

9    Defendants' argument, however, conflates the appropriateness of ***the expert reports*** addressing

10   class and merits issues (given their substantial overlap as set forth above) with whether ***the Court***

11   ***may rule*** on the merits of the claims in the case at the class stage. Nothing about Plaintiffs'

12   proposed schedule invites the Court to adjudicate the underlying merits of the claims in deciding

13   class certification. Thus, Defendants' discussion of *Amgen*, *Ellis v. Costco*, *Staton v. Boeing*,

14   *Miller v. Mackey Int'l*, and *Eisen v. Carlisle and Jacquelin* is irrelevant to the dispute here.[6]

15        Defendants also contend that combining class and merits expert reports would be

16   inappropriate because there are currently undecided questions concerning applicability and

17   enforceability of the arbitration clauses that some, but not all, fighters in the proposed class signed.

18   To the extent this issue does not get resolved prior to class certification, it would not pose a

19   problem either for Plaintiffs' proposed schedule or class certification. Given that the arbitration

20   clause Defendants imposed is the same for every fighter who signed a contract containing it, the

21   applicability of such a clause is a common question to a large chunk of the class. Moreover, as to

22

23   ───────────────

24   [6] Similarly, Defendants rely on a series of cases that concern the one-way intervention doctrine,
     which holds it inappropriate for the court to enter judgment as to the merits before the court
     decides class certification and provides class members with the opportunity to opt out. *See*
25   *Centeno v. Quigley*, No. C14-200 MJP, 2015 WL 432537, at *3 (W.D. Wash. Feb. 2, 2015);
     *Villa v. San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1020 (N.D. Cal. 2015); *Gomez*
26   *v. Rossi Concrete Inc.*, 08CV1442 BTM CAB, 2011 WL 666888, at *1 (S.D. Cal. Feb. 17,
     2011). The one-way intervention doctrine has no relevance to whether the expert reports should
27   address both class and merits issues in an antitrust class action. It merely proscribes entering
     judgment as to merits issues before class members are given an opportunity to opt out. That did
28   not happen in *Le* and it will not happen here. Under Plaintiffs' proposal, the parties would brief
     summary judgment only after the class motion has been decided.

the expert reports, Plaintiffs' experts would—whether in a class report or in a combined class and merits report—conduct their analyses alternatively, including and excluding the class members with arbitration clauses. In this way, the expert reports would fit the facts whether the clauses are enforceable or not.   As such the presence of arbitration in some class member contracts is immaterial to which schedule the Court should adopt.

### 2.  The Benefits of Briefing Class Certification After Fact Discovery Closes

Plaintiffs also propose that class briefing and all expert discovery should occur after the close of fact discovery—as the parties did in *Le*. Defendants, on the other hand, seek to force Plaintiffs to brief class certification and submit expert reports while fact discovery is ongoing. Plaintiffs' proposal is far more efficient for the parties and for the Court, and will lead to a quicker and more fair resolution of the litigation. Given the overlap of class and merits issues discussed above, it is deeply unfair to require Plaintiffs to submit expert reports on critical economic issues in the case well before all discovery relevant to such reports is complete. Indeed, additional discovery occurring after the class certification motion in Defendants' proposed schedule would almost certainly be relevant to class certification.[7] Given that under Defendants' schedule merits reports are due only five months after the close of class briefing, it is inevitable that the merits reports would be submitted as part of the class certification record. As a result, the parties would have undergone two incredibly expensive, largely redundant rounds of expert discovery back-to-back—the first premature because the factual record was still being developed and the second largely redundant—for no benefit.

---

[7] Defendants contend that class certification must be briefed before the end of fact discovery because to do it otherwise would be "procedurally improper, a violation of the rules, and inefficient." Defendants base this contention on Rule 23's direction that courts decide class certification "[a]t an early practicable time." *See* Fed. R. Civ. P. 23(c)(1)(A). Defendants read "practicable" right out of the rule. Indeed, as explained herein, unless the Court is prepared to decide class certification based on less than a full discovery record, it is not practicable (nor is it fair to Plaintiffs) for the Court to decide class certification before all discovery relevant to class certification has been taken. Presumably, Defendants will argue here—as Zuffa did in *Le*—that the Court must rigorously scrutinize Plaintiffs' evidence and expert analyses at the class stage. It would be highly prejudicial to Plaintiffs to undergo strict scrutiny of their evidence and expert work without having completed discovery on which that evidence and expert work would need to be based. It is for this reason that most courts in antitrust class actions are imposing schedules like Plaintiffs have proposed—just as this Court did in *Le* based on the parties' joint proposal.

16

### 3.  Plaintiffs' Proposal Promotes More Useful Class Briefing

Under Plaintiffs' proposal, all expert discovery concludes before class certification briefing commences. Under Defendants' inefficient schedule, expert discovery and briefing on class certification commence while the parties are engaged in fact discovery, and before the completion even of class expert discovery. In other words, under Defendants' proposal, Plaintiffs would submit their opening class expert reports with the class motion; Defendants would submit their opposition class expert reports with the class opposition brief; and Plaintiffs would submit class expert rebuttal expert reports with the class reply brief.

Under Plaintiffs' proposal, the class briefs would be far more comprehensive and enlightening to the Court because both sides will be working from the same, closed, factual and expert record for their respective class briefs. Under Defendants' proposal, the factual and expert record is continuing to develop during the period that the parties are briefing class certification. Defendants' proposal would inevitably lead to disjointed and incomplete class presentations, making it more difficult for the Court to adjudicate.[8]

### 4.  Plaintiffs' Proposal Contains Additional Benefits and Efficiencies

Finally, Plaintiffs' proposal is more efficient in still other ways. In addition to providing one set of expert reports for the parties (and thereby dramatically reducing the costs for both sides), Plaintiffs propose a single deposition of each disclosed testimonial expert. By contrast, on top of their proposal of duplicative sets of expert reports, Defendants also propose multiple and duplicative expert depositions. For instance, Defendants propose to take a deposition after each of the four expert reports that each of the Plaintiffs' experts would submit under Defendants'

---

[8] Defendants cite the scheduling order in *First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n et al.*, No. 3:13-cv-00454-NJR (S.D. Ill. June 9, 2015), ECF No. 148, as one of only three examples of how "prioritiz[ing] a determination on class certification before submission of merits reports" "is the usual practice in class actions in federal court, and particularly in antitrust cases." But that case exemplifies one of the problems Plaintiffs identify: in *Milk Producers*, the plaintiffs submitted their class expert report with their class briefing, and at the ensuing deposition of plaintiffs' expert, defendants uncovered a significant issue with the expert's credentials. *See id.*, ECF No. 235. As a result, Plaintiffs had to move the court to amend the class certification motion, which caused substantial delay in the progression of the case. *Id.* If that case had used Plaintiffs' proposed sequencing, no amendment would have been necessary because the class motion would not have been briefed until after expert discovery had closed, and the case could have proceeded as scheduled.

schedule—*thus subjecting each of Plaintiffs' experts to four depositions in the span of a few months*. This is wasteful and inefficient. Plaintiffs also propose one set of *Daubert* motions for the Court to resolve, while Defendants propose two: one at the class stage and then another at the immediately following merits stage. Defendants' proposed duplicative *Daubert* motions would require the parties to brief and the Court to address largely overlapping issues (or at least issues that could and should be raised at class certification if at all), at both the class and merits stages. Finally, Plaintiffs propose earlier dates to begin and substantially complete document production, and call for deadlines for rolling productions of documents and earlier deadlines for discovery responses. This will promote a more streamlined fact discovery period. Such a proposal is appropriate here given that this case is being litigated between parties who have spent a decade litigating similar issues in *Le*.

Cases proceeding on schedules like Plaintiffs' proposal have proven to be more efficient and less costly for all parties. Due to its efficiencies, Plaintiffs' schedule gets to the same place as Defendants in four fewer months, and with far less expense. The Court should adopt Plaintiffs' proposal.

Respectfully Submitted,

By: /s/ Patrick Madden
Eric L. Cramer (*Pro hac vice*)
Michael Dell'Angelo (*Pro hac vice*)
Patrick F. Madden (*Pro hac vice*)
Najah Jacobs (*Pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bm.net
Email: mdellangelo@bm.net
Email: pmadden@bm.net
Email: njacobs@bm.net

Joshua P. Davis (*Pro hac vice*)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bm.net

Richard A. Koffman (*Pro hac vice*)
Benjamin D. Brown (*Pro hac vice*)
Daniel H. Silverman (*Pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave., N.W., Suite 500 East,
Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com

Joseph R. Saveri (*Pro hac vice*)
Christopher Young (*Pro hac vice*)
Kevin E. Rayhill (P*ro hac vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California St., Suite 1000
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Facsimile: +1 (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com

Dated:  September 20, 2024

By: /s/ Christopher Yates
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8095

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

BRETTE M. TANNENBAUM (*Pro hac vice*)
btannenbaum@paulweiss.com
YOTAM BARKAI (*Pro hac vice*)
ybarkai@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

19

1   Michael J. Gayan

2   KEMP JONES, LLP
     3800 Howard Hughes Parkway, 17th Floor

3   Las Vegas, Nevada 89169
     Telephone: + 1 (702) 385-6000

4   Facsimile: + 1 (702) 385-6001
     Email: m.gayan@kempjones.com

5

6   *Liaison Counsel for the Proposed Class and*
     *Attorneys for All Individual and*

7   *Representative Plaintiffs*

8   W. Joseph Bruckner (*Pro hac vice*)
     Brian D. Clark (*Pro hac vice*)

9   LOCKRIDGE GRINDAL NAUEN PLLP
     100 Washington Ave S, Suite 2200

10  Minneapolis, MN 55401
     Phone: (612) 596-4001/Fax: (612) 339-0981

11  wjbruckner@locklaw.com
     bdclark@locklaw.com

12

13  Kyle J. Pozan (*Pro hac vice*)
     LOCKRIDGE GRINDAL NAUEN PLLP

14  1165 N. Clark Street, Ste. 700
     Chicago, IL 60610

15  Phone: (612) 339-6900
     Email: kjpozan@locklaw.com

16

17  *Counsel for the Proposed Class and Attorneys*
     *for All Individual and Representative*

18  *Plaintiffs*

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222

*Attorneys for Defendant Zuffa, LLC, TKO*
*Operating Company, LLC, and Endeavor*
*Group Holdings, Inc.*

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Joint Status Report was served on September 20, 2024, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Christopher S. Yates*
Christopher S. Yates of
LATHAM & WATKINS LLP

US-DOCS\154015576.12

21