WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, NV 89101

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

*Attorneys for Defendants Zuffa, LLC, TKO Operating Company, and Endeavor Group Holdings, Inc.*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| KAJAN JOHNSON and CLARENCE DOLLAWAY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc., <br><br> Defendants. | Case No.: 2:21-cv-01189-RFB-BNW <br><br> **DEFENDANT ENDEAVOR GROUP HOLDINGS, INC.'S FOURTH MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br><br> **(Hearing Requested)** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

LEGAL STANDARD.............................................................................................................5

ARGUMENT ........................................................................................................................5

I.    PLAINTIFFS FAIL TO PLEAD MONOPSONIZATION BY ENDEAVOR ...................5

    A.    Plaintiffs Fail To Plead That Endeavor Possessed Monopsony Power .................6

    B.    Plaintiffs Fail To Plead Exclusionary Input-Market Conduct By Endeavor ..........7

    C.    Plaintiffs Fail To Plead Anticompetitive Impact From Endeavor's Conduct..........8

II.    PLAINTIFFS CANNOT HOLD ENDEAVOR VICARIOUSLY LIABLE FOR
ZUFFA'S ALLEGED CONDUCT....................................................................................8

III.    PLAINTIFFS CANNOT AVOID DISMISSAL MERELY BY CALLING
ENDEAVOR AND ZUFFA A SINGLE CORPORATE FAMILY ....................................9

    A.    The One-Purpose Rule For Conspiracy Cases Has No Application In This
Unilateral Conduct Case ....................................................................................10

    B.    Plaintiffs' Single-Entity Theory Still Fails To Plead A Claim Against
Endeavor ...........................................................................................................13

        1.    There Is No Coordinated Monopsonization Alleged ................................13

        2.    Endeavor's Acts Were Not "Critical" To The Alleged Scheme................14

        3.    Endeavor's Acts Are Not Alleged To Have Immediately Caused
Plaintiffs' Claimed Injuries.......................................................................14

CONCLUSION....................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*American Ad Mgmt., Inc. v. General Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ................................................................................8

*American Pro. Testing Serv. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*,
108 F.3d 1147 (9th Cir. 1997) ...............................................................................5

*Arandell Corp. v. Centerpoint Energy Services, Inc.*,
900 F.3d 623 (9th Cir. 2018) ...............................................................11, 12, 13, 14

*Arnold Chevrolet LLC v. Tribune Co.*,
418 F. Supp. 2d 172 (E.D.N.Y. 2006) ...................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................5

*Chandler v. Phoenix Serv.*,
No. 7:19-cv-00014, 2020 WL 1848047 (N.D. Tex. Apr. 13, 2020), *aff'd*,
45 F.4th 807 (5th Cir. 2022) ................................................................................13

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
710 F.3d 946 (9th Cir. 2013) ................................................................................4

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
261 F. Supp. 2d 188 (E.D.N.Y. 2003) .................................................................10

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984) .....................................................................................9, 10, 11

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) ...............................................................................................8

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022) ...............................................................................7

*Drinkwine v. Federated Publ'ns, Inc.*,
780 F.2d 735 (9th Cir. 1985) ................................................................................8

*Duffy v. ASNY NY, LLC*
No. 2:21-cv-01680, 2022 U.S. Dist. LEXIS 974070 (D. Nev. May 31, 2022) ........5

*Flaa v. Hollywood Foreign Press Ass'n*,
  55 F.4th 680 (9th Cir. 2022) .................................................................................6

*Gregg v. Hawaii, Dep't of Safety*,
  870 F.3d 883 (9th Cir. 2017) .................................................................................4

*Invamed, Inc. v. Barr Laboratories, Inc.*,
  22 F. Supp. 2d 210 (S.D.N.Y. 1998).....................................................................10

*Los Angeles Land Co. v. Brunswick Corp.*,
  6 F.3d 1422 (9th Cir. 1993) ...................................................................................6

*In re Lantus Direct Purchaser Antitrust Litig.*,
  No. 1:16-cv-12652, 2022 WL 4239367 (D. Mass. Aug. 17, 2022),
  *report and recommendation adopted*,
  2022 WL 4237276 (D. Mass. Sept. 14, 2022) ...............................................13, 14

*Lenox Maclaren Surgical Corp. v. Medtronic, Inc.*,
  847 F.3d 1221 (10th Cir. 2017) ............................................................................10

*Mujiica v. Airscan Inc.*
  771 F.3d 580 (9th Cir. 2014) ..................................................................................5

*San Francisco Comprehensive Tours, LLC v. Tripadvisor, LLC*,
  No. 2:20-cv-02117, 2021 WL 4394253 (D. Nev. Sept. 24, 2021)...........................7

*Sherman v. British Leyland Motors, Ltd.*,
  601 F.2d 429 (9th Cir. 1979) ..................................................................................8

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*,
  No. 2:13-md-02445, 2015 WL 12910728 (E.D. Pa. Apr. 14, 2015) ........................9

*United States v. Bestfoods*,
  524 U.S. 51 (1998).............................................................................................8, 9

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko LLP*,
  540 U.S. 398 (2004)................................................................................................7

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
  549 U.S. 312 (2007)................................................................................................5

**STATUTES**

Sherman Act, 15 U.S.C. §§ 1, 2............................................................... *passim*

**RULES**

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 4

iii

1   Defendant Endeavor Group Holdings, Inc. ("Endeavor") submits this fourth motion to
2   dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs' Amended Complaint fails
3   to plead a cognizable claim that Endeavor engaged in monopsonization; indeed, the monopsony
4   power, monopsonistic conduct, and competitive impact alleged in the amended complaint are
5   attributed to Zuffa, LLC and Zuffa Parent, LLC (n/k/a TKO Operating Company, LLC)
6   (collectively, "Zuffa" or "UFC").  Endeavor raised this argument with respect to plaintiffs' original
7   Complaint.  *See* ECF No. 112; ECF No. 17 at 6–7.  Plaintiffs' Amended Complaint, filed on
8   December 15, 2023, adds nothing new.  *See* ECF No. 118.  Because plaintiffs' Amended
9   Complaint fails to identify any basis for naming Endeavor as a defendant in this case, this Court
10   should dismiss plaintiffs' claims as to Endeavor.

11   ## INTRODUCTION

12   Endeavor has no connection to plaintiffs' monopsony allegations and should be dismissed.
13   By plaintiffs' own characterization, the allegations in this case merely carry forward in time the
14   allegations previously asserted in *Le v. Zuffa* about supposed conduct that long-predated
15   Endeavor's majority ownership stake in Zuffa.[1]  The complaints in both cases allege that "UFC
16   embarked on" the challenged "campaign" "as early as December 2006"—a decade before
17   Endeavor bought a controlling interest in Zuffa, and nearly fifteen years before Endeavor acquired
18   the remainder of Zuffa.[2]  Plaintiffs themselves acknowledge that the alleged conduct underlying
19   "UFC's scheme"—as the Amended Complaint repeatedly calls it—is "virtually identical" to the
20   conduct challenged in the *Le* Action.  Pls.' Notice of Related Cases at 2, ECF No. 9 ("Notice").
21   In plaintiffs' words: "[t]his same Scheme is the basis both for *Le* and the new *Johnson* complaint."
22   Pls.' Opp'n to Mot. to Dismiss at 1, ECF No. 41 ("Pls.' 1st Opp'n").[3]  Yet Endeavor is entirely
23   absent from the scheme alleged in the *Le* Action.

24

25   [1] *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev.) (the "*Le* Action" or "*Le*").
26   [2] Am. Compl. ¶¶ 30, 112, ECF No. 118 ("Amended Complaint" or "Am. Compl."); Am. Compl. ¶ 129, *Le*, ECF No. 208.  With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability.  All emphasis is added unless otherwise indicated.
27
28   [3] While plaintiffs acknowledge that the alleged underlying conduct is identical across the *Le* and

1    Plaintiffs added Endeavor as a named defendant in *Johnson*, but made no effort to allege

2    why Endeavor should be a defendant.  The only allegations regarding Endeavor are found in one

3    short background paragraph, Am. Compl. ¶ 30, of a 157-paragraph Amended Complaint.  That

4    paragraph fails to allege any of the essential elements of a Section 2 claim, including monopsony

5    power, anticompetitive conduct, and antitrust impact.  Plaintiffs do not even allege that Endeavor

6    participated in the market for purchasing fighter services that was allegedly monopsonized (it did

7    not).  The law is clear that they cannot circumvent the essential elements of a Section 2 claim by

8    trying to bootstrap allegations about UFC's conduct.

9    Previously, plaintiffs argued that all they must allege to hold Endeavor liable is that "the

10   corporate family that includes Endeavor and Zuffa as a whole violated Section 2 of the Sherman

11   Act" and "in that violation, Endeavor played a role."  Pls.' 1st Opp'n at 19.  That is wrong.  The

12   antitrust-conspiracy precedent on which plaintiffs rely has no bearing on non-conspiracy claims

13   like this one.  And plaintiffs badly stretch and misstate that precedent in any event.  Under that

14   precedent, plaintiffs would need to show that Endeavor engaged in "coordinated conduct," as well

15   as "anticompetitive conduct" that was "essential" to the alleged scheme and was "the immediate

16   cause" of plaintiffs' injuries.  *See infra* § III.B.  The inescapable reality is that plaintiffs effectively

17   seek to hold Endeavor vicariously liable for acts that a subsidiary allegedly undertook more than

18   a decade before Endeavor acquired a controlling interest in the company, and in which Endeavor

19   had no part. Black-letter law prohibits this theory.  *See infra* § II.

20                                          **BACKGROUND**

21   The Amended Complaint asserts a single count of monopsonization on behalf of a putative

22   class of UFC fighters.  Am. Compl. ¶¶ 148–156.  The case is alleged to be "virtually identical" to

23   the prior class action brought by the *Le* plaintiffs, which involves an alleged class period of

24   December 16, 2010, through June 2017.  Notice at 2; Am. Compl. ¶ 1.  This case seeks to extend

25   that class from July 2017 to the present.  Am. Compl. ¶ 2.  As in the *Le* Action, the Amended

26   _____

27   *Johnson* actions, one marked difference between the two classes is that many of the members of
the purported *Johnson* class have signed arbitration clauses and/or class action waivers in their

28   fighter agreements.  Accordingly, Endeavor expressly reserves the right to move to compel
arbitration with respect to these purported class members.

1   Complaint alleges that, beginning "as early as December 2006," UFC "embarked" on a supposed

2   "campaign" to "lock[] up" access to "top-flight" fighters—including by purchasing other mixed

3   martial arts ("MMA") promoters in 2006 and 2011, and using "standard agreements" with fighters

4   since "the 2000s"—that "ma[de] it impossible" for rivals to "compete effectively" with UFC. *Id.*

5   ¶¶ 9–11, 104, 112, 114–116.  Plaintiffs allege that UFC thereby maintained a dominant position

6   in the market for "Professional MMA Fighter services," which injured putative class members by

7   "artificially suppress[ing] bout compensation." *Id.* ¶¶ 4, 150–154.[4]

8          The Amended Complaint does not allege that Endeavor was involved in UFC's contracting

9   of fighter services, UFC's compensation of fighters, or UFC's acquisition of other MMA

10  promoters in 2006 and 2011.  Instead, plaintiffs discuss Endeavor in a single background paragraph

11  that introduces Endeavor as having acquired a controlling interest in UFC's owner—Zuffa Parent,

12  LLC (now known as TKO Operating Company, LLC)—in July 2016 before selling that controlling

13  interest to another publicly traded company (TKO Group Holdings, Inc.)[5] in September 2023. Am.

14  Compl. ¶ 30.  Plaintiffs allege that from "July 2016 to April 2023," Endeavor "produced and

15  distributed UFC programming, managed UFC live events and experiences, and licensed UFC

16  media and sponsorship rights," and also ran a training institute and a streaming platform for UFC

17  bouts.  *Id.*  Endeavor is not alleged to have possessed monopsony power—or even to have

18  independently participated—in the supposed market for purchasing professional MMA fighter

19  services, or to have harmed fighters in any way.  Instead, plaintiffs contend that they "were injured

20  by the UFC's" alleged "monopsony power that resulted in artificially suppressed compensation

21  for competing in UFC bouts." *Id.* ¶ 40.  And plaintiffs do not claim that any sponsorship,

22  intellectual property, or media rights that Endeavor allegedly sold or licensed harmed any fighter

23

24  _____

25  [4] The Amended Complaint also includes allegations regarding UFC's purported monopoly power
    in a market for "promoting live Professional MMA Fighter bouts."  Am. Compl. ¶ 4.  But it
    asserts only a monopsonization claim.  *See id.* ¶¶ 148–156.  Plaintiffs have confirmed that their

26  "sole claim requires only monopsony power, not monopoly power."  Pls.' 1st Opp'n at 8.

27  [5] Although the Amended Complaint discusses TKO Group Holdings, Inc. in passing, *see* Am.
    Compl. ¶¶ 30–31, the caption and preamble of the Amended Complaint do not identify TKO

28  Group Holdings, Inc. as a defendant in this action, *id.* at 1.  Only its subsidiary, TKO Operating
    Company, LLC (f/k/a Zuffa Parent, LLC) is identified as a defendant in this action.  *Id.*

1  or consumer, or independently violated the antitrust laws.  *See id.* ¶¶ 148–156 (asserting only a
2  monopsonization count).

3      Defendants challenged the sufficiency of the allegations against Endeavor as part of a
4  larger motion to dismiss in September 2021, ECF No. 17, and the Court appeared to agree that the
5  allegations are inadequate.  *See* ECF No. 69 (Hr'g Tr. at 23:16–20, 25:17–19) (observing that
6  "some   of the most persuasive aspects of the motion to dismiss relate to the allegations against or
7  the lack of sufficient allegations against Endeavor" and that "it's not clear to me that it's
8  sufficiently alleged against Endeavor specifically").   The Court discussed the possibility of
9  "grant[ing] the motion without prejudice as it relates to the issue of Endeavo*r* and allow[ing] for
10 discovery as related to that issue," *id.* at 23:23–25, and observed that it could be "left with a
11 decision that would potentially involve granting a motion without prejudice as relates to Endeavor,
12 denying it with respect to the other claims, and then either staying the case . . . or proceeding to
13 discovery on Endeavor and figuring out fairly quickly if Endeavor needs to remain in the case or
14 not," *id.* at 25:23–26:5.  The Court observed, however, that its "order on the class certification in
15 *Le* will drive a lot of what would happen in *Johnson*," *id.* at 29:4–8, and it stayed the case "until
16 after there is a finalized appellate review of the Court's class cert order in *Le*," noting that "the
17 defendants of course are free to after the stay is lifted raise some of the same issues," *id.* at 29:14–
18 17, 30:18–22.

19     The Court issued its class certification opinion in *Le* on August 9, 2023. *Le*, ECF No. 839
20 ("Class Cert. Order").  After a status conference on August 21, 2023, the Court then lifted the stay
21 in this case.  Minutes, ECF No. 73.  Endeavor thereupon brought a second motion to be dismissed
22 from this litigation.  *See* ECF No. 112.  Plaintiffs filed their Amended Complaint—materially
23 indistinguishable from their original Complaint—two weeks later.  *See* ECF No. 118.  Endeavor
24 now brings its fourth motion for dismissal on the same grounds previously advanced.

25
26
27
28

1

**LEGAL STANDARD**

2      Under Federal Rule of Civil Procedure 12(b)(6),[6] "[d]ismissal is proper when the complaint

3 does not make out a cognizable legal theory or does not allege sufficient facts to support a

4 cognizable theory." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc*., 710 F.3d 946, 956 (9th Cir.

5 2013).  To defeat dismissal, the complaint "must contain sufficient factual matter" to "state a claim

6 to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

7 *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A complaint may not rely on anticipated

8 discovery; rather, pleadings must assert well-pleaded factual allegations to advance to discovery."

9 *See Duffy v. ASNY NY, LLC*, 2022 U.S. Dist. LEXIS 97470, *7 (D. Nev. May 31, 2022) (citing

10 *Mujica v. AirScan Inc.*, 771 F.3d 580, 593–94 (9th Cir. 2014)).  That rule is consistent with the

11 Supreme Court's admonition that "[i]t is no answer to say that a claim just shy of a plausible

12 entitlement to relief can, if groundless, be weeded out early in the discovery process." *Twombly*,

13 550 U.S. at 558–59.

14

**ARGUMENT**

15      The sparse background allegations regarding Endeavor fail to establish an independent

16 claim of monopsonization on the part of Endeavor.  And black-letter law prohibits plaintiffs from

17 seeking to hold Endeavor vicariously liable for the acts of Zuffa.  Knowing this, plaintiffs advocate

18 the adoption of the theory that Endeavor may be held liable because it is part of a single corporate

19 family with Zuffa.  But that attempt to work around the doctrinal prohibition on vicarious antitrust

20 liability fails: No federal court of appeals has ever found a corporate parent liable under such a

21 theory in a non-conspiracy Sherman Act case.  And in all events, plaintiffs' theory fails on its own

22 terms, since the Amended Complaint does not even allege the facts needed to hold Endeavor liable

23 under that theory.

24

**I.    PLAINTIFFS FAIL TO PLEAD MONOPSONIZATION BY ENDEAVOR**

25      The Amended Complaint's single monopsonization claim requires plaintiffs to plead facts

26 demonstrating that "the defendant: (1) possessed monopsony power in the relevant markets, (2)

27

---

28 [6] If the Court treats this motion as one for judgment on the pleadings, "the same standard of
review applies."  *Gregg v. Hawaii, Dep't of Safety*, 870 F.3d 883, 887 (9th Cir. 2017).

1   willfully acquired or maintained its monopsony power through exclusionary conduct; and (3)

2   caused antitrust injury through such conduct." Class Cert. Order at 23–24 (quoting *American Pro.*

3   *Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*, 108 F.3d 1147, 1151

4   (9th Cir. 1997)). The Amended Complaint does not adequately allege facts supporting any of these

5   elements as to Endeavor. Dismissal is therefore warranted on three independent grounds.

6       **A.      Plaintiffs Fail To Plead That Endeavor Possessed Monopsony Power**

7           First, plaintiffs do not allege that Endeavor has any monopsony power. "[M]onopsony is

8   to the buy side of the market what monopoly is to the sell side." *Weyerhaeuser Co. v. Ross-*

9   *Simmons Hardwood Lumber Co.*, 549 U.S. 312, 320 (2007). Thus, "the relevant market" in this

10  case is the "input market," Class Cert. Order at 25–26, which plaintiffs describe as the market for

11  "Professional MMA Fighter services," Am. Compl. ¶ 33. But the only buyer alleged (even in

12  conclusory terms) to have power in that labor market is UFC. *See, e.g., id.* § VI.B ("The UFC has

13  monopsony power in the relevant input market.").[7] Far from pleading the required facts showing

14  that Endeavor "controls, or controlled, a dominant share of the relevant market," Class Cert. Order

15  at 27, the Amended Complaint does not plead that Endeavor purchased any professional MMA

16  fighter services at all, much less a "dominant share" of those services. Only UFC is alleged to

17  have done that.[8] This failure to plead that Endeavor possessed monopsony power in the alleged

18

---

19  [7] *See also* Am. Compl. § VI.B.3 ("The UFC has monopsony power with respect to Professional
20  MMA Fighter Services."); *id.* ¶ 20 ("[T]he UFC did not acquire and does not maintain its . . .
    monopsony power in the Relevant Input Market lawfully."); *id.* ¶ 98 ("The UFC has illegally
21  acquired, maintained, and exercised monopsony power in the market for Professional MMA
    Fighter services, *i.e.*, the Relevant Input Market"); *id.* ¶ 105 ("As the UFC gained and then
22  maintained market and monopsony power . . . ."); *id.* ¶ 151 ("The UFC possesses monopsony
    power in the Relevant Input Market . . . .").
23  [8] The Amended Complaint alleges that UFC alone purchased Professional MMA Fighter
24  services. *See, e.g.*, Am. Compl. ¶ 104(b) ("The 'Champion's Clause,' which allows the UFC, at
    is discretion alone, to extend a UFC Fighter's contract . . . ."); *id.* ¶ 104 ("The UFC's standard
25  agreements with Fighters have contained, during the 2000s and continuing into the Class Period .
    . . ."); *id.* ¶ 7 ("The UFC has the vast majority of top-ranked Professional MMA Fighters signed
26  to exclusive deals . . . ."); *id.* ¶ 10 ("[T]he UFC locked up all or virtually all Professional MMA
    Fighters with substantial national or regional notoriety or rank to long-term exclusive deals.");
27  *id.* ¶ 102 ("The UFC uses its monopsony power to extract exclusionary and restrictive
    concessions from all of its MMA Fighters."); *id.* ¶ 103 ("[T]he UFC uses standard-form
28  agreements with all or nearly all of its UFC Fighters").

Endeavor's Fourth Motion to Dismiss                                    No. 21-cv-01189-RFB-BNW

relevant input market is dispositive.  *See Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 693 (9th Cir. 2022) ("A failure to allege power in the relevant market is sufficient grounds to dismiss an antitrust complaint.").

### B.     Plaintiffs Fail To Plead Exclusionary Input-Market Conduct By Endeavor

Second, just as there is no allegation that Endeavor possessed monopsony power, there is no allegation that Endeavor willfully acquired such power through "exclusionary" conduct.  Nor would any such allegation make sense logically or legally "without [an allegation] of market power."  *Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1427 (9th Cir. 1993).  In order to establish such "exclusionary" conduct, plaintiffs would need to adduce plausible allegations of anticompetitive conduct in the allegedly monopsonized market.  *See Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1142–43 (9th Cir. 2022); *see also San Francisco Comprehensive Tours, LLC v. Tripadvisor, LLC*, No. 2:20-cv-02117, 2021 WL 4394253, at *6–7 (D. Nev. Sept. 24, 2021) ("Because Plaintiff cannot demonstrate that the parties are participants in the same relevant market and further, that Plaintiff suffered an antitrust injury, Plaintiff does not have standing to bring an antitrust suit.").  But the only conduct alleged (albeit in conclusory fashion) by plaintiffs with respect to Endeavor was in the alleged output market—relating to the promotion, licensing, or sale of the output of UFC events—not in the alleged labor market where the fighters participated as sellers of their services.  *See* Am. Compl. ¶ 30.  Nothing about those normal-course business transactions is alleged to have amounted to exclusionary conduct in the input market for purchasing fighter services.

Instead, the Amended Complaint alleges that UFC acquired monopsony power through UFC's supposed acts of "depriving actual and potential competitors in the Relevant Markets of necessary inputs (including, *e.g.*, top-ranked Professional MMA Fighters) and pursuing an aggressive strategy of merging with or purchasing the would-be rivals."  Am. Compl. ¶ 151. Again, however, those acts predate Endeavor acquiring a controlling interest in Zuffa, because UFC supposedly acquired that power no later than December 2010 (the start of the *Le* class period), UFC's most recent challenged acquisition occurred in 2011, *id.* ¶ 116, and the alleged buy-side foreclosure is primarily attributed to "UFC's standard agreements with Fighters" in place since the

"2000s," *id.* ¶ 104.[9]   The Complaint makes clear that plaintiffs' monopsony claim is based on UFC's conduct.  For example, it repeats more than two dozen times that plaintiffs are challenging "UFC's scheme," "UFC's anticompetitive scheme," or "UFC's exclusionary scheme."[10]   This failure to allege anticompetitive monopsonistic conduct by Endeavor is independently dispositive. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko*, LLP, 540 U.S. 398, 407 (2004) ("[T]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct." (emphasis in original)).

### C.   Plaintiffs Fail To Plead Anticompetitive Impact From Endeavor's Conduct

Naturally, because plaintiffs fail to allege any anticompetitive conduct by Endeavor, they cannot demonstrate anticompetitive impact from Endeavor's exclusionary conduct either. *American Ad Mgmt., Inc. v. General Tel. Co. of Cal.*, 190 F.3d 1051, 1056 (9th Cir. 1999) ("Without a violation of the antitrust laws, there can be no antitrust injury.").  Plaintiffs' entire theory of harm is that their compensation was "artificially suppressed" as a result of UFC's— again, not Endeavor's—conduct.  *See*, *e.g.*, Am. Compl. ¶¶ 40, 138, 154.  A plaintiff must "have suffered its injury in the market where competition is being restrained."  *Am. Ad Mgmt.*, 190 F.3d at 1057.  Not only is there no allegation of anticompetitive conduct by Endeavor, but there also is no allegation that Endeavor participated in the market for fighter services.  As a result, there cannot be any relevant impact from Endeavor's conduct.

## II.   PLAINTIFFS CANNOT HOLD ENDEAVOR VICARIOUSLY LIABLE FOR ZUFFA'S ALLEGED CONDUCT

Plaintiffs' failure to plead an independent case of monopsonization against Endeavor is dispositive.  It would violate black-letter antitrust law to permit plaintiffs to circumvent that pleading failure by holding Endeavor vicariously liable for Zuffa's actions, merely because Endeavor acquired Zuffa during the pendency of a litigation alleging on-going antitrust violations.

---

[9] As described *infra* Sections II–III, there is no legal basis for holding Endeavor liable for allegedly committing acts furthering monopsony power possessed by Zuffa in any event.  *See*, *e.g.*, Am. Compl. ¶¶ 9, 11, 17, 106, 111, 137–138, 142, 146. 152–153.

[10] *See*, *e.g.*, Am. Compl. ¶¶ 9, 12, 17, 20, 65, 101, 103, 106, 111, 113,  121, 137–138, 142, 146, 152–153.

As the Ninth Circuit has long recognized, a parent corporation "cannot be sued directly simply because it owns [a subsidiary's] stock." *Drinkwine v. Federated Publ'ns, Inc.*, 780 F.2d 735, 741 (9th Cir. 1985). Indeed, "specifically, in the antitrust context, courts have held that absent allegations of anticompetitive conduct by the parent, there is no basis for holding a parent liable for the alleged antitrust violation of its subsidiary." *Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 178 (E.D.N.Y. 2006); *Sherman v. British Leyland Motors*, Ltd., 601 F.2d 429, 441 (9th Cir. 1979) (holding that, without evidence of its participation in "any monopoly or attempt to monopolize," a parent's relationship with its subsidiary was "not enough" to impose antitrust liability). This follows from the "basic tenet of American corporate law" regarding corporate separateness. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). "As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). The Amended Complaint does not plead any extraordinary situation—such as an alter ego theory or veil piercing—that would justify setting aside these foundational principles, and plaintiffs' prior defense of the allegations against Endeavor disclaimed any vicarious liability theory. *See* Pls.' 1st Opp'n at 20–21, ECF No. 41.[11]

### III.    PLAINTIFFS CANNOT AVOID DISMISSAL MERELY BY CALLING ENDEAVOR AND ZUFFA A SINGLE CORPORATE FAMILY

Plaintiffs' failure to allege facts showing any direct liability against Endeavor, or extraordinary grounds for holding Endeavor vicariously liable for Zuffa's actions, requires dismissal of Endeavor. Knowing this, plaintiffs have previously argued that this Court may sustain a claim against Endeavor by showing merely that Endeavor and Zuffa "as a whole" violated Section 2, and that "Endeavor played a role" in that violation. Pls.' 1st Opp'n at 19, ECF No. 41. But the case law on which plaintiffs (incorrectly) rely arose to curb over-expansive application of the Sherman Act in conspiracy cases by holding that a parent corporation and its wholly owned

---

[11] In any event, plaintiffs could not credibly claim that the Amended Complaint comes close to pleading the "pervasive domination" of Zuffa by Endeavor that is an essential requirement for such an "alter ego" theory. *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, No. 2:13-md-02445, 2015 WL 12910728, at *2–3 (E.D. Pa. Apr. 14, 2015).

subsidiary are legally incapable of conspiring with each other in violation of Section 1 of the Sherman Act. *See infra* § III.A. That theory cannot be used to expand Section 2 monopsonization liability just because two entities are related. In all events, the Court need not delve into that theoretical issue, since plaintiffs fail to allege any facts about Endeavor that would satisfy their novel theory of collective "corporate family" liability. Pls.' 1st Opp'n at 20, ECF No. 41.

A. **The One-Purpose Rule For Conspiracy Cases Has No Application In This Unilateral Conduct Case**

Plaintiffs trace the origin of their "corporate family" liability theory to *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), *see* Pls.' 1st Opp'n at 19–20, ECF No. 41, but *Copperweld* set down no rule for expanded liability for affiliated-entities. The *Copperweld* opinion was expressly limited "to the narrow issue squarely presented: whether a parent and its wholly owned subsidiary are capable of conspiring in violation of § 1 of the Sherman Act." 467 U.S. at 767. The Supreme Court answered that question in the negative, and explained that it intended its ruling to rein in runaway application of the Sherman Act, not set it loose for broader applications. A "business enterprise should be free to structure itself in ways that serve efficiency of control, economy of operations, and other facts dictated by business judgment without increasing its exposure to antitrust liability," the Court explained. *Id.* at 773. *Copperweld* does not extend unilateral monopsonization liability from a corporate subsidiary to its parent.[12]

Courts have confirmed that the *Copperweld* doctrine in no way allows a parent corporation to be held liable for its subsidiary's alleged violation of Section 2 when the parent corporation's own conduct is not shown to independently violate that statute. *See Invamed, Inc. v. Barr Laboratories, Inc*., 22 F. Supp. 2d 210, 219 n.2 (S.D.N.Y. 1998) (*Copperweld* "did not hold that members of a corporate group thus should be treated as a single enterprise under Section 2."); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 217 (E.D.N.Y. 2003) (*Copperweld* "does not hold . . . that a parent corporation is separately liable for the acts of a subsidiary undertaken before the parent was even involved."). The only federal court of appeals

---

[12] We refer to "unilateral" or "single-firm" monopolization to distinguish claims alleging a conspiracy to monopolize under Section 2 of the Sherman Act. Plaintiffs do not assert a Section 2 conspiracy here. Indeed, they make no conspiracy allegations whatsoever.

that has considered "the viability of such a theory in the abstract" recognized that it implicated questions "rarely … presented in federal antitrust litigation."  *Lenox Maclaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1232 (10th Cir. 2017).  But that amounted to no more than a thought exercise: the court ultimately "affirm[ed] on claim-preclusion grounds" and decided to leave "for another day" the "question of what must be shown in order to hold a particular affiliated corporation liable as part of an inter-corporate scheme," because regardless of how the court resolved that question, "the outcome of the case would be the same": dismissal.  *Id.* at 1232, 1239.  One thing the *Lenox* court did make clear, however, was that its opinion should not "be read to suggest that a corporation can be held liable under § 2 for the anticompetitive conduct of one or more related entities, merely by virtue of its place in the same corporate family."  *Id.* at 1237.

No federal court of appeals—including the Ninth Circuit—has held a parent corporation liable for its subsidiary's monopolization (or monopsonization) on the basis of *Lenox*'s musings. Such a novel step would undermine, in several ways, core tenets of the Sherman Act, and the very purpose of the *Copperweld* doctrine on which the *Lenox* case relied.  First, as discussed above, the *Copperweld* doctrine was intended to limit Sherman Act application, not expand it.  *Supra* p. 10. But holding Endeavor liable for monopsonization under Section 2 where its acts do not allegedly independently constitute monopsonization would, by definition, expand Section 2 liability. Second, holding a parent company liable for its subsidiary's maintenance or acquisition of monopoly (or monopsony) power in a relevant market, where the parent company possesses no such power, would violate black-letter law that a unilateral restraint on trade, even an unreasonable one, is "unlawful only when it threatens actual monopolization."  *Copperweld*, 467 U.S. at 767. Applying the *Copperweld* doctrine offensively in conspiracy cases does not raise that concern because there is no monopoly power requirement in those cases.  *Id.* at 768 ("[I]t is not necessary to prove that concerted activity threatens monopolization.").  And, finally, there is a far greater concern and risk that the Sherman Act will "threaten to discourage the competitive enthusiasm that the antitrust laws seek to promote" when applied overzealously to unilateral conduct than when applied to a conspiracy.  *Id.* at 775.  There is a lesser concern of "dampen[ing] the competitive zeal of a single aggressive entrepreneur" in conspiracy cases because they necessarily require concerted

1   action, which is more "fraught with anticompetitive risk" than unilateral conduct.  *Id.* at 768–69.

2   The Supreme Court explained the "basic distinction" between concerted and independent action

3   under the Sherman Act in *Copperweld* and cautioned that "[a]ny reading of the Sherman Act that

4   remains true to the Act's distinction between unilateral and concerted conduct will necessarily

5   disappoint those who find that distinction arbitrary."  *Id.* at 767, 774 (citation omitted).  That

6   distinction, and these points, show that the *Lenox* theory cannot apply in this unilateral monopsony

7   case.

8          Plaintiffs have portrayed the Ninth Circuit's decision in *Arandell Corp. v. Centerpoint*

9   *Energy Services, Inc.*, 900 F.3d 623 (9th Cir. 2018), as having already adopted a theory of joint

10  parent-and-subsidiary monopolization liability.  *See* Pls.' 1st Opp'n at 19–23, ECF No. 41.  But

11  *Arandell* did no such thing.  It was a conspiracy case governed by Section 1, *see Arandell*, 900

12  F.3d at 629, not a Section 2 unilateral monopsonization case like this one.  *Arandell* addressed a

13  subsidiary's defense that, although it sold products pursuant to a fixed price, it did not do so with

14  the requisite "anticompetitive intent," because its parent company was responsible for actually

15  conspiring with others to achieve that price fixing.  *Id.*  at  629–32.    Applying  *Copperweld*

16  conspiracy principles, the court concluded that a wholly owned subsidiary acts "with the purposes

17  of the single 'economic unit' of which it is a part" when it "engages in coordinated activity in

18  furtherance of the anticompetitive scheme of its parent."  *Id.* at 632.  As a conspiracy case primarily

19  addressing the question of intent to participate in a conspiracy, *Arandell* did not—and had no

20  occasion to—address any of the concerns arising from an offensive use of the *Copperweld* one-

21  purpose doctrine in unilateral-conduct cases.  Nor did *Arandell* address an attempt to hold a parent

22  liable for the acts of its subsidiary (as plaintiffs seek to do here with respect to a corporate parent

23  that—it bears repeating—held complete ownership of Zuffa for less than two years, from 2021 to

24  2023).  *See id.* (addressing "anticompetitive scheme of [the] parent and/or commonly owned

25  affiliates").

26

27

28

**B.      Plaintiffs' Single-Entity Theory Still Fails To Plead A Claim Against Endeavor**

But this Court need not decide whether to push *Arandell* even further from its origins, since the facts alleged in the Amended Complaint do not remotely establish the circumstances that would justify the imposition of Sherman Act liability on an affiliated company under *Arandell*.  The *Arandell* opinion makes clear that its ruling and the principles from *Copperweld* do "not supply a theory of unbounded vicarious liability for the acts of legally distinct entities." *Id.* at 633 (emphasis in original).  Instead, *Copperweld* "speaks only of a 'unity of purpose'" between a subsidiary and parent company for purposes of conspiracy claims.  *Id.*  Thus, even if this corporate "unity of purpose" was permitted as a step toward offensively holding related entities liable, plaintiffs still must allege that UFC and Endeavor "engage[d] in 'coordinated activity,'" and that Endeavor itself "engaged in anticompetitive conduct," which in *Arandell* meant the affiliated entity's "role was essential to securing the benefit" of the alleged scheme, and that its "acts were the immediate cause of Plaintiffs' injuries." *Id.* at 633–35.  It would not be enough to fit the *Arandell* scenario if Endeavor's role was "only helpful" to the alleged scheme; it must instead be "crucial" or "critical" to it. *Id.* at 635.  The Complaint simply does not allege facts establishing any of those requirements as to Endeavor.

**1.      There Is No Coordinated Monopsonization Alleged**

Even if plaintiffs' unaccepted single-entity theory applied (it does not), it would still fail because there is no allegation that Endeavor coordinated any monopsonistic acts with UFC or its owner (Zuffa Parent, LLC).  There is no allegation that Endeavor participated in the portion of Zuffa's business that involves selecting, retaining, or compensating MMA fighters.  The Amended Complaint therefore fails at this threshold step.  *See Chandler v. Phoenix Servs.*, No. 7:19-cv-00014, 2020 WL 1848047, at *15 (N.D. Tex. Apr. 13, 2020) ("Given Phoenix's lack of knowledge, intent, and involvement in HOTF's injurious acts, Phoenix may not be held liable as part of a single enterprise."), *aff'd*, 45 F.4th 807 (5th Cir. 2022).

13

### 2.     Endeavor's Acts Were Not "Critical" To The Alleged Scheme

Further, none of Endeavor's acts could be considered "critical" or "crucial" to the alleged monopsonization.[13]  To the contrary, in the *Le* Action, plaintiffs' counsel explained that "our claim is based on monopsony power," "[a]ll we need to show is monopsony power," "[w]e're seeking no damages based on monopoly," and the output-market allegations are an "additional argument that's not necessary."  Evid. Hr'g Tr. at 46:25–48:8, *Le*, ECF No. 745; *see also supra* § II.C.  Plaintiffs take the same position here.  *See* Pls.' 1st Opp'n at 5, ECF No. 41 ("Those anticompetitive effects [in the output market] are relevant, but they are not necessary."); *id.* at 8 ("[A]lthough not required to state a claim, Defendants' monopoly power is relevant").  Plaintiffs specifically allege that the scheme began as early as December 2006—just shy of a decade before Endeavor acquired a controlling interest in Zuffa, and nearly fifteen years before Endeavor wholly acquired Zuffa.  Am. Compl. ¶¶ 30, 112.  Endeavor could hardly be "crucial" or "critical" to a scheme that so substantially predated its involvement.  And it is clear that plaintiffs agree, as they initiated the *Le* Action—based on the "same scheme" (their words) alleged in *Johnson*—nearly two years before Endeavor's initial investment in Zuffa.  Because Endeavor's participation was not necessary for the alleged scheme to exist, it goes without saying that its acts cannot be sufficiently "critical" or "crucial" to support liability under *Arandell*.  *See In re Lantus Direct Purchaser Antitrust Litig.*, No. 1:16-cv-12652, 2022 WL 4239367, at *29 (D. Mass. Aug. 17, 2022) ("[T]his case is further distinguishable from *Arandell* because Sanofi P.R.'s cooperation was not necessary for Sanofi U.S. to maintain the alleged antitrust scheme."), *report and recommendation adopted*, 2022 WL 4237276 (D. Mass. Sept. 14, 2022).

### 3.     Endeavor's Acts Are Not Alleged To Have Immediately Caused Plaintiffs' Claimed Injuries

Plaintiffs' single-enterprise theory fails for a third independent reason: there are no allegations that producing events, selling media and sponsorship rights, or licensing UFC intellectual property—services Endeavor provides for many clients—were the immediate cause of

---

[13] As described above, nor does the Complaint allege that any of Endeavor's acts were anticompetitive in any event.  *See supra* § I.B.

any of plaintiffs' claimed injuries.  To the contrary, at a hearing in the *Le* Action, plaintiffs' counsel stated plainly that "[w]e're arguing for no impact based on monopoly."  Evid. Hr'g Tr. at 48:5–6, *Le*, ECF No. 745.  The Amended Complaint attributes injury to underpayment through UFC's contracts with fighters. *See supra* § I.C.  And in the "virtually identical" *Le* Action, plaintiffs' impact expert attempted to measure the effect of supposed "foreclosure" arising only from the use of those contracts—not from anything that occurred in any output market.  *See* Pls.' Class Cert. Reply at 22, *Le*, ECF No. 554 ("Plaintiffs' damages reflect only the harm caused by Zuffa's illegal Exclusive Contracts.").[14]  This case is thus nothing like *Arandell*, where the anticompetitive conduct was a price-fixing scheme by the parent corporation, and the subsidiary actually sold the price-fixed product.  900 F.3d at 629.  By contrast, here, Endeavor's alleged acts all related to a different market (the output market), and the Amended Complaint does not (and cannot) plausibly plead that those Endeavor acts were the immediate cause of plaintiffs' claimed harm from the alleged input-market monopsonization.  *See In re Lantus*, 2022 WL 4239367, at *28 (finding no affiliate liability under single-entity theory because "no reasonable jury could conclude" that the subsidiary's acts, "as opposed to [the parent's] decision to set prices at a certain level, 'were the immediate cause of Plaintiffs' injuries'").

## CONCLUSION

For the foregoing reasons, Endeavor respectfully requests that the Court dismiss Endeavor from this litigation.

---

[14] Because plaintiffs bring these claims as a putative class action, they cannot now argue that it was Endeavor's conduct, and not UFC's conduct, that was the immediate cause of their alleged injuries without destroying the *Le* plaintiffs' reliance on Dr. Singer's regression to measure impact, and undermining any claim of common impact within this case as well.  Should plaintiffs advance that argument, defendants will move to vacate the class certification ruling in *Le*, as Endeavor became the controlling owner of Zuffa during that class period and plaintiffs have not presented any method for differentiating between alleged impact caused by Endeavor as against Zuffa.

Dated: October 7, 2024

Respectfully Submitted,

/s/ Christopher S. Yates

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8095

BRETTE M. TANNENBAUM (*Pro hac vice*)
btannenbaum@paulweiss.com
YOTAM BARKAI (*Pro hac vice*)
ybarkai@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222

DAVID L. JOHNSON (*Pro hac vice*)
dav*id*.johnson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004

*Attorneys for Defendants Zuffa, LLC, TKO Operating Company, and Endeavor Group Holdings, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Endeavor's Fourth Motion to Dismiss was served on October 7, 2024 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/   *Christopher S. Yates*
Christopher S. Yates of
LATHAM & WATKINS LLP