**LOCKRIDGE GRINDAL NAUEN PLLP**
W. Joseph Bruckner (admitted *pro hac vice*)
Brian D. Clark (admitted *pro hac vice*)
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Phone: (612) 596-4001/Fax: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

**LOCKRIDGE GRINDAL NAUEN PLLP**
Kyle Pozan (admitted *pro hac vice*)
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Phone: (612) 339-6900
Email: kjpozan@locklaw.com

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Kajan Johnson, Clarence Dollaway, and Tristan Connelly, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa LLC, Zuffa Parent LLC n/k/a TKO Operating Company, LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,<br><br>Defendants. | 2:21-cv-01189-RFB-BNW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ENDEAVOR GROUP HOLDINGS, INC.'S FOURTH MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................................1

II.  LEGAL STANDAD ............................................................................................................3

III. ARGUMENT ........................................................................................................................4

    A.   Plaintiffs Adequately Allege Endeavor's Controlling Role in Defendants' Scheme ..........4

    B.   Plaintiffs' Allegations of Monopsony Power Against Zuffa Suffice Given the Other
        Allegations of Endeavor's Role in the Scheme .................................................................9

    C.   Endeavor's Alleged Exclusionary Conduct Establishes Liability .....................................10

    D.   Plaintiffs Remain Entitled to Discovery from Endeavor ...................................................12

IV.  CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*,
  900 F.3d 623 (9th Cir. 2018) ..................................................................................................... Passim

*Arnold Chevrolet LLC v. Tribune Co.*,
  418 F. Supp. 2d 172 (E.D.N.Y. 2006) ................................................................................................ 7

*Fluor Corporation v. Resolute Management, Inc.*,
  2022 WL 2101891 (C.D. Cal. May 4, 2022) .................................................................................. 3, 8

*Hennegan v. Pacifico Creative Serv., Inc.*,
  787 F.2d 1299 (9th Cir. 1986) ...................................................................................................... 10, 11

*Jones v. Varsity Brands, LLC*,
  618 F. Supp. 3d 713 (W.D. Tenn. 2022) ............................................................................................ 10

*Jones v. Varsity Brands, LLC*,
  618 F. Supp. 3d 725 (W.D. Tenn. 2022) ............................................................................................ 10

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................................................................... 3

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc*,
  847 F.3d 1221 (10th Cir. 2017) ................................................................................................ 4, 5, 6, 9

*Mack v. South Bay Beer Distributors, Inc.*,
  798 F.2d 1279 (9th Cir. 1986) ............................................................................................................. 3

*Oliver v. SD-3C LLC*,
  751 F.3d 1081 (9th Cir. 2014) ...................................................................................................... 10, 11

*Plevy v. Haggerty*,
  38 F. Supp. 2d 816 (C.D. Cal. 1998) ............................................................................................... 3, 8

*Richardson v. Oppenheimer & Co. Inc.*,
  2014 WL 1304343 (D. Nev. Mar. 31, 2024) ....................................................................................... 8

*Samsung Elecs. Co. v. Panasonic Corp.*,

   747 F.3d 1199 (9th Cir. 2014) ................................................................................................ 10, 11

*Wells v. Global Tech Industries*,

   658 F. Supp. 3d 912 (D. Nev. 2023) ............................................................................................ 3, 8

Statutes

15 U.S.C. § 1 ......................................................................................................................................... 5

15 U.S.C. § 2 ......................................................................................................................................... 4

Rules

Federal Rule of Evidence 201 ............................................................................................................... 3

PLAINTIFFS' OPPOSITION TO DEFENDANT ENDEAVOR GROUP HOLDINGS, INC.'S FOURTH MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## I. **INTRODUCTION**

Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly ("Plaintiffs") filed their Amended Complaint on December 15, 2023 against Endeavor Group Holdings, Inc., Zuffa, LLC, and TKO Operating Company, LLC ("Defendants").[1] TKO Operating Company, LLC ("TKO") did not move to dismiss the complaint.[2] The Court denied without prejudice Zuffa, LLC ("Zuffa") and Endeavor Group Holdings, Inc.'s ("Endeavor") joint motion to dismiss on September 30, 2022.[3] Together, Zuffa and TKO subsequently answered the Amended Complaint.[4] Endeavor has now filed another motion to dismiss the Amended Complaint (the "Motion" or the "4th Motion").[5] None of Endeavor's arguments for dismissal has merit.[6] And despite the Court's statement that it would permit discovery of Endeavor's alleged role in the alleged anticompetitive scheme before entertaining another motion to dismiss,[7] Endeavor has, to date, failed to produce documents in response to Plaintiffs' document requests. Thus, this Motion is, at minimum, premature. Should the Court decide not to dismiss the 4th Motion this time with prejudice, the Motion should be denied without prejudice again; Endeavor should be forced to produce documents relating to its alleged role in the challenged conduct; and only then should a Rule 12 motion be entertained.

As this Court recognized in ruling on class certification and summary judgment in *Le*, Plaintiffs have amassed copious evidence that the UFC engaged and continues to engage in the alleged scheme (the "Scheme") in violation of Section 2 of the Sherman Act, maintaining and enhancing the UFC's monopsony power, and causing alleged anticompetitive harms.[8] UFC used a string of acquisitions to acquire top-level MMA fighters and then imposed exclusive contracts on all of its professional mixed martial arts ("MMA") fighters that are long-term on paper and perpetual in practice. Am. Compl. ¶ 5. It signed the vast majority of fighters ranked highly in their respective weight classes to exclusive contracts. *Id.* at ¶ 81. It acquired

---

[1] Plaintiffs' Amended Complaint ("Am. Compl."), ECF No. 118.
[2] *See* Defs.' Mot. to Dismiss, ECF No. 17 ("Defs.' 1st Mot.").
[3] Mot. Hr'g Tr. at 29:14-15, ECF No. 69; Min. Order, ECF No. 158.
[4] ECF No. 129.
[5] Endeavor filed its Fourth Motion to Dismiss ("Def.'s 4th Mot.") on October 7, 2024, ECF No. 160.
[6] Def.'s 2d Mot. to Dismiss, ECF No. 117 ("Def.'s 2d Mot."); Def.'s 3d Mot. to Dismiss, ECF No. 128 ("Def.'s 3d Mot.").
[7] *See* Mot. Hr'g Tr. at 23:14-22, ECF No. 69.
[8] Class Cert. Order, *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev.), ECF No. 839; *see also* Order Den. Summ. J., *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev.), ECF No. 959.

and otherwise foreclosed potential competitors. *Id.* at ¶ 101. It coerces fighters—especially those that win and attract large audiences—into new long-term contracts. *Id.* at ¶ 9. It does so in part by forcing fighters to sign new contracts before the old ones expire on pain of being deprived of fights—and thus pay—or being forced to face undesirable opponents. *Id.* Moreover, the strands of the scheme—contracts, acquisitions, and coercion—are inextricably intertwined. *Id.* at ¶ 9. For example, the acquisitions and the coercion lock fighters into the contracts. *Id.* Similarly, the contracts require fighters to compete only in UFC bouts, depriving potential competitor MMA promotions of a critical mass of top-ranked Fighters. *Id.* at ¶¶ 85, 142, 153. Plaintiffs allege that Endeavor was directly involved in the alleged Scheme. *Id.* at ¶ 32.

This same basic continuing Scheme is the basis both for the *Le* and the *Johnson* cases.[9] This case differs from *Le* in three ways: (1) it seeks to hold accountable Endeavor, the majority owner of Zuffa since 2016, for its active involvement in suppressing fighter compensation; (2) it seeks to preserve the rights of fighters allegedly injured by Defendants' conduct after June 30, 2017, when the *Le* class period ends; and (3) it seeks injunctive relief to stop the alleged anticompetitive practices. Am. Compl. ¶ 157.

These efforts should be uncontroversial. Endeavor and its affiliates paid approximately $4 billion in 2016 for the UFC. *Id.* at ¶ 30. Endeavor itself acquired a controlling interest in part to oversee the management of the UFC. *Id.* It would have been more efficient for Endeavor simply to acknowledge that this new *Johnson* case may proceed—as *Le* has—and that *the evidence* should determine whether the case against it succeeds. Indeed, that is essentially what the Court reasoned with Endeavor's prior effort to dismiss the *Johnson* case.[10] Despite discovery having not yet gotten under way from Endeavor, Endeavor has nonetheless filed yet another motion to dismiss, just as it previously did in this case, and as the UFC previously did unsuccessfully in *Le*. *See Le v. Zuffa, LLC,* 216 F. Supp. 3d 1154 (D. Nev. 2016).

Endeavor's motion makes two primary arguments. First, Endeavor contends Plaintiffs failed to allege facts showing any direct liability against it. Endeavor argues that Plaintiffs' pleading seeks improperly to hold Endeavor vicariously liable for Zuffa's actions. *See* Def.'s 4th Mot. at 8. Not so. As discussed below in Section III.A, Plaintiffs allege that Endeavor played an active, significant role in the

---

[9] Am. Compl., ECF No. 118.
[10] Mot. Hr'g Tr. at 23:14-22, ECF No. 68 (Court denied motion to dismiss without prejudice and suggested focused discovery on the role of Endeavor before dismissing Endeavor with prejudice).

alleged anticompetitive Scheme. Am. Compl. ¶¶ 30-31; *see also infra* Section III.C. Relevant cases—including controlling Ninth Circuit precedent—hold that those allegations suffice. *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F. 3d 623, 629-32 (9th Cir. 2018).

Second, Endeavor argues that Plaintiffs do not allege it possesses monopsony power. *See* Def.'s 4th Mot. at 6. On the contrary, Plaintiffs allege Defendants, including Endeavor, possess monopsony power and that such power over MMA fighters has grown over time throughout the proposed Class Period in *Johnson* (*i.e.*, July 1, 2017 to the present) in this case. *See*, *e.g.*, Am. Compl. ¶¶ 100-102, 112, and Section III.B *infra*.

If, however, the Court is not persuaded to deny Endeavor's motion to dismiss outright, it should require the parties to meet and confer on outstanding discovery, oversee any disputes, and allow Plaintiffs to amend their Complaint with evidence regarding Endeavor's additional involvement in the alleged scheme obtained through discovery.

For these reasons, the Court should deny Endeavor's Motion in its entirety.

## II. <u>LEGAL STANDARD</u>

The Court should take Plaintiffs' non-conclusory allegations as true, view them in the light most favorable to Plaintiffs, and determine whether they plausibly satisfy the elements of a claim. *Le*, 216 F. Supp. 3d at 1163-64. Further, contrary to the 4th Motion, the Court should consider the allegations in the Amended Complaint, not assertions by Defendants, articles that appear on the internet, or other sources that are not properly subject to judicial notice. *Id.* at 1164.

However, while Rule 12(b)(6) review is generally limited to the complaint, Federal Rule of Evidence 201 permits a court to take judicial notice of "matters of public record outside the pleadings." *Wells v. Global Tech Industries*, 658 F. Supp. 3d 912, 916 (D. Nev. 2023) (citing *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 821 (C.D. Cal. 1998); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). "It is . . . well established that courts may take judicial notice of SEC filings." *Wells*, 658 F. Supp. 3d at 912 (citing *Fluor Corporation v. Resolute Management, Inc.*, No. 8:21-cv-01907, 2022 WL 2101891, at *2 (C.D. Cal. May 4, 2022)).[11]

---

[11] *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (discussing exceptions to rule that assessment of a complaint is limited to its face).

## III. ARGUMENT

### A. Plaintiffs Adequately Allege Endeavor's Controlling Role in Defendants' Scheme

Endeavor claims that Plaintiffs seek to hold Endeavor liable without "showing any direct liability against Endeavor." Def.'s 4th Mot. at 9. Untrue. Plaintiffs seek to hold Endeavor liable because of *its own conduct*. All that is necessary at this stage is to establish that: (1) the corporate family, which includes Endeavor and Zuffa, as a whole violated Section 2 of the Sherman Act, 15 U.S.C. § 2; and (2) Endeavor played a role in that violation. *Arandell*, 900 F.3d at 631 (discussing *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017)). Endeavor ignores this point and the ruling in *Arandell*, which constitutes binding Ninth Circuit law, contending that Plaintiffs are trying to hold Endeavor liable for the acts of Zuffa. *See* Def.'s 4th Mot. at 8-9. But Endeavor's effort to avoid the *Arandell* Court's recognition that its reasoning applies to Section 2 cases dooms its argument.

*Arandell* addressed when one entity is liable for an antitrust violation involving another entity in the same corporate family. 900 F.3d at 629-32 (discussing the so-called *Copperweld* doctrine that governs, *inter alia*, when different related corporations can be liable for anticompetitive conduct) (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984)). Relying on the Tenth Circuit's reasoning in *Lenox*, the *Arandell* Court set forth a two-step analysis for a Section 2 claim, like the one before the Court here.

As applied in this context, the first step is to determine whether Plaintiffs have alleged that the enterprise—or corporate family—*as a whole* committed a Section 2 violation. *Id.* ("in a single-enterprise situation, it is the affiliated corporations' collective conduct—*i.e.*, the conduct of the *enterprise* they jointly compose—that matters; it is the *enterprise* which must be shown to satisfy the elements of a [Section 2] claim") (emphasis and alterations in original) (quoting *Lenox*, 847 F.3d at 1236). Plaintiffs do not need to allege "that 'specific Defendants' independently satisfied each necessary element of the claims." *Id.* (emphasis and alterations in original) (quoting *Lenox*, 847 F.3d at 1236); *see also Las Vegas Sun, Inc. v. Adelson*, No. 2:19-cv-01667, 2020 WL 7029148, at *10 (D. Nev. Nov. 30, 2020) (denying motion to dismiss under *Arandell* for monopolization by corporate owners); *Hightower v. Celestron Acquisition, LLC*, No. 5:20-cv-03639, 2021 WL 2224148, at *11 (N.D. Cal. Jun. 2, 2021) (same).

The second step is to assess whether Plaintiffs have alleged that each defendant in a corporate family *played a role* in the antitrust violation. According to the Ninth Circuit, the Tenth Circuit in *Lenox* agreed that a plaintiff's "burden of establishing any individual defendant's liability required showing *only* that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by the enterprise as a whole." *Arandell*, 900 F.3d at 631 (quoting *Lenox*, 847 F.3d at 1230) (emphasis added). As *Arandell* further explained, "*Copperweld* 'forecloses' a result that would allow sophisticated companies to evade Section 2 liability by spreading anticompetitive schemes over multiple affiliates." *Id.* at 632 (quoting *Lenox*, 847 F.3d at 1236). Also, under *Arandell*, a corporation is liable if it charged inflated prices (or paid deflated compensation) as part of its corporate family's antitrust violation. *Id.* at 634.

Endeavor attempts to distinguish *Arandell* by arguing, "It was a conspiracy case governed by Section 1 . . . not a Section 2 unilateral monopsonization case like this one." Def.'s 4th Mot. at 9-10. Endeavor contends that Plaintiffs are trying "to push *Arandell* even further from its origins" by arguing that it applies to Section 2 cases. *See* Def.'s 4th Mot. at 13. Yet the Ninth Circuit held that it and the Tenth Circuit in *Lenox*, a Section 2 case, "reached the same conclusion." *Arandell*, 900 F.3d at 631. The Ninth Circuit thus made clear in *Arandell* that it adopted the same legal test as the Tenth Circuit in *Lenox* and that the test applies equally in Section 1 and Section 2 cases.

Endeavor also tries to distort *Arandell* by claiming the case requires Plaintiffs to show it played a "'crucial' or 'critical'" role in the anticompetitive scheme. Def.'s 4th Mot. at 13. But that is not what *Arandell* requires. Instead, as *Lenox* held, and *Arandell* adopted, the "burden of establishing any individual defendant's liability require[s] showing *only* that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by the enterprise as a whole." *Arandell*, 900 F.3d at 631 (quoting *Lenox*, 847 F.3d at 1230) (emphasis added). That is "because 'in a single-enterprise situation, it is the affiliated corporations' collective conduct—*i.e.*, the conduct of the *enterprise* they jointly compose—that matters; it is the *enterprise* which must be shown to satisfy the elements of a [Section 2] claim.'" *Arandell*, 900 F.3d at 631 (quoting *Lenox*, 847 F.3d at 1236) (alterations in original) (emphasis in original). *Arandell* therefore does not require Plaintiffs to show that Endeavor's conduct independently violated the statute, only that it played a role in the alleged Scheme.

Endeavor argues that Plaintiffs failed to plead it "'engage[d] in coordinated activity' [with Zuffa] and that Endeavor itself 'engaged in anticompetitive conduct.'" Def.'s 4th Mot. at 13. To make its argument, Endeavor tries to twist a single line in the *Arandell* decision into a heightened standard. In that case, the plaintiffs had submitted evidence that the subsidiary "sold gas at rigged prices and then distributed the proceeds up to its parent's coffers." *Arandell*, 900 F.3d at 634. The subsidiary did not deny that it had sold gas it purchased from the parent to consumers in Wisconsin. *Id.* The Court remarked, "Crediting Plaintiffs' evidence, [the subsidiary's] role was essential to securing the benefit of the other Reliant defendants' price-fixing (at least in Wisconsin) . . . ." *Id.* at 634-35. Endeavor claims that this language means its role in this case must "be 'crucial' or 'critical'" to the scheme. Def.'s 4th Mot. at 13. But *Arandell* never stated it was necessary for a member of a corporate family to play an essential role in a scheme for it to be liable; it merely recognized that when the corporate family member played an essential role, it necessarily played a sufficient role. *See Arandell*, 900 F.3d at 634-35.

*Arandell* eliminated any ambiguity on this point by explaining that a "wholly owned subsidiary that engages in coordinated activity in furtherance of the anticompetitive scheme of its parent and/or commonly owned affiliates is deemed to engage in such coordinated activity with the purposes of the single 'economic unit' of which it is a part." *Id.* at 631-32. That is consistent with *Arandell's* holding that "any individual defendant's liability require[s] showing *only* that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by the enterprise as a whole." *Arandell*, 900 F.3d at 631 (quoting *Lenox*, 847 F.3d at 1230) (emphasis added).

Plaintiffs satisfy the *Arandell* standard. Plaintiffs allege that Endeavor played an important role in the scheme—for example, that Endeavor negotiates and executes pay-per-view ("PPV"), media, and sponsorship agreements on behalf of the UFC and its Fighters. Am. Compl. ¶ 30 (citing Endeavor Group Holdings, Inc., Amendment No. 1 to Form S-1 Registration Statement (Apr. 20, 2021) ("Endeavor S-1"), at 5-8, 108-09, 124, 154, 156-57),[12] and that the Scheme has inflated the UFC's PPV prices significantly

---

[12] *Compare* Am. Compl. ¶ 30 & nn.5-6 (citing Endeavor S-1 at 4-7, 109, 121, 148, 150), with *id.* ¶ 47 (explaining that promotions in the Relevant Output market generate revenue through "broadcast of the event on PPV, television, or over the Internet as well as through the sale of live and taped television programming, video-on-demand, merchandise . . . , event sponsorships, and the collection of MMA-related copyright and trademark royalties").

above competitive levels. *Id.* ¶¶ 47, 145. In other words, Endeavor charged artificially inflated prices, an act that renders it liable for the Scheme. *Arandell*, 900 F.3d at 634.

Plaintiffs also allege that Defendants' Scheme involves blocking sponsors from working with actual or potential rivals and using sponsorship agreements to threaten, intimidate, and retaliate against MMA fighters who work with or for would-be rivals or speak out against the UFC. Am. Compl. ¶¶ 104(g), 107-08, 113(a), 115. Plaintiffs further allege that the UFC enhanced its control over fighters by imposing other restrictions in fighter contracts regarding sponsorship agreements, *id.* ¶ 105, and that Endeavor negotiated these sponsorship agreements. *Id.* ¶ 30 & n.5 (citing Endeavor S-1 at 4-7, 109, 121, 148).

Plaintiffs also allege that Endeavor claims to operate the UFC's online video streaming platform, which the UFC uses to deprive would-be rivals of necessary inputs to promote MMA events. *Id.* ¶ 30 & n.7 (citing Endeavor S-1 at 5, 49, 108, 150-51); *id.* ¶ 65.

Plaintiffs' Amended Complaint also supports the plausible inference that Endeavor's involvement in the Scheme runs even deeper. It alleges Endeavor's direct participation in the UFC's day-to-day business activities involving the promotion of live professional MMA bouts and events featuring members of the Class. Am. Compl. ¶¶ 30-31, 45-52, 98-99. Those allegations include statements from Endeavor's own SEC filings wherein it purports to operate all aspects of the UFC's business, including managing and promoting the UFC's live professional MMA bouts and producing and distributing the UFC's live professional MMA programming. *Id.* ¶ 30 & n.3 (citing Endeavor S-1, at 108).[13] Endeavor even boasts that the corporation and its employees hold promotions' and matchmakers' licenses in various states allowing them to organize and promote the UFC's live Professional MMA events. *Id.* ¶ 30 & n.4 (citing Endeavor S-1 at 159).

---

[13] The detailed allegations in the Amended Complaint here are unlike the pleadings in *Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 178 (E.D.N.Y. 2006) (cited in Def.'s 4th Mot. at 6), where "there [we]re no allegations in the Amended Complaint that even suggest that [the parent company] was involved in [the subsidiary]'s actions in any way" and the "[p]laintiffs' failure to articulate *any* specific allegations against [the parent corporation] [wa]s fatal to their claims." (emphasis in original). Similarly, in *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, the plaintiffs "failed to allege that [the parent corporation] exercised sufficient control or pervasive domination over [the subsidiary] to support attributing [the subsidiary]'s market power to [the parent]." No. 13-MD-2445, 2015 WL 12910728, at *3 (E.D. Pa. Apr. 14, 2015) (cited at Defs.' 1st Mot. to Dismiss at 6-7).

In addition to Endeavor's own SEC filings and other statements, the SEC filings for defendant TKO, formerly known as Zuffa Parent LLC, underscores Endeavor's influence on and extensive role in running the UFC.[14] TKO's 8-K contradicts Endeavor's repeated, incorrect assertions that Endeavor's actions are not "critical" or "crucial" to the alleged scheme. Def.'s 4th Mot. at 13. In fact, in return for TKO paying Endeavor *$35 million every year* under the "Services Agreement,"[15] Endeavor provides TKO and its subsidiaries (including Defendant Zuffa) *50* different services relating to UFC's operation, including:[16]

- Streaming Services
- Live Event Production Services
- Content Production Services
- Ticketing and Hospitality Services
- Sale/Licensing of Content Rights Services
- Marketing/Events Services
- Consumer Product Licensing Services
- Sponsorship Services
- Corporate Development Services
- Immigration Services
- Corporate Legal Services

The Services Agreement between Defendants Endeavor and TKO further grants Endeavor, as Service Provider, significant control over TKO and its subsidiaries. *Id.* at 136. It requires the Service Recipient

---

[14] Plaintiffs respectfully request that the Court take judicial notice of Defendant TKO's SEC 2023 8-K filings, which are a matter of public record whose accuracy is not in dispute. "It is…well established that courts may take judicial notice of SEC filings." *Wells*, 658 F. Supp. 3d at 912 (citing *Fluor*, 2022 WL 2101891, at *2); *Plevy*, 38 F. Supp. 2d. at 821 (SEC documents, including 8-Ks and 10-Qs, "are public records required by the SEC to be filed, [and] the Court may take judicial notice of them."); *Richardson v. Oppenheimer & Co. Inc.*, No. 2:11-cv-02078-GMN, 2014 WL 1304343, at *3 (D. Nev. Mar. 31, 2024) ("SEC filings are judicially noticeable documents which may be considered on a motion to dismiss."). To the extent that TKO's SEC 8-K filings may be noticeable only for the fact of its publication and not for its contents, Plaintiffs respectfully request leave to amend the complaint to address these facts.

[15] *See* TKO Group Holdings, Inc, Annual Report (8-K) at 134 (Sept. 12, 2023), available at https://investor.tkogrp.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=16926499

[16] *Id.* at 148-154.

(in this case TKO or its affiliate, *id.* at 129) to adhere in all material aspects to the applicable and reasonable policies and procedures of the Service Provider. *Id.* at 136. Additionally, the agreement mandates that the Service Recipient provide all necessary data and information required to the Service Provider.

Non-conclusory allegations in the Amended Complaint, and public information of which this Court may take judicial notice, thus plausibly establish that Endeavor plays various central roles in the alleged Scheme—just as it plays various and extensive roles in running the UFC. *Id.* at ¶¶ 30-31. That exceeds the standard for stating a claim against Endeavor—that it must play "a role" in the alleged Scheme. *Arandell*, 900 F.3d at 631.

### B. Plaintiffs' Allegations of Monopsony Power Against Zuffa Suffice Given the Other Allegations of Endeavor's Role in the Scheme

In their first motion to dismiss, Zuffa and Endeavor argued Plaintiffs failed to allege that Defendants possess monopsony power.[17] The Court rejected this argument in denying Defendants' motion.[18] Endeavor now complains that Plaintiffs direct all allegations of monopsony power only against Zuffa, not Endeavor.[19] Endeavor again ignores *Lenox* and *Arandell*. In *Lenox*, while the district court granted Defendants' motion because Lenox could not establish the monopoly-power aspect of its Section 2 claims, the Tenth Circuit disagreed with the narrow lens through which the district court viewed Lenox's claims. The Tenth Circuit held that parent and subsidiary companies could be held liable for Section 2 violations based on their collective conduct, without proof that the companies independently satisfy each element of a monopolization or attempted monopolization claim. *Lenox*, 847 F.3d at 1235-36. The Ninth Circuit in *Arandell* similarly recognized that "any individual defendant's liability require[s] showing *only* that the defendant's conduct played a 'role' in the overall anticompetitive scheme perpetrated by the enterprise as a whole." 900 F.3d at 631 (quoting *Lenox*, 847 F.3d at 1230). Plaintiffs allegations that the *enterprise* had monopsony power, as the Court already found, are sufficient. Because Plaintiffs adequately allege Endeavor's role in the scheme, Endeavor's argument fails.

---

[17] Defs.' 1st Mot. at 11-12.
[18] Mot. Hr'g Tr. at 29:14-15, ECF No. 69; Min. Order, ECF No. 158.
[19] Def.'s 4th Mot. at 6-7.

### C. Endeavor's Alleged Exclusionary Conduct Establishes Liability

As the Ninth Circuit explained in *Oliver v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014), when defendants engage in an anticompetitive scheme, commit acts during the statutory period in furtherance of that scheme, and cause new harm to a plaintiff, the continuing violation doctrine applies. *Id.* at 1086 (applying *Klehr* to an antitrust case).[20]

Endeavor argues that Plaintiffs must specifically plead "exclusionary conduct" by Endeavor to establish liability. *See* Def.'s 4th Mot. at 7. However, under these circumstances, Plaintiffs can rely on *all* of the Defendants' exclusionary conduct in furtherance of the scheme—including acquisitions that took place before the statutory period—to establish liability. *See In re Google Digital Advert. Antitrust Litig.*, No. 20-cv-3556, 2021 WL 2021990, at *5 (N.D. Cal. May 13, 2021) (holding plaintiffs can rely on acquisitions that occurred before the statutory period in support of liability provided those "acquisitions were made *in concert with* the company's other anticompetitive conduct") (emphasis added);[21] *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 713 (W.D. Tenn. 2022) (similar); *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 725, 757 (W.D. Tenn. 2022) (holding plaintiffs sufficiently alleged anticompetitive scheme including exclusionary contracts and other activities that "involved acquisitions and therefore constitute continuing violations").

Indeed, Endeavor admits that Plaintiffs "state a continuing violation of antitrust law" if they "allege that—during the [statutory] period—the defendant completed 'a new and independent' overt act and inflicted 'new and accumulating injury on the plaintiff.'"[22] Courts hold that the statute of limitations begins anew each time a defendant takes an "overt act" that injures a plaintiff in a monopsonization case. *See,*

---

[20] *See also Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1203-04 (9th Cir. 2014) (entering new licensing agreement and enforcing existing agreement each sufficient for continuing violation doctrine); *Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1444–45 (9th Cir. 1996) (actions taken in accordance with a pre-statutory period anticompetitive contract were sufficient for continuing violation doctrine); *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1301 (9th Cir. 1986) (holding new overt act occurred under continuing violation doctrine each time tour operators shepherded tourists away from plaintiffs' shop in exchange for payment).

[21] *Google* was dismissed without prejudice under the statute of limitations, but only because—unlike here where the acts are intertwined and synergistic—plaintiffs there had not alleged the acquisitions were made in concert with the more recent anticompetitive conduct and plaintiffs in *Google* were granted leave to amend to make appropriate allegations. *Id.* at *5-6.

[22] Defs.' 1st Mot. at 13 (quoting *Samsung Elecs.*, 747 F.3d at 1202).

*e.g., Solo v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014) ("the Supreme Court and federal appellate courts have recognized that each time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act."); *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1301 (9th Cir. 1986) (holding that a new overt act occurred each time tour operators shepherded tourists away from plaintiff's shop in exchange for payment).

That is *precisely* what Plaintiffs allege here: during the statutory period, *all* Defendants committed new, independent overt acts in furtherance of the scheme, causing new and accumulating injuries to Plaintiffs. For example, Defendants entered and continue to enter into new exclusive contracts with fighters on a routine basis. Am. Compl. ¶¶ 100-106 (using present tense to describe exclusive contracts); *id.* ¶ 104 (listing the UFC's standard restrictive provisions "continuing into the Class Period"). Defendants also continue to engage in coercion, *see, e.g., id.* ¶ 110 ("UFC punished and continues to punish fighters that refuse, or consider refusing, the UFC's contractual terms"), *id.* ¶¶ 107-110, and to acquire rivals or impede their growth through anticompetitive conduct. *Id.* ¶ 113 ("continuing into the present, the UFC accelerated its aggressive anticompetitive campaign" of driving rivals out of business or acquiring them); *see also id.* ¶¶ 111-117. Defendants also continue to pay fighters much less than they would in the absence of the scheme.[23]

As the Ninth Circuit held, anticompetitive schemes that are exempt from the continuing violation doctrine are "the exception, not the rule." *Oliver*, 751 F.3d at 1085 n.5 (quoting *Samsung Elecs.*, 747 F.3d at 1203). The rule is that if defendants continue to commit acts that cause harm during the statutory period—such as charging above-competitive prices or entering contracts that pay below-competitive compensation—plaintiffs' claims arising from those harms are timely. *Id.* Here, Plaintiffs allege new acts during the statutory period—including entering new anticompetitive contracts on an ongoing basis—and new and accumulating injuries—particularly the ongoing suppression of class member compensation.

---

[23] *See, e.g., id.* ¶ 138 ("As a result of the UFC's scheme, compensation associated with fighting in MMA bouts to members of the Class has been *and continues to be* artificially suppressed.") (emphasis added); *id.* ¶ 144 ("As a result of the anticompetitive scheme, the UFC *is able* to compensate Fighters below competitive levels even though UFC events have among the highest average ticket prices in all of sports.") (emphasis added); *id.* at ¶ 147 ("The Conduct comprising the UFC's anticompetitive scheme is continuing and so are the damages suffered by the members of the Class.").

Thus, *all* of Defendants' actions in furtherance of the scheme should be considered in assessing Defendants' liability. And through that lens, it is clear that Plaintiffs alleged sufficient facts specific to Endeavor to overcome its fourth motion to dismiss.

### D.     Plaintiffs Remain Entitled to Discovery from Endeavor

At the hearing on Endeavor's prior motion to dismiss, the Court suggested that it would allow focused discovery on the role of Endeavor before entertaining another Rule 12 motion by Endeavor.[24] Endeavor has yet to meaningfully participate in discovery or produce documents responsive to Plaintiffs' discovery requests. Specifically, in response to the Court's statement that discovery on Endeavor's role was appropriate, Plaintiffs promptly served discovery requests on October 13, 2023.[25] Rather than substantively responding, Endeavor raised broad objections and provided minimal responses,[26] claiming that much of the requested discovery was irrelevant because Endeavor purportedly did not engage in the conduct related to the requests. *See* Def.'s Resp. and Obj. to RFPs, 2:4-15. Of course, if Endeavor did not engage in the challenged conduct, it would have little to nothing to produce! In any event, where Endeavor did indicate a limited willingness to produce documents, it conditioned it on the entry of a protective order. *See id.* at 6:23-24; 7:5-7; 14:24-28. With the protective order now having been in place since January of this year, Endeavor nonetheless continues to push for dismissal before fulfilling its discovery obligations imposed by the Court. Endeavor's refusal to engage meaningfully in discovery has prejudiced Plaintiffs' ability to obtain relevant information necessary to challenge Endeavor's motion. Therefore, if the Court is not persuaded that Endeavor's motion to dismiss should be denied outright and with prejudice for the reasons noted above, the Court should decline to grant Endeavor's motion and should require Endeavor to meet its discovery obligations as this Court has already ruled.

## IV.     **CONCLUSION**

For the foregoing reasons, the Court should deny Endeavor's Fourth Motion to Dismiss.

---

[24] *See* Mot. Hr'g Tr. at 23:14-22, ECF No. 68.
[25] *See* Pls.' First Requests for Produc. of Docs. for Defendant Endeavor Group Holdings, Inc., ("Pls. 1st RFPs"), Oct. 13, 2023.
[26] Def. Endeavor Group Holdings, Inc's Resp. and Obj. to Pls.' First Request for Produc. of Docs., ("Def.'s Resp. and Obj. to RFPs"), Nov. 13, 2023.

Dated this 21st day of October, 2024.

Respectfully Submitted,

By: */s/ W. Joseph Bruckner*
W. Joseph Bruckner
**LOCKRIDGE GRINDAL NAUEN PLLP**
W. Joseph Bruckner (admitted *pro hac vice*)
Brian D. Clark (admitted *pro hac vice*)
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Phone: (612) 596-4001/Fax: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

**LOCKRIDGE GRINDAL NAUEN PLLP**
Kyle Pozan (admitted *pro hac vice*)
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Phone: (612) 339-6900
Email: kjpozan@locklaw.com

*Counsel for the Proposed Class and Attorneys for Individual and Representative Plaintiffs Kajan Johnson, Clarence Dollaway and Tristan Connelly*

**BERGER MONTAGUE PC**
Eric L. Cramer (admitted *pro hac vice*)
Michael C. Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
Najah Jacobs (admitted *pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Phone: (215) 875-3000/Fax: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net
njacobs@bm.net

**BERGER MONTAGUE PC**
Joshua P. Davis (admitted *pro hac vice*)
Robert C. Maysey (admitted *pro hac vice*)
505 Montgomery Street, Suite 625
San Francisco, CA 94111
jdavis@bm.net
rmaysey@bm.net

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (admitted *pro hac vice*)
Chris Young (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
601 California Street, Suite 1000
San Francisco, California 94108
Phone: (415) 500-6800/Fax: (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
krayhill@saverilawfirm.com

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
1100 New York Ave., N.W., Suite 500, East Tower Washington, DC 20005
Phone: (202) 408-4600/Fax: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com
*Co-Lead Counsel for the Proposed Class and Attorneys for Individual and Representative Plaintiffs Kajan Johnson, Clarence Dollaway and Tristan Connelly*

**KEMP JONES, LLP**
Michael J. Gayan
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Phone: (702) 385-6000/Fax: (702) 385-6001
m.gayan@kempjones.com

*Liaison Counsel for the Proposed Class and Attorneys for Individual and Representative Plaintiffs Kajan Johnson, Clarence Dollaway and Tristan Connelly*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Plaintiffs' Opposition to Defendant Endeavor Group Holdings, Inc.'s Fourth Motion to Dismiss Plaintiffs' Amended Complaint was served on October 21, 2024 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ W. Joseph Bruckner*

W. Joseph Bruckner

LOCKRIDGE GRINDAL NAUEN PLLP