WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@paulweiss.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, NV 89101

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

*Attorneys for Defendants Zuffa, LLC, TKO Operating Company, and Endeavor Group Holdings, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON and CLARENCE DOLLAWAY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**DEFENDANT ENDEAVOR GROUP HOLDINGS, INC.'S REPLY IN SUPPORT OF FOURTH MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**(Hearing Requested)** |

## I. INTRODUCTION

In 2014, two years before Endeavor acquired 50.1% of the shares of the UFC, Plaintiffs alleged the UFC had carried out a monopsonistic scheme in the "market" for purchasing professional MMA fighter services. Am. Compl. ¶ 33. Plaintiffs consistently refer to this as "the UFC's Scheme." *See, e.g.*, Am. Compl. ¶ 137. Plaintiffs now seek to hold Endeavor liable for "[t]his same basic continuing" alleged UFC scheme, Opp'n at 2, but Plaintiffs keep running into the insurmountable problem that they have not alleged *any* conduct by Endeavor in furtherance of the alleged anticompetitive scheme.

Black letter law precludes holding Endeavor liable for the UFC's alleged anticompetitive conduct simply because Endeavor is the UFC's parent company. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (shareholders typically not responsible for acts of companies in which they own shares). Plaintiffs concede they are not pursuing a theory of vicarious liability against Endeavor. *See* Opp'n at 4. Plaintiffs also concede they have not pled *any* of the essential elements of a Section 2 claim against Endeavor—instead, Plaintiffs claim they "do not need to." *Id*.

Plaintiffs ask this Court to be the first to apply the antitrust-conspiracy precedent from *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623 (9th Cir. 2018) to the *non*-conspiracy Sherman Act monopsony claims at issue here. The Court should decline that invitation for the reasons discussed below, but even if this Court were to apply Plaintiffs' proposed two-step *Arandell* test here, Plaintiffs' claims against Endeavor still fail because they have not alleged that Endeavor committed an independent act in furtherance of the alleged UFC scheme. *See id.* at 633.

Plaintiffs underscore this deficiency by spending sixteen pages in their Amended Complaint detailing "UFC's Anticompetitive Scheme," without ever mentioning "Endeavor." Not even once. Am. Compl. ¶¶ 98-135. Yet in that same sixteen-page description of the alleged scheme, Plaintiffs mention the "UFC" **185 times**. *Id.*

Plaintiffs retreat to claiming that Endeavor's role in UFC service agreements and media agreements is enough to support an antitrust claim. Those seller-side activities are not even in the same relevant market that Plaintiffs plead and do not constitute independent acts in furtherance of the alleged buyer-side scheme (UFC's supposed monopsonization of the market for professional

MMA fighter services). If Plaintiffs' argument were right, then *Arandell*'s direct participation requirement would be meaningless.

Similarly, Plaintiffs cannot rely on the continuing violation doctrine to save their claims as there cannot be an *overt* act in furtherance of a scheme if there is not even an act in the first place. Nor can Plaintiffs rely on anticipated discovery to cure the deficiencies in their claims against Endeavor. Plaintiffs ask this Court to require Endeavor to "produce documents responsive to Plaintiffs' discovery requests," Opp'n at 12, but this puts the cart before the horse. Discovery must be tied to a pleading which plausibly states a claim in the first instance. *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014).

At bottom, Plaintiffs' claims against Endeavor—devoid of any alleged act in furtherance of the alleged scheme—could only be successful under an impermissible theory of unbounded vicarious liability of corporate parents for acts by their subsidiaries. Courts across the country—including the Ninth Circuit—roundly reject such a notion of guilt by association as a viable theory of antitrust liability. *E.g.*, *Arandell*, 900 F.3d at 633. Plaintiffs had the burden "to state a claim to relief plausible on its face" that Endeavor violated the Sherman Act. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They failed. The Court should dismiss Endeavor from this case.[1]

## II.    ARGUMENT

### A.    Plaintiffs Do Not (And Cannot) Plausibly Allege That Endeavor Was Involved In The Alleged UFC Scheme.

#### 1.    Absent a Viable Theory of Vicarious Liability—Which Plaintiffs Concede They Are Not Pursuing Here—a Parent Cannot Be Held Liable for Alleged Anticompetitive Conduct by Its Subsidiary.

"As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (citing *Bestfoods*, 524 U.S. at 61). In the antitrust context, this means that "absent allegations of anticompetitive conduct by the parent, there is no basis for holding a parent liable for the alleged antitrust violation of its subsidiary." *Arnold*

---

[1] As previously noted to the Court, the purported *Johnson* class contains members who signed arbitration clauses and/or class action waivers in their fighter agreements. Defendants continue to expressly reserve the right to move to compel arbitration with respect to these purported class members. All defendants reserve their rights to take arbitration-related discovery of Plaintiffs.

*Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 178 (E.D.N.Y. 2006).  The narrow circumstances where a parent can be liable for the acts of its subsidiary (in contrast with liability for its own conduct) occur by means of alter ego and agency principles.  *See, e.g.*, *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1115-16 (C.D. Cal. 2003).

Here, the mere parent-subsidiary relationship between Endeavor and the UFC is a far cry from what is necessary to keep Endeavor in this suit.  Regardless, Plaintiffs have affirmatively waived any theory of vicarious liability by asserting they are *not* seeking to hold Endeavor vicariously liable for Zuffa's actions.  Opp'n at 2 ("Endeavor argues that Plaintiffs' pleading seeks improperly to hold Endeavor vicariously liable for Zuffa's actions . . . . Not so.")

2. <u>Plaintiffs Concede They Have Not Plead Any Section 2 Elements Against Endeavor.</u>

In response to Endeavor's assertion that Plaintiffs have failed to plead monopsonization by Endeavor, Endeavor's Fourth Mot. to Dismiss ("Mot.") at 5–8, Plaintiffs concede the point.  Instead, Plaintiffs argue they "do not need to allege that [Endeavor] independently satisfied each necessary element of the claims." Opp'n at 4.  That is not the law.[2]  Plaintiffs' admitted failure to plead monopsonization by Endeavor requires Endeavor's dismissal from this case.

3. <u>No Court—Including the Ninth Circuit in *Arandell*—Has Adopted a Theory of Joint Parent-and-Subsidiary Monopolization or Monopsonization Liability.  This Court Need Not Be the First.</u>

Unable to allege acts that directly implicate Endeavor in a Sherman Act violation, Plaintiffs argue that Endeavor should be liable for the UFC's alleged anticompetitive acts because the UFC is Endeavor's subsidiary.  Plaintiffs erroneously assert that the Ninth Circuit adopted this theory of joint parent-and-subsidiary monopolization liability in *Arandell*.  Opp'n at 4.  While Plaintiffs correctly state that "*Arandell* addressed when one entity is liable for an antitrust violation involving another entity in the same corporate family," Opp'n at 4, it did so only in the context of a Section 1 conspiracy case about the requisite intent necessary for a subsidiary to be held liable for its parent

---

[2] Plaintiffs' reliance on *Las Vegas Sun, Inc. v. Adelson*, 2020 WL 7029148, at *10 (D. Nev. Nov. 30, 2020) and *Hightower v. Celestron Acquisition, LLC*, 2021 WL 2224148, at *11 (N.D. Cal. Jun. 2, 2021) is misplaced because (1) as discussed *infra*, *Arandell* is inapplicable to Section 2 claims and, regardless, (2) unlike here, the *Las Vegas Sun* and *Hightower* courts found coordinated activity in furtherance of the anticompetitive schemes at issue in those cases.

company's price fixing scheme. Mot. at 12. In *Arandell,* the subsidiary sold products that had been price-fixed by the parent and thus participated in the antitrust violation. Nothing like that is alleged here.

Regardless, the Court need not reach the scope of *Arandell*'s holding because Plaintiffs have failed to plead any acts by Endeavor that would satisfy even the Plaintiffs' proposed test.

### 4. Even if *Arandell* Were Applicable to Section 2, Plaintiffs' Proposed "Played A Role" Test Results in "Unbounded Vicarious Liability."

According to Plaintiffs, "[a]ll that is necessary at this stage is to establish that: (1) the corporate family, which includes Endeavor and Zuffa, as a whole violated Section 2 of the Sherman Act, 15 U.S.C. § 2; and (2) Endeavor played a role in that violation." Opp'n at 4 (citing *Arandell*, 900 F.3d at 631). Assuming for the sake of argument that Plaintiffs have sufficiently alleged step 1 as to the corporate family, Plaintiffs fail step 2 as to Endeavor because they have not plead *any* act that would constitute Endeavor playing a role in the alleged monopsonistic scheme in the market for purchasing professional MMA fighter services.

Whatever the scope and applicability of *Arandell*, the Ninth Circuit set a clear outer boundary that Plaintiffs' interpretation of that court's "played a role" language ignores: "a bright-line limit on an antitrust plaintiff's recovery from a particular defendant" is that the plaintiff must show "damages caused by anticompetitive conduct attributable to that affiliate." *Arandell*, 900 F.3d at 633, n.9. It was en route to announcing this "bright-line limit" that the court explained that a plaintiff alleging antitrust violations against multiple affiliates of a single enterprise must establish that each defendant "played a 'role' in the overall anticompetitive scheme perpetrated by the enterprise as a whole." *Id.* at 631. The Ninth Circuit explained that *Copperweld*'s unity of purpose theory "does not supply a theory of unbounded vicarious liability for the *acts* of legally distinct entities." *Id.* at 633 (emphasis in original). The issue for Plaintiffs is that, unlike in *Arandell* where the subsidiary sold products at price-fixed prices set by the parent, Plaintiffs have not alleged *any* act by Endeavor that would constitute anticompetitive conduct in furtherance of the alleged UFC scheme.

      5.  <u>Plaintiffs' Alleged UFC Scheme Remains Unchanged Since 2014.</u>

  The mere chronology of the alleged UFC scheme, which Plaintiffs admit is identical to the one alleged in *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev.) ("*Le*"), confirms that Plaintiffs' Amended Complaint fails. Endeavor was not even part of the UFC's corporate family when the alleged UFC scheme was perpetuated and the Amended Complaint's allegations add nothing to the scheme alleged in *Le*. Plaintiffs first alleged the UFC scheme in 2014, *Le* Complaint (ECF No. 1), two years before Endeavor ever had any corporate relationship with the UFC, Opp'n at 2 (Endeavor purchased 50.1% interest in the UFC in 2016). Plaintiffs' story has not changed from *Le* to *Johnson*, as they continue to allege "that **the UFC** engaged and continues to engage in the alleged scheme . . . in violation of Section 2 of the Sherman Act, maintaining and enhancing **the UFC's** monopsony power, and causing the alleged anticompetitive harms." Opp'n at 1 (emphasis added) *see also, e.g.*, Am. Compl. ¶¶ 9, 12, 17, 20, 65, 101, 103, 106, 111, 113, 121, 137–138, 142, 146, 152–153 (referring to, *inter alia*, "UFC's scheme, "UFC's anticompetitive scheme," and "UFC's exclusionary scheme").

  Plaintiffs' case relies exclusively upon a supposed continuing scheme perpetuated and operated by the UFC for years before Endeavor acquired the UFC. The Amended Complaint does not allege anything with respect to Endeavor having any independent role or contributing to that scheme. That is fatal to Plaintiffs' ability to plead Endeavor into this case.

      6.  <u>The Anticompetitive Acts Comprising The Alleged UFC Scheme Were All Allegedly Committed by UFC—Not Endeavor.</u>

  Plaintiffs' own allegations and explanation of the alleged UFC scheme confirm that Endeavor committed no acts in furtherance of the anticompetitive scheme. Plaintiffs organize the alleged UFC scheme into three parts—(1) exclusive contracts with top-level MMA fighters, (2) anticompetitive acquisitions of potential competitors, and (3) coercive acts to sign its fighters to new contracts, *see* Opp'n at 1-2 (citing Am. Comp.)—and continue to attribute the conduct constituting the alleged scheme to the UFC, *see* Opp'n at 1 ("**the UFC** engaged and continues to engage in," "**UFC** used a string of acquisitions," "**It [*i.e.* UFC]** signed the vast majority of fighters ranked highly"); Opp'n at 1-2 ("**[The UFC]** acquired and otherwise foreclosed potential

competitors."); Opp'n at 2 ("**[The UFC]** coerces fighters . . ."); Opp'n at 2-3 ("**[The UFC]** does so in part by forcing fighters to sign new contracts . . .") (emphasis added in all); *see also* Mot. at 6-8, n.7–9 (collecting citations from Amended Complaint on the UFC's alleged monopsony power in the relevant market and its alleged exclusionary conduct).

The Amended Complaint's explanation of the "UFC's Anticompetitive Scheme" spans sixteen pages and mentions the UFC 185 times, but it never once mentions "Endeavor." *See* Am. Compl. ¶¶ 98–135. These allegations go right to the heart of Plaintiffs' theory. For example, Plaintiffs identify seven "restrictive provisions" from "UFC's standard agreements,"[3] Am. Compl. ¶104(a)–(g), and each one uses phrases like "sole discretion" to describe the power **the *UFC*** allegedly has over the fighters, *id*. The fact that Plaintiffs continue—a full decade after their *Le* Complaint—to reflexively attribute the acts comprising the alleged anticompetitive scheme to only the UFC demonstrates conclusively that Endeavor had no part in it.

### 7. Even Assuming Endeavor Provided Certain Contractual Services for the UFC, They Are Not in Furtherance of the Alleged UFC Scheme.

Plaintiffs cannot rely on allegations regarding seller-side services listed in a contractual Service Agreement between Endeavor and TKO Group Holdings (the "Service Agreement") as indicia of independent acts by Endeavor in furtherance of the alleged buyer-side UFC scheme. *See* Opp'n at 8, n.15 (citing TKO Group Holdings, Inc, Annual Report (8-K) dated Sept. 12, 2023 ("TKO 8-K")).[4] Even assuming Endeavor performed some of these services, they have nothing to do with the alleged scheme in this case—which is about a supposed UFC monopsony "in the market for Professional MMA Fighter services."[5] *See e.g.* Am. Compl. at 2.

Plaintiffs' reliance on these service agreements at most highlights the parent-subsidiary relationship between Endeavor and the UFC, but nothing more. In *Prudencio v. Midway*

---

[3] These seven provisions overlap almost exactly with the "most salient ones at issue in this lawsuit," as identified by this Court in its *Le* Class Certification ruling. *See Le v. Zuffa, LLC*, 2023 WL 5085064, at *6 (D. Nev. Aug. 9, 2023).

[4] Endeavor does not oppose Plaintiffs' request that the Court take judicial notice of TKO's 8-K from September 12, 2023. Opp'n at 8, n.14. Portions of TKO's 8-K are attached as Exhibit A.

[5] For similar reasons, Plaintiffs also cannot rely on the contentions that Endeavor "negotiates and executes pay-per-view ("PPV"), media, and sponsorship agreements on behalf of the UFC and its Fighters" as evidence that Endeavor independently participated in the alleged UFC Scheme. Opp'n at 6.

*Importing*, *Inc.*, for example, a parent company marketed certain soap-products as "natural" and plaintiffs challenged the accuracy of that labeling in a lawsuit against the company's subsidiary. 831 F. App'x 808, 809 (9th Cir. 2020). The complaint alleged that the subsidiary shared responsibility for labeling the soap and had authorized the "natural" labels. *Id.* at 810. "But the sole factual basis for these conclusory allegations" was that (1) "[the parent] ha[d] an ownership interest in [the subsidiary];" (2) the parent and subsidiary "share[d] common employees, ownership, and business functions"; and (3) the subsidiary was "responsible for 'marketing'." *Id.* The Ninth Circuit found these allegations insufficient "to cross the line between possibility and plausibility." *Id.* This was both because "a parent-subsidiary relationship by itself is insufficient to impute liability," and "generic references to 'marketing' . . . do not give rise to a plausible inference" that the subsidiary was involved in the alleged misconduct. *Id.* As the court concluded, "'[m]arketing is a vague term that can carry a multitude of meanings depending on the context." *Id.* "Merely attaching that term to a [subsidiary]—without more—is insufficient to create an actionable inference that [the subsidiary] played a role in product labels." *Id.* In affirming the district court's dismissal of the complaint against the subsidiary, the court noted that "the complaint's conclusory allegations that the appellees are 'responsible for' and 'authorized' the labels falls short." *Id.*

Here, as in *Prudencio*, Plaintiffs' generic references to services Endeavor *might* provide "do not give rise to a plausible inference" that Endeavor was involved in the supposed UFC scheme. *Id.* This is evident both from the context of the Service Agreement—which Plaintiffs mischaracterize—and in the specific services that are offered under that Agreement.

As for the Service Agreement's context, TKO's 8-K filing expressly provides that "the day-to-day business and affairs of [TKO Operating Company] and its Subsidiaries [including the UFC] shall be managed, operated and controlled exclusively by [TKO Group Holding]." Ex. A at 3.[6] "[N]o other Members shall have management authority or rights over [TKO Operating Company] or its Subsidiaries [including the UFC]." *Id.* Moreover, the services described in the Service Agreement are provided at TKO's discretion ("as reasonably requested"). *Id.* at 4. The

---

[6] All citations to Exhibit A are to the PDF page number.

Agreement also contemplates that third parties—i.e. *not* Endeavor—will provide some of the services. *Id.* Far from giving Endeavor "significant control over TKO and its subsidiaries," Opp'n at 8, the Service Agreement gives TKO the right to request—or not—a variety of business services from Endeavor and/or third party providers.

Additionally, the largely generic services in the Service Agreement are entirely unrelated to the UFC scheme. *See* Opp'n at 8 (listing eleven services). Just as "marketing" was "a vague term" susceptible to "a multitude of meanings" in *Prudencio*, so too here with each service Plaintiffs list as supposedly exposing Endeavor's "extensive role in running the UFC." *Id.* Even assuming the UFC requested, for example, "Streaming Services," and assuming that Endeavor (not a third party) provided those services, that has no connection with any of the three parts of Plaintiffs' alleged UFC scheme. Similarly, Endeavor's provision to the UFC of "Ticketing and Hospitality Services" says nothing about whether Endeavor independently participated in the alleged UFC scheme, just as "marketing" told the Ninth Circuit nothing about whether the *Prudencio* subsidiary was complicit in mislabeling bars of soap.

Plaintiffs' argument boils down to this erroneous and untenable legal theory: because the UFC is a subsidiary of Endeavor, Endeavor "plays various and extensive roles in running UFC," and therefore the Court should infer that Endeavor also "plays various central roles in the alleged Scheme." Opp'n at 9. This is exactly the type of impermissible inference that the Supreme Court, the Ninth Circuit, and courts across the country reject. *See e.g. Prudencio*, 831 F. App'x at 810 (citing *Bestfoods*, 524 U.S. at 61). Notably, Plaintiffs do not even attempt to bridge the gap between the services in the Services Agreement and the alleged UFC scheme. Even *if* Endeavor has "influence on and [an] extensive role in running the UFC," Opp'n at 8, it is of no moment without plausible allegations that Endeavor independently participated in the alleged UFC scheme. The seller-side services contemplated in the Services Agreement upon which Plaintiffs so heavily rely do not constitute independent acts in furtherance of the alleged buyer-side scheme.

Nothing in Plaintiffs' Amended Complaint pleads with any specificity how Endeavor was involved in the alleged UFC scheme (contracting fighters, anticompetitive acquisitions, or coercive new contracts, for example) and it is axiomatic that "[p]laintiffs cannot amend their complaint by

adding factual allegations in response to [a] motion to dismiss." *Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1198, n.2 (D. Colo. 2015) (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir.1995)).

### B. The Continuing Violation Doctrine Is Inapplicable to Endeavor.

Absent an exception, the four-year statute of limitations on private antitrust actions accrues at the time of the alleged anticompetitive conduct. *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1065 (N.D. Cal. 2016) (citing *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202-03 (9th Cir. 2014)). "To state a continuing violation of the antitrust laws in the Ninth Circuit, a plaintiff must allege that a defendant completed an overt act during the limitations period that meets two criteria: '1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff.'" *Samsung*, 747 F.3d at 1202 (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)). Here, the continuing violation doctrine is inapplicable to Plaintiffs' claims against Endeavor because Plaintiffs have failed to plead that Endeavor committed *any* act—much less an overt, new, and independent one—that caused Plaintiffs new, accruing injury. *See supra* Section A.

Moreover, Plaintiffs' attempt to hold Endeavor liable for actions of other defendants runs headlong into the Ninth Circuit's bright-line rule prohibiting recovery by an antitrust plaintiff from a particular defendant where there is no evidence the defendant independently participated in the alleged scheme. *See Arandell*, 900 F.3d at 633, n.9 (bright-line rule); *see also Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1237 (10th Cir. 2017) (no affiliate liability where no evidence of independent affiliate involvement in the alleged scheme). As Plaintiffs explain it, "during the statutory period, **all Defendants** committed new, independent overt acts in furtherance of the scheme, causing new and accumulating injuries to Plaintiffs." Opp'n at 11 (emphasis added). Also, Plaintiffs' repeated references throughout their Amended Complaint to "all Defendants" committing acts in furtherance of the UFC scheme—*see, e.g.*, Am. Compl. ¶¶ 32–36; *see also* Opp'n at 1—is impermissible group pleading. *See, e.g.*, *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 643 (6th Cir. 2003) (finding that an "amended complaint should provide fair notice to [d]efendants and enable them to 'prepare an informed pleading responsive

to the specific allegations [against them],'" and "may not rely on blanket references to acts or omissions by all of the 'defendants'").

### C. The Court Should Deny Plaintiffs' Request to Attempt to Cure Their Deficient Claims with Discovery.

A complaint may not "rely on anticipated discovery"; rather, "pleadings must assert well-pleaded factual allegations to advance to discovery." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007).

Plaintiffs assert that Endeavor should have rolled over on their claims—that it "would have been more efficient for Endeavor simply to acknowledge this new *Johnson* case may proceed—as *Le* has—and that *the evidence* should determine whether the case against it succeeds." Opp'n at 2 (emphasis in original). But Endeavor has a right to a motion to dismiss, and, considering the paucity of Plaintiffs' allegations, nothing suggests that it should waive that right. Plaintiffs should not be permitted to use discovery for a fishing expedition in search of a viable claim against Endeavor. Plaintiffs have been on notice of the deficiencies in their claim against Endeavor for over three years now, since Defendants filed their first motion to dismiss. Yet even with the benefit of time, hundreds of thousands of documents produced and dozens of depositions taken in *Le*, and an Amended Complaint, Plaintiffs continue to offer only conclusory allegations premised on nothing more than a parent-subsidiary relationship. Plaintiffs now implore the Court to "allow Plaintiffs to amend their Complaint with evidence regarding Endeavor's additional involvement in the alleged scheme obtained through discovery." Opp'n 3. The Court should deny Plaintiffs request and, to paraphrase *Twombly*, weed their groundless claim out of this litigation.

///

### III. CONCLUSION

Endeavor respectfully requests that the Court dismiss Endeavor with prejudice from this litigation.

Dated: November 22, 2024

Respectfully Submitted,

/s/ Christopher S. Yates

| | |
|---|---|
| WILLIAM A. ISAACSON (*Pro hac vice*)<br>wisaacson@paulweiss.com<br>JESSICA PHILLIPS (*Pro hac vice*)<br>jphillips@paulweiss.com<br>PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>2001 K Street, NW<br>Washington, DC 20006 | CHRISTOPHER S. YATES (*Pro hac vice*)<br>chris.yates@lw.com<br>AARON T. CHIU (*Pro hac vice*)<br>aaron.chiu@lw.com<br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>Tel: (415) 395-8095 |
| BRETTE M. TANNENBAUM (*Pro hac vice*)<br>btannenbaum@paulweiss.com<br>YOTAM BARKAI (*Pro hac vice*)<br>ybarkai@paulweiss.com<br>PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019 | SEAN M. BERKOWITZ (*Pro hac vice*)<br>sean.berkowitz@lw.com<br>LATHAM & WATKINS LLP<br>330 North Wabash Ave, Suite 2800<br>Chicago, IL 60611<br><br>LAURA WASHINGTON (*Pro hac vice*)<br>laura.washington@lw.com<br>LATHAM & WATKINS LLP |
| DONALD J. CAMPBELL (No. 1216)<br>djc@campbellandwilliams.com<br>J. COLBY WILLIAMS (No. 5549)<br>jcw@campbellandwilliams.com<br>CAMPBELL & WILLIAMS<br>700 South 7th Street<br>Las Vegas, Nevada 89101<br>Tel: (702) 382-5222 | 10250 Constellation Blvd, Suite 1100<br>Los Angeles, CA 90067<br><br>DAVID L. JOHNSON (*Pro hac vice*)<br>david.johnson@lw.com<br>LATHAM & WATKINS LLP<br>555 Eleventh Street NW, Suite 1000<br>Washington, D.C. 20004 |

*Attorneys for Defendants Zuffa, LLC, TKO Operating Company, and Endeavor Group Holdings, Inc.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Defendant Endeavor Group Holdings, Inc.'s Reply in Support of Fourth Motion to Dismiss Plaintiffs' First Amended Complaint was served on November 22, 2024 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ Christopher S. Yates
Christopher S. Yates of
LATHAM & WATKINS LLP