# EXHIBIT A

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

## FORM 8-K

### CURRENT REPORT
### PURSUANT TO SECTION 13 OR 15(d)
### OF THE SECURITIES EXCHANGE ACT OF 1934

Date of report (Date of earliest event reported): September 12, 2023

# TKO Group Holdings, Inc.
**(Exact Name of Registrant as Specified in its Charter)**

| Delaware | 001-41797 | 92-3569035 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**200 Fifth Avenue, 7th Floor**
**New York, New York**
(Address of principal executive offices)

**10010**
(Zip Code)

**(646) 558-8333**
(Registrant's telephone number, including area code)

New Whale Inc.
1241 East Main Street
Stamford, Connecticut 06902
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Class A Common Stock, par value $0.00001 per share | TKO | New York Stock Exchange |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

make such election, then the Manager is hereby authorized to amend this Agreement without the consent of any other Member to provide that (i) the Company is authorized and directed to elect the safe harbor, (ii) the Company and each of its Members (including any person to whom a partnership interest is transferred in connection with the performance of services) will comply with all requirements of the safe harbor with respect to all Company interests transferred in connection with the performance of services while such election remains in effect and (iii) the Company and each of its Members will take all actions necessary, including providing the Company with any required information, to permit the Company to comply with the requirements set forth or referred to in the applicable Proposed Regulations for such election to be effective until such time (if any) as the Manager determines, in its discretion, that the Company should terminate such election. The Manager is further authorized to amend this Agreement to the extent the Manager determines in its discretion that such modification is necessary or desirable as a result of the issuance of such Treasury regulations relating to the tax treatment of the transfer of a partnership interest in connection with the performance of services or to take actions it determines are necessary or appropriate to ensure that Equity Securities in the Company that are issued that are intended to be treated as profits interests are so treated. Notwithstanding anything to the contrary in this Agreement, each Member expressly confirms and agrees that such Member will be legally bound by any such amendment.

## ARTICLE VII

### MANAGEMENT OF THE COMPANY

Section 7.01 <u>Management by the Managing Member.</u> Except as otherwise specifically set forth in this Agreement, the Managing Member shall be deemed to be a "manager" for purposes of the Delaware Act. Except as expressly provided in this Agreement or the Delaware Act, the day-to-day business and affairs of the Company and its Subsidiaries shall be managed, operated and controlled exclusively by the Managing Member in accordance with the terms of this Agreement, and no other Members shall have management authority or rights over the Company or its Subsidiaries. The Managing Member is, to the extent of its rights and powers set forth in this Agreement, an agent of the Company for the purpose of the Company's and its Subsidiaries' business, and the actions of the Managing Member taken in accordance with such rights and powers shall bind the Company (and no other Members shall have such right). Except as expressly provided in this Agreement, the Managing Member shall have all necessary powers to carry out the purposes, business and objectives of the Company and its Subsidiaries. The Managing Member may delegate to Members, employees, officers or agents of the Company or any Subsidiary in its discretion the authority to sign agreements and other documents on behalf of the Company or any Subsidiary. The Managing Member shall have the exclusive power and authority, on behalf of the Company and its Subsidiaries, to take such actions not inconsistent with this Agreement as the Managing Member deems necessary or appropriate to carry on the business and purposes of the Company and its Subsidiaries.

Section 7.02 <u>Withdrawal of the Managing Member</u>. PubCo may withdraw as the Managing Member and appoint as its successor at any time upon written notice to the Company (a) any wholly owned Subsidiary of PubCo, (b) any Person into which PubCo is merged or consolidated or (c) any transferee of all or substantially all of the assets of PubCo, which withdrawal and replacement shall be effective upon the delivery of such notice. No appointment

(k) references herein to any contract mean such contract as amended, supplemented or modified (including any waiver thereto) in accordance with the terms thereof;

(l) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties;

(m) with regard to all dates and time periods set forth or referred to in this Agreement, time is of the essence;

(n) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day;

(o) references herein to "$" and "dollars" means United States dollars (unless the context requires otherwise); and

(p) references herein to "as of the date hereof," "as of the date of this Agreement" or words of similar import shall be deemed to mean "as of immediately prior to the execution and delivery of this Agreement."

## ARTICLE 2 – SERVICES

Section 2.1 <u>Provision of Services; Services Standards</u>.

(a) Pursuant to the terms of this Agreement, Service Provider will provide or cause to be provided to Service Recipient, as reasonably requested by Service Recipient, the services set forth on <u>Schedule A</u>, as the same may be updated pursuant to <u>Section 2.2</u> (collectively, the "<u>Services</u>"); provided, however, that subject to modifications to the fees under the Existing Agreements as set forth in <u>Section 2.6(b)</u>, the Existing Agreements shall remain in effect until they expire or are terminated in accordance with the terms thereof.

(b) Subject to any specifications and limitations as mutually agreed by the Parties, Service Provider will provide the Services consistent with past practice (including with respect to scope) and (i) in substantially the same manner as such services are performed or obtained by Service Provider for its own account or for any of its subsidiaries (including Zuffa, LLC ("<u>UFC</u>") prior to the Effective Date) or clients, or (ii) if Service Provider does not so perform such Services for itself or its clients (or did not provide such services for the Service Recipient prior to the Effective Date), Service Provider will provide the Services in a commercially reasonable and diligent manner, in each case so long as commercially feasible. Notwithstanding anything in the foregoing to the contrary, (x) Service Recipient may elect not to receive any Service which it reasonably deems in its sole discretion to not be provided in accordance with clauses (i) and (ii) of this paragraph and (y) TKO may elect not to receive any Service relating to live event and content production for World Wrestling Entertainment, LLC ("<u>WWE</u>") in its sole discretion. Notwithstanding the foregoing, with respect to any Service provided by a Third Party Service Provider, Service Provider shall use commercially reasonable efforts to cause such Third Party Service Provider to provide such Services in accordance with the terms of this Agreement and the applicable service agreement (if any) obligating such Third Party Service Provider.