Joseph R. Saveri (*Pro Hac Vice*)
Christopher K.L. Young (*Pro Hac Vice*)
Kevin E. Rayhill (*Pro Hac Vice*)
Itak Moradi (*Pro Hac Vice*)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile:  (415) 315-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
krayhill@saverilawfirm.com
imoradi@saverilawfirm.com

*Counsel for Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.,<br><br>                              Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY THIRD PARTY DOMINANCE MMA LLC RESPONSIVE TO PLAINTIFFS' SUBPOENA PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45** |

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ..................................................................................................2

    A.    The *Johnson* Action ................................................................................2

    B.    Plaintiffs' Subpoena ................................................................................3

    C.    The Meet and Confer Conferences Between Plaintiffs and Dominance. ..................3

III.  ARGUMENT ..................................................................................................6

    A.    The Court should order Dominance to comply fully with Plaintiffs' Subpoena. ........6

        1.    Legal Standard. ..............................................................................6

        2.    Dominance's boilerplate objections fail to carry their burden of showing why they should not produce relevant documents responsive to the Subpoena. ..................7

        3.    The Relevant Time Period covered by Plaintiffs' Requests is appropriately tailored to the needs of the case. ..................7

        4.    The Protective Order provides robust protections for confidential material. ..8

        5.    Plaintiffs' Requests do not exceed the limits of Rule 26(b)(2)(C)(i). ............8

        6.    Plaintiffs' Subpoena seeks relevant documents and information. ................11

        7.    Plaintiffs have taken reasonable steps to avoid imposing undue burden or expense. ..................14

IV.   CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Brennan v. Mylan, Inc.*,
   2023 WL 2445344 (W.D.N.Y. Mar. 10, 2023)..................................................................... 10

*Bryant v. Mattel, Inc.*,
   No. C 04-09049 SGL RNBX, 2007 WL 5416681 (C.D. Cal. Jan. 26, 2007)............................... 8

*In re Dockers Roundtrip Airfare Promotion Sales Practices Litig.*,
   No. CV 09-2847 CAS (FMOx), 2010 WL 11515318 (C.D. Cal. Aug. 1, 2010)........................... 8

*In re Medport LA, LLC*,
   No. 2:20-cv-00552-JAD-BNW, 2020 WL 3621343 (D. Nev. July 1, 2020)................................ 6

*Painters Joint Comm. v. Emp. Painters Tr. Health & Welfare Fund*,
   No. 2:10-cv-01385-JCM-PAL, 2011 WL 4573349 (D. Nev. Sept. 29, 2011)................... 6, 7, 11

*Photography By Frank Diaz, LLC v. Friends of David Schweikert*,
   2023 WL 3078664 (D. Ariz. Apr. 25, 2023) ...................................................................... 10

*Playstudios, Inc. v. Centerboard Advisors, Inc.*,
   2019 WL 8128168 (D. Nev. Jul. 18, 2019) ....................................................................... 11

*Spears v. First Am. Eappraiseit*,
   No. 5:08-cv-00868 RMW (HRL), 2014 WL 11369809 (N.D. Cal. July 3, 2014)..................... 15

*Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*,
   No. CIV.A. 11-7013 JLL, 2012 WL 1191214 (D.N.J. Apr. 10, 2012)......................................... 15

*Unibanctrust Co. v. Kozicki*,
   No. 87 C 9993, 1988 WL 87063 (N.D. Ill. Aug. 17, 1988)..................................................... 15

*United States v. CBS, Inc.*,
   103 F.R.D. 365 (C.D. Cal. 1984) ...................................................................................... 15

**Rules**

Fed. R. Civ. P. 26...................................................................................................... 6, 11

Fed. R. Civ. P. 26(b)(1)...................................................................................................... 6

Fed. R. Civ. P. 26(b)(2)(C)(i)............................................................................................... 8

Fed. R. Civ. P. 45 .............................................................................................. 1, 2, 6, 7, 11

Fed. R. Civ. P. 45(a)(1)(A)(iii)............................................................................................. 6

Fed. R. Civ. P. 45(d)(1)................................................................................................. 14, 15

Fed. R. Civ. P. 45(d)(2)(B)(i)............................................................................................... 1

ii

LR 26-6(b) ................................................................................................................................ 11

Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly ("Plaintiffs") move this Court pursuant to Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure for an order compelling Dominance MMA LLC ("Dominance" or "Recipient") to produce documents responsive to Plaintiffs' document subpoena (the "Subpoena"), served on Dominance on January 14, 2025.

## I.    INTRODUCTION

Dominance is a large sports talent agency located in Las Vegas, Nevada that represents over 150 professional Mixed Martial Arts ("MMA") fighters and some of the biggest names in the industry, including several former champions of both the UFC[1] and other MMA promotions. Ex. L.[2] The agency was founded in 2008 by CEO Ali Abdelaziz, a former matchmaker for the World Series of Fighting ("WSOF"), which was reported to be a feeder league for the UFC. Ex. K; Ex. M at 185. Abdelaziz has a close personal and business relationship with UFC President Dana White. Ex. N; Ex. O at 206.

In this action, Plaintiffs allege that the UFC illegally obtained monopoly power in the MMA industry by acquiring its largest competitors and locking the best MMA fighters into restrictive long-term contracts that prevent any other MMA promoters from gaining a foothold in the industry. ECF No. 118 (Amended Complaint), ¶¶9, 83, 85, 99, 101, 137, 142, 153. The UFC exploits its dominant position to suppress compensation for its fighters, reduce competitiveness of live professional MMA events, artificially suppress demand and make for fewer live professional MMA bouts than would

---

[1] As used herein, "the UFC" refers to the *Johnson* Defendants: Zuffa LLC ("Zuffa"), TKO Operating Company, LLC ("TKO") f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc ("Endeavor" collectively with Zuffa and TKO, "the UFC"). Zuffa operated the UFC in the early part of the Relevant Time Period (January 1, 2015 to the present). Endeavor purchased a majority interest in Zuffa in 2016. In 2023, Endeavor purchased all outstanding shares in Zuffa and merged it into TKO, which currently operates the UFC, and is wholly owned by Endeavor.

[2] Unless otherwise noted, all exhibit references contained herein are to the Declaration of Kevin E. Rayhill in Support of Plaintiffs' Motion to Compel Production of Documents by Third Party Dominance MMA LLC Responsive to Plaintiffs' Subpoena Pursuant to Federal Rule of Civil Procedure 45 ("Rayhill Decl."). All exhibit pin cites are to the consecutive exhibit page numbers at the bottom of each page, pursuant to LR IA 10-3.

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY
THIRD PARTY DOMINANCE MMA LLC

exist in the absence of its anticompetitive scheme. *Id.* ¶¶21, 70, 82, 93, 98, 138. Plaintiffs' Subpoena seeks documents that will support these allegations. Dominance's large roster of prominent professional MMA fighters and Mr. Abdelaziz's close relationship with Mr. White make it likely that Dominance's responsive documents and communications will be of particularly probative value.

Dominance has refused to comply with Plaintiffs' Subpoena. It never filed a motion to quash or modify the subpoena, never moved for a protective order, and never engaged meaningfully in any negotiations. Instead, it served boilerplate objections and later ignored or rejected Plaintiffs' efforts to narrow the scope of the Subpoena by withdrawing certain requests. It also rejected Plaintiffs' offer to supply a vendor to collect its documents, even though it claimed that its primary concern was the burden and expense of collection. Given Dominance's refusal to comply with its obligations under Rule 45 and failure to engage in good faith, Plaintiffs respectfully request a Court order compelling Dominance's compliance.

## II.    BACKGROUND

### A.    The *Johnson* Action

Plaintiffs bring claims on behalf of themselves and a class of professional mixed martial arts ("MMA") fighters who fought under contract for the UFC from July 1, 2017 to the present.[3] The UFC is by far the largest promoter of live professional MMA events in the U.S. (the relevant output market), and the largest employer of professional MMA fighters in the U.S. (the relevant input market). ECF No. 118 (Amended Complaint), ¶ 4. Plaintiffs allege the UFC locks its MMA fighters into long-term contracts which accomplish two anticompetitive goals. First, it prevents other MMA promoters from competing on a level playing field because it deprives them of the one necessary input an MMA promoter must have to succeed: access to a critical mass of top fighters able to attract

---

[3] *Johnson* is the second class action by MMA fighters against the UFC. The first action was captioned *Le, et al. v. Zuffa, LLC*, Case No. 2:15-cv-01045-RFB-BNW (D. Nev.) ("*Le*"). The allegations in *Johnson* are identical to the allegations in *Le* in all respects, except that they pertain to a later time period, and include additional Defendants to reflect new ownership of the entities that operate the UFC. *Le* was settled on September 26, 2024 for $375 million and injunctive relief. The Court granted final approval of the settlement and issued its Final Judgment on March 3, 2025.

a large audience. *Id.*, ¶¶ 5, 48, 63, 99, 100-105, 144. Second, because there is no legitimate competition for the fighters' services, the UFC can and does pay the fighters significantly less than they would pay in a competitive market, while maximizing their own profits. *Id.* ¶ 19, 144. The UFC also uses threats and intimidation to prevent fighters from associating with other MMA promoters or with sponsors that are not approved by the UFC. *Id.*, ¶¶ 107-110.

### B.    Plaintiffs' Subpoena

On January 14, 2025, Plaintiffs served the Subpoena on Dominance. Rayhill Decl. ¶ 1, Ex. A. The Subpoena seeks relevant documents, including: all communications between the UFC and Dominance; all documents and communications relating to agreements (including negotiations and drafts) between Dominance's professional MMA fighter clients and any MMA promoters (including the UFC) or sponsors; and all fighter compensation records pertaining to any other MMA-related income (for example appearance fees, merchandise royalties, etc.). *Id.* at 17-20. These documents go to the heart of Plaintiffs' allegations. The documents are relevant to the claims and defenses in *Johnson*, including Defendants' restrictive contracts and coercive tactics, and their effects on fighter compensation. They will be used to create a reliable model of the MMA market, including with respect to compensation MMA fighters earned during the Relevant Time Period and factors that affect compensation.[4]

The Subpoena set the deadline for compliance as February 10, 2025. The Subpoena included twelve (12) Document Requests discussed in detail at Section III.a.ii.4, below, and attached the Court-entered Protective Order to inform the recipient about robust protections available for any potentially confidential business information. *Id.* at 93.

### C.    The Meet and Confer Conferences Between Plaintiffs and Dominance.

On February 10, 2025, Plaintiffs received objections to the Subpoena from Dominance's counsel, Christiansen Trial Lawyers ("CTL"). Ex. C. Dominance asserted general boilerplate

---

[4] *See Le Order* granting class certification ("*Le* Class Cert. Order"), Case No. 15-cv-01045-RFB-BNW, ECF No. 839, at 46 (finding that Plaintiffs' expert's model "controls for, or removes, the possible effect of many other variables that may impact compensation").

objections of overbreadth, burden, relevance, proportionality, and privilege, without addressing any specific Request or stating with specificity how those objections apply.

On February 18, 2025, counsel for Plaintiffs and Dominance conferred by telephone. CTL stated that Dominance would not produce any documents unless Plaintiffs agreed to narrow the Requests. Plaintiffs offered to withdraw Request Nos. 1-3 (relating to Dominance's corporate structure, beneficial ownership, and document preservation policies, respectively), and Request No. 12 (seeking communications referring to the *Johnson* action).[5] Plaintiffs also offered to hire a vendor to collect Dominance's responsive documents and to apply negotiated search terms to Dominance's documents and communications. Plaintiffs refused to withdraw the requests for documents and communications responsive to Request Nos. 4-11, which seek documents and communications relating to the MMA careers and compensation of Dominance's MMA fighter clients and the UFC's interactions with the agents or their MMA fighter clients. Responsive documents relate to the core of Plaintiffs' allegations and are therefore highly relevant. Counsel for Plaintiffs and Dominance agreed to speak again on February 25, 2025. Rayhill Decl. ¶ 4.

On February 25, 2025, CTL failed to join the scheduled telephone call. Rayhill Decl. ¶ 5. CTL sent an email after the scheduled time apologizing for missing the call and stating: "Regarding the matter we were set to discuss, my client is standing by his objections to the subpoena. The primary concern is the substantial financial burden compliance would impose, with estimated costs reaching into the tens of thousands of dollars, which my client simply cannot afford." Ex. D at 119. CTL continued, "I'm happy to discuss any potential alternatives that might reduce the scope or cost of compliance if you think that would be productive. Otherwise, my client remains firm in his position at this time." *Id*. Counsel made no mention of Plaintiffs' offer to provide a vendor to collect the documents. *Id*.

---

[5] Plaintiffs withdrew these Requests in an attempt to reduce the burden on Recipient in the hope of reaching a reasonable accommodation. Plaintiffs' position remains that these Requests seek relevant documents pertaining to individuals who may have been involved in Recipient's MMA-related business, who therefore would be potential custodians. Plaintiffs clarified that their withdrawal of these Requests does not mean Plaintiffs concede this point.

Plaintiffs' counsel responded on the same day and, in response to CTL's assertions regarding cost of compliance, reiterated the offer to provide a vendor to collect the documents, which would significantly decrease costs. Ex. E at 125. Plaintiffs' counsel also suggested that many of the requested documents, such as fighters' agreements with MMA promotions or with sponsors, are likely "go-get" documents stored in an easily accessible, central location, so the burden of collection was likely to be minimal, regardless of whether Dominance accepted Plaintiffs' offer. *Id.*

At Plaintiffs' request, counsel spoke again on May 20, 2025. Plaintiffs' counsel reiterated the relevance of the narrowed Requests and advised that, without any compromise, they would be forced to seek court intervention. CTL advised that Dominance would not budge on its objections and was refusing to produce a single document. Rayhill Decl., ¶¶ 7, 8.

In a final attempt on June 10, 2025, Plaintiffs' counsel sent a letter to CTL reiterating Plaintiffs' positions on relevance and burden and various offers. Plaintiffs noted Dominance's continuing refusal to produce any responsive documents, notwithstanding its position regarding ESI. While Plaintiffs' intent in sending the letter was to reach an accommodation with Dominance, the letter put Dominance on notice of a forthcoming motion to compel. Ex. F at 134.

On June 10, 2025, CTL responded to Plaintiffs' letter, stating that they were "surprised" by Plaintiffs' "offer[] to withdraw certain requests," and that their "understanding was that your clients were not willing to narrow the scope of the subpoena." Ex. G at 136.

On June 10, 2025, Plaintiffs' counsel responded that their "position during our May 20, 2025 call was that Plaintiffs would not narrow our requests *further* than the concessions we had already made, which included an offer to drop Request Nos. 1-3 and 12 . . . [and an] offer[] to underwrite the collection of the responsive documents by providing a vendor to perform the search and collection. . . . [so as to] limit the burden on Dominance to a negligible level." Ex. H at 139 (italics in original). CTL responded: "dominance [*sic*] is not in a position to pay for the retrieval you desire and underwriting does not include fees to our client which is not a party and a small operation[]. our [*sic*] client is not a party to the litigation and this fishing expedition is just to harass it." Ex. I at 143.

1    Plaintiffs advised that it appeared the negotiations were at an impasse. Ex. J at 147. In reality,

2    Dominance refused to negotiate.

3    **III.    ARGUMENT**

4        **A.    The Court should order Dominance to comply fully with Plaintiffs' Subpoena.**

5            **1.    Legal Standard.**

6            Rule 45 provides that a party may command a non-party to produce designated documents in

7    that person's possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). "It is well established

8    that the scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of

9    discovery allowed under Rule 26(b)(1)." *In re Medport LA, LLC*, No. 2:20-cv-00552-JAD-BNW,

10   2020 WL 3621343, at *3 (D. Nev. July 1, 2020) (citing *Proficio Mortg. Ventures, LLC. v. Fed. Sav.*

11   *Bank*, 2016 WL 1465333, at *3 (D. Nev. Apr. 14, 2016)). "Federal Rule of Civil Procedure 26(b)(1)

12   provides for a broad scope of discovery, recognizing that the 'mutual knowledge of all the relevant

13   facts gathered by both parties is essential to proper litigation.'" *Id*. (quoting *Hickman v. Taylor*, 329

14   U.S. 495, 507-08 (1947). Indeed, "Rule 26 allows a party to obtain discovery concerning any

15   nonprivileged matter that is relevant to any party's claim or defense." *Id*. "'[R]elevant evidence' is

16   evidence having 'any tendency to make [the existence of] a fact [that is of consequence to the

17   determination of the action] more or less probable than it would be without the evidence.'" *Id*.

18   (quoting Fed. R. Evid. 401, brackets in original).

19           It is "well established that the party resisting discovery bears the burden of showing why a

20   discovery request should be denied." *Painters Joint Comm. v. Emp. Painters Tr. Health & Welfare*

21   *Fund*, No. 2:10-cv-01385-JCM-PAL, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011)

22   ("*Painters*") (citing *Blankenship v. Hearst Corp*., 519 F.2d 418, 429 (9th Cir.1975)). "The party

23   resisting discovery has the burden of clarifying, explaining and supporting its objections," which

24   includes the requirement to make a specific showing of overbreadth, burden, or irrelevance. *Id*.

25   (citing *Nestle Food Corp. v. Aetna Cas. & Sur. Co*., 135 FRD 101, 104 (D.N.J.1990)).

26

27

28

### 2.    Dominance's boilerplate objections fail to carry their burden of showing why they should not produce relevant documents responsive to the Subpoena.

Dominance has failed to carry its burden under Rule 45 to show why it should not be required to produce responsive documents in its possession, custody, or control. Its generalized boilerplate objections fail to address Plaintiffs' individual Requests with specificity, and thus are tantamount to making no objection at all. *See Painters*, 2011 WL 4573349, at *5.

### 3.    The Relevant Time Period covered by Plaintiffs' Requests is appropriately tailored to the needs of the case.

Dominance asserts that "the subpoena lacks reasonable temporal and subject-matter constraints, [and] unfairly requires Dominance to search all its records for any information potentially related to UFC without regard to the issues that may be relevant in the underlying lawsuit." Ex. C at 116. In addition to lacking sufficient specificity, this objection is incorrect.

Regarding temporal constraints, the Relevant Time Period for responsive documents in Plaintiffs' Subpoena—January 1, 2015 until the present—is tailored to the needs of the case. This period was chosen to cover the Class Period in the Amended Complaint (July 1, 2017 "until the illicit scheme alleged herein ceases") plus the previous two and a half years to provide a fully developed factual record. The *Johnson* action brings the same claims as the previously filed *Le* action, but the relevant period for production of documents in *Le* ended on June 30, 2015. *See Le* Minutes of Proceedings, Case No. 5-cv-01045, ECF No. 200, Nov. 18, 2015. If the time period covered by the Subpoena matched only the *Johnson* Class Period, there would be a two-year gap in the discovery record. The UFC's contracts can last for several years, so contracts signed before the *Johnson* Class Period would affect compensation paid during the Class Period. Contracts which predate July 1, 2017, would also set the baseline from which diminished compensation during the *Johnson* Class Period would be calculated.

Courts routinely approve discovery that pre-dates the class period, including the *Le* Court, which approved discovery going back to 2005 (and in some instances back to 2000) for a class

period starting in December 2010. *Id.*[6]

With regard to subject matter constraints, Plaintiffs requests are designed to yield only highly relevant documents pertaining to Defendants' anticompetitive practices and their effects on fighter compensation. They do not seek, and are unlikely to yield, non-relevant documents. The requests are narrowly tailored.

### 4.    The Protective Order provides robust protections for confidential material.

Dominance sweepingly asserts that Plaintiffs' Requests seek information about its "private business affairs" and "private financial information." Ex. C at 116-117. But Plaintiffs have provided Dominance with the Protective Order and an explanation of the designations contained therein, including that sensitive business information can be designated "Attorneys Eyes Only." *See Bryant v. Mattel, Inc.*, No. C 04-09049 SGL RNBX, 2007 WL 5416681, at *8 (C.D. Cal. Jan. 26, 2007), (finding protective order "allowing a party to designate documents as either 'Confidential' or 'Confidential—Attorney's Eyes Only'" sufficient to protect the parties' trade secret information). Dominance's refusal to identify the purportedly confidential material or offer a proposal for redactions is premature, vague, and in bad faith. And as it relates to "corporate documents and ownership records," the objection is moot, as Plaintiffs have withdrawn those Requests. Rayhill Decl., ¶ 4.

### 5.    Plaintiffs' Requests do not exceed the limits of Rule 26(b)(2)(C)(i).

The Subpoena is subject to the limits of Rule 26(b)(2)(C)(i), which provides that a court must limit the frequency or extent of discovery otherwise allowed if it is "unreasonably cumulative or duplicative or that could be obtained from some more convenient, less burdensome or less expensive

---

[6] *See also, In re Dockers Roundtrip Airfare Promotion Sales Practices Litig.*, No. CV 09-2847 CAS (FMOx), 2010 WL 11515318, at *5 (C.D. Cal. Aug. 1, 2010) ("In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context."). Indeed, in some instances the *Le* Court authorized discovery to extend even further – to *10 years* beyond the beginning of the class period. *Le* Minutes of Proceedings, Case No. 5-cv-01045, ECF No. 214, Jan. 28, 2016 (ordering Zuffa to "use a reasonable methodology to respond to [certain] requests dating back to 1/01/2000").

source." Dominance objects to the Subpoena as "duplication of discovery" and contends that "a significant majority of the identifiable information sought by the subpoena is discoverable directly from the UFC." Ex. C at 2. These objections have no merit.

Many of the documents sought from Dominance have no potential of being cumulative or duplicative because they by their very nature will not be available from the UFC, including internal Dominance documents and communications relating to negotiations with the UFC or other MMA promoters (Request Nos. 5, 7). These internal Dominance documents are clearly relevant, will not be burdensome to produce, and are not available from any other source – and yet Dominance has failed to even engage in meaningful discussions as to their production.

Moreover, there are reasons to believe that there will be gaps in Defendants' production. Defendants have been evasive to the point of refusing to meaningfully engage with Plaintiffs regarding the scope of discovery, claiming not to have possession, custody, or control of their current or former executives and employees' documents or mobile devices. They have been dilatory in their production of relevant discovery materials despite being ordered by the Court to do so (ECF Nos. 176, 202), and they continue to withhold relevant information regarding employees' cell phones despite being ordered to produce it.[7] Indeed, to this day Defendants have failed to produce information relating to at least six current or former employees and executives whose information they were ordered to produce by July 3, 2025. Rayhill Decl., ¶ 21.

Defendants have also failed to make adequate disclosures in the *Johnson* action. Indeed, Defendants disclosed only six Zuffa/TKO employees likely to have discoverable information that Defendants may use to support their denials or defenses. Ex. P at 211-212. Plaintiffs, without the benefit of discovery, were able to identify *thirteen* individuals employed by Defendants, ten Zuffa/TKO employees and three additional Endeavor employees. Ex. Q at 226-228.

---

[7] *See* Plaintiffs' Motion to Compel Defendant Endeavor Group Holdings, Inc., to Produce Documents in Response to Plaintiffs' First and Second Sets of Requests for Production and for Sanctions, ECF No. 183, April 7, 2025, at 6 (detailing Defendants' avoidance of Plaintiffs' requests to meet and confer regarding discovery issues); ECF No. 202, June 5, 2025 (Minutes of Proceedings related to foregoing motion). *See also* Rayhill Decl., ¶ 21.

In addition, several of the individuals who carried out fighter negotiations for the UFC are no longer employed by Defendants, and Plaintiffs have concerns that their documents may no longer be available. Rayhill Decl., ¶ 20.

Defendants also have a history, in the related *Le* action, of failing to disclose and/or spoliating discoverable evidence, including failing to disclose relevant and responsive documents that had been produced to the U.S. DOJ in response to a Civil Investigative Demand,[8] and failing to disclose the existence of mobile phones that contained highly relevant evidence, one of which was discarded, possibly after Defendants' obligation to identify and preserve it was in effect.[9] In short, because of UFC's discovery recalcitrance and past incidents of bad faith and failure to properly preserve relevant evidence, Plaintiffs have legitimate concerns about Defendants' ability or willingness to produce responsive documents and information to the extent relevant to any potential overlap with these Requests made pursuant to the Subpoena.

Plaintiffs thus do not seek "cumulative or duplicative" discovery from Dominance. *See Photography By Frank Diaz, LLC v. Friends of David Schweikert*, 2023 WL 3078664 at *2 (D. Ariz. Apr. 25, 2023) (a discovery request "is cumulative or duplicative if the requesting party already has the information that they are seeking to obtain"); *Brennan v. Mylan, Inc.*, 2023 WL 2445344 at *2 (W.D.N.Y. Mar. 10, 2023) (same).

---

[8] *See Le* Joint Status Report, Case No. 2015-cv-01045, ECF No. 244, April 29, 2016 , pp. 6-10 (detailing Zuffa's failure to disclose and produce 1,800,000 documents it had previously produced to the FTC and describing an internal Zuffa email sent days before receiving the FTC demand letter (but three months *after* receiving a voluntary request from the FTC) advising Zuffa employees to shred any documents they thought might be confidential).

[9] *See* Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel Defendant to Produce a Log of Communications for Dana White's Discoverable Telephone Numbers and Electronic Communication Devices and Directing Defendant to Submit an Inventory of Electronic Communication Devices), Case No. 15-cv-01045-RFB-BNW, ECF No. 397 at 1 ("Zuffa failed to disclose until April 24 [after the close of fact discovery] that it had never collected ESI from devices associated with three of the four mobile phone numbers White used to conduct Zuffa business during the Relevant Time Period.").

6.    **Plaintiffs' Subpoena seeks relevant documents and information.**

Dominance asserts without support that the Subpoena seeks evidence that is not relevant. Ex. C at 116. But the burden of showing the Requests seek discovery that is not relevant lies with Dominance. *Painters*, 2011 WL 4573349 at *5 (party opposing discovery bears burden of showing discovery "not relevant"). Here, Dominance cannot meet that burden with respect to Plaintiffs' narrowed Requests, which clearly seek relevant evidence discoverable under Rules 26 and 45 of the Federal Rules of Civil Procedure. The rules allow Plaintiffs to obtain by third-party discovery "anything related" to their claims in the litigation, balanced against the burden and expense in producing them. *Playstudios, Inc. v. Centerboard Advisors, Inc.*, 2019 WL 8128168 at *4 (D. Nev. Jul. 18, 2019); *Painters*, 2011 WL 4573349 at*5 ("liberal discovery" under Rules 26 and 45 "remains the standard"). Plaintiffs' requests are narrowly tailored to seek only highly relevant documents.

> **Request No. 4**: All Communications between You and the UFC, or any other Person employed or retained by the UFC or working on its behalf, including, without limitation, Communications relating to any Agreements (whether explicit or implicit) between You and the UFC, or anyone with a beneficial ownership interest in the UFC."[10]

The UFC's contracts with its fighters at issue here are at the very center of Plaintiffs' claims. Amended Complaint, ¶¶ 100-106. Plaintiffs also allege that the UFC used coercion and threats to bully its fighters into accepting its restrictive terms. *Id.*, ¶¶ 107-109. Thus, any communications between the UFC and Dominance relating to the UFC's agreements with its fighters are highly relevant, including communications relating to negotiations, renewals, tolling, enforcement, and attempted intimidation.

> **Request No. 5**: All Documents and Communications constituting or relating to Agreements between You and Your Clients or between You or Your Clients and any MMA Promoter relating to Your Clients' provision of services as an MMA Fighter or for Your Clients' Promotional and Ancillary Rights, including, without limitation, all Documents and Communications discussing, evaluating, or analyzing actual or proposed contractual terms or provisions for use in

---

[10] Pursuant to LR 26-6(b), Plaintiffs have set forth the text of all disputed requests in full. Dominance did not provide individual responses to Plaintiffs' Requests, so no responses are included here.

> Agreements between any MMA Fighter and any MMA Promoter, and including all Documents discussing or reflecting the financial, economic or competitive effects of such actual or potential Agreements.

Plaintiffs allege, and the *Le* Court found, the UFC imposes restrictive contractual terms on its MMA fighters, and that those terms impair other promoters' ability to compete for the services of professional MMA fighters, thereby enabling the UFC to suppress compensation for its fighters. *See Le* Class Cert. Order, ECF No. 839, at 35 ("the Court finds that the combined effect of the contracts' restrictive clauses created a situation where Zuffa had the sole power to control a fighter's ability to make money for the majority of the average fighter's career."). The relevant product markets are the output market for producing professional MMA events and the input market for the services of professional MMA fighters. To prove their claims, Plaintiffs will need to analyze the entirety of both markets to determine the effects of Defendants' alleged anticompetitive actions on other MMA promoters and on fighter compensation. Agreements between the UFC and its fighters are relevant to Defendants' restrictive contractual terms and their effects on fighter compensation as well as damages calculation. Amended Complaint, ¶¶ 100-106. And agreements between other MMA promoters and their MMA fighters are probative of the anticompetitive effects of Defendants' actions on other MMA promoters, and will provide necessary comparators for Plaintiffs' experts. The agreements and related documents and communications are highly relevant to Plaintiffs' allegations. Dominance should be compelled to produce them.

> **Request No. 6**: All Documents reflecting or relating to the administration, monitoring, auditing, or enforcement or threatened enforcement of any UFC Fighter's Agreements with Zuffa and/or of any of the contractual provisions contained therein, including without limitation any threatened or instituted arbitration actions, lawsuits, or other legal proceedings.

Plaintiffs allege the UFC used threats and intimidation to enforce its restrictive contracts with its MMA fighters. *Id.*, ¶¶ 107, 109. This Request seeks relevant evidence related to those threats.

> **Request No. 7**: All Documents relating to comparisons of the UFC's Promotional and Ancillary Agreements, Merchandising Agreements, MMA Bout Agreements, side Agreements, marketing strategies, or broadcast and/or PPV distribution capabilities with the corresponding Agreements, marketing strategies or broadcast and/or PPV distribution capabilities of any other MMA Promoter.

Responsive documents are relevant to the UFC's alleged restrictive contractual terms imposed on its fighters and its relative market power and will provide a market participant's view of the UFC's fighter agreements. *Id.*, ¶¶ 100-106. The burden of production is light because responsive documents are likely to be few in number and stored in a central location ("go-get" documents).

> **Request No. 8**: All Documents and Communications constituting or relating to any actual or potential Agreements or other opportunity between You or Your Clients and any Sponsor, including without limitation any actual or potential approach, solicitation, negotiation, inquiry, proposal, regardless of whether such Communication resulted in an Agreement, or any Documents or Communications relating to any actual or potential such opportunity with a Sponsor that Your Clients were unable to benefit from as a result of any conduct on the part of the UFC or any Agreement (explicit or implicit) to which the UFC was or is a party.

Plaintiffs allege the UFC exercised control over which sponsors its fighters could contract with and how much the fighters would be paid, thereby affecting the fighters' overall MMA-related compensation. *Id.*, ¶¶ 104(g), 105, 107-108, 115, 122. This Request seeks documents showing which sponsors the UFC allowed its fighters to contract with and the sponsorship income the fighters received. It also seeks documents showing the limitations the UFC imposed on its fighters regarding sponsorship. It also seeks documents showing sponsorship income available to other (non-UFC) MMA fighters to use as a comparator. *Id.*, ¶ 122. These documents are relevant to determining Class members' total MMA-related compensation.

> **Request No. 9**: All Documents referring or relating to the UFC denying permission to, or otherwise discouraging, MMA Fighters from contracting or working with particular Sponsors, banning or discouraging particular Sponsors from contracting with MMA Fighters, banning or discouraging MMA Fighters from contracting with You, or the UFC discussing and/or publicly proclaiming that MMA Fighters who contract with particular Persons, including, without limitation MMA Promoters or Sponsors, will either be fined, docked compensation, banned from the UFC or disadvantaged by the UFC in any way.

Plaintiffs allege that the UFC used threats and intimidation to prevent its fighters from working with sponsors that were not approved by the UFC. *Id.*, ¶¶ 107-109. Request No. 9 seeks documents referring or relating to the UFC denying permission or otherwise discouraging, MMA Fighters from contracting or working with particular Sponsors.

> **Request No. 10**: Documents sufficient to show all compensation paid to any of Your Clients by any MMA Promoter, including but not limited to that MMA

Fighter's base salary, payment or compensation; bonuses of any kind; discretionary payments; signing bonuses; broadcast royalties; PPV shares; Merchandise payments; appearance fees; or any other compensation, broken down by date, MMA Promoter, amount of payment, and source of revenue.

**Request No. 11**: Documents sufficient to show all income Your Clients or any other MMA Fighter received from any source other than a MMA Promoter since Your Clients or other MMA Fighters became a Professional MMA Fighter, including information showing the amount Your Clients or other MMA Fighters received related to MMA; the source of that income; the service rendered or property, whether tangible or intangible, delivered in exchange for any payment; the date on which the payment was received; and, for recurring payments, the frequency of such payments.

Request Nos. 10 and 11 seek documents sufficient to show all MMA-related income from any source. UFC fighters get paid to fight, and receive a second (usually equal) payment if they win. They can also receive additional compensation in the form of sponsorship payments (discussed above), pay-per-view or broadcast royalties, merchandising royalties relating the use of their name, image, or likeness, or payments for appearing at or endorsing a business. *Id*., ¶¶ 27(f), 28, 47. All of these payments relate to the fighters' notoriety as an MMA fighter, and are therefore relevant to computing total MMA-related compensation and estimating damages. Fighter compensation is at the very core of Plaintiffs' allegations. *Id*., ¶¶ 6, 40, 74, 84, 93, 138. Plaintiffs' experts will need to account for all compensation related to the fighters' MMA careers in order to fully assess the impact of the UFC's alleged anticompetitive actions. *See* n.7, *supra*.

In sum, the documents sought in Request Nos. 4-11 are highly relevant.

### 7.    Plaintiffs have taken reasonable steps to avoid imposing undue burden or expense.

Under Rule 45(d)(1), a party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Here, Plaintiffs' steps taken to avoid imposition on Dominance are extraordinary - they have offered to take on the entire burden of collection of Recipient's documents. Plaintiffs have also narrowed the scope of the subpoena by agreeing to withdraw four of their original twelve Requests. Ex. H at 139.

Dominance nonetheless complains that it is subject to undue expense because it cannot afford to pay legal fees of counsel. Ex. I ("dominance [sic] is not in position to pay for the retrieval you

1    desire and [Plaintiffs'] underwriting *does not include fees to our client . . .*") (italics added).

2    However, this is an improper objection. The Rules of Civil Procedure presume that the responding

3    party must bear the expense of complying with discovery requests. *Spears v. First Am. Eappraiseit*,

4    No. 5:08-cv-00868 RMW (HRL), 2014 WL 11369809, at *3 (N.D. Cal. July 3, 2014) ("nonparties

5    generally are not entitled to fees incurred in responding to discovery requests"); *Unibanctrust Co. v.*

6    *Kozicki*, No. 87 C 9993, 1988 WL 87063, at *4 (N.D. Ill. Aug. 17, 1988) (same); *Tattle Tale*

7    *Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, No. CIV.A. 11-7013 JLL, 2012 WL

8    1191214, at *7 (D.N.J. Apr. 10, 2012) (declining to award reimbursement of legal fees to subpoena

9    recipient where the "legal fees relate to its efforts to protect its own interests regarding the

10   subpoena"). If Dominance has grounds for relief from this ordinary presumption based on its

11   "position to pay," it is Dominance's obligation to petition the Court for a protective order or other

12   relief, detail the extraordinary circumstances which prevent its compliance, and make an appropriate

13   record of the state of its finances. Dominance has not done so, and absent that kind of record, its

14   boilerplate objection of not being in "position to pay" is meaningless and far outweighed by the clear

15   record made herein of Plaintiffs' steps taken to comply with Rule 45(d)(1)'s directives in avoiding

16   imposition of undue burden.[11]

17       **IV.    CONCLUSION**

18           For the reasons stated above, Plaintiffs respectfully ask the Court to order Dominance to

19   comply fully with Plaintiffs' Subpoena. Plaintiffs also respectfully ask the Court to order sanctions

20   against Dominance of all fees and costs incurred by Plaintiffs in pursuing this Motion.

---

[11] Even if Dominance had made a record and properly moved for protective relief from the
Subpoena based on inability to pay its outside counsel attorneys' fees, Plaintiffs submit that shifting
of outside counsel's fees is inappropriate. *United States v. CBS, Inc.*, 103 F.R.D. 365, 375 (C.D. Cal.
1984) (declining to award outside counsel attorneys' fees incurred by non-party witnesses given "the
American Rule on attorneys' fee awards and the apparent unavailability of exceptions to it") (citing
*Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 262 (1975)).

Dated: July 23, 2025                Respectfully submitted,

                                    /s/ *Joseph R. Saveri*

                                    Joseph R. Saveri (*pro hac vice*)
                                    Christopher K.L. Young (*pro hac vice*)
                                    Kevin E. Rayhill (*pro hac vice*)
                                    Itak Moradi (*pro hac vice*)
                                    **JOSEPH SAVERI LAW FIRM, LLP**
                                    601 California Street, Suite 1505
                                    San Francisco, California 94108
                                    Telephone:(415) 500-6800
                                    Facsimile: (415) 395-9940
                                    jsaveri@saverilawfirm.com
                                    cyoung@saverilawfirm.com
                                    krayhill@saverilawfirm.com
                                    imoradi@saverilawfirm.com


                                    Eric L. Cramer (admitted *pro hac vice*)
                                    Michael Dell'Angelo (admitted *pro hac vice*)
                                    Patrick F. Madden (admitted *pro hac vice*)
                                    **BERGER & MONTAGUE, P.C.**
                                    1818 Market Street, Suite 3600
                                    Philadelphia, PA 19103
                                    Telephone: (215) 875-3000
                                    Facsimile:  (215) 875-4604
                                    ecramer@bm.net
                                    mdellangelo@bm.net
                                    pmadden@bm.net


                                    Joshua P. Davis (admitted *pro hac vice*)
                                    Robert C. Maysey (admitted *pro hac vice*)
                                    **BERGER & MONTAGUE, P.C.**
                                    505 Montgomery Street, Suite 625
                                    San Francisco, CA 94111
                                    Telephone: (415) 906-0684
                                    Facsimile:  (215) 875-4604
                                    jdavis@bm.net
                                    rmaysey@bm.net


                                    Benjamin D. Brown (admitted *pro hac vice*)
                                    Richard A. Koffman (admitted *pro hac vice*)
                                    Daniel H. Silverman (admitted *pro hac vice*)
                                    **COHEN MILSTEIN SELLERS**
                                    **& TOLL, PLLC**
                                    1100 New York Avenue, N.W., Suite 500, East
                                    Tower Washington, DC 20005
                                    Telephone: (202) 408-4600

16

Facsimile: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

W. Joseph Bruckner (admitted *pro hac vice*)
Brian D. Clark (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4001
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle Pozan (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
1165 N. Clark Street, Suite 700
Chicago, IL 60610
Telephone: (612) 339-6900
kjpozan@rlocklaw.com

*Counsel for Plaintiffs Kajan Johnson and*
*Clarence Dollaway and the Proposed Class*

Michael J. Gayan
**CLAGGET & SYKES**
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107
Telephone: (702) 333-7777
Facsimile: (702) 655-3763

*Liaison Counsel for Plaintiffs Kajan Johnson and*
*Clarence Dollaway and the Proposed Class*

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY
THIRD PARTY DOMINANCE MMA LLC

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that the foregoing document was served on July 23, 2025, via the Court's

3    CM/ECF electronic filing system addressed to all parties on the e-service list.

4

5                                        */s/ Joseph R. Saveri*

6                                        Joseph Saveri
                                         JOSEPH SAVERI LAW FIRM, LLP

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY
THIRD PARTY DOMINANCE MMA LLC