Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
**BERGER & MONTAGUE, P.C.**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

*Counsel for Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Kajan Johnson, Clarence Dollaway, and Tristan Connelly, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br>    v.<br><br>Zuffa, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,<br><br>    Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS ZUFFA, LLC, TKO OPERATING COMPANY, LLC, AND ENDEAVOR GROUP HOLDINGS, INC., FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT** |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     HISTORY OF DEFENDANTS' DILATORY AND BAD FAITH CONDUCT ......... 3

    A.    Defendants Impeded Progress on Negotiating the Scope of Plaintiffs'
        Requests ..................................................................................... 4

    B.    Defendants Impeded Negotiation of Custodians and ESI Sources ................. 5

    C.    Defendants Impeded Search Term Negotiations ........................................ 8

    D.    Defendants' Productions Are Inadequate Because of Their Misconduct ....... 11

III.    DEFENDANTS HAVE VIOLATED MULTIPLE COURT ORDERS .................... 11

    A.    Defendants Zuffa and TKO Failed to Meet the Court Ordered
        July 17, 2025 Substantial Completion Deadline (ECF No. 187) ................... 11

    B.    Defendants Violated the Court's June 3, 2025 Device Disclosure Order
        (ECF No. 202) ............................................................................. 13

    C.    All Defendants Violated the Protective Order (ECF No. 123) ...................... 14

IV.     LEGAL STANDARD ................................................................................ 15

V.      ARGUMENT ......................................................................................... 16

    A.    Defendants' Obstructive Conduct Has Impeded Meaningful
        Progress in Discovery .................................................................... 16

    B.    Defendants' and the Individual Subpoena Recipients Should
        Be Sanctioned ............................................................................. 17

        1.    Dispositive are appropriate ............................................... 18

        2.    Absent dispositive sanctions, lesser sanctions are appropriate. ......... 21

    C.    The Court Should Appoint a Special Master to Perform Defendants'
        Discovery Functions and Carry Out Any Order Compelling Production ...... 22

VI.     CONCLUSION ....................................................................................... 25

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT
ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE
PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adriana Int'l Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir. 1990) .......................................................................... 18, 19

*Apple, Inc. v. Samsung Elecs. Co. Ltd.*,
   2013 WL 1942163 (N.D. Cal. May 9, 2013) ..............................................................3

*Conn. Gen. Life Ins. Co v. New Images of Beverly Hills*,
   482 F.3d 1091 (9th Cir. 2007) ...................................................................... 18, 19, 20

*CrossFit, Inc. v. Nat'l Strength & Conditioning Assoc.*,
   2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) ............................................................15

*DeGeer v. Gillis*,
   755 F. Supp. 2d 909 (N.D. Ill. 2010) ........................................................................3

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
   2007 WL 3306496 (N.D. Cal. Nov. 6, 2007) ...........................................................22

*Dreith v. Nu Image, Inc.*,
   648 F.3d 779 (9th Cir. 2011) ....................................................................................21

*E.E.O.C. v. Fry's Elecs., Inc.*,
   287 F.R.D. 655 (W.D. Wash. 2012) .........................................................................24

*Ellis v. Benedetti*,
   2014 WL 6883873 (D. Nev. Dec. 8, 2014) ................................................. 15, 19, 20

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*,
   2018 WL 1542040 (M.D. Tenn. Mar. 29, 2018) ......................................................23

*Evans v. Skolnik*,
   2011 WL 383945 (D. Nev. Feb. 3, 2011) .................................................................21

*Fernandez v. Cox*,
   2016 WL 8710431 (D. Nev. Sept. 2, 2016) ........................................... 15, 18, 19, 20

*Henry v. Gill Indus., Inc.*,
   983 F.2d 943 (9th Cir. 1993) ....................................................................................19

*Humphreys v. Regents of Univ. of California*,
   2006 WL 3020902 (N.D. Cal. Oct. 23, 2006) ..........................................................22

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) .......................................................................... 18, 19

*Kelley v. Smith's Food & Drug Centers, Inc.*,
   2014 WL 6474026 (D. Nev. Nov. 19, 2014) ..............................................................3

*King v. Calderwood*,
   2015 WL 7566679 (D. Nev. Nov. 24, 2015) ............................................................15

Case No.: 2:21-cv-01189-RFB-BNW

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006).................................................................................20

*Lewis v. Caesars Entm't Corp.*,
   2019 WL 1571281 (D. Nev. April 11, 2019).............................15, 18, 19, 20, 21

*Mancia v. Mayflower Textile Servs. Co.*,
   253 F.R.D. 354 (D. Md. 2008)..................................................................................3

*Murphy v. Gospel for Asia, Inc.*,
   2018 WL 2676681 (W.D. Ark. June 4, 2018).........................................................23

*Nat'l Ass'n of Radiation Survivors v. Turnage*,
   115 F.R.D. 543 (N.D. Cal. 1987)......................................................................23, 24

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
   427 U.S. 639 (1976).................................................................................................19

*Pagtalunan v. Galaza*,
   291 F.3d 639 (9th Cir. 2002)...................................................................................18

*Panliant Fin. Corp. v. Isee3d, Inc.*,
   2015 WL 5176586 (D. Nev. Sep. 4, 2015).......................................................20, 21

*PIC Grp., Inc. v. LandCoast Insulation, Inc.*,
   2011 WL 1342951 (S.D. Miss. Mar. 4, 2011)........................................................24

*Sec. & Exchange Comm'n v. Hemp, Inc.*,
   2019 WL 1957954 (D. Nev. May 2, 2019)......................................................15, 21

*Small v. Univ. Med. Ctr.*,
   2018 WL 3795238 (D. Nev. Aug. 9, 2018)......................................................16, 24

*Teller v. Dogge*,
   2013 WL 5655984 (D. Nev. Oct. 16, 2013)............................................................22

*U.S. v. $40,200.00 in U.S. Currency*,
   2015 WL 4276205 (D. Nev. July 14, 2015)......................................................15, 20

*Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*,
   982 F.2d 363 (9th Cir. 1992)...................................................................................15

*Valley Eng'rs, Inc. v. Elec. Eng'g Co.*,
   158 F.3d 1051 (9th Cir. 1998)...........................................................................19, 22

*Wanderer v. Johnston*,
   910 F.2d 652 (9th Cir. 1990)...................................................................................18

*Wardell v. County of Los Angeles*,
   2008 WL 2220937 (C.D. Cal. May 21, 2008).........................................................19

*Youngevity Int'l Corp. v. Smith*,
   2017 WL 6541106 (S.D. Cal. Dec. 21, 2017).........................................................22

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT
ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE
PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

**STATUTES**

28 U.S.C. § 1927 ................................................................................................................ 22

**RULES**

Fed. R. Civ. P. 34 ...................................................................................................... *passim*

Fed. R. Civ. P. 37 ............................................................................................................. 15

Fed. R. Civ. Rule 37(a) .................................................................................................... 15

Fed. R. Civ. P. 37(a)(4) .................................................................................................... 15

Fed. R. Civ. P. 37(a)(3)(B)(iii) & (iv) .............................................................................. 15

Fed. R. Civ. P. 37(b)(2)(A)(vi) ................................................................................... 15, 18

Fed. R. Civ. P. 45 ............................................................................................................... 2

Fed. R. Civ. P. 53 ............................................................................................................. 15

Fed. R. Civ. P. 53(a)(1)(C) ......................................................................................... 16, 23

## GLOSSARY

| Term | Definition |
|---|---|
| Defendants | Endeavor Group Holdings, Inc., Zuffa, LLC, TKO Operating Company, LLC |
| Discovery Participation Order | The Court's Order requiring Endeavor to participate in discovery. ECF No. 176 |
| Endeavor | Defendant Endeavor Group Holdings, Inc. |
| ESI | Electronically Stored Information |
| ESI Order | Stipulated Order Re: Discovery of Electronically Stored Information. ECF No. 115 |
| Individual Subpoena Recipients | Defendants' current and former employees and board members served with Rule 45 subpoenas and represented by Defendants' counsel: Andrew Schleimer, Ariel Emanuel, Craig Borsari, Dana White, Denitza Batchvarova, Grant Norris-Jones, Hunter Campbell, Ike Epstein, Jason Lublin, Joe Silva, Marc Ratner, Mark Shapiro, Michael Mossholder, Mick Maynard, Patrick Whitesell, Peter Dropick, Sean Shelby, Seth Krauss, and Tracy Long |
| Device Disclosure Order | The Court's Order requiring Defendants to produce a catalog of devices and communications platforms used by Defendants' custodians and the Individual Subpoena Recipients. ECF No. 202 |
| Protective Order | ECF No. 123 |
| TKO | Defendant TKO Operating Company LLC |
| Zuffa | Defendant Zuffa, LLC |

Case No.: 2:21-cv-01189-RFB-BNW

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

1    I.    **INTRODUCTION**

2         Just a month and a half after the Court's hearing on, *inter alia*, Plaintiffs' second motion to

3    compel Endeavor to produce documents and for sanctions due to Endeavor's failure to participate in

4    discovery as directed by the Court (*see* ECF Nos. 202 & 203), Defendants Zuffa and TKO and the

5    Individual Subpoena Recipients (also represented by Defendants' counsel) have continued where

6    Endeavor left off, violating several Court Orders, refusing to participate in standard meet and confer

7    negotiations, and, failing to fulfill their discovery obligations. Through this motion, Plaintiffs seek

8    (1) sanctions for Defendants' repeated misconduct and violations of the Court's Orders and (2) the

9    appointment of a special master. Defendants' failures include, without limitation:

10        1. **Missing the Substantial Completion Deadline:** Defendants Zuffa and TKO failed to meet
             the already extended substantial completion deadline. *See* ECF No. 189 (extending
11           substantial completion deadline to July 17, 2025); ECF No. 159 (setting prior deadline at
             Apr. 18, 2025). TKO produced no documents whatsoever prior to the deadline.[1] Zuffa's
12           production consists only of approximately 3,000 fighter contract documents (produced
             November 6, 2024), incomplete athlete compensation data (produced June 24, 2025), about
13           150 documents reflecting certain monthly financials (produced July 16, 2025), and
             approximately 87,000 custodial documents of which over 70,000 are simply cover emails and
14           attached fighter contracts (produced July 17, 2025).[2]

15        2. **Violating the June 3, 2025 Device Disclosure Order:** Defendants failed to produce all of
16           the information ordered by the Court. *See* Device Disclosure Order, ECF No. 202.
             Defendants' July 3 Letter did not identify devices and communications platforms for 45% of
17           their custodians and Individual Subpoena Recipients, and for those included in the disclosure,
             the information conflicted with a prior disclosure and omitted communications platforms. *See*
18           Ex. 32 (July 9, 2025 Letter); *see also* Ex. 45 (summary chart of the disclosure deficiencies).

19        3. **Violating the Protective Order:** Defendants violated the Protective Order, ECF No. 123, by
20           blanket designating all documents produced since November 1, 2024 as "Highly-Confidential
             – Attorneys' Eyes Only" despite the Protective Order prohibiting mass designations and only
21           permitting *parties* to use the "Highly-Confidential" designation in the limited circumstance
             of materials disclosing "medical or highly personal nature" of non-plaintiff fighters. Among
22           other things, Defendants broadly designated as "Highly-Confidential":  (a) all materials

23

24    _____

      [1] The Court extended Endeavor's substantial completion deadline to August 17, 2025. *See* ECF No.
25    202. Endeavor has yet to produce any documents in response to the Requests for Production of
      Documents that the Court Ordered it to produce as resolution of Plaintiffs' first motion to compel.
26    ECF No. 202 (ordering Endeavor to produce documents in response to Plaintiffs' Motion, ECF No.
      183). Nor has Endeavor engaged on search terms or methodologies to date, a month and a half since
27    the Court's Order and less than a month prior to Endeavor's substantial completion deadline.
      [2] Zuffa re-produced in this case its *Le* productions, though it was not required to do so.

28                                                      1
      **PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT
      ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION
      OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT**

previously produced in the *Le* Action (even though these materials were subject only to the "Confidential" designation in *Le* and include materials the Court ordered unsealed); (b) internal UFC financials; and (d) text messages discussing (i) lawsuits, including this case; (ii) other MMA promoters' viewer ratings with members of the press; and (iii) with minor league promoters, signing fighters and/or keeping them away from potential rival promotions.

4. **Violating Discovery Participation Order:** Endeavor failed to meaningfully participate in discovery following the Court's Order to do so or "be subject to sanctions, up to and including dispositive sanctions." *See* ECF No. 176 (directing Endeavor to so participate); ECF Nos. 183 & ECF No. 190 (detailing Endeavor's refusals and failure to so participate). And all of that was after Endeavor refused to participate in any discovery whatsoever while its fourth motion to dismiss was pending without having moved for (much less received) a stay of discovery. *See* ECF No. 173 (setting forth Endeavor's misconduct).

The pattern of obstruction and delay exhibited by the Defendants and the Individual Subpoena Recipients[3] is beyond any reasonable bound of the thrust and parry of discovery disputes in complex litigation among sophisticated parties represented by prominent law firms. Plaintiffs do not relish bringing this motion. The extraordinary conduct of Defendants' counsel warrants relief that Defendants and the Individual Subpoena Recipients cannot deliver. Put simply, Defendants' counsel repeatedly lied in correspondence, obstructed and delayed discovery, and falsely claiming to have answered questions, complied with Court Orders, and responded to requests to meet and confer.

Defendants' conduct confirms that neither Plaintiffs' dogged efforts nor this Court's Orders, when effectuated by Defendants or the Individual Subpoena Recipients, are sufficient to compel compliance with basic discovery obligations and adherence to the authority of this Court. This Court should not countenance Defendants' recalcitrance and utter disregard for its directions. Doing so will further prejudice Plaintiffs, diminish the authority of this Court, and prevents this litigation from resolution on the merits by interfering with the truth-seeking process. Defendants' deliberate efforts to obstruct the orderly progression of this case—filed nearly five years ago—are sanctionable.

---

[3] Plaintiffs served the Individual Subpoena Recipients after Defendants claimed to lack control over such individuals' devices. Defendants' counsel did not respond to repeated requests to agree to accept service of the subpoenas, only agreeing after Plaintiffs provided notice pursuant to Fed. R. Civ. P. 45 along with the intent to effectuate service. *See, e.g.*, ECF No. 183-1, ¶8. Counsel then refused to produce anything in response to the subpoenas without a Court order. *See id.* ¶9; ECF No. 183-7, at 4 (attaching exemplars of responses stating "Accordingly, [Mr. Emanuel/Mr. White] will not produce any documents in response to these Requests unless a court orders otherwise").

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

Accordingly, the Court should appoint a Special Master who is empowered to, *inter alia*, identify, review and produce discovery on behalf of all Defendants and Individual Subpoena Recipients.

## II.    HISTORY OF DEFENDANTS' DILATORY AND BAD FAITH CONDUCT

Defendants' obstructive approach to discovery has caused their collective failure to produce documents in response to Plaintiffs' five sets of Requests for Production of Documents pursuant to Fed. R. Civ. P. 34 ("Rule 34 Requests"). Each Defendant (and the Individual Subpoena Recipients) and their counsel have participated in and coordinated this bad faith conduct.

Orderly and efficient discovery requires cooperation of the parties. *See* ECF No. 113 at 1 (noting the parties "acknowledge their duty to work together cooperatively throughout the discovery process.").[4] And thus, parties must approach discovery of ESI in that spirit of cooperation and transparency. The parties stipulated to (and the Court ordered) meeting and conferring to identify an appropriate scope of discovery arising from the parties' Rule 34 requests, then identify appropriate sources of ESI, and then negotiate search terms to winnow down that collection for a responsiveness review and production. *See* ESI Order, ECF No. 115. That is where the wheels fell off.

Defendants obstructed this process in multiple ways including: (1) outright refusing to meet and confer on Rule 34 requests and delaying the meet and confer process; (2) impeding custodial negotiations by repeatedly lying about and failing to produce organizational charts they had not produced (while faulting Plaintiffs' inability to identify custodians stating that Plaintiffs had organizational charts to rely on) and then refusing to produce other materials that would facilitate custodial negotiations such as device and communications platform information and materials

---

[4] *See also Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357-58 (D. Md. 2008) ("compliance with the 'spirit and purposes'" of discovery rules "requires cooperation by counsel" to identify discovery needs while avoiding disproportionately burdensome costs); *Kelley v. Smith's Food & Drug Centers, Inc.*, 2014 WL 6474026, at *3 (D. Nev. Nov. 19, 2014) (finding that the defendant's refusal to produce certain ESI "runs counter to the paramount goals of transparency, collaboration, and efficiency in the discovery process"); *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) ("[T]ransparency and collaboration [are] essential to meaningful, cost-effective discovery."); *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 929 (N.D. Ill. 2010) (observing that "[s]electing search terms and data custodians should be a matter of cooperation and transparency among parties").

1  enabling Plaintiffs to identify additional custodians; and (3) thwarting search term negotiations both

2  by impeding custodian negotiations (a condition precedent to search term negotiations) and by

3  refusing to provide Plaintiffs with hit reports that are clearly within Defendants' possession.

### A. Defendants Impeded Progress on Negotiating the Scope of Plaintiffs' Requests

5  Defendants' misconduct traces to the end of 2024, when Plaintiffs wrote Zuffa and Endeavor

6  separate, detailed meet and confer Letters addressing each's objections to Plaintiffs' first set of Rule

7  34 Requests. *See* Exs. 1 & 2 (Dec. 13 Letters). Plaintiffs sought a meet and confer before the end of

8  2024 but agreed to wait until January when Defendants' counsel were first available. *See id.* Yet, on

9  the January 8 meet and confer, Defendants were not prepared to have a substantive discussion

10  concerning the matters in Plaintiffs' December 13 Letter. *See* Ex. 3 (Jan. 13 Letter). Defendants

11  followed with a January 23 letter responding to Plaintiffs' December 13 Letter which was wanting

12  because Endeavor refused to respond substantively pending resolution of its third motion to dismiss

13  (resulting in Plaintiffs' first motion to compel). *See* Ex. 4 (Jan. 23 Letter); ECF No. 173. Plaintiffs

14  responded to Zuffa's January 23 Letter on February 17, proposing a meet and confer on the issues

15  therein following the February 19 hearing on Endeavor's motion to dismiss. Ex. 5 (Feb. 17 Letter).

16  Zuffa refused. Over the following weeks, Plaintiffs repeatedly requested to meet and confer in

17  response to Plaintiffs' February 17 Letter. *Id.* (detailing unanswered requests for meet and confers on

18  February 17, February 27, and March 7). When Zuffa finally met and conferred on March 31, 2025,

19  it inexplicably (and falsely) claimed that it scheduled a meet and confer whenever Plaintiffs

20  requested one—Plaintiffs have no record of such responses to their repeated requests for a meet and

21  confer and Defendants have provided none. *See* Ex. 13 (Apr. 2 Letter). On March 31, Zuffa still was

22  unprepared to substantively address the matters raised in Plaintiffs' February 17 Letter. *Id.* Zuffa did

23  not substantively respond to Plaintiffs' February 17 Letter until April 7, 2025, just prior to the then-

24  operative substantial completion deadline of April 18. 2025. Ex. 15 (Apr. 7 Letter); *see also* ECF No.

25  159. Just days later, Zuffa and TKO approached Plaintiffs to move the substantial completion

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT
ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION
OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

deadline, which Plaintiffs agreed to do in good faith. *See* ECF No. 187.[5]

## B.  Defendants Impeded Negotiation of Custodians and ESI Sources

All Defendants failed to meaningfully negotiate any additions to their custodian proposals.[6] They withheld organizational charts critical to custodian negotiations while repeatedly lying about having produced them and then withheld critical information about ESI sources—even when the Court issued the direct Device Disclosure Order.

Zuffa repeatedly lied to Plaintiffs in response to Plaintiffs' requests for organizational charts, claiming Zuffa had already produced them and casting blame on Plaintiffs for not making a custodian proposal based on such charts.[7] Plaintiffs explicitly requested these materials on the parties' January 8 meet and confer teleconference; and when Zuffa claimed to have produced them, Plaintiffs requested that Zuffa provide the Bates numbers of those documents. Exs. 34 (July 19 Letter, Jan 13 Letter); *see also* Ex. 4 (Jan. 23 Letter). Zuffa did not provide the Bates numbers in response. *Id. See* Ex. 4 (Jan. 23 Letter). Because Zuffa ignored Plaintiffs' repeated efforts to meet and confer over the next two months, *see* discussion *supra*, no progress was made. When Zuffa finally met and conferred, Plaintiffs again asked for organizational charts; Zuffa again claimed it had already produced them. *See* Ex. 13 (Apr. 2 Letter). Plaintiffs again searched Zuffa's productions, found none, and again requested by letter that Zuffa either identify the charts by Bates number or produce them. *Id.* Zuffa again responded by claiming it had produced them prior to the parties' January 8 meet and confer, but again did not identify them by Bates number. *See* Ex. 15 (Apr. 7

---

[5] After the Discovery Participation Order, Endeavor negotiated some Rule 34 requests, but refused to as to the vast majority, resulting in Plaintiffs second motion to compel. ECF No. 183.

[6] Zuffa proposed 15 custodians on January 24, 2025, Ex. X (Jan 24 email); Endeavor proposed four custodians on March 14, 2025, (Ex. 6, Mar. 14 email), and TKO proposed 13 custodians (five of whom are proposed custodians for Zuffa or Endeavor) on May 30, 2025, (Ex. 28 May 30 Letter). However, Defendants did not produce information sufficient for Plaintiffs to evaluate the proposals or propose additional custodians.

[7] This is just one example of Zuffa's gamesmanship. Plaintiffs understood that Zuffa would act in good faith and either identify the documents to Plaintiffs by Bates number or would produce the materials. Thus, when Plaintiffs proposed a simultaneous exchange of custodian lists on January 20, (Ex. 3 Jan. 13 Letter), that was based on the belief that Plaintiffs were dealing with good faith actors who would promptly supply these materials. As set forth herein, that belief was wrong.

Case No.: 2:21-cv-01189-RFB-BNW
PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

Letter).[8] Critically, Zuffa claimed that Plaintiffs were responsible for the delay in custodial negotiations given Zuffa's (false) claim that it had produced organizational charts. *Id.* A month later, buried amid ten production volumes re-producing Zuffa's approximately 775,000 document production from *Le*, Zuffa finally produced the charts. *See* Ex. 34 (July 19 Letter). Zuffa did not inform Plaintiffs it done so despite repeated representations that they had long since been produced (doing so would affirmatively have acknowledged Zuffa's dishonesty). On July 19, 2025, using these charts, Plaintiffs made a proposal of additional custodians for all three Defendants.[9]

Endeavor too resisted producing organizational charts and similar information. Endeavor first refused to participate in discovery at all, *see* ECF No. 173 (detailing Endeavor's refusal to participate), then refused to respond to the vast majority of requests, including those seeking organizational charts or documents sufficient to show similar information, *see* ECF No. 183 (detailing Endeavor's second refusal to participate), and claimed to have none. But Zuffa's organizational charts contain references to more than a dozen Endeavor employees serving in roles related to and supporting the UFC's operations. *See* Ex. 44 (compendium of organizational charts).[10]

Beyond identifying individual custodians, Defendants have also withheld information on sources of ESI (devices and communications platforms) of each potential custodian. This information is critical because the parties cannot negotiate proper custodians (much less search terms) without knowing whether and the extent to which custodians' ESI even exists any longer.

Plaintiffs' counsel's experience in the *Le* litigation is instructive. There, Zuffa first proposed

---

[8] On April 7, 2025, Zuffa did provide a list of individuals subject to a litigation hold. *See* Ex. 15, at Appx. A (Apr. 7 Letter). But the litigation hold disclosure did not include all custodians proposed by Zuffa, TKO, and Endeavor, indicating that Defendants' preservation efforts are lacking, particularly given Plaintiffs' understanding that Defendants employ aggressive document destruction protocols that will have destroyed a substantial quantity of responsive documents absent litigation holds.

[9] On several occasions, Zuffa has tried to deflect from its obstructive and dishonest conduct by blaming Plaintiffs for not providing custodian proposals despite having withheld the very information Plaintiffs had been requesting to inform such a proposal. *See, e.g.*, Exs. 11, 14, 15 (Mar. 30, Apr. 4, and Apr. 7 Letters).

[10] For its part, TKO did not produce any organizational charts—beyond those produced by Zuffa on May 1—until July 17, 2025, when Zuffa's production revealed a few, non-comprehensive organizational charts of TKO. *See* Ex. 42.

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

custodians and later offered information on the volume of emails and time periods covered in these custodians' files, disclosing for the first time that Zuffa had destroyed all files of 3 of the 16 Zuffa-proposed custodians pursuant to its document retention policies. *See Le v. Zuffa, LLC*, No. 15-1045, ECF No. 199 at 21 (D. Nev. Nov. 16, 2015). Zuffa did not agree to let Plaintiffs replace those three custodians.[11] Experience teaches that no one can accept Zuffa's custodian proposals without first knowing what those custodians have.[12] This experience led Plaintiffs here to push for information on preservation, legal holds, and the devices and communications platforms in use by potential custodians.[13] Plaintiffs requested this information as far back as January 13, 2025, when Plaintiffs noted that and that it would be productive to know now Defendants' practices to ensure preservation of ESI. *See* Ex. 3 (Jan. 13 Letter). Zuffa responded only to state that the information (and its employees' and executives' devices) was outside Zuffa's possession, custody, and control. Ex. 4 (Jan 23). Although personal phones used for business are not outside Defendants' possession, custody, or control, Plaintiffs requested that Defendants' counsel agree to accept service for subpoenas to the Individual Subpoena Recipients rather than continue to spar over the issue.[14] Ex. 5 (Feb. 17 Letter).

---

[11] When Plaintiffs proposed additional custodians, Plaintiffs learned that 10 of those new proposed custodians also lacked any custodial documents in Zuffa's possession, custody, or control. *See Le v. Zuffa, LLC*, No. 15-1045, ECF No. 206 at 5 (D. Nev. Dec. 4, 2015).

[12] The same gamesmanship appears to be repeating. Zuffa has produced only miniscule volumes of documents from certain custodians who appear to be former employees. *See, e.g.*, Exs. 32 & 35 (July 9 & July 22 Letters). Had Zuffa been transparent in response to Plaintiffs' efforts to obtain information on available devices and communications platforms, Plaintiffs likely would have requested other custodians rather than those without a significant volume of documents.

[13] Moreover, as the Court may recall, in the *Le* litigation, there was a significant spoliation issue that arose when Plaintiffs discovered that UFC President Dana White had been using multiple personal cellphones to conduct UFC business. Through subsequent investigation, Plaintiffs determined that an unknown volume of text messages had been destroyed by Mr. White during the litigation. *See Le v. Zuffa, LLC*, No. 15-cv-1045, ECF No. 397 (D. Nev. May 9, 2017). But as is often the case with spoliation, there is no true remedy available to identify the scope of such spoliation leading to Zuffa escaping culpability for it. *See id.*, ECF No. 422 (denying motion to compel communication log).

[14] Defendants' counsel did not agree to accept service for any of the Individual Subpoena Recipients until March 19, 2025, when it agreed as to 17 of the individuals. *See* Ex. 47 (March 19 Email). Defendants' counsel's May 19 Letter falsely asserted that Plaintiffs first requested that counsel accept service on March 18 (a month after Plaintiffs' written request) and then claimed that Defendants' counsel promptly agreed to accept service. *See* Ex. 26 (May 19 Letter); *see also* Ex. 5 (Feb. 17 Letter) (requesting Defendants' counsel accept service for 23 subpoena recipients).

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

Zuffa could not answer Plaintiffs' questions concerning ESI sources Zuffa had identified or even collected for custodians on the March 31 meet and confer. *See* Ex. 13 (Apr. 2 Letter).

Plaintiffs then requested this information from the Individual Subpoena Recipients. *See* Ex. 16 (Apr. 11 Letter). Defendants' counsel provided some, but nowhere near all, of the answers. *See* Ex. 49 (May 2 Email chain). So, Plaintiffs sent Defendants a letter detailing the outstanding information. Ex. 22 (May 12 Letter). Defendants' counsel purported to respond, but still did not provide all requested information. *See* Ex. 27 (May 23 Letter); *see also* Ex. 26 (May 19 Letter). Without a response, Plaintiffs raised these issues at the June 3, 2025 hearing.[15]

At the June 3, 2025 hearing, the Court referred to providing this "fairly basic information" information as a "simple thing," and considered holding an evidentiary hearing to obtain this information. Ultimately, the Court ordered Defendants to provide the information Plaintiffs requested within 30 days. *See* ECF No. 202. At 10:40 p.m. Pacific on the deadline, Defendants sent Plaintiffs a letter purporting to provide this information, *see* Ex. 30 (July 3 Letter), but omitted information for 12 of the 27 individuals (45%), contradicted Defendants' representations from April 23 (Ex. 18), and omitted communications platforms (apps) for custodians that public reporting reflects those custodians use. *See* Ex. 32 (July 9 Letter). Plaintiffs attach as Exhibit 45 a chart detailing these deficiencies. Defendants have not supplemented their July 3 Letter.

### C. Defendants Impeded Search Term Negotiations

In January 2025—believing Defendants would engage in good faith to complete negotiations as to the scope of Plaintiffs Rule 34 requests, produce organizational charts and exchange

---

[15] Endeavor, too, obstructed progress on ESI sources. Plaintiffs and Endeavor commenced to negotiate sources of discoverable ESI in March 2017, with Endeavor proposing only to search Teams chats, emails, and hardcopy documents. *See* Ex. 46 (Mar. 14 Letter). In response to the facial inadequacy of the proposal, Plaintiffs requested a list of all companywide sources of documents and ESI. *Id.* Endeavor responded that it would also search text messages and investigate the use of non-Teams messaging systems but would not conduct a company-wide search for or provide a list of communications platforms. *See* Ex. 8 (Mar. 18 Letter). Plaintiffs renewed their request for a statement of Endeavor's custodial and non-custodial document repositories on March 24, which Endeavor explicitly refused to provide on March 26. Like Zuffa and TKO, the remainder of Endeavor's participation in meet and confers on custodial and non-custodial ESI sources was performed in consolidated fashion with Zuffa, TKO, and the non-party subpoena recipients.

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

information on custodial and non-custodial sources of ESI, negotiate custodians based on such disclosures, and then negotiate search terms—Plaintiffs proposed an exchange of custodians and search terms for late January. *See* Ex. 3 (Jan. 13 Letter). But as set out above, Defendants lied for months about having produced organizational charts while refusing to identify where in the production those charts were, and Endeavor, of course, refused to participate in discovery at all. That obstructive and dishonest conduct delayed productive search term negotiations.

Despite that misconduct, Defendants have repeatedly claimed that it was Plaintiffs' failure to propose search terms that caused the discovery delays here.[16] But even when Plaintiffs proposed search terms, Defendants continued their pattern of obstructive behavior.[17]

Endeavor responded to Plaintiffs' search term proposal on April 4, claiming that it was too broad to apply to the narrow set of Requests that Endeavor had unilaterally and improperly (as ruled by the Court on June 3, 2025) limited its willingness to discuss. Ex. 14 (Apr. 4 Letter).[18] Zuffa

---

[16] These statements were and are frivolous. Irrespective of any initial proposal Plaintiffs could make, the purpose of search terms is to cull a collection of documents to reduce the burden of a responsiveness review. *See, e.g., Le v. Zuffa, LLC*, No. 15-1045, ECF No. 220, at 5 (D. Nev. Feb. 19, 2016) (Declaration of **Zuffa's expert** Helen Moure claiming that the purpose of search terms is, *inter alia*, to "limit the overall review volume in order to control the costs of discovery"). Unless or until Defendants collected all the custodial and non-custodial documents to be searched—**which they have still not done as of today**—neither Plaintiffs nor Defendants can negotiate search terms. As Zuffa's expert attested: "The process of reaching the balance of precision and recall [in search terms] usually involves at least a few rounds of testing, analysis, refinement, and retesting of proposed terms." *Id.* at 6. Thus, because of Defendants' obstruction and dishonesty in negotiations, Plaintiffs cannot have meaningfully delayed any discovery progress.

[17] When Zuffa proposed their first set of search terms on January 24, 2025, Plaintiffs were patiently awaiting the identification or production of organizational charts and thus responded only that Plaintiffs were analyzing the search terms and would respond in the near future. Ex. 5 (Feb. 17 Letter). When Endeavor made its first search term proposal on March 14, Endeavor was refusing to meet and confer over the vast majority of Rule 34 requests, limiting its proposal to only those few requests to which it was willing to respond. *See* Ex. 6 (Mar 14 email). Plaintiffs noted the issue with the scope of custodiany and identification of custodians and ESI sources were gating issues. Ex. 7 (Mar. 17 Letter). When Endeavor and Zuffa threatened to use their narrow terms and object to any further search terms Plaintiffs may propose, out of an abundance of caution, Plaintiffs made initial proposals. *See* Exs. 9, 12 (Mar. 26 & Mar. 30 Letters); Exs. 10, 11(Mar. 29 & Mar. 30 Letters). Yet, Plaintiffs were still in no position to negotiate revisions to these terms because Defendants were obstructing the custodian negotiation process and withholding information on sources of ESI.

[18] Endeavor also claimed that Plaintiffs conceded that Endeavor's conduct was not improper by

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

responded a few days later. Ex. 15 (Apr. 7 Letter). Therein, Zuffa suggested that it attempted to complete a hit report against the "ESI custodial data of our 15 proposed custodians to determine the volume and burden of Plaintiffs' proposed terms" but that certain of Plaintiffs' proposed terms had syntax errors.[19] *Id.* Zuffa further claimed that many of the search terms were problematic e.g., because they were "ambiguous" or "contain[ed] a problem wildcard." *Id.* On April 16, Plaintiffs supplied a revised set of search terms intended to resolve the syntax errors but stated that Plaintiffs would not consider further edits until Zuffa provided a hit report. *See* Ex. 17 (Apr. 16 Letter). After the parties exchanged edits to Plaintiffs' proposal to correct syntax errors, Plaintiffs supplied a revised proposal on May 1, 2025. *See* Ex. 20 (May 1 letter). On May 13, 2025, Zuffa claimed to have identified problematic search terms in Plaintiffs' proposal that "yield millions of hits and render any negotiations of custodians and search terms meaningless." Ex. 23 (May 13 email). But Zuffa did not provide Plaintiffs with the hit report it referenced. Plaintiffs requested the hit reports and information on the corpus of documents against which the terms were run. Ex. 25 (May 16 Letter). Plaintiffs outlined a process—the same process used by the parties in the *Le* litigation—for negotiating search terms—***which required starting with Defendants providing a hit report***, while also proposing to withdraw certain terms Defendants had objected to. *Id.* Six weeks later, on July 1, 2025, Defendants sent Plaintiffs a letter restating the same concerns about Plaintiffs' search term proposal from Defendants' May 13 email. *See* Ex. 29 (July 1 Letter). Again, Defendants did not provide a hit report to support their contentions—the standard document required for negotiation of search terms as the parties did in *Le* and which Zuffa's own search term expert testified was typical[20]—though Defendants presumably had such hit report prior to sending that Letter. Thus, the

---

making a search term proposal. Ex. 14 (Apr. 4 Letter). Plaintiffs concede nothing of the sort. Endeavor's response was just another example of its gamesmanship and bad faith.

[19] However, Zuffa has yet to even identify devices for all 15 custodians.

[20] *See* Declaration of Helen Moure, *Le v. Zuffa, LLC*, 15-cv-1045, ECF No. 220, at 6 (D. Nev. Feb. 19, 2016) ("The process of reaching [appropriate search terms] usually involves at least a few rounds of testing, analysis, refinement, and retesting of proposed terms. The testing is reported through summaries of the 'hits by term' showing how many documents in the corpus contain specific proposed search terms.").

Case No.: 2:21-cv-01189-RFB-BNW

**PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT**

inescapable conclusion is that, even though Defendants had the materials Plaintiffs told them were needed to negotiate further, and even though Zuffa's own search term expert has represented to this Court that such materials are an important part of the process, Defendants have refused. That is not a good faith search term negotiation tactic. Plaintiffs again responded to Defendants' search term Letter on July 3, 2025. Ex. 31 (July 3 Letter). Defendants have not responded.

### D.  Defendants' Productions Are Inadequate Because of Their Misconduct

Unsurprisingly—given Defendants obstruction and dishonesty through: (1) Endeavor's months-long refusal to engage in a meet and confer on a proper scope for discovery, (2) all Defendants' refusals to produce (and Zuffa's dishonesty in addressing) materials needed to evaluate appropriate custodians and sources of ESI, and (3) all Defendants' refusal to meet and confer in good faith on appropriate search terms—when the substantial completion deadline for Zuffa and TKO approached and passed, they failed to meet it. *See* discussion *infra* Pt.III.A. Endeavor, for its part, has not engaged in rolling productions. With a few weeks left, it has only produced 8 documents, has not identified all necessary and appropriate sources of ESI and has not negotiated search terms. That Endeavor cannot meet its substantial completion obligation is a near certainty.

### III.    DEFENDANTS HAVE VIOLATED MULTIPLE COURT ORDERS

Through the above misconduct, all Defendants have violated at least two Court Orders, and Defendants Zuffa and TKO have violated three.

### A.  Defendants Zuffa and TKO Failed to Meet the Court Ordered July 17, 2025 Substantial Completion Deadline (ECF No. 187)

On September 20, 2024, the parties submitted competing scheduling proposals to the Court, with Defendants proposing a substantial completion deadline of May 2, 2025 and Plaintiffs proposing a deadline of April 18, 2025. *See* ECF No. 155. The Court adopted Plaintiffs' proposal. *See* ECF. No. 159. As the deadline approached, Defendants realized they would not be able to complete their productions and reached out to Plaintiffs to stipulate to an extension of the deadline to July 17, 2025, to which Plaintiffs agreed. *See* ECF No. 187. The Court granted that stipulation and set the deadline as July 17, 2025. *See* ECF No. 189. Then, while granting Plaintiffs' motion to compel

Endeavor to produce documents, the Court extended Endeavor's deadline for substantial completion

to August 17, 2025 (but keeping TKO and Zuffa's deadline the same). ECF No. 202.

Zuffa and TKO wasted the extension. Zuffa and TKO produced a total of 206 documents

(other than their reproduction of materials produced in *Le*) between the initial substantial completion

deadline (April 18, 2025) and the day before the operative deadline (July 16, 2025). Then on the

deadline, Zuffa and TKO produced just 87,104 documents.[21] The vast majority of that production

(estimated over 70,000 documents) are merely cover emails for UFC contract proposals to fighters

and the fighters' return emails with the executed contracts attached.

Based on Plaintiffs' preliminary review, Zuffa's and TKO's meager productions reflect

significant, inexcusable deficiencies, including:

(1) Zuffa and TKO failed to produce any of the debt issuance documents (*e.g.*, Confidential
Information Memoranda and diligence materials) that they agreed to produce in an April 24,
2025 Letter (Ex. 19)—and which are likely to contain relevant materials similar to those
Deutsche Bank materials highlighted by plaintiffs and plaintiffs' experts in the *Le* litigation;

(2) Zuffa and TKO produced a paltry number of text messages (fewer than 50 overall);

(3) Zuffa and TKO did not produce the explicitly requested (and presumably easy to locate and
produce) FightMetric data that the *Le* plaintiffs' experts used in their regression analyses and
which Plaintiffs understand the UFC now controls;[22]

(4) TKO produced fewer than 6,500 documents, failed to produce any documents from six of the
13 custodians they proposed, and produced a total of 20 documents across four other
custodians;

(5) Zuffa, outside of one custodian responsible for sending and receiving fighter contracts,
produced unreasonably small volumes of documents from its custodians, including, for
example, just 58 documents from UFC president Dana White (having produced more than
10,000 documents in *Le* from his custodial files), 298 documents from UFC matchmaker
Sean Shelby (having produced more than 23,000 in *Le*), and 1,780 documents from UFC

---

[21] By contrast Plaintiffs, who unlike Defendants are not multi-billion dollar businesses, produced
8,004 documents on April 18, 2025, another 3,756 on May 30, 2025, and then a final, substantial
completion production of 41,529 on the July 17 deadline—for a total of 53,289 documents.
Plaintiffs' counsel reviewed the hundreds of thousands of documents in Plaintiffs' document
collections linearly, without culling via search terms.

[22] Plaintiffs understand that Zuffa purchased FightMetric at some point after the *Le* plaintiffs' experts
collected its data, and that Zuffa now employs the individual who previously maintained the data,
Rami Genauer. *See* Ex. 44 at 2 (Org. chart).

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT
ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION
OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

matchmaker Mick Maynard (having produced more than 22,000 in *Le* from Maynard's predecessor, Joe Silva).

As detailed in Plaintiffs' July 18 and 22 Letters (Exs. 33, 35)—to which Zuffa has not responded—it strains credulity that Zuffa and TKO can claim to have complied with the Court-Ordered deadline given such omissions, but it is also consistent with Zuffa's and TKO's obstruction and delays in the meet and confer process.[23] Without having performed an adequate search for and of custodial and non-custodial ESI sources and without proper search terms—both of which afflict Zuffa's and TKO's production to date—Defendants are not and cannot be substantially complete.

## B. Defendants Violated the Court's June 3, 2025 Device Disclosure Order (ECF No. 202)

Defendants did not comply with the Court's Order to provide Plaintiffs with information about custodial devices and communications platforms used by Defendants' employees and executives. At the June 3, 2025 hearing, Plaintiffs explained to the Court that Plaintiffs had been attempting to obtain information about the devices and communications platforms used by Defendants' employees and executives. The Court then ordered Defendants to provide Plaintiffs with the information Plaintiffs sought, affording Defendants 30 days to provide the information even though it should be a "simple thing" to provide.

Defendants did not comply with the Court's Order. On July 3, 2025, the Court-imposed deadline, Defendants sent Plaintiffs a letter that was vastly incomplete and contradicted their prior representations, containing only *some* of the Court-ordered information for *some* of Defendants' proposed custodians. *See* Ex. 30 (July 3, 2025 Letter). When Plaintiffs reviewed Defendants' July 3 Letter after the July 4 holiday weekend, Plaintiffs discovered that (1) Defendants omitted 45% of their proposed custodians; (2) Defendants provided information that conflicts with the information they provided in April; and (3) the information Defendants provided is incomplete as it omits communications platforms certain custodians publicly use. Plaintiffs detailed their findings in a July

---

[23] For their part, Zuffa and TKO "reject[ed] and den[ied] [Plaintiffs'] … erroneous assertions that Defendants have failed to meet the substantial completion deadline…," but claimed they "are and will continue, making rolling productions in the coming weeks," which is an admission that they have not met the Court-ordered substantial completion deadline. Ex. 36 (July 23 email).

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

9 Letter. *See* Ex. 32 (July 9, 2025 Letter). Overall, Defendants failed to complete the "simple" task the Court ordered them to do. ECF No. 202.

### C.   All Defendants Violated the Protective Order (ECF No. 123)

Defendants have violated the Protective Order by habitually designating materials produced in this litigation as "Highly Confidential Attorneys' Eyes Only," even though the Protective Order explicitly limits the parties to using that designation exclusively for materials of "a medical or highly personal nature pertaining to athletes who are not name[d] as Plaintiffs in this action." ECF No. 123. Defendants have applied mass, blanket "Highly Confidential" designations to their production of fighter contracts, their re-production of Zuffa's productions in the *Le* Action,[24] and Endeavor's corporate organizational charts. None of these materials meet the standard under the Protective Order. But more than that, the Protective Order explicitly forbids "Mass, indiscriminate, or routinized designations," ECF No. 123 at 5, of precisely the sort that Defendants have done here. When Defendants made further productions on July 16 and July 17, those productions included an additional 3,800 documents designated as "Highly Confidential." These purportedly "Highly Confidential" documents are not medical or "highly personal" information of non-plaintiff UFC fighters, but rather include, without limitation: (1) UFC financials, (2) internal text exchanges critical of alleged competitor promotions, (3) text messages with other promoters about signing fighters to keep them away from alleged competitor promotions, and (4) draft organizational charts for TKO. *See* Exs. 37-43 (sample designated documents). Plaintiffs flagged these improper designations on July 3, July 9, July 18, and July 22, and requested that Defendants confirm that Plaintiffs should consider the materials as having the "Confidential" designation instead and then take steps to remedy the improper designations.[25] Exs. 31, 32, 33, 35. Defendants have not responded.

---

[24] Zuffa unilaterally decided it would reproduce these materials with new Bates numbers, but it still took Zuffa nearly four months to do so. And the only apparent reason for doing so was to violate the Protective Order by applying a blanket, improper "Highly Confidential Attorneys' Eyes Only" designation to the materials previously designated only as "Confidential." *See* discussion, *infra*.
[25] Section 5.1 further requires a "Designating Party" to "promptly notify all other Parties that it is withdrawing" a mistaken designation if it comes to such party's attention that the materials do not qualify for the protection asserted. Defendants have not complied with that obligation.

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT
ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION
OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

## IV.    LEGAL STANDARD

First, this Court has the authority to impose sanctions when a party engages in discovery misconduct. Fed. R. Civ. P. 37; Local Rule IA 11-8.[26] They include dispositive sanctions under Rule 37(b)(2)(A)(vi) and the Court's inherent powers. *See, e.g.*, *CrossFit, Inc. v. Nat'l Strength & Conditioning Assoc.*, 2019 WL 6527951, at \*12-13 (S.D. Cal. Dec. 4, 2019); *Lewis v. Caesars Entm't Corp.*, 2019 WL 1571281, at \*4 (D. Nev. April 11, 2019); *Fernandez v. Cox*, 2016 WL 8710431, at \*2 (D. Nev. Sept. 2, 2016); *U.S. v. $40,200.00 in U.S. Currency*, 2015 WL 4276205, at \*5-6 (D. Nev. July 14, 2015); *Ellis v. Benedetti*, 2014 WL 6883873, at \*2 (D. Nev. Dec. 8, 2014).

Second, absent dispositive sanctions, lesser sanctions may be appropriate, including giving the jury an adverse inference instruction, such as that the disobedient party failed to comply with discovery obligations and that the jury can consider those discovery violations along with other evidence in reaching its verdict. *E.g.*, *Sec. & Exchange Comm'n v. Hemp, Inc.*, 2019 WL 1957954, at \*30 (D. Nev. May 2, 2019).

Third, regardless of any sanctions, Fed. R. Civ. P. 37 authorizes motions to compel discovery when a party has failed to respond to discovery or cooperate in the discovery process, as here. A motion is proper where, as here, "a timely discovery request has been served, the opposing party has not responded or has inadequately responded, and the moving party has attempted in good faith to resolve any dispute about the adequacy of the discovery responses without the court's intervention." *King v. Calderwood*, 2015 WL 7566679, at \*2 (D. Nev. Nov. 24, 2015) (citing Rule 37(a)). Rule 37(a)(3)(B)(iii) & (iv) provides relief where a party "fails to produce documents . . . as requested under Rule 34." For purposes of that subdivision, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Finally, it is well within the Court's powers to appoint a Special Master under Fed. R. Civ. P. 53 to perform discovery related tasks on behalf of a defendant, including the identification of

---

[26] The Court may also impose sanctions pursuant to its "inherent powers … necessarily vested in courts … to achieve the orderly and expeditious disposition of cases.'" *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). Thus, even where Rule 37 sanctions are unavailable, the Court may sanction parties for discovery misconduct. *Id.*

Case No.: 2:21-cv-01189-RFB-BNW
PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

documents and custodians, and the collection, review and production of discovery. *See, e.g., Small v. Univ. Med. Ctr. of S. Nev.*, 2018 WL 3795238, at *14-18 (D. Nev. Aug. 9, 2018) (Leen, M.J.) (summarizing steps leading to appointing special master pursuant to Rule 53 to investigate custodians and ESI sources, adequacy of the party's preservation efforts, extent of potential spoliation, counsel's conduct, and generate report for the court). Where, as here, the task would be so time-consuming to render the task inappropriate to delegate to the Court or a magistrate, Rule 53(a)(1)(C) explicitly authorizes such appointment.

## V.    ARGUMENT

Plaintiffs seek sanctions as set forth herein and an Order compelling Defendants and the Individual Subpoena Recipients to produce all responsive discovery under the auspices of a Court-appointed Special Master. As set forth herein, Defendants' pattern of past misconduct will render ineffective any future Order to engage in discovery or compel production of their own volition. Thus, Plaintiffs propose, irrespective of any other sanctions, that the Court appoint a "Special Master" to investigate the scope of Defendants' withholding of information from Plaintiffs and the Court and to take over the process of identifying and producing responsive ESI to Plaintiffs. Doing so is likely the most efficient and effective way to ensure that all defendants and third parties fully participate in and (subject to the cooperation of the Defendants and individuals) finally produce the documents and information necessary to afford Plaintiffs a fair opportunity to present their case on the merits.

### A.  Defendants' Obstructive Conduct Has Impeded Meaningful Progress in Discovery

As set forth above, Defendants have repeatedly shirked their discovery obligations. Without legal bases, Defendants have, *inter alia*, (1) violated three of the Court's Orders by not providing "basic" information in defiance of the Device Disclosure Order, failing to substantially complete document productions in violation of the Court-ordered schedule, and knowingly making improper "Highly Confidential" designations in violation of the Protective Order; (2) refused to respond to discovery, unilaterally limiting the scope of the Rule 34 requests, (3) impeded negotiations on custodians and search terms by refusing to produce critical materials and outright lying about having done so (then claiming Plaintiffs were the cause of discovery delays based on such lies), (4) imposed

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

weeks- or months-long delays in responding to Plaintiffs' efforts to meet and confer on particular issues, and (5) ignored Plaintiffs' requests to meet and confer then lied about having done so.

Defendants' violations of this Court's Orders are deliberate, persistent, highly prejudicial and not reasonably likely to be cured absent appointment of a Special Master. Defendants have each violated two or three Court orders. First, Zuffa and TKO disregarded the Court-Ordered substantial completion deadline without substantially completing their document productions; Endeavor is poised to do the same.[27] Second, Defendants and the Individual Subpoena Recipients violated the Device Disclosure Order directing them to supply information about custodial sources of ESI.[28] Third, all Defendants have violated the Protective Order by knowingly designating material as "Highly Confidential" (often on a prohibited, mass indiscriminate basis) that cannot qualify for such designation (and ignoring Plaintiffs' efforts to have Defendants redesignate such materials).

## B. Defendants' and the Individual Subpoena Recipients Should Be Sanctioned

The Court should impose dispositive sanctions on Defendants based on their coordinated pattern of violating this Court's Orders, dishonesty in the discovery process, and shirking of their discovery obligations. Defendants Zuffa and TKO have willfully ignored the Court-ordered substantial completion deadline, and Endeavor is not far behind given that it has, to date, also not participated in basic discovery meet and confers over search methods despite its rapidly approaching substantial completion deadline too. All Defendants violated the Court's direct, clear Order to provide information on devices and communications platforms used by Defendants' employees, executives, and board members. And all Defendants violated the Protective Order with blanket, improper "Highly Confidential" designations that they have refused to correct when notified.

---

[27] Endeavor's months-long unjustified refusal to engage in discovery, in plain violation its obligations under the Federal Rules, is well-covered in Plaintiffs' prior two motions to compel as to Endeavor. *See* ECF Nos. 173, 183. Plaintiffs incorporate the bases for those motions herein.
[28] Defendants and their counsel also coordinated among themselves and with the Individual Subpoena Recipients to refuse to comply with Plaintiffs' subpoenas, first objecting to producing anything in coordination with Endeavor's refusal to participate in discovery (none of the Individual Subpoena Recipients have produced anything in response to the subpoenas to date), and then failing to comply with the Device Disclosure Order.

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

The Court has the power to impose dispositive sanctions pursuant to Rule 37(b)(2)(A)(vi) and the Court's inherent authority. Ninth Circuit courts use a five-factor test to determine whether dispositive sanctions are appropriate: (1) the public's interest in expeditious resolution; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Conn. Gen. Life Ins. Co v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). The disobedient party's conduct must be due to willfulness, fault, or bad faith to impose a case-dispositive sanction. *Id.* Applying these factors to Defendants' conduct, including their violations of the Court's Orders and obstruction, weighs in favor of dispositive sanctions.[29]

### 1. Dispositive sanctions are appropriate

***Public interest in expeditious resolution and the Court's need to manage its docket.*** The first two factors, the public's interest in expeditious resolution of litigation and the Court's need to manage its dockets, weigh in favor of imposing dispositive sanctions. *See Fernandez*, 2016 WL 8710431, at *3 (citing *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)). This is particularly so here because Defendants repeatedly violated this Court's Orders, delayed the proceedings, and prevented this litigation from a fair and timely resolution on the merits. *See, e.g.*, *Lewis*, 2019 WL 1571281, at *5 (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)). "Orderly and expeditious resolution of disputes is of great importance to the rule of law. By the same token, delay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006). This Court must be allowed "to manage its docket without being subject to routine noncompliance of litigants." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

Plaintiffs are now before the Court for the third time in six months due to Defendants' failure to engage in discovery in good faith and direct violations of this Court's Orders, with little progress

---

[29] Following a sanction of default but before entering judgment, Plaintiffs propose a submission from Plaintiffs' expert on appropriate damages and a proceeding on injunctive relief.

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

despite those Orders. *See, e.g. Fernandez v. Cox*, 2016 WL 8710431, at *3 (D. Nev. Sept. 2, 2016) (imposing sanction of default against non-participating defendant). Conduct that was initially isolated to Endeavor has spread through defendants' Counsel to all Defendants and the Individual Subpoena Recipients (all represented by Defendants' counsel), and now to a third-party agent who has been emboldened by Defendants' misconduct. *See* Motion to Compel Third Party Dominance MMA, ECF No. 216; *Cf. Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (dispositive sanctions must be available to courts in appropriate cases to penalize misconduct and deter those who might be tempted to engage in such conduct absent a deterrence). Because Defendants' conduct has unduly obstructed the Court's exercise of its proper ability to function and has already significantly delayed Plaintiffs' prosecution of the case, it would be a waste of judicial resources to give Defendants yet another chance.

  ***Risk of prejudice to Plaintiffs.*** The factor of risk of prejudice greatly weighs in favor of dispositive sanctions, especially where Defendants have deliberately defied the Court and defaulted on their discovery obligations. "Actions that impair an opposing party's ability to go to trial or interfere with the rightful decision of the case are prejudicial." *Lewis*, 2019 WL 1571281, at *6 (citing *Adriana*, 913 F.2d at 1412).[30] "The law also presumes prejudice from unreasonable delay." *PPA Prods.*, 460 F.3d at 1228. "The most critical factor to be considered in case-dispositive sanctions is whether 'a party's discovery violations make it impossible for court to be confident that the parties will ever have access to the true facts." *Ellis*, 2014 WL 6883873, at *11 (quoting *Conn. Gen.*, 482 F.3d at 1097); *see also Valley Eng'rs, Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998) ("True facts must be the foundation of any just result.").

  All Defendants violated multiple Court Orders and the Individual Subpoena Recipients violated the Device Disclosure Order. Defendants deprived Plaintiffs of critical information for

---

[30] *See also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) ("A [party] suffers prejudice if the [opponent's] actions impair the [party's] ability to go to trial or threaten to interfere with the rightful decision of the case."); *Wardell v. County of Los Angeles*, 2008 WL 2220937 at *3 (C.D. Cal. May 21, 2008) (where blatant disregard of discovery obligations hinders a party's ability to prepare for trial, "the prejudice . . . is clear.").

negotiations on the scope of productions and failed to produce significant volumes of documents in a timely manner. That misconduct coupled with Defendants' counsel's record of dishonesty and disregard for their most fundamental obligations under the Federal Rules and this Court's Orders, there can be no confidence that Plaintiffs will ever have access to the true facts of this case. Indeed, on July 3, 2025, Defendants plainly defied a direct Order of this Court to supply "basic information" designed to remedy some of their prior misconduct (which months of meet and confers and individual subpoenas failed to rectify), lesser sanctions are likely to have no greater remedial effect.

*Public policy favoring disposition of cases on their merits.* The public policy favoring resolution of cases on their merits typically weighs against the entry of dispositive sanctions, but where, as here, the disobedient party was evasive in discovery responses such that discovery disputes could not be resolved, public policy weighs in favor of them. *See, e.g., $40,200.00 in U.S. Currency*, 2015 WL 4276205, at *8. Defendants have all been evasive and/or dishonest in their discovery correspondence, refusing to even supply complete and clear information when ordered by the Court. Such misconduct weighs in favor of dispositive sanctions because it prevents disputes from being resolved on their merits and interferes with the truth-seeking process of litigation. *Conn. Gen.*, 482 F.3d at 1097. Even if it weighed against sanctions, this factor alone is "not sufficient to outweigh the other four factors." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006).

*Availability of less drastic sanctions.* While courts consider imposing lesser sanctions before awarding default, they generally find that where a disobedient party has been warned that about the possibility of case-dispositive sanctions and does not change its tack, this factor weighs in favor of imposing terminating sanctions. *See, e.g., Lewis*, 2019 WL 1571281 at *6-7; *Fernandez*, 2016 WL 8710431 at *4; *Panliant Fin. Corp. v. Isee3d, Inc.*, 2015 WL 5176586 at *4 (D. Nev. Sep. 4, 2015); *Ellis*, 2014 WL 6883873 at *11. Here, the Court has already explicitly warned Endeavor that dispositive sanctions would be ordered if Endeavor did not participate in discovery, ECF No. 176; yet Endeavor continued to refuse to participate as to the vast majority of duly served Rule 34 requests. Defendants TKO and Zuffa were complicit in Endeavor's violations by not producing materials and participating in meet and confers during Endeavor's discovery stand-off, as

coordinated by Defendants' common counsel and were aware of the dispositive sanctions warning levied on Endeavor. TKO and Zuffa picked up Endeavor's torch and directly engaged in misconduct by refusing to participate in basic negotiations over search terms, delaying significantly responses to Plaintiffs' meet and confer efforts, and blowing past the Court-ordered substantial completion deadline with a meager production. Where a party engages in "a long pattern of misconduct" amidst "repeated warnings that failing to comply with the Court's orders could result in the imposition of severe sanctions, up to and including case-dispositive sanctions," courts have found that anything less than default would be "insufficient." *Lewis*, 2019 WL 1571281 at *6-7. This case fits squarely with those cases where courts have concluded that the pattern of misconduct warrants the steepest sanction. *See, e.g.*, *Panliant*, 2015 WL 5176586 (rejecting less severe sanction than default where defendant failed to participate in good faith and ignored court's prior warning of sanctions).

> ***The balance of the factors weighs in favor of default.*** Because at least four of the five factors weigh in favor of default, terminating sanctions are appropriate. *See Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (approving dismissal where at least four factors support dismissal or at least three factors strongly support dismissal).

### 2. Absent dispositive sanctions, lesser sanctions are appropriate.

If the Court declines to impose case-dispositive sanctions, lesser sanctions are appropriate. Such sanctions potentially include providing an adverse instruction to the jury deeming Defendants to have participated in the challenged conduct at the heart of Plaintiffs' case on the merits, and/or that Defendants have been dishonest and not forthcoming in the discovery process, while also instructing the jury to consider that when rendering a verdict.

Courts that deny requests for dispositive sanctions frequently find lesser sanctions appropriate. *See, e.g., Hemp Inc.*, 2019 WL 1957954, at *30 (precluding defendants from offering evidence related to documents produced after related depositions, and instructing the jury that the defendants failed to comply with their discovery obligations and deceived counsel and that the jury could consider the discovery violations and deception in reaching a verdict); *Evans v. Skolnik*, 2011 WL 383945, at *11 (D. Nev. Feb. 3, 2011) (prohibiting plaintiff from introducing the subject matter

Case No.: 2:21-cv-01189-RFB-BNW

**PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT**

of interrogatories to support his claims or oppose defendants' claims, and deeming established the facts the defendant's interrogatories sought to establish).

Here, Defendants must be sanctioned so that their violations of the Court's Orders and discovery abuses are not rewarded. Indeed, it is well established that "contumaciousness toward the court needs a remedy." *Valley Eng'rs*, 158 F.3d at 1057. But in no uncertain terms, lesser sanctions would not fully "remedy" the prejudice to Plaintiffs to the prosecution of the case either against Defendants as a whole.

Sanctions may take the form of an adverse inference instruction, which "can take many forms, ranging in degrees of harshness," and should be "dictated by the nature of the the at fault party's conduct." *Teller v. Dogge*, 2013 WL 5655984, at *3 (D. Nev. Oct. 16, 2013). Among other things, "the jury can be instructed that certain facts are deemed admitted and must be accepted as true" or the court may "impose a mandatory presumption." *Id.* Defendants obstruction demands appropriate adverse inferences. Plaintiffs propose that the jury be instructed that Defendants lied, refused to participate in discovery, and evaded their discovery obligations when evaluating Plaintiffs' proof.[31]

### C. The Court Should Appoint a Special Master to Perform Defendants' Discovery Functions and Carry Out Any Order Compelling Production

Irrespective of any sanction deemed appropriate by the Court, Defendants must participate in further discovery. But, because Defendants and their counsel have demonstrated their scorn for this Court and their predilection not to obey Court Orders, resolving Plaintiffs' motion by simply ordering production would be insufficient. As a result, Plaintiffs propose that the Court engage a

---

[31] In addition, sanctions are appropriate to remedy Defendants' abuse of the Protective Order, Defendants have already refused to redesignate the materials despite Plaintiffs' repeated requests that they do so. But an Order requiring them to do so within 60 days is appropriate as well as a monetary sanction for Plaintiffs bringing this motion. *See, e.g., Youngevity Int'l Corp. v. Smith*, 2017 WL 6541106, at *12 (S.D. Cal. Dec. 21, 2017) (ordering redesignation and awarding attorneys' fees); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2007 WL 3306496, at *2-5 (N.D. Cal. Nov. 6, 2007) (same); *Humphreys v. Regents of Univ. of California*, 2006 WL 3020902, at *3-4 (N.D. Cal. Oct. 23, 2006) (same). Plaintiffs intend to move separately under 28 U.S.C. § 1927 for attorneys' fees occasioned by Defendants', Defendants' counsel, and the Individual Subpoena Recipients' unnecessary multiplication of the proceedings here.

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

Special Master pursuant to Rule 53(a)(1)(C)—to be funded by Defendants but controlled by the Court.[32] Plaintiffs attach herewith a proposed Order for such appointment.

Given the scope of the necessary function, this is not an appropriate task for the Court or a magistrate judge; it will require hundreds of hours (or more) to conduct interviews of Defendants' current and former employees, executives and board members, identify sources of ESI, investigate potential spoliation, and review a likely large corpus of documents for responsiveness and privilege prior to production. The Special Master may then provide a report to the Court and/or parties summarizing the Special Master's findings. In short, the Special Master must do what Defendants and Individual Subpoena Recipients have failed and refused to do.

Many courts have utilized this approach to address similar conduct, *i.e.*, where a party has "failed to comply with court orders, displayed intransigence in the litigation, or required close supervision." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560 (N.D. Cal. 1987).[33]

---

[32] Alternatively, the Court could hold an evidentiary hearing in which all Individual Subpoena Recipients, all custodians by the parties and corporate representatives who are familiar with each Defendants' email, communication, and document storage and retention systems are brought in to testify, and then issue an Order requiring all materials collected from the custodians be produced to Plaintiffs subject to a liberal clawback provision for privileged communications. However, the Court could empower a Special Master to investigate the matters that Defendants, the Individual Subpoena Recipients and their counsel have been actively concealing to date and to conduct interviews under oath and report to the Court and Plaintiffs.

[33] *See, e.g., Murphy v. Gospel for Asia, Inc.*, 2018 WL 2676681, at *1, 9 (W.D. Ark. June 4, 2018) (appointing special master after finding that the defendant had "stymied" the plaintiff's discovery efforts through "renewed versions of previously denied objections, several unsuccessful rounds of discovery and . . . failure to obey clearly worded directives issued by this Court and to respond in good faith to Plaintiffs' discovery requests"; granting the special master "full access" to the defendants' "books, records, (pertinent and non-privileged) communications"; and ordering the special master to, among other things, "employ a forensic accountant" to investigate the facts underlying the requested discovery); *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 2018 WL 1542040, at *4-5 (M.D. Tenn. Mar. 29, 2018) (court appointed special master to "investigate and advise the Court concerning the nature, extent and sufficiency of the identification, preservation, collection, search, processing and production . . . of potentially responsive and relevant information, particularly [ESI]"; appointment was necessary due to defendant's failure to search for responsive documents and because of the technical nature of electronic discovery issues and time constraints involved, and thus the special master was empowered to investigate "information systems, review of databases and e-mail stores; forensic acquisition and examination of electronic

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT
ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION
OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

For example, Judge Leen appointed a special master "after a series of hearings over many months made it painfully apparent that [the defendant], its counsel, and consultants were failing in their efforts to produce electronically stored information ('ESI') responsive to plaintiffs' discovery requests." *Small*, 2018 WL 3795238, at *2. The court tasked the special master with, *inter alia*, investigating "the scope of the collection and the processes used [by the defendant] to perform the collection," including a "detailed chain-of-custody for all evidence items collected to date by Defendants" as well as a full accounting of the defendant's electronic devices that contained responsive material, and issuing a report containing findings of fact "concerning whether [the defendant] withheld, deleted, destroyed or permitted to be destroyed, information, documents and [ESI] that it was legally obligated to maintain in connection with this lawsuit," and "the adequacy of [the defendant's] efforts to preserve and retain information, documents and ESI related to the claims at issue in this lawsuit." Order at *2, *Small*, No. 2:13-CV-0298, ECF No. 152 (D. Nev. Mar. 14, 2014).[34]

A Special Master is necessary for the Court and Plaintiffs to have any confidence that Plaintiffs will obtain access to the true facts of this case and avoid spoliation. Regardless of how the Court rules on sanctions, the Special Master's report would provide critical information to guide the Court in crafting appropriate sanctions. Finally, even if dispositive sanctions are awarded,

---

storage media; data recovery; consultation with . . . current and former employees, counsel and contractors; and travel to . . . data centers and places of business"); *PIC Grp., Inc. v. LandCoast Insulation, Inc.*, 2011 WL 1342951, at *1-2 (S.D. Miss. Mar. 4, 2011) (court appointed special master to "investigate and advise the Court concerning the nature, extent and sufficiency of the identification, preservation, collection, search, processing and production by [the defendant] of potentially responsive and relevant information—particularly electronically stored information (ESI)").

[34] *See also E.E.O.C. v. Fry's Elecs., Inc.*, 287 F.R.D. 655, 657, 660 (W.D. Wash. 2012) (awarding sanctions and appointing special master to "review defendant's document retention, search, and disclosure activities throughout the course of this litigation" and granting the special master "access to any and all employees, agents, managers, and officers, as well as former employees, agents, managers, and officers to the greatest extent possible"); *Turnage*, 115 F.R.D. at 560-62 (appointing special master to monitor discovery abuses after finding defendant, inter alia, gave "incorrect or false responses to discovery requests," failed "to divulge information and produce documents," and engaged in "willful or grossly neglectful efforts that resulted in the destruction of documents").

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT

proceedings to establish the appropriate quantum of damages and injunctive relief will still be necessary and the Special Master's directive can be appropriately tailored to that task.

## VI.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court (1) Order dispositive sanctions, or in the alternative the lesser sanctions outlined herein, and (2) appoint a Special Master to investigate the misconduct of Defendants, the Individual Subpoena Recipients and their respective counsel, and who is empowered to perform all necessary functions to identify, collect, review and produce all documents and information responsive to Plaintiffs' Document Requests to the Defendants, consistent with the parties' agreement on scope as memorialized by the parties in Plaintiffs' January 13, February 17, March 14, April 22, May 5, and May 15 Letters (Exs. 3, 5, 21, 46, 48, 50) and Defendants' March 18, April 7, April 24, May 14, and May 19 Letters (Exs. 8, 15, 19, 24, and 26), and Plaintiffs' subpoenas to the Individual Subpoena Recipients, using Plaintiffs' proposed search terms of May 1, 2025 (Ex. 20), across all devices and communications platforms the Special Master identifies as used by the custodians and Individual Subpoena Recipients, and those custodians requested in Plaintiffs' July 19, 2025 Letter, Ex. 34.

Dated: July 29, 2025

Respectfully submitted,

**BERGER & MONTAGUE, P.C.**

/s/ *Michael Dell'Angelo*
Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

Joshua P. Davis (admitted *pro hac vice*)
Robert C. Maysey (admitted *pro hac vice*)
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (415) 906-0684
Facsimile: (215) 875-4604
jdavis@bm.net
rmaysey@bm.net

*Counsel for Individual and Representative*
*Plaintiffs Kajan Johnson, Clarence Dollaway, and*
*Tristan Connelly and the Proposed Class*

Joseph R. Saveri (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
Chris Young (admitted *pro hac vice*)
**JOSEPH SAVERI LAW FIRM**
601 California Street, Suite 15051505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
krayhill@saverilawfirm.com
cyoung@saverilawfirm.com

26
Case No.: 2:21-cv-01189-RFB-BNW

Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS**
 **& TOLL, PLLC**
1100 New York Ave., N.W., Suite 500, East
Tower Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

W. Joseph Bruckner (admitted *pro hac vice*)
Brian D. Clark (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4001
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle Pozan (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Telephone: (612) 339-6900
kjpozan@rlocklaw.com

*Additional Counsel for Individual and*
*Representative Plaintiffs Kajan Johnson, Clarence*
*Dollaway, and Tristan Connelly and the Proposed*
*Class*

Michael J. Gayan
**CLAGGET & SYKES**
4101 Meadows Lane, Ste. 100
Las Vegas, NV 89107
Telephone: (702) 333-7777
Fax: (702) 655-3763

*Liaison Counsel for  Individual and Representative*
*Plaintiffs Kajan Johnson, Clarence Dollaway, and*
*Tristan Connelly and the Proposed Class*

PLAINTIFFS' MOTION FOR SANCTIONS AS TO DEFENDANTS FOR VIOLATING COURT
ORDERS AND FOR THE APPOINTMENT OF A SPECIAL MASTER AND THE PRODUCTION
OF DOCUMENTS AND INFORMATION ORDERED BY THE COURT