1  PETER S. CHRISTIANSEN, ESQ.
   Nevada Bar No. 5254
2  pete@christiansenlaw.com
   KEELY P. CHIPPOLETTI, ESQ.
3  Nevada Bar No. 13931
   keely@christiansenlaw.com
4  CHRISTIANSEN TRIAL LAWYERS
   710 S. 7th Street, Suite B
5  Las Vegas, Nevada 89101
   Telephone:    (702) 240-7979
6  Facsimile:    (866) 412-6992

7  *Attorneys for Nonparty*
   *Dominance MMA, LLC*

8

9                  **DISTRICT COURT**

10              **CLARK COUNTY, NEVADA**

11  KAJAN JOHNSON, CLARENCE            CASE NO.: 2:21−cv−01189−RFB−BNW
    DOLLAWAY, and TRISTAN CONNELLY,
12  on behalf of themselves and all others similarly
    situated;
13

14                    Plaintiff,
                                            **NONPARTY DOMINANCE**
15  vs.                                     **MMA, LLC'S OPPOSITION TO**
                                            **PLAINTIFFS' MOTION TO COMPEL**
16  ZUFFA, LLC, TKO OPERATING               **[ECF No. 216]**
    COMPANY, LLC f/k/a Zuffa Parent, LLC
17  (d/b/a Ultimate Fighting Championship and
    UFC), and ENDEAVOR HOLDINGS, INC.,
18

19                    Defendants.

20          Nonparty Dominance MMA, LLC, by and through its undersigned counsel, hereby

21  opposes Plaintiffs' Motion to Compel Production of Documents by Third Party Dominance,

22  MMA, LLC Responsive to Plaintiffs' Subpoena Pursuant to Federal Rule of Civil Procedure 45

23  (ECF No. 216).

24          This Opposition is based upon the pleadings and papers on file in this action, the Points

25  and Authorities set forth herein, and any argument the Court may permit.

26

27

28

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.**

3    <u>**INTRODUCTION AND RELEVANT BACKGROUND[1]**</u>

4        This is an antitrust case in which Plaintiffs allege that the UFC (Zuffa, LLC, TKO

5    Operating Company, LLC, and Endeavor Group Holdings, Inc.) used its dominant market

6    position and fighter contracts to stifle competition, limit fighter opportunities, and depress

7    compensation from July 1, 2017, onward. Dominance MMA, LLC ("Dominance") is a small

8    athlete management organization and is not a party to this litigation. Exhibit 1, Decl. of Ali

9    Abdelaziz. Plaintiffs in this action served Nonparty Dominance with a subpoena *duces tecum*

10   commanding Dominance to produce documents in response to 12 sweeping and untethered

11   requests ("the subpoena"). ECF 216-3. The subpoena is a clear attempt to misuse the federal

12   discovery process to pursue a harassing, burdensome, and illegal fishing expedition at the expense

13   of a third party, with only one employee and limited resources.

14       By way of the instant Motion, Plaintiffs attempt to force Nonparty Dominance into

15   producing vast swaths of documents that are irrelevant, overbroad in scope, readily obtainable

16   from parties to this action, and in many instances, not within Dominance's legal custody or

17   control. This is not a good-faith use of Rule 45's narrow discovery powers; it is an abuse of them.

18       From the outset, Dominance complied with its obligations by serving written objections

19   at the time specified for compliance, thereby suspending any duty to produce documents pending

20   resolution of those objections. Rather than engage in meaningful meet-and-confer discussions or

21   first exhaust discovery from the actual parties, Plaintiffs have chosen to burden a non-party with

22   an expansive subpoena that exceeds the proper bounds of Rule 45 in every respect.

23       The subpoena is facially overbroad, seeking irrelevant material well outside the applicable

24   statute of limitations and proposed class period. It demands documents that have no bearing on

25   the underlying claims, as well as information that Plaintiffs can more appropriately and efficiently

26   _____

27   [1] When citing to ECF documents, page references are to the page numbers assigned by the Court's
     ECF header, not to the internal pagination of the filed documents.

28

1    obtain from the UFC or other sources. Compounding the overbreadth, the subpoena targets highly

2    sensitive and confidential materials, including third-party agreements and client financial records,

3    over which Dominance lacks custody, control, or any legal right to produce. Rule 45 protects

4    nonparties from exactly this sort of fishing expedition. Plaintiffs should not be permitted to

5    circumvent party discovery obligations, saddle a non-party with undue burden, or compel it to

6    violate third-party confidentiality rights. For these reasons, the Motion to Compel must be denied

7    in its entirety.

8                                                    **II.**

9                                    **RELEVANT BACKGROUND**

10           The subpoena demands 12 broad categories of documents, including records dating back

11   to 2015 and earlier, without reasonable limitations. More specifically, the subpoena demands,

12   among other things, every single document and communication[2] from January 1, 2015, relating

13   to: (1) Dominance's corporate documents; (2) documents showing Dominance's beneficial

14   ownership; (3) documents showing Dominance's preservation policies; (4) all communications

15   with the UFC, including without limitation, communications regarding any agreements between

16   Dominance and UFC; (5) all documents and communications constituting or relating to

17   agreements between Dominance and its clients, or Dominance or its clients and any MMA

18   promoter beyond the UFC; (6) all documents relating to the administration, monitoring, auditing,

19   or enforcement or threat of enforcement of any UFC fighter's agreements with Zuffa; (7) all

20   documents comparing UFC's agreements, marketing strategies, or broadcast/PPV distribution to

21   those of other MMA promoters; (8) all documents and communications about any actual or

22   possible deals or opportunities between Dominance or its clients and any sponsor; (9) all

23   documents about the UFC stopping or discouraging MMA fighters from working with certain

24   sponsors, preventing certain sponsors from working with fighters, or stopping fighters from

25

26   ―――――――――――――――――
     [2] The subpoena is wildly overbroad, defining "communications" and "documents" so expansively
27   that it sweeps in virtually every conceivable form of information exchange or record, spanning
     oral, written, electronic, social media (public and private), and data from nearly any storage
28   medium, regardless of relevance or burden. ECF 216-3 at pp. 6-8.

signing with Dominance; (10) documents showing all payments made to any of Dominance's clients by any MMA promoter, including base salary, bonuses, signing payments, royalties, PPV shares, merchandise payments, appearance fees, and any other earnings; (11) documents showing all income Dominance's clients or any MMA fighter received from sources other than an MMA promoter since they became a professional fighter, including the amount received, the source of the income, what was provided in exchange for the payment, the date of payment, and how often recurring payments were made; and (12) all messages Dominance has sent or received about this case, including those related to Dominance's client's claims or any other claims made by the Plaintiffs.  ECF 216-3 at pp. 17-20.

On February 10, 2025, Dominance served written objections to the subpoena pursuant to Rule 45, which suspended its obligation to produce documents and shifted the burden to Plaintiffs to move to compel. ECF 216-4. Dominance objected to the subpoena on multiple grounds, including that the subpoena is overly broad, unduly burdensome, and seeks documents outside of its possession, custody, or control. *Id*. Dominance further objected to requests seeking confidential, privileged, or proprietary business and financial information, including materials protected by confidentiality agreements and attorney-client privilege. *Id*. The objections emphasized that many of the documents sought are more appropriately obtained from the UFC and that compliance would impose an unjustifiable burden on Dominance, a nonparty with limited resources. *Id*. Additionally, Dominance noted that its access to certain client-related materials does not equate to legal authority to produce them, and that the sweeping scope of the subpoena improperly invades the private affairs of Dominance and its clients. *Id*.

In their Motion, Plaintiffs attempt to paint Dominance as unwilling to engage in the meet-and-confer process. However, the record demonstrates that from the outset, Dominance participated in good faith. During the parties' February 18, 2025, Zoom conference, Plaintiffs refused to meaningfully narrow their facially overbroad subpoena. Although they claimed to be "primarily interested" in Requests 4 through 11, they declined to withdraw any, leaving intact demands that were disproportionate, duplicative of discovery obtainable from Defendants, and unduly burdensome for a small, non-party with limited resources and no centralized systems.

4

Exhibit 2, Decl. of Counsel. Plaintiffs floated the idea of using an ESI vendor but refused to cover the substantial attorney review costs necessitated by Dominance's decentralized records. *Id*. Dominance's counsel agreed to confer with her client and follow up. *Id*.

Although Dominance's counsel inadvertently missed the February 25 conference scheduled for 11:00 a.m., counsel promptly sent an email at 11:27 a.m., notifying Plaintiffs that Dominance was standing by its objections and reiterating that the primary issue was the significant financial burden that compliance would impose—one that Dominance, a non-party with limited resources, simply cannot afford. ECF 216-6. Although Plaintiffs offered to provide an ESI vendor, Plaintiff's proposal did not include the costs for counsel to review the documents. ECF 216-7.

Given Dominance's lack of a centralized document management system, lack of in-house legal, IT, administrative, or accounting departments, and the highly confidential nature of many materials in its possession, any response to Plaintiffs' expansive subpoena would necessarily require extensive attorney review. Exhibit 1. Responsive documents, if they exist, are dispersed across personal email accounts and devices of independent contractors located in multiple states and abroad, are not centrally organized, and often contain private and proprietary information belonging to third parties with whom Dominance has no right to share such information without consent. *Id*. Identifying, collecting, and reviewing these materials for relevance, responsiveness, and compliance with confidentiality obligations would demand significant attorney time and incur substantial fees, while diverting limited resources from essential business operations and severely disrupting Dominance's ability to serve its clients. *Id*.

There was no further communication from Plaintiffs until May, when they requested a Zoom conference. Exhibit 2. That conference occurred on May 20, 2025. *Id*. During the conference, Plaintiffs' counsel inquired whether Dominance's position had changed. *Id*. Dominance's counsel stated that its position remained unchanged unless Plaintiffs were willing to significantly narrow the scope of the subpoena. *Id*. Plaintiffs refused to do so. *Id*.

On June 10, 2025, Plaintiffs sent a letter withdrawing only four of the twelve requests (Requests Nos. 1 through 3 and 12) and restated their vendor proposal—still excluding payment

for review costs. ECF 216-8. Dominance's counsel promptly responded, noting that she was surprised by the letter, given that Plaintiffs had previously refused to narrow the subpoena. ECF 216-9. Dominance's counsel reiterated that, as currently drafted, the subpoena spans a decade and effectively requires Dominance to search the entirety of its business records for any possible connection to the UFC, which is an unreasonable and disproportionate burden, particularly given that the relevant information can and should be obtained from the UFC, a party to the litigation. *Id*. Dominance's counsel also conveyed that if Plaintiffs were now willing to narrow the scope of the subpoena, counsel was open to resuming the meet and confer process; however, based on the parties' last discussion, counsel understood that no concessions were being offered. *Id*.

Plaintiffs responded that they would not further narrow the subpoena. ECF 216-10. Dominance's counsel again explained that Dominance is not in a position to pay the costs of the requested retrieval and that Plaintiffs' offer, as framed, did not include any reimbursement for fees to Dominance, which is a small, non-party operation. ECF 216-11. The reality is that this fishing expedition imposes a substantial and unjustified burden on a non-party with no stake in the outcome of this litigation.

The following day, on June 11, 2025, Plaintiffs' counsel declared an impasse. ECF 216-12. There was no further communication until July 23, 2025, when Plaintiffs served their Motion to Compel by email. Exhibit 2. In reality, Plaintiffs' refusal to compromise ended the meet-and-confer process, not any unwillingness on Dominance's part.

In their Motion, Plaintiffs make much of their supposed reasonableness in "narrowing" the subpoena by withdrawing four of their twelve sweeping document requests. But this gesture is a hollow one. The withdrawn requests (Request Nos. 1 through 3 and 12) have no legitimate connection to the issues in this case and should never have been included in the first place. They sought plainly irrelevant materials such as Dominance's internal business and ownership records, document preservation policies, and communications about this litigation to which Dominance is not a party and has no stake in the outcome. Far from being a concession, Plaintiffs' withdrawal of these requests amounts to little more than retreating from an indefensible position. These demands were not just overbroad; they were untethered to any plausible theory of relevance. That

6

Plaintiffs included such intrusive and irrelevant requests from the outset, only to later withdraw them under the guise of compromise, underscores the fundamentally improper and burdensome nature of the subpoena as a whole.

Nevertheless, because Plaintiffs have withdrawn four of the twelve requests, this Opposition addresses the remaining document requests, Nos. 4 through 11. These requests continue to impose an undue and disproportionate burden on a non-party who does not have authority to disclose much of the information sought and who should not be compelled to produce documents that are far more appropriately obtained from the UFC and other sources.

### III.

### LEGAL ARGUMENT

**A.    LEGAL STANDARD.**

The scope of discovery through a Rule 45 subpoena is the same as under Rule 26(b) and is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering, *inter alia*, the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "The Committee Notes to the 2015 amendment to Rule 26(b)(1) emphasized the importance of proportionality and the objective of 'encourag[ing] judges to be more aggressive in identifying and discouraging overuse.'" *Walsh v. Unforgettable Coatings, Inc.*, 2022 WL 3647920, at *3 (D. Nev. Aug. 23, 2022) (citing Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes (2015)) (quashing subpoenas that were not proportional to needs of the case). "This proportionality requirement is 'designed to avoid . . . sweeping discovery that is untethered to the claims and defenses in litigation.'" *CoStar Grp., Inc. v. Restb.AI, LLC.*, 2023 WL 3325201, at *2 (C.D. Cal. Mar. 10, 2023) (quoting *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2017 WL 5641120, at *5 (C.D. Cal. Sept. 21, 2017)); *see also Ashcraft v. Experian Info. Sols., Inc.*, 2018 WL 6171772, at *1 (D. Nev. Nov. 26, 2018) ("At bottom, proportionality is a common-sense concept that should be applied to establish reasonable limits on discovery.") (internal quotation marks and citation

omitted), *aff'd sub nom. Ashcraft v. Welk Resort Grp.*, Corp., 2021 WL 3017512 (D. Nev. Mar. 24, 2021). Pursuant to this requirement, courts limit discovery upon determining that "the discovery sought ... can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

"[N]onparties subject to a subpoena duces tecum 'deserve extra protection from the courts.'" *Banneker Partners, LLC v. Milk Moovement, Inc.*, 2023 WL 3224444, at *3 (E.D. Cal. May 3, 2023) (quoting *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995)); *see also* Fed. R. Civ. P. 45(d)(2)(B)(i) (protect against significant expense). Rule 45 also provides certain mandatory grounds for quashing or modifying a subpoena, including where the requests would "require[] disclosure of privileged or other protected matter," Fed. R. Civ. P. 45(d)(3)(A)(iii), and where the subpoena "subjects a person to undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv). An evaluation of undue burden requires the court to "weigh the burden to the subpoenaed party against the value of the information to the serving party," and, in particular, to consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Casun Inv., A.G. v. Ponder*, 2019 WL 2358390, at *5 (D. Nev. June 4, 2019) (internal quotation marks and alterations omitted).

**B.    DOMINANCE SERVED WRITTEN OBJECTIONS AT THE TIME SPECIFIED FOR COMPLIANCE, SUSPENDING ITS OBLIGATION TO PRODUCE DOCUMENTS.**

Plaintiffs attempt to fault Dominance for not filing a motion to quash or modify the subpoena, but Rule 45 does not impose such a requirement. ECF 216 at 6:5-12. Rule 45 provides two distinct procedural mechanisms for a nonparty to respond to a subpoena: (1) serving written objections under Rule 45(d)(2)(B), or (2) moving to quash or modify under Rule 45(d)(3). The Rule does not require that a nonparty pursue both avenues. Under Rule 45(d)(2)(B), a nonparty may object to a subpoena by serving written objections, shifting the burden to Plaintiffs to move to compel.  That is exactly what occurred here. Dominance served its written objections by February 10, 2025, the compliance deadline stated in the subpoena. Thereafter, the parties

engaged in the meet-and-confer process but were unable to reach an agreement because Plaintiffs refused to reasonably narrow the scope of the subpoena.

Despite never raising this issue during the meet-and-confer process, Plaintiffs incorrectly contend that Dominance's objections are boilerplate. *Compare* ECF No. 216 at 2:7 and 7:1-6 *with* ECF No. 216-5. Boilerplate objections are rote recitations to buzz words and phrases, such as vague, ambiguous, unduly burdensome, and not proportional to the needs of the case, without any further explanation or context. *Kirstensen v. Credit Payment Services, Inc.*, 2014 WL 6675748, at *4 (D. Nev. Nov. 25, 2014) (citing Black's Law Dictionary definition of "boilerplate" as "[r]eady-made or all-purpose language that will fit in a variety of documents."). Here, Dominance's objection letter was tailored specifically to address Plaintiffs' requests, and reflects a detailed, substantive response that bears no resemblance to boilerplate objections. ECF 216-5. Each objection is supported by an explanation based on the scope of Plaintiffs' requests. *Federal Trade Commission v. Consumer Defense, LLC*, 2019 WL 7628980, *3 (D. Nev. Oct. 9, 2019) ("Proper objections detail why the disputed discovery request is improper." (citing *Collins v. Landry's Inc.*, 2014 WL 2770702, at *3 (D. Nev. June 17, 2014)). The absence of a request-by-request itemization does not transform Dominance's objections into boilerplate. To the contrary, the objections were presented collectively because Plaintiffs' document requests are, without exception, uniformly objectionable.

As discussed in more detail below, the subpoena at issue is overly broad on its face. Dominance has consistently maintained that the subpoena imposes an undue and disproportionate burden, requiring the expenditure of significant time, resources, and expense far beyond what is reasonable or justified for a non-party, particularly given that the majority of the requested documents can be more appropriately obtained from the UFC and other sources. Once Dominance's objections were served, the burden shifted to Plaintiffs to move to compel the production, which is the posture before the Court now. Plaintiffs' suggestion that Dominance failed to act by not filing a motion to quash or modify the subpoena and mischaracterization of Dominance's objections are meritless.

### C.    PLAINTIFFS' SUBPOENA IS FACIALLY OVERBROAD.

Request Nos. 4, 5, 6, 7, 8, 9, 10, and 11 are textbook examples of facially overbroad requests that courts refuse to enforce.[3] *Adobe Sys. Inc. v. Christenson*, 2011 WL 540278, at *10 (D. Nev. Feb. 7, 2011) (noting that a request is "overly broad on its face" when it "seek[s] documents 'pertaining to' or 'concerning' a broad range of items" without any other limitations); *Krause v. Nev. Mut. Ins. Co.*, 2014 WL 496936, at *5-6 (D. Nev. Feb. 6, 2014) ("A discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term such as relating to, pertaining to, or concerning to modify a general category or broad range of documents or information."). Courts in this district have made clear that subpoenas that "request all documents" related to certain topics are overbroad and impermissibly vague. *See Casun Inv.*, 2019 WL 2358390, at *6 (holding that subpoena requests were "clearly overbroad" by requesting "all documents pertaining to or regarding in any way" nonparty entities and persons without any limitation to claims and defenses in the action); *see also Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund*, 2011 WL 4549232, at *2 (D. Nev. Sept. 29, 2011) (subpoena for "any and all documents" for a five-year period involving several different individuals and entities is overbroad).

---

[3] These requests seek among other things, (1) *all* communications between Dominance and the UFC, or any other person employed or retained by the UFC or working on its behalf, *including without limitation*, communications *relating to* any agreements; (2) *all* documents and communications *constituting or relating to* agreements between Dominance and its clients or between Dominance and its clients and any MMA promoter; (3) *all* documents *reflecting or relating to* the administration, monitoring, auditing, or enforcement or threat of enforcement of any UFC fighter's agreements; (4) *all* documents *relating to* comparisons of the UFC's agreements to those of other MMA promoters; (5) *all* documents and communications *constituting or relating to* any actual or possible deals or opportunities between Dominance or its clients and any sponsor; (6) *all* documents *referring or relating to* the UFC denying permission or otherwise discouraging fighters from contracting or working with particular sponsors, preventing certain sponsors from working with fighters, or stopping fighters from signing with Dominance; (7) documents sufficient to show *all compensation* paid to any of Dominance's clients by any MMA promoter; and (8) documents sufficient to show *all income* Dominance's clients or any other fighter received from any source. ECF 216-3 at pp. 17-20.

Courts in this district and elsewhere refuse to enforce such improper, overbroad requests. *Krause*, 2014 WL 496936, at *5-6 (denying motion to compel facially overbroad request because "[c]ompliance would, quite clearly, operate like a giant broom sweeping up everything in its path regardless of relevance or usefulness" and such an exercise "would be unreasonably time-consuming, burdensome, and unfair"); *BAT LLC v. TD Bank N.A.*, 2018 WL 3626428 at *3 (E.D. N.Y. July, 30, 2018) (denying motion to compel because BAT failed to narrow requests to make them reasonable and particular, and "[t]he Court decline[d] to do what BAT did not."); *Straight Path IP Group, Inc. v. Blackberry Limited*, 2014 WL 3401723 at *5 (N.D. Cal. July 8, 2014) (granting motion to quash subpoena because bad policy to narrow burdensome subpoena).

The courts cannot, and should not, rewrite facially overbroad requests to correct the requesting party's violation of Rule 45(d)(1)'s directive to "avoid imposing undue burden" on a subpoenaed non-party. *Hologram USA, Inc. v. Pulse Evolution Corporation*, 2015 WL 13238450, at *4 (D. Nev. Dec. 18, 2015) ("When a party chooses to serve overly broad discovery, it runs the risk that the discovery will be denied outright without an opportunity to narrow it." (emphasis added)); *Straight Path IP Grp., Inc.*, 2014 WL 3401723, at *5 ("The swath of the subpoena is so burdensome that it would be bad policy to now whittle it back to something narrow and reasonable. Instead, the baby should go out with the bath water . . . To do otherwise would encourage litigants to demand the moon thinking they can always fall back to something reasonable. They should be reasonable from the start."); *see also BAT LLC*, 2018 WL 3626428, at *3 ("courts faced with overbroad requests need not narrow the scope of the request . . . but may instead sustain the overbreadth objection and deny the requested discovery").

Under the law, the Court should deny Plaintiffs' Motion because their requests are facially overbroad and substantially burdensome to Dominance, which is a nonparty with limited personnel and limited resources. Due to Dominance's small scale and decentralized operations, complying with the subpoena would require substantial time and effort and would materially disrupt its day-to-day business activities. Exhibit 1. Most personnel associated with Dominance are independent contractors who serve clients in various capacities and who are directly engaged in revenue-generating work or essential daily operations. *Id*. Diverting them from these tasks

11

would disrupt the business significantly. *Id*. Additionally, diverting resources to locate and review the requested materials would impair existing client relationships and interfere with contractual obligations. *Id*.

"The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Sci. Games Corp. v. AGS LLC*, 2018 WL 2292811, at *2 (D. Nev. May 18, 2018) (internal quotation marks and citations omitted). The Ninth Circuit has also emphasized the importance of protecting nonparties from overbroad discovery requests by holding that the "failure [to] narrowly [] tailor a subpoena may be grounds for sanctions." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). The all-encompassing language of these requests makes it clear that Plaintiffs failed to comply with their Rule 45(d)(1) duty to avoid unduly burdening Dominance as a nonparty in this action. Instead, Plaintiffs' subpoena is an apparent fishing expedition. As discussed in detail below, the subpoena seeks voluminous documents that are either irrelevant to the underlying action or more readily available from a party, or other sources. The Court has no obligation to—and should not—rewrite any of Plaintiffs' requests to narrow them to a proper scope. Doing so would waste this Court's scarce resources and only encourage Plaintiffs to continue its discovery abuses.

**D.      PLAINTIFFS' SUBPOENA IS UNDULY BURDENSOME.**

The Court also must deny Plaintiffs' Motion because the subpoena subjects Dominance to undue burden. Fed. R. Civ. P. 45(d) (3)(A)(iv). The subpoena is a blatant and improper attempt by Plaintiffs to circumvent the procedures governing party discovery. As set forth below, the undue burden posed by the subpoena requires that the Court deny the Motion. *See Casun Inv.*, 2019 WL 2358390 at *6 (quashing unduly burdensome subpoena requests which were "clearly overbroad" and "irrelevant"); *Warren v. City of Las Vegas, Nevada*, 2023 WL 6197323, at *9 (D. Nev. Sept. 22, 2023) (quashing unduly burdensome subpoena where movant had not "provided any evidence that [movant] attempted to obtain the documents [movant] seeks through [the] subpoena via a proper Rule 34 request"), report and recommendation adopted sub nom. *Warren v. Las Vegas Metro. Police Dep't*, 2023 WL 6785815 (D. Nev. Oct. 12, 2023).

**1.  The Subpoena Seeks Documents that Are Irrelevant to the Underlying Action.**

Plaintiffs have failed to demonstrate, as they must, that the subpoena seeks information that is "relevant and material to the allegations and claims at issue in the proceedings." *Crawley v. Clark Cty. Det. Ctr.*, 2022 WL 2482303, at *1 (D. Nev. July 6, 2022); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) (nonparty discovery demands "stronger showing of relevance than for simple party discovery"). Subpoenas that request irrelevant information are inherently burdensome and thus unenforceable. *See Monte H. Greenawalt Revocable Tr. v. Brown*, 2013 WL 6844760, at *3 (D. Nev. Dec. 19, 2013); *see also In re Medport LA, LLC*, 2020 WL 3621343, at *4 (D. Nev. July 1, 2020) (denying motion to compel where movant sought irrelevant discovery from nonparty about independent transaction between nonparty and party).

In the underlying action, "Plaintiffs allege that the UFC obtained monopoly power in the MMA industry by acquiring its largest competitors and locking the best MMA fighters into restrictive long-term contracts that prevent any other MMA promoters from gaining a foothold in the industry." ECF 216 at 5:13-15. However, many of Plaintiffs' requests seek documents and communications that have nothing to do with the dispute between Plaintiffs and the UFC.

In support of Request No. 4, Plaintiffs contend that the UFC's contracts with its fighters are central to their claims and that any communications between the UFC and Dominance concerning those agreements, including negotiations, renewals, tolling, enforcement, and attempted intimidation, are "highly relevant." ECF 216 at 15:13-21. Plaintiffs further assert that their request is narrowly tailored to such materials. That is incorrect.

The request, as drafted, is anything but narrow. It demands "All Communications between You and the UFC . . . including, without limitation, Communications relating to any Agreements (whether explicit or implicit) between You and the UFC or anyone with a beneficial ownership interest in the UFC." ECF 216-3 at pp. 17-18.  First, "You" refers to Dominance, which is not a party to any agreements with the UFC. The request does not specifically target contracts between the UFC and its fighters. And even if it did, such documents would be more appropriately obtained from the UFC itself, as discussed below.

13

Moreover, the "all communications… including, without limitation" language is facially overbroad and sweeps in vast categories of irrelevant materials, such as routine correspondence unrelated to fighter contracts and internal scheduling or administrative matters (such as visas and travel arrangements, apparel sizing, and medical exams/clearances). None of these have any bearing on the claims or defenses in this case, yet they would still be captured by Plaintiffs' sweeping language. Such fishing expeditions are neither proportional nor permissible under the applicable rules.

Request No. 5 seeks "All Documents and Communications constituting or relating to Agreements between You and Your Clients . . . ." ECF 216-3 at p. 18. Plaintiffs' claims against the UFC concern the UFC's alleged conduct in the market for fighter services, not the private, unrelated business arrangements between Dominance and its own clients. Dominance is not a party to this litigation, is not alleged to have engaged in any anticompetitive conduct, and has no financial or legal stake in the outcome. Agreements between Dominance and its clients are entirely separate from the UFC's contractual relationships with fighters. They reflect Dominance's independent business dealings, negotiated without the UFC's involvement, and bear no connection to the competitive effects or market conditions at issue in Plaintiffs' claims. The terms, negotiations, or performance of such agreements shed no light on whether the UFC engaged in monopolization or any other antitrust violation.

Additionally, Request Nos. 5, 8, 10, and 11 are breathtakingly overboard. ECF 216-3 at pp. 18-20. They demand every document and communication, concerning any fighter Dominance has represented, regardless of whether that fighter has any connection to the UFC. *Id.* This includes materials "constituting or relating to" agreements with any MMA promoter, any actual or potential agreement or opportunity with any sponsor, all compensation paid by any MMA promoter, and all income from any source. *Id.* Many of Dominance's clients have never participated in UFC-promoted bout and therefore do not meet the *proposed* class definition. Exhibit 1. This irrelevance is compounded by the fact that the class definition itself is in flux, as the UFC has opposed class certification on the grounds that two of the named Plaintiffs cannot adequately represent the proposed class because their contracts lack arbitration provisions while

other fighters' contracts contain them, undermining the required "commonality" for class certification. ECF 179. In other words, Plaintiffs' own class boundaries are unsettled, which further underscores the lack of any legitimate basis to demand sweeping discovery about fighters who are plainly outside the proposed class or whose inclusion is uncertain.

At bottom, Plaintiffs' subpoena seeks information that is irrelevant and inherently unduly burdensome from a non-party. Plaintiffs' Motion should accordingly be denied.

### 2. The Subpoena's Timeframe is Overly Broad and Extends Beyond the Proposed Class Period and Applicable Statute of Limitations.

The subpoena's definition of the "Relevant Time Period" is January 1, 2015, until the present, and includes all responsive documents created or generated during the relevant time period, as well as responsive documents created or generated outside the relevant time period, but which contain information concerning the relevant time period. ECF 216-3 at p. 17. This timeframe is overly broad and extends far beyond: (a) the proposed class period in this case, which is July 1, 2017, to the present, and (b) the applicable statute of limitations for antitrust claims. By seeking documents outside these legal and factual boundaries, the subpoena imposes an undue burden, seeks irrelevant information, and violates the proportionality requirements of Rule 26(b)(1).

The operative complaint defines the proposed class period as July 1, 2017, to the present. This is the time during which alleged anticompetitive conduct is claimed to have caused injury to the putative class. Extending the subpoena's reach more than two and a half years earlier captures a period for which there is no allegation of harm, thus sweeping in irrelevant and potentially prejudicial material.

Equally as significant, under 15 U.S.C. § 15b, the statute of limitations for civil antitrust actions is four years. Because the complaint in this case was filed on June 23, 2021, the statute of limitations period extends back only to June 23, 2017. The subpoena's timeframe therefore demands documents from more than two and a half years before the earliest date for which actionable conduct could be pursued.

Moreover, the subpoena also demands documents created outside the relevant time period but containing information about it. This open-ended clause is not narrowly tailored, capturing every record recreated prior to January 1, 2015, that merely references events after that date. This open-ended clause transforms the subpoena into a request for indefinite archival records, without any demonstrated nexus to liability or damages issues. Because the subpoena's timeframe extends well beyond the proposed class period and applicable statute of limitations, it demands information of minimal relevance while imposing substantial burden on Dominance.

### 3. The Subpoena Seeks Information that is More Readily Available from the Defendant in the Underlying Action, the UFC.

The subpoena is additionally unenforceable for Plaintiffs' failure to seek the requested documents from the UFC in this case, or to otherwise demonstrate that doing so would be an impossibility. Plaintiffs make no argument that they have actually attempted to obtain the requested discovery from the UFC (*see* ECF 216 at pp. 13-14), and all available evidence shows that the UFC is actively engaged in the underlying litigation.

Courts limit the scope of nonparty discovery when the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Arlitz v. GEICO Cas. Co.*, 2019 WL 8405354, at *1 (D. Nev. Nov. 25, 2019); *see also Casun Inv.*, 2019 WL 2358390, at *4 ("A subpoena may not be used to circumvent the requirements of Rule 34 . . . . If the documents are available from a party, a request for production under Rule 34 should be used.") (citations omitted); *Hickman v. Mead*, 2019 WL 3837784, at *3 (D. Nev. Aug. 14, 2019) ("Plaintiff fails to proffer any reason why the check and communications cannot be obtained from Defendants instead of Bank of America or why the requests are not duplicative."); Order, *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, No. 2:04-CV-01199-DAE (D. Nev. Feb. 7, 2007), ECF 178 at 9-10 ("Although the [non-party] tenant subpoenas may be the most efficient and expeditious method for Plaintiff to obtain the documents and information it seeks, this alone does not justify shifting the burden of discovery onto the non-party tenants if the documents can be obtained from Defendants."); *Audio MPEG, Inc. v. HP Inc.*, 2017 WL 950847, at *4 (N.D. Cal. Mar. 10, 2017) (quashing subpoenas because the requesting party "failed to show relevance,

1  and because what relevant material there is could be more easily obtained from other sources

2  without causing a burden to [the] nonparty").

3      Here, the vast majority of the discovery sought is more readily available from another

4  source that would be more convenient, less burdensome, and less expensive: the UFC. Indeed,

5  most of the subpoena's requested materials are *on their face* directly available from the UFC.

6  Request Nos. 4, 5, 6, 7, 8, 9, and 10 seek documents and correspondence relating to the UFC.

7  Notwithstanding this, Plaintiffs have seemingly not attempted to compel or otherwise obtain the

8  requested materials from the UFC in this case.

9      Plaintiffs' generalized assertions about perceived "gaps" in Defendants' production do

10  not excuse their failure to first seek the requested materials from the party that indisputably

11  possesses them. Dominance is a non-party with no personal knowledge of the status of

12  Defendants' production or any alleged discovery disputes. Rule 45 and controlling case law

13  require a party seeking non-party discovery to demonstrate that it cannot obtain the information

14  from a party to the litigation. Plaintiffs have not made that showing here. They have not identified

15  any specific requests served on Defendants for the materials at issue, nor have they moved to

16  compel production from Defendants. Their speculation that there "may" be omissions in

17  Defendants' production is insufficient to justify burdening a non-party with duplicative discovery

18  obligations.

19      Even accepting Plaintiffs' criticisms of Defendants' discovery conduct at face value, such

20  complaints are properly addressed through the established mechanisms of party discovery,

21  including targeted requests, meet-and-confer efforts, and, if necessary, a motion to compel.

22  Plaintiffs' choice to bypass those steps and seek the same information from a non-party

23  contravenes the proportionality principles of Rule 26 and the protection against undue burden in

24  Rule 45. Until Plaintiffs exhaust reasonable means of obtaining the requested documents from

25  Defendants, they cannot demonstrate the necessity required to impose the substantial burden of

26  production on a non-party.

27      In these circumstances, courts do not hesitate to grant relief to the nonparty. *See Genus*

28  *Lifesciences Inc. v. Lannett Co.*, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019) ("Because

17

of [plaintiff's] failure to attempt to obtain the requested documents from [defendant] prior to seeking them from [the nonparty], its subpoena is an undue burden on [the nonparty].");  *Ow v. United States*, 2018 WL 6267839, at *1 (N.D. Cal. June 12, 2018) (finding that "Plaintiffs fail to demonstrate that they could not have obtained the documents regarding communications and/or writings between the [nonparty] and Defendant directly from Defendant" and quashing subpoena requests). In short, "[t]here is simply no reason to burden nonparties when the documents sought are in possession of the party defendant." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing subpoena where "the vast majority of the discovery sought from [the nonparty] [was] discovery obtainable from a source more direct, convenient, and less burdensome—namely, from Defendants"); *see also Bada Co. v. Montgomery Ward & Co.*, 32 F.R.D. 208, 209-10 (S.D. Cal. 1963) ("These witnesses are not parties to the action, and they should not be burdened with the annoyance and expense of producing the documents sought unless the plaintiff is unable to discover them from the defendant."). Plaintiffs' failure to seek the requested discovery from the UFC before seeking it from Dominance renders the subpoena unduly burdensome and requires the Court to deny the Motion. *See*, *e.g.*, *Casun Inv.*, 2019 WL 2358390, at *4; *Hickman*, 2019 WL 3837784, at *3; *Warren*, 2023 WL 6197323, at *9; *Genus Lifesciences*, 2019 WL 7313047, at *4; *Ow*, 2018 WL 6267839, at *1.

Lastly, in balancing the burden imposed by discovery, courts must also consider the harm to protected confidentiality interests. *Sci. Games Corp.*, 2018 WL 2292811, at *2. As discussed in detail below, the subpoena seeks highly sensitive information that is subject to independent confidentiality obligations and implicates important privacy concerns. These factors not only add to the burden imposed on Dominance, but they also independently warrant the conclusion that the subpoena is unenforceable against Dominance. Fed. R. Civ. P. 45(d)(3)(A)(iii). Because the subpoena is vastly overbroad and would impose a substantially undue burden on Dominance, the Court should deny Plaintiffs' Motion.

/ / /

/ / /

/ / /

**E.    THE SUBPOENA SEEKS HIGHLY SENSITIVE AND CONFIDENTIAL INFORMATION OVER WHICH DOMINANCE LACKS CUSTODY OR CONTROL.**

A court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter," Fed. R. Civ. P. 45(d)(3)(A)(iii), and a court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i); *see also Hall CA-NV, LLC v. Ladera Dev., LLC*, 2019 WL 5448458, at *13 (D. Nev. Oct. 24, 2019) (modifying subpoena "such that the disclosure of privileged communications or protected work product is not required"), aff'd, 2020 WL 1033560 (D. Nev. Mar. 2, 2020). Rule 45 requires that a subpoena be limited to documents within the recipient's "possession, custody, or control." It is well established that "control" means more than mere access—it requires a legal right to obtain documents upon demand. *Allen v. Woodford*, 2007 WL 309945, *2 (E.D. Ca. Jan. 30, 2007).

**1.    Plaintiffs Improperly Seek to Compel Dominance to Disclose Third-Party Agreements and Related Information and Documents It Has No Right to Produce.**

Request Nos. 4, 5, and 8 seek production of documents and communications relating to or constituting agreements between Dominance's and/or its clients and promoters or sponsors. Dominance is not a party to these agreements and has no independent legal right to disclose them. Exhibit 1. Its role is limited to acting as a manager or agent in facilitating negotiations. Any responsive documents it may possess are held solely as an agent and fiduciary for its clients. Compelling Dominance to produce such documents would violate the rights of multiple non-parties, contravene Rule 45's protections for confidential commercial information, and impose an undue burden on a non-party intermediary.

Although Dominance may have access to certain documents by virtue of its role as manager or agent, it is not an owner or contracting party. Dominance does not have legal custody or control over those documents for purpose of Rule 45, as it has no independent right to obtain or disclosure them without the express consent of the contracting parties. Any right to disclose belongs to the contracting parties themselves (i.e., the fighters and the promoters or sponsors), not Dominance. In *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717–18 (1st Cir. 1998), the First

Circuit recognized confidential documents in the hands of a non-party deserve significant protection.

Additionally, the contracts typically contain express confidentiality provisions prohibiting disclosure to third parties without the parties' consent. The contracts at issue also contain proprietary business terms, performance obligations, compensation arrangements, and other commercially sensitive details that are not publicly available. Although Dominance is not itself bound as a signatory, it has fiduciary and agency duties to its clients to preserve the confidentiality of their business dealings. Compelling Dominance to produce them would not only burden a non-party, it would sidestep the rights of the actual owners of the documents and undermine their negotiated confidentiality protections. Additionally, disclosing the agreements in response to a subpoena without client consent would expose Dominance to liability for breach of fiduciary duty, tortious interference, and reputational harm. Indeed, the materials at issue can be more appropriately obtained directly from the fighters, promoters, and sponsors. Forcing a non-party intermediary to disclose contracts and related documents and communications to which it has no rights, without the consent of the contracting parties, is precisely the type of undue burden Rule 45 is designed to prevent.

Because Dominance is not a contracting party, lacks independent rights to disclose the agreements, holds them solely in a representative capacity, and because the agreements contain confidential commercial information protected under Rule 45, the Court should deny Plaintiffs' Motion, or at minimum, require Plaintiffs to seek the information directly from the actual contracting parties.

**2. Dominance Lacks Custody or Control Over its Clients' Financial Records.**

Request Nos. 10 and 11 seek private financial records belonging to Dominance's clients. Dominance does not track, receive, or maintain records of fighter compensation, sponsorship payments, or other outside income. Exhibit 1. Such information would be maintained by the fighters themselves or their financial representatives. *Id*. Managing or retaining accounting or financial records for athletes is not within Dominance's business functions. Moreover,

Dominance has no legal right or authority to obtain or disclose its clients' sensitive financial information.

Dominance serves as a manager or agent to its clients. It is contractually authorized to access or produce their complete financial records. To the extent Dominance has any documents reflecting client income (such as a contract or agreement), such documents are held in a limited capacity and do not reflect comprehensive financial data. Furthermore, any such documents are not within Dominance's legal control, as it cannot compel its clients to produce them, nor is it authorized to do so unilaterally in response to litigation.

Permitting Plaintiffs to compel production of private income records through a non-party agent, who has no authority to release them, would undermine well-established privacy protections and invite abusive discovery. Accordingly, Plaintiffs' Motion should be denied.

IV.

**<u>CONCLUSION</u>**

Based upon the foregoing, Dominance respectfully requests that the Court enter an order denying Plaintiffs' Motion to Compel in its entirety and protect Dominance from the undue burden of responding to Plaintiffs' subpoena.

Dated this 13th day of August, 2025.

CHRISTIANSEN TRIAL LAWYERS

By _____
PETER S. CHRISTIANSEN, ESQ.
KEELY P. CHIPPOLETTI, ESQ.

*Attorneys for Nonparty*
*Dominance MMA, LLC*



## CERTIFICATE OF SERVICE

I certify that I am an employee of CHRISTIANSEN TRIAL LAWYERS, and that on this 13th day of August, 2025, I caused the foregoing document entitled **NONPARTY DOMINANCE MMA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL [ECF No. 216]** to be filed and served via the Court's CM/ECF electronic filing system upon all registered parties and their counsel.

_____

An employee of Christiansen Trial Lawyers

# EXHIBIT 1

# EXHIBIT 1

### DECLARATION OF ALI ABDELAZIZ IN SUPPORT OF DOMINANCE MMA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

I, Ali Abdelaziz, declare as follows:

1.      I am the Chief Executive Officer for Dominance MMA, LLC ("Dominance"), a small limited-liability company. I am over the age of 18. I have personal knowledge of Dominance's operations, staffing, and financial circumstances, and I am authorized to make this declaration on its behalf. I submit this declaration in support of Dominance's Opposition to Plaintiffs' Motion to Compel.

2.      Dominance is a small athlete management organization. It maintains no physical offices and currently employs only one (1) individual. It engages approximately seven (7) to twelve (12) independent contractors at various times who are directly engaged in revenue-generating work or essential daily operations, and diverting them from these tasks would disrupt the business significantly.  These independent contractors are mostly in charge of tasks completely unrelated to subpoena requests such as scheduling medicals exams for clients; making travel arrangements and accommodations; and assisting clients with completing required tasks to obtain international travel visas requested by respective immigration attorneys and government agencies.

3.      Dominance manages and represents professional mixed material arts fighters who compete for a variety of promoters. While some of its clients have bouts with the UFC, a majority of the fighters it represents do not compete under the UFC at all. As a result, a substantial portion of the information and materials in Dominance's possession relate exclusively to fighters that have no connection to the UFC or the claims in this lawsuit.

4.      Dominance does not maintain in-house legal, IT, administrative, or accounting departments.

5.      Dominance does not use a centralized document management system. Any documents responsive to Plaintiffs' subpoena, if they exist, are maintained exclusively in email accounts and on laptops, and are not organized in a manner that allows for ready search or retrieval.

6.      Dominance is not a party to any agreements with the UFC or other MMA promotions and rarely a party to any agreements with sponsors. Contracts involving fighters are executed directly by the athletes, and Dominance does not typically receive or retain executed copies.

1

7.      Even if Dominance may be in possession of certain responsive materials by virtue of its role as manager, many of those materials are subject to confidentiality provisions in agreements or contracts with athletes, sponsors, or promotions, and contain confidential, private, and proprietary information. Dominance is not authorized to disclose such materials, and any such disclosure could violate legal obligations and industry-standard non-disclosure agreements.

8.      To my knowledge, Dominance does not possess documents reflecting UFC threats or intimidation to enforce its contracts; documents comparing UFC's agreements, marketing strategies, or broadcast/PPV distribution to those of other MMA promoters; or documents referring or relating to the UFC denying permission or discouraging fighters from working with particular sponsors.

9.      Dominance does not track, receive, or maintain records of fighter compensation, sponsorship payments, or other outside income. Such information would be maintained by the fighters themselves or their financial representatives. Managing or retaining accounting or financial records for athletes is not within Dominance's business functions.

10.     The subpoena served on Dominance seeks extensive records spanning a decade, including electronic communications and documents. Responding to this subpoena would require reviewing thousands of files, retrieving archived emails, hiring outside IT assistance, and extensive attorney review for relevance and confidentiality.

11.     Due to Dominance's small scale and decentralized operations, complying with the subpoena would require substantial time and effort and would materially disrupt its day-to-day business activities. Most personnel associated with Dominance are independent contractors who serve clients in various capacities described in ¶ 2. Diverting resources to locate and review the requested materials would impair existing client relationships and interfere with contractual obligations.

12.     Complying with the subpoena would also require Dominance to surrender all electronic devices, including laptops and phones, to a third-party vendor for forensic imaging and data extraction. Dominance's personnel include independent contractors located across the United States and abroad, including in Florida, Arizona, New York, Brazil, and other locations. Retrieving their devices for the vendor's review would not only be logistically complex and costly, but it would

also deprive these individuals of the tools necessary to perform their daily responsibility. Given the scope and timeframe of the requests, this process would effectively shut down Dominance's operations for the duration of the review, depriving it of the very tools needed to conduct its day-to-day business. For a small management company, this level of disruption, even temporarily, would significantly disrupt client services and be tantamount to putting the company out of business during that period.

13.    Dominance's budget and resources are allocated to core business operations. It does not have excess capacity to devote to compliance with third-party litigation matters.

14.    Based on the breadth of the subpoena, Dominance's limited personnel and resources, and its awareness of confidentiality provisions in contracts between the athletes it represents and third parties, Dominance would require extensive engagement with outside counsel to fully respond to the subpoena and to ensure any response complies with those obligations.

15.    Dominance's retained counsel charges hourly rates ranging from $550 to $1,250. I estimate that a full response to the subpoena would cause Dominance to incur attorneys' fees, costs, and expenses well into the tens of thousands of dollars and potentially six figures. As a company with only one (1) employee and limited resources, the time and cost of compliance would substantially disrupt Dominance's ability to function.

I declare under penalty of perjury under the laws of the State of Nevada and the United States of America that the foregoing is true and correct.

Dated: August 13, 2025

By  _/s/ Ali Abdelaziz_
ALI ABDELAZIZ

# EXHIBIT 2

# EXHIBIT 2

## DECLARATION OF KEELY P. CHIPPOLETTI, ESQ.

I, KEELY P. CHIPPOLETTI, declare as follows:

1.      I am an attorney admitted to practice law in the State of Nevada and in the United States District Court for the District of Nevada.

2.      I am an attorney with Christiansen Trial Lawyers, and represent Nonparty Dominance MMA, LLC ("Dominance") with respect to Plaintiffs' subpoena *duces tecum* and related Motion to Compel (ECF No. 216) in the matter entitled *Johnson, et al. v. Zuffa, LLC, et al.*, Case No. 2:21-cv-01189-RFB-BNW. The following facts are within my personal knowledge.

3.      On February 18, 2025, I met and conferred with counsel for Plaintiffs, Kevin Rayhill and Itak Moradi, via Zoom regarding Plaintiffs' subpoena. Plaintiffs were not willing to narrow the scope of the subpoena at that time. Plaintiffs stated that they were primarily interested in Requests Nos. 4 through 11, but did not withdraw any requests.

4.      I explained that the subpoena was facially overbroad and unduly burdensome, particularly because the majority of the documents sought could be obtained directly from the UFC, which is a party in this case. Conversely, Dominance is not a party, and compliance with the subpoena would require substantial time, labor, and expense that Dominance cannot bear.

5.      Plaintiffs proposed using an ESI vendor to facilitate data collection. I asked whether Plaintiffs would agree to cover the associated costs. Plaintiffs indicated they were open to sharing the cost of collection but not the cost of document review.

6.      I informed Plaintiffs that I would need to discuss the matter with my client and would follow up.  A follow-up Zoom conference was scheduled for February 25, 2025.

7.      Although I inadvertently missed the February 25 conference scheduled for 11:00 a.m., I promptly sent an email at 11:27 a.m., notifying Plaintiffs that Dominance was standing by its objections and reiterating that the primary issue was the significant financial burden that compliance would impose—one that Dominance, a non-party with limited resources, simply cannot afford. *See* ECF 216-6.

8.      Plaintiffs' counsel responded later that day, offering to provide a vendor to collect documents and stating that they intended to seek the Court's assistance if the parties remained at an impasse. *See* ECF 216-7.

9.      I received no further communication from Plaintiffs until May, when they requested a zoom conference. That conference occurred on May 20, 2025, with counsel for Plaintiffs, Mr. Rayhill and Ms. Moradi. During the conference, Plaintiffs' counsel inquired whether Dominance's position had changed. I stated that Dominance's position remained unchanged unless Plaintiffs were willing to significantly narrow the scope of the subpoena. Plaintiffs refused to do so.

10.     On June 10, 2025, Plaintiffs sent a letter withdrawing Requests Nos. 1 through 3 and 12 and reiterating their offer to provide a vendor for data collection. *See* ECF 216-8.

11.     I promptly responded, noting that I was surprised by the letter, given that Plaintiffs had previously refused to narrow the subpoena. *See* ECF 216-9.  I reiterated that, as currently drafted, the subpoena spans a decade and effectively requires Dominance to search the entirety of its business records for any possible connection to the UFC, which is an unreasonable and disproportionate burden, particularly given that the relevant information can and should be obtained from the UFC, a party to the litigation. *Id*. I also conveyed that if Plaintiffs were now willing to narrow the scope of the subpoena, I was open to resuming the meet and confer process; however, based on our last discussion, I understood that no concessions were being offered. *Id*.

12.     Plaintiffs responded that they would not further narrow the subpoena. *See* ECF 216-10. They insisted that Dominance lacked any valid justification for noncompliance and reiterated their offer to provide a third-party vendor for collection, though their proposal did not include payment to Dominance for the labor, time, and disruption compliance would entail. *Id*.

13.     Peter Christiansen, who is also counsel for Dominance in this matter, responded the same day, stating that Dominance is not in a position to pay the costs of the requested retrieval and that Plaintiffs' offer, as framed, did not include any reimbursement for fees to Dominance, which is a small, non-party operation. *See* ECF 216-11.

14.     The following day, on June 11, 2025, Plaintiffs' counsel declared an impasse. *See* ECF 216-11.

15.    There was no further communication with Plaintiffs until July 23, 2025, when they served their Motion to Compel by email.

I declare under penalty of perjury under the laws of the State of Nevada and the United States of America that the foregoing is true and correct.

Dated: August 13, 2025

By _____
KEELY P. CHIPPOLETTI