# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Kajan Johnson, Clarence Dollaway, and Tristan Connelly, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br>  v.<br>Zuffa, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,<br><br>    Defendants. | No.: 2:21-cv-01189-RFB<br><br>**JOINT STATUS REPORT RE: DISCOVERY DEFICIENCIES SEPTEMBER 2025** |
| Mikhail Cirkunovs, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br>  v.<br>Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.,<br><br>    Defendants. | No.: 2:25-cv-914-RFB |
| Phil Davis, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br>  v.<br>Zuffa LLC, TKO Group Holdings, Inc. (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,<br><br>    Defendants. | No.: 2:25-cv-00946-RFB |

.

Pursuant to the Court's September 10, 2025 Minute Order, Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly (the "*Johnson* Plaintiffs"), Plaintiff Mikhail Cirkunovs (the "*Cirkunovs* Plaintiff"), Plaintiff Phil Davis (the "*Davis* Plaintiff") (collectively, "Plaintiffs"), and Defendants Zuffa, LLC, TKO Operating Company, LLC, TKO Group Holdings, Inc., and Endeavor Group Holdings, Inc. ("Defendants," and collectively with Plaintiffs, the "Parties"), jointly submit this Status Report regarding unresolved discovery issues arising from Plaintiffs' September 12, 2025 Letter (the "Omnibus Discovery 'Deficiency' Letter").

**PLAINTIFFS' POSITION**

Plaintiffs have substantially completed discovery; Defendants have not. To the extent Defendants' production can be considered "complete" it is only insofar as it relies exclusively on Defendants' unilateral selection of search terms and custodians and a search process that failed to capture entire categories of highly relevant documents. Plaintiffs have spent ten months, unsuccessfully, trying to engage in a cooperative and productive discovery process. ECF No. 217. After the August 26, 2025 hearing, where the Court noted Defendants' "violations of my order," but stated severe sanctions would not follow without "some further investigation," *see* Hrg. Tr. at 36:3-4, 9-10, Plaintiffs tried to reset. Plaintiffs used the Court's deficiency protocol to outline the issues necessary to complete discovery, Ex. 1, which Defendants rejected. Ex. 2.[1] Defendants' recycled timeliness contentions (ECF No. 224 at 12, 17-18) are wrong. *See* ECF No. 230 at 2 n.6.

In effect, Defendants have told Plaintiffs any material change is too late and to just say what is missing from the production so Defendants can investigate. However, Defendants' production is so deficient that the answer to "what is missing" is "nearly everything of substance." When Plaintiffs provide specific examples of "what is missing," Defendants ignore it (*compare* Ex. 1*, with* Ex. 2), and were largely unprepared to discuss them on the meet and confer, instead just referring to their "tracker," which just cites the documents that Plaintiffs had searched to

---

[1] Pursuant to the Minute Order, ECF No. 252, Plaintiffs served their deficiency letter on September 12, 2025. Ex. 1. Defendants responded on September 18. Ex. 2. The parties met and conferred on September 19 and exchanged memorializing writings on September 21 and 22. Exs. 4, 7. Defendants mischaracterize Plaintiffs' September 22 letter, Ex. 7, as a new deficiency letter.

identify examples of what was missing. For example, over 72% of Defendants' production unique to this case are from the files of a single paralegal responsible for emailing contracts to fighters for execution. Defendants have produced fewer than 100 text/chat conversations from 33 custodians over ten years but produced thousands in *Le* that featured prominently in Plaintiffs' proof and the Court's class order. *E.g.*, *Le v. Zuffa, LLC*, 2023 WL 5085064, at *25 (D. Nev. Aug. 9, 2023).

### A.     Defendants' General Search Deficiencies

Defendants' approach to the selection of search terms, custodians, and the sharing of hit reports and basic information here is entirely *inconsistent* with Zuffa's process in *Le*, what Zuffa's discovery expert represented to this Court constitutes appropriate discovery practices, the authorities in this Circuit, and standard practice. *See* e.g., Ex. 3, Declaration of Helen Moure ¶¶ 15, 16, *Le v. Zuffa, LLC*, 15-cv-1045 (D. Nev. Feb. 19, 2016) (ECF No. 220).[2] The parties negotiated and successfully applied a discovery search process overseen by Magistrate Judge Leen in the predecessor case, *Le v. Zuffa*, which Defendants refuse to honor here but which, if applied, would eliminate many of the disputed issues. *See* Ex. 1, at 3-4. Defendants' contention that they produced 963,011 documents *omits* that approximately 775,000 of those documents were nothing more than re-Bates-numbered copies of Zuffa's long-ago production in *Le*. *See* ECF No. 230.

### 1.     Completion of Plaintiffs' Discovery Worksheets

Lacking the most basic information routinely shared in the discovery process, as part of their attempted reset, Plaintiffs asked Defendants to complete two simple worksheets with basic information such as, for emails: custodian name, email address, date the account was imaged, the date emails first appear in the account, and the total number of emails and email counts by year. *See* Ex. 1, at 1. Plaintiffs requested even more basic information regarding mobile devices and text/chat messages considering Defendants' failure to fully comply with the Court's June 3, 2025

---

[2] *Humanmade v. SFMade*, 2024 WL 3378326, at *3 (N.D. Cal. July 10, 2024) (parties should share "hit number results when they have a dispute over eDiscovery issues such as search terms" (citation omitted)); *Andersen v. Stability AI Ltd.*, 2025 WL 870358, at *5 (N.D. Cal. Mar. 19, 2025) (ordering "hit reports…as part of the meet and confer process regarding search terms"); *Matsko v. Tesla, Inc.*, 2025 WL 1144827, at *4 (N.D. Cal. Apr. 18, 2025) ("the negotiation of custodians, ESI sources, and/or search terms is an iterative process"); *Wolfclan v. Pierce Cnty.*, 2024 WL 4449931, at *5 (W.D. Wash. Oct. 9, 2024) (requiring "hit report showing specific results for each search term as to the data held by each custodian or stored in each database").

1  Device Disclosure Order. Defendants refuse to provide this information, Ex. 2, contending that it
2  "goes far beyond what the Court required." Ex. 4. This information is the type Zuffa voluntarily
3  shared in *Le* and that parties routinely share to advance productive a discovery process.

### 2. Application of Plaintiffs' Search Term Proposal

The history of search term negotiations here is long and sharply disputed. ECF No. 217 at 8-11. Not disputed is Defendants' categorial refusal to apply Plaintiffs' search term proposal or even to negotiate it. *See* Ex. 1, at 1-3; Ex. 2; Ex. 4. Defendants will only "consider targeted, RFP-specific proposals supported by an articulated, particularized need." Ex. 4. However, Defendants' search terms are unduly narrow and yielded a vastly incomplete production; Defendants should be required to negotiate and apply Plaintiffs' search terms too, as Defendants' proposed highly inefficient and laborious process does not solve for inadequate search terms.

### 3. Production of Search Term Hit Reports

Defendants refuse to provide hit reports for *Plaintiffs'* search term proposal, as is standard (but only now have agreed to provide reports for *Defendants'* search terms). Ex. 1 at 1-2; Ex. 2, at 4-5. Defendants should not be permitted to deprive Plaintiffs of the ability to "focus the review on documents that are more likely to contain responsive information." Ex. 3, ¶ 15.

### 4. Inclusion of Plaintiffs' Custodian Proposal

Defendants unilaterally selected 33 custodians. After extensive efforts to get Defendants to provide basic information necessary to enable Plaintiffs to select custodians (ECF No. 217 at 5-8; ECF No. 230 at 8-9), Plaintiffs proposed 30 custodians. Ex. 5 at 3-4; Ex. 1, at 5-6. On July 23, 2025, well before the August 26 conference Defendants cite, Defendants represented to Plaintiffs that they would "continue, making rolling productions in the coming weeks, including from custodians and ESI sources you identify in your most recent letter." Ex. 6. Defendants failed to honor that agreement before August 26 and continue to refuse to honor it.

### 5. Custodian/Communication Logs and Carriers Should be Disclosed

Plaintiffs requested that Defendants produce communications logs for messages collected from each custodian's phone and identify the respective service provider. These requests for basic information were also made on many of the same custodians in Plaintiffs' subpoenas to

3

them in their individual capacity. Ex. 1, at 10; Ex. 7, at 3. Defendants refused.

### B.    A Linear Review of Text Messages and Chats Should be Performed

Given the shorthand and often casual nature of text and chat messages, they are generally not readily susceptible to reliable review through the application of search terms. At least for the period of July 1, 2015 to June 30, 2017, Defendants agreed to conduct a linear review (*i.e.*, without application of search terms) of text and chat messages. Ex. 8. In the *Le* Action, Zuffa agreed to review all text messages without the use of search terms. *Le v. Zuffa*, LLC, No. 15-cv-1045, ECF Nos. 213 at 24 (D. Nev. Jan. 22, 2016); ECF No. 217-37. Defendants failed to honor their agreement in this case and refuse to conduct a linear review (Ex. 4) as they did in *Le* and as Plaintiffs did when reviewing Plaintiffs' messages for review in *Le* and in this case.

### C.    Categories of Unproduced Responsive Documents

Plaintiffs have identified numerous categories of responsive documents missing from Defendants' production and continue identify more. The following non-exhaustive list of categories are those raised which Defendants will not resolve and which illustrate the some of the production deficiencies arising from Defendants' refusals discussed in Sections 1 and 2.

#### 1.    Defendants' Production Omits Fighter Contracts - 2015 to 2017

Zuffa agreed to produce Fighter Contracts for the period July 1, 2015 to June 30, 2017 (the "Gap Period") so that Plaintiffs would have a complete production through 2024, but has not done so. These documents formed the basis for the *Le* plaintiffs' economic expert analysis. *See, e.g., Le*, 2023 WL 5085064, at *27. Plaintiffs raised the issue in writing (Ex. 1, at 7), but Zuffa failed to respond (Ex. 2) and on the meet and confer just cited its "tracker." Plaintiffs searched the productions from Zuffa's *centralized fighter files*; they do not contain a complete set of the contracts. As for Zuffa's *custodial productions*, it is inappropriate for Zuffa to refuse to make a complete production from its centralized files of its final, executed agreements (as they did for the period from July 1, 2017 through 2024) and force Plaintiffs to sift through tens of thousands of emails and attachments to locate executed versions of these agreements for which there is no reasonable assurance Plaintiffs could assemble a complete set even if they have been produced.

### 2. Defendants' Production Omits Debt Issuance Documents

Defendants agreed to produce debt issuance documents but have failed to do so for nearly all the debt issuances. Ex. 1 at 8. Plaintiffs identified the specific deficiencies, Ex. 1, at 8, which Defendants ignored, Ex. 2, and referred to their "tracker" on the meet and confer.

### 3. Defendants' Production Omits FightMetric Data

Defendants have not produced the FightMetric data, ECF No. 217; Ex. 1, at 8, data the *Le* plaintiffs' economic expert used for control variables in his regression. *Le*, 2023 WL 5085064, at *31. Defendants claim that they had objected to that Request and Plaintiffs had not met and conferred. ECF No. 224 at 19. However, Zuffa had not objected to producing FightMetric data (Zuffa only objected to producing information *beyond* FightMetric data). Ex. 1, at 8. Defendants' September 18 letter ignored Plaintiffs' request, *id.*; on the meet and confer Defendants claimed they thought Plaintiffs had "abandoned" the request (not so) and refused to produce the data.

### 4. Zuffa's Production Omits Documents Related to Broadcast Deals

Plaintiffs raised in their September 12 letter that they have been unable to locate documents related to the UFC's domestic broadcast deals and related negotiation in response to Plaintiffs' RFP Nos. 57 and 87. Ex. 1. Defendants ignored this issue in their September 18 letter and were unprepared to discuss it at the parties' September 19 meet and confer.

### D. Documents Responsive to Plaintiffs' Second RFPs

Because Zuffa did not assert complete objections to any of Plaintiffs' Second RFPs; Plaintiffs asked why Zuffa had not produced responsive documents. Ex. 1 at 10-21. Zuffa responded that certain of the Second RFPs, Nos. 85-87, were duplicative of requests directed at Endeavor, and RFP No. 79 was duplicative of one of the First RFPs to Zuffa, generally directing Plaintiffs to the "tracker." However, Zuffa continues to ignore Second RFP Nos. 72-78, 80-84, and 88-89, which it does not even contend are duplicative. Zuffa was unprepared to discuss these RFPs on the meet and confer. And the "tracker" to which Defendants' September 18 letter directed Plaintiffs for three of the Second RFPs only states what *Endeavor* has located in response to the Requests, making no response as to whether Zuffa *has* responsive documents.

### E. Improper Highly Confidential Designations

Defendants mass designated most of their production as "Highly Confidential -- Attorneys' Eyes Only," violating the Protective Order. Ex. 1, at 6; ECF No. 217 at 14; ECF No. 230 at n.5 and 8-9. That designation is reserved for "documents and information of a medical or highly personal nature pertaining to athletes who are not named as plaintiffs in this action." ECF No. 123. Defendants refuse to de-designate documents (outside the *Le* reproduction) unless Plaintiffs identify each improperly designated document individually by Bates number despite Plaintiffs' position that *no* document yet produced warrants the designation.

### DEFENDANTS' POSITION

### F. Defendants' Position on General Search Sufficiency, Custodians, Search Terms, and Plaintiffs' "Worksheets"

Plaintiffs' complaints arise out of a difference in discovery processes between the *Le* litigation and the instant matter. But the *Le* litigation and the instant matters are not directly comparable. The *Le* litigation involved an entirely different time period—a time period during which, according to Plaintiffs, the alleged monopolistic behavior took place. Different requests were issued. And importantly, Plaintiffs refused to engage with search terms negotiations. Defendants had to move forward in order to meet their obligations under the scheduling order. By Plaintiffs' own admission, the instant actions are continuation actions, and as such the scope of appropriate discovery and the process by which that discovery is produced is different for good reason. Plaintiffs have been unwilling to consider that the scope of discovery in these follow-on actions is and should be narrower. *See Avila v. Ford Motor Co.*, 680 F. Supp. 3d 1125, 1128–30 (N.D. Cal. 2023); *see also Feulufai v. Pac. Princess P'ship Ltd.*, 207CV00808JCMRJJ, 2009 WL 10692824, at *3 (D. Nev. Sept. 10, 2009) ("[A] court must limit discovery if . . . the discovery sought is unreasonably cumulative or duplicative."); *Ramirez v. Zimmerman*, Lead Case No. 3:17-cv-1230-BAS-NLS; 18-cv-1062-BAS-NLS, 2019 WL 2179538, at *2–4 (S.D. Cal. May 20, 2019) (denying motion to compel because plaintiff had "ample opportunity to obtain much of the discovery he seeks" in another litigation, and "[w]here a party has had ample opportunity to obtain information, to continue the pursuit of discovery the party generally must demonstrate to the court

why the additional discovery is necessary and/or why it was not previously attainable").

Plaintiffs have also requested that Defendants (1) apply 4,000-plus proposed search terms, (2) collect documents from thirty additional custodians, and (3) provide hit reports as to Plaintiffs' overbroad terms. As with Plaintiffs' requests for unduly burdensome data compilations, discussed *infra*, Plaintiffs' requests are effectively an attempt to restart the discovery process anew. There is no basis for this; Defendants have substantially complied with their discovery obligations and responded to Plaintiffs' RFPs. Plaintiffs themselves failed to meaningfully engage with Defendants throughout this process, and particularly prior to the Parties' substantial completion deadlines. Defendants have indicated a willingness to consider and address any *specific* issues or responses to individual RFPs for which Plaintiffs might have issue. *See, e.g.*, Ex. 2, Sept. 18, 2025 Ltr. from J. Axelrad to M. Dell'Angelo at 5–6 (hereafter, "Axelrad Letter"). But Plaintiffs' wholesale demands that effectively amount to restarting discovery are baseless.

Plaintiffs apparently continue to claim that Defendants' nearly-one-million document production is deficient as to every RFP they propounded. Defendants have applied over 1,300 search terms across 33 custodians and have produced to Plaintiffs a total of nearly 963,011 documents and 4,563,045 pages. Beyond those efforts and having substantially complied, at the Parties' September 19, 2025 meet and confer, Defendants further expressed their willingness to consider additional search terms to certain custodians' files so long as Plaintiffs—using Defendants' Master List of Produced Discovery—propose search terms that are actually tailored to specific RFPs, for which Plaintiffs believe Defendants' productions remain deficient. Defendants have offered to provide hit reports for any such specific RFPs that Plaintiffs identify and have also agreed to provide Plaintiffs with hit reports of Defendants' own search terms. *See* Ex. 5, Sept. 21, 2025 Eml. from S. Koppel to Plaintiffs at 1 (hereafter, "Koppel Email").

On Plaintiffs' search terms, which were merely recycled from the search terms they proposed on March 30, 2025 (well before Defendants' most recent productions), yet include even more terms, and insist on the application of generic, single-word terms such as "video," "clip*," "Broadcast*," "ESPN," and common names like "Dana," "UFC," "Jackson," thousands of fighter names, and phone numbers—across all documents sources. Such search terms are facially

7

overbroad and would predictably result in massive numbers of irrelevant hits, including signature blocks (which all contain "UFC"), newsletters, and other non-responsive material. As Plaintiffs conceded during the Parties' September 19, 2025 meeting, Plaintiffs did even not attempt to tailor their proposed search terms based on the Defendants' Master List or the actual needs of the case. Defendants have already run a comprehensive set of search terms and produced nearly one million documents (comprising over 4.5 million pages) responsive to Plaintiffs' RFPs. Despite Plaintiffs' unreasonable request to functionally restart the discovery process, Defendants again remain open to Plaintiffs proposing targeted, RFP-specific terms informed by Defendants' Master List.[3] *See* Ex. 5, Koppel Email at 1.

### G. Plaintiffs' Requests For Unduly Burdensome Data Compilations, Including Carrier and Communication Logs

In their September 12, 2025 letter, Plaintiffs demand that Defendants complete a multi-tab spreadsheet requiring, among other things, that Defendants provide a custodian-by-custodian device inventory, app-by-app listings, collection paths, de-duplication and threading settings, conversation-grouping rules for messages, legal hold recipient lists for all "actual and proposed" custodians, per-custodian volume metrics, and mobile carrier-level logs, among other things. Plaintiffs' myriad requests vastly exceed what the Federal Rules require. Plaintiffs also impermissibly seek attorney work product and privileged information and entirely ignore the operative scheduling order. As Defendants explained to Plaintiffs at the Parties' September 19, 2025 meet and confer, Defendants complied with each of the Court's disclosure requirements, and so Plaintiffs' unilateral demands for what is effectively discovery of discovery and information that would invade the attorney-client privilege and work product protections are without basis. For example, on July 3, 2025, Defendants provided Plaintiffs with "a listing of information related to business and personal phones, phone numbers, and apps or programs being used on these devices." ECF Nos. 202, 217-32. Then again, on September 12, 2025—consistent with the Court's August 29, 2025 Minute Order—Defendants provided Plaintiffs with a Master List of Produced

---

[3] Plaintiffs' request for more custodians is plainly inconsistent with the Court's Super Custodian process and its comments that Defendants have proposed sufficient document custodians.

Discovery, which provides Plaintiffs with an RFP-by-RFP inventory of each document Defendants have produced in response to each of Plaintiffs' RFPs. ECF No. 244; *see* September 12, 2025 Master List of Produced Discovery. Plaintiffs' requests are improper under the Federal Rules. But in any event, Plaintiffs' requested information already resides in Defendants' various disclosures.

### H. Confidentiality Designations

Plaintiffs contend that Defendants have overly designated documents as "Highly Confidential," but Plaintiffs have failed to follow this Court's Protective Order (*see* ECF No. 123) requiring that Plaintiffs identify the specific documents by Beginning Bates number. *See* Ex. 2, Axelrad Letter at 6; *see also* Ex. 5, Koppel Email at 2. This Court's Protective Order forbids Plaintiffs' blanket designation challenge. *Id.* Defendants informed Plaintiffs that they will promptly consider any specific challenges that Plaintiffs serve, in compliance with the Protective Order, and will review and consider any purported over-designations. *Id.*

### I. Allegedly Missing Documents

Plaintiffs contend that Defendants' productions are missing certain categories of documents, including (1) more "granular" fighter compensation data, (2) documents responsive to Plaintiffs' Second Set of RFPs to Zuffa (including documents concerning "FightMetric" data), (3) debt issuance and broadcast deal documents, (4) text messages, and (5) documents from certain custodians.[4] As Defendants noted during the September 19 meet and confer, Defendants are investigating Plaintiffs' additional request for more fighter compensation. If this data exists in the ordinary course of business, Defendants informed Plaintiffs that they will produce this data. *See* Ex. 2, Axelrad Letter at 6; Ex. 5, Koppel Email at 2–3. Regarding Plaintiffs' Second Set of RFPs, as disclosed in Defendants' Master List of Produced Discovery, Plaintiffs appear to have abandoned these RFPs, and the RFPs are largely duplicative of other RFPs to which Defendants already responded. Plaintiffs served these RFPs on Zuffa on December 20, 2024. Zuffa timely

---

[4] Plaintiffs also contend that Defendants have not produced certain "Fighter Contracts" from 2015 to 2017. Plaintiffs themselves concede that this is untrue, given their reference to "Zuffa's custodial productions." *See infra* at 4. Plaintiffs' actual complaint appears to be that they want Defendants to make an isolated production of these documents. That complaint is unmoored from all relevant discovery rules, and Defendants do not intend to make a separate production from their "centralized files."

responded on January 21, 2025, stating its willingness to meet and confer as to the scope of each RFP. Pursuant to the Parties' April 18, 2025 Joint Stipulation Regarding Discovery Schedule (ECF No. 187), Plaintiffs' deadline to meet and confer regarding the scope of those RFPs was no later than April 30, 2025, and Plaintiffs' deadline to file any related motions to compel was May 9, 2025. Plaintiffs' September 12, 2025 letter was the first time Plaintiffs have taken Defendants' offer to meet and confer over the scope of those RFPs. Plaintiffs have also not shown how those RFPs meaningfully differ from the RFPs Defendants identified as duplicative. Lastly, Defendants informed Plaintiffs that they are willing to conduct a review of the latter three allegedly missing document categories, provided that Plaintiffs review Defendants' Master List first, identify specific allegedly deficient productions in response to specific RFPs, and propose narrowly tailored search terms as to those RFPs. *See* Ex. 5, Koppel Email at 3.

Specifically as it relates to the text messages and chats, Defendants do not agree this issue is ripe for the Court's consideration. It is true that Defendants did not agree to review text messages and chats linearly. They did, however, agree to consider a broader review of those texts and chats beyond reviewing solely those that hit on search terms. Plaintiffs requested that Defendants provide information regarding how much data was collected from custodians' phones in order to assess whether the Parties could come to an agreement regarding how to limit the scope of review. Defendants agreed to provide that information. Ex. 5, Koppel Email at 3.

### J. Defendants' Interrogatory Responses And Plaintiffs' Motion To Compel

Before the Court is Plaintiffs' August 25, 2025 Motion to Compel Defendants to Provide Responses to Plaintiffs' First Set of Interrogatories (ECF No. 234). Per the Parties' stipulation, Defendants provided signed, verified responses to each Interrogatory on September 17, 2025. Though Defendants' responses mooted Plaintiffs' Motion, Plaintiffs nevertheless declined to withdraw their Motion as to Interrogatories Nos. 5 through 9, instead attempting to convert the motion into one relating to the "sufficiency" of the responses rather than seeking responses themselves. Defendants will file their opposition on September 24, 2025.

<u>Exhibit Tracker</u>

Exhibit 1: Plaintiffs' September 12 Letter

Exhibit 2: Defendants' September 18 Letter

Exhibit 3: Decl. of Helen Moure, *Le v. Zuffa, LLC*, 15-cv-1045 (D. Nev. Feb. 19, 2016) (ECF No. 220).

Exhibit 4: Defendants' September 21 Email

Exhibit 5: Plaintiffs' July 19 Letter

Exhibit 6: Defendants' July 23 Email

Exhibit 7: Plaintiffs' September 22 Letter

Exhibit 8: Defendants' January 23 Letter

Dated:  September 22, 2025

Respectfully Submitted,

| By: *s/ Michael Dell'Angelo* | By: *s/ Christopher S. Yates* |
|---|---|
| Eric L. Cramer (*Pro hac vice*) | CHRISTOPHER S. YATES (*Pro hac vice*) |
| Michael Dell'Angelo (*Pro hac vice*) | chris.yates@lw.com |
| Patrick F. Madden (*Pro hac vice*) | AARON T. CHIU (*Pro hac vice*) |
| BERGER MONTAGUE PC | aaron.chiu@lw.com |
| 1818 Market St., Suite 3600 | LATHAM & WATKINS LLP |
| Philadelphia, PA 19103 | 505 Montgomery Street, Suite 2000 |
| Telephone: (215) 875-3000 | San Francisco, CA 94111 |
| ecramer@bergermontague.com | Tel: (415) 395-8095 |
| mdellangelo@bergermontague.com | |
| pmadden@bergermontague.com | SEAN M. BERKOWITZ (*Pro hac vice*) |
| | sean.berkowitz@lw.com |
| Joshua P. Davis (*Pro Hac Vice*) | LATHAM & WATKINS LLP |
| Kyla Gibboney (*Pro Hac Vice*) | 330 North Wabash Ave, Suite 2800 |
| Robert C. Maysey (*Pro Hac Vice*) | Chicago, IL 60611 |
| BERGER MONTAGUE PC | |
| 505 Montgomery Street, Suite 625 | LAURA WASHINGTON (*Pro hac vice*) |
| San Francisco, CA 94111 | laura.washington@lw.com |
| Phone: (415) 215-0962 | LATHAM & WATKINS LLP |
| jdavis@bergermontague.com | 10250 Constellation Blvd, Suite 1100 |
| kgibboney@bergermontague.com | Los Angeles, CA 90067 |
| rmaysey@bergermontague.com | |

*Counsel for Plaintiffs and the Proposed Classes*

| | | |
|---|---|---|
| 1 | Benjamin D. Brown (*Pro Hac Vice*) | DAVID L. JOHNSON (*Pro hac vice*) |
| 2 | Richard A. Koffman (*Pro Hac Vice*)<br>Daniel H. Silverman (*Pro Hac Vice*) | david.johnson@lw.com<br>LATHAM & WATKINS LLP |
| 3 | COHEN MILSTEIN SELLERS<br>  & TOLL, PLLC | 555 Eleventh Street NW, Suite 1000<br>Washington, D.C. 20004 |
| 4 | 1100 New York Ave., N.W., Suite 500<br>Washington, DC 20005 | |
| 5 | Phone: (202) 408-4600<br>bbrown@cohenmilstein.com | WILLIAM A. ISAACSON (*Pro hac vice*)<br>wisaacson@DIRLLP.com |
| 6 | rkoffman@cohenmilstein.com<br>dsilverman@cohenmilstein.com | JESSICA PHILLIPS (*Pro hac vice*)<br>jphillips@DIRLLP.com |
| 7 | Joseph R. Saveri (*Pro hac vice*) | DUNN ISAACSON RHEE LLP<br>401 Ninth Street NW |
| 8 | Christopher Young (*Pro hac vice*)<br>Kevin E. Rayhill (P*ro hac vice*) | Washington, DC 20004 |
| 9 | JOSEPH SAVERI LAW FIRM, INC. | DONALD J. CAMPBELL (No. 1216) |
| 10 | 601 California St., Suite 1000<br>San Francisco, CA 94108 | djc@campbellandwilliams.com<br>J. COLBY WILLIAMS (No. 5549) |
| 11 | Telephone: +1 (415) 500-6800<br>Email: jsaveri@saverilawfirm.com | jcw@campbellandwilliams.com |
| 12 | Email: krayhill@saverilawfirm.com<br>Email: cyoung@saverilawfirm.com | CAMPBELL & WILLIAMS<br>700 South 7th Street |
| 13 | W. Joseph Bruckner (*Pro hac vice*) | Las Vegas, Nevada 89101<br>Tel: (702) 382-5222 |
| 14 | Brian D. Clark (*Pro hac vice*)<br>LOCKRIDGE GRINDAL NAUEN PLLP | |
| 15 | 100 Washington Ave S, Suite 2200<br>Minneapolis, MN 55401 | *Attorneys for Defendant Zuffa, LLC, TKO*<br>*Operating Company, LLC, and Endeavor* |
| 16 | Phone: (612) 596-4001/Fax: (612) 339-0981<br>wjbruckner@locklaw.com | *Group Holdings, Inc.* |
| 17 | bdclark@locklaw.com | |
| 18 | Kyle J. Pozan (*Pro hac vice*)<br>LOCKRIDGE GRINDAL NAUEN PLLP | |
| 19 | 1165 N. Clark Street, Ste. 700<br>Chicago, IL 60610 | |
| 20 | Phone: (612) 339-6900<br>Email: kjpozan@locklaw.com | |
| 21 | | |
| 22 | *Additional Counsel for Plaintiffs and the Proposed Classes* | |
| 23 | Michael J. Gayan | |
| 24 | CLAGGETT & SYKES<br>4101 Meadows Lane, Suite 100 | |
| 25 | Las Vegas, NV 89107<br>Tel: (702) 333-7777 | |
| 26 | mike@claggettlaw.com | |
| 27 | *Liaison Counsel for Plaintiffs and the Proposed Classes* | |
| 28 | | |

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing JOINT STATUS REPORT RE: DISCOVERY DEFICIENCIES SEPTEMBER 2025 was served on September 23, 2025 via the Court's CM/ECF electronic filing system addressed to all Parties on the e-service list.

*/s/ Michael Dell'Angelo*
Michael Dell'Angelo