# EXHIBIT 1



**MICHAEL DELL'ANGELO**
*EXECUTIVE SHAREHOLDER & GENERAL COUNSEL*
**d** 215.875.3080 **m** 610.608.8766   mdellangelo@bm.net

September 12, 2025

**VIA Email**
Joseph Axelrad
LATHAM & WATKINS LLP
joseph.axelrad@lw.com

Re: *Kajan Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-01189-RFB-BNW (D. Nev.)

Counsel:

Plaintiffs write regarding various discovery issues and the deficiencies in the productions of Zuffa, LLC ("Zuffa") and TKO Operating Company, LLC ("TKO," collectively, "Defendants") pursuant to the Court's orders concerning discovery proceedings at ECF Nos. 244 and 252.

## I.      Master List of Document Data

Plaintiffs disagree that Defendants' purported "Master List" served today comports with what the Court ordered at the August 26, 2025 hearing. Regardless of what the Court ordered and whether Defendants provided it, Plaintiffs require additional information concerning what Defendants have identified, preserved, and collected for production to further a productive meet and confer over Defendants' response obligations for Plaintiffs' Requests for Production of Documents. To that end, Plaintiffs attach a spreadsheet form for providing the information that Plaintiffs seek. Please complete the spreadsheet for each app, device, and actual and proposed custodian (*i.e.*, including Defendants' proposed custodians and Plaintiffs' proposed custodians from Plaintiffs' July 19 letter). For the litigation hold recipients worksheet, please complete it for all individuals for whom any Defendant has implemented a litigation hold.

Plaintiffs have long requested the information in the attached spreadsheet and request it again here. The requested information is similar to the information Zuffa provided in the *Le* litigation. And the Court ordered Defendants to produce much of this information by July 3, yet Defendants' July 3 disclosure was demonstrably incomplete. This information is necessary foundation for productive negotiations of custodians and search terms. Please provide it or explain in your response what information Defendants refuse to provide and why.

## II.      Search Term Hit Reports

As discussed in Plaintiffs' most recent Motion for Sanctions, ECF No. 217, Plaintiffs do not believe Defendants have applied adequate search terms to any



September 12, 2025
Page 2 of 21

collection of documents from their various custodians in this litigation. Plaintiffs believe that search terms are appropriate for identifying most categories of requested documents, and thus, seek to negotiate appropriate search terms.

To that end, Plaintiffs have long requested that Defendants provide hit reports for both Plaintiffs' proposed search terms and Defendants' proposed search terms. For Plaintiffs to make modifications to Plaintiffs' proposed search terms, the first step is to analyze which terms are driving any purported issues and then for the parties to work together to mitigate such issues.

Plaintiffs again request that Defendants provide hit reports for Plaintiffs' search term proposals. Plaintiffs attach to this letter Plaintiffs' current search term proposals for each Defendant. **Please note that Plaintiffs have added terms and attempted to address certain other issues Defendants have claimed concerning prior iterations of Plaintiffs' proposal.**

The hit reports must disclose (1) the total number of documents against which the search terms are run (the "Corpus"), (2) the number of documents hit upon by each proposed search term, (3) the number of documents hit upon by each proposed search term plus all attachments to any such documents, (4) the number of "unique" document hits (*i.e.*, the number of documents each search term hits upon that no other search term in the proposal hits upon), and (5) the number of "unique" hits plus all attachments to such documents.

Plaintiffs' proposal is distinct for each Defendant's custodians, and thus, the hit reports Plaintiffs request should likewise reflect these distinct proposals. However, Defendants should also include a hit count that deduplicates the document counts (*i.e.*, the total number of documents hit upon and total number of documents hit upon including documents in the same "family") across all Defendants.

Plaintiffs assume that, when reviewing materials hitting on Defendants' search terms for responsiveness in this case, Defendants did not identify materials as non-responsive to the extent they were responsive only to Plaintiffs' Second Requests for Production as to Zuffa (or any requests for production that any Defendant claims is subject to an open meet and confer). If that assumption is incorrect, please say so. Otherwise, please remove all documents already reviewed for responsiveness (because they hit on Defendants' search terms) from the Corpus before applying Plaintiffs' search term proposals.



To the extent Defendants have identified any potential solutions to the purported overbreadth of Plaintiffs' search term proposals, Plaintiffs are amenable to discussing them. As a few examples:

- **Document Hit Types.** If Defendants have identified particular document types hit on by one or more of Plaintiffs' proposed search terms that are necessarily non-responsive and irrelevant, Plaintiffs will work with Defendants to identify and exclude those documents from the Corpus.

- **Search Terms That May Hit on Non-Responsive or Irrelevant Documents.** If Defendants have identified a term that is hitting on non-responsive and irrelevant documents because the term is used in multiple ways including in non-responsive and irrelevant contexts, Plaintiffs will work with Defendants to try to mitigate the issue and either remove the non-responsive/irrelevant documents from the Corpus or narrow the search terms to carve out those non-responsive/irrelevant materials from the hit results.

- **Search Terms That May Hit on an Unusually High Number of Documents.** If Defendants have not identified any particular search term or set of search terms that appear to return a significant volume and/or proportion of privileged materials, to the extent such materials are responsive, they must be identified and logged anyway, but Plaintiffs propose that the parties work together to remove those materials from the Corpus and assign them to a separate review track.

In Plaintiffs' counsel's experience with Zuffa in *Le*, these search term hit reports can be turned around within a few days. Plaintiffs commit to turning around responses to the hit reports swiftly.

Additionally, as counsel may recall, in the *Le* litigation, Magistrate Judge Leen oversaw a process by which Zuffa produced to Plaintiffs subject to an "attorneys' eyes only" designation a random selection of documents hit on by particular terms that Zuffa alleged were creating an undue burden (after Zuffa's privilege review). Plaintiffs in *Le* were not permitted to use these search term negotiation productions in litigation or for any purpose other than as a basis to change Plaintiffs' search term proposal and/or to support the appropriateness of Plaintiffs' search term proposal.

**Application of the *Le* Document Search Process Overseen by M.J. Leen.** Plaintiffs propose the same process here. Plaintiffs propose that within two business days of Defendants providing hit reports, each side shall identify five of Plaintiffs' proposed search terms per hit report, and Defendants shall collect and produce a



September 12, 2025
Page 4 of 21

random sample of 100 document hits for those search terms. This production shall be provided on an attorneys' eyes-only basis, shall be used only for purposes of this search term negotiation process, shall be segregated and maintained separately from Defendants' and Plaintiffs' productions in this litigation, shall bear a distinct Bates prefix, and shall be destroyed within one week of the resolution of the related search term issues.

Based on such production (and other efforts of the parties to identify ways to cull the Corpus), Plaintiffs will propose changes to Plaintiffs' search terms and/or ways to eliminate irrelevant and non-responsive documents from the Corpus within four business days of the productions. This proposal will be an iterative process, with a new hit report to generate and issue to Plaintiffs each time. To the extent the parties cannot agree on a final search term set and believe that further iterative rounds of this process will not materially change the parties' positions, the parties may then declare impasse and seek an order from the Court imposing a particular search term proposal.

### III.    Communications Not Susceptible to Search Terms

Plaintiffs have specifically requested certain types of communications that are not susceptible to culling through the use of search terms—in particular, text messages and similar types of direct and instant messages and chats (collectively, "messages"). And indeed, at least for the period of July 1, 2015 to June 30, 2017, Defendants agreed to conduct a linear review (*i.e.*, without application of search terms) to messages. *See* Jan. 23, 2025 Letter from Jessica Phillips to Michael Dell'Angelo (agreeing to Plaintiffs' Jan. 13, 2025 proposal).

Please confirm and/or answer with the following information:

a. Whether Defendants complied with their January 23, 2025 agreement to conduct a linear review of messages for the "interim period" of July 1, 2015 through June 30, 2017. If so, please explain why there appears to be no messages from this interim period in Defendants' productions.

b. Whether Defendants have applied search terms to their custodians' messages for that "interim period" or any other time period prior to reviewing those messages for responsiveness. If Defendants have not applied search terms to messages prior to a responsiveness review, please advise what, if any, culling processes Defendants utilized for messages prior to reviewing the messages for production.



September 12, 2025
Page 5 of 21

    c.   Please state how Defendants determined the bounds of particular message "conversations" (*i.e.*, the grouping of messages Defendants produced as single documents).

    d.   Please state whether Defendants' production of messages to date has been limited to messages from enterprise devices, or whether Defendants have also produced messages from personal devices of individual custodians.

    e.   Please further state whether Defendants will agree to a linear review of all messages across all communications apps in use by agreed-upon custodians in this litigation.

As previously stated, Plaintiffs remain deeply concerned by the paucity of text messages produced in this litigation, particularly as compared to the volume of text messages produced in the *Le* litigation. If Defendants have a theory for the vast discrepancy between the productions, other than the culling methodology and/or spoliation, please share that theory with Plaintiffs.

Plaintiffs believe that all messages must be reviewed for responsiveness linearly, without application of search terms or similar culling processes. To the extent Defendants may identify particular phone numbers or accounts that are necessarily non-responsive and/or private (*e.g.*, a custodian's spouse or doctor), such messages may be excluded from the review. But all remaining messages should be reviewed for responsiveness and in the context of the full message stream between the custodian and any participants in a message log.

Moreover, because text conversations can start and stop at irregular time intervals and can have intervening tangential or loosely related discussions that easily could be misinterpreted as unrelated and non-responsive, Plaintiffs do not believe that it is appropriate for messages between the same sender and recipient or the same group of individuals ("group chats" or "group texts") to be segmented into discrete conversations; that is not what Zuffa did in *Le*, and it is not appropriate here.

## IV.   <u>Plaintiffs' Proposed Custodians</u>

It has been nearly seven weeks since Plaintiffs provided Defendants with a list of proposed additional custodians. Defendants have never formally responded to that letter, though Defendants have suggested their agreement to including such individuals as custodians. *See, e.g.*, July 23, 2025 email from Benjamin Cabranes ("We are, and will continue, making rolling productions in the coming weeks, including from custodians and ESI sources you identify in your most recent letter"). To the extent Defendants



September 12, 2025
Page 6 of 21

reject any of Plaintiffs' proposed custodians or request more information, please so state (along with the basis for Defendants' position) for the parties to meet and confer on such refusal.

In addition, please explain the absence of documents produced in this case (excluding any reproduction from the *Le* case and Zuffa and TKO's September 11, 2025 Vol. 023 production, which Plaintiffs are still in the process of preliminarily reviewing) from the custodial files of Defendants' custodian Akosa Akpom and the relative paucity of documents from the custodial files of the following individuals (based on the "All Custodians" field):

- Deborah Cook (245 documents)
- Ari Emanuel (1,012 documents)
- Mick Maynard (2,856 documents)
- Dana White (666 documents)
- Chad Hurley (189 documents)
- Sean Shelby (3,154 documents)

As to Mr. White, in the *Le* re-production, he was the custodian of over 33,000 documents, nearly 50 times what Defendants have produced here for a similar duration. Mr. Shelby was the custodian of over 29,000 documents in the *Le* re-production, more than nine times what Defendants have produced here. Although Mr. Maynard was not a custodian in *Le*, because he did not commence to work at Zuffa until after the *Le* discovery period, Zuffa produced nearly 30,000 documents from the custodial file of Mr. Maynard's predecessor, Joe Silva, which is more than ten times the size of Zuffa's production for Mr. Maynard here. Defendants' productions for Cook, Hurley, and Emanuel are also quite small relative to their roles at their respective Defendants, and thus, Plaintiffs request an explanation for the sizes of their productions. To be clear, all of Defendants' custodian's productions, save (potentially) Tracy Long, appear to be inadequate and far too small. Herein, Plaintiffs have merely identified the most egregious and reserve all rights to address the rest.

V.    **Improper Designations as Highly Confidential**

Please confirm that you will remove all "Highly Confidential – Attorneys' Eyes Only" designations from Defendants' productions. As Plaintiffs explained further in Plaintiffs' Motion for Sanctions Reply Brief (ECF No. 230 at 8-9), Defendants' contentions concerning the appropriateness of the designations are at odds with the express terms of the Protective Order, the intent of the provisions, and the past interpretations of the Protective Order. There is no valid basis to maintain these designations and, thus, Plaintiffs expect Defendants' prompt agreement to revise them. If the parties continue to be at impasse, please so state so that Plaintiffs may re-raise the issue with the Court.

["



September 12, 2025
Page 8 of 21

**Fight Metric Data.** As noted *infra*, Zuffa did not produce FightMetric data and the similar data Zuffa maintains in its "record book." (While Zuffa claims that it objected to producing that data, as discussed below, Zuffa did not object to producing the FIghtMetric and "record book" data and has no reasonable basis for having withheld it).

**Debt Issuance and Related Materials.** Plaintiffs' Motion for Sanctions also identified that Zuffa had not produced materials relating to debt issuances. Plaintiffs have continued to review Defendants' productions and have still not located these materials. Indeed, TKO's and Endeavor's SEC filings have identified nearly a dozen amendments and refinancings to the August 2016 loan taken out through Goldman Sachs. While Zuffa and Endeavor have produced the Confidential Information Memorandum and a few other materials associated with that August 2016 loan, Plaintiffs have identified no materials whatsoever relating to the refinancings and amendments. However, these materials clearly exist, or existed at some point. For example, Endeavor produced a presentation relating to its 2019 IPO efforts, ENDEAVOR_00056046, in which one of the slides (at -081) states that it pulled data from the UFC's "quarterly lender presentations" from May, August, and December 2018 as well as April 2019. It is, of course, unlikely that the UFC's quarterly lender presentations are limited to those four documents, but in any event, none of those four nor any other quarterly lender presentations have been produced.

**Promotional and Ancillary Rights Agreements.** In addition to the foregoing, Plaintiffs long ago requested that Zuffa update its production of promotional and ancillary rights agreements to include all contracts executed between July 1, 2015 and June 30, 2017. Zuffa agreed to produce these contracts in its January 23, 2025 letter, but Plaintiffs have not located this production. Plaintiffs believe these materials are centrally maintained and easily produced and thus ask that Zuffa produce them immediately.

**Broadcast Deals.** Plaintiffs have been unable to locate in Defendants' productions the UFC's domestic broadcast deals, including, but not limited to, the UFC's deal with ESPN (which is responsive to Request for Production Nos. 57 and 87, as discussed below), nor the documents related to the negotiation of those deals and Defendants' business strategies concerning those deals.

VIII.    **Zuffa's and TKO's Interrogatory Responses**

Plaintiffs remain troubled that Zuffa agreed to respond to Interrogatory Nos. 5 & 6—Interrogatories that are directly relevant to matters in this letter, including, among other things, custodians—by September 4 but **still as of September 12 have not provided those responses.** If Defendants desire to re-establish a cooperative



discovery process in this litigation, Defendants must commence to act in a trustworthy manner. Demanding that Plaintiffs agree to a stipulation extending Defendants' response timeline for the Motion to Compel Interrogatory Responses (ECF No. 234) under the promise of interrogatory responses that never came is not consistent with such trustworthiness.

## IX. Miscellaneous Issues Relating to Zuffa's Existing Productions and Discovery Correspondence

### A. The "All Custodian" Metadata Field

The Court suggested at the August 26 hearing that the mere fact that a document does not list a particular individual as the custodian of the document does not mean that the individual is not "on" the document.

As Plaintiffs understand the "All Custodians" metadata field in Defendants' production, that field reflects whether the document appeared across multiple custodians but, through de-duplication, only one version of the document is produced. Please state whether that is consistent with Defendants' understanding.

If that is not Defendants' understanding of the "All Custodians" field, please define that field. And in such case, please provide a list of all documents for which the All Custodian field does not identify all the custodians from whom Defendants collected a duplicate version of such document and identify which custodians are missing from the All Custodian field for each such document. Please also explain why the All Custodian field would not include all the custodians who had a copy of each such document in Defendants' productions.

### B. Communications Between Custodians

Please explain why various communications between custodians are not produced on behalf of both custodians. *See, e.g.*, UFC-03642079 (June 23, 2019 text exchange between Hunter Campbell, Joe Silva, Dana White, Mick Maynard, and Sean Shelby but produced only from Hunter Campbell's custodial files); UFC-03706792 (September 28, 2019 text exchange between Hunter Campbell, Sean Shelby, Dana White, and Mick Maynard but produced only from Hunter Campbell's custodial files); UFC-03666887 (September 16, 2021 text exchange between Lawrence Epstein and Dana White but only produced from Lawrence Epstein's custodial files); UFC-03877839 (April 12, 2019 text exchange between Dana White, Joe Silva, Hunter Campbell, Mick Maynard, and Sean Shelby, but produced only from Mr. Shelby's files).



Is the absence of these text exchanges (and others) from all participating custodians' files due to de-duplication? How do Defendants explain the absence of these materials from these custodians' files otherwise?

### C. Communications Logs

**Production of Communication Logs.** To the extent Defendants' production of messages is complete, please state whether Defendants will agree to collect and produce communications logs detailing the sender and recipient telephone numbers and the date of all messages collected for each custodian's phones so that these materials may be compared to the production of messages.

**Identification of Carriers.** Plaintiffs' subpoenas to the Individual Subpoena Recipients requested documents sufficient to identify each Recipient's cellphone carriers. *See* Request No. 2 in each Individual Subpoena Recipient's Rule 45 Subpoena. Please identify the carriers.

### X.    <u>Plaintiffs' Second Set of RFPs to Zuffa</u>

Plaintiffs understand from Zuffa's response to Plaintiffs' Motion for Sanctions that Zuffa has not endeavored to make productions responsive to Plaintiffs' Second Set of Requests for Production. Plaintiffs disagree that Zuffa's failure to produce is justified. Nevertheless, below, Plaintiffs address Zuffa's objections herein and expect Zuffa to now comply with its discovery obligations.

#### A. Zuffa Has Failed to Comply with Its Obligations Regarding the Second Set of RFPs to which Zuffa Did Not Object.

Zuffa has improperly failed to produce documents in response to the Second RFPs. Zuffa has not objected to the entirety of any of the Second RFPs with sufficient specificity to warrant withholding all responsive documents, nor has Zuffa even stated (as the Federal Rules require) that it is withholding documents. Therefore, Zuffa has no basis to withhold documents responsive to the Second RFPs not within the scope of a specific objection to which the parties have not met and conferred.

As you know, Fed. R. Civ. P. 34(b)(2)(C) requires that a party withholding documents based on an objection state whether documents are being withheld on the basis of that objection. A statement that a party is willing to meet and confer is not a statement that the party is withholding documents in compliance with Rule 34(b)(2)(C). Further, Rule 34(b)(2)(C) states that, where an objection is made to part of a request, the objecting party must "permit inspection of the rest" (*i.e.*, produce the documents responsive to the portion of the request not subject to the objection). Zuffa has not done



September 12, 2025
Page 11 of 21

so. Instead, Zuffa has taken the position that by objecting to part of a request and then offering to meet and confer, Zuffa has satisfied its obligation to produce anything until such meet and confer has occurred. That position is contrary to the Federal Rules.

For example, in RFP No. 77, Plaintiffs requested a "complete set of the data the UFC maintains comprising Fighter and bout statistics, including the data previously maintained by FightMetric and the 'record book' as referenced at http://statleaders.ufc.com." Zuffa objects as vague and ambiguous to the broader portion of the RFP (relating to "complete set of data" and the undefined term "Fighter"), but Zuffa never objects to the specific portions of data that Plaintiffs requested, namely "the data previously maintained by FightMetric and the 'record book' as referenced at http://statleaders.ufc.com." At most, Zuffa may suggest that this FightMetric data and the "record book" data is "readily accessible by Plaintiffs" (though Zuffa does not state with specificity in its objection that the responsive publicly available data to which Zuffa objects to providing is FightMetric data and/or record book data). But, as discussed below, such objection is frivolous and wrong anyway.

In short, Zuffa had and continues to have an obligation to produce responsive materials in its possession, custody, or control to which Zuffa has not objected. Zuffa also has an obligation to state whether it is withholding any documents on the basis of particular objections (which it has not done). Together, these failures violate the Federal Rules. Accordingly, Zuffa should produce the materials responsive to Plaintiffs' Second RFPs that are not specifically subject to any objection promptly.

### B. Zuffa's Objections to Plaintiffs' Second RFPs Lack Merit.

Plaintiffs address Zuffa's objections to each of Plaintiffs' Second RFPs below. As noted above, where Zuffa has not objected to a portion of a request, Plaintiffs expect that Zuffa will immediately commence further productions of responsive materials. In some circumstances, it appears that the parties are at an impasse, but where appropriate, Plaintiffs agree to meet and confer. Please confirm whether the parties are at impasse as discussed herein.

**Request Nos. 72 & 73**. Plaintiffs request all documents and communications relating to the changes in ownership of the MMA blog at http://www.bloodyelbow.com ("BloodyElbow") in or around January 2023 and in or around 2024, and/or documents relating to efforts to influence content available on BloodyElbow after such change(s) in ownership.

Zuffa objected based on relevance and proportionality, as well as taking issue with certain phrases Zuffa views as vague and ambiguous.



Any effort by Zuffa to take control of a popular MMA blog that was, at times, critical of Zuffa's business practices, and then to scrub articles critical of Zuffa's business practices from the blog at Zuffa's behest would be evidence of monopoly and/or monopsony power. Any claimed undue burden could only exist if these materials were sufficiently voluminous. But Zuffa has not stated that no responsive materials exist nor that it is withholding documents based on such an objection. To the extent Zuffa can substantiate its claim of undue burden in collecting and producing these documents, Plaintiffs are willing to meet and confer on ways to mitigate any such burden. Otherwise, Plaintiffs expect a production of responsive documents. To the extent Zuffa can attest, under penalty of perjury, that it had no role in the change in ownership of BloodyElbow nor in the removal of content relating to the UFC's fighter compensation practices, Plaintiffs will accept such attestation in lieu of production.

**Request No. 74.** Plaintiffs seek materials relating to requests and/or proposals by MMA Fighters and other MMA Promotions for UFC Fighters to compete in bouts against non-UFC Fighters.

Zuffa asserts numerous objections to the Request, including that it seeks irrelevant information. The irrelevance objection appears to be based on (1) the time period applicable to the Request, (2) the "scope" of the Request, and (3) that the Request purportedly seeks "documents and information relating to fighters who would not be members of the" proposed class. None of these statements has merit.

Zuffa's consideration of and response to such requests and/or proposals by UFC Fighters strikes at core issues in the case, including, in particular, the nature of the exclusivity imposed by the UFC on fighters. The time period has already been adjudicated by the Court when it deemed the *Le* productions discoverable; all of the materials sought by this Request were created after the *Le* discovery. And in any event, there is no basis for stating that materials beginning just two years prior to the seven-year statutory damages period are not discoverable in a case concerning an alleged continuing scheme transpiring over twenty years. As to the "scope" objection, Zuffa has not stated the objection with specificity sufficient to allow Plaintiffs to evaluate the objection. But the Request is appropriately tailored to the claims in this case. And Zuffa's statement that the Request seeks materials relating to fighters who are not in the proposed class misses the point for two reasons. First, the Request refers to UFC Fighters (fighters in the proposed class) who wanted to fight MMA fighters under contract with non-UFC promoters (fighters who are not necessarily in the proposed class). These materials necessarily concern fighters in the proposed class even if they also concern fighters not in the proposed class. There is no basis to withhold materials concerning fighters in the proposed class merely because the materials also pertain to



fighters not in the proposed class. Second, the Request seeks materials relating to fighters who are likely in the relevant market, regardless of whether they are in the proposed class. Thus, materials responsive to this Request relating to those MMA fighters who are not in the proposed class are nonetheless relevant because the fighters are in the relevant market.

Zuffa further objects to various terms as vague, ambiguous, and/or "confusing" or "incomplete." One such objection, to the term "MMA Promotion," is specious. That term has been frequently used throughout this litigation and the *Le* litigation and should be construed as synonymous with the term "MMA Promoter," as the term has been consistently used throughout these cases. Zuffa's objections to the phrases "Your consideration," "otherwise considered," and "potential benefits (or lack thereof)," standing alone and without further information, lack sufficient specificity for Plaintiffs to evaluate them. The Request is clear as written. If Zuffa can articulate how these phrases are vague or ambiguous in this context, Plaintiffs will assist in resolving the issue. But these terms have plain meanings that should be applied when reading the Request.

**Request No. 75**. Plaintiffs seek documents relating to the departure from the UFC to the Professional Fighters League by a particular UFC Fighter, Francis Ngannou, as well as the UFC's response and efforts to prevent other UFC Fighters from leaving in similar fashion.

Zuffa complains that the request is overbroad because it seeks documents from a nine-year period and materials irrelevant to any party's claims or defenses. Both contentions are meritless. First, Mr. Ngannou last fought for the UFC in January 2022. It would be extremely unlikely that the UFC has nine-year old documents relating to such departure. Second, Mr. Ngannou's departure is relevant to any defense by Zuffa that UFC Fighters can leave the UFC. Third, Zuffa's efforts to prevent additional UFC Fighters from also leaving the UFC is relevant to Plaintiffs' claims that the UFC's contracts impair athlete mobility.

Zuffa's objection that the Request seeks information about fighters not in the class is nonsensical, as Mr. Ngannou is the only named fighter in the Request, and he is within the class definition. To the extent the request concerns UFC Fighters other than Mr. Ngannou, the time period implicated by the Request also brings those fighters within the scope of the class definition.

Zuffa also objects that the terms "otherwise concerning" and "unsuccessful negotiations" are vague and ambiguous. Plaintiffs seek materials relating to, among other things, the negotiations between the UFC and Mr. Ngannou to re-sign with the



September 12, 2025
Page 14 of 21

UFC for bouts to occur after his January 2022 bout. Because the UFC and Mr. Ngannou did not consummate a deal, those negotiations seeking to reach such a deal were necessarily unsuccessful. It is unclear what confuses Zuffa about that term. But if Plaintiffs can provide further clarification, please let us know.

**Request No. 76**. Plaintiffs seek documents and communications relating to UFC Fighter rankings. As you know, one of the *Le* plaintiffs' experts used rankings as an input in his econometric analyses, and information on how the UFC uses rankings (both internally and externally) is relevant to how rankings may be used in expert analyses. Further, rankings and how the UFC uses them to make business decisions, which rankings the UFC uses, how rankings affect fighters' careers, etc. are independently relevant to Plaintiffs' claims.

Zuffa objects that the request is overbroad because it seeks materials from a nine-year period, but that objection is conclusory and ignores that the nine-year period is indeed relevant to Plaintiffs' claims. Please let us know if we are at an impasse on the time period.

Zuffa's objection that the requested documents are not relevant to any party's claims or defenses is incorrect for the reasons asserted above. But if Zuffa will waive its experts' ability to utilize any rankings data or make any arguments relating to fighter rankings, please let us know. It will not affect whether Plaintiffs may rely on such materials nor the relevance of such materials, but if Zuffa will not so waive, then Zuffa lacks any basis to resist the discovery on relevance grounds.

Zuffa's response states that it "disputes the distinction between 'internal' and 'external' rankings." But such dispute is neither relevant to Zuffa's response obligation nor does it make any sense. The term "internal rankings" refers to rankings that Zuffa compiles based on factors Zuffa selects. The term "external rankings" refers to rankings compiled by non-Zuffa entities, such as the press and/or websites like FightMatrix.com. There is an obvious difference between the two types of rankings, and disputing such distinction is nonsensical.

Zuffa objects to the terms "any business decision," "uses to make or considers in making," and "uses or considers" as vague and ambiguous. But depriving these terms of their context appears to be the problem. Surely Zuffa understands what it means to use or consider rankings in making business decisions (which, Plaintiffs clarify, includes matchmaking, determining UFC Fighter compensation, and determining whether to contract with or extend a contract with an MMA Fighter). Those terms all have plain meanings that should not be confusing. If there is some particular clarification Zuffa requires, let us know and we will provide it.



**Request No. 77**. As explained above, RFP No. 77 seeks the data that the UFC maintains comprising fighter and bout statistics. An independent third party known as FightMetric previously maintained such a dataset. The expert team for plaintiffs in *Le* scraped the FightMetric website for data in that litigation, but since then, FightMetric has gone offline, and the website http://FightMetric.com redirects to a Zuffa-controlled website http://ufcstats.com. Plaintiffs request the data previously recorded by FightMetric for the requested time period and any similar data that Zuffa maintained after FightMetric ceased to exist. In addition, Plaintiffs have identified a "record book" that Zuffa maintains and references on another Zuffa-controlled website, http://statleaders.ufc.com. Plaintiffs request the data Zuffa maintains for this record book.

Zuffa has not asserted any valid objections to the request for data previously maintained by FightMetric and now maintained by Zuffa. Zuffa understands, as evidenced by its objection over producing nine-years' worth of data, that this request seeks this data since 2015. But Zuffa's objection to producing the data because it covers nine years is not well taken. Pulling this data for nine years imposes minimal additional burden as compared with pulling it for the statutory damages period. Moreover, as you know, the requested data from periods before the statutory damages period is relevant to Plaintiffs' claims and Zuffa's defenses. Indeed, both the *Le* plaintiffs and Zuffa used pre-statutory period datasets comparable to those requested here in their expert analyses in the *Le* litigation.

Zuffa's objection that this request seeks "public information" that is "readily accessible by Plaintiffs" is also meritless. First, Zuffa is not correct that the data is "readily accessible" by Plaintiffs. For Plaintiffs to obtain any of the available data from Zuffa's website, Plaintiffs must manually harvest dozens of datapoints per webpage across approximately 7,250 individual web pages. (There are 29 pages, with approximately 25 events per page, and at least 10 bouts per event at http://ufcstats.com/statistics/events/completed). Even if Plaintiffs were able to devise a "web scraper" to automatically harvest this data (this option presupposes that Defendants do not employ any anti-web scraping methods which are commonly used on modern websites), the raw scraped data would still need to be reprocessed. These processes introduce the potential for data entry errors, to say nothing for the time and expense to re-create the underlying dataset that Zuffa, on the other hand, maintains without any need for such scraping.

Second, it is not at all clear that the data available on the public-facing website comprises all the data Zuffa maintains on bout statistics. It would impose an even greater burden for Plaintiffs to pull data from the public-facing website and then combine



September 12, 2025
Page 16 of 21

it with any other data Zuffa maintains on the backend (and which Zuffa is obligated to produce in response to this Request). Because Zuffa has substantially greater and more efficient access to this data, the Federal Rules require Zuffa to make the production even though some of the data may be otherwise available to Plaintiffs.

Furthermore, even if the parties' relative access to the data were equal—and it is not—Zuffa's objection would be meritless. *Johnson v. Garofalo*, 2023 WL 11830746, at *4 n.1 (D. Nev. Mar. 17, 2023) ("To the extent that a discovery request is objected to because it seeks information equally available to the propounding party, 'courts have unambiguously stated that this exact objection is insufficient to resist a discovery request.'" (quoting *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009))); *Bonanza Beverage Co. v. MillerCoors, LLC*, 2019 WL 13210041, at *6 (D. Nev. Jan. 22, 2009) (same); *FDIC v. Red Hot Corner, LLC*, 2013 WL 1758759, at *2 (D. Nev. Apr. 23, 2013) (same); *see also V5 Techs. V. Switch, Ltd.*, 334 F.R.D. 297, 305 n.12 (D. Nev. 2019) (rejecting objection that information is equally available to both parties).

Because the FightMetric and "record book" data is not equally accessible, Plaintiffs expect Zuffa to immediately produce it. Plaintiffs accept Zuffa's offer to meet and confer as to whether any additional responsive data exists.

**<u>Request No. 78</u>**. Plaintiffs seek documents and communications relating to Zuffa's acquisition of FightMetric and its MMA statistics data. As you know, FightMetric data was used to identify control variables for the *Le* plaintiffs' expert's regression analyses. At some point thereafter, Plaintiffs believe Zuffa acquired FightMetric and retained the services of FightMetric's owner, Rami Genauer. Such acquisition of FightMetric, its data, and the corresponding control over fight-specific data are relevant to Plaintiffs' claims and how FightMetric (or similar) data—which Plaintiffs also request in RFP No. 77—may be used in support of those claims.

Zuffa objects that the RFP is overboard in time period (asserting it covers nine years) and scope, and that the phrase "without limitation" is vague and ambiguous. Unless Zuffa's acquisition of FightMetric transpired over the course of nine years, which it almost certainly did not, Zuffa's time period objection is specious. This Request seeks a discrete set of documents that should be readily identifiable and produced immediately. Zuffa's claim that the phrase "without limitation" is vague and ambiguous is nonsensical. Plaintiffs suggest that Zuffa apply the plain meaning of that phrase as it is commonly used. Please explain what it is about that phrase Zuffa cannot understand otherwise.



**Request No. 79**. Plaintiffs seek communications between Zuffa and a set of thirteen individuals whom Zuffa listed as witnesses relating to potential testimony in the *Le* trial. Zuffa makes two objections. First, Zuffa objects to the Request as overbroad because it seeks materials over a nine-year period. Second, Zuffa objects that responsive materials may call for documents protected by the attorney-client privilege, work-product doctrine, or other applicable privilege. Each objection is frivolous and insufficient to support withholding any responsive documents.

First, RFP No. 79 likely does not seek communications over a nine-year period. Even if Zuffa commenced communications with these individuals about testimony at a *Le* trial in July 2015, there would be relatively few such communications from nine years ago. And indeed, the volume of such communications prior to the *Le* parties' trial preparations (which would not have reasonably commenced until August 2023, eight years into the nine-year time period Zuffa claims is unreasonable) likely would be *de minimis*. These materials are easily located and should be limited in volume, particularly since most of these potential witnesses were barred from testifying as of March 2023.

Second, there is no valid claim of privilege or protection over correspondence between Zuffa (or its counsel) and these third parties.

Plaintiffs expect that Zuffa will immediately commence to locate and produce this correspondence.

**Request Nos. 80-82**. Plaintiffs request materials relating to the boxing match between Conor McGregor and Floyd Mayweather Jr.

Zuffa objects on the basis of relevance and to the "nine-year" time period of these Requests, but it is not clear why, other than a desire to assert a boilerplate objection. As Plaintiffs understand it, the McGregor v. Mayweather event was held in August 2017, and thus, almost no materials would exist beyond that date—meaning the Requests apply only to a narrow period, likely no longer than one year. These materials are relevant to how McGregor's Promotional and Ancillary Rights Agreement with Zuffa restricted his ability to freely fight in a boxing match and relates to compensation comparisons between MMA and boxing. Please let us know if we are at impasse on these Requests.

**Request No. 83**. Plaintiffs request information relating to former UFC Fighter Leslie Smith's unionization effort.

Zuffa objects to the relevance of responsive materials and the time period. The time period objection appears to be a mere boilerplate objection. As Plaintiffs understand it, Ms. Smith's unionization effort launched in early 2018 and was completed



within a year, which makes Zuffa's objection about a "nine-year time period" specious. And Ms. Smith's unionization effort, and the UFC's opposition to it, is relevant to Zuffa's efforts to maintain its monopsony power. Indeed, Ms. Smith sought to challenge the UFC's exercise of control over fighters' careers and compensation, the very issues in this case.

Zuffa's objection that the term "unionization effort" is vague and ambiguous is not well taken. Plaintiffs specifically identified the effort known as "Project Spearhead," and it defies reason that Zuffa does not understand the meaning of the term here. Please explain what Zuffa does not understand, and in the meantime, produce all materials relating to Project Spearhead.

Plaintiffs further note that Zuffa explicitly agreed to produce these materials in its January 23, 2025 letter. Please state whether Zuffa is rescinding that agreement and explain why, given that agreement, these materials have not already been produced.

**Request No. 84**. Plaintiffs seek documents relating to a brief effort, after the discovery period in *Le*, by a group of UFC Fighters to create the Mixed Martial Arts Athletes Association ("MMAAA"). These UFC Fighters claimed to have similar goals to that of the Plaintiffs in this case and the plaintiffs in the *Le* case, but ultimately ceased their efforts. To the extent Zuffa had a role in convincing this group of UFC Fighters to cease their efforts to increase fighter compensation, it would be evidence of Zuffa's efforts to maintain monopsony power and thus relevant to this case.

Zuffa objects on the basis of the time period, but to the extent Zuffa intends to stand on that objection, the parties are at impasse, so please advise on Zuffa's position.

Zuffa further objects that the Request seeks documents relating to fighters who are not members of the proposed class in this case. First, whether the leaders of the MMAAA are members of the class here is not germane to the relevance of the request. The MMAAA episode's relevance to the class claims here is not derived from any particular leader's role as a class member, but rather how Zuffa's interactions with and response to the MMAAA may have contributed to its monopsony power. In any event, multiple leaders are Johnson class members including both Donald Cerrone and Georges St. Pierre, and thus, at a minimum, Zuffa cannot object to producing materials related to those individuals.

Plaintiffs further note that Zuffa explicitly agreed to produce these materials in its January 23, 2025 letter. Please state whether Zuffa is rescinding that agreement and explain why, given that agreement, these materials have not already been produced.



September 12, 2025
Page 19 of 21

**Request No. 85.** Plaintiffs seek documents relating to the UFC's business strategy for Professional MMA Events and/or Professional MMA Bouts held at the UFC Apex. Zuffa objects to the time period, but it is not clear why. As Plaintiffs understand it, the UFC opened the Apex in mid-2019. Plaintiffs are unclear whether any materials relating to the Apex exist prior to the statutory damages period in this case, and if such materials do exist prior to 2017, the volume would appear to be limited such that no undue burden could exist.

Zuffa further objects to the term "business strategy" but provides no explanation of why this simple term is confusing. Indeed, Plaintiffs explicitly stated that RFP No. 85 seeks materials "discussing the reasons for creating and/or establishing the UFC Apex, how the UFC determines which Professional MMA Events and/or Professional MMA Bouts will be held at the Apex, and why any Professional MMA Events and/or Professional MMA Bouts were held at the Apex." Zuffa did not object to producing such specific materials, and yet Zuffa has not produced them. Please produce them immediately and provide clarification about what is confusing in the term "business strategy."

**Request No. 86.** Plaintiffs seek financial reporting and related materials pertaining to the UFC's Apex operations. Zuffa objects to the time period, but it is not clear why, other than a desire to assert a boilerplate objection. As Plaintiffs understand it, the UFC opened the Apex in mid-2019. Plaintiffs are unclear whether any materials relating to the Apex exist prior to the statutory damages period in this case, and if such materials do exist, the volume would appear to be limited such that no undue burden could exist.

Zuffa's claimed ignorance of the meaning of the term "financial documents" is curious given that Plaintiffs delineated no fewer than fifteen specific categories of documents included within the meaning of such term. Zuffa's related objection to the meaning of the term "business operations" is baseless because "business operations" is not a standalone term but rather a modifier of the term "financial documents;" in other words, the fifteen specific categories of documents are examples of documents within the broader category of "financial documents relating to the business operations at the UFC Apex." Plaintiffs reject Zuffa's unwarranted unilateral segmentation of the term. And Zuffa's final objection to the catchall "any other form of financial reporting" after the list of 15 specific categories of documents is not a basis to withhold the documents meeting the non-objectionable 15 categories of documents explicitly requested. Plaintiffs expect Zuffa to immediately produce documents within those 15 specific categories as required by Rule 34 given that Zuffa has asserted no objection to such production.



September 12, 2025
Page 20 of 21

**Request No. 87**. Plaintiffs seek materials relating to the changes in form and structure of Zuffa's broadcast rights revenues over the Relevant Time Period. Putting aside Zuffa's time period objection, Zuffa mainly appears to object to phrases that have a plain meaning. If Zuffa can articulate what about these phrases Zuffa does not understand, Plaintiffs may be able to clarify, but simply objecting to word choices and calling them "vague" or "ambiguous" is insufficient to identify what is objectionable. In any event, such objections should not and could not support Zuffa withholding myriad responsive materials such as those relating to the UFC's 2019 broadcast rights deal with ESPN. It is not clear on what basis Zuffa has withheld such materials nor is it credible that no such materials exist. Yet, Zuffa does not appear to have produced any materials relating to the ESPN deal. Further, such materials should also have been produced in response to Request No. 57, but do not appear to have been produced in response to that Request either. Please produce these materials immediately.

**Request Nos. 88 and 89**. Plaintiffs seek materials relating to any contention Zuffa may make in this litigation that it built or otherwise substantially contributed to the growth of the sport of MMA. These RFPs grew out of Zuffa's opposition to Plaintiffs' *motion in limine* No. 18 in *Le v. Zuffa, LLC*, No. 15-cv-1045, ECF No. 1001 (D. Nev.). In *Le*, plaintiffs sought to exclude testimony relating to Zuffa's claims about its role in building the sport of MMA, in part because Zuffa resisted producing materials from an earlier time period, though plaintiffs had not specifically requested materials relating to this claim. Zuffa opposed that motion and prevailed. In this litigation, Plaintiffs are explicitly seeking discovery relating to any claim that Zuffa may make at trial that it was responsible for the growth and development of the sport.

Zuffa objects, *inter alia*, that the request is overbroad due to the time period and scope of the request. Zuffa cannot have it both ways. Either Zuffa must waive any effort to raise issues relating to its purported efforts to develop and grow the sport, or Zuffa must produce documents relating to such claims so that Plaintiffs may test and counter any related evidence Zuffa may offer. If Zuffa intends to waive introducing such testimony and evidence, please say so. Otherwise, Zuffa's objections are frivolous, and Plaintiffs expect a complete production in response to the Request.

***



September 12, 2025
Page 21 of 21

       Plaintiffs are available to meet and confer within the next seven days to address the issues set forth herein as required by the Court, ECF No. 252. Please let us know your availability.

Very truly yours,

Michael Dell'Angelo