# EXHIBIT 2

Joseph Axelrad
Joseph.Axelrad@lw.com

10250 Constellation Blvd., Suite 1100
Los Angeles, California  90067
Tel: +1.424.653.5500  Fax: +1.424.653.5501
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

# LATHAM & WATKINS LLP

September 18, 2025

**VIA EMAIL**

Michael Dell'Angelo
BERGER MONTAGUE PC
mdellangelo@bm.net

Re: *Johnson, et al. v. Zuffa, LLC*, et al., No. 2:21-cv-01189-RFB-BNW (D. Nev.) - Response to Plaintiffs' September 12, 2025 Letter

Counsel:

We write in response to your September 12, 2025 letter (the "Letter").  Defendants Zuffa, LLC, TKO Operating Company, LLC (collectively, "UFC Defendants" and with Defendant Endeavor Group Holdings, Inc., "Defendants") strongly disagree that the demands the Letter are supported by the Court's comments at the August 26, 2025 status conference (the "Status Conference") and the subsequent minute order.  Defendants remain committed to working with Plaintiffs throughout the remainder of discovery.  But Plaintiffs' latest demands are an apparent, wholesale attempt to unilaterally restart the discovery process.  The vast majority of Plaintiffs' demands exceed what the Federal Rules require, *see* Fed. R. Civ. P. 26(b), 34(a), and the remainder impermissibly seek attorney work product and privileged information, and entirely ignore the operative scheduling order.

We address each of Plaintiffs' latest requests further below.  But given the particularly troubling attempt by Plaintiffs to recast and mischaracterize the last several months of discovery discussions and negotiations, including the Court's most recent rulings, Defendants first briefly recite the record and the relevant rulings.

### A. The Court's Rulings at the August 26 Status Conference

Prior to and during the August 26 Status Conference, Plaintiffs pressed for extraordinary measures and attempted to justify these measures by arguing that Defendants' discovery efforts have been insufficient and that additional oversight was necessary.  ECF No. 240 at 36:16-38:22, 41:1-43:9.  The Court denied Plaintiffs' motion for discovery sanctions, repeatedly rejected Plaintiffs' baseless calls for extraordinary relief, including a Special Master, and affirmed the sufficiency of the existing discovery process.  Defendants have demonstrated their ongoing commitment to transparency, diligence, and good faith compliance with the discovery process. Defendants explained that they have consistently produced documents from an agreed-upon set of

*thirty-five* custodians and have supplemented productions to the extent new, responsive and relevant information has come to light. ECF No. 240 at 50:16-25, 53:16-24. The Court categorically rejected Plaintiffs' request for case-dispositive sanctions and expressed skepticism regarding the need for a special master, recognizing that the current discovery framework is sufficient to address any disputes. ECF No. 240 at 36:13-38:22, 42:23-43:18, 59:13-60:25, 62:1-64:7 78:14-80:22. The Court endorsed a practical process for resolving remaining discovery issues:

- *First* as it related to the June 3 Cell Phone Order, the Court acknowledged Defendants' ongoing efforts to identify and disclose relevant mobile devices, including those of key custodians. The Court recognized that, in a case of this magnitude and duration, it is not unusual for additional devices to be identified as discovery progresses. The Court made clear that Defendants are expected to continue their diligent efforts and to supplement the July 3 disclosures as appropriate (as Defendants have done), but did not find any basis for broadening the scope of those disclosures to include additional individuals or information. ECF No. 244 at 45:7-46:25, 60:9-24.

- ***Second,*** the Court directed Defendants to maintain a comprehensive master list (or "master tracker") of all discovery produced, including by identifying custodians, sources of ESI, and the scope of each production. This tracker was intended to allow the Parties and the Court to evaluate the sufficiency of Defendants' responses to the Plaintiffs' RFPs. It was not intended to reflect a broad audit of all preservation efforts. Nor was it an endorsement of *further* discovery requests from Plaintiffs, as the Court recognized that Defendants have *already* been producing voluminous records and data and detailed information about their discovery efforts. ECF No. 244 at 54:6-57:3, 63:10-16.

- *Finally*, the Court ordered Defendants to designate three "super custodians" for each Defendant entity. The Court made clear that these super custodians will only be used for the limited purpose of serving as a potential point of contact for resolving disputes about the existence or completeness of particular categories of documents or devices, to the extent necessary. The Court flatly rejected Plaintiffs' suggestion that dozens of custodians should be subject to direct Court oversight. ECF No. 244 at 66:1-67:17, 70:7-71:7, 74:1-14.

The Court memorialized its holdings in the August 29, 2025 Minute Order, which provides: (1) the Parties are to meet and confer regarding what, if any, additional ***arbitration-related*** discovery was necessary and to file a supplemental scheduling order, (2) to provide Plaintiffs and the Court with the master tracker on or before September 12, and (3) to disclose the super custodians on or before September 26. The August 29, 2025 Minute Order said nothing about broadening the scope of the June 3 Cell Phone Order.

### B. Defendants Have Complied with the Court's Minute Order of August 29, 2025[1]

At the Status Conference, and as reflected in the Minute Order, the Court directed the Defendants to: (1) serve a master discovery tracker reflecting what documents were produced in response to which requests by September 12, 2025, *see* ECF No. 244 ("Defendants are to supply the Court and Plaintiffs with a Master List of all previously produced discovery within two weeks…"); and (2) disclose certain "super custodians" and their contact information by September 26, 2025, *id.* ("Defendants are also to supply the Court with the names of three (3) Super Custodians within 30 days…"). Defendants complied with item (1) on September 12, and will comply with item (2). *See* Defs.' Sept. 12, 2025 Eml.; ECF No. 244.

Plaintiffs—who sent their September 12, 2025 letter within merely **two hours** of Defendants providing their voluminous and detailed Court-ordered trackers—asked for sweeping and unjustified additional disclosures.[2] Defendants have substantially complied with document productions responsive to requests served before April 13, 2025, consistent with the scheduling order. ECF No. 189. And neither the Court's statements at the Status Conference nor the Court's Minute Order compelled the production of the data or information Plaintiffs now demand. Plaintiffs' attempt to expand the Court's directives is improper.[3]

### C. Plaintiffs' "Master List" Demand – Litigation Hold & Device and Application Listings

Plaintiffs' proposed worksheet (covering device and application inventories, collection details, and litigation hold recipients, among other topics) seeks information that the Court did not order Defendants to provide. It also imposes burdens grossly disproportionate to any articulated need, given the voluminous discovery reflected in the comprehensive master discovery tracker Defendants provided on September 12.[4] Moreover, the worksheet demands information protected

---

[1] References to the "Minute Order" shall refer to the August 29, 2025 Minute Order.

[2] Given the volume of information provided in the trackers, Defendants contend that Plaintiffs did not meaningfully assess what was provided before sending their "deficiency" letter. Such actions reek of bad faith. Nonetheless, Defendants are addressing Plaintiffs' concerns promptly.

[3] For example, Plaintiffs request that Defendants compile and deliver date-range summaries and similar metadata-derived reports about what has already been produced. That information is ascertainable from the metadata already provided in Defendants' productions and is equally available to both parties. The Court did not order Defendants to create bespoke summaries duplicating what the metadata in Plaintiffs' possession reveals. There is no obligation for Defendants to endure the undue burden of compiling such summaries for Plaintiffs.

[4] *See Feulufai v. Pac. Princess P'ship Ltd.*, No. 207CV00808JCMRJJ, 2009 WL 10692824, at *3 (D. Nev. Sept. 10, 2009) ("a court must limit discovery if . . . the discovery sought is unreasonably cumulative or duplicative); *see also Goldsmith v. Garfield Beach CVS, LLC*, No. 2:20-CV-00750-AB-JC, 2021 WL 11739039, at *3 (C.D. Cal. Feb. 16, 2021) (a "party cannot be compelled to create, or cause to be created, new documents solely for their production."); *Rapaport v. Soffer*, No. 2:10-CV-935-MMD-RJJ, 2012 WL 6800377, at **3-4 (D. Nev. Dec. 31, 2012); Fed. R. Civ. P. 26(b)(2)(C)(i).

by the attorney-client privilege and attorney work-product doctrine, further adding to the burden.[5]

As for information regarding Defendants' litigation hold processes, the Court made clear that "super custodians" may need to provide non-privileged[6] information about preservation and collection issues only if warranted—in other words, *if* the Court determined, after reviewing the master tracker, that Defendants' discovery efforts were inadequate. *See* ECF No. 240 at 72:22-73:8 and 78:13-20. Therefore, preservation-related details did not need to be included in the tracker. Similarly, as to device and application listings, the Court did not order Defendants to produce additional granular information on devices nor did the Court order Defendants to provide information regarding custodian-specific application listings. *See* ECF No. 240 at 67:10.

The Court's order was limited to a master tracker which reflects the specific documents produced in response to each of Plaintiffs' Requests, identification of custodians, and identification of ESI sources, on or before September 12, and disclosure of super custodian names by September 26. *See* ECF No. 244; ECF No. 240 at 56:7-10 and 80:16. Defendants produced the master tracker, and will disclose the super custodians by September 26.

Plaintiffs' demands for additional information invade the privilege and work product protection, would be enormously burdensome to compile, and are not proportional to the needs of the case, especially where Plaintiffs have failed to show that Defendants' discovery efforts have been deficient. Defendants will not supplement the master discovery tracker with this information.

### D. Hit Reports and Custodians

Plaintiffs request that Defendants run searches (of **over 3,000** terms) which include Plaintiffs previous search terms ***in addition to*** further terms. Many of these terms are common last names (e.g., "Jackson"), terms that appear in Defendants' email addresses and signature blocks (e.g., "UFC" or "Zuffa"), and generic terms extremely likely to return mishits (e.g., "clip"). This is a blatant effort to impose additional, duplicative, and undue discovery burdens on Defendants notwithstanding that such efforts contravene the spirit and text of the scheduling order. There is no basis for effectively restarting discovery; the Court refused to order a Mulligan on document discovery efforts. *See* Scheduling Order, ECF No. 189.

The substantial completion deadline for requests served before April 13, 2025 has passed, as has the motion to compel deadline. *See* ECF No. 189. Plaintiffs have not demonstrated ***any*** basis for reopening document discovery untethered to the arbitration issue, and the relevant factors

---

[5] *See Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 602 (D. Nev. 2016) (explaining trial courts have broad discretion to limit and tailor discovery to avoid abuse and overuse); *OOIDA Risk Retention Grp., Inc. v. Bordeaux*, No. 315CV00081MMDVPC, 2016 WL 427066, at **3-5 (D. Nev. Feb. 3, 2016) (discussing attorney-client privilege and work product doctrine).

[6] *See RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, No. 214CV01232APGGWF, 2017 WL 2292818, at *5 (D. Nev. May 25, 2017) ("the Court is obligated to protect against disclosure of" work product) (citation omitted).

do not weigh in their favor.[7] Plaintiffs' search term proposals—many of which are overinclusive—are patently unreasonable. Plaintiffs appear to be seeking to impose a disproportionate burden on Defendants by restarting document discovery, disregarding the significant time, expense, and burden Defendants have already undertaken over the last eight months. Such duplicative and overly burdensome efforts are not warranted, and Defendants do not agree to conduct them. To the extent Plaintiffs analyze and review the production and trackers, and want to meet and confer regarding specific RFP-focused gaps, Defendants will of course participate in those discussions.[8]

### E. Chats, Text Messages and Device Logs with Carrier Information & Communication Logs

Defendants did not agree to subject chats or messages to linear review.[9] Defendants are willing to consider a broader review of text messages and chats, but do not agree to conduct a linear review of every text message and chat exchanged by the custodians.[10] Plaintiffs should review the messages produced and the master tracker, and then identify any specific gaps.

---

[7] *See City of Pomona v. SQM North America Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (citing *Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir.1995)) (listing factors to consider upon a motion to reopen discovery). The Court will likely find that at least the following factors weigh in against reopening document discovery for requests issued before April 13: (1) Plaintiffs were represented by sophisticated counsel at the time of the lapse; (2) Defendants will be substantially prejudiced by a continuance of those discovery deadlines, particularly since they have substantially completed that document discovery to date; (3) the need for additional time to complete discovery as a result of these disputes was foreseeable and a result of Plaintiffs' choices; and (4) Defendants oppose Plaintiffs' request. *See Beauregard v. Sampson*, No. 220CV02123KJDDJA, 2023 WL 8877806, at *2 (D. Nev. Dec. 22, 2023)

[8] Of course, substantial completion does not mean absolute completion, and Defendants, as they have repeatedly promised, are continuing to produce documents in response to the RFPs. *See* ECF No. 240 at 53:21-24. Many of Plaintiffs' complaints are premised on the mistaken assumption that the *Le* and *Johnson* matters are comparable. They are not. Different search parameters (e.g., time frame) and search terms were used. Different requests were issued. Because the *Le* matter—according to Plaintiffs—covers the time period during which the alleged monopolization occurred, that production was over 750,000 documents. It was approximately four times the size of the productions to date in *Johnson* for good reason. *See Avila v. Ford Motor Co.*, 680 F. Supp. 3d 1125 (N.D. Cal. 2023). For similar reasons, Defendants do not agree that the processes followed in *Le* are appropriate to follow here. This is a follow-on litigation; Plaintiffs are already in possession of the *Le* materials, as well as hundreds of thousands of documents beyond the *Le* production. The proportionality analysis is simply not the same for any additional incremental materials Plaintiffs seek, and Defendants should not be required to undertake additional burden based on the *Le* process.

[9] In their January 23 letter, Defendants agreed to review and produce text messages, among other things, ***subject to*** their objections as to particular discovery requests, which included breadth objections. Such objections are commonly resolved through the application of search terms.

[10] Much of the additional information Plaintiffs are requesting regarding the production of texts is ascertainable from the data already produced and Defendants' July 3, 2025 disclosure. Defendants urge Plaintiffs to conduct a review of Defendants documents and narrow their requests.

With respect to communications logs and carrier information, Plaintiffs' demand for communications logs and for Defendants to identify carriers is overbroad, invasive, and unnecessary.[11] Such logs would be burdensome to compile and would aggregate personal, private communications involving non-parties (and related to personal devices).[12]

### F.   Custodians, Production Volumes, and "All Custodians" Metadata

Plaintiffs' volume comparisons to *Le* and speculation about purported "paucity" are misplaced. Defendants employed industry-standard de-duplication across custodians and family-level culling to reduce redundant review and production. The "All Custodians" field reflects cross-source deduplication consistent with standard practice: a document produced once may reflect multiple custodians in that field even if only one deduplicated version is produced. Plaintiffs' examples of multilateral text threads produced from a particular custodian's collection are explained by global de-duplication and/or differing collection sources, collection methods, and different collections more broadly. There is no requirement—and it would be vastly inefficient—to re-produce identical items from each custodians' files.

To the extent that Plaintiffs can identify specific, material gaps, Defendants will investigate and produce appropriate metadata overlays, as they are able and as is appropriate.

### G.   Highly Confidential Designations

Plaintiffs' objection to Defendants' Highly Confidential designations is unfounded. Defendants have already agreed in writing to address Plaintiffs' complaint regarding over-designation. *See* ECF 224 at 17. To the extent Plaintiffs continue to have objections to any particular document's designation, there is a procedure for raising those objections in the Protective Order. ECF No. 123 ("Protective Order") at 6.2 ("The Challenging Party shall initiate the dispute resolution process by providing written notice to other Parties … of each designation it is challenging (by bates umber or other individually identifiable information) and describing the basis for each challenge."). If and when Plaintiffs follow this agreed upon procedure, Defendants will consider and review any objections on a document-by-document basis.

### H.   Alleged Data Deficiencies and the Second Set of RFPs to the UFC Defendants

With respect to Plaintiffs' complaints regarding allegedly missing fighter compensation data, Defendants will review this issue, and to the extent additional information requested by Plaintiffs is relevant and reasonably accessible, we will produce it. However, as an initial matter, Defendants note that Plaintiffs admitted in their Motion to Compel that Defendants satisfied their

---

[11] *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617 LHK (NC), 2016 WL 11505231, at *1 (N.D. Cal. Apr. 8, 2016) (denying defendant's request to forensically image plaintiff's devices, it would invade plaintiff's privacy interests).

[12] *See Laub v. Horbaczewski*, 331 F.R.D. 516, 523 (C.D. Cal. 2019) (holding that "[w]ith respect to these specific personal communications, any discovery interest does not meet Rule 26(b)(2)'s relevance and/or proportionality requirements"); *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010) ("production of irrelevant information is an inherently undue burden.").

response to Interrogatory No. 4. *See* ECF 234 at 6 n.7 ("Zuffa has provided information that appears sufficient to satisfy its response obligation as to Interrogatory No. 4.") Moreover, Plaintiffs' document requests do not require Defendants to produce anything beyond that which is responsive, proportional to the needs of the case, and maintained in the ordinary course of business.[13] With respect to the Second Set of RFPs, requests contained within the Second Set mirror the Requests to Endeavor. Pursuant to the Court's order, Zuffa and TKO have already produced those documents. *See* Defs. Master List of Produced Discovery *Compare* RFP Nos. 85-87 to Zuffa *with* RFP Nos. 91-93 to Endeavor. As to the other requests within the Second Set, these are largely duplicative of Plaintiffs' first set to Zuffa. *Compare, e.g.*, RFP No. 62 (lawsuit communications) *with* RFP No. 79 (lawsuit communications related to potential testimony). Once again, Defendants urge a more thorough review of Defendants' tracker.

\* \* \*

Plaintiffs repeatedly ask Defendants to create new inventories, logs, compilations, and analytics that merely duplicate (or can be derived from) the productions and metadata already provided, that reveal counsel's legal advice or mental impressions, and/or would be extremely burdensome to produce. These demands are not reasonable.[14] Defendants conducted a reasonable search for materials responsive to Plaintiffs requests and produced ***hundreds of thousands*** of documents and communications, and voluminous data pursuant to that search. Plaintiffs' insistence on additional layers of work product, compilations, and burdensome re-collection—without any concrete showing of deficiency—is improper.

We look forward to meeting and conferring on these issues and, as always, are available to continue discussions.

Best regards,

*/s/ Joseph Axelrad*

Joseph Axelrad
of LATHAM & WATKINS LLP

cc: Counsel of Record

---

[13] *See Goldsmith*, 2021 WL 11739039, at *3 (C.D. Cal. Feb. 16, 2021).

[14] *See Fed. Trade Comm'n v. Forensic Case Mgmt. Servs., Inc.*, No. CV1107484RGKSSX, 2012 WL 13134719, at *4 (C.D. Cal. Sept. 4, 2012) (requests for "duplicative of information previously provided" are" an abuse of the discovery process"; courts may limit discovery when it is "unreasonably cumulative or duplicative.").