# EXHIBIT 7



**MICHAEL DELL'ANGELO**
*EXECUTIVE SHAREHOLDER & GENERAL COUNSEL*
**d** 215.875.3080  **m** 610.608.8766   mdellangelo@bm.net

September 22, 2025

**VIA Email**
Joseph Axelrad
LATHAM & WATKINS LLP
joseph.axelrad@lw.com

Re: *Kajan Johnson, et al. v. Zuffa, LLC, et al.*, No. 2:21-cv-01189-RFB-BNW (D. Nev.)

Counsel:

Plaintiffs write to memorialize the September 19, 2025 meet and confer teleconference with counsel for Defendants regarding Plaintiffs' September 12, 2025 Letter and Defendants' responsive September 18, 2025 Letter on behalf of Defendants Zuffa, LLC, TKO Operating Company, LLC (collectively, "UFC Defendants" and with Defendant Endeavor Group Holdings, Inc., "Defendants") and to address Defendants' September 21, 2025 email.

**I.     Plaintiffs' Discovery Worksheet**

In Plaintiffs' September 12 Letter, Plaintiffs requested that Defendants complete a spreadsheet form to provide additional information regarding each app, device, and actual and proposed custodian (*i.e.*, including Defendants' proposed custodians and Plaintiffs' proposed custodians from Plaintiffs' July 19 letter) as well as information regarding any litigation holds Defendants have implemented in connection with this litigation. Plaintiffs again request this long-sought information because Defendants' September 12 production of a "Master Tracker" does not cure the deficiencies in Defendants' July 3, 2025 device disclosure. For example, Defendants still have not provided information on apps and devices used by specific custodians. At the parties' teleconference, counsel confirmed Defendants' refusal to provide *any* of the information requested. Defendants' September 21, 2025 email correspondence confirms Defendants' stance.

In their September 12, 2025 letter, Plaintiffs stated, as explained in detail in Plaintiffs' July 9, 2025 letter, that Defendants' device disclosure did not comply with the Court's June 3 Device Disclosure Order. ECF No. 202. To date, Defendants have failed to address these deficiencies in response to Plaintiffs' July 9 letter, Plaintiffs' September 12 letter, during the September 18 meet and confer, or in Defendants' September 21 email. Regarding the remainder of the information sought in Plaintiffs' Discovery Worksheet, Defendants have failed to explain their position, stating, without more, why they believe the information sought is disproportionate to the needs of the case or may seek information that is privileged and attorney-work product. Defendants' contention that the Court's Orders at ECF Nos. 240 and 244 may not encompass all of the information in Plaintiffs' Discovery Worksheet is not itself a basis for continuing to



September 22, 2025
Page 2 of 9

withhold basic information about the discovery process from Plaintiffs. Of course, if the Discovery Worksheet does, in fact, call for privileged information or attorney-work product, Defendants could make specific objections as to such information—it is not a basis to wholesale withhold the requested information. Notably, Plaintiffs' Discovery Worksheet calls for legal hold information which all Defendants refuse to provide. However, Zuffa and Endeavor committed to provide legal hold information in December 2023.[1] Zuffa has provided only partial information to date (it has still not provided the dates legal holds went into place), and Endeavor has provided no information whatsoever. This represents yet another example of Defendants' pattern of failing to honor their agreements in discovery.

## II. Search Terms and Hit Reports

In Plaintiffs' September 12 Letter, Plaintiffs requested that Defendants provide hit reports corresponding to all sets of search terms proposed and actually applied in this action. On the parties' teleconference, counsel confirmed Defendants' refusal to provide any hit reports whatsoever because counsel does not see the utility in doing so. However, counsel stated Defendants will consider applying search terms if those terms are identified on a request-by-request basis.

Defendants' September 21 email mischaracterizes the substance of the Parties' meet and confer as well as Plaintiffs' position and purported "refusal."

Thank you for agreeing—for the first time, in the September 21 email—"to provide a hit report for the terms that Defendants used to identify responsive documents for their review." Please provide these hit reports immediately. We expect that Defendants' vendor generated hit reports at least one month ago because Defendants could not have created a set of documents to review and produce with their search terms without running those search terms and generating hit reports.

Plaintiffs repeat their request that Defendants run Plaintiffs' search terms and provide hit reports. We note that Defendants continue to refuse to provide to Plaintiffs what they demand of Plaintiffs. Defendants state in their September 21 email correspondence that they "are willing to consider targeted, RFP-specific [search term] proposals supported by an articulated, particularized need." To date, Defendants have refused to run Plaintiffs' proposed search terms; provide hit reports for Plaintiffs' search

---

[1] Jessica Phillips Dec. 3, 2023 email to Patrick Madden ("We will agree that the parties will meet and confer about preservation issues limited to the parties' RFPs, including exchanging information regarding ESI that is being preserved that is responsive to the parties' RFPs, the types of ESI the parties believe should be preserved that are responsive to the parties' RFPs, the general job titles or descriptions of custodians, agents, and representatives for whom they believe ESI should be preserved, and the extent to which ESI and other information created after a certain date needs be preserved as it is created if it responsive to the parties' RFPs.").



September 22, 2025
Page 3 of 9

terms; provide any meaningful detail about the sources of documents against which Defendants ran Defendants' search terms; or clarify whether Defendants applied their search terms on a "targeted, RFP-specific" basis and Defendants' reasoning for doing so.

### III. Communications Logs and Individual Subpoena Recipient Carrier Information

In Plaintiffs' September 12 Letter, Plaintiffs requested that Defendants produce communications logs detailing the sender and recipient telephone numbers and the date of all messages collected from each custodian's phone. Plaintiffs also requested that Defendants produce in response to Plaintiffs' pending requests to Individual Subpoena Recipients documents sufficient to identify the wireless carrier of each Individual Subpoena Recipient's cellphone. Counsel confirmed Defendants' refusal to produce any of this material.

Defendants' September 21, 2025 email purports to asserted new, untimely objections that were not asserted in response to Plaintiffs' subpoenas to the Individual Subpoena Recipients, *i.e.*, that the identification of mobile device carriers is "invasive" and implicates "nonparty privacy." For example, Plaintiffs' subpoenas to the Individual Subpoena Recipients sought:

> **REQUEST FOR PRODUCTION NO. 2:**
>
> Documents sufficient to identify the telephone number and provider or carrier of each cellular telephone identified in response to Request No. 1.

Each Individual Subpoena Recipient provided an identical response, as follows:

> **RESPONSE TO REQUEST NO. 2:**
>
> In addition to the General Objections set forth above, Whitesell objects to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information that is not relevant to any party's claims or defenses, including because it calls for "each cellular telephone" used by a non-party over a ten year time period, extending beyond the time period relevant to this Action. Whitesell further objects to this Request as impermissibly propounding an interrogatory on a non-party by means of a request for production of documents. Whitesell further objects to this Request as improperly bypassing party discovery. Plaintiffs and Zuffa have been actively meeting



September 22, 2025
Page 4 of 9

and conferring over party discovery, and this Request seeks to circumvent that process.

Defendants and the Individual Subpoena Recipients have failed to explain why or how simply identifying the wireless carriers, *i.e.*, Verizon, T-Mobile, etc., for each custodian Defendants selected and whose mobile device they purport to have collected, is objectionable or otherwise not discoverable.

### IV. Confidentiality Designations

In Plaintiffs' September 12 Letter, Plaintiffs reiterated their long-standing request that Defendants remove all "Highly Confidential – Attorneys' Eyes Only" designations from Defendants' productions. For example, as explained in Plaintiffs' July 3, 2025 letter, when Defendants *reproduced* Defendants' production in the *Le* litigation they designated the *entire* production as "Highly Confidential – Attorney's Eyes Only," which can only apply to "documents and information of a medical or highly personal nature pertaining to athletes who are not named as plaintiffs in this action." ECF No. 123. Defendants affirmed the validity of Plaintiffs' challenge when they agreed on August 12, 2025, to re-designate the entire *Le* reproduction as "Confidential."

Nonetheless, counsel advised that Defendants will not de-designate documents outside the *Le* reproduction unless Plaintiffs first identify each improperly designated document individually by Bates number—despite Plaintiffs' position, which they have repeatedly asserted,[2] that *none* of Defendants' produced documents warrant this designation. Given that, please let us know if Defendants require Plaintiffs to send them a list of Bates numbers for every document designated "Highly-Confidential – Attorneys' Eyes Only" that Defendants have produced. Defendants' current position appears to be, at best, a new *post hoc* justification, as their current arguments about "process" and the identification of Bates numbers appear nowhere in their discussion of Defendants' mass over-designation of documents as "Highly Confidential – Attorneys Eyes Only" in their Response to Plaintiffs' Motion for Sanctions. *See* ECF No. 224 at 23-24.

### V. "All Custodians" Metadata Field

In Plaintiffs' September 12 Letter, Plaintiffs requested clarity as to the definition of the "All Custodians" metadata field in Defendants' production. Plaintiffs then highlighted examples by Bates number of chat documents in their September 12 Letter (Ltr. at 5, 6, 9), as well as in prior correspondence,[3] in which multiple custodians participated in a chat but the document's "All Custodians" field does not list each. Counsel confirmed Plaintiffs' understanding of the "All Custodians" field but were unprepared to discuss the highlighted examples of communications between custodians that were only produced from the files of one custodian. Although counsel provided no explanation for this lack of

---

[2] Reply in Support of Plaintiffs' Mot. for Sanctions at 2 n.5 (ECF No. 230).
[3] July 22, 2025 Ltr. from Michael Dell'Angelo to Joseph Axelrad at 5-6.

preparation despite the issue being raised nearly two months prior and again on September 12, counsel agreed to investigate why certain individuals were not included in that field for the above-referenced examples. Counsel also confirmed that they would assess whether email de-duplication of documents happened by family or by custodian.

Plaintiffs further requested that Defendants clarify whether and if so, how, they applied de-duplication to all non-email communications, including text messages, instant messages, and chat documents. Counsel for Defendants agreed to do so during the meet and confer but failed to address this issue in their September 21 email.

**VI. Granular Compensation Structured Data**

In Plaintiffs' September 12 Letter, Plaintiffs requested that Defendants produce data in response to Request for Production No. 27, which called for fighter compensation data "in as granular form as the information is maintained," including the breakdown of the total compensation into "base salary," "bonuses," "broadcast royalties," "Pay-Per-View shares," and "any other form of compensation" paid to the fighters. Defendants contend that their response to Interrogatory No. 4 satisfies their obligation to respond to Request for Production No. 27. It does not. As Plaintiffs explained, although this Request *overlaps* with Interrogatory No. 4, this Request seeks more-specific and granular per-bout compensation information that was comparable to what Zuffa had produced in *Le*. Counsel for Defendants agreed to look into this issue and provide an update by Tuesday, September 23, 2025, and in advance of filing the Joint Status Report.

**VII. Text Messages, Instant Messages, and Chat Documents**

In Plaintiffs' September 12 Letter, Plaintiffs requested that Defendants provide information about their collection and production of text messages, instant messages and chat documents. Defendants had previously agreed to conduct a linear review (*i.e.*, without the use of search terms) as to such communication documents created between July 1, 2015 and June 30, 2017.[4] Defendants confirmed at the parties' teleconference that they had culled these communication documents through the use of search terms. Thus, Defendants did not conduct a linear review and refuse to do so.

Per Plaintiffs' request, Defendants agreed to disclose the number of text messages, instant messages, and chat documents that were collected and reviewed. Defendants' September 21 email states that "Defendants agree to provide a report that identifies the *volume of data* collected from each custodians' phone." "Volume of data" is very different in meaning from the "number" of messages, and the former is of little value to assessing the sufficiency of the production. Plaintiffs reiterate that they requested and continue to request the number of messages and chats collected and

[4] Sept. 12, 2025 Ltr. from Michael Dell'Angelo to Joseph Axelrad (citing Jan. 23, 2025 Ltr. from Jessica Phillips to Michael Dell'Angelo).



September 22, 2025
Page 6 of 9

produced. Please confirm that Defendants will provide the number of messages and chats collected and the number produced on a custodian-by-custodian basis (Plaintiffs do not object to receiving volume data, but not in lieu of the numerical information requested). Plaintiffs have also requested in the September 12 letter—to which Defendants have not responded —Defendants' methodology for identifying when a text message conversation begins and ends. Plaintiffs' understanding is that text messaging apps do not create such start and stop points, meaning that counsel are implementing a protocol. Please tell us what that protocol is.

Plaintiffs noted that Defendants' entire production, across 33 custodians during a nearly ten-year period, consists of approximately 100 or fewer text message and chat conversations. Plaintiffs noted that it was implausible that the production, if properly culled and searched, would include so few responsive text messages and chats. Defendants agreed to explore whether additional responsive text messages and chats should be produced but only where Plaintiffs provide detailed case-by-case explanations, referencing specific Requests for Production, as to why such communications documents may not have been produced.

VIII.   **Custodians**

In Plaintiffs' July 19, 2025 Letter, Plaintiffs requested that Defendants designate specific custodians after having reviewed Defendants' organizational charts.[5] On July 23, 2025, Defendants wrote to confirm that they "are, and will continue, making rolling productions in the coming weeks, *including from **custodians** and **ESI sources** you identify in your most recent [July 19, 2025] letter*."[6] In Plaintiffs' September 12 Letter, Plaintiffs requested clarity as to whether Defendants had collected documents from custodians proposed by Plaintiffs given Defendants' suggestion that they had agreed to include such individuals as custodians. Defendants' September 18 response letter did not respond to this request. At the parties' teleconference, counsel for Defendants stated that Defendants had collected documents only from the 33 custodians listed in Defendants' purported September 12, 2025 "Master Tracker" document and confirmed that they had not collected documents from **any** of the individuals Plaintiffs identified in their July 19 Letter. Accordingly, Defendants are in breach of their July 23, 2025 agreement. Defendants' sole basis for failing to honor their July 23 agreement lies in the Court's comments at the August 26, 2025 Hearing. The Court did order that Defendants were not required to include custodians that they had already agreed to include.

Plaintiffs' July 22 letter identified additional ESI sources that Defendants' production, as of the Substantial Completion deadline, failed to include. Accordingly, Plaintiffs requested confirmation that "Defendants have taken immediate steps to ensure preservation of devices and accounts associated with" the sources Plaintiffs

---

[5] July 22, 2025 Ltr. from Michael Dell'Angelo to Joseph Axelrad at 3-4.
[6] July 23, 2025 email from Benjamin Cabranes to Michael Dell'Angelo.



September 22, 2025
Page 7 of 9

identified. Defendants' July 23 response, quoted above, also stated that Defendants would "respond[] as promptly as we can to the issues raised" in Plaintiffs' letters of July 22, July 19, July 18 and July 17. Defendants never responded to those letters and never confirmed that they had taken any steps to ensure the preservation of the additional ESI sources Plaintiffs identified. We await Defendants' assurances regarding the preservation of the additional sources of Defendants' ESI that *Plaintiffs* identified.

## IX. Other Missing Documents

In Plaintiffs' September 12 Letter, in addition to the issues set forth regarding the sparse production of texts and messages, Plaintiffs identified a series of documents that are missing entirely from Defendants' production—FightMetric data[7] and similar data contained in Zuffa's record book; debt issuances, the refinancing and amendments thereof, and related materials; an updated production of promotional and ancillary rights agreement to include the interim discovery period of July 1, 2015 to June 30, 2017; and documentation of UFC's domestic broadcast deals (Ltr. at 8-9).

Although Plaintiffs sent the September 12 letter *following* receipt of Defendants' "Master Tracker," counsel for Defendants maintained at the parties' teleconference that anything responsive to any of these large categories is captured by the Tracker. Counsel also confirmed, although without specificity on a timeline or volume, that Defendants' review of documents for production is ongoing, continuing, and noting that there is "another year left" in fact discovery.

Defendants' September 21 email states that "As to the other RFPs specifically discussed in Plaintiffs' letter (debt issuance documents and broadcast/ESPN deals), Defendants disagreed with Plaintiffs' characterization that their response to these RFPs was incomplete or insufficient." That is not accurate. Defendants' September 18 Letter failed to address these issues. When we raised these issues on the meet and confer, counsel for Defendants were unprepared to discuss them and offered no substantive response.

## X. Defendants' Supplemental Interrogatory Responses & Plaintiffs' Motion to Compel

Defendants' position articulated in their September 21 email correspondence is not well taken as it indicates that Defendant are not proceeding in good faith. Defendants requested that Plaintiffs stipulate to extend the September 17, 2025 deadline to respond to Plaintiffs' Motion to Compel responses to Plaintiffs' January 17, 2025 Interrogatories. The parties stipulated to an *extension* of Defendants' deadline,

---

[7] Specifically regarding FightMetric data responsive to Request for Production No. 77, counsel for Defendants stated his belief that Plaintiffs were no longer pursuing this Request. As stated on the meet and confer, this letter further confirms that Plaintiffs are; this Request is outstanding.

7



September 22, 2025
Page 8 of 9

which the Court so-ordered. ECF 251. The parties' stipulation states, in part, that "Given Defendants' forthcoming supplemental responses to the Interrogatories, and the potential that Defendants' supplemental responses *may* moot some of the issues raised or relief sought in the Motion to Compel regarding the Interrogatories, the parties agree to continue the deadline for Defendants to oppose the Motion to Compel to September 24, 2025 to allow the Parties to meet and confer regarding Defendants' Privilege Logs and Supplemental Answers in advance of Defendants' Response date." *Id.* ¶10 (emphasis added). Thus, the parties *did not* agree that the mere fact of providing Supplemental Answers, even if deficient, would moot Plaintiffs' motion. That is precisely why the Stipulated Order says, "**may** moot some of the issues" and allowed for a meet and confer process. Note that during the parties' negotiations over the language in paragraph 10 of the Stipulation, Defendants' draft stated that Supplemental Answers would moot Plaintiffs' Motion. Plaintiffs rejected that wording, and Defendants agreed to the change to add "may" and a meet and confer period. As noted in our letter, Plaintiffs attempted to meet and confer regarding Defendants' deficient Supplemental Responses. Defendants were unprepared to do so and have not responded to Plaintiffs' detailed written explanation of September 18, 2025. As we explained, Zuffa's Supplemental Responses to Interrogatory Nos. 5 through 9, and, subject to Zuffa's clarification, Interrogatory No. 2, are deficient and should be addressed in Zuffa's September 24, 2025 Response. Plaintiffs reserve all rights regarding Defendants' Supplemental Responses.

\* \* \*

In sum, we await Defendants' responses on the following:

- information regarding de-duplication of productions of all email and non-email communications;

- information regarding the volume of documents *collected* from Defendants' 33 custodians;

- confirmation of whether Defendants will produce granular compensation data in response to pending Request for Production No. 27;

- a substantive response to the issues set forth in the September 12 Letter regarding Request for Production Nos. 72-78, 88-89, as Defendants were not prepared to respond and did not respond in their September 18 Letter;

- notwithstanding Defendants' representations that everything produced is reflected in Defendants' "Master Tracker," information regarding whether there is still a corpus of collected documents that are in the process of review; and

- written clarification concerning Defendants' interrogatory responses as requested in Patrick Madden's email of September 19, 2025.



September 22, 2025
Page 9 of 9

    Please promptly provide responsive information to the above-referenced items. Plaintiffs reserve all rights.

Very truly yours,

Michael Dell'Angelo