|   | IN THE UNITED STATES DISTRICT COURT |   |
|---|---|---|
| 1 | | |
| 2 | FOR THE DISTRICT OF NEVADA | |

| | | |
|---|---|---|
| 3 | | |
| 4 | Kajan Johnson, Clarence Dollaway, and Tristan Connelly, on behalf of themselves and all others similarly situated, | |
| 5 | | |
| 6 | Plaintiffs, | No.: 2:21-cv-01189-RFB |
| 7 | v. | |
| 8 | Zuffa, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc., | **JOINT STATUS REPORT RE: DISCOVERY DEFICIENCIES OCTOBER 2025** |
| 9 | | |
| 10 | Defendants. | |
| 11 | Mikhail Cirkunovs, on behalf of himself and all others similarly situated, | |
| 12 | | |
| 13 | Plaintiff, | |
| 14 | v. | |
| 15 | Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc., | No.: 2:25-cv-914-RFB |
| 16 | | |
| 17 | Defendants. | |
| 18 | Phil Davis, on behalf of himself and all others similarly situated, | |
| 19 | | |
| 20 | Plaintiff, | |
| 21 | v. | |
| 22 | Zuffa LLC, TKO Group Holdings, Inc. (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc., | No.: 2:25-cv-00946-RFB |
| 23 | | |
| 24 | Defendants. | |
| 25 | | |
| 26 | | |
| 27 | . | |
| 28 | | |

1   Pursuant to the Court's September 10, 2025 Minute Order, Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly (the "*Johnson* Plaintiffs"), Plaintiff Mikhail Cirkunovs (the "*Cirkunovs* Plaintiff"), Plaintiff Phil Davis (the "*Davis* Plaintiff") (collectively, "Plaintiffs"), and Defendants Zuffa, LLC, TKO Operating Company, LLC, TKO Group Holdings, Inc., and Endeavor Group Holdings, Inc. ("Defendants," and collectively with Plaintiffs, the "Parties"), jointly submit this Status Report regarding unresolved discovery issues arising from Plaintiffs' October 28, 2025 Letter (the "October Deficiency Letter"). Ex. 1. Defendants responded to the October Deficiency Letter on November 3, 2025 ("Defendants' Response Letter"). Ex. 2. The parties met and conferred on November 4, 2025.

**PLAINTIFFS' POSITION**

Defendants refuse to engage in the Court-Ordered process (ECF No. 244), insisting on an RFP-by-RFP process that fails to solve for patently inadequate search terms, potential spoliation, and/or deficiencies in identifying custodians and document sources. Plaintiffs covered Defendants' refusal to complete worksheets designed to help resolve why Plaintiffs are missing materials. ECF No. 253. The October Deficiency Letter added information on prior deficiencies, added new deficiencies, and attached questions for Defendants' Super Custodians to resolve them. Exs. 1, 3. Contrary to the Ordered process, Defendants refuse to provide meaningful answers. *See* Ex. 2 at 11-12. Defendants misconstrue the Ordered process to mean they have no obligations at all.

***Pending Matters from September 29, 2025 Hearing ("Sept. Hrg." or "Hrg.").*** Pending are rulings on whether Defendants must: (1) complete Plaintiffs' worksheets (ECF No. 253 at 2-3; Hrg. Tr. at 23:16-29:5); (2) produce documents from additional employees (ECF No. 253 at 3; Hrg. Tr. at 9:20-11:19); (3) negotiate and apply additional search terms based on Plaintiffs' proposal (including supplying a hit report), (ECF No. 253 at 3; Hrg. Tr. at 9:20-11:19); (4) produce communication logs and wireless carrier information of the "Individual Subpoena Recipients," Endeavor/Zuffa employees over whose devices Defendants claims to lack control (ECF No. 253 at 3-4; Hrg. Tr. at 24:17-25); and (5) meet and confer and produce documents responsive to Plaintiffs' Second RFPs, which Defendants refuse to do, without legally cognizable basis, incorrectly arguing "abandon[ment]" with a year of discovery remaining. *See* Ex. 2 at 10.[1]

Since the Sept. Hrg., Defendants *partially* complied with two commitments. Defendants supplied (1) a hit report for Defendants' unilateral search term proposal (but *excluded* standard information, as supplied in *Le*,[2] such as the total number of documents in the collection and the

---

[1] Plaintiffs also raised whether Defendants must produce PAR Agreements from their centralized repository for period July 1, 2015 to June 30, 2017. ECF No. 253 at 4; Hrg. Tr. at 53:8-20. After rereviewing the documents Defendants claimed contained those agreements, Plaintiffs confirmed that the PAR Agreement production is incomplete. Defendants agreed to "investigate" whether they can collect the contracts from a central source. Ex. 2 at 6. In fact, Zuffa already made a November 2024 production from the repository. Ex. 1 at 5. A Court Order requiring that compliance in 14 days is necessary to avoid further delay.

[2] Zuffa's search term expert in *Le* stated, *inter alia*, that an "important statistic is the total reviewable dataset that results from any set of proposed search terms." Declaration of Helen Moure ¶16, *Le v. Zuffa, LLC*, 15-cv-1045, ECF No. 220 (D. Nev. Feb. 19, 2016). And even here,

2

total number of documents hit by the search terms), and (2) a *partial* device disclosure that identified the number of text messages on custodial devices for 16 employees of the 35 employees Defendants searched and 1 of the 30 Plaintiffs requested. Those disclosures raise questions on the completeness of Defendants' disclosures and the adequacy of Defendants' search terms. Plaintiffs addressed both matters (Ex. 1), but Defendants refused to provide a *substantive* response. (Ex. 2).

Defendants reneged on three commitments made to avoid this Court issuing rulings. First, Defendants committed to produce FightMetric data.[3] Plaintiffs followed up (Ex. 1 at 24), but Defendants refused. *See* Ex. 2 at 10. Second, Plaintiffs identified specific text messages between multiple custodians that had not been produced by all participating custodians. Ex. 1 at 10-11. Defendants committed to investigate. *See* Ex. 1 at 10-11. Plaintiffs followed up and identified additional examples, *id.*, but Defendants now refuse to provide information. *See* Ex. 2 at 7. Third, Defendants proposed an "expanded" review of the text messages of "certain custodians" at the Hearing. Hrg. Tr. at 43:8-44:9. Plaintiffs requested the specifics of Defendants' proposal. Ex. 1 at 12. In response, Defendants inexplicably accused Plaintiffs of not cooperating.[4] Plaintiffs require the Court's intervention to effect Defendants' fulfillment of their commitments to the Court.

*Pending Motions*. Plaintiffs filed a Motion to Compel Interrogatory Responses, which is fully briefed (with proposed Sur- and Sur-Sur-Reply briefs). ECF Nos. 234, 255, 261, 264, 267-68.

*New/Revised Issues.* Based on Plaintiffs' continuing review of Defendants' productions and the information they supplied on October 13, 2025, Plaintiffs have identified new issues and additional concerns regarding the existing issues pending before the Court.[5]

**Search Terms.**[6] Plaintiffs have developed significant new information on the inadequacy

---

Defendants claim the relevance of the proportion of documents in the full corpus hit on the search terms, given their reliance on a claim that Plaintiffs' terms are inappropriate because they purportedly hit on 98% of the collection. Thus, both the total number of documents in the set and the number on which the search terms hit are relevant as Defendants and their expert claim.

[3] *See* Hrg. Tr. at 15:17-24 ("[We] are willing to look at specific requests . . . like additional FightMetric data . . . , we're more than willing to do that.").

[4] Plaintiffs raised this on the November 4 meet and confer; Defendants refused to make a proposal stating that whatever Plaintiffs proposed is "too many." *See Cirkunovs*, ECF No. 72 at 37

[5] Plaintiffs' October 28 letter also addresses issues relating to arbitration discovery that Plaintiffs understand Judge Boulware to have taken under his consideration. *See Cirkunovs*, ECF No. 72. To the extent this Court considers those matters, Plaintiffs incorporate ECF No. 72.

[6] Plaintiffs and the Court remain in the dark about details of the application of Plaintiffs' search terms to Defendants' document collection as Defendants still refuse to produce one.

of Defendants' proposed search terms utilizing Defendants' hit report. Ex. 4. Notably, the report lacks information on how many documents Defendants collected and on what proportion of their collection their search terms hit (with or without families). *Id.* However, analysis of Defendants' incomplete hit report reveals significant deficiencies. First, most of Defendants' terms are not reasonably crafted to identify responsive documents. Of Defendants' 1,317 proposed search terms: 537 return no hits; 984 return fewer than 100 hits; and 1,056 return no unique hits. Defendants' search terms are significantly deficient in numerous other ways as detailed in Plaintiffs' November 7 filing. *Cirkunovs*, ECF No. 72 at 35-37. For example, Defendants did not include proper search terms to identify negotiations documents (*e.g.*, RFP Nos. 4-7), materials concerning competitors (*e.g.*, RFP Nos. 37, 42), the UFC's monopsony power, cooperation with other MMA promoters, and debt issuances (RFP No. 18). *See* ECF No 72 at 17-30. Defendants omit the names of fighters in negotiations, purported competitors, and counterparties to key contracts/financings, etc.

Second, Plaintiffs confirmed the deficiency by running Defendants' proposed search terms against the productions. Ex. 5. Just 5 of the 1,317 terms hit on over 70% of Defendants' production of *Johnson*-specific documents.[7] They returned documents generally responsive only to a handful of RFPs seeking PAR Agreements and similar contracts (*i.e.*, documents responsive to parts of RFP Nos. 4-7, 8-10) and failed to target all documents responsive to all Plaintiffs' RFPs. Defendants' numerous agreements to search anew for materials including those relating to PAR Agreements, the "Fighter Cost Walkthrough," and debt issuances—in addition to largely missing categories of responsive documents such as negotiations—confirm that Defendants' terms failed to identify myriad documents (including virtually entire categories) responsive to many RFPs.[8] Plaintiffs' search terms, by contrast, are designed to return material responsive to *all* of Plaintiffs' RFPs. Plaintiffs remain ready to cooperate in appropriate narrowing of Plaintiffs' proposal if

---

[7] Those 5 terms hit on over 96% of the documents produced from a single custodian, Tracy Long, who is responsible for *transmitting* (not negotiating) contracts for execution. Defendants' productions and the application of these five search terms indicates their terms are not designed to capture substantive discussions of key employees who actually conducted the negotiations, such as Dana White, Sean Shelby, Mick Maynard, and Hunter Campbell.

[8] Defendants' *modus operandi* is, without support, to incorrectly claim Plaintiffs "have everything" they detail as missing based on their review of documents hitting on their search terms. *See, e.g.*, Aug. 26, 2025 Hr'g Tr. 54:19, *Johnson*, ECF No. 240 (plaintiffs "have all the information"); Ex. 2 at 10 ("Defendants . . . searched for these documents and produced all responsive hits.").

1  supported by a hit report. Defendants continue to refuse. Court intervention is required to ensure
2  Defendants provide a hit report for Plaintiffs' proposal and to develop a proper set of search terms.
3     **Granular Compensation Data.** Plaintiffs request that the Court Order Defendants to
4  produce the granular compensation data responsive to RFP No. 27 that matches the data produced
5  in *Le* and updates it to the present, or explain why that cannot be done. The data is essential to a
6  determination of the issues in this litigation, and Plaintiffs have identified several of Defendants'
7  systems that contain it. Ex. 1 at 9-10. Defendants' delay is inexcusable and prejudicial because it
8  prevents Plaintiffs from commencing expert analyses, planning further discovery requests, and
9  preparing to oppose Defendants' pending Motion to Compel Arbitration. *Cirkunovs*, ECF No. 72.
10    **Defendants' Trackers**. Plaintiffs have identified myriad shortcomings with Defendants'
11 Trackers produced pursuant to ECF No. 244 (*e.g.*, groups disparate requests in the same tab,
12 includes nonresponsive documents, and does not reflect the volume of documents from each
13 source collected). Ex. 1 at 26-27. These deficiencies reduce the utility of the Trackers. *Id.*
14    **Missing Categories of Documents.** Plaintiffs reviewed Defendants' productions and
15 detailed several areas where they are wanting. Ex. 1. Defendants refuse to act until ordered:
16  *Negotiations*. Defendants' production includes documents reflecting negotiations (externally
17 with fighters or their representative or Defendants' internal discussions) for *less than 0.1 percent*
18 of the more than 12,000 consummated contracts during the relevant time period. Ex. 1 at 18-22.
19 The few dozen snippets of negotiation-related documents produced are incomplete, such as an
20 email forwarded by a person responsible for the negotiation to Ms. Long informing her of what to
21 populate in the contract. *E.g.*, Ex. 6. Even then, the documents do not reflect the negotiation that
22 led to the contractual terms or Zuffa's internal discussions. As in *Le*, such documents are central
23 to the issues in this case. *Le v. Zuffa, LLC*, 2023 WL 5085064, at *23-24 (D. Nev. Aug. 9, 2023).
24 The production deficiency is not because such negotiations do not occur; indeed, there is public
25 evidence of negotiations absent from Defendants' production. Ex. 1 at 18-22; *see also* Ex. 7.
26  *Broadcast Contracts*. Plaintiffs located additional documents related to domestic broadcast
27 deals in the production, but there should be substantially more, as Plaintiffs detailed. *See* Ex. 1 at
28 23. Defendants refuse to search for and produce these materials, claiming their search terms found

everything they had. Ex. 2 at 10. That statement cannot be accurate because Defendants' search terms do not even include "ESPN" or "BAMTech," the counterparties in the contracts. Ex. 4.

*Debt Issuances.* Defendants' counsel sowed confusion by claiming Plaintiffs were "incorrect" about the absence of produced debt issuance documents. *See* Hrg. Tr. at 54:6-12. Plaintiffs were not incorrect. Defendants' production omits documents regarding (1) ten refinancings and/or amendments to an August 2016 loan and (2) "quarterly lender presentations." *See* Ex. 8 at -081 (listing UFC's 2018 and 2019 "Quarterly Lender Presentations"). Defendants now claim they are searching. Court intervention is necessary to resolve this issue in timely fashion.

*Deloitte Document.* Plaintiffs identified an unproduced responsive document (a "Fighter Cost Walkthrough") created by Deloitte concerning Zuffa's fighter contracting practices. Defendants incorrectly claimed Plaintiffs have the document and did not request it. RFP Nos. 7, 11, 32-33, 40-41, 53, among others, encompass these materials, which Defendants are now "investigating." They should be produced, and Plaintiffs request an Order requiring production by a date certain.

**Spoliation.** Defendants appear to have produced no more than 244 text and chat communications for 13 custodians over a ten-year period. Ex. 9. Defendants refuse to fully identify (voluntarily or in response to the Court's Order) devices and the communication platforms and to produce relevant communications. The paucity of these documents in Defendants' production suggests spoliation, which Defendants refuse to explain. *Cirkunovs*, ECF No. 72 at 40-45.

Defendants' incomplete device disclosures, Exs. 4, 10, 11, the last of which lists the date ranges of text messages, raise spoliation concerns. *See* ECF No. 72 at 40-43. Moreover, the email signatures of least six of Defendants' employees' business email (whose documents Defendants purported to collect and produce) each reveal mobile devices that Defendants never disclosed as preserved or collected.[9] *See* Ex. 1 at 17. Plaintiffs attempted to address the spoliation issues through questions to Defendants' "Super Custodians," pursuant to the Court-ordered process, but Defendants refuse to discuss or provide answers. ECF No. 244; Ex. 2 at 11-12; *see also* Ex. 3.[10]

---

[9] This includes Denitza Batchvarova, Hunter Campbell, Seth Krauss, Grant Norris-Jones, Brit Santypal, and Seth Zaslow. *See* Ex. 13.

[10] The Parties are meeting and conferring on Defendants' responses to Plaintiffs' Requests for Admission, but the issues are not yet ripe for resolution by the Court.

**DEFENDANTS' POSITION**

      **A.**      **Defendants' Position Regarding Plaintiffs' Previously Raised Issues**

Plaintiffs' October Letter improperly reasserts the same issues Plaintiffs raised last month and that are briefed, argued and pending before the Court. Defendants continue to await Judge Weksler's guidance on the issues that Plaintiffs now reraise, Defendants briefly address certain of Plaintiffs' renewed complaints—many of which Defendants have already agreed to investigate.

In their prior September Letter—and now again in their October Letter—Plaintiffs contend that Defendants' productions are missing certain categories of documents, including (1) certain fighter compensation data, (2) debt issuance documents, and (3) July 1, 2015 – June 30, 2017 fighter promotion agreements ("PARs"). *See* Dkt. No. 253 at 4-5. The parties addressed each of these categories during the hearing before Judge Weksler on September 29, 2025 (*see* Dkt. No. 260 at 48:22-62:25). Defendants have since agreed to conduct targeted searches and produce certain responsive documents Plaintiffs point to in their October Letter, to the extent any exist (*i.e.*, more granular fighter compensation data, the Deloitte "Fighter Cost Walkthrough," amendments to UFC's August 2016 loan, UFC's "quarterly lender presentations" cited in ENDEAVOR_00056046 for May, August, and December 2018 and April 2019, the July 1, 2015 – June 30, 2017 PARs from Zuffa's document repositories, and the FightMetric "record book"). In their October Letter, Plaintiffs also renew their request for allegedly missing documents in response to Plaintiffs' Second Set of RFPs to Zuffa, but that request is already before Judge Weksler. Plaintiffs also improperly reraise the issue of allegedly missing text messages. While Defendants remain open to conducting a broader review of text messages, Plaintiffs still refuse to actually engage in Defendants' offers to conduct a broader review informed by Defendants' master trackers and October 13 mobile device disclosure, and instead request that Defendants conduct a linear review of *all* text messages. *See infra,* Section B.

      **B.**      **Defendants' Compliance with Disclosures**

On October 13, 2025, Defendants supplied Plaintiffs with a mobile device disclosure with copious information about each of the mobile devices (and certain iPads and iCloud accounts) that Defendants have collected and imaged in response to custodial questionnaires. For each device,

7

1  Defendants disclosed: (1) the name of custodian, (2) phone number, (3) device make/model, (4)
2  serial number, (5) total volume (with families), (6) total number of "Daily Chat Threads," and (7)
3  earliest and latest date of each Daily Chat Thread. (Defs. Oct. 13, 2025 Mobile Device Disclosure).
4  Defendants' disclosures consist of the information the Court inquired about and precisely what
5  Defendants indicated they would provide. *See* Dkt. No. 260, Tr. at 45:15-22, 46:13-47:14, 47:21-
6  48:18 (Judge Weksler inquiring about the feasibility of Defendants providing "a list of all devices
7  and as to each device which custodians it belongs to and the number of communications per
8  device," including "the applicable date range for what [Defendants] collected"). Defendants have
9  also responded to various questions from Plaintiffs about the disclosure, including the meanings
10 of "total volume" and "Daily Chat Threads." (Nov. 7, 2025 Email from R. Medina to Plaintiffs).
11 Similarly, on October 13, Defendants supplied Plaintiffs with a search term hit report of
12 Defendants' search terms. (Defs. Oct. 13, 2025 Search Terms Hit Report). Defendants' hit report
13 includes relevant, industry-standard metrics, including total number of hits, family documents,
14 unique documents, and unique family documents on a per-search-term basis. (*Id.*)

15       Despite Defendants' attempt to engage with Plaintiffs, Plaintiffs continue their "my-way-
16 or-the-highway" approach to discovery and refuse to accept Defendants' invitation to begin to
17 negotiate RFP-by-RFP search terms for Defendants' documents. Instead, Plaintiffs continue to
18 request that Defendants apply each of Plaintiffs' 4,000-plus search terms across 63 custodians.
19 Plaintiffs' refusal to negotiate in good faith over Defendants' offers to expand discovery—and
20 then complain to the Court about alleged deficiencies—is just the latest example of Plaintiffs'
21 desire to create issues where none exist.

22     **C.**    **Plaintiffs' Highly Improper Super Custodian Questionnaire**

23       Along with their 30-page October Letter, Plaintiffs demand Defendants complete a 21-
24 page questionnaire (the "Questionnaire") with **200** standalone, needlessly compound questions
25 addressed to Defendants' Super Custodians. (Oct. 28, 2025 Questionnaire). Even if Plaintiffs'
26 questions were proper (they are not), Plaintiffs entirely sidestep the process that the Court
27 proscribed for the Super Custodians. The Court made clear that the Super Custodians would only
28

serve to provide certain non-privileged[11] information about preservation and collection issues if warranted—in other words, *if* the Court determined, after reviewing Defendants' master trackers, that Defendants' discovery efforts were inadequate. *See* Dkt. No. 240 at 72:22-73:8 and 78:13-20. The Court has made no such finding.

In any event, Plaintiffs' Questionnaire dramatically exceeds the bounds of what the Court envisioned and what the Federal Rules require. The Court's August 29, 2025 Minute Order strictly limits the scope of the Super Custodians' powers, namely, to "be able to respond to the Court's [and Plaintiffs'] questions regarding the—production and availability of materials," and "***that's it***." Dkt. No. 244; Dkt. No. 240, Tr. at 76:3-4 (emphasis added). The Court was explicit that the Super Custodians were not a springboard for Plaintiffs to harass Defendants with unduly burdensome requests for information, but that is exactly what Plaintiffs seek to do now. *See, e.g.*, Dkt. No. 240, Tr. at 76:3-4. ("[I]f this person says to me, 'We have produced everything,' **then *that's it*.**"); *id.* at 74:1-5 ("These super custodians . . . who would [only] have the ability to confirm productions."). Yet, Plaintiffs ask the Super Custodians to disclose privileged communications and work product, redo all of Defendants' custodial surveys, interviews, and collection efforts, to assume devices have been lost or destroyed, and even to provide substantive explanations for why counsel made certain representations (or why they did not make certain other representations). As just a few examples, Plaintiffs have requested the following for virtually every proposed custodian:

- A complete inventory of all the Defendants' "structured data systems," including "all fields available in Defendants' HUB system." Questionnaire, Questions II.1-3.
- "For each text message exchange Defendants have produced," an investigation as to why a text message was produced by one recipient, but not another, and to "explain why that text message is unavailable." *Id.*, Questions II.1-3.
- To identify all devices (*e.g.*, cell phones, desktops, iCloud accounts, and social media) *ever* "used during the course of [their] employment," including steps to migrate data, backup settings, in-service dates, etc. *Id.*, Questions IV.2.e, 3a; *see id.* at 2-20.
- To "explain the circumstances of the loss or destruction of any devices." *Id.*, Question IV.5.iv.

---

[11] *See RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, No. 214CV01232APGGWF, 2017 WL 2292818, at *5 (D. Nev. May 25, 2017) ("the Court is obligated to protect against disclosure of" work product) (citation omitted).

- To "clarify why [certain devices] have been omitted from Defendants' July 3 and October 13 device disclosures (*i.e.*, disclosures prepared by counsel). *Id.* Question IV.15.a.

Plaintiffs' Questionnaire also asks for information Defendants already provided in their July 3 and October 13 disclosures. *See, e.g.*, *id.*, Question IV.2.ii. ("[P]lease identify the total volume of messages (including all messages on communications apps or platforms and all native text messages) (with families), the number of "Daily Chat Threads," and the earliest and latest dates of available messages.") Plaintiffs ironically both complain about Defendants' disclosures and also ask the Super Custodians to do them again exactly as Defendants did. There is no basis for Plaintiffs' questionnaire, which effectively would subject Defendants to improper requests to divulge privileged information as part of Plaintiffs' alleged spoliation-fishing expedition.[12]

### D. Defendants' Master Tracker

Plaintiffs contend that Defendants' master trackers are deficient because they group certain RFPs together and include reference to non-responsive documents. But Judge Weksler already heard argument on the sufficiency of Defendants' master trackers. *See, e.g.*, Dkt. No. 260, Tr. at 16:19-17:16; 20:20-21:10. Even so, Plaintiffs' arguments are nonsensical. Defendants' master trackers contain an inventory of documents by individual RFP. To the extent certain documents overlap across RFPs in the accompanying excels, that is simply a function of Plaintiffs' duplicative RFPs covering the same or similar issues and a document being responsive to multiple RFPs. Plaintiffs have since improperly asked Defendants to divulge attorney work product and disclose the document review protocols underlying the master trackers.

### E. Defendants' Responses to Plaintiffs' First Set of Requests For Admissions

On September 12, 2025, Defendants responded to Plaintiffs' First Set of Requests for Admissions ("RFAs"). (Defs. Sept. 12, 2025 Responses and Objections). Plaintiffs' RFAs ask Defendants to authenticate and verify the accuracy of various video statements that Plaintiffs attached and allege Defendants made. Nearly all videos were a "clip" that contained only one

---

[12] Plaintiffs make the unsubstantiated and unwarranted suggestion that spoliation has occurred. Unfortunately, this is just the latest example of Plaintiffs' preference for mudslinging rather than good faith engagement with the discovery process. Nevertheless, Defendants remain committed and will continue their good faith discovery participation.

speaker's portion of the press conference. As such, Defendants could not truthfully admit that those videos were true, accurate, or complete representations of the entire event (or of a specific person's statement). Where Defendants had the original, complete video, Defendants denied the RFA (because Plaintiffs' statement was not true, that is, Plaintiffs' clip was not a complete and accurate representation of the actual underlying media). Where Defendants did not, Defendants rightly represented they had insufficient information, because Defendants could not test the veracity of the statement. Plaintiffs' October Letter effectively asks Defendants to misrepresent the truth by forcing Defendants to confirm the accuracy and completeness of Plaintiffs' incomplete videos.

Dated:  November 10, 2025

Respectfully Submitted,

By: *s/ Michael Dell'Angelo*
Eric L. Cramer (*Pro hac vice*)
Michael Dell'Angelo (*Pro hac vice*)
Patrick F. Madden (*Pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
ecramer@bergermontague.com
mdellangelo@bergermontague.com
pmadden@bergermontague.com

Joshua P. Davis (*Pro Hac vice*)
Kyla Gibboney (*Pro Hac vice*)
Robert C. Maysey (*Pro Hac vice*)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Phone: (415) 215-0962
jdavis@bergermontague.com
kgibboney@bergermontague.com
rmaysey@bergermontague.com

*Counsel for Plaintiffs and the Proposed Classes*

Benjamin D. Brown (*Pro hac vice*)
Richard A. Koffman (*Pro hac vice*)
Daniel H. Silverman (*Pro hac vice*)
COHEN MILSTEIN SELLERS
  & TOLL, PLLC
1100 New York Ave., N.W., Suite 500
Washington, DC 20005
Phone: (202) 408-4600
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

By: *s/ Christopher S. Yates*
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8095

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@DIRLLP.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@DIRLLP.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004

| | | |
|---|---|---|
| 1 | Joseph R. Saveri (*Pro hac vice*) | DONALD J. CAMPBELL (No. 1216) |
| 2 | Christopher Young (*Pro hac vice*)<br>Kevin E. Rayhill (P*ro hac vice*) | djc@campbellandwilliams.com<br>J. COLBY WILLIAMS (No. 5549) |
| 3 | JOSEPH SAVERI LAW FIRM, INC.<br>601 California St., Suite 1000 | jcw@campbellandwilliams.com<br>CAMPBELL & WILLIAMS |
| 4 | San Francisco, CA 94108<br>Telephone: +1 (415) 500-6800 | 700 South 7th Street<br>Las Vegas, Nevada 89101 |
| 5 | Email: jsaveri@saverilawfirm.com<br>Email: krayhill@saverilawfirm.com | Tel: (702) 382-5222 |
| 6 | Email: cyoung@saverilawfirm.com | *Attorneys for Defendant Zuffa, LLC, TKO* |
| 7 | W. Joseph Bruckner (*Pro hac vice*) | *Operating Company, LLC, and Endeavor*<br>*Group Holdings, Inc.* |

1   Joseph R. Saveri (*Pro hac vice*)
2   Christopher Young (*Pro hac vice*)
    Kevin E. Rayhill (P*ro hac vice*)
3   JOSEPH SAVERI LAW FIRM, INC.
    601 California St., Suite 1000
4   San Francisco, CA 94108
    Telephone: +1 (415) 500-6800
5   Email: jsaveri@saverilawfirm.com
    Email: krayhill@saverilawfirm.com
6   Email: cyoung@saverilawfirm.com
7
    W. Joseph Bruckner (*Pro hac vice*)
8   Brian D. Clark (*Pro hac vice*)
    LOCKRIDGE GRINDAL NAUEN PLLP
9   100 Washington Ave S, Suite 2200
    Minneapolis, MN 55401
10  Phone: (612) 596-4001/Fax: (612) 339-0981
    wjbruckner@locklaw.com
11  bdclark@locklaw.com

12  Kyle J. Pozan (*Pro hac vice*)
    LOCKRIDGE GRINDAL NAUEN PLLP
13  1165 N. Clark Street, Ste. 700
    Chicago, IL 60610
14  Phone: (612) 339-6900
    Email: kjpozan@locklaw.com
15

16  *Additional Counsel for Plaintiffs and the*
    *Proposed Classes*
17
    Michael J. Gayan
18  CLAGGETT & SYKES
    4101 Meadows Lane, Suite 100
19  Las Vegas, NV 89107
    Tel: (702) 333-7777
20  mike@claggettlaw.com

21  *Liaison Counsel for Plaintiffs and the*
22  *Proposed Classes*

                    DONALD J. CAMPBELL (No. 1216)
                    djc@campbellandwilliams.com
                    J. COLBY WILLIAMS (No. 5549)
                    jcw@campbellandwilliams.com
                    CAMPBELL & WILLIAMS
                    700 South 7th Street
                    Las Vegas, Nevada 89101
                    Tel: (702) 382-5222

                    *Attorneys for Defendant Zuffa, LLC, TKO*
                    *Operating Company, LLC, and Endeavor*
                    *Group Holdings, Inc.*

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Joint Status Report Re: Discovery Deficiencies October 2025 was served on November 10, 2025 via the Court's CM/ECF electronic filing system addressed to all Parties on the e-service list.

/s/ Michael Dell'Angelo