IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated, | No.: 2:21-cv-01189-RFB |
| PLAINTIFFS, | |
| v. | **PLAINTIFFS' DECEMBER 9, 2025 STATEMENT REGARDING DEFENDANTS' MISSING DEVICE DISCLOSURE DATA AND INFORMATION PURSUANT TO THE COURT'S ORDER OF DECEMBER 4, 2025** |
| ZUFFA, LLC, TKO OPERATING COMPANY, LLC f/k/a ZUFFA PARENT LLC (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC., | |
| DEFENDANTS. | |
| MIKHAIL CIRKUNOVS, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | |
| ZUFFA LLC, TKO OPERATING COMPANY, LLC f/k/a ZUFFA PARENT LLC (D/B/A ULTIMATE FIGHTING CHAMPIONSHIP and UFC) and ENDEAVOR GROUP HOLDINGS, INC., | No.: 2:25-cv-914-RFB |
| Defendants. | |
| PHIL DAVIS, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | |
| ZUFFA LLC, TKO GROUP HOLDINGS, INC. (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC., | No.: 2:25-cv-00946-RFB |
| Defendants. | |

CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

**PUBLIC/REDACTED VERSION**

At the December 4, 2025, status conference, the Court issued Orders setting deadlines governing certain discovery issues:

| | |
|---|---|
| December 5, 2025 | Defendants provide hit report on Plaintiffs' December 1, 2025 arbitration document search term proposal. Dec. 4, 2025 Hr'g Tr. at 57:2–10. |
| December 8, 2025 | Plaintiffs serve Defendants with revisions to arbitration document search term proposal. *Id.* at 57:2–10 |
| December 9, 2025 | Plaintiffs file list detailing information missing from Defendants' disclosures of employee devices and ESI sources. *Id.* at 16:20–25, 18:25–19:2. |
| December 10, 2025 | Defendants provide hit report on Plaintiffs' December 8, 2025 arbitration document search terms revision. *Id.* at 58:13–15. |
| December 11, 2025 | Defendants confirm the existence of centralized "fighter files," including the categories of documents included within such files as well as whether such files contain documents reflecting fighter contract negotiation correspondence. *Id.* at 51:13–15, 52:2–6, 54:22–55:6. |
| December 11, 2025 | Plaintiffs serve Defendants with revisions to arbitration documents search terms. *Id.* at 57:2–64:4. |
| December 12, 2025 | Defendants provide hit report on Plaintiffs' December 11, 2025 arbitration document search term revision. *Id.* at 60:18–21. |
| December 14, 2025 | Plaintiffs serve Defendants with final arbitration documents search term proposal. *Id.* at 60:18–21. |
| December 15, 2025 | Defendants provide hit report on Plaintiffs' December 14, 2025 final arbitration document search term revision. *Id.* at 63:18–20. |
| December 15, 2025 | Defendants file statement responding to Plaintiff's statement detailing information missing from Defendants' disclosures on employee devices and ESI sources. This statement will include the identity of the mobile wireless carriers of every employee Defendants have listed in their prior disclosures. The statement will also state whether each employee has a personal mobile device that they claim they do not use for business purposes. *Id.* at 6:11–13, 19:3–20. |
| December 16, 2025 | Parties file statements reflecting their positions on the scope of questioning of Dana White and Tracy Long at spoliation hearing. *Id.* at 70:18–23. |
| December 16, 2025 | Parties file statements reflecting their positions on Plaintiffs' final arbitration document search term proposal. *Id.* at 63:18–20. |

CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' DECEMBER 9 STATEMENT REGARDING DEFENDANTS' MISSING DEVICE DISCLOSURE DATA AND INFORMATION
PURSUANT TO THE COURT'S ORDER OF DECEMBER 4, 2025

Pursuant to this Ordered schedule, Plaintiffs hereby provide a list detailing certain information missing from Defendants' disclosures of employee devices and ESI sources dated April 23, July 3, and October 13, 2025 ("Defendants' Disclosures").[1]

### I.    Defendants' Disclosures of Employee Devices and ESI Sources

Pursuant to the Court's directive at the December 4, 2025 hearing, Plaintiffs attach as Exhibit 1 a "Device Disclosure Chart" that summarizes the information Defendants have provided across Defendants' Disclosures. Plaintiffs' Device Disclosure Chart leaves blanks for information that Defendants have not provided in their disclosures to date and which Plaintiffs request Defendants provide on or before December 15, 2025, pursuant to the Court's schedule or otherwise be ordered to do so promptly.

This is not the first time that Plaintiffs have identified the omitted information; rather, each of the categories of information requested here has been previously requested multiple times. The following narrative details the history of Plaintiffs' efforts to obtain the information identified as missing on Exhibit 1.

> Plaintiffs request that Defendants supply the information about their employees' devices and ESI sources that is missing as indicated in Exhibit 1 or certify that such information does not exist.

#### A.  April 23, 2025 Disclosure

Plaintiffs have long sought information on the devices that Defendants have located and the extent to which the data on such devices has been preserved. Defendants agreed in writing to meet and confer, including by exchanging information relating to sources of ESI that need to be preserved.[2] In furtherance of that meet and confer, during a January 8, 2025 meet and confer and follow-up letter, Plaintiffs requested information on the devices that Defendants had identified and

---

[1] Dec. 4, 2025 Hr'g Tr. at 18:25–19:2.

[2] *See* ECF No. 183-2 ("We will agree that the parties will meet and confer about preservation . . . including exchanging information regarding ESI that is being preserved . . . [and] the types of ESI the parties believe should be preserved . . . .")

1    preserved from their employees.[3] Defendants were unprepared to answer during the meet and

2    confer.[4]

3           In a January 23, 2025 letter, Defendants represented that they lacked possession, custody, or

4    control over certain employees' communication devices because they were purportedly "personal."[5]

5    Rather than debate the issue, Plaintiffs sought to subpoena 23 of Defendants' employees ("Individual

6    Subpoena Recipients")[6] for information about their devices and the production of business

7    communications regarding Defendants made from their allegedly personal devices.[7] Plaintiffs

8    requested that Defendants' counsel accept service of the Individual Subpoena Recipients' subpoenas

9    multiple times, beginning with Plaintiffs' February 17, 2025 letter, but Defendants' counsel did not

10    agree to accept service for any of the Individual Subpoena Recipients until March 19, 2025.[8] When

11    Defendants' counsel responded to the subpoenas on behalf of 15 of the 22 served Individual

12    Subpoena Recipients, they represented that they "will not produce any documents . . . unless a court

13    orders otherwise."[9]

14           Plaintiffs then repeatedly attempted to gain information about the devices that Defendants

15    had identified for preservation and collection. During the parties' March 31, 2025 meet and confer

16    regarding Plaintiffs' discovery requests to Defendants, Plaintiffs requested that Zuffa provide

17

18    [3] *See* ECF No. 217-5.

19    [4] *Id.*

20    [5] *See* ECF No. 217-6; *see also* ECF No. 217 at 2, 7 & n.3. However, as discussed in Plaintiffs' May
       23, 2025 letter, ECF No. 217-29, Plaintiffs contest that Zuffa lacks possession, custody, and control
21    over employees' personal devices used for business purposes.

22    [6] Plaintiffs sought to serve 23 individual subpoenas to Defendants' current and former employees.
       Defendants' counsel accepted service for and represents 19 of those individuals, as follows: (1) Dana
23    White, (2) Ari Emanuel, (3) Craig Borsari, (4) Patrick Whitesell, (5) Jason Lublin, (6) Mark Shapiro,
       (7) Andrew Schleimer, (8) Seth Krauss, (9) Sean Shelby, (10) Mick Maynard, (11) Ike Lawrence
24    Epstein, (12) Marc Ratner, (13) Tracy Long, (14) Hunter Campbell, (15) Peter Dropick, (16) Grant
       Norris-Jones, (17) Denitza Batchvarova, (18) Egon Durban, and (19) Joe Silva.
25
       [7] *See* ECF No. 217-7; *see also* ECF No. 217 at 2 & n.3; *id.* at 7.
26
       [8] *See* ECF Nos. 217-7, 217-49; *see also* ECF No. 217 at 7 & n.14.
27
       [9] *See* ECF No. 217 at 2 n.3; ECF No. 183-7 at 4.

28

3    CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' DECEMBER 9 STATEMENT REGARDING DEFENDANTS' MISSING DEVICE DISCLOSURE DATA AND INFORMATION
PURSUANT TO THE COURT'S ORDER OF DECEMBER 4, 2025

information regarding the identity of Defendants' employees subject to a litigation hold, the ESI sources from which Defendants collected potentially relevant documents, and the types of documents Defendants preserved.[10] On April 7, 2025, Defendants responded by asserting that "data from individuals' personal social-media accounts or communications made from mobile devices— are either not reasonably accessible or not in the possession, custody, or control of Zuffa."[11]

Following the parties' April 9 meet and confer, Plaintiffs requested clarity on Defendants' claim that material on their employees' personal devices "is not reasonably accessible and . . . is not in its possession custody or control."[12] Plaintiffs specifically requested that Defendants' counsel identify (regardless of whether responding in counsel's role as Defendants' counsel or counsel to the Individual Subpoena Recipients):

    i.    Enterprise *(i.e.*, company issued) and personal devices used by each individual to conduct any business on behalf of any Defendant;

    ii.    Each device cataloged by Defendants and which of those devices had been imaged;

    iii.    Whether a device was connected to an enterprise email account;

    iv.    Communication platforms (personal or enterprise) used by the device holder for business on behalf of any Defendant;

    v.    Any backups of the device, and, if backed up, whether any files exist on Defendants' servers, in the cloud or elsewhere;

    vi.    Any business-related communications that are or were not backed up;

---

[10] *See, e.g.*, ECF No. 217-15 (Pls.' Apr. 2, 2025 Letter describing Defendants' failure to identify ESI sources to be searched on the March 31 meet and confer); Ex. 2, Defs.' Apr. 7 Ltr. at 2 (noting Plaintiffs requested that Zuffa provide information on individuals subject to a legal hold, the sources of ESI Zuffa identified as containing potentially relevant ESI, and the types of documents being preserved); Ex. 3, Pls. Apr. 11 Ltr. (summarizing Plaintiffs' requests for specific information about custodial devices).

[11] Ex. 2, Defs.' Apr. 7 Ltr. at 2. Defendants reiterated this position in an April 30 email. ECF No. 217-51 at 4 ("[W]e maintain that the subpoena recipients' personal devices and personal communications therein are outside of Defendants' possession custody and control."). And Defendants agreed to "mak[e] all good-faith efforts to collect and produce [business communications via text message via the Individual Subpoena Recipients' personal devices]." *Id.* at 6.

[12] Ex. 3, Pls. Apr. 11 Ltr. at 1. Defendants had "indicated that [they] did not have that information at hand but agreed to provide it." *Id.*

vii.   Relevant individual's whose devices had not been cataloged and the reasons why; and

viii.  All enterprise and non-enterprise communication platforms (*i.e.*, email, Slack, Signal, etc.) used by each individual to conduct business on behalf of any Defendant.[13]

Defendants' April 23 response ("April 23 Disclosure") failed to respond to many of Plaintiffs' requests and omitted all information for many individuals.[14]

***First,*** Defendants did not include any information regarding the above items (ii), (iii), (iv), (v), (vi), (vii), and (viii). The April 23 Disclosure also did not include device serial numbers, the dates on which each device was first and last used, or the mobile wireless carriers connected to each device.[15]

***Second,*** to the extent Defendants' April 23 Disclosure included any of the requested information, the information provided was vague or incomplete. For example, the April 23 Disclosure included an unspecified indication of the existence of "other devices with potentially relevant information."[16] The April 23 Disclosure also included an unspecified reference to "non-enterprise source(s) with potentially relevant data, including computers and hard drives for several individuals."[17] However, Defendants denied having access to any of these devices, stating: "Zuffa confirms it does not have access to, or possession, custody, and control over, individuals' personal social media accounts and/or communications made from personal devices via non-enterprise communication channels, *e.g.*, text messages sent from a personal device."[18] Plaintiffs understand that these are devices and accounts that are subject to their subpoenas to the Individual Subpoena Recipients. Further, Plaintiffs understand that many, if not all, of these devices have been used for business purposes, *e.g.*, to send business-related texts, emails, and/or non-SMS communications via

---

[13] *Id.*

[14] *See* Ex. 4, Defs.' Apr. 23 Email at 2–4.

[15] *See id.*

[16] *See id.*; *see also* ECF No. 217-24 at 4–5 (requesting information on the meaning of "Other Devices with Potentially Relevant Information").

[17] *See* Ex. 4, Defs.' Apr. 23 Email at 3–4.

[18] *See id.* at 3.

CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

various platforms. Regardless of whether business communications were made on enterprise devices or personal devices, Defendants' employees had an obligation to preserve them.

**Third,** to the extent Defendants provided any of the information requested (complete or otherwise), Defendants only did so for 15 of the 27 employees Defendants identified as potentially possessing responsive material, thereby omitting all information for the remaining 12.[19]

B.  July 3, 2025 Disclosure

Due to the defects in the April 23 Disclosure and Defendants' failure to remedy them, Plaintiffs raised the device disclosure issues with the Court during the June 3, 2025 status conference. The Court agreed that the requested information was "fairly basic" and a "simple thing" to provide.[20] The Court Ordered Defendants "to provide to Plaintiffs a listing of information related to business and personal phones, phone numbers, and apps or programs being used on these devices during the relevant time period, as described on the record."[21] The Court specifically Ordered Defendants to include **both "business and personal" devices**.[22]

On July 3, 2025 Defendants provided Plaintiffs with an incomplete disclosure that they purported complied with that June 3 Order ("July 3 Disclosure").[23] According to Defendants, their July 3 Disclosure included "all information related to the mobile devices imaged on behalf of" Defendants and the Individual Subpoena Recipients.[24] However, the July 3 Disclosure provided information for only approximately *half* of their employees whose files *Defendants* had proposed to search, the information Defendants provided for the other half of their employees they proposed to

---

[19] *Id.* at 3–4. Defendants failed to disclose mobile device and ESI source information for Akosa Akpom, David Avery, Denitza Batchvarova, Nakisa Bidarian, Tracy Bleczinski, Deborah Cook, Chad Hurley, Michael Mossholder, Grant Norris-Jones, Brit Santypal, David Shaw, Mark Shapiro, Joseph Silva, Seth Zaslow, and Marshall Zelaznik.

[20] *See* June 3, 2025 H'rg Tr. at 48:13–14, 49:13–16.

[21] ECF No. 202, June 3, 2025 Minute Order.

[22] June 3, 2025 Hr'g Tr. at 51:7–8.

[23] *See* Ex. 5, Defs.' July 3 Ltr.

[24] *See* ECF No. 183-7; ECF No. 217 at 2 & n.3; ECF No. 274 at 6–7; Ex. 6, Pls.' Sept. 12 Ltr. at 10.

search was incomplete, and Defendants did not supply information concerning many of the Individual Subpoena Recipients whom Defendants' counsel represent.[25] Moreover, while the Court Ordered Defendants to supply this information for both business and personal devices,[26] Defendants did not provide it for personal devices (even where such devices have been used for business).

The July 3 Disclosure also omitted certain devices previously identified in Defendants' April 23 Disclosure and devices reflected in Defendants' productions and/or the public realm as used by Defendants' employees for business purposes.[27] And the July 3 Disclosure did not identify all communications platforms that each employee used on each device. When Plaintiffs raised these completeness issues with Defendants by letter on July 9, 2025,[28] Defendants failed to respond.

Plaintiffs then moved to compel a complete July 3 Disclosure and for sanctions.[29] Plaintiffs further followed up on several occasions in an effort to obtain the omitted information, including by letter on September 12, 2025 (and its attached Discovery Worksheet), at the September 29 hearing, in the October 23, 2025 Joint Status Report discussing the sanctions motion, in Plaintiffs' October 28, 2025 deficiency letter and attached Super Custodian Questionnaire, in Plaintiffs' November 7, 2025 filing concerning the missing discovery, and in the November 10, 2025 Joint Status Report.[30]

---

[25] *See* Ex. 5, Defs.' July 3 Ltr. at 4–6; *see also* Ex. 7 (Pls. July 9, 2025 Letter detailing the deficiencies with the July 3 Disclosure, including that it omits TKO-proposed custodians Denitza Batchvarova, Grant Norris-Jones, Brittany Santypal, Seth Zaslow, David Avery, Deborah Cook, and Akosa Akpom; omits Zuffa-proposed custodians, Nakisa Bidarian, Chad Hurley, Michael Mossholder, Joe Silva, and Marshall Zelaznik; and omits Individual Subpoena Recipients Egon Durban, and Seth Krauss).

[26] June 3, 2025 Hr'g Tr. at 51:7–8.

[27] *See* Ex. 5, Defs.' July 3 Ltr. at 4–6; Ex. 7 (Pls.' July 9, 2025 Letter detailing the deficiencies with the July 3 Disclosure); *see also* Ex. 1, Device Disclosure Chart.

[28] Ex. 7, Pls.' July 9 Ltr.

[29] *See generally* ECF No. 217.

[30] *See* Ex. 6 (Pls.' Sept. 12, 2025 Letter and Discovery Worksheet); Sept. 29, 2025 Hr'g Tr. at 23:15–28:5 (discussing the failures of the July 3 Disclosure and attempting to obtain an Order for a complete disclosure); Oct. 23, 2025 Joint Status Report, ECF No. 274 at 8–9; Ex. 10 at 12–13 (Pls. Oct. 28, 2025 letter); the Super Custodian Questionnaire, Ex. 11 (seeking omitted information required to have been included in the July 3 Disclosure); *Cirkunovs*, ECF No. 72 at 38–40 & n.11; Nov. 10, 2025 Joint Status Report, ECF No. 291 at 2–3.

In response, Defendants repeatedly claimed, falsely, that this Court had blessed their July 3 Disclosure as adequate—despite the Court's repeated statements to the contrary—and have refused to supplement it.[31]

To date, Defendants have never supplemented their July 3 Disclosure to include the incomplete or omitted information. Just last week, on December 4, 2025, Defendants *again* claimed that their July 3 Disclosure was complete, and professed ignorance as to how they could make it more complete.[32] As set forth herein and in the reams of correspondence and briefing on this issue (set out only partially in fn.30, *supra*), the July 3 Disclosure is incomplete because it omits custodians and devices that Defendants know about or should (with minimal diligence) have discovered (and even without such minimal diligence, Plaintiffs have repeatedly identified information omitted that has never been supplied). Defendants must supplement with the required information.

Plaintiffs detail below all of the information—about which Plaintiffs know, and which Defendants know or should know about given that Plaintiffs have sourced the omissions from Defendants' productions and/or the public sphere—that Defendants have omitted from the July 3 Disclosure and have yet to remedy. For clarity, Plaintiffs are not asking Defendants to disclose the information Plaintiffs know, but rather Plaintiffs seek that Defendants disclose all the information about these devices and/or the communications platforms in use on each of these devices (or where Plaintiffs identify a communications platform, Plaintiffs seek the identity of the device(s) on which such platform was in use). Such disclosure should also include all the other information Defendants have been required to disclose since July 3 (*e.g.*, the dates and quantities of text and non-SMS communications on each device and each device's carrier information).

---

[31] *See, e.g.*, *Cirkunovs*, ECF No. 72 at 38–40 (summarizing the history of these requests and Defendants' refusals to complete their disclosure).

[32] *See, e.g.*, Dec. 4, 2025 Hr'g Tr. at 5:7–6:9 (claiming that the July 3 Disclosure was complete and that there was nothing to supplement).

C.  October 13, 2025 Disclosure

At the September 29, 2025 status conference, Magistrate Judge Weksler Ordered Defendants to make a third device disclosure on or before October 13, 2025.[33] The Court specifically Ordered Defendants to "provide a list of devices and how many communications there are per device."[34] In response, Defendants provided a disclosure on October 13 ("October 13 Disclosure"), which purported to be a comprehensive review of all collected and imaged devices and that "identified the volume of materials collected from phones on a per-custodian basis."[35]

The October 13 Disclosure was both incomplete (like the April 23 and July 3 Disclosures) and inconsistent with prior disclosures. Specifically, the October 13 Disclosure fails to comply with the Magistrate Judge Weksler's Order in that it fails to: (i) list a device for each of Defendants' proposed custodians,[36] and nearly all of Plaintiffs' proposed custodians;[37] and (ii) omits devices for even those custodians listed and, therefore omits the required disclosure of information concerning those devices.[38] Indeed, certain of these missing devices from the October 13 Disclosure were clearly known to Defendants because they appeared on the April 23 Disclosure, albeit without the information required to be disclosed in the October 13 Disclosure (and Defendants have also omitted these devices from the July 3 Disclosure and thus have not supplied the information about these

---

[33] Sept. 29, 2025 Hr'g Tr. at 45:15–24.

[34] *Id.* at 45:15–19.

[35] Ex. 8, Defs.' Oct. 13 Email and Device Disclosure.

[36] Among Defendants' agreed-upon custodians, the October 13 Disclosure omits Akosa Akpom, David Avery, Denitza Batchvarova, Nakisa Bidarian, Deborah Cook, Chad Hurley, Michael Mossholder, Grant Norris-Jones, Brit Santypal, Joseph Silva, Seth Zaslow, and Marshall Zelaznik.

[37] Among Plaintiffs' proposed custodians to which Defendants have not agreed to search, the October 13 Disclosure omits Albert Acosta, Osvaldo Arias, Tony Barboza, Buffy Curtis, Nichole Durand, Egon Durban, Jamie Euster, Keith Freidenberg, Graham Fry, Tim Gardner, Rami Genauer, Christoph Goessing, Krista Hall, Shane Kapral, Ajay Madkekar, David Phillips, Chris Provino, Zach Rose, Jonathan Shin, Brandon Stuckenberg, Crowley Sullivan, Blake Ulrich, Marc Webster, Matt Woodmancy, Chika Yoshinaga, Nick Zombolas, and Sam Zussman.

[38] *Id.*; *see also* Ex. 1, Device Disclosure Chart.

CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

1    devices required in that disclosure either).[39]

2        In addition, Defendants' October 13 Disclosure omitted critical information about

3    employees' computers. The October 13 Disclosure omitted Apple laptop and desktop computers that

4    Defendants identified in their April 23 Disclosure as belonging to Andrew Schleimer, Ariel

5    Emanuel, Craig Borsari, Hunter Campbell, Mark Shapiro, Mick Maynard, Sean Shelby, and Seth

6    Krauss. Likewise, the October 13 Disclosure omitted Windows laptop and desktop computers that

7    Defendants previously identified in their April 23 Disclosure as belonging to Craig Borsari, Peter

8    Dropick, Lawrence Epstein, Tracy Long, Jason Lublin, Grant Norris-Jones, Dana White, and Patrick

9    Whitesell.

10       Further, Defendants' October 13 Disclosure did nothing to assuage Plaintiffs' concerns about

11   spoliation—which Plaintiffs first raised to Defendants on February 17, 2025[40]—as it revealed

12   significant date gaps in the collection of documents from employee devices. For example,

13   Defendants failed to collect any documents from any device belonging to Dana White prior to July

14   3, 2020 or during the period between May 20, 2022 and November 14, 2024, nor any documents

15   from any device belonging to Tracy Long from before November 4, 2020 or between May 18, 2022

16   and October 18, 2023.[41] Moreover, Defendants' October 13 Disclosure identified gaps in the

17   collection of documents from the devices of other key employees, such as Hunter Campbell.[42]

18       Plaintiffs requested further information on these date gaps, omitted devices, and potential

19   backups in Plaintiffs' October 28 Letter, and asked specific questions of Defendants' Super

20   Custodians concerning these omitted devices, date gaps, and whether backups of the data exist.[43]

21

22

23   [39] *See* Ex. 8, Defs.' Oct. 13 Device Disclosure; *see also* Ex. 10, Pls.' Oct. 28 Ltr. at 13.

24   [40] *See* Ex. 9, Pls' Feb. 17, 2025 Ltr. at 4.

25   [41] *See* Ex. 10, Pls.' Oct. 28 Ltr. at 16; Ex. 8, Defs.' Oct. 13 Device Disclosure; *see also* Ex. 1, Device
     Disclosure Chart.

26   [42] Ex. 8, Defs.' Oct. 13 Device Disclosure; *see also* Ex. 1, Device Disclosure Chart.

27   [43] See Exs. 10–11 (Pls.' Oct. 28, 2025 letter and attached Super Custodian Questionnaire).

28

10    CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' DECEMBER 9 STATEMENT REGARDING DEFENDANTS' MISSING DEVICE DISCLOSURE DATA AND INFORMATION
PURSUANT TO THE COURT'S ORDER OF DECEMBER 4, 2025

1  Defendants have refused to supply any of the information requested or otherwise explain the date

2  gaps or omitted devices or confirm whether any backups exist.

3        D.  <u>Defendants Violated the Court's Orders</u>

4        On July 27, 2025, Plaintiffs filed a motion seeking sanctions for, *inter alia*, Defendants'

5  failure to comply with the Court's June 3 device disclosure Order.[44] At status conferences on August

6  26, 2025 and November 20, 2025, the Court confirmed that Defendants' deficient July 3 Disclosure

7  violated the Court's June 3 Order.[45] Defendants have never supplemented their July 3 Disclosure nor

8  their October 13 Disclosure, and thus, the violations of the Court's Orders to provide those

9  disclosures remain entirely unresolved.

10        Specifically, at the November 20 status conference, the Court stated that it had "previously

11  ordered specific and detailed disclosure of device information regarding relevant custodians, but in

12  particular those individuals who have been identified with negotiations," and found that "this is still

13  not complete or done."[46] The Court described these failures as an "ongoing pattern of discovery

14  violations" and "disclosure misconduct."[47] The Court further found that the deficiencies in

15  Defendants' disclosures reflected "significant indicia of spoliation of relevant evidence" that "should

16  have been preserved."[48]

17  **II.  Omitted Information from Defendants' Disclosures**

18        A.  <u>Employees Omitted from Defendants' Disclosures</u>

19        In sum, Defendants have only disclosed devices for 16 of the 27 current and former

20  employees whose files Defendants purport to have searched: Ariel Emanuel, Peter Dropick, Mark

21  Shapiro, Sean Shelby, Andrew Schleimer, Craig Borsari, Mick Maynard, Hunter Campbell,

22

23  [44] *See* ECF No. 217, Pls.' Mot. for Sanctions at 1–2, 11–13.

24  [45] Aug. 26, 2025 Hr'g Tr. 36:3–4, 45:5–19; Nov. 20, 2025 Hr'g Tr. at 59:24–60:8.

25  [46] Nov. 20, 2025 Hr'g Tr. at 60:1–8.

26  [47] *Id.* at 60:9–12; *see also id.* at 61:20-24 (Defendants "engaged for months in a pattern of discovery disclosure failures").

27  [48] *Id.* at 62:1–10.

28

CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

Lawrence Epstein, Patrick Whitesell, David Shaw, Jason Lublin, Tracy Long, Dana White, and Tracey Bleczinski.[49] Defendants have also only disclosed the devices identified for three of the 30 current and former employees Plaintiffs proposed and to which Defendants have not agreed to search.[50] Defendants have never responded to Plaintiffs' requests for explanations as to why these individuals were omitted from Defendants' disclosures.[51]

       B.  <u>Known Devices Omitted from Defendants' Disclosures</u>

       Documents within Defendants' production reveal the existence of at least twelve devices used to conduct UFC business that were omitted from each of Defendants' disclosures—ten belonging to the employees whose files Defendants purport to have searched and two belonging to employees Plaintiffs requested to be searched. Defendants have refused to respond to Plaintiffs' request for an explanation why devices referenced in documents within Defendants' production were omitted from Defendants' disclosures.[52] The *known* omitted devices, thus far, are as follows:

       ***First,*** Plaintiffs identified additional devices used by Dana White. In addition to the iPhone 16 Pro with the phone number ending -0682, which Defendants omitted from their July 3 Disclosure (and have never provided information required in that disclosure for that device),[53] Plaintiffs have

---

[49] Ex. 4, Defs.' Apr. 23 Email at 2–4; Ex. 5, Defs.' July 3 Ltr. at 4–6; Ex. 8, Defs.' Oct. 13 Email & Device Disclosure. Defendants have never disclosed devices for the following current and former employees whose files Defendants have agreed to search: Akosa Akpom, David Avery, Denitza Batchvarova, Nakisa Bidarian, Deborah Cook, Chad Hurley, Michael Mossholder, Brit Santypal, Joseph Silva, Seth Zaslow, or Marshall Zelaznik.

[50] Nov. 10, 2025 Joint Status Rep. at 3; Oct. 28 Ltr. at 12; This includes Albert Acosta, Osvaldo Arias, Tony Barboza, Buffy Curtis, Nichole Durand, Egon Durban, Jamie Euster, Keith Freidenberg, Graham Fry, Tim Gardner, Rami Genauer, Christoph Goessing, Krista Hall, Shane Kapral, Ajay Madkekar, David Phillips, Chris Provino, Zach Rose, Jonathan Shin, Brandon Stuckenberg, Crowley Sullivan, Blake Ulrich, Marc Webster, Matt Woodmancy, Chika Yoshinaga, Nick Zombolas, and Sam Zussman. Ex. 48, Device Collection Date Chart; Ex. 1, Device Disclosure Chart.

[51] Ex. 10 at 12–13, Oct. 28 Ltr.; Ex. 11 Oct. 28 Super Custodian Questionnaire.

[52] Ex. 10 at 17, Oct. 28 Ltr; Ex. 11, Oct. 28 Super Custodian Questionnaire.

[53] Indeed, Plaintiffs specifically raised this device in their July 9 letter, Ex. 7, and then in Court on August 26, 2025, *see* Tr. at 40:6-41:16. Defendants had previously disclosed that they identified an iPhone 16 Pro in the April 23 Disclosure but omitted that device from the July 3 Disclosure and have still never provided the communications apps on that iPhone 16 Pro device. This information is

identified at least two other devices (likely at least three or four) that White has used for business

and which Defendants have not disclosed in any of Defendants' Disclosures. Zuffa disclosed in *Le*

that White has sent and received business communications on an iPhone (unknown model(s)) with

the phone number ending ████.[54] Such device was used at least "throughout 2015," *i.e.*, during the

*Johnson* relevant discovery period, but it is unclear when White ceased using the device or number

for business purposes.[55] Moreover, although White claimed that he used this ████ iPhone as his

"personal phone," he admitted under oath at his deposition that he had used it to conduct Zuffa-

related business.[56] Zuffa also disclosed in *Le* an iPhone 6 with the phone number ending ████ as a

device White used for business at least into 2017. Zuffa was aware of this device in 2017 but

apparently did not collect it when the device went out of service (likely shortly after Mr. White's

deposition in August 2017). The absence of this device likely explains the lack of text messages and

communications platform data for White from July 1, 2015 to some date in 2017. White likely also

had a device with the ████ number that he used between that iPhone 6 and his July 2020 iPhone 11

(likely an iPhone 8 or iPhone X). The absence of this iPhone 8 or iPhone X likely explains the gap in

available texts for White from 2017 to July 2020. Finally, White likely had at least one iPhone with

the ████ number and/or the ████ number (likely an iPhone 13) between the disclosed iPhone 11

and disclosed iPhone 16 Pro. These devices were known or should have been known to Defendants

---

critical because it may explain, for example, why Defendants' October 13 Disclosure reflects that the
device only contains approximately 45 daily text threads per month as compared to his prior device's
average of 770 daily text threads per month. Ex. 10, Pls.' Oct. 28 Ltr. at 16. Indeed, if Mr. White is
using a platform like Signal on that device and not preserving his communications, that would
explain such discrepancy. But Defendants have inexplicably refused to supply the Ordered
information.

[54] Exs. 32 & 51, Dana White Declaration, Dana White Deposition Device Chart.

[55] Exs. 32 & 51, Dana White Declaration, Dana White Deposition Device Chart.

[56] Ex. 33 at 33:25–34:6 (Dana White *Le* Deposition) ("█ ███████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
█████████████."). Zuffa did not disclose this device in response to the *Le* Plaintiffs' Rule 30(b)(6)
notice seeking the identification of personal devices used for business purposes.

CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

and should have been preserved. There is no excuse, particularly given the litigation surrounding Mr. White's phones in 2017, for these devices not to have been preserved.

**Second,** in Plaintiffs' October 28 Letter, Plaintiffs identified undisclosed devices listed in Defendants' employees' work email signatures:

- <u>Denitza Batchvarova</u>: signature block included an undisclosed mobile phone number ending in ▮▮ as early as August 2015 and as late as November 2024 (notably, Zuffa identified in *Le* a Samsung Galaxy 8 with that ▮▮ number as a "Personal Device[] Used Regularly for Business Purposes")[57];

- <u>Hunter Campbell</u>: signature block included an undisclosed mobile phone number ending in ▮▮ as early as February 2017 and as late as March 2019;

- <u>Seth Krauss</u>: signature block included an undisclosed mobile phone number ending in ▮▮ as early as February 2017 and as late as August 2024;

- <u>Grant Norris-Jones</u>: signature block included an undisclosed mobile phone number ending in ▮▮ as early as November 2023 and as late as June 2024;

- <u>Brit Santypal</u>: signature block included an undisclosed mobile phone number ending in ▮▮ in August 2023 and June 2024; and

- <u>Seth Zaslow</u>: signature block included a mobile phone number ending in ▮▮ as early as April 2023 and as late as October 2023.[58]

The information in these signature blocks is an obvious source of information regarding the existence of discoverable information and was readily available to Defendants long before Defendants made them available to Plaintiffs, yet Defendants have yet to identify these devices as devices used for business. Plaintiffs even identified these cell phone numbers to Defendants on October 28, 2025,[59] yet Defendants have made no effort to update any of their disclosures to include these devices.

**Third,** Plaintiffs have identified the existence of seven undisclosed devices used to send responsive emails referenced in documents within Defendants' production:

---

[57] *See* Ex 14 at Tab 2, Topic 13.

[58] Ex. 10 at 17, Oct. 28 Ltr.

[59] *Id.*; Ex. 46, Undisclosed Mobile Devices Identified in Defs.' Production Chart.

- <u>Akosa Akpom</u> used an Android device at least on or around June 25, 2019. Ex. 34, UFC-03831479. Defendants have never disclosed any devices belonging to Akpom;

- <u>Denitza Batchvarova</u> used a "T-Mobile 4G LTE Device" as early as February 8, 2015, Ex. 35, UFC-00642930, and as late as August 4, 2022, Ex. 36, UFC-04018734. Batchvarova also used a "T-Mobile 5G LTE Device" as early as August 24, 2022, Ex. 37, UFC-03888929, and as late as November 27, 2024, Ex. 38, UFC-04473147. Defendants have not disclosed any devices belonging to Batchvarova in connection with this litigation;

- <u>Deborah Cook</u> has used at least three Samsung devices throughout the relevant period.[60] She used a Sprint Samsung Galaxy S7 on or around Sept. 8, 2016, Ex. 39, UFC-04703914. She used an AT&T Sprint Galaxy Note20 5G as early as March, 29, 2021, Ex. 40, UFC-03890827, and as late as October 25, 2023, Ex. 41, UFC-04368229. And she used an AT&T Samsung S24+ as early as July 11, 2024, Ex. 42, UFC-04278385, and as late as September 17, 2024, Ex. 43, UFC-04545236. Defendants have not disclosed any devices belonging to Cook; and

- <u>Chika Yoshinaga</u> an employee who Plaintiffs requested, used an Android device to send emails as early as June 21, 2020, Ex. 45, UFC-03787131, and as late as May 7, 2021, Ex. 49, UFC-03340628. Defendants have never disclosed a device belonging to Yoshinaga.

**Fourth**, Zuffa disclosed other devices in *Le* that have not been collected or disclosed in this litigation. For Nakisa Bidarian, Zuffa disclosed in *Le* an iPhone 6 with a phone number ending ███ that was in use for business at least as of June 30, 2015, but Defendants here have not identified that device or any other device for their proposed custodian Bidarian.[61] For Tracy Long, Zuffa disclosed in *Le* an iPhone 6 with the phone number ending ███ (the same number Defendants' disclosures reflect she used as of November 2020 when they first have identified a device for her) in use at least up until June 30, 2015.[62] Like Dana White, Long likely replaced that device with either an iPhone 8 or iPhone X, and Defendants have failed to disclose (and likely failed to preserve) either of those devices (the iPhone 6 and iPhone 8/X). And like Dana White, Long likely had a device between the disclosed iPhone 11 and the disclosed iPhone 15 Pro Max (likely an iPhone 13) that Defendants have

---

[60] In addition, Cook appears to have used a Sprint Samsung Galaxy S4 as late as April 13, 2015. Ex. 44, UFC-01340414. To the extent Cook continued to use this Galaxy S4 as of July 1, 2015, that device is also missing from Defendants' Disclosures.

[61] *See* Ex 14 at Tab 2, Topic 13.

[62] *See id.*

not identified (and likely failed to preserve). Shane Kapral, one of the employees Plaintiffs have

asked Defendants to search, had an iPhone 6 with a number ending ███ that Zuffa disclosed in *Le*

as having been in use for business purposes from 2015 through at least July 2017.[63] Yet, Defendants

have not disclosed any devices for Kapral.

   ***Fifth***, Defendants have not identified a cell phone for Ariel Emanuel in use after January 19,

2023.[64] Defendants previously identified an iPhone 16 Pro in the April 23 Disclosure but they have

not provided any information on this cell phone in connection with either of the Ordered disclosures

here (*i.e.*, the July 3 Disclosure requiring information on the communications platforms in use and

accounts and phone numbers, and October 13 Disclosure requiring the serial numbers and data on the

volume of texts and other files).

   To the extent Defendants claim that any of these individuals are not using these devices for

business purposes, such a claim cannot be reconciled with the demonstrated use of these devices to

send business communications and/or as an officially listed contact channel. Further, in the case of

Denitza Batchvarova, Shane Kapral, and Hunter Campbell, Defendants have omitted devices these

individuals have used for business, and the record reflects that Defendants expected them to use their

phones for business. For example, in a February 2019 email from Dana White, copying Ari Emanuel,

White tells the recipients (including Batchvarova, Kapral, and Campbell) that they cannot attend an

event "████████████████████████████████████████████

████" because "████████████████████████████████████████

███."[65] Such email reflects Defendants' control over these individuals' use of their cell phones and

requirement that these phones be available for business uses. Defendants thus must disclose these

devices as business devices and include all the required information.

---

[63] *See id.*

[64] *See* Ex. 10, Pls.' Oct. 28 Ltr. at 15–16.

[65] *See* Ex. 50, UFC-04519660.

CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

Plaintiffs have detailed the devices and information that Plaintiffs know of in Exhibit __
(Undisclosed Device Use Chart). Plaintiffs expect Defendants to supplement and expand upon this
list.

C.  Inconsistencies Between Defendants' disclosures.

Defendants disclosed certain devices in their April 23 Disclosure that they omitted from the
later July 3 and October 13 Disclosures.[66] Thus, for certain devices previously identified by
Defendants as potentially containing responsive material, Plaintiffs do not know what apps were
imaged from those devices (as required in the July 3 Disclosure Ordered by the Court), nor the dates
from which documents and data were collected from those devices (as required in the October 13
Disclosure Ordered by Magistrate Judge Weksler), including:

- Grant Norris-Jones. Defendants omitted two mobile devices identified as belonging to Norris-Jones on the April 23 Disclosure.

- Seth Krauss. Defendants omitted a cellphone and an iPad identified as belonging to Krauss on the April 23 Disclosure.

- Hunter Campbell. Defendants omitted a cellphone  identified as belonging to Campbell on the April 23 Disclosure.

- Peter Dropick. Defendants omitted a cellphone identified as belonging to Dropick on the April 23 Disclosure.

- Jason Lublin. Defendants omitted an iPad identified as belonging to Lublin on the April 23 Disclosure.

- Patrick Whitesell. Defendants omitted an iPad identified as belonging to Whitesell on the April 23 Disclosure.

- Mark Shapiro. Defendants omitted an iPad identified as belonging to Shapiro on their April 23 Disclosure.

- Mick Maynard. Defendants omitted a cellphone identified as belonging to Maynard on the April 23 Disclosure.

---

[66] *See* Ex. 10, Pls.' Oct. 28 Ltr. at 13.

CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

1

      D.  <u>Omission of Non-SMS Communications Apps Used by Employees</u>

2

      In addition to the foregoing information gleaned from Defendants' own documents produced

3

to date, Plaintiffs have also located publicly available evidence showing that Defendants' employees

4

used non-SMS communications apps that Defendants did not include in their July 3 disclosure.[67]

5

While Plaintiffs requested that Defendants investigate the existence of these accounts and whether

6

they contain potentially responsive material on July 7 and September 12,[68] Defendants have never

7

responded to these requests. Plaintiffs have identified the following undisclosed accounts:

8

- <u>X f/k/a Twitter</u>.

9

    o  Plaintiffs have identified verified accounts belonging to: Dana White (@danawhite),

10

        and Ari Emanuel (@AriEmanuel).

11

    o  Plaintiffs have also identified unverified accounts that appear to belong to: Patrick
        Whitesell (@Pat__whitesell), Hunter Campbell (@HCampbellUFC), Sean Shelby

12

        (@seanshelby), Mick Maynard (@Mickmaynard2), and Craig Borsari
        (@CraigBorsari).

13

- <u>Signal</u>. Ari Emanuel used a Signal account to conduct Endeavor business.

14

- <u>Telegram</u>. Dana White maintains a Telegram account (@dana_white).

15

16

- <u>Snapchat</u>. Dana White maintains one or more Snapchat accounts (*e.g.*, @danawhiteufc and
  @danawhite).[69]

17

                       \* \* \*

18

19

20

21

22

---

[67] *Id.* at 13 n.35–36.

23

[68] Ex. 6, Pls.' Sept. 12 Ltr. at 7–8; *see also* Ex. 52, Apps Communication Docs. Chart.

24

[69] Ex. 7, Pls.' July 9 Ltr. at 7–9. Indeed, in July 2017, Zuffa disclosed in *Le* that White used the

25

following accounts "regularly" "for any business purposes" up until at least June 30, 2015: two
Twitter accounts (@danawhite and @danawhiteUFC), a Snapchat (danawhiteufc), a WeiBo account

26

(http://weibo.com/danawhite), two Instagram accounts (@danawhite and @danawhiteUFC). *See* Ex.
14 Tab 2, Topic 19. Zuffa also disclosed a Facebook account (@danawhite) that White regularly used

27

for business for which private messaging was turned off. *Id.*

28

    CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

Plaintiffs understand that, to the extent an employee, device, app, or ESI source has been omitted from Defendants' disclosures by December 15, 2025, it is because Defendants cannot provide that information.[70]

> As to missing information in Ex. 1 that Defendants represent that they cannot provide, Defendants should be required to explain whether the reason they cannot provide the information is because the device has been lost or destroyed or whether it is because Defendants claim they lack possession, custody, or control over the relevant device or ESI source. If it is the latter and the individual is an Individual Subpoena Recipient, Defendants should explain why such failure to supply the information does not violate the Individual Subpoena Recipients' discovery obligations.

## III.    Categories of Information Missing from Defendants' Disclosures

### A. Employee Mobile Wireless Carrier Identities

Since as early as February 17, 2025, Plaintiffs have repeatedly requested mobile wireless carrier information from both Defendants and the Individual Subpoena Recipients.[71] The Court found that Plaintiffs' request was "reasonable," and carrier information "should" be disclosed.[72] Defendants have disclosed the identity of the mobile wireless carriers for only two employees and none of the Individual Subpoena Recipients.[73]

> The Court has Ordered Defendants to provide carrier information as to all individuals included in their disclosures by December 15, 2025. Dec. 4, 2025 Hr'g Tr. at 6:11-13. To the extent Defendants identify additional devices that have not been included in a prior disclosure, Plaintiffs request that Defendants disclose the carriers connected to those devices as well.

---

[70] Dec. 4, 2025 Hr'g Tr. at 11:11–13 ("[A]s far as I understand it, . . . if there is information that is not available, it's because they don't have it."); *id.* at 15:3–6 ("[W]hat I hear Mr. Chiu saying is if there's missing information, it's gone.").

[71] *See* Ex. 9, Pls.' Feb. 17 Ltr. at 4; ECF No. 183-7; ECF No. 217 at 2 & n.3; ECF No. 274, Oct. 23 Joint Status Rep. at 6–7; Ex. 6, Pls.' Sept. 12 Ltr. at 10; ECF No. 253, Sept. 23 Joint Status Rep.; Ex. 10, Pls.' Oct. 28 Ltr. at 1 n.1.

[72] Nov. 20, 2025 Hr'g Tr. at 97:10–20, 98:18–99:10.

[73] On December 1, 2025, Defendants disclosed the mobile wireless carriers for disclosed devices belonging to Dana White and Tracy Long. Ex. 12, Defs.' Dec. 1. Ltr. re Carrier Info.

19    CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' DECEMBER 9 STATEMENT REGARDING DEFENDANTS' MISSING DEVICE DISCLOSURE DATA AND INFORMATION PURSUANT TO THE COURT'S ORDER OF DECEMBER 4, 2025

B.  Employee Mobile Device In-Service and Out-Service Dates

Plaintiffs have requested that Defendants disclose the dates on which mobile wireless service began and ended on each of their employees' disclosed devices.[74] Defendants have never supplied this information as to any employee.

> Plaintiffs request that Defendants disclose the dates on which service began and ended for each device they have disclosed or may disclose in the future.

C.  Employee Non-SMS Communications App In-Service and Out-Service Dates

Defendants indicated in their July 3 disclosure that they imaged certain employee non-SMS communications app accounts.[75] Defendants have never provided the dates on which each of these accounts was created nor, if applicable, deleted.

> Plaintiffs request that Defendants disclose the dates on which each disclosed non-SMS communications app account was created or deleted.

D.  Litigation Hold Start Dates

On March 30, Plaintiffs requested that Defendants provide the dates on which their employee litigation holds were implemented.[76] Defendants responded that they had "identified individuals with potentially relevant ESI and . . . taken steps to preserve any such data, including by sending litigation holds to all identified employees."[77] Defendants thereafter provided an incomplete list of individuals who were under litigation holds.[78] Defendants also omitted the dates on which the *Johnson* litigation

---

[74] Ex. 6, Pls.' Sept. 12 Ltr. & Discovery Worksheet.

[75] Ex. 5, Defs.' July 3 Ltr.

[76] Ex. 2, Defs.' Apr. 7 Ltr. at 2.

[77] *Id.*

[78] Among employees Defendants agreed to search for potentially responsive material, Defendants have not disclosed litigation hold information for Deborah Cook, Jason Lublin, Grant Norris-Jones, Brit Santypal, Mark Shapiro, Patrick Whitesell, and Seth Zaslow. Ex. 1(Device Disclosure Chart). Defendants have also failed to indicate whether litigation holds were enacted as to several employees who Plaintiffs identified as possessing potentially responsive material, including includes Albert

holds began.[79]

Plaintiffs again requested the dates on which employee litigation holds were placed in their September 12 Discovery Worksheet.[80] Defendants refused, claiming that this request was "grossly disproportionate to any articulated need."[81] Specifically, Defendants responded, "As for information regarding Defendants' litigation hold processes, the Court made clear that 'super custodians' may need to provide non-privileged information about preservation and collection issues only if warranted—in other words, *if* the Court determined, after reviewing the master tracker, that Defendants' discovery efforts were inadequate . . .."[82] As discussed, on November 20, 2025, the Court made numerous findings that Defendants' discovery efforts were inadequate.

In *Le,* Zuffa voluntarily provided Plaintiffs with the names of employees who were subject to a litigation hold and the date on which such holds were implemented.[83] However, Defendants have still never disclosed the dates when the litigation holds, if any, in this litigation was first implemented. Plaintiffs also have no information about litigation holds, if any, placed on 33 employees identified by both parties as potentially possessing responsive material.[84]

> Plaintiffs request that Defendants supply the date on which each employee litigation hold was implemented in connection with this litigation.

---

Acosta, Osvaldo Arias, Tony Barboza, Nichole Durand, Egon Durbin, Jamie Euster, Keith Freidenberg, Graham Fry, Tim Gardner, Rami Genauer, Christoph Goessing, Krista Hall, Seth Krauss, Ajay Madkekar, David Phillips, Chris Provino, Zach Rose, Jonathan Shin, Brandon Stuckenberg, Crowley Sullivan, Blake Ulrich, Marc Webster, Matt Woodmancy, Chika Yoshinaga, Nick Zombolas, and Sam Zussman. *See id.*

[79] Ex. 2, Defs.' Apr. 7 Ltr. at 2, Appendix A.

[80] Ex. 6, Pls.' Sept. 12 Ltr. at 1.

[81] Ex. 13, Defs.' Sept. 18 Ltr. at 3.

[82] *Id.* at 4 (emphasis in original) (citations omitted).

[83] *See* Ex. 1, Device Disclosure Chart; Ex. 14, *Le* 30(b) Deposition Binder.

[84] *See* Ex. 1, Device Disclosure Chart; *see also* Nov. 20, 2025 Hr'g Tr. at 11:11–15 ([THE COURT:] "[B]etween them, literally I have six, seven, eight years of missing texts, like, no texts at all. How is that not a spoliation issue when they were clearly under a litigation hold?"); *id.* at 20:22–21:3 ("[THE COURT:] How does that not raise a spoliation issue when since 2017 these individuals, but

CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

E.  Defendants' Document Preservation Policies

Since as early as January 13, 2025, Plaintiffs have requested information about Defendants' practices in preserving ESI.[85] Defendants disclosed this information in connection with the *Le* litigation.[86] Moreover, Defendants have disclosed such policies in separate litigation, including in an unrelated matter pending before this Court.[87] Yet, Defendants have never disclosed the policies governing the retention of potentially responsive documents collected in this action.

> Consistent with Defendants' December 3, 2023 email, Ex. 15, Defs.' Dec. 3, 2023 Email, Plaintiffs request that Defendants disclose their policies governing the retention of potentially responsive documents collected in this action.

F.  Employee Use of Personal Email Addresses to Conduct Business

Defendants have never disclosed whether employees used private emails for business purposes and, if so, whether documents were collected from those emails.[88] Plaintiffs explicitly requested this information.[89] Defendants have never responded to Plaintiffs' requests. After further review of Defendants' production, Plaintiffs have independently identified documents showing that at least four employees conducted business on behalf of at least one Defendant using personal email addresses:

---

particularly these individuals involved with negotiations, would be on notice of preserving this information? So are you saying that there wasn't a litigation hold during the time period when these texts are missing?" So are you saying that there wasn't a litigation hold during the time period when these texts are missing? MR. CHIU: I'm not saying that, Your Honor.).

[85] *See* ECF No. 217 at 7.

[86] Ex. 14, *Le* 30(b)(6) binder exhibit.

[87] *See* Pls.' Mot. for Sanctions Reply, ECF No. 230 at 11–12 & n.26; *Bloom v. Zuffa, LLC*, Civ. A. No. 22-cv-00412 (D. Nev. Aug. 18, 2023) (ECF No. 76, at 5–6) ("[S]ince 2018, Zuffa's email system has been configured to delete emails automatically after 90 days, unless the employee designates the email as one that should be retained," and such designated emails are deleted after six months unless saved as a PDF in a separate "network drive.").

[88] Ex. 47, Undisclosed Personal Email Chart.

[89] Ex. 16, Pls.' July 22 Ltr; Ex. 6, Pls.' Sept. 12 Ltr. & Discovery Worksheet.

- Mick Maynard used an undisclosed iCloud email account ██████████████) as early as July 29, 2017, Ex. 17, UFC-04664427, through as late as January 12, 2025, Ex. 18, UFC-04664229;

- Mark Shapiro used an undisclosed Gmail account ████████████████ as early as November 2, 2017, Ex. 19, ENDEAVOR_00063559, through as late as August 16, 2021, Ex. 20, UFC-03783544;

- Sean Shelby used an undisclosed Gmail account ████████████████████ as early as March 26, 2016, Ex. 21, UFC-04663134, and as late as November 3, 2024, Ex. 22, UFC-04663773; and

- Dana White used an undisclosed Gmail account ██████████████████ as early as November 15, 2024, Ex. 23, UFC-04443345, through as late as August 11, 2025, Ex. 24, UFC-04443466.

> Plaintiffs request that Defendants disclose all personal email accounts that employees used to send or receive potentially responsive material on behalf of Defendants, including the dates when these accounts were open or closed, and the earliest and latest dates on which potentially responsive emails were sent or received.

G. Employee Use of Microsoft Teams Chats

Defendants admit that they identified "Microsoft Teams chat messages" in their review of ESI that is "reasonably accessible."[90] In addition, Defendants disclosed on December 6 that "Microsoft Teams" was a source that Plaintiffs' December 1 search term proposal was "[r]an [a]gainst."[91] Yet Defendants have never disclosed the identify of employees who used Microsoft Teams chats to send correspondence related to UFC business, nor have they produced a single message imaged from Microsoft Teams.

> Plaintiffs request that Defendants disclose the identity of all employees who used Microsoft Teams to send potentially responsive information as well as the earliest and latest dates on which such potentially responsive messages were sent or received.

---

[90] Ex. 25, Defs.' May 19 Ltr. at 5–6.

[91] Ex. 26, Defs.' Dec. 5 Email.

CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' DECEMBER 9 STATEMENT REGARDING DEFENDANTS' MISSING DEVICE DISCLOSURE DATA AND INFORMATION
PURSUANT TO THE COURT'S ORDER OF DECEMBER 4, 2025

Dated: December 9, 2025

Respectfully submitted,

**BERGER MONTAGUE PC**

/s/ *Michael Dell'Angelo*

Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

Joshua P. Davis (admitted *pro hac vice*)
Robert C. Maysey (admitted *pro hac vice*)
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (415) 906-0684
Facsimile: (215) 875-4604
jdavis@bm.net
rmaysey@bm.net

*Counsel for Plaintiffs and the Proposed Classes*

Joseph R. Saveri (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
Chris Young (admitted *pro hac vice*)
**JOSEPH SAVERI LAW FIRM**
601 California Street, Suite 15051505
San Francisco, California 94108 Telephone:
(415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
krayhill@saverilawfirm.com
cyoung@saverilawfirm.com

24    CASE NOS.  2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' DECEMBER 9 STATEMENT REGARDING DEFENDANTS' MISSING DEVICE DISCLOSURE DATA AND INFORMATION
PURSUANT TO THE COURT'S ORDER OF DECEMBER 4, 2025

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS**
 **& TOLL, PLLC**
1100 New York Ave., N.W., Suite 500, East
Tower Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

W. Joseph Bruckner (admitted *pro hac vice*)
Brian D. Clark (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4001
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle Pozan (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Telephone: (612) 339-6900
kjpozan@rlocklaw.com

*Additional Counsel for Plaintiffs and the
Proposed Classes*

Michael J. Gayan
**CLAGGET & SYKES**
4101 Meadows Lane, Ste. 100
Las Vegas, NV 89107
Telephone: (702) 333-7777
Fax: (702) 655-3763

*Liaison Counsel for Plaintiffs and the Proposed
Classes*