# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Kajan Johnson, Clarence Dollaway, and Tristan Connelly, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | No.: 2:21-cv-01189-RFB-BNW |
| Zuffa, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc., | |
| Defendants. | **DEFENDANTS' POSITION REGARDING SPOLIATION QUESTIONING AND SCOPE OF PRIVILEGE** |
| Mikhail Cirkunovs, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | |
| Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc., | No.: 2:25-cv-00914-RFB-BNW |
| Defendants. | |
| Phil Davis, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | |
| Zuffa LLC, TKO Group Holdings, Inc. (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc., | No.: 2:25-cv-00946-RFB-BNW |
| Defendants. | |

1

## TABLE OF CONTENTS

2
**Page(s)**

3  I.     INTRODUCTION ................................................................................................. 1

4  II.    RELEVANT BACKGROUND ............................................................................ 4

5  III.   LEGAL STANDARD........................................................................................... 5

6         A.     Preliminary Showing of Spoliation........................................................ 6

7         B.     Rule 37(e) Standard ................................................................................ 7

8  IV.    ARGUMENT ....................................................................................................... 8

9         A.     Plaintiffs Have Not Made A Preliminary Showing Of Spoliation
                  Or Met Rule 37(e)'s Threshold Elements. ............................................. 8
10
11               1.     Plaintiffs Have Not Met Their Preliminary Showing
                         Burden........................................................................................ 8

12               2.     Plaintiffs Have Not Established That Defendants Failed To
                         Take Reasonable Steps To Preserve The Information. .............. 9
13
14               3.     Plaintiffs Have Not Established That The Information Was
                         Lost As A Result Of Alleged Spoliation And That It
                         Cannot Be Restored Or Replaced By Additional Discovery. ... 10
15
16               4.     Prejudice And Intent Are Not Yet At Issue. ............................ 12

17        B.     The Court May Address Spoliation Concerns By Means Other
                  Than Forcing Defendants To Reveal Privileged Communications. ..... 12

18        C.     Any Required Disclosure Of Privileged Communications Must Be
                  Limited..................................................................................................... 14
19
20  V.    CONCLUSION................................................................................................... 17

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*Al Otro Lado, Inc. v. Wolf,*
5     2020 WL 4432026 (S.D. Cal. July 31, 2020) ...............................................................6

6     *Apple, Inc. v. Samsung Elecs. Co., Ltd.,*
      881 F. Supp. 2d 1132 (N.D. Cal. July 25, 2012) .........................................................8
7

8     *City of Colton v. Am. Promotional Events, Inc.,*
      2011 WL 13223880 (C.D. Cal. Nov. 22, 2011).............................................2, 14, 15, 16

9     *Colonies Partners, L.P. v. Cnty. of San Bernardino,*
10     2020 WL 1496444 (C.D. Cal. Feb. 27, 2020)...................................................12, 15

11    *Doe LS 340 v. Uber Techs., Inc.,*
      710 F. Supp. 3d 794 (N.D. Cal. 2024) .......................................................................14
12

13    *Eastman v. Thompson,*
      594 F. Supp. 3d 1156 (C.D. Cal. 2022) .................................................................8, 15
14

15    *Greenberg v. Amazon.com, Inc.,*
      2025 WL 2639221 (W.D. Wash. Sept. 12, 2025).....................................................6

16    *Herb Hallman Chevrolet, Inc. v. Gen. Motors LLC,*
      2024 WL 3160746 (D. Nev. June 24, 2024).........................................................3, 10
17

18    *Howard Jones Investments, LLC v. City of Sacramento,*
      2024 WL 4545887 (E.D. Cal. Oct. 22, 2024) ............................................................6

19    *In re Cathode Ray Tube Antitrust Litig.,*
20     2014 WL 5667882 (N.D. Cal. Jan. 27, 2023) ....................................................2, 6, 7

21    *In re eBay Seller Antitrust Litig.,*
      2007 WL 2852364 (N.D. Cal. Oct. 2, 2007)......................................................5, 14, 16
22

23    *In re Facebook, Inc. Consumer Priv. User Profile Litig.,*
      655 F. Supp. 3d 899 (N.D. Cal. 2023) ....................................................................12

24    *In re Google Play Store Antitrust Litig.,*
25     664 F. Supp. 3d 981 (N.D. Cal. 2023) .....................................................................16

26    *In re Google RTB Consumer Privacy Litig.,*
      2024 WL 3407069 (N.D. Cal. July 11, 2024)........................................................2, 5
27

28    *In re: Napster, Inc. Copyright Litigation,*
      462 F. Supp. 2d 1060 (N.D. Cal. 2006) .....................................................................9

*Johnson v. Ford Motor Co.*,
  2015 WL 6758234 (S.D. W. Va. Nov. 5, 2015) ....................................................17

*Lee v. Cnty. of L.A.*,
  2025 WL 2505484 (C.D. Cal. Aug. 29, 2025)............................................... *passim*

*Little Hocking Water Ass'n, Inc. v. E.I. Dupont de Nemours & Co.*,
  2013 WL 5311292 (S.D. Ohio Sept. 20, 2023) ................................................8, 11

*Major Tours, Inc. v. Colorel*,
  2009 WL 2413631 (D.N.J. Aug. 4, 2009) ...............................................................2

*Mayorga v. Ronaldo*,
  606 F. Supp. 3d 1003 (D. Nev. 2022), aff'd, 2023 WL 8047781 (9th Cir. Nov.
  21, 2023) .................................................................................................................8

*Mcdevitt v. Verizon Servs. Corp.*,
  2016 WL 1072903 (E.D. Pa. Feb. 22, 2016) ..........................................................7

*MedImpact Healthcare Sys., Inc. v. IQVIA, Inc.*,
  2022 WL 1694428 (S.D. Cal. May 26, 2022).....................................................5, 8

*Mirch Law Firm, LLP v. Nakhleh*,
  2022 U.S. App. LEXIS 14564 (9th Cir. May 26, 2022) ........................................13

*PlayUp, Inc. v. Mintas*,
  344 F.R.D. 429 (D. Nev. 2023)................................................................................7

*Reinsdorf v. Sketchers U.S.A., Inc.*,
  296 F.R.D. 604 (C.D. Cal. 2013) ............................................................................9

*Rg Abrams Inc. v. Law Offices of C.R. Abrams*,
  2021 WL 10312431 (C.D. Cal. Dec. 22, 2021) ..................................................6, 8

*Shenwick v. Twitter, Inc.*,
  2018 WL 833085 (N.D. Cal. Feb. 7, 2018) ...................................................*passim*

*Whitesell Corp. v. Electrolux Home Prods., Inc.*,
  2016 WL 1317673 (S.D. Ga. Mar. 31, 2016) ..................................................16, 17

**STATUTES**

9 U.S.C. § 3...................................................................................................................13

9 U.S.C. § 4...................................................................................................................13

Nev. Rev. Stat. § 49.095 .................................................................................................8

iii

# RULES

D. Nev. L.R. 7-3(b)................................................................................................................1

Fed. R. Civ. P.
    26................................................................................................................16
    37.............................................................................................................3, 4
    37(e)....................................................................................................*passim*
    37(e)(1)......................................................................................................12
    37(e)(2)......................................................................................................12

1    **I.    INTRODUCTION[1]**

2    On December 18, 2025, the Court, in connection with the forthcoming Court-ordered

3    spoliation hearing, ordered Defendants to explain the nature and extent of their witnesses'

4    anticipated "reliance [on advice of counsel] or a certain type of a legal issue in terms of privilege,"

5    so as to avoid the hearing getting "very messy very quickly." (Dec. 18 Hr'g Tr., *Johnson* Dkt. No.

6    339 at 19:12–15; 20:2–16.) The reality is, as currently framed, the hearing will unavoidably get

7    "very messy." Plaintiffs have already indicated that they will ask broad, invasive questions about

8    the contents of Defendants' attorney-client communications and work product. (*See* Pls.' Dec. 16

9    Stmt., *Johnson* Dkt. No. 331 at 22–25.) Even with appropriate guardrails, the spoliation hearing

10    is almost certain to devolve into a privileged fishing expedition.[2] To be clear, Defendants are not

11    asserting that their witnesses will claim to have followed the advice of counsel in the spoliation

12    context. Rather, it is Plaintiffs who have made plain that no matter what topics the Court deems

13    appropriate, they will press on the "substance" of attorney-client privileged communications—

14    questions they wrongly claim are permissible due to the mere specter of spoliation. (*See id.* at 25

15    ("[N]one of these questions implicates any privilege or work-product protection, as Plaintiffs'

16    'preliminary showing of spoliation' waives *any claim* Defendants may have to such protections."

17    (emphasis added)). Plaintiffs are mistaken and the Court should not entertain this

18    invitation to error.

19

20

---

21    [1] Defendants Zuffa, LLC, TKO Operating Company, LLC, TKO Group Holdings, Inc., and

22    Endeavor Group Holdings, Inc. ("Defendants") submit this brief pursuant to the Court's order at
     the December 18, 2025 Status Conference. Defendants also file this brief in *Cirkunovs* v. *Zuffa,*

23    *LLC* without any waiver of, and reserving all rights to invoke, the mandatory stay of that action
     pursuant to 9 U.S.C. §§ 3–4.

24    [2] Defendants' concerns are not merely speculative. Plaintiffs have an established pattern of
     ignoring the Court's instructions and the Local Rules—and in particular, the Court's restrictions

25    on substance and length. For example, when the Court ordered Plaintiffs to "supply a list of
     specific information" of missing arbitration-related discovery, Plaintiffs ignored the Court and did

26    not supply a "list." Rather, they filed a 45-page brief (*compare Johnson* Dkt. No. 282 *with Johnson*
     Dkt. No. 288; *see also* D. Nev. L.R. 7-3(b) (requiring all briefs to be limited to 24 pages));

27    Similarly, when the Court ordered Plaintiffs to submit a "final list of information" regarding device
     disclosures, Plaintiffs yet again ignored the Court's request for a "list," filing a 23-page brief

28    instead. Plaintiffs have given no indication that they will respect any guardrails the Court attempts
     to place.

1    Unsurprisingly, none of the authorities Plaintiffs cite support allowing the inappropriate

2 questions they seek to ask.  Instead, district courts throughout the Ninth Circuit have held that in

3 addressing concerns of spoliation, courts are first and foremost to *avoid* inquiring into privileged

4 material, and to the extent any such inquiry is allowed, it must ordinarily be limited to the contents

5 of the litigation hold notice.  *See*, *e.g.*, *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *4 (N.D.

6 Cal. Feb. 7, 2018) (rejecting the disclosure of privileged documents concerning document retention

7 despite Plaintiffs' argument of a "threat" of spoliation); *City of Colton v. Am. Promotional Events,*

8 *Inc.*, 2011 WL 13223880, at *2 (C.D. Cal. Nov. 22, 2011) (allowing discovery of litigation hold

9 letters, and nothing else, and only after a preliminary showing of spoliation was made); *Major*

10 *Tours, Inc. v. Colorel*, 2009 WL 2413631, at *5 (D.N.J. Aug. 4, 2009) (ordering the production of

11 portions of litigation hold letters, finding the rest to be privileged).  Plaintiffs are simply wrong

12 when they assert that the mere indications of spoliation they have raised permit them free access

13 into Defendants' privileged communications and work product.

14    In any event, Plaintiffs are putting the cart before the horse.  Discovery into (at most) a

15 party's privileged litigation hold letters is only ever permitted upon a preliminary *factual* showing

16 of spoliation—not a mere indication that evidence may be missing.  *See, e.g.*, *In re Google RTB*

17 *Consumer Privacy Litig.*, 2024 WL 3407069, at *3 (N.D. Cal. July 11, 2024) (denying plaintiffs'

18 motion to compel defendant's litigation hold letters given insufficient "preliminary showing").

19 The bar for a preliminary showing is high—as it must be—to permit a *de facto* waiver of privilege

20 on an unwilling party.  *See, e.g.*, *In re Cathode Ray Tube Antitrust Litig.*, 2014 WL 5667882, at

21 *2, 3–5 (N.D. Cal. Jan. 27, 2023) (permitting discovery only where the defendant admitted it had

22 not preserved information and failed to impose a litigation hold for eight months, did not document

23 its preservation efforts, admitted to misunderstanding the scope of what it had to preserve, and

24 where the defendant produced almost no documents in discovery).  While the Court has raised

25 concerns over "indicia" of spoliation, Plaintiffs have not made the requisite "preliminary showing"

26 of spoliation.  Nor has the Court made such a finding.

27    But even if Plaintiffs had made the required "preliminary showing," a party claiming

28 spoliation *and* seeking any sanctions must still meet four factual threshold elements before an

2

inquiry into topics that may implicate privilege, such as the witness's intent or state of mind, may be permitted.   While Plaintiffs claim to have shown that certain mobile data is missing in Defendants' productions, they have thus far failed—indeed, have not even tried—to establish (at least) three of the four threshold elements:  (i) that Defendants failed to take reasonable steps to preserve information; (ii) that any information was actually lost as a result of that failure, and (iii) critically, that the information is not replaceable through additional discovery.  *Lee v. Cnty. of L.A.*, 2025 WL 2505484, at *6 (C.D. Cal. Aug. 29, 2025); *see also Herb Hallman Chevrolet, Inc. v. Gen. Motors LLC*, 2024 WL 3160746, at *4 (D. Nev. June 24, 2024).  Until Plaintiffs make the showing that irreversible spoliation has occurred at all, there is no basis for the Court to permit any inquiry that could risk breaching Defendants' attorney-client privilege.

As the Court has recognized, the inquiry at this point is purely a factual one: the duties of each witness, their relationship to record-keeping practices and understanding of what records were kept or not, and the efforts they made to preserve documents in the face of a litigation hold. (Dec. 18 Hr'g Tr., *Johnson* Dkt. No. 339 at 12:2–9.)  Unless Plaintiffs make their threshold *factual* showing, rather than merely continuing to assert inferences, insinuations, and invectives, no in-person testimony is required.  To avoid a hearing that is sure to quickly devolve into a "messy" fishing expedition that seriously risks the improper invasion of attorney-client privilege, Defendants propose that Defendants' witnesses address these issues via a sworn declaration, submitted under the penalty of perjury.  *See Shenwick*, 2018 WL 833085, at *4 (stating that wherever possible, courts must use "means other than forcing Defendants to reveal attorney-client privileged documents or documents protected by the work product doctrine" to address spoliation concerns).

Plaintiffs may then use that information, along with the results of their recently served subpoenas on the witnesses' wireless carriers, as well as Defendants' own ongoing investigation into the allegedly missing data, to try to meet their "preliminary showing" and Federal Rule of Civil Procedure ("Rule") 37 burdens.[3]   Only if Plaintiffs meet this burden should the Court

---

[3] Insofar as the spoliation hearing relates to the *Cirkunovs* matter, it is notable that Mr. Cirkunovs has not submitted a declaration demonstrating that any purportedly relevant conversation took

consider subsequently setting an evidentiary hearing and permit questions into the witnesses'

intent—questions that, under relevant precedent, should be very limited.

## II.    RELEVANT BACKGROUND

On October 13, 2025, Defendants supplied Plaintiffs with a disclosure setting forth each of

the mobile devices collected and imaged by Defendants' counsel in *Johnson*. (*See* Pls.' Dec. 16

Stmt., *Johnson* Dkt. No. 331-5.)  That disclosure, made pursuant to instructions by Judge Weksler,

contained the first and last dates of "daily chat threads"[4] found in each device.  *Id*.  Based on this

disclosure, and on misleading attempts to find "inconsistencies" across device disclosures that (by

Court order and Plaintiffs' own requests) contained different types of information, Plaintiffs have

since argued—via various "lists" of allegedly missing discovery, but *not* via any noticed motion

that purports to meet the relevant evidentiary standard—that two of Defendants' witnesses must

have spoliated evidence.  On November 20, 2025, the Court expressed concern about the allegedly

missing mobile data and found a spoliation hearing necessary.  (*See* Nov. 20 Hr'g Tr., *Johnson*

Dkt. No. 306 at 61:25–62:11.)  Plaintiffs have not filed a Rule 37 motion, nor have they made any

further evidentiary showing beyond merely claiming data is allegedly missing.  And to date the

Court has not required Plaintiffs to do so.  Meanwhile, Defendants are continuing to investigate

the missing data and intend to conclude that investigation next month.  (*See* Dec. 18 Hr'g Tr.,

*Johnson* Dkt. No. 339 at 14:7–13.)

The Court has asked each party to provide a list of anticipated topics of questioning, noting

that the questions should be "fairly straightforward" and premised on "what was known and not

known about the duty to preserve this information, what steps were taken or not taken, and who

was involved."  (Dec. 4 Hr'g Tr., *Johnson* Dkt. No. 323 at 30:7–14.)  Defendants filed a list

according to the Court's guidelines.  (*See* Defs.' Status Report, *Johnson* Dkt. No. 334 at 6.)

Plaintiffs submitted a (lengthy)[5] brief that included topics about the "substance" of Defendants'

---

place between him and Defendants' witnesses.  Of course, this is also true of the named plaintiffs
in *Johnson* and *Davis*.

[4] Consistent with standard eDiscovery practices, Defendants' vendor processed all chats found in
various applications into 24-hour parsed segments.

[5] Plaintiffs' December 16 Statement was 25 pages long, another filing that ignored the directions
of the Court and the District of Nevada's 24-page limit on briefs.

attorney-client privileged communications.  (*See* Pls.' Dec. 16 Stmt., *Johnson* Dkt. No. 331-5 at 24–25.)   Following the parties' submissions, the Court delineated three areas of anticipated testimony, which were similar to those it noted on December 4:  (1) "[R]espective duties of the [two] individuals regarding the operations of Zuffa and the UFC," (2) "their relationship to the record-keeping practices and their understanding of what records were and were not kept," and (3) "what efforts they made or did [not] make in relation to the preservation of documents and their awareness or not of the litigation hold in this case."  (Dec. 18 Hr'g Tr., *Johnson* Dkt. No. 339 at 12:2–9.)  In that same hearing, Plaintiffs repeated their intent to pry into Defendants' privileged communications.  (*See id.* at 22:11–17 ("I mean, I think the general rule is that privilege isn't really implicated in a spoliation once there's . . . indicia of it.  So I think we've kind of got to that threshold.")

## III.    LEGAL STANDARD

A party's litigation-hold notices, as well as communications about implementation of those holds, are protected by the attorney-client privilege and/or attorney work-product doctrine.  *See In re Google RTB Consumer Privacy Litig.*, 2024 WL 3407069, at *3; *Shenwick*, 2018 WL 833085, at *4 (litigation holds, "if prepared by counsel and directed to the client, are protected by the attorney-client privilege").  While an opposing party is typically entitled to the general "facts of" the other side's "document retention and collection policies," it is not entitled to "how the [litigation hold notices] were worded or to how they described the legal issues in th[e] action."  *In re eBay Seller Antitrust Litig.*, 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007).  Nor is it entitled to pry into attorney-client communications on the subject.  *See In re Google RTB Consumer Privacy Litig.*, 2024 WL 3407069, at *3.

Courts, however, permit limited discovery only into preservation holds if spoliation is at issue.  To determine whether such inquiry is necessary, courts engage in a two-step process.  ***First***, they determine whether the party alleging spoliation has made a preliminary showing of spoliation.  If that preliminary showing—which is a high bar—is made, limited discovery regarding the contents of a party's litigation hold notices may be permissible.  *See, e.g.*, *MedImpact Healthcare Sys., Inc. v. IQVIA, Inc.*, 2022 WL 1694428, at *3 (S.D. Cal. May 26, 2022) ("In certain cases,

1   courts have held a 'preliminary showing of spoliation' can overcome the privilege attached to

2   litigation holds."). ***Second***, if this discovery yields sufficient information for the accusing party to

3   bring a motion for sanctions, that party must meet several threshold elements—including

4   establishing that the allegedly missing data is not replaceable. *Only if that showing is made* will

5   courts permit inquiry into an alleged spoliator's intent, an inquiry that may, but often does not, call

6   for discovery of a party's privileged communications. *See, e.g.*, *Lee*, 2025 WL 2505484, at *8

7   (noting that movant withdrew initial Rule 37(e) motion due to its failure to "convince the Court

8   that the 'irreplaceable' prong of spoliation had been satisfied").

9          A.      <u>**Preliminary Showing of Spoliation**</u>

10         The "preliminary showing" threshold is a high bar. There is no "preliminary showing" if

11  the only evidence on the record is that certain documents are missing from a party's productions.

12  *See, e.g.*, *Rg Abrams Inc. v. Law Offices of C.R. Abrams*, 2021 WL 10312431, at *12 (C.D. Cal.

13  Dec. 22, 2021) (denying motion to compel "litigation hold information" when one party's only

14  evidence of spoliation was that text messages were missing for a certain period of time). Rather,

15  courts have found a "preliminary showing" where it is clear from the record that, *inter alia*, the

16  alleged spoliator did not timely issue a litigation hold, did not understand its duty to preserve

17  evidence, or failed to document its preservation efforts. *See, e.g.*, *In re Cathode Ray Tube Antitrust*

18  *Litig.*, 2023 WL 5667882, at *3–5; *Al Otro Lado, Inc. v. Wolf*, 2020 WL 4432026, at *2 (S.D. Cal.

19  July 31, 2020); *Greenberg v. Amazon.com, Inc.*, 2025 WL 2639221, at *2 (W.D. Wash. Sept. 12,

20  2025).

21         But even where a preliminary showing has been made, courts almost universally order

22  nothing more than the discovery of the alleged spoliator's litigation hold notice(s). *See, e.g.*, *Al*

23  *Otro Lado, Inc.*, 2020 WL 4432026, at *2 (ordering production of litigation hold notice where

24  employee was not instructed to preserve documents for a year and admitted to shredding

25  documents regularly); *Greenberg*, 2025 WL 2639221, at *4 (ordering defendant to produce

26  "litigation hold notices" and provide facts regarding "preservation information" where defendant

27  admitted that it "failed to notify anyone of this litigation and the preservation duties it triggered

28  for six months after the complaint was filed and then notified only six employees"); *Howard Jones*

6

1    *Investments, LLC v. City of Sacramento*, 2024 WL 4545887, at *2 (E.D. Cal. Oct. 22, 2024)

2    (granting motion to compel "litigation retention letters"); *Mcdevitt v. Verizon Servs. Corp.*, 2016

3    WL 1072903, at *2 (E.D. Pa. Feb. 22, 2016) (finding that if the movant could meet its preliminary

4    showing, it "would be entitled to receive copies of any litigation hold letters").[6]

5    **B.    Rule 37(e) Standard**

6         Rule 37(e) provides that a court may impose sanctions for the loss of information if four

7    threshold factual criteria are met: "(1) the information should have been preserved in anticipation

8    or conduct of litigation, (2) a party failed to take reasonable steps to preserve the information, (3)

9    the information was lost as a result, and (4) the information could not be restored or replaced by

10   additional discovery." *Lee*, 2025 WL 2505484, at *6 (summarizing Rule 37(e) advisory committee

11   notes).  The party alleging spoliation must prove these elements by a preponderance of evidence.

12   *Id.*  However, "[d]iscovery into another party's discovery process is disfavored . . . and such

13   requests will be closely scrutinized." *PlayUp, Inc. v. Mintas*, 344 F.R.D. 429, 437 (D. Nev. 2023).

14   Only once the moving party has proven all four objective factual threshold elements may the Court

15   and the opposing party plumb the subjective intent of the alleged spoliator.  *Lee*, 2025 WL

16   2505484, at *8 (noting that the moving party withdrew its initial spoliation motion because it had

17   failed to establish that the lost data was not replaceable).

18        Even where the moving party meets all threshold elements and the court determines that

19   disclosure of privileged materials is necessary to determine the spoliator's intent or bad faith, the

20   discoverability of privileged information is extremely limited in scope and tends to relate solely to

21   the party's own knowledge or implementation of its preservation obligations—knowledge that is

22   typically disclosed via witness declaration, not privileged documents or testimony. *Lee*, 2025 WL

23   _____

24   [6] Defendants have located one case within the Ninth Circuit that ordered discovery into a party's
     privileged communications with counsel after a preliminary showing of spoliation.  *See In re

25   Cathode Ray Tube Antitrust Litig.*, 2023 WL 5667882, at *5.  But that case presented an
     exceptional circumstance for several reasons.  First, there was no written litigation hold notice or

26   written documentation of the alleged spoliator's preservation efforts.  *Id.* at *4.  In fact, any alleged
     litigation hold was only delivered orally.  *Id.*  Worse, the alleged spoliator admitted that it produced

27   no emails because it "only retained emails for several days . . . due to acute limitations in storage
     capacity."  *Id.* at *1.  Notwithstanding these significant indicators of spoliation, the Court still

28   required only that the relevant communications be submitted *in camera*, and not to the opposing
     party.  *Id.* at *5.

2505484, at *11 (analyzing witness declarations and finding spoliation intent without reference to attorney-client communications); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1142–44 (N.D. Cal. July 25, 2012) (analyzing defendants' "efforts to follow-up with its relevant employees" regarding preservation by citing defendants' declarations).    Attorney mental impressions contained in work product are "virtually undiscoverable[.]"  *Eastman v. Thompson*, 594 F. Supp. 3d 1156, 1197 (C.D. Cal. 2022); *see also Mayorga v. Ronaldo*, 606 F. Supp. 3d 1003, 1018 (D. Nev. 2022), aff'd, 2023 WL 8047781 (9th Cir. Nov. 21, 2023) (citing Nev. Rev. Stat. § 49.095) (under Nevada law, a client may refuse to disclose privileged communications with counsel).

## IV.    ARGUMENT

### A.    Plaintiffs Have Not Made A Preliminary Showing Of Spoliation Or Met Rule 37(e)'s Threshold Elements.

Plaintiffs have not moved under Rule 37(e) or the Court's inherent authority for a threshold finding of spoliation.  Instead, Plaintiffs have resorted to "lists" of allegedly outstanding discovery without ever raising a factual dispute or providing evidence to satisfy (1) their preliminary showing obligations; or (2) the applicable spoliation factors identified by *Lee* and other courts.  Plaintiffs' procedural failures alone warrant a finding that Plaintiffs have not met their evidentiary burden to reach any of Defendants' privileged communications.  Defendants nevertheless address each requirement that Plaintiffs have failed to establish.

#### 1.    *Plaintiffs Have Not Met Their Preliminary Showing Burden.*

Outside of conjecture, Plaintiffs have only ever introduced evidence of allegedly missing time gaps as their basis for prying into privileged communications.  But courts routinely find that time gaps alone are insufficient to overcome the high bar for spoliation.  *See, e.g.*, *Rg Abrams Inc.*, 2021 WL 10312431, at *12 (denying motion to compel "litigation hold information" when one party's only evidence of spoliation was that text messages were missing for a certain period of time); *see also MedImpact Healthcare Sys., Inc.*, 2022 WL 1694428, at *3 (denying motion to compel plaintiffs' litigation hold letters, notwithstanding evidence of missing emails); *Little Hocking Water Ass'n, Inc. v. E.I. Dupont de Nemours & Co.*, 2013 WL 5311292, at *4 (S.D. Ohio

8

Sept. 20, 2023) (finding insufficient "preliminary showing" when parties had not yet determined whether missing information could be produced in alternative format).  Without more, the Court's inquiry should end there.[7]

### 2. Plaintiffs Have Not Established That Defendants Failed To Take Reasonable Steps To Preserve The Information.

Even had Plaintiffs met their initial "preliminary showing" burden, Plaintiffs have failed to meet at least three of the four threshold elements under Rule 37(e).  As an initial matter, Plaintiffs have not submitted any evidence establishing that Defendants failed to take reasonable steps to preserve the allegedly missing information.[8]  To the contrary, Plaintiffs concede that Defendants placed Dana White and Tracy Long on timely litigation holds in *Le*, and then again in *Johnson*.  (*See Cirkunovs* Dkt. No. 98-16 ("On December 18 2014, the day the UFC was served the *Le* Complaint, then-Chief Legal Officer Kirk Hendrick sent letter to all UFC employees instructing them to preserve information and documents."); *Johnson* Dkt No. 217 at 6 n.8 (citing Dkt. No. 217-17) (Plaintiffs admitting that "Zuffa did provide a list of individuals [which included Dana White and Tracy Long] subject to a litigation hold [in *Johnson*].").)  These admissions by Plaintiffs should alone be dispositive on the element of demonstrating spoliation.  Simply stated, there is no dispute that Mr. White and Ms. Long were subject to litigation holds in both *Le* and *Johnson*.  And contrary to many of the cases Plaintiffs rely upon, there is no factual dispute here as to whether Defendants timely implemented litigation holds.  *Cf. Lee*, 2025 WL 2505484, at *8 (noting that spoliation was raised because, unlike here, defendant "was not even aware of a need to preserve the cell phone data and issue a litigation hold").

---

[7] Even if Plaintiffs made the requisite "preliminary showing"—which they have not attempted to do and which Defendants would vigorously dispute, given the high threshold for such a showing—that would still only permit inquiry regarding Defendants' litigation hold notices, not counsel's communications with its clients regarding the same.

[8] Plaintiffs have not even established the first threshold element, *i.e.*, that the allegedly missing time gaps should have *all* been preserved.  Rule 37(e).  Among other things, questions remain as to the beginning of the relevant time period and subject matter relevance of communications across *Johnson*, *Davis*, and *Cirkunovs*.  *See In re: Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (duty to preserve begins when a party knows or reasonably should know the evidence is relevant to anticipated litigation); *Reinsdorf v. Sketchers U.S.A., Inc.*, 296 F.R.D. 604, 625–26 (C.D. Cal. 2013) ("The deletion of irrelevant evidence does not support a spoliation claim.")

9

Plaintiffs' own filings confirm that Defendants took reasonable steps to preserve the allegedly missing information beyond just litigation holds.  On April 7, 2025—long before any substantial completion deadlines—Defendants informed Plaintiffs that "(i) the individuals listed in Appendix A [including Dana White and Tracy Long] have been issued legal holds in connection with this matter [and *Le*], and Zuffa has taken affirmative steps to ensure compliance with those holds; (ii) the sources of data subject to Zuffa's mandatory legal hold include relevant ESI and hard-copy documents; (iii) the legal hold requires the suspension of routine deletion, automatic deletion, recycling, and regular purges of such data; (iv) Zuffa has identified custodial emails, Microsoft Teams chat messages, and network data shares as sources of potentially relevant ESI that are reasonably accessible to Zuffa; and (v) Zuffa is preserving all document types found in those ESI sources."  (Pls.' Feb. 17 Ltr., *Johnson* Dkt. No. 217-17.)  With no evidence to the contrary, Plaintiffs have failed to meet Rule 37(e)'s second threshold element.

### 3. Plaintiffs Have Not Established That The Information Was Lost As A Result Of Alleged Spoliation And That It Cannot Be Restored Or Replaced By Additional Discovery.

Plaintiffs have also made no showing on the third and fourth threshold elements—namely that the allegedly missing text messages were lost as result of Defendants' failures and that the information cannot otherwise be restored or replaced.  As Defendants have reiterated, counsel is actively investigating the allegedly missing time gaps and has disclosed to Plaintiffs all cell phone carriers involved.  (*See* Dec. 18 Hr'g Tr., *Johnson* Dkt. No. 339 at 14:7-13; *id.* Dkt. 331-5.)  Since then, Plaintiffs have also subpoenaed each of the respective cell phone carriers.[9]  (*See* Dec. 18 Hr'g Tr., *Johnson* Dkt. No. 339 at 20:22-21:8.)  "[A]s required by Rule 37(e)"—absent a response from the carriers—Plaintiffs have yet to exhaust additional discovery avenues to determine whether the allegedly missing text messages can be restored or replaced.  *See Herb Hallman Chevrolet, Inc.*, 2024 WL 3160746, at *8 ("Champion does not state whether that [allegedly lost] information is available from other sources.  This is insufficient to show that the ESI sought was lost or that no

---

[9] Plaintiffs have also noticed their intent to subpoena various social media providers, including WhatsApp LLC; Instagram, LLC; Meta Platforms, Inc.; Discord Inc.; TikTok Inc.; Life360, Inc.; Viber Media, Inc.; Tencent America LLC; Microsoft Corporation; X Corp.; Signal Messenger, LLC; Telegram Messenger Inc.; and Snap Inc.

10

1    duplicative evidence exists in the record."); *Lee*, 2025 WL 2505484, at *8 ("Having failed to

2    convince the Court that the 'irreplaceable' prong of spoliation had been satisfied at that time,

3    Plaintiffs withdrew the motion and engaged in third-party discovery directed at determining

4    whether the Missing ESI could be obtained through other means, as required by Rule 37(e).");

5    *Little Hocking Water Ass'n*, 2013 WL 5311292, at *4 ("It is only after a determination of what

6    information actually can be produced will this Court ever be in a position to determine whether

7    spoliation occurred.   On the present record, the Court declines to broaden sanctions-related

8    discovery.").   That failure alone requires a finding that Plaintiffs have yet to meet their burden,

9    and at minimum, requires the Court to wait before ordering the disclosure of privileged

10   communications.  *Id.*

11        Plaintiffs' own "indicia" of spoliation also shows that the allegedly missing text messages

12   *can be*, and *have been*, replaced.  Plaintiffs have pointed to a number of text messages *already*

13   *produced* from the files of other Defendants' custodians, but not produced from the devices of Mr.

14   White or Ms. Long.  (*See, e.g.*, *Johnson* Dkt. No. 288 at 40; *see also id*. at 13 n.18 ("not claim[ing]

15   prejudice from missing duplicate version of text messages").)  In response to this same argument,

16   the Court already found that the allegedly missing messages may in fact be replaceable.  (*See* Aug.

17   26 Hr'g Tr., *Johnson* Dkt. No. 240, at 71:11–21 ("Mr. Dell'Angelo, that to me isn't helpful.  You

18   know why it isn't helpful?  .  .  .   It doesn't mean from what I understand there aren't other

19   documents that aren't produced that have [a specific custodian's] name on them.").  The same is

20   true as to allegedly missing fighter negotiations having occurred over text message.  To the extent

21   Mr. White or Ms. Long negotiated with fighters or their managers over text message, Plaintiffs are

22   necessarily in possession of those communications (provided, of course, that Plaintiffs satisfied

23   their own evidence preservation obligations).   Without having exhausted whether duplicative

24   versions of the allegedly missing text messages exist,[10] Plaintiffs simply cannot meet their burden

25   to show that the allegedly missing information cannot be restored or replaced through additional

26

27   _____

     [10] To the extent Plaintiffs can identify specific text messages that exist involving Mr. White or Ms.
28   Long that have *not* been produced, Defendants are willing to work with Plaintiffs to investigate
     whether other versions in the possession of other custodians exist.

1  discovery, and therefore have zero basis to begin to inquire into Defendants' privileged
2  communications.

3              **4.**    *Prejudice And Intent Are Not Yet At Issue.*

4          Given Plaintiffs' failure to meet Rule 37(e)'s threshold requirements, there is no basis for
5  the Court to delve into Defendants' privileged communications to determine whether there is
6  "prejudice to another party from [the] loss of the information" or "the intent to deprive."  Rule
7  37(e)(1)–(2).  Indeed, as Plaintiffs' own authorities reflect, evidence related to intent—including
8  knowledge of, contents of, and timing of a party's litigation hold—should not be tested *at all*.  *See,*
9  *e.g.*, *Lee*, 2025 WL 2505484, at *8 (observing that plaintiffs withdrew their initial spoliation
10 motion because they "failed to convince the Court that the 'irreplaceable' prong of spoliation had
11 been satisfied"); *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *2–3
12 (C.D. Cal. Feb. 27, 2020) (noting that prior to determining intent, the Court must assess the
13 threshold Rule 37(e) elements).  Plaintiffs indisputably have not made this showing—and
14 especially that any potentially missing data is irreplaceable.  Like *Lee* and *Colonies*, Plaintiffs must
15 first satisfy their threshold burden before the issue of whether invasive, privilege-piercing
16 questions about "litigation conduct" or intent to spoliate can be considered.  (*See* Pls.' Dec. 16
17 Stmt., *Johnson* Dkt. No. 331 at 23–25.)

18         **B.**    **The Court May Address Spoliation Concerns By Means Other Than Forcing**
               **Defendants To Reveal Privileged Communications.**
19

20         Regardless of whether Plaintiffs could ever make a threshold showing of spoliation, the
21 Court can and should address any remaining spoliation concerns by "means other than forcing
22 Defendants to reveal attorney-client privileged documents or documents protected by the work
23 product doctrine."  *Shenwick*, 2018 WL 833085, at *4.  Under all relevant precedents, that is the
24 preferred path.  *See, e.g.*, *id.* (ordering the production of a privilege log over the disclosure of
25 privileged preservation notices and related communications); *In re Facebook, Inc. Consumer Priv.*
26 *User Profile Litig.*, 655 F. Supp. 3d 899, 910 (N.D. Cal. 2023) ("decid[ing] to defer ruling on the
27 privilege question so that the parties could meet and confer about narrowing the plaintiffs' request
28 for production (or, if they could not agree, submitting affidavits in support of their positions).").

1  And under the parties' agreed-upon schedule, fact discovery in *Johnson* and *Davis* does

2  not close until August 15, 2026, giving the parties ample time and different avenues to address any

3  allegedly outstanding gaps in discovery.  (*See* Joint Proposed Discovery Schedule, *Johnson* Dkt.

4  No. 258.)[11]  With Defendants' counsel continuing to actively investigate and sufficient time

5  remaining, Ms. Long and Mr. White can each address the Court's anticipated scope of questioning

6  by sworn declarations.  Not only is this consistent with applicable case law, but it is also consistent

7  with the Court's decision in *Le*, where the Court addressed similar spoliation allegations through

8  declarations by Mr. White.  Mr. White attested to his duties at Zuffa, the mobile devices in his

9  possession and efforts to preserve communications therein, and his awareness of litigation holds.

10  (*See, e.g.*, *Cirkunovs* Dkt. No. 98-29.)  There is no reason that the same cannot be done here.

11  Indeed, the majority of the cases Plaintiffs cite in their December 16 brief—and the majority of

12  relevant cases that exist on this issue—did not require an evidentiary hearing to address spoliation

13  concerns.

14  Should the Court nevertheless proceed with an evidentiary hearing, it has correctly forecast

15  the applicability and scope of privilege is likely to "get very messy very quickly."  (*See* Dec. 18

16  Hr'g Tr., *Johnson* Dkt. No. 339 at 20:14–18.)  Given Plaintiffs' position that they are entitled to

17  virtually *all* privileged communications (*see* Pls.' Dec. 16 Stmt., *Johnson* Dkt. No. 331 at 23–25),

18  Defendants' counsel anticipates having to object to a significant portion of Plaintiffs' questions

19  and instruct their clients not to answer.  Despite counsel's best efforts, the risk of inadvertent

20  disclosure is a near certainty and would present serious unfair advantage and disqualification

21  concerns.  *See Mirch Law Firm, LLP v. Nakhleh*, 2022 U.S. App. LEXIS 14564, at *4 (9th Cir.

22  May 26, 2022).  To prevent against inadvertent disclosure and a likely stop-and-go hearing with

23  multiple *ex parte* discussions with the Court, the Court should consider Defendants' reasonable

24

25

26

---

27  [11] With *Cirkunovs* now subject to a mandatory stay under Sections 3 and 4 of the Federal
Arbitration Act, there are no exigent circumstances to immediately proceed with a spoliation

28  hearing where Defendants may be forced to reveal privileged communications related to that
matter.  *See Shenwick*, 2018 WL 833085, at *4.

13

1    alternative—which is supported by this Court's and numerous other courts' decisions on this very

2    issue—to proceed by declarations.

3             C.    <u>**Any Required Disclosure Of Privileged Communications Must Be Limited.**</u>

4             If the Court were to find that (1) Plaintiffs made a preliminary showing as to spoliation (or

5    met all Rule 37(e) threshold elements, which they have not), and (2) spoliation concerns remain

6    and require the disclosure of privileged communications (and no lesser restrictive alternatives

7    exist), the scope of any privileged disclosure must be severely limited.  *See, e.g.*, *City of Colton*,

8    2011 WL 13223880, at *2 (only allowing discovery of litigation hold letters after a preliminary

9    showing of spoliation).  Absent the improper invasion of attorney-client privilege or inquiries into

10   work product, Defendants submit that limited factual questions surrounding the proposed scope

11   delineated by the Court would be appropriate, namely: (1) "respective duties of the [two]

12   individuals regarding the operations of Zuffa and the UFC," (2) "their relationship to the record-

13   keeping practices and their understanding of what records were and were not kept," and (3) "what

14   efforts they made or did [not] make in relation to the preservation of documents and their

15   awareness or not of the litigation hold in this case."  (Dec. 18. Hr'g Tr., *Johnson* Dkt. No. 339 at

16   12:2-9.)[12]

17            Should the Court entertain the following lines of Plaintiffs' proposed questioning,

18   Defendants will likely be required to object and instruct their witnesses not to answer to preserve

19   their privilege and work product claims:

20        • "[C]ommunications between Defendants' counsel and Mr. White and Ms. Long
             about Defendants' litigation holds," including the "substance of communications
21           regarding the implementation and enforcement of any such litigation holds";

22        • "[I]nstructions given [by counsel] for document collection and communications
             with Mr. White and Ms. Long about preserving and producing their devices, emails,
23           app accounts, or other ESI sources for imaging and document collection";

24

_____

25   [12] Defendants' counsel will not object to Plaintiffs' inquiry into the "basic details" surrounding
     litigation holds, including names, titles, dates, and kinds of categories of ESI preserved.  *Doe LS*
26   *340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 802 (N.D. Cal. 2024) (collecting cases); *In re eBay*
     *Seller Antitrust Litig.*, 2007 WL 2852364, at *1 (finding that plaintiffs are only entitled to inquire
27   "into the *facts* as to what the employees receiving [litigation holds] have done in response; i.e.,
     what efforts they have undertaken to collect and preserve applicable information").  But each of
28   these permissible questions can be addressed through Defendants' proposed declarations.

- "[E]fforts by Defendants' counsel to seek information to comply with Defendants' discovery obligations";

- "[T]he investigative steps counsel undertook to gather evidence from Mr. White and Ms. Long . . . and Mr. White and Ms. Long's responses and role in the process";

- "[T]he substance . . . of custodial interviews that Defendants purportedly conducted to determine the sources of ESI they collected";

- "[T]he . . . substance of any communications with Defendants' counsel in efforts to obtain information either in response to a request by Plaintiffs to disclose information in discovery correspondence or in response to Court Orders";

- "[W]hat efforts, if any Defendants' counsel have taken to attempt to recover any missing ESI." (Pls.' Dec. 16 Stmt., *Johnson* Dkt. No. 331 at 23–25.)

Among other things, there is no basis for Plaintiffs to inquire about the "***substance***" of communications between counsel and witnesses. *Id.* Nor is there any proper basis for Plaintiffs to inquire about counsel's investigative processes underlying document requests or the actual spoliation investigation at issue. *Id.* These lines of questioning all implicate attorney work product and mental impressions which are "virtually undiscoverable[.]" *Eastman*, 594 F. Supp. 3d at 1197.

Plaintiffs nevertheless assert that Defendants have waived any privilege regarding these topics because a preliminary showing of spoliation apparently permits unfettered infiltration into privileged material. (*See* Pls.' Dec. 16 Stmt., *Johnson* Dkt. No. 331 at 25 ("[N]one of these questions implicates any privilege or work-product protection, as Plaintiffs' 'preliminary showing of spoliation' waives any claim Defendants may have to such protections."). That position is flat out wrong, and unsupported by any relevant authority. Plaintiffs cite no case from the Ninth Circuit or its district courts that allowed (or considered) discovery of attorney-client communications. And the cases Plaintiffs do cite in their December 16th Statement are much more limited in scope. *At most*, those cases permitted disclosure of the general facts relating to a party's litigation hold, general facts regarding retention efforts, or production of portions of the litigation hold notice itself. *See, e.g.*, *City of Colton*, 2011 WL 13223880, at *5 (ordering, after *in camera* review of documents, production of "only those portions of the letter that refer to litigation hold or preservation issues") (internal citation omitted); *Lee*, 2025 WL 2505484, at *12 (citing statements from Defendants' witnesses, made via declaration, that they did not receive a litigation hold, with no further discussion of privileged communications); *Colonies Partners, L.P.*, 2020 WL

15

1496444, at *8 (citing only to witness's statement that "he was not aware of his obligation" to preserve documents for the implication that "there was no formal litigation hold in place"); *In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 985–991 (N.D. Cal. 2023) (discussing basic facts regarding Google's preservation practices, not attorney-client communications).[13]

In fact, several of Plaintiffs' cases cut directly against them. For example, Plaintiffs cite *In re eBay Seller Antitrust Litigation* to argue that they may "inquire about matters such as litigation hold implementation and enforcement correspondence." (Pls.' Dec. 16 Stmt. at 24.) But *eBay* holds no such thing. It is not a case about spoliation discovery at all. Rather, it holds that in the context of Rule 26 discovery, a party is entitled to the "facts of [the defendant's] document retention and collection policies," rather than "what exactly [the defendant's] employees were told by its attorneys." *In re eBay Seller Antitrust Litig.*, 2007 WL 2852364, at *2. Similarly, Plaintiffs cite to *City of Colton* to claim that their invasive questions are appropriate simply because this Court has found an indicia of spoliation. (Pls.' Dec. 16 Stmt. at 24.) But *Colton* is far more limited. It only allowed discovery of the defendant's litigation hold letters after a preliminary showing (not a mere indication) of spoliation—and nothing else. *See City of Colton*, 2011 WL 13223880, at *6.

Absent support for their position in the Ninth Circuit, Plaintiffs cite to a single case from the Southern District of Georgia that permitted discovery into "internal emails regarding the collection of data" and "whose data to collect." *Whitesell Corp. v. Electrolux Home Prods., Inc.*, 2016 WL 1317673, at *2 (S.D. Ga. Mar. 31, 2016). But even in *Whitesell*, the court took care to note that a "preliminary showing of spoliation . . . does not throw open the door to [plaintiff] of all documents pertaining to data collection and production," and refused to order the "production of substantive, privileged memoranda." *Id.* at *3. Ultimately, the Court found that the plaintiff's

---

[13] Plaintiffs also cite to *Lee* for the proposition that Defendants' alleged litigation misconduct permits discovery into privileged material. (*See* Pls.' Dec. 16 Stmt. at 25.) *Lee* provides no support for this argument. While the case does discuss a party's litigation conduct, the court only addressed the defendant's discovery responses and disclosures. It did not reference any internal discussions—and certainly not attorney-client privileged communications. *Lee*, 2025 WL 2505484, at *18–19.

1    "request-to compel production of every privileged document described as concerning data

2    collection [was] overly broad, [and] unduly burdensome." *Id.*[14]

3         Put simply, there is no support for the broad, invasive questioning that Plaintiffs demand.

4    The Court should require Plaintiffs to satisfy their "preliminary showing" and Rule 37(e)

5    burdens—including demonstrating that any lost data is indeed not replaceable—prior to any

6    questioning on privileged communications or work product.  To facilitate that process, the Court

7    should allow Defendants' witnesses to submit a declaration under penalty of perjury as the

8    majority of relevant district courts have (including those in cases Plaintiffs cite).  A declaration

9    will allow Defendants' witnesses to provide the information the Court requires while avoiding the

10   privileged fishing expedition that Plaintiffs are eager to engage in.

11   **V.    CONCLUSION**

12        For the foregoing reasons, and especially to protect against the disclosure of privileged

13   communications, Defendants respectfully request the Court to address any threshold spoliation

14   concerns through means other than a hearing, such as declarations submitted under

15   penalty of perjury.

16

17

18

19

20

21

22

23

24

25

26

---

27   [14] Plaintiffs cite an additional out-of-jurisdiction case that has nothing to do with spoliation.
     Instead, it pertains to discovery of a defendant's search terms and processes in the face of evidence

28   that the defendant's searches had not been fulsome.  *See Johnson v. Ford Motor Co.*, 2015 WL
     6758234, at *9–10 (S.D. W. Va. Nov. 5, 2015).

1

Dated:  December 30, 2025

2

By: */s/ Christopher S. Yates*

3

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com

4

AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com

5

LATHAM & WATKINS LLP

6

505 Montgomery Street, Suite 2000
San Francisco, CA 94111

7

Tel: (415) 395-8095

8

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com

9

LATHAM & WATKINS LLP

10

330 North Wabash Ave, Suite 2800
Chicago, IL 60611

11

12

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com

13

JOSEPH AXELRAD (*Pro hac vice*)
joseph.axelrad.lw.com

14

LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100

15

Los Angeles, CA 90067

16

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@DIRLLP.com

17

JESSICA PHILLIPS (*Pro hac vice*)
jphillips@DIRLLP.com

18

DUNN ISAACSON RHEE LLP

19

401 Ninth Street NW
Washington, DC 20004

20

21

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com

22

J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com

23

CAMPBELL & WILLIAMS

24

710 South 7th Street
Las Vegas, Nevada 89101

25

Tel: (702) 382-5222

26

*Attorneys for Defendant Zuffa, LLC, TKO*
*Operating Company, LLC, and Endeavor*

27

*Group Holdings, Inc.*

28

18

1

## **CERTIFICATE OF SERVICE**

2

3        The undersigned hereby certifies that the foregoing Defendants' Position Regarding

Spoliation Questioning And Scope Of Privilege was served on December 30, 2025 via the Court's

4

CM/ECF electronic filing system addressed to all parties on the e-service list.

5

6

7                                        */s/ Christopher S. Yates*
                                         Christopher S. Yates of
8                                        LATHAM & WATKINS LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' POSITION RE SPOLIATION QUESTIONING        CASE NOS.  2:21-CV-1189-RFB-BNW; 2:25-CV-914-RFB-BNW; 2:25-CV-946-RFB-BNW