# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated, | No.: 2:21-cv-01189-RFB |
| Plaintiffs, | |
| v. | |
| ZUFFA, LLC, TKO OPERATING COMPANY, LLC f/k/a ZUFFA PARENT LLC (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC., | **PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE AND RESPONSE TO DEFENDANTS' POSITION STATEMENT** |
| Defendants. | |
| MIKHAIL CIRKUNOVS, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | No.: 2:25-cv-914-RFB |
| ZUFFA LLC, TKO OPERATING COMPANY, LLC f/k/a ZUFFA PARENT LLC (D/B/A ULTIMATE FIGHTING CHAMPIONSHIP and UFC) and ENDEAVOR GROUP HOLDINGS, INC., | |
| Defendants. | |
| PHIL DAVIS, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | No.: 2:25-cv-00946-RFB |
| ZUFFA LLC, TKO GROUP HOLDINGS, INC. (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC., | |
| Defendants. | |

# PUBLIC-REDACTED VERSION

CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     RELEVANT FACTUAL BACKGROUND....................................................... 1

        A.      The Court Finds "Significant Indicia of Spoliation" ....................... 1

        B.      Defendants Delay, Violate Court Orders, and Refuse to Investigate
                Plaintiffs' Evidence-Based Spoliation Contentions ......................... 5

        C.      The Court Orders a Spoliation Hearing............................................. 9

III.    ARGUMENT .................................................................................................. 9

        A.      Discovery Is Permitted into Materials Relevant to Spoliation if There Is a
                Preliminary Showing of Spoliation, as Here, even if They Are Otherwise
                Privileged or Protected...................................................................... 9

        B.      Plaintiffs Have Made, at a Minimum, a Preliminary Showing of
                Spoliation ........................................................................................ 11

        C.      Defendants Repeatedly Misstate the "Preliminary Showing of Spoliation"
                Standard ........................................................................................... 13

        D.      Discovery into Preservation Materials is Permissible, but in the Alternative,
                this Court Can Order Production of Materials *in Camera* and an
                Accompanying Privilege Log ........................................................... 19

        E.      Defendants' Discussion of the Rule 37(e) Elements Is Misplaced ................ 20

        F.      Defendants' Efforts to Revisit the Order Setting the Spoliation Hearing Are
                Untimely and Should Be Rejected ................................................... 21

IV.     CONCLUSION.............................................................................................. 22

i                              CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

1

## TABLE OF AUTHORITIES

Page(s)

2

**CASES**

3

4

*Al Otro Lado, Inc. v. Wolf*,
2020 WL 4432026 (S.D. Cal. July 31, 2020).................................................10, 14, 17, 19

5

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
881 F. Supp. 2d 1132 (N.D. Cal. July 25, 2012) ...........................................................18

6

*City of Colton v. Am. Promotional Events, Inc.*,
2011 WL 13223880 (C.D. Cal. Nov. 22, 2011) ...................................................*Passim*

7

8

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
2020 WL 1496444 (C.D. Cal. Feb. 27, 2020)................................................................20

9

*Czuchaj v. Conair Corp.*,
2016 WL 4161818 (S.D. Cal. Apr. 1, 2016) .................................................................16

10

11

*Doe LS 340 v. Uber Techs., Inc.*,
710 F. Supp. 3d 794 (N.D. Cal. 2024)..........................................................................20

12

*Donofrio v. Ikea US Retail, LLC*,
2024 WL 1998094 (E.D. Pa. May 6, 2024)..................................................................15

13

14

*Eastman v. Thompson*,
594 F. Supp. 3d 1156 (C.D. Cal. 2022).......................................................................18

15

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*,
2018 WL 3342931 (M.D. Tenn. Mar. 29, 2018)...........................................................16

16

*Fed. Trade Comm'n v. Amazon.com, Inc.*,
2024 WL 3342701 (W.D. Wash. July 9, 2024).......................................................16, 19

17

18

*Global Music Rts., LLC v. Radio Music License Comm., Inc.*,
2020 WL 10692695 (C.D. Cal. Aug. 3, 2020) ..............................................................10

19

*Greenberg v. Amazon.com, Inc.*,
2025 WL 2639221 (W.D. Wash. Sept. 12, 2025) .................................................13, 15, 17

20

21

*Herb Hallman Chevrolet, Inc. v. Gen. Motors LLC*,
2024 WL 3160746 (D. Nev. June 24, 2024) ...........................................................13, 20

22

*Howard Jones Investments, LLC v. City of Sacramento*,
2024 WL 4545887 (E.D. Cal. Oct. 22, 2024)...............................................................17

23

*In re Blue Cross Blue Shield Antitrust Litig.*,
2015 WL 10891632 (N.D. Ala. Nov. 4, 2015) ..............................................................16

24

25

*In re Cathode Ray Tube Antitrust Litig.*,
2023 WL 5667882 (N.D. Cal. Jan. 27, 2023)..........................................................14, 19

26

*In re eBay Seller Antitrust Litigation*,
2007 WL 2852364 (N.D. Cal. Oct. 2, 2007) ................................................................17

27

28

ii                                                    CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
    655 F. Supp. 3d 899 (N.D. Cal. 2023) ........................................................................21

*In re Google RTB Consumer Privacy Litig.*,
    2024 WL 3407069 (N.D. Cal. July 11, 2024) ............................................................14

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    341 F.R.D. 474 (S.D.N.Y. 2022) ..............................................................................16

*In re Napster, Inc. Copyright Litig.*,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ...................................................................20

*Le v. Zuffa, LLC*,
    2023 WL 5085064 (D. Nev. Aug. 9, 2023) ................................................................2

*Lee v. Cnty. of Los Angeles*,
    2025 WL 2505484 (C.D. Cal. Aug. 29, 2025) .............................................13, 18, 20

*Little v. City of Seattle*,
    863 F.2d 681 (9th Cir. 1988) .....................................................................................11

*Little Hocking Water Ass'n, Inc. v. E.I. Dupont de Nemours & Co.*,
    2013 WL 5311292 (S.D. Ohio Sept. 20, 2023) .........................................................18

*Major Tours, Inc. v. Colorel*,
    2009 WL 2413631 (D.N.J. Aug. 4, 2009) ..................................................10, 17, 20

*Mayorga v. Ronaldo*,
    606 F. Supp. 3d 1003 (D. Nev. 2022) ......................................................................18

*Mcdevitt v. Verizon Servs. Corp.*,
    2016 WL 1072903 (E.D. Pa. Feb. 22, 2016) .............................................................17

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
    2022 WL 1694428 (S.D. Cal. May 26, 2022) .....................................................14, 18

*Owens v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*,
    695 F. Supp. 3d 750 (M.D. La. 2023) ......................................................................16

*Reinsdorf v. Sketchers U.S.A., Inc.*,
    296 F.R.D. 604 (C.D. Cal. 2013) ..............................................................................20

*Rg Abrams Inc. v. Law Offices of C.R. Abrams*,
    2021 WL 10312431 (C.D. Cal. Dec. 22, 2021) ....................................................14, 18

*Roytlender v. D. Malek Realty, LLC*,
    2022 WL 5245584 (E.D.N.Y. Oct. 6, 2022) .............................................................10

*Ryan v. Rock Grp., N.Y. Corp.*,
    2019 WL 6841874 (S.D.N.Y. Dec. 16, 2019) ...........................................................15

*Shenwick v. Twitter*,
    2018 WL 833085 (N.D. Cal. Feb. 7, 2018) ...................................................13, 15, 17

*Shufeldt v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*,
    2020 WL 1532323 (M.D. Tenn. Mar. 31, 2020) ......................................................10

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

*Thomas v. Cricket Wireless, LLC*,
   2020 WL 7344742 (N.D. Cal. Dec. 14, 2020) ...................................................................11

*U.S. Equal Emp. Opportunity Comm'n v. Aspire Reg'l Partners*,
   2024 WL 4986997 (S.D. Ohio Dec. 5, 2024) ...................................................................11

*United Illuminating Co. v. Whiting-Turner Contracting Co.*,
   2020 WL 8611045 (D. Conn. Oct. 30, 2020) ...................................................................10

*United States v. Cmty. Health Network, Inc.*
   2023 WL 4761664 (S.D. Ind. July 26, 2023) ...................................................................11

*Whitesell Corp. v. Electrolux Home Prods., Inc.*,
   2016 WL 1275656 (S.D. Ga. Mar. 31, 2016) ...................................................................10

*Whitesell Corp. v. Electrolux Home Prods., Inc.*,
   2016 WL 1317673 (S.D. Ga. Mar. 31, 2016) ..............................................11, 16, 17, 19

*Zubulake v. UBS Warburg LLC*,
   229 F.R.D. 422 (S.D.N.Y. 2004) ..................................................................15, 16, 19

**RULES**

Rule 37(e) of the Federal Rules of Civil Procedure ...................................................20, 21

D. Nev. Loc. R. 59-1(c) ...................................................................................21

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I. <u>INTRODUCTION</u>

Consistent with this Court's prior preliminary findings of spoliation, and the prevailing legal rule that such a preliminary spoliation showing can render discoverable material that is otherwise privileged or protected, the Court should allow discovery of material relevant to spoliation and reject Defendants' efforts to wield attorney-client privilege and the work-product protection as a shield and a sword. Notwithstanding this Court's finding of Defendants' pattern of discovery abuse—and their repeated obstruction of Plaintiffs' investigative efforts—Defendants now seek to shield inquiry into their discovery abuses and spoliation by withholding evidence pertaining to their retention efforts. They seek to hide behind invalid assertions of attorney-client privilege and work-product doctrine, continuing their pattern of avoiding discovery obligations through delay, misdirection, and obstruction—prolonging this litigation, increasing Plaintiffs' costs, and impairing judicial efficiency.

## II. <u>RELEVANT FACTUAL BACKGROUND</u>

### A. The Court Finds "Significant Indicia of Spoliation"

On November 20, 2025, this Court found "significant indicia of spoliation of relevant evidence" in Defendants' failure to preserve text messages, instant messages, and chat documents ("Chats"). Nov. 20 Hr'g Tr. at 62:1–20, 61:25–62:3. Defendants failed to produce "text messages, messages, or anything involving Mr. White or Ms. Long for years" while being "aware that . . . evidence should have been preserved [that] was not." *Id.* at 62:8–10. This failure to collect and produce Chats from Mr. White and Ms. Long was "deeply troubling" given that both were "involved . . . in negotiations of contracts,"[1] an issue that bears directly on the enforceability of Defendants' arbitration clauses.[2] Accordingly, the Court found it "necessary to take potential remedial action

---

[1] Nov. 20 Hr'g Tr. at 19:8–15 ("[W]hy are there missing years, years, of texts where we know [Mr. White and Ms. Long] were involved, and you admitted they were involved, in negotiations of contracts?"); *id.* at 20:19–21:12 ("Mr. White is the head of the organization. Ms. Long is part of the negotiation. How are missing texts for individuals who are part of the negotiation not relevant . . . ? How does that not raise a spoliation issue when since 2017 these individuals, but particularly these individuals involved with negotiations, would be on notice of preserving this information?").

[2] Nov. 20 Hr'g Tr. at 58:23-59:12 (finding "relevant" to arbitration enforceability "the negotiations themselves" and "internal discussions between UFC individuals involved with the negotiations").

1    under Rules 26 and 37," including a spoliation hearing "to determine the extent and level of the

2    deletion or destruction of evidence in this case." *Id.* at 61:5–7, 62:12–14. Substantial gaps for many

3    of Defendants' employees' mobile devices and Chats beyond those of Mr. White and Ms. Long also

4    exist. Indeed, this Court found that the implications of this missing information and potential

5    spoliation apply beyond the question of arbitration and have potentially serious implications for

6    *Johnson*, *Davis*, and *Cirkunovs.* *See* Dec. 4 Hr'g Tr. at 71:18–23.

7        The Court's spoliation finding is supported by substantial evidence. Defendants' disclosures

8    regarding mobile devices, documents from within Defendants' production, and publicly available

9    evidence all reflect likely spoliation of evidence relevant to issues bearing on the determination of

10    Defendants' Motion to Compel Arbitration, as well as *Johnson*, *Davis*, and *Cirkunovs* generally.

11        i.    Missing Text Messages

12        To start, Defendants appear to have spoliated Mr. White and Ms. Long's text messages—and

13    those of other relevant employees—for significant periods of time. Of the 10.5-year relevant period,

14    Defendants collected *no* text messages from Mr. White and Ms. Long for 7.5 years and 6.5 years,

15    respectively.[3] ECF 346.[4] Defendants confirmed they understood their obligation to preserve these

16    materials, and that Zuffa issued litigation holds to Mr. White and Ms. Long in *Le* that continue

17    through the present actions. ECF 347 at 9. Defendants' failure to collect and produce Mr. White's

18    Chats is particularly alarming given his assertion that he is a ███████ who "███████████████."

19    ECF 329-4 at 11.

20        Mr. White and Ms. Long's missing Chats likely contained highly relevant evidence,[5] as there

21    is no dispute that Mr. White and Ms. Long play substantial roles in fighter contract negotiations.

22    ECF 331 at 13 & n.24; *see also* Nov. 20 Hr'g Tr. at 19:8–15. Indeed, Plaintiffs have identified

23

24    [3] There are likely additional undisclosed, potentially lost devices that belonged to Mr. White. *See* ECF 329 at 13.

25    [4] All ECF numbers reference the *Johnson* docket.

26    [5] For example, in *Le* the Court relied on a Chat sent to Mr. White's phone to find that the plaintiffs
27    could show classwide evidence of anticompetitive conduct. *Le v. Zuffa, LLC*, 2023 WL 5085064, at
     *25 (D. Nev. Aug. 9, 2023). *See* ECF 288-27.

28

2    CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

documents in Defendants' production referencing responsive unproduced text messages sent by both Mr. White and Ms. Long, *see, e.g.*, Exs. 1, 2, and at least one screenshot of a portion of an unproduced, relevant text message negotiation sent to Mr. White by a fighter's representative, ECF 333-4.[6]

Defendants' failure to collect and produce responsive text messages is not limited to Mr. White and Ms. Long. Throughout this case, Defendants have produced approximately 522 Chats in total despite purporting to have searched 29 devices belonging to 19 employees during a 10.5-year period. ECF 327-49.[7] Therein, there are numerous examples of Chats that were apparently not collected from the devices of all participants in those Chats, including Mr. White, Ms. Long, Hunter Campbell, Mick Maynard, Sean Shelby, Denitza Batchvarova, and Lawrence Epstein. ECF 327-49. Defendants also have not collected text messages (or other Chats) from *any* mobile device belonging to Denitza Batchvarova, Senior Vice President of Strategy, ECF 346; ECF 217-46 at 4, even though Defendants produced text messages involving her from other employees' devices, ECF 333-5; and emails reflecting she used her mobile device for business purposes, ECF 329-4 at 17; ECF 329 at 15.

ii.    Missing Non-SMS Communications

As with text messages, the Court found significant indicia of spoliation of non-SMS communication apps by Mr. White and Ms. Long from Plaintiffs' evidence.

First, Defendants have produced zero documents collected from any non-SMS messaging app, such as WhatsApp, Instagram, TikTok, etc., from the devices of Mr. White and Ms. Long. ECF 327-49. Yet, Defendants disclosed that Mr. White uses accounts with WhatsApp, Instagram, and

---

[6] In addition, Plaintiffs have identified several Chats containing responsive communications sent by Mr. White to UFC employees (but not produced from Mr. White's devices), ECF 333 at 19–20; ECF 333-5. While Defendants have produced these Chats from other sources, they reflect the sorts of responsive materials spoliated by Mr. White, and thus support the inference that other spoliated materials that have not been located elsewhere likely exist.

[7] While Defendants identified 35 employees as those who may possess potentially relevant information in their files, ECF 344 at 7, Defendants only disclosed mobile devices for 17 of these individuals, as well as for two employees Plaintiffs initially proposed, ECF 346. Thus, Defendants appear to have not identified any mobile devices for 18 of the employees that they independently determined to have relevant documents.

TikTok.[8] ECF 346. Indeed, public reporting shows that Mr. White uses Instagram for UFC business, including fighter negotiations during the relevant period here, and in particular Instagram Direct Messages reportedly sent during the period for which Defendants have failed to collect any Chats from Mr. White. ECF 329-4 at 14; Ex. 3. Likewise, Defendants disclosed that Ms. Long maintains accounts with Instagram, WhatsApp, and Life360 that contain potentially responsive material, ECF 346, yet no documents have been produced from her non-SMS communications app accounts, ECF 327-49.

Second, public evidence reflects that at least Mr. White has used non-SMS communications apps that Defendants have failed to disclose (or apparently image). For example, when UFC fighter Conor McGregor leaked his Instagram Direct Messages with White on X (formerly Twitter), White responded to the leak using his X account. Ex. 4. Defendants have not collected any Direct Messages from the time period of that leak (or otherwise) and not even disclosed Mr. White's use of X for business purposes (though Zuffa disclosed Mr. White's X account for business purposes in *Le*). ECF 329 at 18 & n.69; *see also* ECF 346. Furthermore, Mr. White has maintained a Telegram account (@dana_white) and one or more Snapchat accounts (*e.g.*, @danawhiteufc and @danawhite). ECF 329 at 18 & n.69. Mr. White's use of Telegram and Snapchat is especially problematic because these apps can have automated destruction settings that Defendants do not appear to have taken steps to disable. *Id.*

Beyond Mr. White and Ms. Long, Defendants have produced only 147 non-SMS communications app documents, all of which were collected from WhatsApp, ECF 327-49,[9] but disclosed that at least 16 employees used WhatsApp during the relevant time period, ECF 346. Similarly, Plaintiffs have identified several additional undisclosed app accounts that appear to

---

[8] Defendants *first* disclosed that Mr. White sent responsive communications on WhatsApp on December 15, 2025, ECF 333-1—over five months after the Court's July 3 device disclosure deadline, ECF 202, and five months *after* the extended Court-Ordered Substantial Completion deadline of July 17, 2025. ECF 189.

[9] Defendants have produced WhatsApp chats from Mick Maynard (131), Peter Dropick (6), Sean Shelby (6), David Shaw (2), Hunter Campbell (1), and Ari Emanuel (1). ECF 327-49.

belong to Defendants' executives and employees, including publicly available evidence of Ari

Emanuel's verified X account. ECF 329 at 18.

**B. Defendants Delay, Violate Court Orders, and Refuse to Investigate Plaintiffs' Evidence-Based Spoliation Contentions**

Defendants have deflected (and continue to deflect) Plaintiffs' concerns about the above

apparent spoliation as "fishing expeditions." ECF 291-2 at 9, 11; ECF 290 at 10; ECF 334 at 5.

However, not once have Defendants *disputed* any of the above gaps in their collections or

productions. Plaintiffs first raised concerns about Defendants' device disclosures and potential

spoliation in April 2025. *See* ECF 329 at 2–11. In response, Defendants delayed, obstructed, and

mischaracterized Plaintiffs' fact-based spoliation concerns as "frivolous[]," ECF 224 at 15 n.18,

impairing attempts to address these concerns by ignoring reasonable inquiries, reneging on

agreements to provide requested information, violating this Court's orders, and conducting *still*

ongoing prolonged "investigations," while providing few details.

i.    Defendants' Deficient Device Disclosures

As part of Defendants' campaign to thwart inquiry into their spoliation, they have repeatedly

failed to disclose information about their employees' devices and communications and, in doing so,

violated the Court's Orders and concealed that individuals had either failed to preserve or produce

devices. Defendants made their first disclosure about employee mobile devices on April 23, 2025.

ECF 327-6. After Plaintiffs raised the myriad omissions in this disclosure, the Court ordered

Defendants "to provide to Plaintiffs a listing of information related to business and personal phones,

phone numbers, and apps or programs being used on these devices during the relevant time period,

as described on the record." ECF 202.

Defendants produced a new disclosure on July 3, 2025, representing therein that the

disclosure included "all information related to the mobile devices imaged on behalf of" Defendants

and the Individual Subpoena Recipients. ECF 274 at 6–7. However, the disclosure provided only

incomplete information for approximately half of the employees whose files Defendants had

proposed to search (omitting the other half entirely), and Defendants did not supply information

5    CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

1   concerning many of the Individual Subpoena Recipients whom Defendants' counsel represent. *See*

2   ECF 329 at 7–8; *see also* ECF 217-32 at 4-6; ECF 217-34.

3       Plaintiffs raised the July 3 disclosure completeness issues in a July 9, 2025 letter that

4   Defendants ignored. ECF 329 at 7. Plaintiffs then moved to compel a complete July 3 disclosure and

5   for sanctions. *See* ECF 217. Defendants refused Plaintiffs' subsequent attempts to obtain the omitted

6   information, including by letters on September 12, 2025, ECF 344-3, and October 28, 2025, ECF

7   329-4.[10] Defendants claimed that the Court had blessed their disclosure as complete, ECF 291-2 at 8

8   ("Plaintiffs already made this argument before Judge Boulware as to Defendants' July 3 disclosure,

9   and it was overruled."), notwithstanding the Court's direct statement that Defendants violated the

10  Order compelling the disclosure. Aug. 26 Hr'g Tr. at 45:5–11 ("I think there was an issue about

11  delayed disclosure which I think is a violation of the Court's order"); *see also id.* at 36:3–4.

12      At the October 30 and November 20 hearings, the Court confirmed that Defendants' deficient

13  July 3 disclosure violated the Court's June 3 Order. Oct. 30 Hr'g Tr. at 12:12–13:8; Nov. 20 Hr'g Tr.

14  at 59:24–60:8. Specifically, the Court stated that it had "previously ordered specific and detailed

15  disclosure of device information regarding relevant custodians, but in particular those individuals

16  who have been identified with negotiations," and found that "this is still not complete or done." Nov.

17  20 Hr'g Tr. at 60:1–8. The Court described these failures as an "ongoing pattern of discovery

18  violations" and "disclosure misconduct." *Id.* at 60:9–12; *see also id.* at 61:20–24. The Court further

19  found that Defendants' disclosure deficiencies supported Plaintiffs' showing of spoliation of relevant

20  evidence. *Id.* at 62:1–10.

21      Since the November 20 hearing, Defendants have provided little new information about their

22  device collections. On December 9, 2025, pursuant to the Court's order, Plaintiffs submitted a list of

23  information missing from Defendants' disclosures. ECF 329. Defendants never responded. On

24  December 15, 2025, Defendants submitted an updated disclosure that included carrier information

25

26  [10] Plaintiffs also raised the device disclosure omissions at the September 29 hearing, in the parties'
    October 23 and November 10 Status Reports, and in Plaintiffs' November 7 Statement. *See* Sept. 29
27  Hr'g Tr. at 23:15–28:5; ECF 274 at 8–9; ECF 290; ECF 291 at 2–3.

28

1  for certain employees and disclosed for the first time that Mr. White sent potentially responsive

2  communications on WhatsApp, but continued to omit device information for all the employees

3  missing from Defendants' prior disclosures. *See* ECF 346. Defendants have never affirmatively

4  stated whether they can provide the missing device information. ECF 329 at 19 & n.70.[11]

5      ii.    Defendants' Refusals to Investigate

6          Further, Defendants rebuffed each of Plaintiffs' attempts to inquire about Defendants'

7  apparent spoliation, including Plaintiffs' efforts to understand whether alternative storage locations

8  may contain some or all of the apparently spoliated materials.

9          *Missing Non-SMS App Communications.* Defendants have never responded to any of

10  Plaintiffs' requests regarding Defendants' employees' non-SMS communications app documents.

11  On July 7, Plaintiffs noted public evidence of Mr. White's use of non-SMS apps omitted from

12  Defendants' July 3 disclosure; Defendants never responded. Plaintiffs raised the omission of non-

13  SMS app communications again in September 12 and October 28 letters to Defendants, ECF 327-8

14  at 9–10; ECF 329-4 at 14. On November 3, Defendants responded that they had "already disclosed

15  the specific applications [they] imaged on July 3; there is nothing left for Defendants to disclose."

16  ECF 291-2 at 9 n.11.

17          *Texts Not Produced from Chat Participants.* Defendants have also produced numerous Chats

18  between multiple employees that were not located in all participating employees' files—suggesting

19  that such Chats were deleted or Defendants failed to preserve them. Plaintiffs identified examples of

20  such Chats in their July 22 and September 12 letters to Defendants. ECF 217-37 at 5–6; ECF 327-8

21  at 9–10. On September 18, 2025, Defendants agreed to investigate and explain why these Chats were

22

23  [11] In describing Defendants' disclosures at the December 4 hearing, the Court stated, "[A]s far as I
    understand it, . . . if there is information that is not available, it's because they don't have it."). Hr'g
24  Tr. at 15:3–6 ("[W]hat I hear Mr. Chiu saying is if there's missing information, it's gone."").
    Defendants claim that the omission of a device from their disclosure reflects that, according to their
25  employee interviews, the device was not used for work and that they would "look into" any devices
    that Plaintiffs identify that should have been included. *Id.* at 17:11–18:14. Yet, Plaintiffs have
26  repeatedly identified numerous undisclosed devices, and Defendants have refused to investigate why
27  they were omitted.

28

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

1   not collected from all participants. ECF 327-15. On November 3, Defendants inexplicably reneged

2   on this agreement. ECF 291-2 at 7. Plaintiffs have since identified more examples of these Chats.

3   *See* ECF 333-5.

4       *Plaintiffs' September and October Information Requests.* On September 12, Plaintiffs

5   requested that Defendants complete two simple worksheets with basic information about

6   Defendants' collection and preservation of their employees' files and devices. ECF 344-3.

7   Defendants refused to respond.[12] ECF 253-4. On October 28, Plaintiffs requested information from

8   Defendants' Super Custodians to determine whether omissions from Defendants' productions could

9   be mitigated or resolved. ECF 344 at 5; ECF 291 at 6; *see also* ECF 329-5. Defendants refused to

10  respond. ECF 291-2 at 11–12.

11     iii.   <u>Defendants' Newfound Investigation into the Missing Mobile Device Data</u>

12      Defendants have yet to locate any of the missing mobile device data. Rather, Defendants

13  state that they have not concluded their "investigations" into the apparent spoliation, while

14  mischaracterizing Plaintiffs' spoliation-related inquiries as an "improper fishing expedition." ECF

15  334 at 5. Defendants agreed to investigate the missing mobile device data of Mr. White and Ms.

16  Long *only after the Court made preliminary spoliation findings at the November 20 hearing*.[13] Since

17  then, Defendants have repeatedly claimed that they are investigating the missing materials.[14] Yet,

18

19  [12] Defendants still have never disclosed, as the worksheets requested, the dates of their employees'
    litigation holds (except to confirm that those disclosed in the *Le* litigation remain in place) or

20  whether certain employees (*e.g.*, Ari Emanuel) are even subject to a hold. ECF 329 at 20–21.

21  [13] Defendants refused to address the gaps in Mr. White and Ms. Long's mobile device data when
    Plaintiffs raised them in their October 28 letter. *See* ECF 291-1. Defendants later represented on

22  November 10 that Plaintiffs' "*unsubstantiated and unwarranted* suggestion that spoliation has

23  occurred" was mere "*mudslinging*," ECF 291 at 10 n.12 (emphasis added), and on November 14 that
    Plaintiffs' "wholly inappropriate accusations of spoliation" were "invective-laden distractions," ECF

24  300 at 3.

25  [14] Nov. 20 Hr'g Tr. at 20:5–7 ("[O]n . . . Mr. White's texts, we are continuing to look for those. We
    have indicated that to plaintiffs, and we're continuing to search for it."); Dec. 4 Hr'g Tr. at 5:9–12

26  ("[W]ith respect to Mr. White and Tracy's phone, . . . [w]e're continuing to run down the gaps in the
    issues, so we're continuing to investigate that."); *id.* at 25:24–26:4 ("We're continuing to

27  investigate. . .. [W]e are . . . continuing to look and figure it out."); Dec. 18 Hr'g Tr. at 14:7–13

28

1   Plaintiffs understood that Defendants had concluded their "reasonable investigation" into the mobile

2   device data of their employees, including Mr. White and Ms. Long, when they represented as much

3   in their December 15, 2025 Device Disclosure. ECF 333-2. Even after this final disclosure (over five

4   months after the substantial completion deadline), Defendants continue to claim an "ongoing

5   investigation into the allegedly missing data" (ECF 347 at 3) that should have been preserved

6   beginning in December 2014 and produced by July 2025. Defendants' investigations are proof of a

7   failure to preserve and/or investigate and, either way, a pretext[15] to delay inevitable and necessary

8   testimony from Mr. White and Ms. Long about the gaps of evidence collected from their devices.[16]

9   **C.  The Court Orders a Spoliation Hearing**

10          Considering the foregoing facts, at the November 20 hearing, the Court found that a hearing

11  was "necessary" to evaluate the various evidence of spoliation. Nov. 20 Hr'g Tr. at 62:12–14. During

12  the December 4 hearing, the Court instructed defense counsel to consider any privilege issues that

13  may arise with respect to spoliation. Dec. 4 Hr'g Tr. at 72:10–25. Importantly, the Court cautioned

14  that the rules are different in this context. *Id.* at 72:18. Defense counsel acknowledged that "there is a

15  way to thread [the] needle in terms of . . . not invading the privilege." Dec. 18 Hr'g Tr. at 18:16–17.

16  **III.   <u>ARGUMENT</u>**

17  **A.  Discovery Is Permitted into Materials Relevant to Spoliation if There Is a Preliminary
18       Showing of Spoliation, as Here, even if They Are Otherwise Privileged or Protected**

19          While litigation hold notices and related communications are *generally* protected by the

20

21  ─────────────────────

22  ("We're obviously continuing to work and investigate that, and we're continuing efforts to try to
    figure that out."); ECF 347 at 3 (referencing "Defendants' own ongoing investigation into the
23  allegedly missing data").

24  [15] The Court is considering whether Defendants' December 15 appeal of a case management order
    setting a schedule for arbitration-related discovery, *Cirkunovs*, ECF 105, was "strategic or
25  frivolous . . . given the fact the Court's made findings that the reason why there's a delay in this case
    is because of the defendants' violations of the Court's orders." Dec. 18 Hr'g Tr. at 4:25–5:3.

26  [16] Defendants repeatedly claim to engage in prolonged (and inexplicably unresolved) investigations
    into other gaps in their production, such as their failure to produce readily available FightMetric and
27  granular fighter compensation data. ECF 344 at 3.

28

9                    CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

attorney-client privilege or work-product protection,[17] "the court has an inherent power to order their production in connection with a spoliation claim" like the one here. *City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223880, at *2 (C.D. Cal. Nov. 22, 2011); *see also Roytlender v. D. Malek Realty, LLC*, 2022 WL 5245584, at *4 (E.D.N.Y. Oct. 6, 2022) (collecting cases). A party need only make a *preliminary showing* of spoliation to intrude upon protected materials and obtain discovery into an opposing party's relevant document-preservation efforts. *See, e.g.*, *Global Music Rts., LLC v. Radio Music License Comm., Inc.*, 2020 WL 10692695, at *2–3 (C.D. Cal. Aug. 3, 2020) ("Upon a preliminary showing of spoliation[,] . . . litigation hold letters or preservation notices are discoverable notwithstanding a privilege claim."); *Al Otro Lado, Inc. v. Wolf*, 2020 WL 4432026 (S.D. Cal. July 31, 2020) ("The Court finds that plaintiffs have made a sufficient preliminary showing of spoliation to overcome the attorney-client privilege that presumably attached to the litigation hold notice issued . . . ."); *see also Whitesell Corp. v. Electrolux Home Prods., Inc.*, 2016 WL 1275656, at *1–2 (S.D. Ga. Mar. 31, 2016) (finding "a preliminary showing of spoliation" from the responding party's "failure to implement document retention policies or procedures and evidence of missing e-mails"); *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at *3 (D.N.J. Aug. 4, 2009).

This showing requires only evidence that "leads to an inference of spoliation," *City of Colton*, 2011 WL 13223880, at *5, such as evidence of a failure to preserve relevant documents, *United Illuminating Co. v. Whiting-Turner Contracting Co.*, 2020 WL 8611045, at *3 (D. Conn. Oct. 30, 2020). This threshold reflects the practical reality that a party alleging spoliation cannot be expected to prove the full extent of spoliation without first accessing discovery that reveals how it occurred. *Id.* ("Proof of 'actual spoliation,' *i.e.*, the identification of specific relevant documents a party was obligated to preserve but instead destroyed, is challenging and requires 'discovery about discovery.'"); *see also Shufeldt v. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.*, 2020 WL 1532323, at *10 (M.D. Tenn. Mar. 31, 2020) (describing investigation into a party's discovery efforts

---

[17] Indeed, "[w]hether litigation hold communications are privileged depends on the specific facts involved in the documents at issue, not a *per se* rule that a privilege applies in all cases." *City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223880, at *2 (C.D. Cal. Nov. 22, 2011).

as "especially relevant where the adequacy of a party's preservation efforts is in question"). A preliminary showing of spoliation does not yield a *wholesale* waiver of the attorney-client privilege and work-product protection, but it does permit an inquiry into spoliation-related information. Allowing access to otherwise protected materials gives Plaintiffs the opportunity to prove that spoliation has occurred—necessarily limiting the universe of discoverable material to that which is relevant to spoliation. *See Whitesell Corp. v. Electrolux Home Prods.*, 2016 WL 1317673, at *3 (S.D. Ga. Mar. 31, 2016) ("[A] potential spoliator cannot stand behind a privilege to protect documents *relevant to the issue of spoliation*." (emphasis added)); *see also Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery."). Limitations beyond this would place the party alleging spoliation in the untenable position of attempting to substantiate its claims without access to information showing the nature and timing of relevant preservation directives.

"[C]ourts have made the requisite finding of a preliminary showing of spoliation . . . by focusing on only . . . *whether data was lost after the duty to preserve began*—and refraining from any extended discussion of fault." *United States v. Cmty. Health Network, Inc.*, 2023 WL 4761664, at *5 (S.D. Ind. July 26, 2023) (emphasis added). Consistent with this, the unexplained absence of documents or Chats here is sufficient for a preliminary showing of spoliation. *See, e.g.*, *id.* at *5, *10 (missing mailboxes and OneDrive data of various custodians); *Thomas v. Cricket Wireless, LLC*, 2020 WL 7344742, at *1–2 (N.D. Cal. Dec. 14, 2020) (missing custodial accounts of relevant data); *Whitesell Corp.*, 2016 WL 1317673, at *3 (missing emails from custodians); *see also U.S. Equal Emp. Opportunity Comm'n v. Aspire Reg'l Partners*, 2024 WL 4986997, at *3 (S.D. Ohio Dec. 5, 2024) (defendants' deletion of an employee's email account).

**B. Plaintiffs Have Made, at a Minimum, a Preliminary Showing of Spoliation**

This Court has *already found ample indicia of spoliation*, or, in other words, a preliminary showing of spoliation. Both independently, and even more so collectively, the evidence that this Court has previously identified is sufficient to demonstrate the requisite preliminary showing of spoliation.

First, this Court confirmed that Defendants have failed to produce virtually "anything"

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

1   involving Mr. White and Ms. Long's mobile devices—even though Defendants were aware that such

2   evidence should have been preserved.[18] Most notably, Defendants failed to even collect texts for Mr.

3   White and Ms. Long for 7.5 and 6.5 years, respectively. Mr. White and Ms. Long are not alone:

4   Plaintiffs have shown that Defendants have failed to collect Chats from Ari Emanuel's cellphone since

5   January 2023, any Chats from Denitza Batchvarova, nor any Chats from a cellphone Hunter Campbell

6   used until 2019. *See* ECF 329-4 at 15–16; ECF 290 at 9–10; ECF 290-5. Plaintiffs have also

7   demonstrated that Defendants produced communications reflecting some form of negotiation for only

8   about 35 of the 2,813 PAR Agreements executed during the relevant time period, of which there are

9   approximately 10 negotiations for the 1,427 PAR Agreements executed after Zuffa implemented

10  arbitration provisions. *See* Ex. 5.

11      Second, this Court found that Defendants "violated [its] orders regarding discovery and

12  disclosure in this case . . . as . . . relat[ing] to the device disclosure regarding relevant custodians,

13  particularly those involved with the negotiations." Nov. 20 Hr'g Tr. at 59:24–60:4. Specifically,

14  Defendants' July 3 and October 13 device disclosures listed devices for under half of the employees

15  whose files they agreed to collect and did not include the number of each custodian's communications

16  collected from each individual messaging app. *See* ECF 329-4 at 12–14; ECF 290 at 40, 43; ECF 291

17  at 6. The Court found this behavior was part of "a pattern of discovery disclosure failures." Nov. 20

18  Hr'g Tr. at 61:21–22. And indeed, these disclosure failures have obstructed Plaintiffs' and the Court's

19  ability to identify and evaluate Defendants' spoliation, imposing significant undue delays and costs.

20      Finally, Defendants produced a limited number of documents from WhatsApp, and *no*

21  *documents* from any other messaging app, despite disclosing that they had imaged apps from employee

22  devices, including WhatsApp, Discord, Facebook, Instagram, TikTok, Life360, Viber, and WeChat.

23

---

24  [18] Nov. 20 Hr'g Tr. at 62:3–10; *see id.* at 19:8–15 ("Even if we were talking about Cirkunovs, why

25  are there missing years . . . of texts where we know [Mr. White and Ms. Long] were involved, and
    you admitted they were involved, in negotiations of contracts?"); *id.* at 20:19–21:12 ("Mr. White is
    the head of the organization. Ms. Long is part of the negotiation[s]. How are missing texts for

26  individuals who are part of the negotiation not relevant . . . ? How does that not raise a spoliation
    issue when since 2017 these individuals, but particularly these individuals involved with

27  negotiations, would be on notice of preserving this information?").

28

1  ECF 329-4 at 14; ECF 291 at 42; ECF 293-5. As this Court emphasized, Defendants are obligated to

2  provide this information. *See* Nov. 20 Hr'g Tr. at 90:12–20.

3      Defendants incorrectly liken this case to *Shenwick v. Twitter*, in which the court declined to

4  permit the disclosure of privileged documents when the plaintiffs had claimed just a mere "threat" of

5  spoliation. Defs.' Br. at 2 (citing 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018)). But it is more akin

6  to *City of Colton v. American Promotional Events*, in which the court concluded that the producing

7  party had "demonstrate[d] an extremely reckless attitude toward the preservation of evidence." 2011

8  WL 13223880, at *6. As discussed, Plaintiffs have demonstrated—and this Court has found—

9  substantial indicia of spoliation. Defendants' only response to this showing has been that they are

10  continuing to investigate. This Court's factual findings, when applied to the controlling law, are all that

11  is required to find a preliminary showing of spoliation.

12  **C. Defendants Repeatedly Misstate the "Preliminary Showing of Spoliation" Standard**

13      Rather than explaining what material is actually privileged or protected, Defendants attempt

14  to challenge the Court's findings and rewrite settled law. Defendants attempt to entirely ignore the

15  law holding that a preliminary showing of spoliation allows proportional discovery into relevant

16  materials notwithstanding attorney-client privilege or the work-product protection, arguing that

17  "courts are first and foremost to avoid inquiring into privileged material." Defs.' Br. at 2. Yet, as

18  Defendants' own legal authorities acknowledge, upon a preliminary showing of spoliation—as

19  Plaintiffs have made here—the requesting party may reasonably discover otherwise privileged or

20  protected material to determine the extent of the spoliation. *See, e.g.*, *City of Colton*, 2011 WL

21  13223880, at *3, *5–6; *Greenberg v. Amazon.com, Inc.*, 2025 WL 2639221, at *4 (W.D. Wash. Sept.

22  12, 2025) (Because there was "no dispute that evidence ha[d] been lost," the court allowed the

23  plaintiffs to "take the initial step of discovering the content of the litigation hold notice . . . so that

24  they can investigate and possibly prove spoliation . . . ." (internal quotation marks omitted)).

25  Disclosure of such material will ultimately be necessary to guide the Court's approach to fashioning

26  spoliation-related sanctions. *See Herb Hallman Chevrolet, Inc. v. Gen. Motors LLC*, 2024 WL

27  3160746 (D. Nev. June 24, 2024) (Baldwin, J.); *Lee v. Cnty. of Los Angeles*, 2025 WL 2505484, at

28

13

CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

1     \*8 (C.D. Cal. Aug. 29, 2025), *reconsideration denied*, 2025 WL 3211209 (C.D. Cal. Oct. 14, 2025).

2         Defendants also insist that the bar for a preliminary showing is high—it is not. Defs.' Br. at 2

3 (citing *In re Google RTB Consumer Privacy Litig.*, 2024 WL 3407069, at \*3 (N.D. Cal. July 11,

4 2024); *In re Cathode Ray Tube Antitrust Litig.*, 2023 WL 5667882, at \*2–5); *see also id.* at 5–7.

5 Again, Defendants' cited cases do not support their argument. In *Google RTB*, plaintiffs requested

6 information about "essentially everything Google did with respect to the retention and preservation

7 of any information responsive to a claim or defense." 2024 WL 3407069, at \*3. Google even

8 "represent[ed] that it [was] prepared to provide information concerning its standard data retention

9 periods, changes made to those periods, and the earliest dates for which it has preserved data in the

10 [redacted] logs." *Id.* (third alteration in original). After the court concluded that "plaintiffs should be

11 able to readily discern whether Google, in fact, timely preserved potentially relevant data from these

12 sources," the plaintiffs still argued that they had made a preliminary showing of spoliation. *Id.* The

13 court disagreed, reasoning that "[a]t most, there [was] a dispute about *what Google was required to*

14 *preserve or produce*." *Id.* (emphasis added). But here, the Court has already found that Defendants

15 have persistently failed to produce text messages and communications, disclose employees' devices,

16 and investigate their apparent spoliation. *See supra* Part II.

17         Defendants' reliance on *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2022 WL 1694428,

18 at \*3 (S.D. Cal. May 26, 2022) (alleged spoliation involved just six emails, *all* of which were

19 contained in documents that had separately been produced), and *Rg Abrams Inc. v. Law Offices of*

20 *C.R. Abrams*, 2021 WL 10312431, at \*12 (C.D. Cal. Dec. 22, 2021) (denying motion to compel

21 "litigation hold information" when the party's *only* evidence of spoliation was two months of

22 missing text messages), is similarly flawed. Moreover, Defendants appear to suggest that because the

23 defendant in *Cathode Ray Tube* failed to take basic preservation steps—documenting none of its

24 efforts, producing virtually no discovery, and conceding that relevant information had not been

25 preserved—a preliminary showing of spoliation requires that same extraordinary level of misconduct

26 and proof at this stage. 2023 WL 5667882, at \*3–4; *see also* Defs.' Br. at 6 (citing *Al Otro Lado*,

27 2020 WL 4432026, at \*2 (defendants admitted that they did not issue a litigation hold to the relevant

28

14

CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

1    individual until months after the litigation began and that the individual destroyed his notes after the

2    hold had been issued); *Greenberg*, 2025 WL 2639221, at *2 ("Amazon simply failed to notify

3    anyone of this litigation and the preservation duties it triggered for six months after the complaint

4    was filed and then notified only six employees.")). But the standard for a preliminary showing of

5    spoliation requires only evidence that "leads to an *inference* of spoliation." *City of Colton*, 2011 WL

6    13223880, at *5 (emphasis added). That another party in another case may have behaved worse

7    before being called to account does not raise the standard here.

8         Defendants next contend that any inquiry into material relevant to spoliation must be "limited

9    to the contents of the litigation hold notice." Defs.' Br. at 2; *see also id.* at 3 (citing *Shenwick*, 2018

10   WL 833085, at *4). Not so. Defendants' invented rule not only undermines the purpose of seeking

11   these materials—which is to enable a party to substantiate its well-founded allegations of

12   spoliation—it also contradicts well-established authority permitting targeted inquiry into not just

13   litigation holds, but also communications and documents relating to the circumstances of retention

14   efforts once the requisite preliminary showing of spoliation has been made.

15        Defendants disregard that discovery obligations do not end with the implementation of

16   litigation holds; to the contrary, implementing a litigation hold is "only the beginning." *Zubulake v.*

17   *UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). Rather, "courts expect litigants to

18   reasonably investigate . . . once litigation is reasonably anticipated to satisfy their preservation

19   duties." *Donofrio v. Ikea US Retail, LLC*, 2024 WL 1998094, at *26 (E.D. Pa. May 6, 2024).

20        Counsel must oversee compliance with the litigation hold, monitoring the party's
21        efforts to retain and produce the relevant documents. Proper communication between
          a party and her lawyer will ensure[:] (1) that all relevant information (or at least all
22        sources of relevant information) is discovered; (2) that relevant information is retained
          on a continuing basis; and (3) that relevant non-privileged material is produced to the
23        opposing party.

24   *Id.* In short, counsel are obligated to "monitor compliance so that all sources of discoverable

25   information are identified and searched." *Ryan v. Rock Grp., N.Y. Corp.*, 2019 WL 6841874, at *4

26

27

28

1   (S.D.N.Y. Dec. 16, 2019) (citations omitted).[19] Considering that the extended substantial completion

2   deadline passed nearly six months ago, and that Plaintiffs have identified myriad disclosure gaps and

3   failings—some as elemental as failing to identify and disclose mobile devices listed in employees'

4   business email signatures—Defendants did not reasonably investigate.

5       In such situations, courts allow for discovery into the *circumstances* of document retention

6   efforts. *See EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 2018 WL 3342931, at *2

7   (M.D. Tenn. Mar. 29, 2018) ("Through discovery, the parties may investigate the adequacy of one

8   another's preservation efforts."). Because "[t]he potential culpability of the party failing to preserve

9   evidence is central to any remedy arising from spoliation, and this necessarily means that the court

10  must remain free to inquire into the facts of the alleged culpability," attorney-client privilege and

11  work-product protections "must yield to legitimate questions concerning the effectiveness of a

12  party's efforts to comply with the duty of preservation." *In re Blue Cross Blue Shield Antitrust Litig.*,

13  2015 WL 10891632, at *5 (N.D. Ala. Nov. 4, 2015).

14      Accordingly, courts have required the disclosure of communications related to litigation

15  holds, *Zubulake*, 229 F.R.D. at 426–27, and permitted parties to inquire into the procedures used to

16  preserve documents, *see, e.g.*, *Whitesell Corp.*, 2016 WL 1317673, at *2 (compelling responses to

17  request for lists of hold recipients, internal emails sent "back and forth about whose data to collect,"

18  internal emails regarding the collection of data, "saying that we have been asked to collect data, and

19  what data it is, and when we are going to do it, and that we collected it and returned it," and

20  defendant's director of infrastructure data's emails referencing the case generally); *see also Fed.*

21  *Trade Comm'n v. Amazon.com, Inc.*, 2024 WL 3342701, at *2 (W.D. Wash. July 9, 2024) (permitting

22  plaintiffs to seek corporate testimony as to "(1) when and to whom the litigation hold notices were

23

---

24  [19] *See also Czuchaj v. Conair Corp.*, 2016 WL 4161818, at *3 (S.D. Cal. Apr. 1, 2016) (quoting

25  *Zubulake*, 229 F.R.D. at 432); *see In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    341 F.R.D. 474, 494 (S.D.N.Y. 2022) (referring to *Zubulake* as a "seminal case"); *Owens v. Bd. of*

26  *Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 695 F. Supp. 3d 750, 758 (M.D. La. 2023)
    ("While the Board issued litigation holds to undefined [university] recipients, they have not provided

27  the Court with evidence of any further action.").

28

1  given, (2) what kinds and categories of information and data Defendant's employees were instructed

2  to preserve and collect, and (3) what specific actions they were instructed to take to that end").[20]

3       Unsurprisingly, none of Defendants' authorities support their novel formulation of the scope

4  of spoliation-related discovery. Defendants mischaracterize *Shenwick* as "stating that whenever

5  possible," courts must do something other than force a party to reveal protected documents to

6  address spoliation concerns. Defs.' Br. at 3 (quoting 2018 WL 833085, at *4). The court in *Shenwick*

7  did no such thing. Rather, it concluded that because plaintiffs in that case had shown nothing more

8  than a "threat" of spoliation, "[a]ny concerns that Plaintiffs ha[d] about spoliation" could be

9  addressed by other means. *Shenwick*, 2018 WL 833085, at *4. Defendants' other cases similarly fail

10  to support their interpretation. As Defendants admit, *In re eBay Seller Antitrust Litigation* does not

11  implicate spoliation at all, Defs.' Br. at 16; rather, the court's order addresses a motion for an interim

12  preservation order. 2007 WL 2852364, at *1–2 (N.D. Cal. Oct. 2, 2007). Neither *City of Colton* nor

13  *Major Tours* holds that only litigation holds can be discoverable; indeed, neither even attempts to

14  distinguish between litigation holds and related communications and documents. At most, they stand

15  for the uncontroversial position that there may be *portions* of such materials that are *irrelevant* to

16  spoliation. *See City of Colton*, 2011 WL 13223880, at *5; *Major Tours*, 2009 WL 2413631, at *5.

17  Defendants' other cited cases similarly never hold that discoverable evidence in the context of a

18  preliminary showing of spoliation should be cabined to litigation holds alone. *See Greenberg*, 2025

19  WL 2639221, at *2–4; *Howard Jones Investments, LLC v. City of Sacramento*, 2024 WL 4545887, at

20  *2 (E.D. Cal. Oct. 22, 2024); *Al Otro Lado*, 2020 WL 4432026, at *1–2; *Mcdevitt v. Verizon Servs.*

21  *Corp.*, 2016 WL 1072903, at *2 (E.D. Pa. Feb. 22, 2016).

22       Related to their effort to limit the scope of discovery to litigation hold letters alone,

23  Defendants suggest that any ultimately discoverable privileged or protected information is typically

24

25  [20] Defendants briefly suggest that *Whitesell* is the only case Plaintiffs cite for the principle that a
preliminary showing of spoliation permits discovery into more than just the litigation holds

26  themselves. Defs.' Br. at 16. Not so. Regardless, the discoverable material in this case should be
more extensive than in *Whitesell*, in which certain requested privileged evidence had already been

27  produced. 2016 WL 1317673, at *3.

28

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

1    disclosed via witness declaration rather than documents or testimony. *See* Defs.' Br. at 7–8. Aside

2    from the fact that this is merely a quarrel with this Court's settled decision to hold a spoliation

3    hearing, this is wrong again. While declarations were used in some of the cases Defendants cite,

4    those decisions nowhere indicate that declarations are the required or standard mechanism of

5    disclosure, nor that they are more common or preferred over documents or testimony, as ordered

6    here. *See Lee*, 2025 WL 2505484, at *11; *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d

7    1132, 1142–44 (N.D. Cal. July 25, 2012); *Eastman v. Thompson*, 594 F. Supp. 3d 1156, 1197 (C.D.

8    Cal. 2022); *see also Mayorga v. Ronaldo*, 606 F. Supp. 3d 1003, 1018 (D. Nev. 2022) (Dorsey, J.)

9    (evaluating possible *in camera* review to assess crime-fraud exception).

10        Finally, Defendants assert that "courts routinely find that time gaps alone are insufficient to

11    overcome the high bar for spoliation." Defs.' Br. at 8–9. Yet each of the three cases they cite in

12    support of this claim are factually distinct in important respects. The alleged spoliation in *MedImpact*

13    and *Rg Abrams* was limited to a few missing emails and two months of missing text messages,

14    respectively. *See MedImpact*, 2022 WL 1694428, at *3; *Rg Abrams*, 2021 WL 10312431, at *12.

15    And in *Little Hocking Water Ass'n, Inc. v. E.I. Dupont de Nemours & Co.*, the court determined that

16    the plaintiff had failed to make a preliminary showing of spoliation because: (1) the plaintiff did not

17    contest that purportedly disposed literature was immaterial; (2) only one data source was degraded;

18    and (3) many of the missing data sources were duplicates. 2013 WL 5311292, at *4 (S.D. Ohio Sept.

19    20, 2023). The indicia of spoliation that this Court found here are indicative of vastly more

20    significant spoliation in all respects. *See supra* Part II.

21        In short, nothing in Defendants' brief undermines either Plaintiffs' legal analysis of the

22    necessary preliminary showing of spoliation or this Court's prior factual findings of "significant

23    indicia of spoliation." This Court should reject Defendants' efforts to improperly relitigate its factual

24    findings and weaken a standard that balances the value of safeguarding privileged and protected

25    material with the importance of permitting relevant inquiries into spoliation-related matters.

26

27

28

18    CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

**D. Discovery into Preservation Materials is Permissible, but in the Alternative, this Court Can Order Production of Materials *in Camera* and an Accompanying Privilege Log**

As Plaintiffs have demonstrated, discovery into preservation materials, not just the litigation hold letters, is warranted here because this Court has already made findings sufficient for a preliminary showing of spoliation. There is ample authority permitting this Court to order Defendants to provide relevant materials directly to Plaintiffs, both through the production of documents and via testimony at the spoliation hearing. *See Zubulake*, 229 F.R.D. at 426–27; *Whitesell Corp.*, 2016 WL 1317673, at *2; *Amazon.com*, 2024 WL 3342701, at *2.

Plaintiffs further propose that prior to the February 2026 spoliation hearing, Defendants should be ordered to produce materials relevant to the spoliation inquiry for *in camera* review, including Defendants' communications: (i) with Mr. White, Ms. Long, and other employees regarding the date, nature, and scope of the respective litigation holds; (ii) among themselves; and (iii) with Defendants' discovery/document vendors about preservation, identification of devices, and collections from those devices.[21] Additionally, prior to the hearing, Defendants should be ordered to supply Plaintiffs and this Court with a privilege log of spoliation-related materials that includes basic information about the scope and nature of the litigation holds and related communications (*i.e.*, timing, general subject matter, and persons involved). *See, e.g.*, *Al Otro Lado*, 2020 WL 4432026, at *2 (granting plaintiffs the "'initial step' of discovering the content of the litigation hold notice . . . so that they can 'investigate and possibly prove spoliation'" (quoting *City of Colton*, 2011 WL 13223880, at *5)); *Cathode Ray Tube*, 2023 WL 5667882, at *5 (ordering production of litigation hold notice and related correspondence for *in camera* review). Defendants concede that these sorts of "basic details" are permissible.[22] Defs.' Br. at 14 n.12. This framework, the *in camera* review and

---

[21] As part of the preservation issue, Plaintiffs would seek information as to whether preservation was the responsibility of the employee or the company, particularly considering the existence of business and personal devices.

[22] Defendants' own caselaw confirms that Plaintiffs are at the very least "entitled to know what [Defendants'] employees [were] doing with respect to collecting and preserving ESI . . . [e]ven though such inquiry may, indirectly, implicate communications from counsel to the employees." *Doe*

19    CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

1   the inclusion of the privilege log, will better enable the Court and Plaintiffs to evaluate the potential

2   privilege issues and provide a guide that the Court and parties can all utilize.

3          This Court should then order Defendants to produce "those portions of the letter that refer to

4   litigation hold or preservation issues" while withholding *only any remaining irrelevant portions* of

5   the litigation holds that are covered by attorney-client privilege or the work-product doctrine. *Major*

6   *Tours*, 2009 WL 2413631, at *5. Alternatively, this Court may demand the full production of relevant

7   materials if it determines that the letters "addressed almost entirely hold or preservation issues" or

8   that any deviation was not a material communication that warrants withholding. *City of Colton*, 2011

9   WL 13223880, at *5.

10  **E.  Defendants' Discussion of the Rule 37(e) Elements Is Misplaced**

11         Defendants devote a substantial portion of their brief to articulating the burden a party must

12  meet under Rule 37(e) of the Federal Rules of Civil Procedure and arguing that Plaintiffs cannot

13  meet the "four factual threshold elements" of this provision. *See* Defs.' Br. at 3–4, 6–12. But Rule

14  37(e) governs only a court's determination of the applicability and appropriateness of sanctions for

15  spoliation, as confirmed by the caselaw Defendants invoke. *Lee*, 2025 WL 2505484, at *6

16  (explaining that Rule 37(e) "authorizes two tiers of sanctions for spoliation, both of which apply

17  only if four threshold requirements are met"); *Herb Hallman Chevrolet*, 2024 WL 3160746, at *4

18  ("In order to impose Rule 37(e) sanctions, the Court must first evaluate the following [four]

19  criteria . . . ."); *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *2 (C.D.

20  Cal. Feb. 27, 2020) ("Before determining the appropriate sanctions, Rule 37(e) requires the Court to

21  assess the following four criteria . . . ."); *see also In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d

22  1060 (N.D. Cal. 2006) (analyzing a sanctions motion without considering the interplay between

23  spoliation-related discovery and the attorney-client privilege and work-product protection);

24  *Reinsdorf v. Sketchers U.S.A., Inc.*, 296 F.R.D. 604 (C.D. Cal. 2013) (same).

25         The appropriate question here is whether Plaintiffs made a preliminary showing that warrants

26  _____

27  *LS 340 v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 802 (N.D. Cal. 2024) (citations and internal
    quotation marks omitted).

28

relaxation of the attorney-client privilege and the work-product protection as necessary to investigate spoliation. The requirements of Rule 37(e) need not be addressed until after the Court holds its ordered spoliation hearing.

**F. Defendants' Efforts to Revisit the Order Setting the Spoliation Hearing Are Untimely and Should Be Rejected**

At various points in their brief, Defendants attempt to relitigate this Court's order setting the February spoliation hearing and its decision to require testimony from Mr. White and Ms. Long. *See* Defs.' Br. at 3 ("To avoid a hearing . . ., Defendants propose that Defendants' witnesses address these issues via a sworn declaration, submitted under the penalty of perjury."); *id.* at 13 ("With Defendants' counsel continuing to actively investigate and sufficient time remaining, Ms. Long and Mr. White can each address the Court's anticipated scope of questioning by sworn declarations."); *id.* at 17 ("Defendants respectfully request the Court to address any threshold spoliation concerns through means other than a hearing, such as declarations submitted under penalty of perjury.").

Defendants relatedly suggest that this Court should defer ruling on the privilege question so that the parties in this case can meet and confer. *Id.* at 12 (citing *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 910 (N.D. Cal. 2023)). The first issue is untimely, since Defendants failed to bring a motion for reconsideration within a reasonable period after the Court's November 20 finding that a hearing was "necessary." Nov. 20 Hr'g Tr. at 62:12–14; *see* D. Nev. L. R. 59-1(c) ("Motions for reconsideration must be brought within a reasonable time. Lack of diligence or timeliness may result in denial of the motion."). The second is meritless: the parties have had numerous meet and confers in the months following the deadline for substantial completion, and there has been little to no progress in addressing Plaintiffs' spoliation claims. *See Facebook*, 655 F. Supp. 3d at 910 (observing that parties' negotiations were hampered by the defendant's continued assertion of attorney-client privilege and work-product protection and holding that a blanket assertion of privilege was inappropriate). Indeed, the extended substantial completion deadline was July 17, 2025. ECF 189. Up until that time, as Plaintiffs amply demonstrated, Defendants failed to meet and confer in good faith. ECF 217 at 3–11. As this Court has recognized, the upcoming

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

1  spoliation hearing is the appropriate mechanism for moving forward. And Plaintiffs have made the

2  preliminary showing of spoliation necessary for either this Court or the Plaintiffs to review otherwise

3  privileged or protected material that is relevant to spoliation.

4  **IV.    CONCLUSION**

5        While Defendants have repeatedly and categorically deflected Plaintiffs' spoliation

6  concerns,[23] this Court has made factual findings sufficient for a preliminary showing of spoliation.

7  For the foregoing reasons, this is enough to deny Defendants' attempted reliance on the attorney-

8  client privilege and work-product protection to withhold material from—and prevent inquiries by—

9  Plaintiffs that is relevant and perhaps even crucial to evaluating spoliation.

---

26  [23] *See* ECF 253-8 at 1; ECF 327-6; ECF 217-51; ECF 224; Aug. 26 Hr'g Tr. at 53:21–54:1; ECF
27  327-15 at 1; ECF 253-4; ECF 291 at 7, 10 n.12; Nov. 20 Hr'g Tr. at 20:4–8, 21:5–7; Dec. 4 Hr'g Tr.
at 5:7–16, 12:5–17, 17:22–25, 25:24–26:4; Dec. 18 Hr'g Tr. at 14:7–13, 26:11–19.

1  Dated: January 5, 2026

2

Respectfully Submitted,

By: */s/ Michael Dell'Angelo*
Eric L. Cramer (*Pro hac vice*)
Michael Dell'Angelo (*Pro hac vice*)
Patrick F. Madden (*Pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bergermontague.com
Email: mdellangelo@bergermontague.com
Email: pmadden@bergermontague.com

Joshua P. Davis (*Pro hac vice*)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bergermontague.com

*Counsel for Plaintiffs and the Proposed Classes*

Richard A. Koffman (*Pro hac vice*)
Benjamin D. Brown (*Pro hac vice*)
Daniel H. Silverman (*Pro hac vice*)
COHEN MILSTEIN SELLERS
 & TOLL PLLC
1100 New York Ave., N.W.
Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Facsimile: +1 (202) 408-4699
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com

CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT

Joseph R. Saveri (*Pro hac vice*)
Christopher Young (*Pro hac vice*)
Kevin E. Rayhill (P*ro hac vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California St., Suite 1000
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Facsimile: +1 (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com

W. Joseph Bruckner (*Pro hac vice*)
Brian D. Clark (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Phone: (612) 596-4001/Fax: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle J. Pozan (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Phone: (612) 339-6900
Email: kjpozan@locklaw.com

*Additional Counsel for Plaintiffs and the Proposed Classes*

Michael J. Gayan
CLAGGETT & SYKES
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107
(702) 323-7777
mike@claggettlaw.com

*Liaison Counsel for Plaintiffs and the Proposed Classes*

24

CASE NOS. 2:21-CV-1189; 2:25-CV-914; 2:25-CV-946

PLAINTIFFS' STATEMENT REGARDING SPOLIATION QUESTIONING AND THE SCOPE OF PRIVILEGE
AND RESPONSE TO DEFENDANTS' POSITION STATEMENT