1  Michael Dell'Angelo
   **BERGER MONTAGUE PC**
2  1818 Market Street, Suite 1818
   Philadelphia, PA 19103
3  (215) 875-3000
   mdellangelo@bergermontague.com
4
   *Counsel for Plaintiffs and*
5  *the Proposed Classes*

6

7        **IN THE UNITED STATES DISTRICT COURT**
              **FOR THE DISTRICT OF NEVADA**

8

9  | | |
   |---|---|
   | KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ZUFFA, LLC, TKO OPERATING COMPANY, LLC f/k/a ZUFFA PARENT LLC (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC., <br><br> Defendants. | No.: 2:21-cv-01189-RFB <br><br> **PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 26 AND 37** |
   | PHIL DAVIS, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ZUFFA LLC, TKO GROUP HOLDINGS, INC. (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC., <br><br> Defendants. | No.: 2:25-cv-00946-RFB |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27  # PUBLIC/REDACTED VERSION
28

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     DEFENDANTS' DISCOVERY MISCONDUCT............................................... 1

        A.      Substantial Volumes of Communications Have Been Spoliated by
                Critical Custodians Employed by All Three Defendants
                Throughout the Relevant Period ........................................................... 1

                1.      White's Spoliated Devices, Chats, and Audio Messages .......... 2

                2.      Long's Spoliated Devices and Communications ...................... 4

                3.      Emanuel's Withheld Device and Undisclosed
                        Communications Apps............................................................ 5

                4.      Campbell's Undisclosed Devices and UFC Texts .................... 5

                5.      Maynard's Spoliation and Selective Preservation of Chats...... 6

                6.      Batchvarova's Spoliated Devices and Communications
                        Apps...................................................................................... 6

                7.      Selective Spoliation of Particular Chats .................................. 7

        B.      The Concerted Actors Coordinated to Deprive Plaintiffs of
                Discovery ............................................................................................. 7

                1.      The Concerted Actors Refused Production Without
                        Justification........................................................................... 8

                2.      Subpoena Recipients Frustrate Discovery by Refusing to
                        Transfer................................................................................. 8

                3.      Refusal to Consent to Production in Response to Carrier
                        Subpoenas ............................................................................. 8

        C.      Defendants' Serial Violations of this Court's Discovery Orders........... 9

                1.      Defendants Violated the Court-Ordered Substantial
                        Completion Deadline ............................................................. 9

                2.      Defendants Serially Violated the Court's Disclosure Orders ... 9

                3.      Defendants' Violation of the ESI Order ................................. 11

III.    LEGAL STANDARD........................................................................................ 12

IV.     ARGUMENT ..................................................................................................... 13

        A.      The Defendants' Conduct is Sanctionable ......................................... 14

i

1.  Defendants Spoliated Substantial Amounts of ESI ................................ 14

2.  The Concerted Actors Coordinated to Conceal the
    Spoliation .................................................................................. 14

3.  Defendants Violated Court Orders........................................... 15

4.  Defendants Withheld Relevant Discovery............................... 15

5.  The Spoliation Was Intentional ............................................... 16

6.  The Spoliation Prejudices Plaintiffs and the Proposed
    Classes...................................................................................... 19

B.  A Foundational Sanction Pursuant to Rule 37(b)(2) Is Appropriate ................ 19

C.  Severe Sanctions Pursuant to Rules 37(b)(2), (c)(1) and (e)(2) Are
    Appropriate ............................................................................................... 20

D.  Terminating Sanctions ............................................................................ 20

E.  Adverse Inferences.................................................................................. 22

V.  CONCLUSION............................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Holmes*,
  2024 WL 1345214 (D. Nev. Mar. 29, 2024) .........................................................17

*Burris v. JPMorgan Chase & Co.*,
  566 F. Supp. 3d 995 (D. Ariz. 2021) ..................................................................21

*Collins v. Autozone, Inc.*,
  2024 WL 1054684 (D. Nev. Mar. 11, 2024) ...................................................19, 24

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
  2020 WL 1496444 (C.D. Cal. Feb. 27, 2020).................................................16, 19

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007) ...........................................................................22

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
  2019 WL 6527951 (S.D. Cal. Dec. 4, 2019).......................................................13

*Dreith v. Nu Image, Inc.*,
  648 F.3d 779 (9th Cir. 2011) ..............................................................................22

*Est. of Schuck v. Cnty. of San Diego*,
  2025 WL 2180987 (S.D. Cal. Aug. 1, 2025) .......................................................16

*Facebook, Inc. v. OnlineNIC Inc.*,
  2022 WL 2289067 (N.D. Cal. Mar. 28, 2022)....................................13, 18, 21, 22

*Fast v. GoDaddy.com LLC*,
  340 F.R.D. 326 (D. Ariz. 2022) .....................................................................13, 17

*Fernandez v. Cox*,
  2016 WL 8710431 (D. Nev. Sept. 2, 2016)..........................................................22

*In re Google Play Store Antitrust Litig.*,
  664 F. Supp. 3d 981 (N.D. Cal. 2023) .................................................................17

*Gregory v. Montana*,
  118 F.4th 1069 (9th Cir. 2024) ...........................................................................23

*Hunt v. Assa Abloy Entrance Sys. US, Inc.*,
  2025 WL 2484182 (D. Nev. Aug. 28, 2025) ........................................................24

*Jones v. Riot Hosp. Grp. LLC*,
  95 F.4th 730 (9th Cir. 2024) ....................................................................... *passim*

iii

*Le v. Zuffa, LLC*,
  2023 WL 5085064 (D. Nev. Aug. 9, 2023) ..............................................................2, 16

*Le v. Zuffa, LLC*,
  No. 15-cv-1045, ECF 160 (D. Nev. Sept. 1, 2015)......................................................19

*Lee v. Cnty. of Los Angeles*,
  2025 WL 2505484 (C.D. Cal. Aug. 29, 2025)...................................................14, 17, 18

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ...............................................................................14, 22

*Lewis v. Ceasars Ent. Corp.*,
  2019 WL 1571281 (D. Nev. Apr. 11, 2019).......................................................22, 23

*Llera v. L.V. Metro. Police Dep't*,
  2023 WL 11910850 (D. Nev. Mar. 31, 2023) ...........................................................13

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
  2016 WL 2957133 (N.D. Cal. May 23, 2016)............................................................24

*Monarch Fire Prot. Dist. v. Freedom Consulting & Auditing Servs., Inc.*,
  644 F.3d 633 (8th Cir. 2011) .................................................................................25

*Nuvasive, Inc. v. Madsen Med., Inc.*,
  2016 WL 305096 (S.D. Cal. Jan. 26, 2016)..............................................................24

*OmniGen Rsch. v. Yongqiang Wang*,
  321 F.R.D. 367 (D. Or. 2017) ...........................................................................13, 21

*Pagtalunan v. Galaza*,
  291 F.3d 639 (9th Cir. 2002) ..................................................................................22

*Pannone v. CITC Enters., Inc.*,
  2025 WL 3096563 (D. Alaska Nov. 5, 2025)........................................................15, 18

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
  460 F.3d 1217 (9th Cir. 2006) ...........................................................................19, 22

*R&R Sails, Inc. v. Ins. Co. of Penn.*,
  673 F.3d 1240 (9th Cir. 2012) ................................................................................13

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
  627 F.3d 402 (9th Cir. 2010) .................................................................................13

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
  342 F.R.D. 461 (C.D. Cal. 2022) .....................................................................14, 23

*Sec. Alarm Fin. Enters., L.P. v. Alarm Prot. Tech., LLC*,
  2016 WL 7115911 (D. Alaska Dec. 6, 2016) ............................................................24

iv

*Swisher Hygiene Franchise Corp. v. Clawson*,
    2018 WL 8642738 (D. Ariz. Oct. 15, 2018) .......................................................21

*These Ponies Are Miserable v. City of Los Angeles*,
    2025 WL 3248690 (C.D. Cal. Nov. 7, 2025) ...............................................17, 18

*Transamerica Life Ins. Co. v. Arutyunyan*,
    93 F.4th 1136 (9th Cir. 2024) ..........................................................................20

*Twins Special Co. v. Twins Special, LLC*,
    2025 WL 1292528 (S.D. Cal. May 5, 2025) ...............................................15, 21

*Vallen v. Albertson's LLC*,
    2026 WL 207360 (D. Nev. Jan 26, 2026) .........................................................24

*Webster v. Psychiatric Med. Care, LLC*,
    386 F. Supp. 3d 1358 (D. Mont. 2019) ........................................................15, 19

*Welter v. Hurt*,
    2025 WL 1843263 (C.D. Cal. Apr. 1, 2025) .....................................................18

*WeRide Corp. v. Kun Huang*,
    2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ..................................................22

*Youngevity Int'l v. Smith*,
    2020 WL 7048687 (S.D. Cal. July 28, 2020) ....................................................23

*Zeiter v. Walmart Inc.*,
    2024 WL 3028259 (D. Nev. June 17, 2024) ......................................................23

*Zuffa, LLC v. U.S. Dist. Court for Dist. of Nev.*
    (9th Cir. Jan. 27, 2026) (Dkt. 17.1) ..................................................................12

**Other Authorities**

Fed. R. Civ. P. 26(g) .............................................................................1, 10, 13

Fed. R. Civ. P. 37(b) ....................................................................................... *passim*

Fed. R. Civ. P. 37(c) ....................................................................................... *passim*

Fed. R. Civ. P. 37(e)(1)................................................................................... *passim*

LinkedIn Profile of Denitiza Batchvarova, LinkedIn,
    https://www.linkedin.com/in/denitzabatchvarova/ ............................................7

*Speaker Profile: Denitza Batchvarova*, MIT Sloan Sports Analytics Conference:
    2026, *https://www.sloansportsconference.com/people/deni-batchvarova* ..............7

v

# GLOSSARY

| Term | Definition |
|------|------------|
| Aug. 26 Tr. | August 26, 2025 Hearing Transcript, ECF 240 |
| Batchvarova | Denitza Batchvarova, Executive Vice President of Strategy at Zuffa and TKO until late 2024 |
| Campbell | Hunter Campbell, Chief Business Officer |
| Concerted Actors | Defendants, the Subpoena Recipients, and their common counsel at Latham & Watkins |
| Dec. 4 Tr | December 4, 2025 Hearing Transcript, ECF 323 |
| Dec. 18 Tr. | December 18, 2025 Hearing Transcript, ECF 339 |
| December Disclosure | Defendants' December 15, 2025 device disclosure. ECF 333-2 |
| December Disclosure Order | The Court's Order requiring Defendants to produce a final catalog of phone numbers, devices, communications apps, accounts, carriers, date ranges of available communications, and volume of communications relating to Defendants' custodians and the Individual Subpoena Recipients. ECF 323 and 330 |
| Dell'Angelo Declaration or Dell'Angelo Decl. | Declaration of Michael Dell'Angelo, filed contemporaneously herewith. |
| Defendants | Endeavor Group Holdings, Inc., Zuffa, LLC, TKO Operating Company, LLC |
| Device Disclosures | Refers to the July Disclosure, October Disclosure, and December Disclosure, collectively. |
| Disclosure Orders | The December Disclosure Order, the October Disclosure Order, and the July Disclosure Order, collectively. |
| Emanuel | Ariel Emanuel, CEO and Chairman of TKO and Endeavor |
| Endeavor | Defendant Endeavor Group Holdings, Inc. |
| ESI | Electronically Stored Information |
| ESI Order | Stipulated Order Re: Discovery of Electronically Stored Information. ECF 243 |
| Favro Declaration or Favro Decl. | Declaration of Philip Favro, attached as Exhibit 12 to the Declaration of Michael Dell'Angelo |

vi

| | |
|---|---|
| Feb. 4 Tr. | February 4, 2026 Hearing Transcript, ECF 415 |
| Feb. 5 Tr. | February 5, 2026 Hearing Transcript, ECF 417 |
| Jan 6 Tr. | January 6, 2026 Hearing Transcript, ECF 353. |
| July Disclosures | Defendants' July 3, 2025 device disclosure. ECF 290-22 |
| July Disclosure Order | The Court's Order requiring Defendants to produce a catalog of phone numbers, devices, communications apps, and accounts used by Defendants' custodians and the Individual Subpoena Recipients. ECF 202 |
| June 3 Tr. | June 3, 2025 Hearing Transcript, ECF 203 |
| Long | Tracy Long, Vice President involved in fighter negotiations and contracting |
| Madden Declaration or Madden Decl. | Declaration of Patrick F. Madden, attached as Exhibit 28 to the Declaration of Michael Dell'Angelo. |
| Marcus Declaration or Marcus Decl. | Declaration of Emily Marcus, attached as Exhibit 3 to the Declaration of Michael Dell'Angelo. |
| Maynard | Mick Maynard, UFC matchmaker |
| Nov. 20 Tr. | November 20, 2025 Hearing Transcript, ECF 306 |
| Oct. 30 Tr. | October 30, 2025 Hearing Transcript, ECF 281 |
| October Disclosure | Defendants' October 13, 2025 device disclosure. ECF 293-2 |
| October Disclosure Order | Sept. 29 Tr. at 44:22-48:21. |
| Perez Declaration or Perez Decl. | Declaration of Veronica Perez, attached as Exhibit 20 to the Declaration of Michael Dell'Angelo |
| Plaintiffs | Kajan Johnson, Clarence Dollaway, Tristan Connelly, and Phil Davis |
| Relevant Period | July 1, 2015 to the Present |
| Rule 37 | Fed. R. Civ. P. 37 |
| Scheduling Order | ECF 189 Order Regarding Joint Stipulation Regarding Discovery Schedule |
| Sept. 29 Tr. | September 29, 2025 Hearing Transcript, ECF 260 |
| Spoliation Hearing | The proceedings before this Court on February 4 & 5, 2026. |
| Spoliators | Dana White, Ariel Emanuel, Tracy Long, Mick Maynard, |

| | Denitza Batchvarova, and Hunter Campbell |
|---|---|
| Subpoena Recipients | Defendants' current and former employees and board members served with Rule 45 subpoenas and represented by Defendants' counsel at Latham & Watkins: Andrew Schleimer, Ariel Emanuel, Craig Borsari, Dana White, Denitza Batchvarova, Grant Norris-Jones, Hunter Campbell, Ike Epstein, Jason Lublin, Joe Silva, Marc Ratner, Mark Shapiro, Michael Mossholder, Mick Maynard, Patrick Whitesell, Peter Dropick, Sean Shelby, Seth Krauss, and Tracy Long |
| Substantial Completion Deadline | July 17, 2025 as to TKO and Zuffa, August 17, 2025 as to Endeavor, as Ordered in ECF 244. |
| TKO | Defendant TKO Operating Company LLC |
| White | Dana White, President of UFC |
| Zuffa | Defendant Zuffa, LLC |

## I.    INTRODUCTION

Defendants have engaged in an ongoing pattern of discovery violations, having destroyed years of critical evidence and spent months—if not longer—working with the other Concerted Actors to cover it up, withholding relevant discovery, and violating Court Orders. No later than May 20, 2022 Defendants imaged mobile devices of key custodians such as White, revealing *years* of spoliated discovery. Evidence of spoliation continues to emerge, including *ongoing intentional spoliation* after May 2022, and a deliberate failure to preserve evidence by and on behalf of key witnesses, despite their claims they "never delete anything." Notwithstanding repeated representations of their "reasonable investigations," counsel claim only to have discovered the spoliation in October 2025, months *after* the Substantial Completion Deadline. Less credible are claims that counsel only learned basic spoliation facts during live testimony by Defendants' custodians—custodians who claim total ignorance. Even less credible is testimony that CEO Dana White does nothing relevant here for the UFC, and that partial blame for spoliation lies with a mysterious intern who *may* have stolen a retired, unsecured, unimaged phone. Defendants' brazen obfuscation of spoliation and counsels' disregard for their Rule 26(g) obligations and this Court's authority, evidenced by violations of every discovery Order, shows an intentional years-long effort to spoliate key evidence by key custodians, to create the conditions to allow the loss, and, worst of all, to cover it up, obscuring the true extent of the destruction. Severe sanctions must follow.

## II.    DEFENDANTS' DISCOVERY MISCONDUCT

The Court has found that Defendants and their counsel engaged in "sanctionable" discovery misconduct in myriad ways. *See* Exhibit 1 (compiling the Court's findings). That conduct includes violations of the Court's Scheduling Order, Disclosure Orders, and ESI Order.

### A.  Substantial Volumes of Communications Have Been Spoliated by Critical Custodians Employed by All Three Defendants Throughout the Relevant Period

The Court determined that many *years* of messages for White and Long are missing despite litigation holds from at least December 2014. Ex. 1 at 3-5; *e.g.*, Jan. 6 Hrg. Tr. at 5:4-14. The same is true for Batchvarova, Maynard, Campbell, and Emanuel, who are also subject to

1  litigation holds in this case. ECF 217-17 at Appx. A.[1] Herein, Plaintiffs detail the *known*

2  spoliation and its circumstances. *See also* ECF 327 (detailing White's and Long's spoliation).

3  **1.  White's Spoliated Devices, Chats, and Audio Messages**

4  White's messages are critical: (1) he has led the UFC since before the Relevant Period

5  began, Feb. 4 Tr. at 12:11-18; (2) he was a key custodian in *Le* whom Zuffa listed as a trial witness,

6  ECF 329-6, and whose messages provided key evidence cited in the Court's class certification

7  opinion, *Le v. Zuffa, LLC*, 2023 WL 5085064, at *25 (D. Nev. Aug. 9, 2023); (3) Defendants

8  identified him as a custodian here, ECF 333-2; (4) Defendants listed him in their Initial Disclosures

9  dated October 13, 2023, Ex. 2 at 1-2; and (5) Zuffa identified him as a person responsible for

10  negotiating fighter contracts and setting fighter compensation in verified September 2025

11  Interrogatory Responses, ECF 225-4 at 11-12. Yet, to evade spoliation consequences, White

12  misleadingly testified: that he never deletes anything; there was nothing damaging on his spoliated

13  texts; and that he does nothing for the UFC. Feb. 4 Tr. at 63:11-14; *id.* at 59:5-7; 140:3-143:3.[2]

14  The record reveals that White's testimony is not credible. He is deeply involved in the UFC activity

15  at issue and his unspoliated texts are damaging to the Defendants' defenses, as cataloged in the

16  Marcus Declaration. *See* Exs. 3 (compiling record evidence and public statements of White's

17  involvement in UFC activities and relevance of spoliated documents to key merits issues), 5.

18  Devices and Texts. White used *at least* seven (7) devices to conduct UFC business during

19  the Relevant Period. *See* ECF 373 (listing 4 known devices for -1092, 2 known devices for -3127,

20  omitting current -0682 device). Two of those devices were disclosed and collected (iPhone 11 Pro

21  and iPhone 16 Pro, ECF 333-2, 419), which contained *some* data from July 3, 2020 to May 20,

22  2022 and November 14, 2024 to August 19, 2025, respectively. But White spoliated *some* data,

23  including texts, during those periods, *see* Exs. 12, 25, at 2-3, and *all* data for the remainder of the

24  Relevant Period. White refused to back up his iPhones and, when he received a new iPhone, did

---

26  [1] Defendants have not admitted that Emanuel received a litigation hold. Endeavor was named
27  as a party in June 2021; he was on notice of his preservation obligations by no later than January
2023, when his iPad was imaged. ECF 419, at Ex. 1, at 5, 8.
28  [2] The Court found Campbell's testimony regarding White's role was "difficult [] to believe."
*See* Feb. 5 Tr. at 169:4-16.

2

1   not instruct UFC staff to transfer data to the new device. Feb. 4 Tr. at 36:15-22 (White); Feb. 5 Tr.

2   at 56:23-25, 60:15-65:22 (Howard).[3] His old devices were then left unsecured and the passwords

3   unrecorded. Feb. 4 Tr. at 148:7-16; Feb. 5 Tr. at 85:15-86:17. Counsel collected White's iPhone

4   11 Pro on May 20, 2022 (but not when he retired it in November 2024), ECF 419, Ex. 1 at 3, and

5   his iPhone 16 Pro on August 19, 2025, ECF 419, Ex. 2, preserving only a fraction of the data.

6         <u>Messaging Apps</u>. White used numerous communication apps from which Defendants

7   collected nothing or significant gaps exist that can only have resulted from manual deletion.

8         *Instagram*. Zuffa disclosed that White has used at least two Instagram accounts as late as

9   June 30, 2015: @danawhite and @danawhiteUFC.[4] ECF 329-6 at Topic 19. Defendants' Device

10   Disclosures indicate they collected an *unspecified* Instagram account(s) for White for some or all

11   of the periods from July 3, 2020 to May 20, 2022 and November 14, 2024 to August 19, 2025, but

12   they refuse to specify whether messages are available for the entire periods. Yet, White's use of

13   Instagram messages with fighters outside those periods is well known. ECF Nos. 350-5, 350-6;

14   Ex. 4. White conveniently dismissed that *leaked* example as a one-off communication. Feb. 4 Tr.

15   at 49.[5] UFC Social Media Director Eric Yee testified that Instagram retains messages unless

16   deleted. Feb. 5 Tr. at 21:14-22:9; *see also* Ex. 6, Favro Decl. ¶46 (same). The absence of Instagram

17   messages before July 3, 2020 and between May 21, 2022 and November 14, 2024, confirms that

18   White intentionally deleted them. And, because the @danawhiteufc account no longer exists,

19   White presumably deleted it and its data entirely at an unknown time.

20         *X f/k/a Twitter and Snapchat*. In *Le*, Zuffa disclosed White's use of two X accounts

21   (@danawhite and @danawhiteUFC) and a Snapchat account. ECF 329-6 at Topic 19; ECF 327-9

22   at 7. Yee testified that he and White have access to the @danawhite and Snapchat accounts. Feb.

23

---

24      [3] White testified that he did not lose data when he got new phones, Feb. 5 Tr. at 46, but his texts after changing phones clearly reflect data loss. Ex. 4.

25      [4] Zuffa Social Media Director Eric Yee testified that he was unfamiliar with @danawhiteufc, Feb. 4 Tr. at 13, and Defendants' counsel insinuated that there were "fake" accounts for White;
26   yet Zuffa disclosed the account. ECF 329-6 at Topic 19.

27      [5] Produced texts, including screenshots of Whites's Instagram, Ex. 7A, at UFC-04746315; 7B, at UFC-04745125; 7D, at UFC-04746739 (screenshot also indicating unread messages), and a few
28   Instagram messages or references to them confirm he used Instagram to conduct UFC business. *See* 7C, at UFC-04754047; and 7E-H.

5 Tr. at 40:6-18. In violation of the Disclosure Orders, Defendants neither disclosed nor collected those accounts. *See* ECF 333-2. Unproduced messages should be deemed spoliated.

Audio Messages. White sent audio messages via iMessage, Exs. 8-11, which White and other witnesses admit. Feb. 4 Hrg. Tr. at 119:18-25; Feb. 5 Hrg. Tr. at 36:12-38:7, 58:10-12. Audio messages have a default retention setting of 2 minutes after receipt (unless saved by the recipient), but that setting can be set to preserve—which White was obligated to do but did not. Favro Decl. ¶¶47, 71, 79, 93 (Ex. 6). Texts show recipients saved White's audio messages, but only a footprint of their erasure was produced. Ex. 12. An unknown number have been spoliated.

### 2. Long's Spoliated Devices and Communications

Long was the keeper of contracts and negotiations records between fighters, agents and the UFC. Sept. 29 Tr. at 51:9-52:7; Nov. 20 Tr. at 85:1-5. She was a custodian and identified as a trial witness in *Le. Le*, ECF 206, 1006. Defendants identified her in Interrogatory responses as responsible for negotiating fighter contracts. ECF No 255-4 at 11-12. From at least July 2015 to November 2024, Long used mobile devices with an -8722 number to conduct UFC business. *See* ECF 329-6 at Topic 13; Ex. 13. Yet, she spoliated every such device known to Plaintiffs, except her current iPhone 15 Pro Max. Those spoliated devices include a never collected or preserved iPhone 6, an iPhone 11 (collected once in May 2022) among potential others. *See* ECF 333-2; ECF 329-6 at Topic 13. Long refuses to cooperate in the production of her mobile carrier data,[6] which is the subject of a subpoena to Verizon. Ex. 14. Defendants only *collected* some data from Long from November 4, 2020 to May 18, 2022 (iPhone 11) and from October 18, 2023 to January 2026 (iPhone 15 Pro Max), amounting to at least *seven years* of spoliated texts. *See* ECF 333-2.

However, those collection dates vastly *understate* the extent of the spoliation because no texts appear to exist from November 4, 2020 to April 18, 2022. That purported 19-month collection period for Long's iPhone 11[7] suggests that texts exist for this entire period.[8] *See* ECF 333-2. But

---

[6] Neither Defendants nor Long produced carrier data to Plaintiffs.

[7] Long did not know when she began using specific iPhone models, Feb. 4 Tr. 188:14—information ascertainable from Verizon, but which she refuses to produce. ECF 356-15.

[8] The Device Disclosures reflect collections of Instagram and Life360, but Long does not use them for business. Feb. 4 Tr. at 198:10-12. Plaintiffs asked for a breakdown of date ranges and message counts by app, Defendants refused and have not provided it. ECF 386-4.

4

the earliest text Defendants **produced** from Long's iPhone 11 is dated April 19, 2022, within *thirty-days* prior to the only collection, May 18, 2022. Dell'Angelo Decl., ¶ 3. Thus, Long's texts were *also* likely spoliated for the 18-month period from November 4, 2020 to April 18, 2022.[9] Due to the affirmative election of a 30-day retention setting in lieu of the default "forever" setting, Long's iPhone 11 texts have been permanently deleted other than for the 30-day period from April 19, 2022 to May 18, 2022. Favro Decl. ¶¶41, 70, 79. Long also manually deleted relevant messages. Comparing her June 2025 message thread with fighter manager Malki Kawa to her internal thread with Campbell that included a screenshot of the Kawa exchange reflects that the produced Kawa thread omits messages. Ex. 15, Ex. 16. Long offered no explanation. Feb 4 Tr. at 224:5-8. She retired her iPhone 11 without preserving the data and no longer has the device; the data is spoliated.

### 3. Emanuel's Withheld Device and Undisclosed Communications Apps

As CEO of Endeavor and TKO, Emanuel's communications reflect Endeavor's control over UFC operations. *See also* ECF 183 at 14-15; ECF 188-11, at 4. Defendants TKO and Endeavor and Emanuel, individually, have not disclosed, collected, or produced communications from Emanuel's current business device. In an April 2025 email, Defendants stated that Emanuel used company-provided iPhone 16 Pro, ECF 327-6, but omitted that phone in their Device Disclosures, and despite Plaintiffs' inquiries (ECF 327-8 at 6; 327-9 at 6; ECF 329-4 at 15-16; ECF 288 at 41 n.41; ECF 329 at 16; ECF 383 at 7), omitted his use of Signal (and apparent spoliation), as discussed *infra*, Part II.C.2. Emanuel's iPhone Pro 13 was disclosed on July 3, 2025, ECF 290-22, and collected on January 19, 2023, ECF 419, Ex. 1 at 4, but it only contained data through January 19, 2023. ECF 332-2. The current phone and Signal should be deemed spoliated.

### 4. Campbell's Undisclosed Devices and UFC Texts

Defendants proposed Campbell as a custodian, ECF 333-2, identified him in their Initial Disclosures, Ex. 2, and listed him in their Interrogatory responses as responsible for negotiating fighter contracts. ECF No 255-4 at 11-12. At the Spoliation Hearing, Campbell's importance to the UFC and fighter negotiations was obvious. Yet Defendants concealed the nature of the data on his mobile devices, including by claiming to have conducted a "reasonable investigation"

---

[9] The fact of a data collection does not mean *all* relevant data was preserved for that period.

indicating that his devices did not contain discoverable information. ECF 333-2. Campbell testified that no one had ever even asked him about his -7084 devices and admitted he used them for business. Feb. 5 Tr. 236:3-237:4. Campbell used his purportedly "personal" -7084 number to conduct UFC business from 2017 to at least December 2023, including by sending thousands of texts with White, many of which White spoliated. Defendants failed to actively preserve, collect, or produce any data from any -7084 device in blatant disregard of their obligations, representations, and this Court's Orders. Exs. 17, 18. Campbell's data should be deemed spoliated.

### 5. Maynard's Spoliation and Selective Preservation of Chats

Maynard's documents are critical. Defendants identified Maynard as a custodian, ECF 333-2, and in their Interrogatory responses as responsible for negotiating fighter contracts, setting fighter compensation, and matchmaking. ECF No 255-4 at 11-12; *see also* Feb. 4 Tr. at 138:22-25 (White: Maynard is a "matchmaker[] . . . that negotiate[s] contracts, set[s] up fights, and basically handle[s] the whole business side . . . of the fight game"); Feb. 5 Tr. at 175:3-9 (Campbell: Maynard is "involved in deciding compensation levels and what fighters would be paid"). Yet, Maynard deleted his unpreserved texts and WhatsApp messages manually. Defendants did not preserve or collect his device until June 11, 2025, ECF 419-2, enabling his intentional spoliation. Indeed, numerous text and WhatsApp threads reflect for Maynard having manually deleted messages. *See, e.g.*, Ex. 19A, at UFC-04744682-83; Ex. 19B, at UFC-04753222; Ex. 19C, at UFC-04754253Ex. 21; Perez Decl. ¶23 (Ex. 20).[10] Maynard's deleted data is undeniably spoliated.

### 6. Batchvarova's Spoliated Devices and Communications Apps

Batchvarova's documents are critical.[11] Defendants identified her as a custodian, ECF 333-2[12], in their Initial Disclosures, Ex. 2, and in Interrogatory responses as the *only* UFC person responsible for acquisitions, ECF No 255-4 at 11 (citing organizational charts identifying Batchvarova as a "key Zuffa 'Acquisition' and 'Strategy' personnel" in response to Interrogatory

---

[10] It appears Maynard's iCloud and not his device was collected, which may not have captured indicators of manual deletion and thus may understate the problem. *See* Perez Decl. ¶24 (Ex. 20).

[11] *See Speaker Profile: Denitza Batchvarova*, MIT Sloan Sports Analytics Conference: 2026, *https://www.sloansportsconference.com/people/deni-batchvarova.*

[12] Batchvarova was not a custodian in *Le*, but Zuffa listed her as a trial witness. *Le*, ECF 1006.

No. 5, which requested the identity of individuals "responsible for . . . the acquisition of . . . any MMA Promoter").[13] Defendants *never* collected her mobile devices.

Batchvarova was to a litigation hold since July 12, 2016. ECF 329-6 at Topic 29. The UFC listed her ▮▮▮ number in her business email signature from at least 2015 through November 2024. ECF 329 at 14; ECF 329-4 at 17. Emails she sent from a mobile device associated with the ▮▮▮ number and White's communications logs reflect over 3,000 texts, including over 2,700 during when White's texts were spoliated. Ex. 22. Defendants claimed they lacked possession, custody, or control over her business communications on her mobile device, ECF 217-6, so Plaintiffs issued her a subpoena that Latham & Watkins accepted, ECF 356 at 1-2, and later represented she would produce responsive documents. ECF 327-27; ECF 288-37; ECF 224-16. She never did. After renewing her car registration in Las Vegas in October 2025, Ex. 24, Batchvarova purportedly moved overseas and she and her counsel claims that she is beyond this Court's jurisdiction. ECF 383-3 at 5. Batchvarova's documents should be considered spoliated.

### 7.  Selective Spoliation of Particular Chats

Defendants' modest text production alone reveals many communications that were not produced from the custodial files of one or more of the Chat participants, including White, Long, Campbell, Batchvarova, Emanuel, Maynard, and Sean Shelby, and other fragments that only exist as screenshots pasted into other communications, indicating the messages were spoliated. Ex. 25 (texts not produced by all custodians), Ex. 26 (unproduced messages screenshotted into text chains). As of at least November 6, 2025, Defendants had produced communications evidencing negotiations regarding just a few dozen of the thousands of fighter contracts underlying this action. ECF 350-7. Those critical negotiation communications have been concealed or spoliated.

### B.  The Concerted Actors Coordinated to Deprive Plaintiffs of Discovery

The Concerted Actors coordinated to deprive Plaintiffs of materials that could (1) mitigate the spoliation's prejudice, (2) establish the scope of the spoliation and its prejudicial effects, and/or

---

[13] Batchvarova's duties included strategies for fighter compensation, compensation structures, discretionary bonuses, and sponsorships, *see* Exs. 31-34, developing the UFC's HUB system. *See* Denitiza Batchvarova, LinkedIn, https://www.linkedin.com/in/denitzabatchvarova/.

(3) assist in evaluating witnesses' credibility. For example, if the Subpoena Recipients still possess otherwise spoliated materials, it could mitigate the spoliation, materials showing the volume and dates of communications that should exist (but have not been produced) can evidence the spoliation's scope and prejudice, and productions could confirm or undermine those claims Defendants' witnesses claims that they did not engage in various aspects of the challenged conduct.

### 1. The Concerted Actors Refused Production Without Justification

Despite the obvious relevance of the evidence sought from the Subpoena Recipients' devices, the Concerted Actors have worked to prevent Plaintiffs' access. First, after Plaintiffs sought relevant evidence from employees' mobile devices through document requests, Defendants claimed they lacked possession, custody, or control over devices used for work because they were personal.[14] So, Plaintiffs subpoenaed 23 employees. After Latham & Watkins stalled accepting service for a month, it relented for 20 individuals. Those 20 refused to produce until a "court orders otherwise," claiming Plaintiffs were "bypassing party discovery." ECF 183-7. Yet, on April 24 and May 19, 2025, the Subpoena Recipients' counsel agreed to produce relevant ESI from individuals' personal devices, ECF No. 217-21, at 2; ECF 327-27, at 2, then reneged on those agreements.

### 2. Subpoena Recipients Frustrate Discovery by Refusing to Transfer

After the Court granted Plaintiffs leave to file a motion to compel productions from Subpoena Recipients, Jan. 6 Tr. at 33:17-35:15, and Plaintiffs sought consent to transfer the nine non-local subpoenas to this Court for joint resolution, the Concerted Actors coordinated to refused to cooperate. Plaintiffs have therefore been engaged in the onerous process of opening miscellaneous actions in multiple jurisdictions to obtain compliance or transfer.

### 3. Refusal to Consent to Production in Response to Carrier Subpoenas

Latham & Watkins represented to the Court that it was working to obtain mobile carrier data, ECF 323, Dec. 4 Tr. at 12:8–13, but never produced it. Plaintiffs subpoenaed carriers for communication logs for the Subpoena Recipients' devices and obtained some data from AT&T

---

[14] Yet Defendants produced a text exchange in which Campbell instructs a reticent Maynard to submit his personal phone for collection because he uses it for business. Ex. 27. Such instruction belies Defendants' contention that they lack control over employees' personal devices. Further, Defendants collected other personal devices used for business, including Long's.

and T-Mobile. That data has been instrumental to identifying many mobile devices and demonstrating Defendants' spoliation. Plaintiffs are awaiting data from Verizon.

### C. Defendants' Serial Violations of this Court's Discovery Orders

#### 1. Defendants Violated the Court-Ordered Substantial Completion Deadline

Defendants' "ongoing pattern of discovery violations" including the "minimal disclosure of relevant material, even when it is clear that such material much exist," Nov. 20 Tr. at 60:9-15, violated, *inter alia*, the extended Court Ordered (stipulated) July 17, 2025 Substantial Completion Deadline. Defendants' refusal to comply with the Scheduling Order has substantially delayed this action[15]; prejudiced Plaintiffs' ability to prove their claims and uncover the full extent of Defendants' spoliation; and wasted substantial resources. Defendants have done little to explain or cure these failures. *Id.* at 61:3-4 (there is "no justification or explanation").

#### 2. Defendants Serially Violated the Court's Disclosure Orders

The Court found that the "UFC, has violated this Court's orders regarding discovery and disclosure in this case." Nov. 20 Tr. at 59:24-61:4.[16] Those violations were part of "an ongoing pattern of discovery violations" without any "justification or explanation." *Id.* at 61:3-4. They also violate Rule 26(g)(1)'s "reasonable inquiry" requirement.

<u>July Disclosure.</u> The July Disclosure Order required Defendants to "provide … a listing of information related to business and personal phones … and apps … used on these devices …." ECF 202. Yet, the July Disclosure contains only *some* of the Court-ordered information for *some* of Defendants' proposed custodians (*e.g.*, omitting White's and Emanuel's current devices and apps), and contradicts Defendants' prior representations. *See* ECF 217-33. Plaintiffs identified the

---

[15] *Id.* at 45 ("I think the work should have been done a lot sooner and I don't see any excuse for that[.]"); Oct. 30 Tr. at 12-13 ("there has been a history of delay on the part of your clients in releasing information"); Feb. 5 Tr. at 81:3-8 ("why is it only now when we have the spoliation hearing that there is an effort being made to identify the phones?").

[16] Even after the Court admonished Endeavor for refusing to participate in discovery, ECF 176, and threatened "sanctions, up to and including dispositive sanctions," *id.*, Endeavor refused to produce documents or even meet and confer requiring another motion to compel, ECF 183, ECF 190, which the Court largely granted. *See* ECF 202 (compelling responses to 82 of 93 RFPs). Still undeterred, Endeavor produced only 3,994 documents before its substantial completion deadline and 7,258 in total as of December 16, 2025, ECF 331-7, and none after gaps were identified.

1   deficiencies, ECF 217-34, but Defendants did not remedy their violation.[17]

2       October Disclosure. Defendants' October Disclosure to "provide a list of devices and how

3   many communications there are per device," Sept. 29 Tr. at 45:15-19, was similarly incomplete

4   because it omitted numerous custodians and devices, including for Emanuel, Batchvarova,

5   Maynard, White, and Campbell. ECF 329-4 at 15-16; ECF 290 at 41 n.41. It also combined the

6   volumes and time frame for collected message type (*e.g.*, texts vs. WhatsApp), ECF 293-2. That

7   obscured 18 *more* months of Long's spoliated texts and 6 *more* months of White's. Plaintiffs

8   identified such violations. Defendants failed to remedy them. ECF 386-4.

9       December 15 Disclosure. When issuing the December Disclosure Order, the Court gave

10  Defendants one "final" chance to make full disclosures of devices and apps. Dec. 4 Tr. at 16:20-

11  25; *see also id.* at 18:25-19:2; ECF 330. The December Disclosure violated the December

12  Disclosure Order by adding *some* but not all of White's messaging apps, and otherwise supplied

13  no further information omitted from July and October. ECF 333-2; *see also* ECF 333-5 (detailing

14  continuing gaps in Defendants' Device Disclosures). The December Disclosure's omissions

15  relating to Emanuel are particularly egregious. On November 14, 2025, Emanuel's use of Signal

16  to communicate with other executives of Defendant TKO and ***spoliation*** of those communications

17  was disclosed in litigation in which he is represented by Latham & Watkins, counsel for Endeavor

18  and TKO here. Madden Decl. ¶¶7, 15 (Ex. 28). These knowing omissions reflect the complicity of

19  Emanuel and counsel and the concealment of discoverable information.

20      Equally shocking is Defendants' omission of Campbell's -7084 phone. He used -7084 as

21  his primary business number from the time he joined the UFC in 2017 into 2019, Ex. 29, ECF 329-

22  4 at 17, and thereafter to conduct UFC business through at least December 2023. Exs. 17, 18.

23  Plaintiffs identified the omission from the disclosures. *See* ECF 290 at 41 n.41; ECF 329 at 14;

24  ECF 385 at 6. Campbell and White exchanged at least 1,077 texts on Campbell's *disclosed*

25  purported -1109 number and 3,081 texts on his *undisclosed* -7084 number, many during the period

26

---

27      [17] The October Disclosure included White's current iPhone 16 Pro. Although required in July
    and October Disclosure, Defendants omitted the corresponding app information until the
28  December Disclosure (even then omitting numerous active apps, including X and Snapchat).

1    when White's texts were spoliated. Ex. 18. Still, Defendants did not update their disclosures.

2    These omissions are particularly troubling because Latham & Watkins represented that it

3    performed a "reasonable investigation" in making the disclosures and determined that no non-

4    duplicative communications existed on undisclosed devices, *e.g.*, Campbell's -7084 number,

5    Emanuel's current device, White's personal devices, and Batchvarova's devices.[18] ECF 333-2; *see*

6    *also* ECF No. 253-8, at 3; ECF No. 217-21, at 2 (regarding earlier representations). But Campbell

7    testified that he was never asked about his undisclosed -7084 devices and admitted he used it to

8    conduct UFC business. Feb. 5 at 227:22-228:9. Either Latham & Watkins did not perform a

9    reasonable investigation and claimed to have done so, concealing the spoliation, or they conducted

10   a reasonable investigation and misrepresented the results to the Court to conceal the spoliation.

11   That may explain Defendants' dubious mandamus petition of the January 6 Order for *in camera*

12   production of preservation and collection efforts.

13   **3.  Defendants' Violation of the ESI Order**

14   Defendants violated the ESI Order requiring the parties to preserve ESI "in a reasonable

15   and proportionate manner" and stipulating that "Parties have taken reasonable and good-faith steps

16   to preserve potentially relevant ESI consistent with their legal obligations and applicable Orders

17   of the Court." ECF 243 ¶3. Defendants misled Plaintiffs and the Court by representing that they

18   had complied with their obligations. Ex. 30, quoting ECF No. 253-8, at 3; ECF No. 217-21, at 2.

19   Had Defendants preserved ESI in a reasonable and proportionate manner and taken good-faith

20   steps to preserve potentially relevant ESI, some of the spoliation would not have occurred.[19]

21

22   [18] In fact, Defendants have claimed that if an allegedly personal device was not on their
     disclosures, it is because "we had done the work to talk to the custodians … which devices did
23   they use for work and things related to this litigation." Dec. 4 Tr. at 17:11-17.

24   [19] Defendants' *claim* to have first discovered the gaps in the device collections in October
     2025, *see* Reply in Support of Mandamus Pet. at 12, *Zuffa, LLC v. U.S. Dist. Court for Dist. of*
25   *Nev.,* (9th Cir. Jan. 27, 2026) (Dkt. 17.1), cannot be true. Defendants have *since* disclosed that they
     *first* collected data from the custodians with obvious gaps (White and Long) on May 18 and 20,
26   2022. ECF 419-1 at 8. Thus, Defendants knew no *later* than May 2022, that all of White's data
     prior to July 2, 2020 and Long's data prior to November 4, 2020, was missing. When negotiating
27   the December 13, 2023 Stipulated ESI Order, Defendants refused to include representations
     regarding ESI preservation for specific time periods (despite doing so in *Le*). *See* ECF 217-3.
28   Defendants' refusal further suggests they knew of the spoliation in May 2022.

These failures were confirmed at the Spoliation Hearing. For example, White testified he was never instructed to, and did not, backup his devices or transfer data from one to another. Nov. 4 Tr. at 35-36. Worse, despite White's *years* of missing texts, Defendants admitted they never collected, imaged, nor even *identified the owner* of the many devices in White's "drawer" of phones.[20] *Id.* at 80-81 ("The discovery deadline has passed last year . . . . why is it only now when we have the spoliation hearing that there is an effort being made to identify the phones?"). This may explain Defendants' vigorous resistance to the Court's January 6 Order requiring *in camera* production of counsel's preservation communications: that production likely would have revealed the failure to take "reasonable and good-faith steps" to ensure that information was preserved and to investigate *whether* key information was preserved—until the Spoliation Hearing was ordered.

### III.    **LEGAL STANDARD**

Rule 37 authorizes courts to sanction a variety of discovery misconduct. Rule 37(b) authorizes sanctions against a party who "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Rule 37(b) sanctions include, *inter alia*, default, adverse inferences, and the prohibition of certain defenses. *Id.* Default is available where the disobedient party exhibits "willfulness, fault, or bad faith," *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012), and such sanctions may be necessary where a district court must "rein in abusive conduct." *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010). Rule 37(c)(1) offers "particularly wide latitude" to issue sanctions for failing to disclose, produce, or supplement under Rule 26 even without a court order if the failure is not "substantially justified" or "harmless." Fed. R. Civ. Proc. 37(c)(1)(C); *R&R Sails*, 673 F.3d 1246 ("party facing sanctions bears the burden of proving [substantial justification or harmlessness]."). Rule 37(e) authorizes sanctions for spoliation of ESI where there was a duty to preserve it, but the party failed to take reasonable steps to do so, resulting in a loss that cannot be restored. *Llera v. L.V. Metro. Police Dep't*, 2023 WL

---

[20] To cover up this widespread failure to preserve documents, Defendants fabricated a far-fetched narrative about a long-fired employee stealing only one phone—an obsolete iPhone 11 that happened to contain years of key business documents—from a drawer of phones. Even if this story were credible (it is not, and there is no evidence it occurred) it would not explain the majority of White's missing texts. But in reality, this story was concocted at the eleventh-hour in a failed effort to excuse Defendants' preservation failures.

11910850, at *2 (D. Nev. Mar. 31, 2023); *see also Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 734 (9th Cir. 2024) (if spoliation is prejudicial, court "may order measures no greater than necessary to cure the prejudice"; if spoliation is intended to deprive the other party of the ESI, dismissal or other serious sanctions are warranted (quoting Fed. R. Civ. P. 37(e))).

While the prongs of Rule 37 consider different misconduct, a party's behavior under one prong may influence the appropriate sanction under another. *See, e.g.*, *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951, at *14 (S.D. Cal. Dec. 4, 2019) (Rule 37(b) sanctions for violating order to determine extent of ESI spoliation); *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *9, 13 (N.D. Cal. Mar. 28, 2022), *report and recommendation adopted*, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022) (terminating sanctions appropriate under Rule 37(c) in context of findings re Rules 37(b) and (e)); *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 377 (D. Or. 2017) (terminating sanctions under Rules 37(b) and (e)).

If the court finds by a preponderance that Rule 37's requirements are met, it may order appropriate sanctions. *Llera*, 2023 WL 11910850, at *2 (quoting Fed. R. Civ. P. 37(e)(1)); s*ee also Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022) ("standard of proof for spoliation sanctions is a preponderance of the evidence" (citations omitted)). The moving and responding parties must meet their burdens using competent evidence, not mere speculation. *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 506 (C.D. Cal. 2022); *Lee v. Cnty. of Los Angeles*, 2025 WL 2505484, at *10 (C.D. Cal. Aug. 29, 2025) (refusing rebuttal "unsupported by competent evidence" and relying only on "vague deposition testimony").

## IV.    ARGUMENT

Defendants' conduct is sanctionable. Collectively, it reveals a clear intent to deprive Plaintiffs of relevant materials, whether by withholding or spoliating materials. Because Defendants' conduct involves violating Court Orders, withholding relevant discovery, coordinating obstruction of subpoena enforcement, intentionally spoliating relevant evidence, and, because such conduct prejudices Plaintiffs, the Court may award sanctions under Rules 37(b)(2), 37(c)(1), 37(e)(1), and 37(e)(2). The fact that the Court has already warned that further refusals to participate in discovery will result in sanctions "up to and including default" counsels toward that

13

1  most severe sanction as to each Defendant. Even if the Court deems lesser sanctions appropriate,

2  the Spoliators' culpable conduct is so severe that appropriate sanctions to remedy the prejudice

3  and to deter further violations must be commensurate to meet these goals.

4    **A. The Defendants' Conduct is Sanctionable**

5       Defendants and the other Concerted Actors coordinated to deprive Plaintiffs of critical

6  discovery. That misconduct includes willful violations of Court Orders, withholding responsive

7  discovery including the failure to make any meaningful production from critical custodians

8  (including all of the Spoliators), producing no documents whatsoever concerning the negotiation

9  of literally thousands of contracts with UFC fighters, failing to identify central files containing

10 relevant discovery and refusing for months to search and produce from such files even when

11 identified, and spoliating a substantial volume of critical ESI. These violations had synergistic

12 effects, including ensuring that Defendants have ***still*** not made meaningful productions.

13    **1. Defendants Spoliated Substantial Amounts of ESI**

14       As detailed in Part II, *supra*, Defendants spoliated a substantial volume of ESI, making

15 sanctions appropriate under Rule 37(e). There is no reasonable dispute that Defendants had an

16 obligation to preserve ESI subject to a litigation hold, yet Defendants and counsel failed to take

17 reasonable steps to preserve any of it. Ex. 1, at 5. Phil Favro, Plaintiffs' expert regarding litigation

18 information governance, the development of information retention policies, and practices and legal

19 hold policies and practices addresses Defendants' failings here. Favro Decl. ¶¶2-12, at A (Ex. 6).

20 No Spoliator submitted to counsel for preservation *all* their devices used for business, resulting in

21 widespread spoliation and non-production of what may still exist. None of these ESI materials are

22 recoverable or reasonably available elsewhere. The conduct is sanctionable per Rule 37(e).

23    **2. The Concerted Actors Coordinated to Conceal the Spoliation**

24       As detailed in Part II.A & B, the Concerted Actors coordinated to obstruct Plaintiffs'

25 discovery of the spoliation and mitigation of its effects. That coordinated effort to conceal the

26 spoliation and deprive Plaintiffs of mitigation evidences Defendants' willfulness, bad faith, and

27 intent to deprive Plaintiffs of the discovery, informing appropriate sanctions under Rules 37(b)(2),

28 (c)(1), and (e)(2). *See, e.g.*, *Webster v. Psychiatric Med. Care, LLC*, 386 F. Supp. 3d 1358, 1367

14

(D. Mont. 2019) (intent to deprive where "willfull[] dishonest[y]" "to cover up its spoliation.").

### 3. Defendants Violated Court Orders

As discussed in Part II.B, Defendants have violated numerous discovery Orders, which is sanctionable under Rule 37(b)(2). And because the violations obscured the spoliation, the conduct shows Defendants' intent to deprive Plaintiffs of the spoliated ESI. *See Pannone v. CITC Enters., Inc.*, 2025 WL 3096563, at *3 (D. Alaska Nov. 5, 2025) ("deletions took place after . . . the Court's order for forensic review is strong circumstantial evidence that the deletions were intended to deprive"); *Twins Special Co. v. Twins Special, LLC*, 2025 WL 1292528, at *9 (S.D. Cal. May 5, 2025) (terminating sanctions under Rules 37(b), (e)(2)).

### 4. Defendants Withheld Relevant Discovery

The Court already found that Defendants (1) "disingenuous use of search terms [] have led to limited or minimal disclosure of relevant material, even when it is clear that such material must exist." Nov. 20 Tr. at 60:12-25; and (2) have not produced negotiations documents for "literally thousands" of relevant contracts relating both to arbitration, *id.*, and generally, *id.* at 61:1-3. And Defendants have withheld other relevant discovery by refusing to search other central files for materials not found in their custodial productions,[21] negotiation communications for broadcast deals, and audits of the UFC's business processes[22] that detail how the UFC contracts with fighters. The Concerted Actors coordinated to refuse production of relevant business documents from subpoenaed employees' personal devices. Such conduct is sanctionable under Rule 37(c)(1), and because it prevents production of spoliated ESI from alternative sources, it also evidences Defendants' intent to deprive Plaintiffs of that ESI under Rule 37(e)(2). *Est. of Schuck v. Cnty. of San Diego*, 2025 WL 2180987, at *7 (S.D. Cal. Aug. 1, 2025).

---

[21] This includes loan materials akin to the Deutsche Bank Confidential Information Memoranda. *See, e.g., Le v. Zuffa, LLC*, 2023 WL 5085064, at *19 (D. Nev. Aug. 9, 2023) (discussing 2013 Deutsche Bank report that dismissed the competitive significance of rivals).

[22] Defendants finally produced a long-sought draft of the Fighter Cost Walkthrough in December 2025. *See* ECF 344, at 3; *see also* ECF 344-9. This document did not hit on Defendants' "disingenuous" search terms or was withheld despite its obvious relevance. Defendants made a largely duplicative production on February 20, 2026 containing this material, but still do not appear to have performed a proper search, including from central files, to locate all similar materials.

15

### 5.  The Spoliation Was Intentional

Defendants spoliated ESI with the intent to withhold it from Plaintiffs. A significant volume of spoliated materials was intentionally destroyed. Moreover, the Concerted Actors' joint efforts (*e.g.*, false or misleading disclosures, withholding relevant discovery, and obstructing mitigating efforts) reflect a cover up effort to prevent Plaintiffs from identifying or mitigating the spoliation. Because "intent can rarely be shown directly," circumstantial evidence of intent is considered for Rule 37(e)(2) sanctions. *See Jones*, 95 F.4th at 735 (citation omitted). Intent may be inferred where a party does not take steps to preserve material known to be potentially relevant or seeks to keep unfavorable facts out of evidence. *Colonies Partners, L.P. v. Cnty. of San Bernardino,* 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020). Ninth Circuit courts evaluate intent through several factors: (1) timing of the ESI loss; (2) method of deletion (*e.g.*, automatic vs. affirmative steps); (3) selective deletion of ESI; (4) deleting party's efforts to recover the ESI; and (5) institutional preservation policies.[23] *Lee*, 2025 WL 2505484, at *10. Here, these factors are satisfied. Defendants' intent to deprive is obvious.

<u>Timing of the Evidence's Loss</u>. Spoliation after notice of suit or a litigation hold indicates intent. *See, e.g.*, *Lee*, 2025 WL 2505484, at *11; *Fourth Dimensions*, 2021 WL 5919821, at *10 (party destroyed records "shortly after receiving notice that [plaintiff] was prepared to file suit"). Here, Defendants disclosed that the Spoliators received litigation holds before the spoliation occurred—and that the Spoliators were subject to holds even before this litigation began.

<u>Method of Deletion</u>. Defendants' employees' affirmative actions spoliated likely relevant and responsive materials. For example, White deleted Instagram direct messages and deleted a full account. Part II.B.1; *Fast*, 340 F.R.D. at 340. Emanuel appears to have used ephemeral messaging on an undisclosed app and has not turned over his phone for collection. Part II.A.3; *These Ponies Are Miserable v. City of Los Angeles*, 2025 WL 3248690, at *7 (C.D. Cal. Nov. 7, 2025) (turning on ephemeral messaging evidenced intent to deprive). Long affirmatively changed her retention

---

[23] In addition, as noted in *Lee*, "a party may be found to have acted with a Rule 37(e)(2) intent to deprive where, among other things, 'the affirmative act causing the loss cannot be credibly explained as not involving bad faith.'" *Id.* (citation omitted).

1  settings from the default "Forever" to a "30-day" destruction, and she and Maynard manually

2  deleted texts as well. Part II.A.2 & 5.[24] Even Batchvarova's spoliation was the result of

3  Defendants' affirmative decision not to collect her ESI before she left their employ. Part II.A.6.

4      <u>Selective Deletion.</u> Defendants and Spoliators selectively deleted and preserved ESI; some

5  preserving ESI but not others evidences intent to deprive, particularly for important spoliators. *See,*

6  *e.g.*, *Armstrong v. Holmes*, 2024 WL 1345214, at *4 (D. Nev. Mar. 29, 2024); *Lee*, 2025 WL

7  2505484, at *14. Defendants also selectively collected and preserved some personal cellphones

8  (*e.g.*, Long, Maynard), but not others (*e.g.*, Batchvarova and Campbell).

9      Spoliators also took affirmative steps to destroy select communications: Maynard deleted

10  specific messages, internally and in fighter negotiations; Long chose a 30-day retention period for

11  her iPhone 11 texts but used the "Forever" setting on a later iPhone. White deleted all Instagram

12  private messages prior to at least July 3, 2020, and then again prior to at least November 14, 2024,

13  yet produced other Instagram messages; Emanuel chose ephemeral messaging for specific Signal

14  chats, but not necessarily all. *See Jones*, 95 F.4th at 735; *Armstrong*, 2024 WL 1345214, at *4;

15  *These Ponies Are Miserable*, 2025 WL 3248690, at *7.

16      <u>Efforts to recover the missing ESI</u>. Defendants' documented efforts to recover the ESI were

17  paltry, limited to an unsubstantiated claim to have looked for White's iPhone 11 Pro and requesting

18  Long's cell records from Verizon in January 2026. Defendants obstructed Plaintiffs' efforts to

19  obtain the lost ESI, refusing consent for subpoenas to cellphone carriers, coordinating with

20  Concerted Actors to obstruct subpoena compliance, and, even after the Court ordered a reasonable

21  production of chats, Defendants have delayed that production (including by not making rolling

22  productions). *Pannone*, 2025 WL 3096563, at *3; *Welter v. Hurt*, 2025 WL 1843263, at *9 (C.D.

23  Cal. Apr. 1, 2025) (failing to inform while still a "chance to recover, . . . support[s] the

---

24  [24] Automated deletion indicates "intent" when coupled with litigation misconduct. *In re Google

25  *Play Store Antitrust Litigation*, 664 F. Supp. 3d 981, 993 (N.D. Cal. 2023), found "intent" where
    Google took a "don't ask, don't tell" approach to setting auto-retention of chat messages after a

26  litigation hold but "falsely assured the Court" of its "appropriate steps to preserve all [relevant]
    evidence[,]" and employed a "dismissive attitude." *Id.* The court took issue with Google's months-

27  long concealment, and the resources the court had to expend to get to the truth, including several
    hearings, a two-day evidentiary proceeding, and countless hours reviewing voluminous briefs. *Id.*

28  at 993. Defendants here have behaved similarly.

17

1    inference that the deletion . . . was deliberate"); *Lee*, 2025 WL 2505484 at *14.

2        <u>Institutional Preservation Policies.</u> The presence of institutional policies is irrelevant

3    where, as here, the spoliator, "at best, failed to properly supervise [] to ensure that [the preservation

4    polies] were complied with, and, at worst, turned a blind eye to this lack of compliance." *See, e.g.*,

5    *Lee*, 2025 WL 2505484, at *16-17; *see also* Favro Decl. ¶¶35-46, 77-97 (Ex. 6). Either way,

6    impotent policies cannot negate the appropriate finding of intent to deprive here. *Id.*

7        <u>Litigation Misconduct.</u> Courts also look to a party's overall misconduct, finding that it

8    supports a finding of Rule 37(e)(2) intent where the party "affirmatively hid the destruction of the

9    Missing ESI on multiple occasions during the litigation." *Id.* at *17. District courts have ordered

10   dispositive sanctions after an intentional spoliation finding where the spoliator "intentionally

11   [sought] to avoid producing responsive documents and other ESI to Plaintiffs" with "deliberate

12   disobedience" of the court's Order that required, *inter alia*, disclosing ESI sources. *Facebook*,

13   2022 WL 2289067, at *8. Similarly, Defendants concealed their spoliation through events that

14   triggered an obligation to disclose it, including: (1) the June 2021 filing of the *Johnson* Complaint,

15   ECF 1; (2) Zuffa's May 2022 device collections; (3) Zuffa's 2023 effort to fast track *Johnson*

16   discovery to supplement the *Le* record, ECF No. 90; (4) the ESI Order misrepresenting

17   Defendants' "reasonable and good-faith steps to preserve";[25] (5) Defendants' 2025 custodian

18   proposals; (6) Defendants' 2025 device collections; and (7) Defendants' Device Disclosures. At

19   each point, Defendants did not disclose the spoliation—even though by the December 15, 2025

20   disclosures, Defendants had sufficient information to know of each of the Spoliators' misconduct.

21   Defendants instead dismissed the spoliation concerns out of hand as "unsubstantiated and

22   unwarranted" "mudslinging." *See* ECF 291 (Nov. 10, 2025). Defendants' rhetoric, like their

23   conduct, was designed to cover up the spoliation and ensure Plaintiffs would not discover it and

24   the Court would not address it. That reflects a clear intent to deprive Plaintiffs of the spoliated

25   materials pursuant to Fed. R. Civ. P. 37(e)(2). *Webster*, 386 F. Supp. 3d at 1367.

26   

---

27       [25] Defendants refused to stipulate, as Zuffa did in *Le*, to having taken steps to preserve ESI for
the entire period after the litigation hold went into place. *See Le v. Zuffa, LLC*, No. 15-cv-1045,
ECF 160 (D. Nev. Sept. 1, 2015). It appears that Defendants refusal to stipulate similarly was part

28   of their effort to conceal their spoliation.

Defendants' ongoing litigation misconduct, paltry "investigations," rampant deletion, impotent preservation policies, and custodians' disregard for those policies, all evidence intent to deprive. There is no question that Defendants were "on notice that documents were potentially relevant" and they "fail[ed] to take measures to preserve" and fought to "keep incriminating facts out of evidence." *Colonies Partners, L.P.*, 2020 WL 1496444, at *9 (citation modified). The Court should find Defendants acted with the intent to deprive and issue sanctions accordingly.

### 6.  The Spoliation Prejudices Plaintiffs and the Proposed Classes

The spoliated evidence substantially prejudices Plaintiffs and the proposed classes. "Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Collins v. Autozone, Inc.*, 2024 WL 1054684, at *6-7 (D. Nev. Mar. 11, 2024) (quoting *Fast*, 340 F.R.D. at 329). Failure to produce documents—as here—is alone sufficient to find prejudice. *See, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("Failing to produce documents as ordered is considered sufficient prejudice. Late tender is no excuse. The law also presumes prejudice from unreasonable delay." (citations omitted)); *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1147 (9th Cir. 2024) (similar).

The Spoliators include critical custodians, representing the top executive of each Defendant, multiple employees in the most relevant business group, and the executive charged with overseeing the UFC's business strategy. The destroyed ESI involved Defendants' principal communications method for business operations, and its loss cannot be replaced through other means—and if it could, the Concerted Actors have ensured mitigation is unavailable. The spoliated ESI prejudices Plaintiffs ability to present evidence on negotiations, including evidence of internal equity in negotiations, exertion of threats and coercion over fighters in contracting, competition (or lack thereof) with other promoters, proving Endeavor's continuing operation of the UFC after January 2023, and proving other matters evidenced in *Le*.

### B.  A Foundational Sanction Pursuant to Rule 37(b)(2) Is Appropriate

Defendants' violations of the Disclosure Orders warrant sanction. Specifically, Rule 37(b)(2) authorizes the Court to "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action." An appropriate sanction here is to find

19

the omitted devices and communications apps from Defendants' Device Disclosures have been spoliated with the intent to deprive Plaintiffs of their ESI provided Plaintiffs can show they were used for business (*e.g.*, Batchvarova's devices, Emanuel's post 2023 device and Signal). Defendants knew about the devices and apps in question[26] and their non-disclosure as to each is a "matter embraced" by the Orders. Establishing spoliation of these undisclosed devices and apps is an appropriate consequence tethered to the violation and will complement further sanctions here.

## C. Severe Sanctions Pursuant to Rules 37(b)(2), (c)(1) and (e)(2) Are Appropriate

Rules 37(b)(2), 37(c)(1) and 37(e)(2) authorize terminating sanctions, adverse inferences, and similar sanctions for (1) violations of Court Orders (37(b)(2), (2) withholding relevant discovery (Rule 37(c)(1)), and (3) intentional spoliation of ESI, Rule 37(e)(2). However, each provision requires consideration of different factors. Regardless, dispositive sanctions or at least a mandatory irrebuttable adverse inference instruction is appropriate based on the factors.

## D. Terminating Sanctions

Default is appropriate under Rules 37(b)(2), (c)(1) and (e)(2).[27] In *Jones*, a strikingly similar case,[28] the Ninth Circuit affirmed dismissal where the plaintiff destroyed texts for a

---

[26] These devices are Emanuel's cellphone(s) in use since January 2023, Batchvarova's devices from 2015 to 2024, White's and Long's omitted devices, and Campbell's -7084 devices. Even if the Court determines Campbell's -7084 device(s) and any White device first discovered in the drawer in February 2026 are not properly subject to this sanction because their imaging is in process, this sanction can be imposed as to the other devices. The relevant apps are White's X accounts, his Snapchat account, and Emanuel's Signal and X accounts. Plaintiffs flagged each of these apps to Defendants prior to the final disclosure as well.

[27] *See, e.g., Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1019 (D. Ariz. 2021), *aff'd*, 2024 WL 1672263 (9th Cir. Apr. 18, 2024) (dismissing case as a combined sanction under Rules 37(e)(2) and (b)(2)) "because Plaintiff has engaged in such extensive misconduct and deception, without any obvious contrition or awareness of the wrongfulness of his conduct, there is a serious risk that further proceedings will continue to be plagued by a 'pattern of deception and discovery abuse [which makes] it impossible for the district court to conduct a trial with any reasonable assurance that the truth would be available.'" (citation omitted)); *Swisher Hygiene Franchise Corp. v. Clawson*, 2018 WL 8642738, at *12 (D. Ariz. Oct. 15, 2018) (case dispositive sanctions where defendant destroyed relevant evidence and then submitted a false affidavit to conceal its spoliation); *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 377 (D. Or. 2017) (dismissal violations of Rule 37(b), (e) as well as "abusive litigation practices").

[28] The *Jones* Court relied on the facts that a) messages were "selectively deleted," b) a "screenshot of a message sent by a witness to Jones but missing from Jones' phone" contained relevant evidence, and c) Jones and a witness "obtained new phones" and destroyed old phones

significant portion of the Relevant Period with substantial circumstantial evidence of intent. *Id.* at

734. The Ninth Circuit upheld the court's rejection of less severe sanctions due to the "nature of

the spoliated ESI" and the spoliator's "repeated violations of court orders." *Id.* at 736.

Default may be ordered as a sanction after a finding of willfulness, bad faith, or fault

pursuant to Rules 37(b)(2) and (c)(1). *Facebook*, 2022 WL 2289067, at *8-13; *Twins Special Co.*,

2025 WL 1292528, at *10. There is ample evidence of Defendant's willfulness and bad faith (*e.g.*,

violations of Court Orders to conceal spoliation, Part II.C.2-3; withholding relevant discovery

through the disingenuous use of search terms, Part II.C.1). Rules 37(b)(2) and (c)(1) sanctions do

not necessarily consider the same factors.[29] Rule 37(c)(1) permits default where the disobedient

party withheld relevant discovery without substantial justification and that withholding prejudiced

the other party. The Court has already recognized Defendants' withholding relevant discovery as

part of their "ongoing pattern of discovery violations" "without justification or explanation," Nov.

20 Tr. at 59-61, causing prejudice, by withholding critical evidence such as negotiations of

"literally thousands of contracts." *Id.* at 61:1, *see also* Part II.X; Part IV.A.5.[30]

Rule 37(b)(2) authorizes default as a sanction after balancing four factors: (1) public's

interest in speedy resolution and the court's need to manage its dockets; (2) risk of prejudice to the

party seeking sanctions; (3) the public policy favoring disposition of cases on their merits; and (4)

efficacy of less drastic sanctions. *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills,*

---

during the litigation, all of which provided "ample circumstantial evidence that Jones intentionally destroyed a significant number of text messages and collaborated with others to do so." *Id.* at 735-36. The Court rejected Jones's counterargument that "her production of thousands of text messages negates the intent and prejudice elements of Rule 37(e)" because "production of some evidence does not excuse destruction of other relevant evidence." *Id.* at 736 (citation omitted).

[29] *Facebook*, 2022 WL 2289067, at *12, recognizes the lack of clarity as to the required showing for default under Rule 37(c)(1) vs. (b)(2). But Plaintiffs meet both showings.

[30] *Facebook* is directly on point, ordering default where defendants: (1) "intentionally withheld responsive documents"; (2) "applied the incorrect search parameters, resulting in the withholding of records"; (3) "failed to disclose relevant" ESI sources; and (4) "failed to produce files or records related to" one customer. 2022 WL 2289067, at *12. Defendants committed the same conduct.

21

482 F.3d 1091, 1094 (9th Cir. 2007).[31] The balance of these factors warrants default[32] because (1) Defendants' violations of Court Orders unduly delayed the proceedings, including forcing eleven hearings without meaningful discovery progress, and impeding a fair and timely resolution on the merits satisfies the first factor;[33] (2) Plaintiffs are prejudiced by the violations, including because Defendants have covered up the spoliation, *see supra* Part II.X; Part IV.A.6; and (3) lesser sanctions would not be effective because the threat of default has done nothing to change Defendants' behavior. *See also Lewis v. Ceasars Ent. Corp.,* 2019 WL 1571281 at *6-7 (D. Nev. Apr. 11, 2019) ("long pattern of misconduct" amidst "repeated warnings that failing to comply with the Court's orders could result in the imposition of severe sanctions, up to and including case-dispositive sanctions," make anything less than default "insufficient"); *see also Panliant*, 2015 WL 5176586 (rejecting lesser sanction where defendant ignored court's warned-of sanctions).

**E. Adverse Inferences**

If the Court declines default, mandatory adverse inferences are appropriate,[34] and should be issued with additional sanctions under Rules 37(b)(2), (c)(1), and (e)(1), discussed *infra*. The requested inferences are set out in the attached Proposed Order. Defendants' conduct is at least as egregious as spoliators in other mandatory adverse inference cases and should result in similar sanctions. *See, e.g., RG Abrams Ins.*, 342 F.R.D. at 509, 512-14; *Zeiter*, 2024 WL 3028259, at *14.

**F. Sanctions are Also Appropriate Under Rules 37(b)(2), 37(c)(1), and 37(e)(1)**

Courts also award myriad appropriate, coordinated sanctions under Rules 37(b)(2), (c)(1),

---

[31] Factors (1) and (4) are less relevant because (1) usually weighs in favor of severe sanctions and (4) usually weighs against. *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *8 (N.D. Cal. Apr. 24, 2020); *see also Leon*, 464 F.3d at 961 (factor (4) insufficient to outweigh other factors). Factor (4) does not weigh against dispositive sanctions where, *as here*, the disobedient parties were evasive in discovery responses or their conduct prevents resolution on the merits. *See, e.g., Conn. Gen.*, 482 F.3d at 1097; *$40,200.00 in U.S. Currency*, 2015 WL 4276205, at *8.
[32] *See Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (approving dismissal where at least four factors support dismissal or at least three factors strongly support dismissal).
[33] *See, e.g., Lewis*, 2019 WL 1571281, at *5 (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)); *Fernandez v. Cox*, 2016 WL 8710431, at *3 (D. Nev. Sept. 2, 2016); *Phenylpropanolamine (PPA) Prods.*, 460 F.3d at 1227. ; *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).
[34] Adverse inferences against spoliators are routine. *See, e.g., RG Abrams Ins.*, 342 F.R.D. at 509, 512-14; *Zeiter v. Walmart Inc.*, 2024 WL 3028259, at *14 (D. Nev. June 17, 2024).

and (e)(1) and (2).[35] *See, e.g., Youngevity Int'l v. Smith*, 2020 WL 7048687, at *5 (S.D. Cal. July 28, 2020). Rules 37(b)(2) and (c)(1) provide for just orders to remedy misconduct within their purview, and thus, authorize the same or similar forms of sanctions. When ESI spoliation causes prejudice, the Court may employ measures "no greater than necessary to cure the prejudice" under Rule 37(e)(1). *Gregory v. Montana*, 118 F.4th 1069, 1078-79 (9th Cir. 2024). Appropriate sanctions include permitting Plaintiffs to present evidence and argument concerning the spoliation of ESI here; jury instructions relating to how the jury should interpret such evidence and argument;[36] and barring Defendants from making certain arguments, relying on specific evidence, and/or striking or barring specific defenses pursuant to Rule 37(b)(2), (c)(1), (e)(2), and, where such sanction does not preclude Defendants from asserting their central defense, Rule 37(e)(1).[37]

Specifically, as described in the Proposed Order, these sanctions include: (1) Precluding introduction of evidence that the UFC does not have a pay structure for fighters; (2) Precluding introduction of evidence that competition for fighter services increased after July 1, 2017; (3) Precluding introduction of any testimony from the Spoliators or documents collected from, written by them, or where the importance of such document(s) is based on the Spoliators having seen, approved, or otherwise used the document; (4) a jury instruction that documents from the *Le* relevant time period (2005 to 2017) shall carry a presumption that such materials reflect the current state of competition and the MMA industry, fighter negotiations, market power, and Defendants' business model, practices, and strategies, subject to Defendants' ability to rebut such evidence (but

---

[35] *See, e.g.*, 2015 Advisory Committee Notes to Fed. R. Civ. P. 37(e) ("In an appropriate case, … serious measures are necessary to cure prejudice …, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving jury instructions to assist in evaluation of such evidence or argument…."); Rule 37(b)(2) (enumerating possible sanctions); Rule 37(c)(1) (referring to Rule 37(b)(2) as options for appropriate sanctions).

[36] Courts routinely order such sanctions. *See, e.g., Vallen v. Albertson's LLC*, 2026 WL 207360, at *11 (D. Nev. Jan 26, 2026); *Hunt v. Assa Abloy Entrance Sys. US, Inc*., 2025 WL 2484182, at *1, 6 (D. Nev. Aug. 28, 2025); *Collins*, 2024 WL 1054684, at *6-7; *Lopez*, 2023 WL 3182658, at *6; *Nuvasive, Inc. v. Madsen Med., Inc*., 2016 WL 305096, at *2-3 (S.D. Cal. Jan. 26, 2016); *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *3-5 (N.D. Cal. May 23, 2016); *Sec. Alarm Fin. Enters., L.P. v. Alarm Prot. Tech., LLC*, 2016 WL 7115911, at *7 (D. Alaska Dec. 6, 2016); *Porter*, 2018 WL 4215602, at *3-5.

[37] *See, e.g., Collins*, 2024 WL 1054684, at *6-7; *Sec. Alarm Fin.*, 2016 WL 7115911, at *7.

23

1  not with evidence derived from the Spoliators), and; (5) Precluding Endeavor from arguing that its

2  operation of and control over the UFC changed after January 2023.

3        These sanctions are targeted at specific technical defenses and arguments that are either

4  unrelated to the merits of the underlying antitrust claim, restrict the types of evidence that can be

5  used on certain topics to which the spoliated materials would have likely been relevant (without

6  assessing whether the relevant spoliated materials are favorable or unfavorable to the spoliators),

7  and/or give greater weight to the remaining available evidence.

8        In addition, an appropriate sanction should include precluding Defendants from opposing

9  class certification on the grounds that any absent Class members signed an enforceable arbitration

10 agreement or class action waiver, in light of the prejudice relating to, *inter alia*, proof of market

11 power, withholding of negotiations etc. However, because *Cirkunovs v. Zuffa, LLC*, 25-cv-914 (D.

12 Nev.) has been stayed, Plaintiffs request that the Court defer ruling on such sanction.

13 **V.    CONCLUSION**

14       Plaintiffs respectfully request that the Court issue an Order finding (1) Defendants violated

15 the Court's Orders; (2) Defendants had an obligation to preserve the ESI that has been lost and

16 knew of that obligation; (3) Defendants failed to take reasonable steps to preserve that ESI; (4) the

17 ESI at issue cannot be restored or replaced; (5) the Concerted Actors' conduct concealed the ESI

18 spoliation; (6) Defendants' ESI spoliation was intended to deprive Plaintiffs of the spoliated ESI;

19 (7) Defendants' spoliation of ESI, violation of Orders, and discovery withholding prejudiced

20 Plaintiffs. Plaintiffs respectfully request that the Court order dispositive sanctions and/or the other

21 sanctions described herein. To the extent that the Court deems it appropriate to defer ruling on any

22 specific sanctions due to the potential for additional information to become available prior to the

23 close of discovery, Plaintiffs request that the Court defer deciding those sanctions until the close

24 of discovery. *See, e.g., Monarch Fire Prot. Dist. v. Freedom Consulting & Auditing Servs., Inc.*,

25 644 F.3d 633, 639 (8th Cir. 2011) (not abuse of discretion to defer considering sanction until trial).

26

27

28

1    Dated: February 25, 2026

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

By: */s/ Michael Dell'Angelo*
Eric L. Cramer (*Pro hac vice*)
Michael Dell'Angelo (*Pro hac vice*)
Patrick F. Madden (*Pro hac vice*)
Jeremy Gradwohl (*Pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bergermontague.com
Email: mdellangelo@bergermontague.com
Email: pmadden@bergermontague.com
Email: jgradwohl@bergermontague.com

Joshua P. Davis (*Pro hac vice*)
Robert Maysey (*Pro hac vice*)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bergermontague.com
Email: rmaysey@bergermontague.com

*Counsel for Plaintiffs and the Proposed Classes*

Richard A. Koffman (*Pro hac vice*)
Benjamin D. Brown (*Pro hac vice*)
Daniel H. Silverman (*Pro hac vice*)
Daniel Gifford (*Pro hac vice*)
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York Ave., N.W.
Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com
Email: dgifford@cohenmilstein.com

Joseph R. Saveri (*Pro hac vice*)
Christopher Young (*Pro hac vice*)
Kevin E. Rayhill (*Pro hac vice*)
Itak Moradi (*Pro hac vice*)
JOSEPH SAVERI LAW FIRM, LLP
601 California St., Suite 1505
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Email: jsaveri@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: imoradi@saverilawfirm.com

25

W. Joseph Bruckner (*Pro hac vice*)
Brian D. Clark (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Phone: (612) 596-4001
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle J. Pozan (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Phone: (612) 339-6900
Email: kjpozan@locklaw.com

*Additional Counsel for Plaintiffs and the Proposed
Classes*

Michael J. Gayan
CLAGGETT & SYKES
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107
(702) 323-7777
mike@claggettlaw.com

*Liaison Counsel for Plaintiffs and the Proposed
Classes*