# EXHIBIT 20
# PUBLIC/REDACTED VERSION

**DECLARATION OF VERONICA PEREZ**

I, Veronica Perez, declare:

1. I make this declaration based on my own personal knowledge or based on information and belief where stated and can and would testify to the same if required to do so in a court of law.

2. I am a Senior Computer Forensics examiner with Setec Investigations, a division of Setec Security Technologies, Inc., which specializes in the discovery, collection, investigation, and production of electronic information for investigating and handling computer-related crimes and misuse. I hold multiple cell phone specific certifications from various cell phone vendors, including Teel Technologies, Cellebrite and the Department of Justice State of California. I serve as a Mobile Forensic Instructor for the Department of Justice State of California Advance Training Center and Cellebrite. I was a Mobile Forensics Instructor for Teel Technologies for 11 years. I also worked with Deploy360 and Amentum as a contractor for the DOD for deployed missions and I currently have active Top Secret/Secret Clerance. I have assisted in reorganizing the current training curriculum for all Forensic Examiners that would be deployed along with providing assistance to the examiners that were deployed. I have assisted on several cases when another examiner is deployed by being able to remotely guide them in acquiring the device and provide step-by-step instructions. I provide one-on one instruction when needed to fellow co-workers in advance cell phone forensic techniques when struggles arrive with the commercial forensic tools.

3. As a member of the Los Angeles School Police Department from 2001 to 2007 and the West Covina Police Department from 2007 to 2016, I have over 10 years of Law Enforcement training, experience, and involvement in the proper methods of evidence custody, documentation, and forensic analysis in a manner that will withstand close scrutiny. My curriculum vitae is attached as Exhibit A.

4. Setec Investigations regularly participates in and leads computer forensic investigations and electronic discovery efforts to facilitate the discovery of electronic evidence

DECLARATION OF VERONICA PEREZ

1 in support of criminal and civil lawsuits. Setec Investigations is regularly designated as an expert and our team of computer forensic and electronic discovery specialists frequently provides expert witness testimony.

5. Berger Montague retained Setec Investigations in February 2025 for assistance with digital forensics as it pertains to the matter *Kajan Johnson, et al v Zuffa LLC, et al.*

6. Within the Digital Forensics industry, court-admissible methodologies are recognized and widely employed. A forensic extraction of the device must be conducted, properly documented, and reflected in the final report, which should detail the events related to the aforementioned items. An equivalent comprehensive framework used in the digital forensics field is provided by SWGDE (Scientific Working Group on Digital Evidence) in their Best Practices for Mobile Phone Forensics.

7. In reviewing "███████████████," attached to Defendants' Supplemental Submission in Connection with February 4 and 5, 2026 Hearing, I note that all mobile devices collected ███████████████ but Exhibit 1 did not document the user's Apple ID associated with the accounts. Documenting the Apple ID assists the forensic examiner in identifying ownership to the device and can be used for further investigation to see if the user has iCloud backups in their account.

8. Part of the documentation process is to identify the user associated with the device. Within Apple's ecosystem, users are required to set up their i-Device with an email address that serves as their Apple ID. This Apple ID functions as a form of authentication for Apple's website and various services. A key service tied to the Apple ID is the ability to sign in to iMessage and FaceTime, which are core built-in communication protocols within Apple's ecosystem. The Apple ID also facilitates syncing and backing up data across other Apple devices via iCloud

9. The ███████████████ listing further reflects that all but two of the May 2022 collections list ███████████████████████████████ The other two (Dana White and Reed Harris) used ████████.

-2-

DECLARATION OF VERONICA PEREZ

10. An iTunes backup may be used as a logical forensic image under specific conditions. If employed, the backup should be encrypted to enable extraction of sensitive data, such as call logs and keychains. A keychain may pertain to Apple-native applications or third-party applications. If an iTunes backup is created, a clean installation of iTunes should be used to minimize the risk of file modification. An iTunes backup should be considered a last-resort option.

11. Note that the iTunes backup has limitations. It may not capture system files that are relevant to the device and user. Some of the files that may not be extracted are keychains, application data that is housed in the secure enclave. It also may fail to include crucial information stored in cloud services, third-party applications, and secure enclaves. For example, data stored in cloud-based messaging apps may not be captured, potentially concealing critical conversations or exchanges. Similarly, data from secure enclaves may be inaccessible.

12. iTunes backups are susceptible to tampering. The ease with which data can be added, removed, or modified within an iTunes backup raises concerns about the integrity of the evidence. The lack of robust security measures makes them vulnerable to unauthorized access and manipulation, and data within an iTunes backup can be intentionally altered or deleted. To preserve evidentiary integrity, digital forensic software should be used to create the image, ensuring that documentation of all files is preserved with a hash value (a digital fingerprint that uniquely identifies each file). Without this type of documentation from forensic software, an iTunes backup remains vulnerable to modification and manipulation.

13. iTunes Backups (and Cellebrite) report the installed applications, making it readily apparent to the collections agent whether all apps have been extracted (and which apps have not been) based on a post-extraction manual review or "hand-scroll" of the device.

14. Following an extraction, additional value is obtained regarding the user's relationship with Apple iCloud services. The extraction can reveal:

- When the user last created a cloud backup

-3-

DECLARATION OF VERONICA PEREZ

- Whether messages are being synced to iCloud
- Data sharing across other Apple ecosystem platforms
- How the device was initially set up, including whether data was transferred via iTunes Backup, iCloud Backup, device-to-device transfer, or a new device setup.

These details contribute to a fuller understanding of the user's configuration and data synchronization practices.

15. Apple maintains a message retention policy that determines how long messages are stored on a device. By default, when a user sets up a new device, the message retention setting is configured to "Forever," meaning messages remain on the device unless the user manually deletes them. If a user prefers not to retain messages indefinitely, they must manually change the setting in the device's preferences from "Forever" to either "1 Year" or "30 Days." If the user manually changes the setting from "Forever" to either "1 Year" or "30 Days," all messages prior to that retention period will be deleted and unrecoverable, even if the user manually changes the setting back to "Forever."

16. If the "Messages in iCloud" feature is enabled, deleting a message from one device will also delete it from all other devices associated with the same Apple ID, ensuring synchronization across the user's ecosystem. Additionally, when this feature is enabled, messages aren't backed up to iCloud Backup; instead, they are stored in the user's Sync folder.

17. A forensic examiner can gain insight into a user's message deletion activity by analyzing the *sms.db* database. This database maintains an incremental record number for each message entry that is created. Once a record number has been assigned, it is not reused, even if the associated message is later deleted. For example, if the *sms.db* reflects records beginning at 301 and continuing sequentially (e.g., 301, 302, etc.), the examiner can reasonably infer that records 1 through 300 previously existed and were deleted. This type of analysis can help identify potential message removal activity on the device.

18. When conducting a forensic extraction, reviewing the installed applications is essential to determine which communication platforms are in use on the device. After the

1  acquisition is completed, performing a manual review (or "hand scroll") of the device is
2  recommended to verify that relevant data has been successfully extracted. If certain chat data
3  was not captured during the initial extraction, alternative collection methods may be necessary,
4  such as utilizing the chat capture feature within Cellebrite Inseyets UFED. Reviewing the data
5  can also be essential to identify not only if the application was collected, but if the forensic
6  software was able to parse (decode) the application. If in fact this is the case, a manual decoding
7  of the database is necessary.

8      19.    After forensic acquisition, mounting the data in Cellebrite Inseyets Physical
9  Analyzer allows examiner to view decoded data. The software will detect what applications
10 exist on the device and whether each application has a cloud connection. For example, it may
11 indicate that the device does not have the login credential keys needed to access the cloud for
12 extraction, and that the examiner must obtain a username and password from the user to gain
13 access to the cloud.

14     20.    During forensic analysis of the extraction, the mobile device preserves extensive
15 user activity logs. These logs record when an application is used, the duration of use, and the
16 volume of traffic generated by each application, among other details. The log files are separate
17 from the applications themselves and are stored on the device.

18     21.    In reviewing ▮▮▮▮▮▮▮▮▮▮, it is unclear whether the forensic company
19 chose to encrypt the ▮▮▮▮▮▮▮▮ for these collections. In my experience, if a backup is
20 encrypted, the backup password would appear in the collection document. The absence of this
21 information suggests the collections were not encrypted. ▮▮▮▮▮▮▮▮▮▮
22 collections typically yield less data than encrypted backups. For example, ▮▮▮▮▮▮
23 ▮▮▮▮ may not include "footprints" of deleted messages that identify instances within collected
24 threads of manually deleted messages.

25     22.    In reviewing Defendants' December 15, 2025 Device Disclosure, Dana White's
26 iPhone 11 Pro device was collected on May 20, 2022, this collection yielded 16,933 Daily Chat
27 Threads from July 3, 2020 to May 20, 2022. Comparing this collection to ▮▮▮▮▮▮▮▮,

1  ███████████████████████████████, and ██████████████████████████████████████.
2  In reviewing "████████████████," attached to Defendants' Supplemental Submission in
3  Connection with February 4 and 5, 2026 Hearing, I noted that on August 19, 2025 White's
4  iPhone 16 Pro was collected and a ████████████████████████████████████████. The
5  device yielded 452 Daily Chat Threads from November 14, 2024 to August 19, 2025. Based on
6  my experience, message volume on a device typically increases over time, not decreases. The
7  ████████████████ did not provide sufficient information to ascertain why the volume of
8  messages collected decreased at such a substantial rate. Such decrease is consistent with
9  circumstances where a user commenced using alternative, uncollected communications apps
10 and/or deleted messages.

11      23.    I have also reviewed several text message threads produced by the Defendants
12 involving Mick Maynard (UFC-04754249, UFC-04753215, UFC-04744677) and WhatsApp
13 chats provided to me by Plaintiffs' counsel, also involving Mick Maynard
14 (JOHNSONPLTFF_BRAZIL000245, JOHNSONPLTFF_BRAZIL000249,
15 JOHNSONPLTFF_BRAZIL000257-58, JOHNSONPLTFF_BRAZIL000271,
16 JOHNSONPLTFF_BRAZIL000280, and JOHNSONPLTFF_BRAZIL000282). Each of these
17 text message threads produced by Defendants includes a "████████████" following a blank
18 text from the phone number ending -5043 that I understand belongs to Mick Maynard, that states
19 "██████████████████████." Each of the pages of the WhatsApp chats include one or more
20 messages from Maynard stating "Mensagem apagada," which I understand to be Portugese for
21 "Deleted message" (based on Google's translation service). Based on my experience, these
22 documents reflect manual deletion of specific text messages by Mick Maynard.

23      24.    Further, the ████████████████ document includes a vague notation that
24 Maynard's collection was ████████████████. ███████ collections would not necessarily
25 capture footprints or other indicators of this type of manual deletion. Therefore, the prevalence of
26 these deletions may be more pervasive than currently known, and requires a physical forensic
27 collection to investigate.
28

-6-

DECLARATION OF VERONICA PEREZ

25. A review of the forensic collections and the *sms.db* file for each collection may reveal the existence, means (e.g., retention settings changes, manual deletion, etc.), and volume of deleted messages, depending on the specific extraction software and elections made by the collections vendor. Such review may also reveal whether particular apps were not collected and why. If such review and analyses are not possible from the extraction files originally created, but the devices are available and intact, a new collection and analysis should be performed to establish whether and to what extent messages were deleted and/or which apps were not collected.

26. The materials on which I relied in forming my opinions expressed herein are attached as Exhibit B.

I declare under the penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct, and that this declaration was executed on February 25, 2026, at Las Vegas, NV.

Veronica Perez

# EXHIBIT A



# Curriculum Vitae
## Veronica Perez
### Senior Computer Forensic Specialist

Veronica Perez holds multiple cell phone specific certifications from various cell phone vendors, including Teel Technologies, Cellebrite and the Department of Justice State of California. Ms. Perez serves as a Digital Forensic Instructor for the Department of Justice State of California Advance Training Center and Cellebrite. Ms. Perez was an Instructor with Teel Technologies for over 11 years.

Ms. Perez has worked with several DOD contracting companies and has been deployed overseas. Ms. Perez currently has an active Top Secret/Secret Clerance. Ms. Perez has assisted in reorganizing the current training curriculum for all Forensic Examiners that would be deployed along with providing assistance to the examiners that were deployed. Ms. Perez has assisted on several cases when another examiner is deployed by being able to remotely guide them in acquiring the device and provide step-by-step instructions.  Ms. Perez provides one-on one instruction when needed to fellow co-workers in advance cell phone forensic techniques when struggles arrive with the commercial forensic tools.

As a member of the Los Angeles School Police Department from 2001 to 2007 and the West Covina Police Department from 2007 to 2016, Ms. Perez brings over 10 years of Law Enforcement training, experience, and involvement in the proper methods of evidence custody, documentation, and forensic analysis in a manner that will withstand close scrutiny.

Ms. Perez is extensively experienced in the collection, examination, and analysis of digital forensics-related information, including both field and laboratory examinations surrounding the identification, preservation, retrieval, and analysis of electronic information in support of forensic investigations and ongoing litigations.

Ms. Perez has acted as a digital forensic investigator for private attorneys, law enforcement agencies, corporations, insurance companies, and private individuals. Ms. Perez's involvement in diverse investigations and litigations has spanned numerous areas, including:

- Fraud
- Theft of Intellectual Property
- Trade Secret Misappropriation
- Employee Disputes
- Patent Infringement
- Copyright Infringement

- Email & Internet Abuse
- Disputed Dismissals
- Software Code Review
- Breach of Contract
- Divorce & Family Law
- Asset Recovery
- Defamation
- Industrial Espionage

Ms. Perez has been designated as an Expert Witness in Digital Forensics for the Superior Court of California, Superior Court of Oklahoma, Superior Court of South Carolina and Federal Court of Chicago.

**PROFESSIONAL EXPERIENCE**

- Leads and participates on forensic investigations and electronic discovery activities as a skilled high-tech investigator and project manager, regularly focusing on corporate computer fraud and cybercrime investigations.
- Leverages a variety of cell phone forensic platforms, including, but not limited to, Cellebrite Inseyets Physical, Cellebrite Inseyets Logical, XRY, Oxygen, Axiom, GreyKey, HandcomHD, Elcomsoft, Paraban and Mobiledit to recover text messages, pictures, videos, audio files, emails, contacts, call histories, calendars, Internet history, and application activity, as well as other record types.
- Performs specialized analysis efforts on GPS enabled devices, such as cell phones, to recover track logs, trackpoints, waypoints, routes, stored location, recent addresses, and other location specific information.
- Performs specialized extractions and analysis on vehicle forensics techniques.
- Developed and programmed customized utilities for use in the processing of electronic data stored on cell phones and tablets, increasing the efficiency and effectiveness of forensic efforts.
- Provides litigation support advisory assistance to attorneys to advance forensic and electronic discovery efforts, satisfy discovery requests, and compel inspections.
- Acts as a forensic investigator for private attorneys, law enforcement agencies, corporations, insurance companies, and private individuals involved in diverse investigations and litigations spanning numerous areas, including, but not limited to: fraud, theft of intellectual property, trade secret misappropriation, email and internet abuse, employee disputes, sexual harassment, and breach of contract.

- Provides presentations on Digital Forensic collections, examinations and capabilities to many entities in the law enforcement, private sector and military environment.

**CERTIFICATIONS**

- High Technology & Computer Crime Investigations
  *California Department of Justice Advanced Training Center*          2002
- Cell Phone Forensics Investigations
  *California Department of Justice Advanced Training Center*          2010
- Department of Justice Advance Training Center
   *Instructor on Cell Phone Forensics/Investigations*          2012
- EnCase Certified Examiner (EnCE)
  *Guidance Software*          2009
- Paraben Certified Mobile Phone Examiner (CME)
  *Paraben Forensic Corporation*          2008

**SELECTION OF TRAININGS & ACCREDIDATIONS**

- High Technology & Computer Crime Investigations
  *California Department of Justice Advanced Training Center 2002*
- Investigation of Internet Crimes
  *California Department of Justice Advanced Training Center* 2003
- Computer Evidence Recovery & Analysis
  *California Department of Justice Advanced Training Center* 2003
- Advanced Computer Forensics for the Investigator
  *California Department of Justice Advanced Training Center* 2003
- Computer Forensic Tool-Specialized
  *California Department of Justice Advanced Training Center* 2004
- Protecting Victims of Child Prostitution
  *National Center for Missing & Exploited Children Jimmy Ryce Law Enforcement Training Center* 2004

- Crimes Against Children Conference Dallas Texas 2004
- Internet Investigations-Online

  *Federal Bureau of Investigations Innocent Images National Initiative-Calverton, Maryland* 2004
- Violent Crime Analysis

  *Federal Bureau of Investigations* 2004
- Digital Evidence Identification & Collection

  *Federal Bureau of Investigations* 2004
- Investigating Computer Crime Intrusions on Wireless Networks

  *Federal Bureau of Investigations* 2005
- Introduction to Cyber Crime

  *Federal Bureau of Investigations* 2005
- PC Forensics

  *California Department of Justice Advanced Training Center* 2007
- Computer Forensics Advanced Tools

  *California Department of Justice Advanced Training Center* 2006
- Handheld Forensics *Paraben* 2008
- EnCase Computer Forensics II *Guidance Software* 2008
- EnCase Advanced Computer Forensics *Guidance Software* 2008
- EnCase Advanced Internet Examinations *Guidance Software* 2008
- Cybercop 101 BDRA Computer Forensics *National White Collar Crime Center (NW3C)* 2009
- Cybercop 201 IDRA Computer Forensics

  *National White Collar Crime Center (NW3C)* 2009
- EnCase Network Intrusion Investigations G*uidance Software* 2009
- Computer Evidence Recovery & Analysis

  *California Department of Justice Advanced Training Center* 2009
- Advanced Computer Forensics for the Investigator

  *California Department of Justice Advanced Training Center* 2009
- Cell Phone Forensics Investigations *California Department of Justice Advanced Training*

*Center* 2010

- iPhone Forensics *Jonathon Zdziarski* 2010
- Mobile Spyware *Cellular Forensics, LLC* 2011
- Android Forensics *viaForensics* 2011
- Advanced Mobile Forensics *viaForensics* 2011
- Department of Justice Advance Training Center Instructor on Cell Phone Forensics/Investigations 2012
- Secure View Certificate of Completion 2012
- Computer Forensics-Macintosh/Linux
  *California Department of Justice Advanced Training Center* 2012
- Mobile Device Repair and JTAG Forensics *Teel Technologies* 2012
- Chip Off Forensics *Teel Technologies* 2013
- Cellebrite CCLO/CCPA 2014
- In-System Programming (ISP) *Teel Technologies* 2015
- Wrote Flasherbox/Bootloader class for *Teel Technologies* 2016
- Vehicle Investigations *Department of Justice* 2019
- Oxygen Forensics Bootcamp 2023
- iPadRehab MicroSoldering Repair 2024
- Advance Vehicle Forensics Investigations *Teel Technologies* 2024
- Embedded Hardware Analysis *Teel Technologies* 2024
- Hexordia Data Structures Course *Hexordia* - December 2025
- Cellebrite Certified Operator Certification (CCO) *Cellebrite* – February 2026

# EXHIBIT B

# EXHIBIT B

List of Materials Relied Upon:

- Exhibit 1 Collections, attached to Defendants' Supplemental Submission in Connection with February 4 and 5, 2026 Hearing;
- Exhibit 2 Case Log, attached to Defendants' Supplemental Submission in Connection with February 4 and 5, 2026 Hearing;
- Defendants' December 15, 2025 Device Disclosure
- UFC-04754249;
- UFC-04753215;
- UFC-04744677;
- Excerpts from a WhatsApp conversation between Mick Maynard and Marcelo Brigadeiro with the Bates numbers:
    - JOHNSONPLTFF_BRAZIL000245
    - JOHNSONPLTFF_BRAZIL000249
    - JOHNSONPLTFF_BRAZIL000257-58
    - JOHNSONPLTFF_BRAZIL000271
    - JOHNSONPLTFF_BRAZIL000280, and
    - JOHNSONPLTFF_BRAZIL000282