# EXHIBIT 40

EFiled: Dec 12 2025 09:26AM EST
Transaction ID 77981263
Case No. 2023-1166-JTL

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE WORLD WRESTLING ENTERTAINMENT, INC. MERGER LITIGATION | CONSOLIDATED<br>C.A. No. 2023-1166-JTL<br><br>PUBLIC [REDACTED]<br>VERSION AS FILED<br>ON DECEMBER 12, 2025 |

## PLAINTIFFS' MOTION TO COMPEL INFORMATION REGARDING DOCUMENT DELETION AND POTENTIAL SPOLIATION

Pursuant to Court of Chancery Rules 26 and 37, Plaintiffs move to compel the production of information necessary to evaluate the potential spoliation of evidence.[1]

### INTRODUCTION

1. This case challenges a conflicted transaction whereby WWE's controlling stockholder, Defendant Vincent K. McMahon, steered a sale of WWE to Endeavor (run by McMahon's long-time ally Ari Emanuel) in exchange for nonratable benefits, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉[2]

2. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉—communicated regarding the investigations, the Merger, and other relevant topics ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[1] Capitalized terms not defined herein have the same meaning as in the operative complaint (the "Complaint," Dkt. 1).

[2] *See* Plaintiffs' Motion to Modify Scheduling Order at 1-3 (Dkt. 225).

██████████████████████████████████████████████████████ Some of these key witnesses also ███████████████████████████████████████████████

████████████████████████████████████████████████████

3.      The record to date is opaque regarding the preservation of evidence in this case. McMahon and Khan made affirmative misrepresentations ██████

████████████████████████████████████████████████████████████████████████

████████████[3] ████████████████████████████████████████████████

████████████████████████████████████████████████████

4.      Plaintiffs have been pursuing these issues for months.  Now, at the end of the fact discovery window, despite significant attempts to reach resolution, Plaintiffs have reached an impasse with certain defendants and non-parties as described below.  Plaintiffs therefore move to compel the production of information needed to adequately assess the extent of the spoliation, the prejudice to Plaintiffs, and the available remedies.

---

[3] Ex. 1 (Defendant's Objections and Responses to Plaintiffs' First Request for Admission Directed to Defendant Vincent K. McMahon, Response to Request No. 1); Ex. 2 (Nick Khan's Responses and Objections to Plaintiffs' First Set of Requests for Admission, Responses to Requests for Admission Nos. 1-3); Ex. 3 (Nick Khan's Responses and Objections to Plaintiffs' Fourth Set of Interrogatories to Defendant Nick Khan, Responses to Interrogatories Nos. 142-152).

# FACTUAL BACKGROUND

## I. The Record Shows A Pre-Wired Process.

5. On March 30, April 11, and April 14, 2022, WWE directors and officers ███████████████████████████████████████████ ███████████████████████████████████[4] The outside directors retained counsel and began an investigation. On May 26, 2022, ████████████████████ ███████████████████████████████████████████[5] The WSJ published a series of articles beginning on June 15, 2022, and which frequently disclosed Board-level information in nearly real time. ████████████ ███████████████████████████████████████████ ████[6]

6. On June 21, 2022, McMahon, Stephanie McMahon Levesque, Khan, Blum, and other WWE executives ████████████████████████████ ████████████ It instructed them to ████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████[7]

---

[4] Ex. 4.

[5] Ex. 5.

[6] *E.g.*, Ex. 6 (McKenna Tr. 86:7-87:2, 265:3-269:18).

[7] Ex. 7.

7. By June 27, 2022, WWE management ███████████████████████████████████████████████████████[8] On July 22, 2022, McMahon's attorneys ████████████████████████████████████████████[9] The same day, McMahon resigned from his executive and directorial roles.[10] By then, the Board ████████████████████████████████████████████████[11]

8. Within hours of McMahon's resignation, ████████████████████████████████████████████████████████████████████████████████████████████████████████████[12] Emanuel, who had wanted to acquire WWE for years, began pre-wiring the deal with McMahon, others in management, and Jeff Sine (a senior banker at The Raine Group, an investment banking boutique ostensibly representing WWE but with deep ties to Endeavor and Emanuel).[13] In September 2022, ████████████████████████████████████████████████████████████

---

[8] Ex. 8.

[9] Ex. 9 (Speed Tr. 73:8-74:22).

[10] Ex. 10.

[11] Ex. 11 (McKenna Ex. 6).

[12] Ex. 12.

[13] Exs. 13-16.

███████ [14]

9. On July 25, 2022, the Company received a shareholder demand letter relating to the allegations against McMahon, and on October 27 the Board formed a demand committee.[15]

10. On December 13, ███████████████████████████████████████████████████████████████████████████████████████[16] On December 20, McMahon announced his intent to return to WWE as Executive Chair to conduct a strategic review.[17] A couple of weeks later, McMahon removed three directors, including those perceived as being the most antagonistic to him, and two more resigned.[18] He also sent the Board a letter saying he would block any strategic transaction, or a renegotiation of the Company's mission-critical media rights contracts, unless he ran the process in a director and executive capacity.[19]

11. On January 19, 2023, the Company ███████████████

---

[14] Exs. 17-18. ███████████████████████████████████████
█████████████████████████████████████████████████████
███████

[15] Exs. 19-20.
[16] Ex. 21.
[17] Ex. 22.
[18] Ex. 23.
[19] Ex. 24.



[21]

12. In the first quarter of 2023, McMahon and Raine ran a sham sale process. For example, despite ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[22] Both recognized that the process was slanted towards Endeavor.[23] Meanwhile, the outside directors ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[20] Ex. 25.

[21] *Id.*

[22] Ex. 26, Ex. 27 (▮▮▮▮▮▮ Tr. 156:4-157:7), Ex. 28.

[23] *E.g.*, Ex. 29.

██████[24]

13. The Merger was signed on April 2, 2023. The August 22, 2023 information statement does not include a single disclosure regarding the apparently extensive negotiations between and among McMahon, McMahon Levesque, Khan, Emanuel, Shapiro, and Sine that preceded McMahon's January 2023 return.[25] Nor does it disclose the fact that the financial advisor that was supposed to be working on behalf of WWE in the Merger ████████████████████████████████████████████████████████████████████████████[26]

14. On May 23, 2023, ████████████████████████████████████████████████████████████████████████████████████████████████[27] ████████████████████████████████████████████████████████████████████████████████████████[28] Defendants have not produced or identified any such written notifications, despite Plaintiffs' requests.

---

[24] Ex. 6 (McKenna Tr. 353:5-356:24).

[25] Ex. 30 (Pamon Ex. 42).

[26] *See supra* n.13 and accompanying text.

[27] Ex. 31.

[28] Ex. 31, Ex. 25, Ex. 7.

## II. ██████████████ Regarding The Transaction Was Likely Spoliated.

15. While the documentary and deposition record to date support the Complaint's allegations, ████████████████████████████████████ ████████████████

16. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████ For example, on February 28, 2023 (in the middle of the sale process), Khan had the following exchange with McMahon:[29]

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

On April 3, they had the following exchange:[30]

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

17. Earlier, in 2022, Khan and Stephanie McMahon Levesque exchanged

---

[29] Ex. 32.
[30] Ex. 33.

the following in a chain [31]



18.

[32] These surely included communications relating to core issues in this case, including the sale process.

---

[31] Ex. 34.

[32] Ex. 35 (McMahon Levesque Tr. 50:7-19).  Khan's deposition is set for December 17, 2025.

9

[33]

19. Worse, Plaintiffs have evidence of

[34]



20. Given the timing and that Emanuel was not an employee of the Company, it is inferable that



---

[33] *E.g.*, Ex. 35 (McMahon Levesque Tr. 48:14-50:6).

[34] Exs. 36-37.

██████████████████████████████████████████████████████[35]

21. Just days ago, Plaintiffs discovered from text messages ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████[36]

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

This text predates McMahon's return and announcement of a process. The referenced chain likely included important information regarding the process's manipulation. To the best of Plaintiffs' knowledge, no messages survive.

### III. Details of the Potential Spoliation Are Needed.

22. From the beginning of discovery, Plaintiffs sought information from Defendants, TKO, and Endeavor about off-channel communications. Counsel for those parties and non-parties assured Plaintiffs that they were inquiring into those forms of communication.

23. In May 2025, Plaintiffs identified documents ████████████████

████████████████████████████████████████ Plaintiffs promptly propounded requests for admission ("RFAs") on Khan and McMahon relating to their ████████████████████ In their responses to the

---

[35] Ex. 25, Ex. 31.

[36] Ex. 38.

RFAs, Khan and McMahon denied ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ during the Responsive Period.[37] Plaintiffs promptly followed up by email, pointing out the incongruency of the RFA responses to the documentary record and asking Khan and McMahon to revise their responses.[38] Both declined and doubled down, saying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[39]

24.  Plaintiffs continued to follow up. Plaintiffs also uncovered instances of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which they promptly raised. Defendants and TKO stopped responding to Plaintiffs' emails. Plaintiffs propounded more interrogatories on Khan.

25.  On October 31, 2025, McMahon produced a new set of documents obtained from an iPhone that the federal government had seized in July 2023 and returned to McMahon on October 1, 2025. That set of documents included clear evidence of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs raised those documents promptly to the D&O Defendants, TKO, Endeavor, and McMahon and, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[37] *See supra* n.3 & Exs 1-3.
[38] *Id.*
[39] Ex. 42 at 6.

[40] Plaintiffs also requested information regarding those individuals' ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ Plaintiffs were again met with silence from the D&O Defendants, TKO, and Endeavor.

26.    In the meantime, Khan's counsel asked for an extension on his responses to ▇▇▇▇▇▇▇ interrogatories from November 10 to 17. Plaintiffs did not agree to the extension, but Khan granted it to himself anyway. The responses Khan finally served on November 18, 2025 [41]

27.    McMahon provided some useful information by email on November 17, 2025 and amended certain interrogatory responses to incorporate that information on November 19, 2025. On December 3, 2025, the D&O Defendants ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that further heighten Plaintiffs' spoliation concerns.[42]

## ARGUMENT

28.    "A party in litigation or who has reason to anticipate litigation has an affirmative duty to preserve evidence that might be relevant to the issues in the

---

[40] Ex. 39 at 7.

[41] Ex. 40.

[42] See, e.g., Ex. 43 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

13

lawsuit."[43]  "[T]o satisfy their preservation duties, parties must investigate and disable autodelete functions," including for "text messages or other types of messaging applications," "if those accounts reasonably contain relevant information and it is reasonable under the circumstances of the case to do so."[44]

29.    "If ESI that should have been preserved in the reasonable anticipation of … imminent litigation is lost because a party failed to take reasonable steps to preserve it, and cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice … may order measures no greater than necessary to cure the prejudice; or (2) … may, among other things … presume that the lost information was unfavorable to the party…."[45]  Plaintiffs seek the discovery of sufficient information to present a full record to the Court under the Rule 37(e) standard.

30.    The record to date reveals ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ some of whom ostensibly negotiated the Merger at arm's length or advised on those negotiations. The incomplete picture Plaintiffs currently have of the ▮▮▮▮▮▮▮ raise questions

---

[43] *TR Invs., LLC v. Genger*, 2009 WL 4696062, at *17 (Del. Ch. Dec. 9, 2009) (quoting *Beard Rsch. v. Kates*, 981 A.2d 1175, 1185 (Del. Ch. May 29, 2009)).

[44] *Goldstein v. Denner*, 310 A.3d 548, 578 (Del. Ch. 2024).

[45] Del. R. Ct. Ch. 37(e).

about (i) whether the ███████████████████████████████████ were part of a strategy to put the Company into play, (ii) the extent to which *quid pro quos* or other coordinated behavior between the eventual counterparties infected the Merger process, and (iii) the extent to which that same behavior infected the Merger price, directly or indirectly. Having a full picture of the ████████████████████ ██████████ is critical to answering those questions.

31. "The obligation to preserve evidence 'runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'"[46] It appears that certain Defendants' and non-parties' counsel never sat down with the key witnesses, looked at the applications on their devices, did a thorough investigation of what communication channels were extant in 2022 and 2023, and disclosed the complete findings to Plaintiffs. Thus, Plaintiffs have limited visibility into who had Signal and WhatsApp downloaded at the time, who had communication channels open with whom at the time, what group chats existed, when such channels were created, who set auto deletion, and when.

32. In *In re Santander Consumer USA Holdings Inc. Stockholders*

---

[46] *Goldstein v. Denner*, 310 A.3d 548, 578 (Del. Ch. 2024) (citing *Orbit One Commc'ns., Inc. v. Numerex Corp.*, 271 F.R.D. 429, 437 (S.D.N.Y. 2010)).

*Litigation*,[47] a stockholder class action arising from a controller squeeze-out, the undersigned encountered a similar situation involving Signal use and auto-deletion.[48] Following negotiations, Plaintiffs' counsel gained access to the key witnesses' devices and took screenshots sufficient to disclose information regarding the messaging channels.[49] For example, the defendants produced images showing the names of certain group chats, who the members were, who the administrators were, when the chat was created, who set the chats to auto-delete messages, and when.[50]

33. Plaintiffs requested that information from the D&O Defendants, TKO, Endeavor, and McMahon by email on November 5, 2025, within days after receiving McMahon's October 31 production that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[51] All except McMahon have refused Plaintiffs' request to varying degrees. On a meet and confer call on November 20, counsel for the D&O Defendants and TKO stated vaguely that "relevant" information from the Responsive Period is lost or unavailable, but they did not provide (or agree to provide) screenshots of any

---

[47] Consol. C.A. No. 2022-0689-LWW (Del. Ch.).

[48] *See* 2022-0689-LWW, Trans. ID 73401868, at 1-2 (public version of Plaintiffs' opening brief in support of spoliation sanctions).

[49] *See id.* at 10-11 (referencing screenshots).

[50] *See* Ex. 44.

[51] Ex. 39 at 8-9.

16

custodian's Signal application or chats. In email correspondence over the next couple of weeks, the D&O Defendants and TKO trickled out some additional information, but still refused to provide the requested screenshots. In *Santander*, those screenshots were the only way for plaintiffs to obtain the necessary information—especially information about when Signal chats were created. That process should be followed here as well.[52]

## CONCLUSION

34. Plaintiffs ask the Court to enter their accompanying proposed order compelling Blum, Emanuel, Khan, and Levesque, under the direct supervision of their outside counsel, to provide the information Plaintiffs seek.

Dated: December 4, 2025

OF COUNSEL:

Edward G. Timlin
James Janison
**BERNSTEIN LITOWITZ**
 **BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
(212) 554-1400

**BERNSTEIN LITOWITZ**
 **BERGER & GROSSMANN LLP**

*/s/ Benjamin M. Potts*
Benjamin M. Potts (Bar No. 6007)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
(302) 364-3600
benjamin.potts@blbglaw.com

**WORDS: 2,982 (of 3,000 Word Limit)**

---

[52] Plaintiffs repeatedly expressed as an alternative that they would accept a chart in the form in the attached email chain, but Defendants (except for McMahon) refused. *See* Ex. 39 at 3, 5; Ex. 41.

Brian J. Robbins
Stephen J. Oddo
Richard N. Lozano
**ROBBINS LLP**
5060 Shoreham Place, Suite 300
San Diego, CA 92122
(619) 525-3990

Richard A. Maniskas
**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

Jason M. Leviton
Nathan Abelman
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600

**BLOCK & LEVITON LLP**
Kimberly A. Evans (Bar No. 5888)
Lindsay K. Faccenda (Bar No. 5772)
Irene R. Lax (Bar No. 6361)
Robert Erikson (Bar No. 7099)
222 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 499-3600
kimberly@blockleviton.com
lindsay@blockleviton.com
irene@blockleviton.com
robby@blockleviton.com

*Counsel for Plaintiffs*