# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Kajan Johnson, Clarence Dollaway, and Tristan Connelly, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>Zuffa, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,<br><br>　　　　　　　Defendants. | No.: 2:21-cv-01189-RFB<br><br>**JOINT STATUS REPORT CONCERNING SEARCH TERM NEGOTIATIONS** |
| Phil Davis, on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>Zuffa LLC, TKO Group Holdings, Inc. (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,<br><br>　　　　　　　Defendants. | No.: 2:25-cv-00946-RFB |

The Parties hereby submit a Joint Status Report concerning their ongoing negotiation of search terms pursuant to the Parties' commitment to the Court at the March 3, 2026 hearing. See Mar. 3, 2026 Hr'g Tr., ECF No. 466, at 65-66.

## I.      Plaintiffs' Position

Plaintiffs have worked for more than four months to craft an appropriate search term proposal with no cooperation from Defendants beyond provision of hit reports.

### A.  <u>Plaintiffs' Narrowing Efforts:</u>

Without visibility into any non-responsive documents Plaintiffs' search terms capture, Plaintiffs engaged in three narrowing phases that substantially reduced Defendants' review burden:

**<u>December 2025:</u>** During the expedited arbitration discovery efforts in *Cirkunovs*, Plaintiffs narrowed their proposal through approaches including identifying terms within complex search strings that combined to hit on an outsized number of irrelevant documents and correcting or narrowing those terms. Plaintiffs also requested a list of filetypes to eliminate from the corpus those filetypes that are unlikely to be responsive. Plaintiffs further eliminated common language terms relating to promoters and fighters that could not reasonably be narrowed.

**<u>January 2026:</u>** Plaintiffs incorporated their December 2025 efforts into their renewed effort to make an appropriate search term proposal for the case more broadly (beyond arbitration issues). Plaintiffs narrowed and/or eliminated search terms that generated a high volume of hits. Through these efforts, however, Plaintiffs were only able to reduce the review volume to 7 million documents. As a result, Plaintiffs requested a further opportunity to narrow in March 2026.

**<u>March 2026:</u>** In a final effort to reduce the review volume, Plaintiffs went through a rigorous process to limit the sources (*i.e.*, the employees/custodians) against which Plaintiffs' search terms would be run to limit non-responsive hits. Plaintiffs requested that Defendants run sets of terms against specific subsets of custodians to target the terms at those most likely to deal with or discuss the targeted matters. The specific subgroups include:

**The High-Level Fighter Strategy Group**. Plaintiffs proposed to apply the following types of terms (nearly 200 terms in all) to this group consisting of, (1) Dana White, (2) Hunter Campbell,

(3) Mick Maynard, (4) Sean Shelby, (5) Tracy Long, (6) Denitza Batchvarova, (7) Ari Emanuel, (8) Patrick Whitesell, and (9) Mark Shapiro, terms relating to:

- the highest-level fighters (*e.g.*, terms relating to UFC champions like Jon Jones, Rose Namajunas, Israel Adesanya, Conor McGregor, and key agents like Ali Abdelaziz),
- certain competitors with names that can be used in other contexts (*e.g.*, Glory), and
- key elements of the challenged conduct (*e.g.*, "Exclusive").

**The Matchmaking Group**. Plaintiffs propose that less significant fighter and agent name terms (nearly 400 terms in all) apply only to a narrower group responsible for fighter contracting, negotiations, and compensation, (1) White, (2) Campbell, (3) Maynard, (4) Shelby, and (5) Long.

**The Corporate Financial Group**. Plaintiffs proposed dozens of search strings relating to financial, corporate, and strategy issues (*e.g.*, loans, Confidential Information Memoranda, etc.) apply only to a group of executives across the three Defendants, (1) White, (2) Campbell, (3) Batchvarova, (4) Emanuel, (5) Whitesell, (6) Shapiro, (7) Ike Lawrence Epstein, (8) Andrew Schleimer, (9) David Avery, (10) Seth Zaslow, and (11) Jason Lublin.

**Market Power and Competition Group**. Plaintiffs proposed a few dozen search strings relating to competition and market power to be applied to the Corporate Financial Group, the Matchmaking Group, and Deborah Cook (who has responsibilities relating to data analyses).

Plaintiffs' final proposal (attached as Exhibit A), which limited the application of all the search terms/strings with the highest volume of hits and thereby substantially reduced the resulting hit counts, narrowed the corpus of documents Defendants must review by 49% to **5 million documents**, from the total collection of 9.68 million (51.7%). *See* Hit Report (Ex. B).

Despite the agreed process endorsed by the Court, just prior to Plaintiffs' final March 2026 search term proposal, Defendants announced their intent to make a counterproposal—which the Court invited them to do in December 2025 by providing it to Plaintiffs after Plaintiffs' second of three proposals, not after the final one. ECF No. 323 at 48-49, 61-62. That made sense because it would allow Plaintiffs to amend their final proposal by adopting agreed revisions. Defendants admitted their plan was to only cut Plaintiffs' final proposal,[1] without regard to the Rule 26(b)(1)

---

[1] Despite the Court's prior counterproposal instruction, Defendants refused to provide their counter prior to Plaintiffs' final proposal so Plaintiffs could adopt reasonable proposals therein.

proportionality factors as applied to the collection. Defendants' outcome determinative counterproposal seeks only to limit the hit volume, not exclude non-responsive hits while preserving responsive ones. That is *per se* inappropriate.

Three days after Plaintiffs' final proposal, Defendants emailed their counterproposal stating, without substantiation, Plaintiffs' proposal is "not proportional." *See* Ex. C. Defendants make no effort to demonstrate that a sufficient number of non-responsive hits to warrant narrowing terms. Instead, Defendants just cite the overall volume of hits for specific terms. But it is not surprising that terms like "Ali," "Jones," and "Exclusive" yield numerous hits;[2] "Ali" Abdelaziz is a prominent agent who communicates directly with the Matchmaking Group and was on Zuffa's trial list, and the "Ali" Act is federal boxing legislation that relates to the challenged conduct; Jon "Jones" is a UFC champion at the center of various challenged conduct elements, and; Defendants' "Exclusive" dealing with over a thousand fighters is at the core of this case. Notably, Plaintiffs do not propose to apply any of those broadly to all custodians; instead, each is only applied to the High-Level Fighter Strategy Group. Defendants do not demonstrate Plaintiffs' proposal generates a disproportionate volume of non-responsive hits given the substantial damages at issue.

Defendants' counterproposal wholesale ***deletes*** fighter and agent names and many other key terms Plaintiffs diligently worked to narrow and target and seeks to narrow other terms. Defendants' last-minute counterproposal should be rejected because it does nothing more than cleave off thousands of Plaintiffs' terms without capturing the responsive documents they hit.

Defendants also note that they are still "actively collecting" from the additional 30 custodians (a process the Court Order Defendants' complete by March 21) which will increase the review volume. Yet, Plaintiffs had already proposed to negotiate the scope of those custodians and the productions from them. Plaintiffs' proposal does not apply to these new custodians. Had Defendants abided by their discovery obligations in accordance with the Court-Ordered schedule, that could have been done. But Defendnats should not benefit from their misconduct and delay.

---

[2] The claim that terms hit over 600,000 documents is significantly overstated because it double counts hits, counting all hits individually without subtracting multiple hits on a single document.

3

Plaintiffs worked diligently to craft a reasonable proposal without significant cooperation. Defendants' gamesmanship and misrepresentations about hit counts should be rejected. While Plaintiffs will continue to meet and confer, if those efforts fail, Plaintiffs' proposal is reasonable, proportional, reflects substantial compromise, and should be applied.

## II.    Defendants' Position[3]

### A.    Search Term Hit Reports

On January 21, 2026, Plaintiffs provided their "final" search term proposal, which yielded **7,071,152** documents. Dkt. No. 386-8.  Due to the outsized burden, the Court ordered Plaintiffs' to provide Defendants a search term with "a modified approach that reduces the burden as it relates to the amount of documents" by March 3, 2026.  Dkt. No. 431 (Hr'g Tr. at 74:8–33.).

During the March 3, 2026 Hearing, Defendants agreed to provide Plaintiffs with three different hit reports applying Plaintiffs' modified, general search terms. Defendants complied and applied Plaintiffs' "general" search terms across 35 individual custodians.  Despite the modifications, Plaintiffs' most recent set of search terms still yields **5,002,660** documents, inclusive of families, for Defendants' review.  Plaintiffs' search term demand continues to suffer from the same systemic issues raised during the January 6, 2026, Joint Status Conference, including running almost 4,000 search strings across 35 individual custodians (including custodial emails, Microsoft Teams, storage drives, and non-chat mobile files) over a period spanning more than a decade (July 1, 2015 through January 7, 2026).  In addition to being unreasonable in sheer scope, Plaintiffs' search terms are overly broad, including popular first and last names (*e.g.* Jones, Carlos), common words (*e.g.* exclusive, legacy, signal, ice), and industry words without any meaningful limiters (*e.g.* M1, Elite, AAA).  Additionally, Plaintiffs' search terms target potentially privileged documents without any limiters demonstrating relevance (*e.g.* FTC, Civil Investigative Demand, DOJ).  Indiscriminate terms such as a company's name or its product name are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of

---

[3] Quinn Emanuel anticipates appearing as counsel for Endeavor soon, and has begun discussing these issues with Plaintiffs as it relates to Endeavor, and will continue to do so in good faith.

4

overproduction. *See Cannata v. Wyndham Worldwide Corp.*, 2012 WL 528224, at \*4–5 (D. Nev. Feb. 17, 2012); *Andersen v. Stability AI Ltd.*, 2025 WL 870358, at \*6 (N.D. Cal. Mar. 19, 2025).

Despite Defendants providing multiple hit reports, Plaintiffs refuse to meaningfully tailor their nearly 4,000 search terms (which, again, yield over five million documents) to terms that would actually yield relevant, proportionate results.  Take, for example, Plaintiffs' proposed search term "exclusive," which alone hits on **251,124** documents (ballooning to **381,070** when including families).  As another example,  Plaintiffs' proposed terms "Jones," "Hernandez," and "Ali"—all common names—together total **607,432** hits, inclusive of families.  Plaintiffs contend that limiting approximately 700 of their nearly 4,000 proposed search terms to specific custodians constitutes a reasonable culling exercise.  But this characterization is misleading. These so-called "limited" terms were not substantively revised and suffer from the same deficiencies discussed above.  Moreover, over 3,000 search terms would still be run across all 35 custodians without restriction.  Throughout the entire negotiation process, Plaintiffs only proposed revisions to less than 10 terms and only offered to remove approximately 20.  Far from targeting relevant materials, Plaintiffs' proposal is more akin to a fishing expedition with little regard to proportionality concerns.

To streamline discovery and limit searches to potentially relevant materials, on March 23, 2026, Defendants provided Plaintiffs with a revised set of search terms derived from Plaintiffs' proposed terms.  In its counterproposal, Defendants narrowed connectors (modifying AND to limiters), and removed first names and common words to help target relevant materials.  Defendants' counterproposal yields 1,324,509 inclusive of families.[4]

To date, Plaintiffs have not engaged with Defendants' counterproposal.  Instead, Plaintiffs insist that in order to revise their terms, Defendants must first conduct a detailed, document-level review to prove that certain terms are overbroad, defeating the purpose of negotiating search terms in the first place. Ultimately, this exercise is superfluous when the overbreadth of Plaintiffs' proposed terms is self-evident, as explained above.

---

[4] This is in addition to the over 1.2 million documents Defendants have already produced in this litigation.

It is important to note that Plaintiffs' proposed document universe of 5,002,660 does not account for Plaintiffs' proposed **additional 30 custodians**.  Although the Parties are negotiating the final scope of these additional custodians, Defendants are actively collecting from the proposed custodians' emails, Microsoft Teams messages, storage drives, and non-chat mobile files.  And because the requested time period spans more than a decade, Defendants anticipate that the volume of additional documents will be substantial and will significantly increase the already-massive universe of documents to be reviewed and produced in this matter.

Plaintiffs should be required to engage in good faith negotiations to limit search terms to only those that are reasonably likely to return relevant materials.

JOINT STATUS REPORT CONCERNING SEARCH TERM NEGOTIATIONS    CASE NOS.  2:21-CV-01189-RFB-BNW; 2:25-CV-00946-RFB

Dated: March 26, 2026

Respectfully Submitted,

By: */s/ Patrick F. Madden*

Eric L. Cramer (*Pro hac vice*)
Michael Dell'Angelo (*Pro hac vice*)
Patrick F. Madden (*Pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bergermontague.com
Email: mdellangelo@bergermontague.com
Email: pmadden@bergermontague.com

Joshua P. Davis (*Pro hac vice*)
Robert Maysey (*Pro hac vice)*
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bergermontague.com
Email: rmaysey@bergermontague.com

*Counsel for Plaintiffs and the Proposed Classes*

Richard A. Koffman (*Pro hac vice*)
Benjamin D. Brown (*Pro hac vice*)
Daniel H. Silverman (*Pro hac vice*)
Daniel Gifford (*Pro hac vice)*
COHEN MILSTEIN SELLERS
 & TOLL PLLC
1100 New York Ave., N.W.
Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com
Email: dgifford@cohenmilstein.com

By: */s/ Aaron T. Chiu*

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8095

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON(*Pro hac vice*)
laura.washington@lw.com
JOSEPH AXELRAD (*Pro hac vice*)
joseph.axelrad@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@DIRLLP.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@DIRLLP.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

Joseph R. Saveri (*Pro hac vice*)
Christopher Young (*Pro hac vice*)
Kevin E. Rayhill (P*ro hac vice*)
Itak Moradi (*Pro hac vice)*
SAVERI LAW FIRM LLP
550 California St., Suite 910
San Francisco, CA 94104
Telephone: +1 (415) 500-6800
Email: jsaveri@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: imoradi@saverilawfirm.com

W. Joseph Bruckner (*Pro hac vice*)
Brian D. Clark (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Phone: (612) 596-4001
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle J. Pozan (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Phone: (612) 339-6900
Email: kjpozan@locklaw.com

*Additional Counsel for Plaintiffs and the
Proposed Classes*

Michael J. Gayan
CLAGGETT & SYKES
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107
(702) 323-7777
mike@claggettlaw.com

*Liaison Counsel for Plaintiffs and the
Proposed Classes*

MAAREN A. SHAH (*Pro hac vice*)
maarenshah@quinnemanuel.com
ELLISON WARD MERKEL
(*Pro hac vice*)
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

*Attorneys for Defendant Endeavor Group
Holdings, Inc.*

JOINT STATUS REPORT CONCERNING SEARCH TERM NEGOTIATIONS    CASE NOS. 2:21-CV-01189-RFB-BNW; 2:25-CV-00946-RFB