Joseph R. Saveri (*Pro Hac Vice*)
Christopher K.L. Young (*Pro Hac Vice*)
Kevin E. Rayhill (*Pro Hac Vice*)
Itak Moradi (*Pro Hac Vice*)
T. Brent Jordan (*Pro Hac Vice*)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile:  (415) 315-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
krayhill@saverilawfirm.com
imoradi@saverilawfirm.com
tbjordan@saverilawfirm.com

*Counsel for Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>    v.<br><br>Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.,<br><br>           Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES AS TO DOMINANCE MMA PER COURT ORDER ECF NO. 471** |

# TABLE OF CONTENTS

I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................................................1

    A.    The Court's First Order Granting Plaintiffs' Motion to Compel Dominance's Subpoena Compliance ................................................................................................1

    B.    Dominance's Failure to Comply with the Court Orders Governing Subpoena Compliance ...........................................................................................................2

    C.    The Court Issued a Third Order After Hearing Plaintiffs' OSC Application .................3

    D.    Dominance Appears Inclined to Continue to Violate Court Orders.............................4

II.   LEGAL STANDARD .......................................................................................................6

III.  ARGUMENT ..................................................................................................................7

    A.    Counsel Expended Reasonable Hours .......................................................................7

    B.    Counsel's Rates are Reasonable................................................................................8

IV.   CONCLUSION................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Davis*, 318 F.3d 965 (9th Cir. 2003) ..........................................................7

*Beverly v. Interior Elec. Inc. Nevada*, No. 21-55645, 2023 WL 355692 (9th Cir. Jan. 23, 2023) ...........................................................................................................................6

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir. 2000) ..................................................6

*Hefler v. Wells Fargo & Co.*, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................8

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .....................................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 3:15-md-02672-CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)......................8

*Kerr v. Screen Extras Guild, Inc.*, 525 F.2d 67 (9th Cir. 1975)........................................6

*Kiva Health Brands LLC v. GoodVitamin Foods Pvt. Ltd.*, 2023 WL 3984685 (D. Haw. May 19, 2023)..............................................................................................................8

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039 (9th Cir. 2008) ......6

*Le v. Zuffa, LLC*, 2:15-cv-01045-RFB-BNW (D. Nev. Mar. 3, 2025)  .........................9

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) .......................................6, 7

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986).......6

*Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041 (9th Cir. 2000) ......................6

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly ("Plaintiffs") bring this Motion for Attorneys' Fees against third party Dominance MMA, LLC ("Dominance"). ECF No. 471.

## I.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

As the Court stated at the March 3, 2026 contempt hearing, this Court "intends to award reasonable costs, and fees, to Plaintiffs based on Dominance's failure to comply with their own discovery obligations, as well as this Court's prior orders." ECF No. 471 (Minutes of Proceedings re March 3, 2026 Order to Show Cause Hearing); *see also* ECF No. 427 (Application for an Order to Show Cause Why Dominance Should Not be Held in Contempt). The Court's March 9 Minutes of Proceedings constituted the Third Court Order issued by this Court regarding Dominance's failure to comply with its discovery obligations. Plaintiffs duly served Dominance with a Rule 45 subpoena in January 2025. Over the 14 months since, Plaintiffs have been forced to expend hundreds of hours and significant out of pocket expense in obtaining compliance. To date, Dominance has yet to comply at all. By this Motion, Plaintiffs seek only a fraction of the time and expense incurred to obtain Dominance's compliance.

The "prior orders" referenced by the Court at the March 3 hearing were both issued in connection with Plaintiffs' previously granted motion to compel Dominance's compliance with Plaintiffs' Subpoena. *See* ECF No. 245 (Order Granting Plaintiffs' Motion to Compel) ("First Court Order"); ECF No. 278 (Joint Scheduling Order Entered) ("Second Court Order"). Plaintiffs now bring this Motion with respect to *three* Orders relating to Dominance's failure to fulfill its discovery obligations.

The events leading up to the First and Second Orders, as well as what has transpired since the Third Order, are summarized below. A full record is contained in the numerous filings on this issue and the transcripts of the Court hearings on the matter.

### A.   The Court's First Order Granting Plaintiffs' Motion to Compel Dominance's Subpoena Compliance

On January 9, 2025, Plaintiffs served Dominance with a subpoena requesting twelve categories of documents related to the third-party sports agency's management and representation of

UFC MMA fighters. After months of unsuccessful negotiations—during which Plaintiffs withdrew four of the twelve requests—Plaintiffs filed a motion to compel Dominance to comply with the subpoena. Dominance had refused to produce a single document by that date. *See* ECF No. 216.

The Court heard Plaintiffs' motion to compel on August 28, 2025. At that hearing, the Court addressed each objection raised by Dominance by (1) denying Plaintiffs' motion as to one request and limiting some request-specific language, and (2) ordering the parties to execute a supplemental protective order to address Dominance's specific confidentiality concerns (though it noted the existing protective order was sufficiently robust). ECF No. 249 at 4, 26–28, 16, 24–25. Consistent with the hearing, the court issued an order the next day largely granting Plaintiffs' motion. ECF No. 245. The Court also ordered the parties to execute and file a joint scheduling order that would govern Dominance's production. *Id.*

**B.      Dominance's Failure to Comply with the Court Orders Governing Subpoena Compliance**

On October 29, 2025, the Court entered the parties' joint scheduling order regarding commitments on finalizing custodial information, search terms, and process for the production of Dominance's documents. ECF No. 278 (Second Court Order).

Subject to minor delays, Dominance initially appeared to comply with the Second Court Order. For example, Dominance produced a device disclosure, agreed upon three custodians, and agreed to a document vendor. ECF No. 427–1 at ¶¶ 1–13. Plaintiffs negotiated in good faith and relied on the agreements reached. *Id.* Pursuant to the Second Court Order, Plaintiffs provided search terms on October 30, 2025. Saveri Decl., ¶ 2.

Any sign of Dominance's compliance ended within a month, in late November. Dominance failed to comply with each of the November 18, 2025 deadlines set forth in the scheduling order, which requires that Dominance provide specific dates for the collection, review, and production for its three custodians, as well as a date for production of a privilege log. ECF No. 427–1 at ¶ 14. By November 26, 2025, Dominance also reneged on joint execution of the document vendor contract. *Id.*, at ¶ 18. While the parties had previously agreed to retain at Plaintiffs' expense Dominance's preferred vendor, Seneca Holdings, Inc., dba Holo Discovery ("Holo"), *id.* at ¶¶ 9, 11, 15–18,

Dominance withdrew its executed contract with little explanation. *Id.* Thereafter, Dominance did not cure its tardiness or satisfy the Court-ordered deadlines. Throughout this period, Dominance has trifled with the Court's orders, taking the position Dominance has no obligation to follow them.

Nonetheless, Plaintiffs followed up six times over the next five weeks. *Id.* at ¶¶ 19–24. Counsel answered once, advising they were "busy". *Id.* After numerous attempts to make contact, Dominance finally agreed to a conference, which took place by Zoom on January 5, 2026. *Id.*

At the January 5, 2026 Zoom call, Dominance informed Plaintiffs that it was unilaterally deciding not to follow the Court's order. In particular, Dominance made clear that no production would be forthcoming for any custodian. Further, Dominance disclosed certain spoliation issues, including that Dominance had failed to take possession or maintain personal devices containing relevant ESI of two of the three custodians. *Id.* at ¶ 25.

**C.      The Court Issued a Third Order After Hearing Plaintiffs' OSC Application**

Plaintiffs applied for an order to show cause regarding Dominance's contempt. ECF Nos. 427, 459. The Court granted the motion. ECF No. 471 ("Third Court Order"). It ordered Dominance to produce, by April 3, 2026, "all of the information" collected by Holo to date, which counsel represented was comprised of at least 126,000 documents. *Id.*; ECF No. 466 at 8.[1] The Court's directive was specific. In particular, it ordered that Dominance must produce everything collected "based upon the search terms that the plaintiffs have provided after review of the material for any privilege" within 30 days. ECF No. 466 at 11–12. Indeed, the Court advised Dominance twice that it should review for privilege, and that the documents should otherwise "just [be] turn[ed] over" given its relatively small size. *Id.* It ordered a second device disclosure for Dominance's custodians. ECF No. 471. Finally, it ordered that "Dominance must continue producing materials, "in consultation with Plaintiffs, pursuant to prior orders." *Id.* At the time, Dominance indicated it understood the Court's orders. Dominance did not raise any objections or identify any difficulties with respect to compliance. *See* ECF No. 466 at 12. Had Dominance raised any, Plaintiffs would have had the

---

[1] Despite the schedule under the Second Court Order, Plaintiffs learned only at the hearing that Dominance had unilaterally engaged the vendor to initiate document collections without Plaintiffs' involvement, and that the vendor encountered issues with collection. ECF No. 466 at 8.

opportunity to address them with the Court. Instead, Plaintiffs reasonably believed Dominance would begin complying.

At the hearing, the Court cautioned that it was "very concerned" with Dominance's conduct and the months of delay. It advised that it "absolutely intend[ed] to impose fees in this case" and "[did not] want to see any further resistance to Court orders." ECF No. 466 at 8–9. It further advised:

> " . . . I am concerned that your client allowed these vendors essentially to leave before they collected their information because certainly these individuals were affiliated with them at a certain point in time and now they're not and now this information is gone, right. And if I discover that that's exactly what happened, your client could face, as you know, much more severe penalties."

*Id.* at 9.

### D.      Dominance Continues to Violate Court Orders

Following up on the court proceedings and the Court's subsequent order, Plaintiffs wrote to Dominance on March 12, 2026 to request further information, including: devices and user information; timing of personnel departures; whether any ESI had been collected before such departures; whether any ESI collected had been lost or destroyed; and whether identification of additional custodians could mitigate the representations that ESI had become unavailable. Saveri Decl., ¶ 3, Ex. A (March 12 Ltr.). Plaintiffs reiterated the Court's order that Dominance conduct only a privilege review. *Id.*

In violation of the Court's March 3 order that Dominance consult with Plaintiffs regarding compliance, Dominance responded by refusing to provide the information requested. Saveri Decl., ¶ 4, Ex. B (March 13 Ltr.); *see* ECF No. 471 (Minutes of Proceedings). Dominance dismissed the Court's directive that Dominance review for privilege and advised it would instead conduct a linear responsiveness review. *See* Ex. B. It further dismissed the Court's order that Dominance apply Plaintiffs' search terms, requesting a late-stage negotiation of same. *Id*.

In its March 13 correspondence, Dominance remarkably disclosed that it still had failed to initiate any review. This time, Dominance demanded that Plaintiffs agree in in advance to pay in

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

excess of $100,000 before it would authorize review to begin, and further indicated that it would not meet the Court's production deadline *regardless of payment.*[2]

On March 17, 2026, Plaintiffs responded in writing again. Plaintiffs detailed Dominance's continued violations, pointing to the Court's comments regarding Dominance's obligations, and advised Dominance that it would need to support any legitimate request for reimbursement with adequate documentation as to its reasonableness. Among other things, any request by Dominance for reimbursement for expenses associated with avoiding its discovery obligations or the Court's orders was inappropriate. Saveri Decl., ¶ 5, Ex. C (March 17 Ltr.). Plaintiffs requested a videoconference, which took place on March 25—*i.e.*, 22 days *after* the Court's order mandating production and only nine days before the deadline therefor. During the videoconference, Dominance again made it clear that it still had not commenced review. It continued to reject the Court's order that only a privilege review was necessary after application of Plaintiffs' search terms. Finally, it not only continued to demand that Plaintiffs fund the review for any review to begin, but it now demanded payment for work by senior attorneys and senior attorney billable rates. Saveri Decl., ¶ 6–7, Ex. D–E (March 26, 30 Ltrs.). Dominance demanded Plaintiffs pay weekly invoices. *Id*., Ex. D at 2.

Without waiver of their objections, Plaintiffs advised Dominance it would send a $10,000 check in good faith to defray some of Dominance's costs incurred and requested that Dominance immediately initiate a privilege review per Court order. Saveri Decl., ¶ 7, Ex. E (March 30 Ltr.). On April 1, Dominance wrote back ignoring the prior correspondence, instead stating it would not meet the Court's April 3 deadline for completion and would only begin the production by that date. *See* Saveri Decl., ¶ 8, Ex. F (April 1 Ltr.).

Dominance has not produced a single document as of the date of this filing.

---

[2] Dominance wrote: "[R]eview [by ten contract attorneys] would take approximately <u>four to six weeks</u> and would cost in excess of $100,000.00" (emphasis added). …"[I]f Plaintiffs wish to proceed with review of the current data set at the scale necessary to review the collected data, the cost of that review will need to be funded so that the review process can begin. Absent payment of the outstanding balance and funding for the necessary document review, the current production schedule is not feasible.") *See* Ex. B.

## II.    LEGAL STANDARD

The Ninth Circuit has held that a court may impose sanctions on a contemnor in the form of attorneys' fees and costs. *See Beverly v. Interior Elec. Inc. Nevada*, No. 21-55645, 2023 WL 355692, at *2 (9th Cir. Jan. 23, 2023) ("[A] district court has inherent power to enforce compliance with its lawful orders through civil contempt sanctions, including attorney's fees."); *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, at 1042–44 (9th Cir. 2008) (confirming that a district court may sanction for attorney's fees as well as other costs).

To determine attorneys' fees, the court applies the lodestar method. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("The customary method of determining fees, which the district court should have used here, is known as the lodestar method."). The lodestar method calculates attorneys' fees by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* Courts consider whether to adjust the lodestar figure based on the *Kerr* factors. *See Morales*, 96 F.3d at 363–64 (citing *Kerr v. Screen Extras Guild, Inc.*, 525 F.2d 67, 70 (9th Cir. 1975)). The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and the difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorney, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and, (12) awards in similar cases.

*Id.* Many of these factors are subsumed within the initial calculation of the lodestar figure, as the lodestar is presumed reasonable. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564–65 (1986); *Morales*, 96 F.3d at 363–364, nn.8–9. "[O]nly in rare and exceptional cases" should a court adjust the lodestar figure. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (cleaned up); *see Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000). The application satisfies the *Kerr* factors. *See* Saveri Decl., ¶ 14.

## III.    ARGUMENT

Here, the Court has already expressed that it "intends to award reasonable costs, and fees, to Plaintiffs" given Dominance's complete "failure to comply with their own discovery obligations, as well as this Court's prior orders." ECF No. 471. Plaintiffs request $268,815 in fees and $1,940.18 in expenses at this time.[3] In this request, Plaintiffs are not seeking reimbursement of all time and expenses incurred in obtaining compliance with the subpoena by Dominance. The request relates only to three efforts: **(1)** attempts to obtain Dominance's compliance with the First and Second Court Orders; **(2)** bringing Plaintiffs' application for an order to show cause why Dominance should not be held in contempt once Plaintiffs learned in January 2026 that Dominance did not plan to produce any documents; and **(3)** bringing the instant motion for fees and expenses. Saveri Decl., ¶¶ 9–13. Plaintiffs certainly could have requested more but chose not to do so. Plaintiffs have carefully reviewed their time entries and record of expenses and have excluded fees reflecting possible duplication of effort; fees incurred in initially seeking to compel Dominance's compliance with Plaintiffs' Subpoena during the Spring and Summer of 2025; and expenses incurred in connection with Plaintiffs' first motion to compel Dominance's compliance with the subpoena or in connection with other hearings where Dominance's compliance was raised but not argued on the merits; and on PACER and Westlaw in conducting research . *Id.* at ¶ 10, 13. Because the requests omit significant time and expenses incurred seeking compliance, and it otherwise satisfies the *Kerr* factors, it constitutes a reasonable request.

### A.    Counsel Expended Reasonable Hours

The Court determines a reasonable fee under the lodestar method by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Morales*, 96 F.3d at 363. A "reasonable" number of hours are those that encompass work that "would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003) (citing *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989)). To assess this, Courts consider "whether the hours of work

---

[3] Plaintiffs are continuing to incur fees and expenses and will update these figures at the request of the Court.

performed are reasonably necessary to achieve the results obtained." *Kiva Health Brands LLC v. GoodVitamin Foods Pvt. Ltd.*, 2023 WL 3984685, at *4 (D. Haw. May 19, 2023), *report and recommendation adopted*, 2023 WL 3981479 (D. Haw. June 13, 2023).

As set forth in the accompanying Declaration, Plaintiffs' counsel expended at least 286.10 hours in completing the foregoing tasks. Saveri Decl., ¶ 12. Here, Plaintiffs seek a portion of fees associated with their substantial efforts spent in obtaining Dominance's compliance since the Court's First Order in August 2025 compelling Dominance's compliance. This work has included, *inter alia*, Plaintiffs' efforts to obtain compliance from Dominance with the Court-entered Joint Scheduling Order governing Dominance's discovery obligations after the Court granted Plaintiffs' motion to compel its compliance with Plaintiffs' Subpoena; extensive preparation for meet-and-confer conferences; researching, drafting, preparing for, and appearing before this Court to argue the OSC application; negotiating and corresponding with counsel for Dominance by email, letter, and videoconference; coordination with co-counsel as part of a cooperative leadership structure; legal research conducted to challenge numerous objectionable positions taken by Dominance; and efforts undertaken in bringing the instant motion for fees and expenses. Saveri Decl., ¶ 13. All of this could have been avoided had Dominance fulfilled its obligations and followed—not avoided—the Court's orders.

**B.      Counsel's Rates are Reasonable**

Plaintiffs' counsel's rates, as set forth in the accompanying Declaration at ¶ 12, are well within the range that has been approved as reasonable by courts in the Ninth Circuit. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 3:15-md-02672-CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving nine years ago rates of $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving eight years ago partner rates up to $1,250, $650 for associates, and $350 for paralegals). The rates set forth are the firm's ordinary and customary rates. This Court approved as reasonable substantially similar rates for Plaintiffs' counsel when it approved the request of the *Le* plaintiffs—represented by the same counsel as movants here—for attorneys' fees in connection with the *Le* settlement in March 2025.

*See* Order Granting Plaintiffs' Motion for an Award of Attorneys' Fees, for Reimbursement of Expenses, and for Service Awards for the Class Representatives at 2–4, *Le v. Zuffa, LLC*, 2:15-cv-01045-RFB-BNW (D. Nev. Mar. 3, 2025) (ECF No. 1065).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court order the payment of attorneys' fees and expenses in the amount of $270,755.18.

Dated: April 2nd, 2026                              Respectfully submitted,

                                                    */s/ Joseph R. Saveri*
                                                        Joseph R. Saveri

                                                    Joseph R. Saveri (*pro hac vice*)
                                                    Christopher K.L. Young (*pro hac vice*)
                                                    Kevin E. Rayhill (*pro hac vice*)
                                                    Itak Moradi (*pro hac vice*)
                                                    T. Brent Jordan (*pro hac vice)*
                                                    **SAVERI LAW FIRM, LLP**
                                                    550 California Street, Suite 910
                                                    San Francisco, California 94104
                                                    Telephone:(415) 500-6800
                                                    Facsimile: (415) 395-9940
                                                    jsaveri@saverilawfirm.com
                                                    cyoung@saverilawfirm.com
                                                    krayhill@saverilawfirm.com
                                                    imoradi@saverilawfirm.com
                                                    tbjordan@saverilawfirm.com

                                                    Eric L. Cramer (admitted *pro hac vice*)
                                                    Michael Dell'Angelo (admitted *pro hac vice*)
                                                    Patrick F. Madden (admitted *pro hac vice*)
                                                    **BERGER MONTAGUE, P.C.**
                                                    1818 Market Street, Suite 3600
                                                    Philadelphia, PA 19103
                                                    Telephone: (215) 875-3000
                                                    Facsimile: (215) 875-4604
                                                    ecramer@bm.net
                                                    mdellangelo@bm.net
                                                    pmadden@bm.net

Joshua P. Davis (admitted *pro hac vice*)
**BERGER MONTAGUE, P.C.**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 906-0684
Facsimile: (215) 875-4604
jdavis@bm.net


Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS**
 **& TOLL, PLLC**
1100 New York Avenue, N.W., Suite 500, East
Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com


W. Joseph Bruckner (admitted *pro hac vice*)
Brian D. Clark (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4001
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com


Kyle Pozan (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
1165 N. Clark Street, Suite 700
Chicago, IL 60610
Telephone: (612) 339-6900
kjpozan@rlocklaw.com


*Counsel for Plaintiffs Kajan Johnson and*
*Clarence Dollaway and the Proposed Class*

Michael J. Gayan
**CLAGGET & SYKES**
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107
Telephone: (702) 333-7777
Facsimile: (702) 655-3763

*Liaison Counsel for Plaintiffs Kajan Johnson and*
*Clarence Dollaway and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on April 2nd, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.


                                        /s/ Joseph R. Saveri
                                        Joseph Saveri
                                        SAVERI LAW FIRM, LLP