# EXHIBIT D



PETER S. CHRISTIANSEN
PETER J. CHRISTIANSEN
R. TODD TERRY

KEELY P. CHIPPOLETTI
ANDREW R. BROWN

March 26, 2026

*Via Email*:   imoradi@saverilawfirm.com
         tbjordan@saverilawfirm.com

Itak Moradi, Esq.
T. Brent Jordan, Esq.
Saveri Law Firm
550 California Street, Suite 910
San Francisco, CA 94104

         Re:   Dominance MMA, LLC
            *Kajan Johnson, et al. v. Zuffa, LLC, et al.*
            Case No. 2:21-cv-01189-RFB-BNW

Dear Counsel:

This letter confirms the substance of our meet and confer yesterday regarding Dominance's compliance with Plaintiffs' subpoena and the parties' ongoing dispute concerning cost allocation.

As you know, the Court previously ordered that Dominance would bear the costs associated with preparing and providing the inventory list of discoverable sources of information (which the Court estimated would cost $10,000.00), and that Plaintiffs would be responsible for all fees and costs thereafter, including costs associated with collection, review, and production. Dominance completed and provided the inventory list back in October 2025.

Despite that order, Plaintiffs maintain that they are not obligated to pay any costs on the basis that Dominance has not complied with the subpoena because Dominance has not yet produced responsive documents. We disagree. Although production has not yet occurred, Dominance has spent several months complying with the Court's directives including:

- Extensive meet and confer efforts between the parties;
- Preparing and producing the required inventory list of discoverable sources;
- Negotiating and executing an addendum to the protective order;
- Entering into and complying with a detailed scheduling order, including agreed upon custodians, identified device locations, and discussed search terms subject to refinement through hit reports);
- Selecting HOLO Discovery as the ESI Vendor;
- Working through revisions to the vendor agreement to facilitate forensic collection; and

– Completing forensic collection of all materials within Dominance's possession, custody or control through HOLO such that the dataset is now ready for review and production.

As reflected in the Recorder's Transcript of Proceedings dated September 4, 2025, which constitutes the Court's Order, the Court expressly allocated responsibility for costs with the subject materials:

THE COURT: Well, as I've indicated, Mr. Christiansen, and I think the law's clear, at a certain cost amount the burden shifts to them automatically. And then they have to make a choice about what they want to spend money on to obtain it and they get to decide.

MR. CHRISTIANSEN: Okay.

THE COURT: But what I would – what we would need would be some outline of what that looks like – . . . in terms of the cost, right. I mean, the cost could run into the tens of thousands of dollars. In this case the costs have been in the millions of dollars I think as it relates to discovery. So I wouldn't be surprised if it was tens of thousands of dollars or $100,000, whatever it would be. And the law's – from my perspective the law's clear that if they want it, they have to pay for it above a certain amount.

…

THE COURT: So, Mr. Saveri . . . as I've said, I am going to order your client to pay for this above a certain amount. The threshold can vary, but more or less I will just tell you above $10,000 you have to pay for everything, including the review costs.

. . .

THE COURT: Okay. Well, it sounds like to me the first step would be to ask Dominance to provide essentially an inventory list of the universe of relevant sources of information, right.

MR. SAVERI: Yes, I agree, Your Honor.

THE COURT: And then what I will tell you, Mr. Saveri, that will probably take enough time that anything that they do after that, you all will have to pay for. . . .

MR. SAVERI: And, Your Honor, part of that obviously would seem to be informed by what the volume of responsive materials are, right. It obviously will cost more money and take more hours to review a larger production than a smaller. And we don't – we don't know where on that spectrum we are right now.

THE COURT: Yes, but they won't know it either until they actually do the search. . . .

THE COURT: . . . And what I am then going to order is that you all meet and confer and that Dominance come up with an inventory source list . . . After that I will just tell you, Mr. Saveri, that the plaintiffs will be responsible for pretty much every

expense after that. And I'm just telling you that now so you can be prepared. But I think their sole responsibility here in terms of cost will be to provide that list . . . But after that in terms of obtaining the information that really directly goes to the plaintiffs' request and including the review of that, and that's where I would require the plaintiffs to pay. And I would suggest, Mr. Christiansen, again, some discussion about what you would anticipate the cost would be as it relates to reviewing the documents. I don't know that it's reasonable for you, yourself, at the highest rate possible to be reviewing all the documents. We can have a conversation about that later. On the other hand, I wouldn't expect for you not to be involved at all. And so I think, again, that's a conversation that can be had between counsel, but I think this should be – again, this should be costs that the plaintiffs will have to pay. But I would hope, Mr. Saveri and Mr. Christiansen, you would have a discussion about what those costs would look like and how that would work without me having to get involved in the exact details of that.

ECF 249 at 15:08-24; 27:05-22; 30:20-31:15; 37:03-38:19.

There is no ambiguity in the Court's directive. Dominance's cost responsibility ends with the inventory list, or $10,000, and all subsequent expenses, including collection, processing, and review, are to be borne by Plaintiffs.

We advised that HOLO has now completed collection of all materials within Dominance's possession, custody, or control from the agreed-upon custodians, including Ali Abdelaziz's devices and emails, and the email accounts of Firdaws Khalim and Terrell Hunsinger. As previously discussed, Messrs. Khalim and Hunsinger are no longer affiliated with Dominance and declined to provide access to their personal devices. After de-duplication, the collected dataset consists of approximately 138,000 documents.

We presented multiple options to reduce burden and cost, including working cooperatively to further narrow the dataset. Plaintiffs refused. We also proposed the use of a third-party managed review team (approximately ten attorneys), which would complete review in an estimated 4–6 weeks at a cost exceeding $100,000.00. Plaintiffs likewise refused and reiterated their position that they are not responsible for any costs – past or future – including review.

In light of Plaintiffs' position, we explained that our firm will proceed with a linear review conducted by Ms. Chippoletti and me at our standard hourly rates ($550 and $1250 per hour, respectively). While this approach is less efficient and more time-consuming, it is the only viable option available under the current circumstances.

We also discussed the scope of review required by the Court's orders. Plaintiffs contend that review is limited to privilege only. Dominance's understanding is that the Court ordered production of responsive documents, which necessarily requires review for both responsiveness and privilege. We were unable to reach agreement on this issue.

Moradi, Itak, Esq.
Jordan, T. Brent, Esq.
March 26, 2026
Page 4 of 4

With respect to the Court's subsequent order awarding Plaintiffs fees related to alleged noncompliance, Plaintiffs confirmed that such fees are limited to the costs associated with preparing and briefing the application for an order to show cause and attending the hearing. We requested an estimate of those fees to explore a potential offset against the amounts owed to Dominance, but Plaintiffs could not provide any estimate and declined to engage in such discussions.

Plaintiffs suggested there may be alternative methods to reduce burden (including what was described as a "batch review" or something to that effect), but declined to provide those proposals in writing when requested, stating it was "too late." As a result, no concrete alternative was presented for consideration.

Dominance specifically inquired whether Iridium (another Las Vegas manager known to have received a similar subpoena) has produced any documents. Plaintiffs avoided that question, instead referring generally to productions from other third parties. However, the docket reflects that Plaintiffs' proposed supplement to the protective order with Iridium was rejected and not entered. As recently as a few weeks ago, Iridium's counsel stated that the last he heard from Plaintiffs is that the parties were discussing amendments to the protective order with the magistrate judge which would supersede the prior supplements with third-party subpoena recipients. The Amended Protective Order was not entered until March 17, 2026. ECF No. 475. This sequence of events strongly indicates that Iridium has not yet produced documents and remains subject to ongoing protective order negotiations. Accordingly, any assertion by Plaintiffs that Dominance's production is untimely is unfounded.

Given the parties' impasse, Dominance will proceed with a linear review for responsiveness and privilege consistent with its understanding of the Court's orders. As productions are made, Dominance will submit invoices reflecting the associated costs. We will expect payment within one week of each invoice. Please let us know if Plaintiffs reconsider their position regarding cost-sharing or wish to propose a workable, cost-effective alternative in writing.

Consistent with the Court's order, the costs incurred beyond the $10,000 threshold are Plaintiffs' responsibility. To date, the amount incurred above that threshold totals $38,775, which is due and owing. Please confirm that Plaintiffs will remit payment promptly, or advise immediately if Plaintiffs contend they will not comply with the Court's Order, so that Dominance may seek appropriate relief.

Sincerely,

CHRISTIANSEN TRIAL LAWYERS

PETER S. CHRISTIANSEN, ESQ.