# EXHIBIT F



PETER S. CHRISTIANSEN
PETER J. CHRISTIANSEN
R. TODD TERRY

KEELY P. CHIPPOLETTI
ANDREW R. BROWN

April 1, 2026

*Via Email*:   jsaveri@saverilawfirm.com
imoradi@saverilawfirm.com
tbjordan@saverilawfirm.com

Joseph R. Saveri, Esq.
Itak Moradi, Esq.
T. Brent Jordan, Esq.
Saveri Law Firm
550 California Street, Suite 910
San Francisco, CA 94104

> Re:   Dominance MMA, LLC
> *Kajan Johnson, et al. v. Zuffa, LLC, et al.*
> Case No. 2:21-cv-01189-RFB-BNW

Dear Counsel:

We write in response to your letter dated March 30, 2026.  Dominance remains committed to complying with the Court's orders and to moving this process forward in a practical and efficient manner. At the same time, several of the positions taken in your letter misstate the governing orders and the record. Accordingly, we address those points here so that the parties can proceed on an accurate understanding of the Court's directives.

As an initial matter, Dominance is complying with the Court's March 3, 2026, Minute Order and the Court's statements on the record. The Minute Order directs Dominance to produce "all *responsive* materials which have already been collected by HOLO by April 3, 2026." ECF No. 471 (emphasis added). The Minute Order further provides that Dominance "must continue producing materials, in consultation with Plaintiffs, pursuant to this Court's prior order." *Id*. The transcript confirms that the Court's immediate focus was on the dataset that had already been collected by HOLO at the time of the hearing, subject to review by counsel. ECF No. 466 at 11. Consistent with that directive, Dominance is reviewing Mr. Abdelaziz's emails and is prioritizing production of that dataset. Dominance will continue producing materials on a rolling basis, as the Minute Order expressly contemplates. Contrary to your assertions otherwise, nothing in the Court's order requires a single, complete production of all materials from all custodians by April 3, 2026.

Your letter also asserts that "[t]he parties fully negotiated the search terms," and on that basis contends that no further discussion or refinement is appropriate. That assertion is incorrect and is squarely contradicted by the Joint Scheduling Order at ECF No. 278. That Order did not adopt a fixed, completed set of search terms. Instead, it required, by November 3, 2025, to agree

Saveri, Joseph R., Esq.
Moradi, Itak, Esq.
Jordan, T. Brent, Esq.
April 1, 2026
Page 2 of 4

upon "the process for the collection and hosting of potentially relevant and responsive information," including not only "the search terms to be used to identify potentially responsive documents," but also "the use of hit reports to guide search term negotiations." ECF No. 278. By its plain language, the Order contemplates an iterative process in which hit reports would inform and refine search-term negotiations after data is collected. It does not reflect that search terms were fixed, final, or immune from further refinement. If, as Plaintiffs now contend, the search terms had already been fully negotiated and conclusively fixed, there would have been no reason for the Court's order to separately provide for "the use of hit reports to guide search term negotiations." Plaintiffs' current position reads that language out of ECF No. 278 entirely. To the contrary, the requirement that hit reports "guide search term negotiations" presupposes that negotiations would continue after the parties could evaluate how proposed terms actually performed against collected data (*i.e.*, to test whether proposed terms are overinclusive, underinclusive, or otherwise distort the scope of production). That is precisely the stage the parties have now reached. Now that collection has occurred, Dominance sought to follow that Court-ordered process. Plaintiffs' refusal to engage in that step does not transform preliminary or untested terms into "fully negotiated" ones. By doing so, Plaintiffs are disregarding the process the Court adopted by way of its Order entered at ECF No. 278.

Plaintiffs' position that all search-term hits must be produced without any consideration of responsiveness is likewise unsupported by the governing orders. ECF No. 278 refers to "potentially relevant and responsive information" and "potentially responsive documents." Search terms are therefore a tool to identify a universe of potentially responsive documents for review; they are not a substitute for responsiveness itself. This distinction is particularly important where, as here, Plaintiffs' proposed terms are facially overbroad. For example, the term "UFC," as Plaintiffs have proposed, would capture every communication that merely references UFC, regardless of subject matter and whether responsive or not. Treating every such hit as automatically producible would improperly circumvent the Court's prior ruling by effectively resurrecting Subpoena Request No. 4, which the Court expressly found to be overbroad and denied. *See* ECF Nos. 245 and 249. Nothing in the Court's subsequent orders permits Plaintiffs to obtain through overbroad search terms what the Court has already declined to compel. Plaintiffs cannot rewrite ECF No. 278 into an order that search terms were fully negotiated, final, and no longer subject to refinement. Indeed, the opposite is true. ECF No. 278 expressly adopted the use of hit reports to guide continued search-term negotiations. Dominance's request to follow that process is consistent with both the extent and purpose of that order.

Plaintiffs' reliance on isolated statements from the March 3, 2026, hearing also overreads the record. The Court's directive must be understood in context. At the hearing, the Court was addressing the production of the dataset that had already been collected by HOLO and expressing concern about delay, stating it did not "want to see any further resistance to Court orders." ECF No. 466 at 9. The Court directed that the existing dataset be turned over following review by counsel "for privilege or anything like that." *Id*. at 11-12. At the same time, the Minute Order requires the production of "*responsive materials*," and nothing in the Court's remarks indicates an intent to eliminate all consideration of responsiveness by requiring production of plainly nonresponsive material swept in by overbroad search terms, particularly where doing so would be

Saveri, Joseph R., Esq.
Moradi, Itak, Esq.
Jordan, T. Brent, Esq.
April 1, 2026
Page 3 of 4

inconsistent with the Court's prior rulings. Nor did the Court abrogate the ESI process established in ECF No. 245 and 278, which was specifically designed to manage burden and ensure proportionality for a nonparty.

Dominance is not refusing to comply with the Court's directives. To the contrary, it is undertaking substantial efforts to process a dataset of approximately 126,000 documents so that production is both prompt and consistent with the Court's orders. Given the size of that dataset, some level of review is necessary to ensure that what is produced is responsive and nonprivileged, as required by ECF No. 471. Dominance is conducting that review as efficiently as possible under the circumstances.

Your letter suggests that Dominance has refused to cooperate in adopting more efficient review methodologies, including the use of technology-assisted review or other tools. That is not accurate. During the parties' most recent meet and confer, Dominance expressly requested that Plaintiffs put any such proposals in writing so that they could be evaluated, particularly in light of the Court's direction that Plaintiffs bear the cost of compliance. Plaintiffs declined to do so, stating that it was "too late" to discuss those issues. At that point, with the Court's deadline approaching and no agreement on process or cost allocation, Dominance had no practical choice but to proceed with review using available resources. As previously acknowledged, that approach may not be the most cost-efficient, but it was the only viable path forward in the absence of cooperation or concrete proposals from Plaintiffs.

Dominance remains willing to consider reasonable and efficient alternatives, including the use of technology or other tools. However, it cannot unilaterally implement processes that will impose significant additional costs where the Court has made clear that such costs are to be borne by Plaintiffs. Nor can Dominance continue to delay production while awaiting proposals that Plaintiffs have declined to provide. At this point, Dominance is prioritizing completion of review and production of the HOLO dataset within the Court's timeframe and will continue producing on a rolling basis as that review progresses. The goal is to complete production as quickly and efficiently as possible, not to delay it.

With respect to preservation, Dominance has preserved all ESI within its possession, custody, and control. As previously advised, following the March 3, 2026, hearing, HOLO completed collection of all such materials from the agreed-upon custodians. This includes Mr. Abdelaziz's iPhone and iPad, in addition to the emails collected prior to the hearing, as well as the email accounts of Firdaws Khalim and Terrell Hunsinger. As also previously discussed, Messrs. Khalim and Hunsinger are no longer affiliated with Dominance and declined to provide access to their personal devices.

In short, Dominance is complying with the Court's orders, is proceeding with production of the HOLO-collected materials, and will continue producing materials on a rolling basis. Dominance has attempted to engage in the cooperative process contemplated by the Court's orders, including the use of hit reports to guide search-term refinement and discussion of efficient review methodologies. Plaintiffs' refusal to engage in those steps has left Dominance to proceed in the

Saveri, Joseph R., Esq.
Moradi, Itak, Esq.
Jordan, T. Brent, Esq.
April 1, 2026
Page 4 of 4


only practical manner available given the Court's deadlines. Nevertheless, Dominance remains willing to confer in good faith to resolve any remaining issues and to utilize efficient review methodologies so that this process can be completed as expeditiously as possible and without further motion practice.

                    Sincerely,

                    CHRISTIANSEN TRIAL LAWYERS

                    PETER S. CHRISTIANSEN, ESQ.