WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

J. COLBY WILLIAMS (No. 5549)
jcw@cwlawlv.com
SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

*Attorneys for Defendants Zuffa, LLC and
TKO Operating Company, LLC*

[Additional counsel listed on signature]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, AND TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**ZUFFA, LLC, AND TKO OPERATING COMPANY, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO CHALLENGE DEFENDANTS' PRIVILEGE DESIGNATIONS** |

# PUBLIC/REDACTED VERSION

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO PLS' MOTION TO
CHALLENGE DEFS' PRIVILEGE DESIGNATIONS

CASE NO. 2:21-CV-01189-RFB-BNW

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND............................................................................................ 2

    A.  The Amended Protective Order ............................................................................ 2

    B.  UFC Executives Discuss Legal Advice In A Group Text .................................... 2

    C.  Defendants Inadvertently Produced The Privileged Sullivan Texts ..................... 3

    D.  Defendants Notified Plaintiffs Of Their Intent To Claw Back The Challenged Documents ................................................................................................. 3

III. LEGAL STANDARD....................................................................................................... 4

IV. ARGUMENT .................................................................................................................... 5

    A.  The Challenged Documents Contain Privileged Communications Regarding Legal Advice .............................................................................................. 5

    B.  The Sullivan Texts Comprise A Request For Legal Advice From A General Counsel ............................................................................................................ 6

    C.  Mr. McKnight Provided Legal Advice In The Sullivan Texts ............................. 7

    D.  Defendants' Privilege Log Sufficiently Describes The Privileged Nature Of The Sullivan Texts ................................................................................... 7

    E.  Inadvertent Production Does Not Constitute Waiver or Necessitate *In Camera* Review ......................................................................................................... 8

V.  CONCLUSION ................................................................................................................. 9

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

**Page(s)**

*AT&T Corp. v. Microsoft Corp.*,
   2003 WL 21212614 (N.D. Cal. 2003) ...............................................................................8

*Garcia v. County of Stanislaus*,
   2022 WL 4237960 (E.D. Cal. Sept. 13, 2022).................................................................6

*Ignite Spirits Inc. v. Consulting by AR, LLC*,
   2023 WL 2308262 (D. Nev. Feb. 28, 2023). (Mot. .)........................................................8

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
   655 F. Supp. 3d 899 (N.D. Cal. 2023) ............................................................................6, 7

*In re Grand Jury*,
   23 F.4th 1088 (9th Cir. 2021) .......................................................................................4, 6

*In re Human Tissue Prods. Liab. Litig.*,
   255 F.R.D. 151 (D.N.J. 2008) ..........................................................................................6

*McCullogh v. Fraternal Order of Police, Chicago Lodge 7*,
   304 F.R.D. 232 (N.D. Ill. 2014) .......................................................................................6

*Phillips v. C.R. Bard, Inc.*,
   290 F.R.D. 615 (D. Nev. 2013)........................................................................................6

*Premiere Digital Access, Inc. v. Cent. Tel. Co.*,
   360 F. Supp. 2d 1168 (D. Nev. 2005)...............................................................................4

*Skyline Wesleyan Church v. California Dep't of Managed Health Care*,
   322 F.R.D. 571 (S.D. Cal. 2017) ......................................................................................7

*U.S. v. Graf*,
   610 F.3d 1148 (9th Cir. 2010) .........................................................................................4

*U.S. v. Richey*,
   632 F.3d 559 (9th Cir. 2011) ..........................................................................................4

*United States v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) .......................................................................4, 8

**RULES**

Fed. R. Civ. P. 26..................................................................................................................2

Fed. R. Civ. P. 26(b)(5)(A) ....................................................................................................7

Fed. R. Evid. 502(d)...............................................................................................................3

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO PLS' MOTION TO
CHALLENGE DEFS' PRIVILEGE DESIGNATIONS

ii

CASE NO. 2:21-CV-01189-RFB-BNW

## I.    **INTRODUCTION**

Plaintiffs' Motion to Challenge Defendants' Privilege Designations is yet another attempt by Plaintiffs to access protected attorney-client communications.  In this latest example, Plaintiffs ask the Court to compel the unredacted production of text message threads that were indisputably intended to include UFC General Counsel Riché McKnight (the "Sullivan Texts").  On April 2, 2021, Crowley Sullivan, a UFC executive, asked Mr. McKnight a legal question concerning the UFC's ███████████, but inadvertently left Mr. McKnight off the text message's recipient list.  Mr. Sullivan included other UFC executives on this text message.  Upon realizing that he had inadvertently omitted Mr. McKnight, *less than two minutes later*, Mr. Sullivan corrected his error and created a second thread adding Mr. McKnight, posing the same legal question, and stating "[m]eant to include Riche on first go – have him on now."  (*See* Pls. Ex. 8.)  A minute later Mr. McKnight provided a legal assessment based on the legal question raised.

Defendants produced the text threads in question, but redacted the portion of the thread that is protected by the attorney-client privilege (i.e. a request for and provision of legal advice).  Remarkably, Plaintiffs challenge this privilege designation and claim the question directed to Mr. McKnight was a "business" inquiry rather than a request for legal advice.  They base this argument on nothing more than an unredacted joke that Mr. McKnight makes in the same thread—"Yeah what Dana said!!!"— which is not privileged because it was not part of the legal advice he provided and therefore the joke was not redacted.  But there is no dispute that Mr. Sullivan intended his communication to be directed to Mr. McKnight.  And there is no dispute that Mr. McKnight's only positions at the time of the text message were legal in nature and Defendants produced a privilege log that describes the nature of the redacted, privileged communication.  Plaintiffs' factual and legal contortions do nothing to transform what is patently a legal inquiry regarding ██████ ██████ into an unprotected "business" conversation.

This Court should uphold Defendants' narrowly tailored privilege designations and deny Plaintiffs' Motion.

DEFENDANTS' OPPOSITION TO PLS' MOTION TO
CHALLENGE DEFS' PRIVILEGE DESIGNATIONS

CASE NO. 2:21-CV-01189-RFB-BNW

## II.    FACTUAL BACKGROUND

### A.    The Amended Protective Order

On March 17, 2026, the Court entered an Amended Protective Order which addressed, among other things, the specific protocol for the handling of the inadvertent production of privileged material. *See* Dkt. No. 475 at § 11. The Order provides that:

> [I]f a party (the "Disclosing Party") discloses information in connection with the pending litigation that the Disclosing Party thereafter claims to be privileged or protected by the attorney-client privilege or attorney work product protection ("Privileged Material"), the disclosure of that Privileged Material will not constitute or be deemed a waiver or forfeiture – in this or any other litigation – of any claim of privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Privileged Material and its subject matter.

*Id.* at § 11(a). The Order emphasizes that its provisions "shall be interpreted to provide the maximum protection allowed under applicable law." *Id.* at § 11(b). Under the Order, if a Party receives notice that it received "inadvertently produced documents, testimony, information, and/or things that are protected from disclosure under the attorney-client privilege," the receiving party "shall immediately take reasonable efforts pursuant to Rule 26 of the Federal Rules of Civil Procedure to promptly return, sequester, or destroy such materials, any reasonably accessible copies it has, and *any work product reflecting the contents of such materials and cease the use of those materials for any purpose.*" *Id.* at § 11(c) (emphasis added). "The Receiving Party shall not use such items for any purpose until further order of the Court." *Id.*

### B.    UFC Executives Discuss Legal Advice In A Group Text

On April 2, 2021, at 8:25 p.m., Mr. Sullivan sent a text message to a group of senior UFC executives posing a question concerning ██████████████████ (the "First Sullivan Text"). (Pls. Exs. 6, 9.) Recipients of the First Sullivan Text included UFC President, Dana White; UFC Chief Operating Officer, Lawrence Epstein; UFC Chief Financial Officer, Andrew Schleimer; UFC VP of Corporate Communications, Chris Bellitti; UFC VP of Global Brand & Creative, Heidi Noland; and UFC SVP International & Content, David Shaw. (Pls. Exs. 9-12.) Two minutes later, at 8:27 p.m., Mr. Sullivan re-texted the same group but added Mr. McKnight, stating that he "[m]eant to include Riche on first go." (Pls. Ex. 8.) Mr. McKnight responded

within two minutes, at 8:29 p.m., with his legal assessment of the issue Mr. Sullivan had raised. (*Id.*) In an unredacted, non-privileged portion of the same text thread, Mr. McKnight also texted, in response to a comment from Mr. White, "Yeah what Dana said!!!" (*Id.* at 3).

### C.   Defendants Inadvertently Produced The Privileged Sullivan Texts

On March 23, 2026, Defendants produced approximately 43,000 documents. (*See* Pls. Ex. 2.) Among those documents, was this inadvertently-produced text message thread without any privilege designations. (*Id.*) In total, five privileged documents related to the Sullivan Texts were inadvertently produced: four substantively identical copies of the original text thread (without Mr. McKnight) were produced from the files of four custodians, (Pls. Exs. 9-12), and one copy of the thread with Mr. McKnight, (Pls. Ex. 8). These five documents constitute the privileged Sullivan Texts Plaintiffs now challenge.

### D.   Defendants Notified Plaintiffs Of Their Intent To Claw Back The Challenged Documents

In accord with the specific process agreed upon by the Parties and entered by the Court, one week after the inadvertent production of privileged documents, on March 30, 2026, counsel for Defendants notified Plaintiffs' counsel in order to claw back inadvertently disclosed information pursuant to Federal Rule of Evidence 502(d), including the Challenged Documents. (Pls. Ex. 2); *see* Dkt. No. 475 (detailing the specific process and timeline for parties to claw back inadvertently produced privileged documents).[1]

On April 8, 2026, Defendants reproduced redacted versions of the Challenged Documents and served a privilege log which specifically identifies each clawed-back document, the participants, the date, the subject matter, and the basis for the privilege claim. (Pls. Ex. 6.) The privilege log explained that the Challenged Documents "███████████████████████ ████████████████████████████████████████████" and that "███████████████ ████████████████" (*Id.*) Despite this clear description that the text thread was meant to obtain legal advice and intended to include legal counsel, Plaintiffs refused to withdraw their challenge,

---

[1] Defendants' claw back letter identified additional inadvertently produced, privileged documents. Plaintiffs do not object to the privilege designation of these additional documents.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO PLS' MOTION TO
CHALLENGE DEFS' PRIVILEGE DESIGNATIONS

3

CASE NO. 2:21-CV-01189-RFB-BNW

claiming "[t]he description of the privilege in Defendants' privilege log both conflicts with the remaining non-clawed back portion of the document *and what Plaintiffs already know to be the substance of the text's inquiry*." (Pls.' Ex. 3 (emphasis added).)[2]

### III.   LEGAL STANDARD

In the Ninth Circuit, an eight-part test determines whether information is covered by the attorney-client privilege: (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, (8) unless the protection is waived. *U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (citation omitted) (cleaned up); *see also U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (same).   Where the client is a corporation, the privilege extends to communications between corporate employees and in-house counsel made for the purpose of securing legal advice. *See Premiere Digital Access, Inc. v. Cent. Tel. Co.*, 360 F. Supp. 2d 1168, 1175 (D. Nev. 2005) (communications for purpose of securing legal advice between in-house counsel and corporate employees privileged). The privilege also extends to communications among corporate employees that transmit or reflect such legal advice or requests. *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) (communications between nonlegal employees in which the employees discuss or transmit legal advice given by counsel "obviously reveal privileged communications").

Where a communication serves dual purposes—both legal and business—the Ninth Circuit applies a "primary purpose" test to determine whether the attorney-client privilege attaches. *See In re Grand Jury*, 23 F.4th 1088, 1091-94 (9th Cir. 2021).  Under this test, attorney-client privilege applies where the primary purpose of the communication was to obtain or provide legal advice, even if business considerations were also present. *Id.* at 1092.

---

[2] Plaintiffs' apparent reliance on the substance of the privileged communication as the premise for their motion is entirely improper and speaks to the specious nature of the Motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO PLS' MOTION TO
CHALLENGE DEFS' PRIVILEGE DESIGNATIONS

4

CASE NO. 2:21-CV-01189-RFB-BNW

## IV.   ARGUMENT

The Challenged Documents satisfy each element of the attorney-client privilege.

### A.   The Challenged Documents Contain Privileged Communications Regarding Legal Advice

Mr. Sullivan's question to Mr. McKnight concerned a legal issue related to UFC's ██████ ████████████. (*See* Pls. Exs. 6, 8.)  As a result, Defendants withheld for privilege (by redaction) Mr. Sullivan's request for legal advice and Mr. McKnight's response providing legal advice.  Mr. Sullivan's April 2, 2021, text message posed a question about ████████████ ██████████—a legal question concerning the scope and nature of the organization's ████████████████████████████████. This legal question was intended for, and within two minutes directed to, UFC's General Counsel.  Less than two minutes after his initial text, Mr. Sullivan realized his inadvertent omission and added Mr. McKnight to the thread, and Mr. McKnight responded with his legal assessment. (Pls. Exs. 6, 8.)  The communications were made in confidence among corporate employees for the primary purpose of seeking legal advice.  As Defendants describe in the produced privilege log, the Sullivan Texts "████████████████ ████████████████████████████████████████████████" (Pls. Ex. 6.)

But rather than deal with this head-on, Plaintiffs attack a series of arguments about the Sullivan Texts that nobody is making.  For example, Defendants have never asserted that the Sullivan Texts were sent "exclusively [] to McKnight," (Mot. at 15), or that "merely copying counsel on an otherwise non-privileged communication" is enough to establish privilege, (*id.*). Indeed, of the two-and-a-half pages addressing the Sullivan Texts in Plaintiffs' Motion, nearly one-and-a-half are spent on these strawman arguments. (*See id.* at 15-16.)

At bottom, Plaintiffs' only serious argument—that "context reflects that the Sullivan Text's query was non-legal, seeking and receiving direction from White and Epstein," (Mot. at 17)—still strains credulity.  Plaintiffs' claims entirely ignore that Mr. Sullivan intended for the entire conversation to include UFC's General Counsel and almost immediately corrected his error upon realizing the omission.  According to Plaintiffs, Mr. Sullivan's intent that the entire conversation be directed to Mr. McKnight is meaningless.  But this is not the law.  The fact that Mr. White and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO PLS' MOTION TO
CHALLENGE DEFS' PRIVILEGE DESIGNATIONS

5

CASE NO. 2:21-CV-01189-RFB-BNW

Mr. Epstein responded quickly with operational input—and that Mr. Sullivan replied—is unremarkable in the corporate context and does not negate the primary, legal purpose of Mr. Sullivan's inquiry. *See In re Grand Jury*, 23 F.4th at 1091–94 (a communication with both a legal and a business purpose is privileged so long as the primary purpose of the communication is to obtain or provide legal advice).

As the context surrounding the redacted, privileged communications shows, the primary purpose of Mr. Sullivan's question in the Sullivan Texts was to obtain legal advice and under Ninth Circuit law, that is dispositive.

### B.    The Sullivan Texts Comprise A Request For Legal Advice From A General Counsel

Defendants are not designating the Sullivan Texts as privileged based merely on the fact that Mr. McKnight is on the chain, as Plaintiffs suggest. (*See* Mot. at 15 ("[M]erely copying counsel on an otherwise non-privileged communication cannot attach the privilege.").) To the contrary, the Challenged Documents comprised a communication seeking legal advice from the inception and the addition of Mr. McKnight—less than two minutes after the initial text—was a correction of an inadvertent omission from a communication that was always intended to reach him. (*See* Pls. Exs. 8-12.)

Plaintiffs' reliance on the "cc'ing counsel" line of cases is misplaced as those cases do not apply where the substance of the communication is itself a request for legal advice rather than an attempt to add an attorney to a chain of a non-privileged discussion in order to argue for a privilege that does not exist. (*See* Mot. at 15-16 (citing *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 909 (N.D. Cal. 2023); *Garcia v. County of Stanislaus*, 2022 WL 4237960, at *19 (E.D. Cal. Sept. 13, 2022); *McCullogh v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 237 (N.D. Ill. 2014); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013); *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 164 (D.N.J. 2008)).) These cases are inapposite given the facts here. *See, e.g.*, *Phillips*, 290 F.R.D. at 651-52 (finding no privilege where attorney on emails that did not contain any advice given by attorney nor request for legal advice); *Garcia*, 2022 WL 4237960, at *19 (counsel received a disputed document a year

after the report was provided to other parties); *In Facebook Inc.*, 655 F. Supp. 3d at 909, 911 (documents not protected work product simply because they are in an investigation file prepared by an attorney).

### C.    Mr. McKnight Provided Legal Advice In The Sullivan Texts

The question posed in the Sullivan Texts was legal in nature, and Mr. McKnight responded in his capacity as an attorney. (*See* Pls. Ex. 6.)  The purpose of requesting Mr. McKnight's advice was to ascertain the ███████████████████████████████████████████. (*Id.*) Others on the Sullivan Texts were able to respond to any business question Mr. Sullivan might pose; the addition of Mr. McKnight in fact underscores that it was legal advice which Mr. Sullivan sought.  Plaintiffs' assertion that Mr. McKnight, as in-house counsel, "does not necessarily serve in an exclusively legal role," (Mot. at 16), is unsupported, untethered to the facts, and entirely ignores the clear purpose for which Mr. McKnight was included in this conversation.  The only evidence Plaintiffs point to in support of their argument that Mr. McKnight was providing "non-legal advice" is an unredacted, non-privileged portion of the same text thread, in which Mr. McKnight texts "Yeah what Dana said!!!" in response to a comment from Mr. White. (Mot. at 16 (referring to Pls. Ex. 8 at 3).)  An off-handed comment at the end of text thread cannot strip a communication of its privileged nature and the Court should reject Plaintiffs' invitation to be the first court to adopt such a rule.

### D.    Defendants' Privilege Log Sufficiently Describes The Privileged Nature Of The Sullivan Texts

As required by the Amended Protective Order, Defendants' privilege log identifies the participants, the date, the general subject matter (███████████████████), and the basis for the privilege claim (request for legal advice directed to General Counsel, Mr. McKnight). (*See* Pls. Ex. 6.)  This is all the information Plaintiffs need in order to address a privilege assertion. *See Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 322 F.R.D. 571, 584 (S.D. Cal. 2017) (citing Fed. R. Civ. P. 26(b)(5)(A)).

Despite the detail provided by Defendants, Plaintiffs still argue that the privilege log is "conclusory" because it describes the communication as seeking "legal advice" without further

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO PLS' MOTION TO
CHALLENGE DEFS' PRIVILEGE DESIGNATIONS

7

CASE NO. 2:21-CV-01189-RFB-BNW

detail, and cite *Ignite Spirits Inc. v. Consulting by AR, LLC*, 2023 WL 2308262 (D. Nev. Feb. 28, 2023). (Mot. at 16.) Defendants should not be compelled to reveal privileged details in order to defend the privilege designation, and the law does not require them to do so.

For example, Plaintiffs erroneously cite *Ignite Spirits* where the court rejected descriptions like "Email Re: Ltr. Agreement" that gave no indication whatsoever of the subject matter or the nature of the legal advice sought. *See* 2023 WL 2308262 at *3. Here, by contrast, the privilege log specifically identifies the topic—███████████████████████—the nature of the communication—a request for legal advice—and the attorney to whom the request was directed. (*See* Pls. Ex. 6.) This is precisely the level of specificity that privilege logs are designed to provide, and requiring more would compel disclosure of the very substance the privilege is intended to protect.

**E.** **Inadvertent Production Does Not Constitute Waiver or Necessitate *In Camera* Review**

The attorney-client privilege remains intact where the producing party takes reasonable steps to prevent disclosure and promptly seeks to claw back the documents upon discovering the error. This principle is memorialized by the parties' Amended Protective Order, which lays out a specific process and timeline to address precisely this circumstance. (*See* Dkt. No. 475 (Amended Protective Order).) Inadvertent production of privileged documents is a common occurrence during the course of large-scale document reviews and productions and is not evidence of waiver. Indeed, inadvertent disclosure is why the claw back framework exists and why the parties specifically contemplated such a possibility.[3]

Nevertheless, Plaintiffs claim that because the Sullivan Text was previously reviewed by

---

[3] Plaintiffs do not argue that the fact that Mr. Sullivan inadvertently failed to include Mr. McKnight in his initial text production constitutes a waiver of privilege, and even if their brief is read to suggest that, the argument fails. District courts in the Ninth Circuit have established that privilege protects two types of non-lawyer communications: (1) communications in which employees discuss or transmit legal advice already given by counsel; and (2) communications in which an employee discusses her intent to seek legal advice about a particular issue. *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1077; *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3-4 (N.D. Cal. 2003) ("[C]ommunications between non-lawyer employees about matters [for] which the parties intend to seek legal advice are likewise cloaked by attorney-client privilege.")

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO PLS' MOTION TO
CHALLENGE DEFS' PRIVILEGE DESIGNATIONS

8

CASE NO. 2:21-CV-01189-RFB-BNW

an attorney before its initial inadvertent disclosure that somehow the Sullivan Text is rendered not privileged. (Mot. at 20-21.) Plaintiffs contend this "alone should meet the minimal threshold burden" for *in camera* review. (*Id.* at 21.) But accepting Plaintiffs' argument would effectively render the parties agreed-upon claw back provisions meaningless, as any prior production decision could be used to defeat a subsequent privilege assertion. The Court should decline to accept such a sweeping theory which would gut the very purpose of claw back provisions.[4] What is more, Plaintiffs fail to provide any *factual* basis to question what the privilege log, the claw back correspondence, and the unredacted portions of the documents all consistently confirm: Mr. Sullivan's communication was a request for legal advice directed to General Counsel Mr. McKnight regarding ████████████████████, and that Mr. McKnight responded with legal guidance. (*See* Pls. Ex. 6; Pls. Ex. 2; Pls. Ex. 8.)[5]

## V.    CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiffs' Motion.

---

[4] Similarly, the Court should reject Plaintiffs' invitation to assess Defendants' privilege assertions here based on a privilege dispute from *Le v. Zuffa, LLC*. (Mot. at 18 n.10.) Prior outcomes in separate litigation—involving different communications and different legal issues—have no bearing on whether these specific documents satisfy the elements of the attorney-client privilege.

[5] As Plaintiffs have already acknowledged, their arguments are undergirded by the fact that they have already been exposed to the privileged substance of the Sullivan Texts. (*See* Dkt. No. 507-5 at 1 (Pls. Ex. 3; 4/9/2026 email from P. Madden) ("[T]he description of the privilege in Defendants' privilege log both conflicts with the remaining non-clawed back portion of the document *and what Plaintiffs already know to be the substance of the text's inquiry*.") (emphasis added).) This is entirely improper, explicitly prohibited by the Court's Amended Protective Order (Dkt. No. 475 at § 11 (c)), and should not be permitted.

Dated: May 4, 2026

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

J. COLBY WILLIAMS (No. 5549)
jcw@cwlawlv.com
SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

Respectfully Submitted,

By: /s/ *Christopher S. Yates*
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

SEAN M. BERKOWITZ *(Pro hac vice)*
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700

LAURA WASHINGTON *(Pro hac vice)*
laura.washington@lw.com
JOSEPH AXELRAD (*Pro hac vice*)
joseph.axelrad@lw.com
DANIELLE LENECK (*Pro hac vice*)
danielle.leneck@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5500

*Attorneys for Defendants Zuffa, LLC, and TKO Group Holdings, Inc.*

DEFENDANTS' OPPOSITION TO PLS' MOTION TO
CHALLENGE DEFS' PRIVILEGE DESIGNATIONS

CASE NO. 2:21-CV-01189-RFB-BNW

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Zuffa, LLC, And TKO Operating Company, LLC's Opposition To Plaintiffs' Motion To Challenge Defendants' Privilege Designations was served on May 4, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ Christopher S. Yates
Christopher S. Yates (*Pro hac vice*) of
LATHAM & WATKINS LLP

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' OPPOSITION TO PLS' MOTION TO
CHALLENGE DEFS' PRIVILEGE DESIGNATIONS

11

CASE NO. 2:21-CV-01189-RFB-BNW