Rory T. Kay (NSBN 12416)
Emily M. Dennis (NSBN 16396)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rkay@mcdonaldcarano.com
edennis@mcdonaldcarano.com

Maaren A. Shah (*admitted pro hac vice*)
Sami Rashid (*admitted pro hac vice*)
Ellison Merkel (*admitted pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 5th Ave
New York, NY 10016
Telephone: (212) 849-7000
maarenshah@quinnemanuel.com
samirashid@quinnemanuel.com
ellisonmerkel@quinnemanuel.com

Kristin N. Tahler (*admitted pro hac vice*)
William R. Sears (*admitted pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S Figueroa St 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
kristintahler@quinnemanuel.com
willsears@quinnemanuel.com

*Attorneys for Endeavor Group Holdings, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, AND TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ZUFFA, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>　　　　　Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**ENDEAVOR GROUP HOLDINGS, INC.'S RESPONSE TO PLAINTIFFS' STATEMENT REGARDING MISSING INFORMATION FOR THE CRITICAL CUSTODIANS** |

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

## I.    INTRODUCTION

What is amply apparent from Plaintiffs' Statement Regarding Missing Information For The Critical Custodians, filed on June 12, 2026 (the "Statement"), is that Plaintiffs have *no* credible allegations of spoliation regarding Endeavor.[1]  At most, Plaintiffs recite stale information and speculation that has no basis in the actual evidence and is, in many cases, demonstrably inaccurate. For example, ███████████████████████████████████████████████████████████████ ██████████████████ But that is untrue. ████████████████████████████████ █████████████████████████████████████████████—before their filing. ███████████ ███████████████████████████████████████████████████████████████████████ Also untrue.  As Endeavor has repeatedly told Plaintiffs, █████████████████ ███████████████████████████████████████████████████████████████████████ Plaintiffs either negligently overlooked or intentionally misstated these objective facts, but whether by design or through carelessness, the implication is equally serious.  At this late stage of these spoliation proceedings, having made very serious accusations against Endeavor executives and seeking drastic, dispositive sanctions against Endeavor, Plaintiffs have an obligation to this Court to present accurate and carefully considered information.  They have failed to do so.  Indeed, this Court has asked Plaintiffs to identify with specificity any "gaps" and allegedly missing information underlying their spoliation allegations so that Defendants and the Court may have a sound understanding to address this inquiry.  Yet Plaintiffs have not even ensured that they are presenting the Court with up-to-date, accurate information.  Plaintiffs' slapdash approach should cast serious doubt on Plaintiffs' already groundless allegations of spoliation against Endeavor.  The law and equity require *far more* before a Court can even entertain the drastic relief Plaintiffs seek against Endeavor, and Plaintiffs have fallen woefully short.

---

[1]   This brief is not a full opposition to all spoliation issues, nor does it include all arguments Endeavor might raise in an opposition to any forthcoming renewed motion for spoliation sanctions that Plaintiffs may make, and Endeavor reserves the right to make all such arguments at the appropriate time.

1

The fundamental touchstone of a spoliation inquiry is a showing that information was lost **and** that the lost information was ***relevant*** to the issues in the case, even before reaching the requirement of intentional destruction. *E.g.*, *Asfaw v. Wal-Mart Stores, Inc.*, 2021 WL 2006283, at *2 (D. Nev. May 19, 2021) (denying spoliation sanctions when party seeking sanctions did not explain how the purportedly spoliated evidence was relevant to their claims); *Saxton v. Cnty. of Sonoma*, 2024 WL 5174215, at *3 (N.D. Cal. Dec. 18, 2024) (similar); *accord* Fed. R. Civ. P. 37(e) Advisory Committee's Note to 2015 Amendment (explaining that Rule 37(e) applies "only when [ESI] is lost" and is meant to codify the common law rule that "potential litigants have a duty to preserve *relevant* information when litigation is reasonably foreseeable") (emphasis added). Plaintiffs can barely show, without speculation, that any information was lost. They certainly cannot show that any potentially lost information was relevant to the issues in this case. The record is entirely to the contrary. Without this basic, threshold showing—which underlies every spoliation inquiry as a first step and for which Plaintiffs bear the burden of proof—the Court need go no further.

Plaintiffs' submission identifies Mr. Emanuel's, Mr. Shapiro's and Mr. Whitesell's potential Signal usage as the sole basis for their spoliation allegations as against Endeavor.[2] ECF No. 606 at 25-28. Yet Plaintiffs identify zero basis to conclude that any of Emanuel, Shapiro or Whitesell ever used Signal to exchange messages relevant to this case regarding UFC business or with UFC personnel, much less that any such messages were thereafter lost. ██████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████—a subject that is entirely irrelevant here. Despite this glaring deficit, Endeavor has still gone to extraordinary lengths to provide information to address Plaintiffs' allegations. ████████████████████████████████████

██████████████████████████████████

---

[2] Putting aside Plaintiffs' allegation that "Defendants have not produced Emanuel's WhatsApp messages for the period after January 2023," ECF No. 606 at 31, which is false and cannot be a basis for spoliation as those messages have indeed been collected and produced.

2

Plaintiffs' newly constructed allegations as to Mr. Whitesell are even more far afield, ████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Notably, however, the same cannot be said for Plaintiffs, whose produced text messages reveal widespread Signal usage among fighters highly likely to be relevant to this action—yet Endeavor has been able to identify no Signal messages in Plaintiffs' productions to date. To the extent that Plaintiffs take the position that mere use of an ephemeral messaging app during the pendency of a litigation hold is indicia of spoliation, that finding needs to apply equally, if not with more force, to Plaintiffs. Many of Plaintiffs' allegations as to Endeavor boil down to mere presence of an application on a device. This, however, does not equate to use, much less relevant use, much less spoliation. And while Endeavor takes its disclosure obligations with the utmost seriousness, and has supplemented the record and addressed questions at every turn, an inadvertent non-disclosure of the presence of an application on a device does not constitute spoliation. Plaintiffs, who bear a high burden of proof on this issue, have come forward with no actual evidence of spoliation as to Endeavor, and all of the available information in fact disproves it. After tremendous Court and party time and resources already expended to turn over almost every stone, there is simply no credible basis for any inference of spoliation against any of Mr. Emanuel, Mr. Shapiro or Mr. Whitesell, or against Endeavor. The inquiry can and should end here.

Nor, as explained further below, would there be any legal or factual basis to impute any ultimate spoliation remedy to Endeavor. Plaintiffs make no showing that Endeavor substantially and pervasively controlled the day-to-day operations of UFC/Zuffa so as to establish the existence of an agency relationship between them. This is the threshold required to begin consideration of any remedy by imputation, and such a result would be unprecedented in these circumstances. Further, the existence of any material controller or agency relationship is inextricably intertwined with the ultimate liability issues as to Endeavor, and constitutes a fact question that Nevada law reserves for the jury.

3

## II.    BACKGROUND

As counsel for Endeavor has previously noted and the Court has acknowledged, Endeavor is materially differently situated from other parties as to discovery and spoliation issues.  See ECF No. 549 (Hr'g Tr.) 55:19–56:2.  Endeavor has a limited role in this dispute.  Endeavor was not a party to any UFC-related antitrust case until this action was filed on June 23, 2021, and the allegations against it are confined to just two of the 156 paragraphs in the operative complaint, which are limited to describing Endeavor's role as UFC's corporate parent.  ECF No. 118 (Am. Compl.) ¶¶ 30, 32; ECF No. 174 (Hr'g Tr.) 25:12–17.  Recognizing Endeavor's limited role, the Court has narrowed discovery to jurisdictional matters and authorized early summary judgment.  ECF No. 174 (Hr'g Tr.) 30:15–17, 34:11–16.  Despite this, Endeavor has gone well beyond the jurisdictional discovery the Court authorized to further demonstrate that Endeavor is not an appropriate party to this case, producing thousands of documents to date, including productions of messaging communications through linear review, and has committed to reviewing approximately 450,000 additional documents identified by its proposed search terms.

Notwithstanding its limited role, Endeavor has made extraordinary efforts to investigate Plaintiffs' spoliation allegations.

Plaintiffs have also raised complaints about Endeavor's productions from Mr. Emanuel's WhatsApp account post-January 2023.  Endeavor has also squarely addressed these stated concerns

4

██████████████████████████████████████████████████████████████████████ Endeavor has produced all such relevant messages.

Endeavor has been transparent about these updates and worked cooperatively with Plaintiffs over the past several months. On April 10, 2026, Endeavor told Plaintiffs that █████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████ Ex. 1 at 2. Endeavor also told Plaintiffs that ███████ ███████████████████████████████████████████████████████████ *Id.*

On May 15, 2026, Endeavor explained to Plaintiffs that the ███████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████ Ex. 2 at 2. Endeavor stated that █████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ *Id.* Endeavor explained that this was corroborated by Mr. Emanuel, ████████████████████████████████ ██████████████████ *Id.* Endeavor further explained that ████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████ *Id.* The May 15 letter stated that ███████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

████████████████████████████████████████████████

██████ *Id.* at 3.  This is consistent with ██████████████

████████████████████████████

Endeavor reiterated these points in its June 2 filing.  ECF No. 575.  Endeavor again explained that ████████████████████████████████

██████████████ *Id.* at 7 n.1.  Endeavor also explained that ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████ *Id.* at 4.

The parties met and conferred on June 9, 2026.  On that meet and confer, Endeavor ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████ Ex. 3 at 2.  This letter also noted that ████████████████

████████████████████████████████████ *Id.* at 3.  Despite Endeavor's wholesale transparency, Plaintiffs have forged ahead, largely ignoring the information Endeavor provided and instead hewing to their preconceived and demonstrably incorrect theories of spoliation.

Plaintiffs state that "Endeavor has informed Plaintiffs that Emanuel has wiped his iPhone 13 Pro, which he used to conduct Endeavor business, including through Signal, months if not years before September 2024."  ECF No. 606 at 26.  But Endeavor has told Plaintiffs repeatedly that

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Ex. 2 at 2; Ex. 3 at 1.

McDONALD ⊗ CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Plaintiffs also misleadingly state that "Defendants' collections of Emanuel's devices (except the April 30, 2026 collection of his iPhone 16 Pro) . . . that had Signal installed were not full file system extractions and thus were insufficient to collect Signal communications, data on message retention settings, or even data on participants in Signal chats." ECF No. 606 at 26. They further assert that Endeavor has failed to collect Signal data for Mr. Emanuel prior to September 2024. *Id.* at 28. Plaintiffs know this is wrong because ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████ ECF No. 575 at 4. Endeavor then informed Plaintiffs that ████████████████████ ██████████████████████████ Ex. 3 at 2.

Plaintiffs go on to state that "[t]he Collection Reports, produced on May 11, 2026 for Emanuel . . . and June 1, 2026 for . . . Shapiro, marked the first time Defendants silently acknowledged that these custodians had Signal installed." ECF No. 606 at 26. This too is false. On April 10, 2026, Endeavor told Plaintiffs ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████ Ex. 1 at 2. It also stated that ████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ *Id.* Additionally, ██████ ████████████████████████████████████████████████████████ ██████████████████████████ ECF No. 520 at 14.

Plaintiffs completely ignore Endeavor's repeated recent statements about its supplemental WhatsApp production, and the production itself, blindly continuing to claim that "Defendants have not produced Emanuel's WhatsApp messages for the period after January 2023." ECF No. 606 at 31. Again, not true. As explained above, Endeavor told Plaintiffs repeatedly that ████████

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

███████████████████████████████████████████████████████

███████████████████████████████████████████

## III. PLAINTIFFS' CLAIMS ABOUT SPOLIATION OF SIGNAL MESSAGES ARE ENTIRELY BASELESS

Plaintiffs first raised allegations of spoliation as to Endeavor in their February 25, 2026 Motion for Sanctions, *see* ECF No. 450 at 5, limited to Mr. Emanuel's use of Signal arising from the WWE litigation. Plaintiffs' Statement now confirms that alleged Signal usage is the sole basis for Plaintiffs' spoliation allegations as to Endeavor. ECF No. 606 at 25-28. It is worth noting, and Plaintiffs concede, that there are not and never have been any allegations of gaps or spoliation with respect to the Endeavor executives' document productions other than the use of Signal, and Endeavor has produced a decade's worth of relevant, responsive email, text message/iMessage and, as applicable, WhatsApp messaging data from Emanuel, Shapiro and Whitesell.

Plaintiffs' allegations of spoliation of Signal messages are wholly without merit. As Endeavor told Plaintiffs in a June 11 letter: ███████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████ Ex. 3 at 2. Endeavor also informed Plaintiffs:

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████ *Id.* Rather, all indications are that Mr. Emanuel and Mr. Shapiro primarily used email and text messages to communicate regarding UFC matters, with occasional WhatsApp messages, and Endeavor has produced these to Plaintiffs. Their document productions corroborate this.

Plaintiffs not only fail on the facts, they are also wrong under the law. "The party requesting spoliation sanctions bears the burden of establishing the elements of a spoliation claim." *Asfaw*, 2021 WL 2006283, at *1. Even where evidence is destroyed, "the party requesting spoliation

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966
McDONALD CARANO

sanctions must further demonstrate that… the evidence was relevant to the party's claim…." *Id.* It is well-settled that Endeavor executives had no obligation to preserve Signal messages when they did not use Signal for matters relevant to this case, *see J.T. v. City & Cnty. of San Francisco*, 2024 WL 3834200, at *1 (N.D. Cal. Aug. 14, 2024) ("The duty to preserve information pertains only to relevant records."), and all of the evidence shows that they did not use Signal for UFC business or with UFC personnel. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013) ("[t]he deletion of irrelevant evidence does not support a spoliation claim"). Endeavor's investigation of this allegation has and should conclusively put the issue to rest, and absent a concrete evidentiary showing from Plaintiffs otherwise (more than mere speculation or "what ifs"), there is no credible basis to resurrect it.

**A.    There Is Zero Indication, Much Less Credible Evidence, that Endeavor Executives Used Signal for Any Relevant Communications**

Since Plaintiffs first raised allegations regarding Signal spoliation, Endeavor has gone to great lengths and expended substantial effort and resources to address and answer these allegations.

---

[3]    To be clear, these devices were used ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Endeavor did this despite the Court's admonition that custodians need not "go into their storage shed or garage or whatever and dig through to find their own old iPhones." ECF No. 203 (Hr'g Tr.) 43:24–44:5, 49:7–11.

[REDACTED]

[REDACTED]

[REDACTED]

As Endeavor's counsel indicated to the Court, in a transparent disclosure that goes well beyond what would normally be revealed regarding the contents of a review of non-responsive, non-relevant personal messages, [REDACTED] *See* ECF No. 549 (Hr'g Tr.) 28:12–16. [REDACTED]

Importantly, Plaintiffs have raised zero basis to question the results of the Signal message review and counsel's investigation, which is far more extensive than ordinarily suffices even in the most complex litigations. *See Scalia v. Cnty. of Kern*, 576 F. Supp. 3d 703, 717 (E.D. Cal. Dec. 22, 2021) (denying request for spoliation sanctions when "Plaintiff fails to present evidence that the [allegedly spoliated evidence] existed at one time" and "a party seeking spoliation sanctions must do more than speculate evidence exists").

In addition, at Plaintiffs' request, Endeavor also [REDACTED]

[REDACTED]

---

[4] [REDACTED]

████████████████████ This is relevant not only to show Endeavor's extensive, good faith efforts, but also because it confirms that there is no extrinsic, forensic indication that Mr. Emanuel uses non-conventional messaging channels beyond email and text message/iMessage (and WhatsApp on occasion, often for international use) to conduct material business, let alone UFC business.  This conclusion, too, is additionally forensically supported by the Consilio report of Mr. Emanuel's three phone images that the Court ordered performed, ████████████████████████ ████████████████████████████ ECF No. 525; *see, e.g.*, *In re Ateco Inc.*, 2013 WL 5803651, at *8 (Bankr. C.D. Cal. Oct. 28, 2013) (finding no spoliation where "[v]olumes of evidence were indeed preserved and are available for review to shed light on the relevant events and communications" and moving party could not identify anything within that evidence suggesting relevant communications had been withheld); *Reinsdorf*, 296 F.R.D. at 629–30 (relying on existing documents to conclude "that nearly all of the deleted documents appear to have had no relevance to the claims and defenses in this action").

So, too, with Mr. Shapiro and Mr. Whitesell.  Mr. Shapiro's extremely limited use of Signal has no bearing on this case. ████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████

---

5   Plaintiffs' Motion Challenging Defendants' Privilege designations is still pending before the Court.  Plaintiffs' reliance on documents subject to this motion is yet another violation of the Amended Protective Order entered in this Action.  ECF No. 475 § 11(c) (stating that a party in receipt of inadvertently produced documents subject to a claim of privilege "shall not use such items for any purpose until further order of the Court.").

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████

The allegations as to Mr. Whitesell are even more fleeting. Plaintiffs complain that ████████████████████████████████████████████████ But there is no indication that Mr. Whitesell ever used the app, for business or personal or otherwise. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ is not synonymous with use, much less with relevant business use. And there is no indication of any Signal messaging by Mr. Whitesell that Plaintiffs can point to of any nature. Like Mr. Emanuel, Mr. Shapiro and Mr. Whitesell together have produced thousands of relevant and responsive emails and text messages/iMessages over the course of roughly a decade, and there is no indication from this extensive record of any gaps in production or that Shapiro or Whitesell conducted any relevant UFC business over Signal. Notably, this stands in sharp contrast to Plaintiffs' own productions, which, as described further below, show ████████████████████████████████████ ████████████████████████████████████████████████ and yet no Signals from Plaintiffs appear to have been produced.

Plaintiffs' suggestion of spoliation is further diluted by the dearth of evidence that the Endeavor executives meaningfully engaged in communications regarding, or were substantially involved in, the matters allegedly at the heart of this case—fighter contracts and matchmaking. Indeed, as UFC's witnesses testified during the evidentiary hearing on February 4-5, 2026, the negotiation of fighter contracts and salaries was left entirely to UFC's matchmakers (Hunter Campbell, Mick Maynard, and Sean Shelby). *See* ECF No. 417 (Hr'g Tr.) at 175:3–10 (where Campbell testifies that he, Shelby, and Maynard were the individuals "involved in deciding compensation levels and what fighters would be paid" and were "responsible for … deciding how the contract terms were ultimately finalized for each fighter"). When asked the question directly by the Court, Tracy Long confirmed that any conversations involving fighter negotiations would have been through Campbell, Shelby, or Maynard. *See* ECF No. 415 (Hr'g Tr.) 178:9–13 ("The Court:

12

So if … there was a conversation or an issue regarding fighter compensation, it would be one of the three of them?  The Witness: Yes.").  Not once over two days of witness testimony did a single UFC witness indicate that Emanuel, Shapiro, or Whitesell had any involvement in negotiating fighter contracts or pay.  *See generally,* ECF No. 415 (Hr'g Tr.); ECF No. 417 (Hr'g Tr.).  Their irrelevance to these core issues thus weighs against any inference that relevant material would have existed, let alone has somehow been lost or spoliated, on Signal.

Equally attenuated is Plaintiffs' complaint that Signal was not adequately disclosed earlier in the case.  Plaintiffs baldly assert that the inadvertent omission of Signal from prior device disclosures means that Endeavor custodians "appear[] to have intentionally concealed from their counsel that they were even using Signal," thus supporting a "presumption" that the custodians spoliated Signal messages.  ECF No. 606 at 25, 28.  But disclosure and spoliation are, as this Court has recognized, "separate issues," ECF No. 549 (Hr'g Tr.) at 12:17–13:7, and Plaintiffs' need to recast what is at most an inadvertent omission as "intentional concealment" only underscores how little stands behind their spoliation theory otherwise.  Any omission, moreover, was innocent, and has since been cured.  In response to the Court's directive that Defendants disclose "a listing of information related to business and personal phones, phone numbers, and apps or programs ***being used*** on these devices during the relevant time period, as described on the record," ECF No. 202 (emphasis added), counsel consulted each device image and listed every application shown to contain any messages—a proxy for those in use—even including ones with no apparent relevance, and fully disclosed this methodology.[6]  *See* Ex. 5 App. A, n.1 ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[6]  Plaintiffs themselves have acknowledged that the mere fact that an application was installed on a device does not mean that it was "used."  Ex. 18 at 4████████████████

████████████████████████████████████████

███████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ That methodology is consistent with the accounting the Consilio Collection Reports now provide. An application with no messages to collect would not appear—including an encrypted app like Signal, which a standard image cannot reach, or one the custodian never used.[7] The omission of Signal from these earlier device disclosures is therefore chiefly due to the fact that counsel prepared the disclosures by exporting a list of messaging apps with messages available directly from the device images they had collected; which, while consistent with images that are frequently used in discovery as a matter of standard practice, did not collect Signal due to its nonstandard encryption features. The absence reflects the method, not concealment, and absolutely no evidence of intentional concealment exists.[8] Any such suggestion is further rebutted by the procedural posture of the disclosure issue itself. At the September 29, 2025 discovery hearing, Magistrate Judge Weksler took up Plaintiffs' challenge to the adequacy of Defendants' device disclosures but did not resolve it—an issue Plaintiffs themselves acknowledged had not been "decided" and remained "technically pending." ECF No. 260 (Hr'g Tr.) at 38:3–5; *see also id.* at 40:4–9, 80:3–9. That issue was still pending before the Magistrate Judge without resolution when this Court took the discovery and spoliation issues up directly and ordered a spoliation hearing. *See* ECF No. 306 (Hr'g Tr.) at 62:12–14, 72:13–16. The omission of Signal from Endeavor's earlier device disclosures is thus, at most, a product of procedural misalignment, not concealment, and does not support Plaintiffs' spoliation allegations.

---

[7] The Court recognized at the June 3, 2025 hearing that a custodian "may not even remember [using an older messaging platform] themselves" and that there may be certain applications that do not carry over from phone to phone, but that "I don't know what I could order that would capture that." ECF No. 203 (Hr'g Tr.) at 44:16-23.

[8] Further, no functional prejudice exists. To the contrary, this methodology was indeed adequate to capture and disclose all applications with any conceivably relevant messages to this case—which is all the law fundamentally requires and consistent even with how Plaintiffs' counsel framed the obligation, as reaching only platforms "that have responsive materials." ECF No. 203 (Hr'g Tr.) at 44:16-23. For Mr. Emanuel, for example, the disclosures listed text messages, WhatsApp, and Instagram; and indeed, Mr. Emanuel's responsive communications consist entirely of text messages and WhatsApp, ███████████████████████████████████
██████████████████████████████████████████████

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

### B.    Plaintiffs' Brand-New Attenuated WWE Relevance Argument Should be Rejected

Faced with the fact that all evidence suggests that no relevant information has been spoliated (or even ever existed) on Signal, Plaintiffs now advance—for the first time—a superficial attempt to reverse engineer an argument that communications regarding WWE might somehow still be relevant to this case. ECF No. 606 at 27-28. Plaintiffs cite only two text messages among thousands produced in this case to bolster their new theory that "TKO explicitly links the WWE and UFC business (and other combat sports) in discussions about matters relevant to this case." ECF No. 606 at 27.[9] Yet given that TKO is the public company formed to house both the UFC and WWE businesses, it is entirely unsurprising that TKO executives (including Emanuel and Shapiro) may at times discuss those two businesses together following the merger. And that is all the two text messages cited by Plaintiffs show. Indeed, Plaintiffs' operative complaint contains only four mentions of WWE. Am. Compl. ¶¶ 31, 50, 72. None of them involves or mentions any relation between WWE and the pay of UFC fighters, the basis for Plaintiffs' brand new argument. To the contrary, the allegations emphasize the distinctness of UFC and WWE. *Id.* ¶¶ 50, 72.

Nonetheless, Plaintiffs now cite one instance, in January 2025 following the TKO merger,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ Plaintiffs'

Ex. 7.[10] The second purported connection Plaintiffs cite is even more speculative. Plaintiffs speculate that ████████████████████████████████████

---

[9] The fact that Plaintiffs have served no discovery pertaining to this theory underscores its irrelevance to the case. For good reason, as this theory is in tension with Plaintiffs' market definition in that it suggests that UFC and WWE are interchangeable. It is beyond speculative now to raise it at the eleventh hour to salvage their faulty spoliation claims.

[10] In this message, ████████████████████████████████

████████████████████████████████████████████ This does not "explicitly connect[] WWE revenues to the money available to pay UFC fighters" as Plaintiffs contend, but ████████████████████████████████

███████████████████████████

15

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ *Compare*

ECF No. 606 at 27-28 *with* Plaintiffs' Ex. 8. ████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *See Asfaw*,

2021 WL 2006283, at *2 (denying spoliation sanctions where plaintiffs "merely speculate[d] that [evidence] Defendant failed to preserve 'would likely have shown evidence related to the condition of the store at the time of the fall ... and could have shed light on Plaintiff's condition just before and/or after the fall'"); *Weinstein v. Meritor, Inc.*, 845 F. App'x 686, 688 (9th Cir. 2021) (Mem) (affirming district court's denial of sanctions where claim of spoliation was speculative); *Reinsdorf*, 296 F.R.D. at 631 ("Mere speculation that other deleted documents may exist that might be helpful to a party's case is also an insufficient basis for a finding of spoliation."). ████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████ Indeed, Plaintiffs concede as much.  ECF No. 606 at 27 █████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████—they are not.  Indeed, the fact that Plaintiffs cite only these two irrelevant examples from thousands of produced messages weighs ***against***, not in favor of, Plaintiffs' relevance claims. *Justice v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1132 (D. Or. 2015) ("plaintiff's failure to 'explain what specific misconduct' the sought-after discovery would allegedly reveal constituted an improper 'fishing expedition'" (quoting *In re Compl. of Judicial Misconduct*, 650 F.3d 1370, 1372 (9th Cir.2011))); *Saxton*, 2024 WL 5174215, at *3 (similar); *Hamilton v. Signature Flight Support Corp.*, 2005 WL 3481423, at *8 (N.D. Cal. Dec. 20, 2005) (similar).

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**C.    Plaintiffs' Own Signal Usage Undercuts The Validity Of Their Arguments**

The deep inquiry that Plaintiffs have demanded into Endeavor's executives' Signal usage—irrespective of any indication of relevance to this case—and their apparent suggestion that mere use of ephemeral messaging apps during litigation is indicative of spoliation is all the more surprising given Plaintiffs' demonstrated Signal usage for relevant matters. Plaintiffs go so far as to assert that "Emanuel's and Shapiro's demonstrated intentional use of Signal's automated deletion rules for business-related communications while subject to a litigation hold … support[s] the well-founded presumption that Emanuel [and] Shapiro … spoliated relevant and responsive Signal messages." ECF No. 606 at 28. This is not the law, absent a concrete showing that materially relevant messages to this case were in fact lost. *Herb Hallman Chevrolet, Inc. v. General Motors LLC*, 2024 WL 3160746, at *4 (D. Nev. June 24, 2024). However, if it applies at all, Plaintiffs' made-up standard must be applied equally to Plaintiffs.

████████████████████████████████████████████ Ex. 4. And unlike with the Endeavor executives, there is abundant, ***concrete*** evidence in the existing, produced documentary record that each named Plaintiff in the *Johnson* case used Signal prolifically and ████████████████████████████████████████

*Plaintiff Kajan Johnson:*



*Plaintiff Clarence Dollaway:*



*Plaintiff Tristan Connelly:*

Even more surprisingly, despite these indications that the named Plaintiffs were prolific users of Signal for fight and fighter communications, Endeavor has been unable to identify any Signal messages at all in Plaintiffs' productions to date. Nor have Plaintiffs explained whether they imaged their cell phones in a way that would capture any Signal messages, or whether they have preserved or attempted to collect any of these Signal messages. Given that it appears Signal was used by the named Plaintiffs prolifically for discussions with other fighters, it is highly likely that

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Plaintiffs used Signal to communicate about relevant matters. Certainly, Plaintiffs cannot hope to hold Endeavor to—or to ask the Court to hold Endeavor to—a higher standard than Plaintiffs themselves, who initiated this action and these spoliation allegations (and who have the burden of proof on both), must themselves be held to. *See, e.g., United States v. 99,223.7238 Acres of Land*, 2008 WL 11342921, at *2-3 (D.N.M. Mar. 28, 2008) (the fact that "while [Plaintiff] is being accused of spoliation and withholding documents, Defendants have engaged in the same conduct" weighs against the imposition of sanctions).

### D. Plaintiffs' Allegations Regarding Emanuel's WhatsApp Production Have Been Fully Resolved

Plaintiffs' identification in their Statement of purportedly missing WhatsApp data from Mr. Emanuel not only lacks merit, but verges into intentional misrepresentation. Endeavor has repeatedly informed Plaintiffs, in response to their prior inquiry, that Endeavor was in the process of collecting and producing post-2023 WhatsApp messages. For instance, in Endeavor's June 2, 2026 Status Report Concerning Certain Discovery Issues, Endeavor stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 575 at 7 n.1. On June 3 and June 9, Endeavor informed Plaintiffs' counsel during meet and confers that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 3 at 4.

Notwithstanding this, Plaintiffs' June 12 submission still identified, as a basis for their spoliation allegations, that "Defendants have not produced Emanuel's WhatsApp messages for the period after January 2023." ECF No. 606 at 31. This is flatly false and demonstrates the overzealousness and lack of attention (or worse) underlying Plaintiffs' spoliation allegations. Moreover, Plaintiffs cannot profess not to have read or received Endeavor's June 11 letter, as they self-servingly cited to that letter elsewhere in their June 12 submission. ECF No. 606 at 32. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and

have identified no deficiencies.  This is no basis for an inference of spoliation, and if anything Plaintiffs' spoliation allegations should accordingly be viewed with greater skepticism and diminished credibility across the board.

## IV.    ENDEAVOR CANNOT BE DEEMED RESPONSIBLE FOR SPOLIATION BY NON-ENDEAVOR CUSTODIANS AT THIS STAGE OR ON THIS RECORD

To the extent that the factual record concerning the roles of Mr. Emanuel, Mr. Shapiro and Mr. Whitesell in UFC business is illuminating on this inquiry, it is relevant only to rebut the speculation that any messages of material relevance to this case may have been lost.  This is because the record demonstrates a dearth of day-to-day involvement of any of these Endeavor executives in the operational activities that underpin the core allegations in this case—the alleged inclusion of certain provisions in fighter contracts.  Because these executives were not materially involved in such matters, it stands to reason that messages regarding such core matters were unlikely to have been exchanged by them to begin with, much less lost.  *In re Ateco Inc.*, 2013 WL 5803651, at *8 (finding no spoliation where "[v]olumes of evidence were indeed preserved and are available for review to shed light on the relevant events and communications" and moving party could not identify anything within that evidence suggesting relevant communications had been withheld ); *Reinsdorf*, 296 F.R.D. at 629–30 (relying on existing documents to conclude "that nearly all of the deleted documents appear to have had no relevance to the claims and defenses in this action").

However, an inquiry into these executives' roles and responsibilities regarding UFC business cannot be used, at this stage of the case or as part of these proceedings, to impute to Endeavor any sanctions that may ultimately be assessed for spoliation by non-Endeavor, UFC custodians.  As a legal matter, this result would be legally unprecedented and unsupportable.  Further, this would require a factual determination regarding the agency relationship between Endeavor and UFC that implicates the ultimate issue in this case and, under Nevada law, must be left to the jury.[11]

---

[11]   Endeavor does not understand that the precise nature of any sanctions imposed (as opposed to whether sanctions are appropriate at all) to currently be at issue in these spoliation proceedings. Endeavor reserves all rights regarding the nature of any sanctions, and all arguments concerning the extent to which such sanctions would apply to Endeavor.

Courts in the Ninth Circuit recognize that "spoliation of evidence may be imputed to a [party] who did not participate in the spoliation only where the destroying party is the 'agent' of that party." *Gemsa Enters., LLC v. Specialty Foods of Alabama, Inc.*, 2015 WL 12746220, at *9 (C.D. Cal. Feb. 10, 2015) (emphasis added) (quoting *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1110 (D. Ariz. 2014); *see also Edifecs, Inc. v. Welltok, Inc.*, 2019 WL 5862771, at *4 (W.D. Wash. Nov. 8, 2019) ("The current trend among district courts appears to be to impute liability for an agent's spoliation to the principal based on traditional notions of agency law, in which a defendant principal exercises control and authority over its third-party agent who possess the spoliated evidence.") (citation modified); *Gypsum Res., LLC v. Clark Cnty.*, 2022 WL 16951250, at *5 (D. Nev. Nov. 15, 2022) ("[A]gency law is directly applicable to a spoliation motion, and the level of culpability of the agent can be imputed to the master.") (internal quotations omitted). And under Nevada law, the "existence or non-existence of an agency relationship *is a question of fact for the jury*." *N. Nev. Mob. Home Brokers v. Penrod*, 96 Nev. 394, 397, 610 P.2d 724, 726 (1980) (emphasis added); *Shaw v. Delta Airlines, Inc.*, 798 F. Supp. 1453, 1457 (D. Nev. 1992) ("at trial the fact finder must examine the facts surrounding the relationship to see if a true principal-agent relationship existed"); *see also Ward v. Mgmt. Analysis Co. Emp. Disability Ben. Plan*, 135 F.3d 1276, 1284 (9th Cir. 1998) (holding that "[o]f course, the existence of an agency relationship generally presents a question of fact" that is ordinarily established by "evidence of control and apparent or applied authority"); *Rookward v. Mexicoach*, 680 F.2d 1257, 1261, 1263 (9th Cir. 1982) (reversing grant of summary judgement because of triable issues of fact, including whether an "agency" relationship existed, were improperly taken from the jury).

It is equally "axiomatic that [the parent-subsidiary] relationship does not establish a parent's liability for the acts of a subsidiary." *Brand Techs. v. Cox Enter.*, 2016 WL 11742893, at *6 (C.D. Cal. Dec. 6, 2016); s*ee also Baroi v. Platinum Condo. Dev., LLC*, 2012 WL 2847926, at *7 (D. Nev. July 11, 2012) (recognizing that "a subsidiary is not its parent's agent merely by virtue of the parent/subsidiary relationship"); *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 141 n.24

(3d Cir. 2009) ("We are aware of no authority for the proposition that a parent corporation, simply by virtue of ownership, may be held responsible for its subsidiary's alleged discovery violations.").[12]

It is no coincidence, then, that most courts address this issue only in evaluating whether a party-employer can be held liable for the spoliation of its *own* employee.  Endeavor has located no case in the Ninth Circuit—and Plaintiffs cite none—that imposes a spoliation remedy against the parent company of a part-owned subsidiary based on spoliation by the subsidiary's employees in circumstances like these.  *See Edifecs*, 2019 WL 5862771, at *4 ("There is scant Ninth Circuit authority squarely considering whether and under what circumstances spoliation of evidence may be imputed to a defendant who did not participate in the spoliation.").  And district courts outside of the Ninth Circuit have flatly rejected this notion.  *See, e.g.*, *Gurvey v. Fixzit Nat. Install Servs., Inc.*, 2011 WL 550628, at *5 (D.N.J. Feb. 8, 2011) (holding "spoliation inferences are only appropriately entered against the party that actually destroyed the evidence").  This makes sense because "a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed."  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F.Supp.2d 976, 992 (N.D. Cal. 2012); *see also Gemsa Enters., LLC v. Specialty Foods of Alabama, Inc.*, 2015 WL 12746220, at *10 n.8 (C.D. Cal. Feb. 10, 2015) (stating that it would be "inappropriate" to apply *respondeat superior* principles "in the context of spoliation if Counterclaimant neither knew nor approved of [the spoliating party's] actions"); *Gurvey*, 2011 WL 550628, at *5 ("Indeed, it would serve no sensible purpose to punish innocent co-defendants so severely for the malfeasance of others.  Given that the records in question were allegedly destroyed by the Fixzit Defendants, there is no cause to impute any spoliation inference against the Lamberti Defendants.").

---

[12] A subsidiary corporation and its employees can only be considered an agent of the parent "where the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities." *Salkin v. United States Auto Ass'n*, 767 F. Supp. 2d 1062, 1068 (C.D. Cal. 2011).  General oversight of the subsidiary does not suffice: "the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy." *In re Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1189 (S.D. Cal. 2017).

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

For all these reasons, courts often eschew making such fact-bound determinations at early stages of a case, including in the context of spoliation proceedings. *See, e.g., Scalia v. KP Poultry, Inc.*, 2020 WL 6694315, at *6 (C.D. Cal. Nov. 6, 2020) (because "[t]he question of whether an agency relationship exists is normally a question of fact . . . [i]f plaintiff seeks to prove the existence of an agency relationship, it appears that a summary judgment motion, as opposed to a motion seeking sanctions for discovery violations, would be the appropriate vehicle for plaintiff to advance that argument"); *Litton Syst's Inc. v. Ssangyong Cement Ind. Co. Ltd.*, 107 F.3d 30 at *6 (Fed. Cir. 1997) (holding that "disputed questions of fact going to the extent of SSY's actual control of M-Square" and the "determination of whether to disregard the corporate entity in order to impose liability is a fact-intensive inquiry" such that "it was improper for the district court to resolve disputed issues of fact material to that inquiry on what amounted to a summary judgment"). That guidance holds particular force here, where the intricacies of the agency relationship, if any, between Endeavor and TKO/Zuffa implicates the ultimate issue for the jury to decide going to Endeavor's liability on the merits for the alleged anticompetitive scheme. *Rookward*, 680 F.2d at 1261, 1263 (reversing grant of summary judgement because of triable issues of fact, including whether an "agency" relationship existed, were improperly taken from the jury).

Nor is there compelling evidence in the present documentary record that would support such an unprecedented remedy. The executives' testimony on this matter is unnecessary at this stage, as Endeavor has produced thousands of documents over the course of its relationship with UFC—and Zuffa/UFC has produced more than a million more—and there is no contemporaneous record of the type of pervasive day-to-day controller relationship or involvement in fighter contracts that would substantiate further inquiry. ███████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████ And, after September 2023, Emanuel and Shapiro became CEO and President/COO,

respectively, of the newly-formed TKO, and acted in those roles—and not in their roles as Endeavor executives—in overseeing UFC business thereafter.

Plaintiffs' cited evidence does not show detailed or pervasive involvement by Emanuel or Shapiro in what matters in this case: the imposition of allegedly restrictive or anticompetitive clauses in fighter contracts. █████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████ *Id*.

Plaintiffs' passing reference to an "Orphaned Handle" evincing a communication between Emanuel and a "prominent MMA fighter" is likewise telling. ECF No. 606 at 32. That fighter is former UFC champion Georges St-Pierre, and the one communication between him and Mr. Emanuel in the record is ███████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 19. That exchange reflects what Mr. Emanuel's dealings with fighters actually looked like—███████████████████████

███████████████████████████████████—that is plainly inadequate to substantiate the type of pervasive control that would be required for such a drastic and unprecedented remedy.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' allegations of spoliation against Endeavor have no basis, and the Court should reject any requests by Plaintiffs to find spoliation or impose sanctions, or for any further inquiry into this matter.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

Dated this 19th day of June, 2026

QUINN EMANUEL URQUHART &
SULLIVAN  LLP

By: *Maaren A. Shah*
Maaren A. Shah (*admitted pro hac vice*)
Sami Rashid (*admitted pro hac vice*)
Ellison Merkel (*admitted pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 5th Ave
New York, NY 10016
Telephone: (212) 849-7000
maarenshah@quinnemanuel.com
samirashid@quinnemanuel.com
ellisonmerkel@quinnemanuel.com

Kristin N. Tahler (*admitted pro hac vice*)
William R. Sears (*admitted pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S Figueroa St 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
kristintahler@quinnemanuel.com
willsears@quinnemanuel.com

Rory T. Kay (NSBN 12416)
Emily M. Dennis (NSBN 16396)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rkay@mcdonaldcarano.com
edennis@mcdonaldcarano.com

*Attorneys for Endeavor Group Holdings, Inc.*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of June, 2026, a true and correct copy of **ENDEAVOR GROUP HOLDINGS, INC.'S RESPONSE TO PLAINTIFFS' STATEMENT REGARDING MISSING INFORMATION FOR THE CRITICAL CUSTODIANS** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By: *Sam Cleveland*
Sam Cleveland

**INDEX OF EXHIBITS**

| Ex. | Description | Page No. |
|---|---|---|
| 1 | Endeavor's Letter Response to Plaintiffs' April 3, 2026 Letter, dated April 10, 2026 [Filed Under Seal] | 5, 7 |
| 2 | Endeavor's Discovery Update Letter to Plaintiffs, dated May 15, 2026 [Filed Under Seal] | 5, 6 |
| 3 | Endeavor's Letter to Plaintiffs re June 9, 2026 Meet and Confer on Spoliation Allegations, dated June 11, 2026 [Filed Under Seal] | 6, 7, 8, 19 |
| 4 | JOHNSONPLTFF0018111 [Filed Under Seal] | 12, 18 |
| 5 | Defendants' Discovery Update Letter re Mobile Devices and Appendix A (Listing of Mobile Device Information), dated July 3, 2025 [Filed Under Seal] | 13 |
| 6 | JOHNSONPLTFF0019258 [Filed Under Seal] | 17 |
| 7 | JOHNSONPLTFF0043135 [Filed Under Seal] | 17, 24 |
| 8 | JOHNSONPLTFF0042615 [Filed Under Seal] | 17, 24 |
| 9 | JOHNSONPLTFF0051881 [Filed Under Seal] | 18 |
| 10 | JOHNSONPLTFF0040521 [Filed Under Seal] | 18 |
| 11 | JOHNSONPLTFF0040539 [Filed Under Seal] | 18 |
| 12 | JOHNSONPLTFF0063592 [Filed Under Seal] | 18 |
| 13 | JOHNSONPLTFF0055590 [Filed Under Seal] | 18 |
| 14 | JOHNSONPLTFF0041287 [Filed Under Seal] | 18, 24 |
| 15 | JOHNSONPLTFF0063873 [Filed Under Seal] | 18, 24 |
| 16 | JOHNSONPLTFF0063901 [Filed Under Seal] | 18, 24 |
| 17 | JOHNSONPLTFF0080119 [Filed Under Seal] | 18 |
| 18 | Plaintiffs Johnson, Dollaway, and Connelly's Answers to Defendants Zuffa, LLC and TKO Operating Company, LLC's Second Set of Interrogatories, dated June 18, 2026 [Filed Under Seal] | 13, 17 |
| 19 | ENDEAVOR_00084923 [Filed Under Seal] | 24 |

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966