**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, AND TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | Case No. 2:21-cv-01189-RFB-BNW<br><br>**RESPECTIVE PARTY STATEMENTS REGARDING THE INTERROGATORY LIMIT** |

## I. DEFENDANTS' STATEMENT

Pursuant to the Court's directive at the August 6, 2026 status conference, Defendants respectfully submit this statement of their position on the current limit on interrogatories. Defendants propose raising the interrogatory limit to 50 and 40 interrogatories per side in the *Johnson* and *Davis* actions, respectively (90 interrogatories total, up from 37 interrogatories per side across both cases, *see* ECF No. 229 at 7), applying Plaintiffs' proposed method of counting interrogatories by the number of required responses—including, as applied to Defendants, by the number of custodians whose information is sought in a given interrogatory. To remove any ambiguity and avoid disputes over counting, Defendants also propose that, at the time any interrogatory is served, the serving party will expressly specify whether that interrogatory calls for a single joint response or individual responses, so that both sides know at the outset how that interrogatory counts against the limit. This proposal is a genuine compromise, is supported by good cause given the number of factual and legal issues in these highly complex antitrust class actions, and imposes no cognizable prejudice on Plaintiffs.

The parties met and conferred on this issue but were unable to reach agreement. On August 13, 2026, Defendants presented to Plaintiffs the above compromise proposal. On the same day, Plaintiffs rejected this proposal, countering that the current 37-interrogatory limit should remain in place, with the parties meeting and conferring if either side later sought to expand the limit on a showing of good cause. As the parties were unable to resolve their dispute, Defendants respectfully submit this statement setting forth their position for the Court's consideration.

Good cause exists for Defendants' proposed expansion of the interrogatory limit. Defendants have agreed to resolve the parties' longstanding dispute over how to count interrogatories by adopting Plaintiffs' own counting methodology: an interrogatory calling for a joint response from all Plaintiffs would count as one interrogatory, while an interrogatory calling for individual responses from multiple Plaintiffs would be counted per response. Defendants further propose that this logic apply symmetrically to both sides, so that an interrogatory directed to Defendants that can be answered with a single, consolidated response counts as one interrogatory, while an interrogatory that requires collecting and providing individualized information from

multiple entities or custodians counts as one interrogatory per response. In order to accommodate this counting methodology and the significant legal and factual issues subject to discovery, Defendants in turn request that the numerical ceiling move from 37 to 90 per side across the consolidated *Johnson* and *Davis* actions.[1]

This modest increase is easily warranted given the scope and history of this litigation. It is well recognized that additional interrogatories are warranted in cases like this, which are "more complex than the typical federal case for which the presumptive limit was developed." *Protective Optics, Inc. v. Panoptx, Inc.*, 2007 WL 963972, at *2 (N.D. Cal. Mar. 30, 2007); *see, e.g.*, *Ott v. Mortg. Invs. Corp. of Ohio*, 2015 WL 691643, at *3 (D. Or. Feb. 17, 2015) (holding that additional interrogatories would be appropriate in a "complex proposed class action case involving multiple parties, claims, and affirmative defenses"); *Zakikhani v. Hyundai Motor Co.*, 2022 WL 2189539, at *4 (C.D. Cal. May 12, 2022) (finding that, even if the plaintiffs had exceeded the number of interrogatories allowable under Rule 33(a)(1), they had good cause to do so considering "the complexity and scope of the issues in the case"); *see also* Fed. R. Civ. Pro. 33 Advisory Committee Notes to 1993 Amendments ("In many cases it will be appropriate for the court to permit a larger number of interrogatories in the scheduling order entered under Rule 16(b)."). This is not a routine two-party dispute: it is a consolidated antitrust class action spanning two cases, four named Plaintiffs, multiple corporate Defendants, with distinct liability theories, new counsel, and putative class periods spanning well over a decade. *See, e.g.*, ECF No. 490-1 at 4 (Plaintiffs' counsel describing the case as "a complex antitrust matter, of significant importance"); ECF No. 720 (Aug. 6, 2026 Hr'g Tr.) at 48:22-23 (the Court noting that "new counsel" would also impact the interrogatory limit). In light of these circumstances, Defendants' proposal is facially reasonable, whereas adopting Plaintiffs' proposed counting rule means that even a small number of Plaintiff-specific interrogatories could be treated as multiple and rapidly exhaust the limit.

---

[1] Defendants maintain that the *Cirkunovs* action, which is currently upon appeal, belongs in arbitration and reserve the right to address any issues regarding the interrogatory limit in that action, if necessary, once the arbitration motion is resolved.

Indeed, Defendants' proposal reflects ***fewer interrogatories*** than the parties would be entitled to serve under the default Federal Rules. Rule 33(a)(1) would have permitted each Defendant to serve up to 25 interrogatories on each of the named Plaintiffs across the two actions, totaling as many as 100 per Defendant—that is, more than triple the 90-interrogatory-per-side ceiling Defendants now seek. *See* Fed. R. Civ. P. 33(a)(1); *e.g.*, *Zamora v. D'Arrigo Bros. Co. of Cal.*, 2006 WL 931728, at *4 (N.D. Cal. Apr. 11, 2006) ("According to the Federal Rules, *each* plaintiff may serve each defendant with 25 interrogatories.") (emphasis in original).

Moreover, changed circumstances warrant a modest enlargement of the interrogatory limit. The current limit, *see* ECF No. 229 at 7, was negotiated at an early stage of the case, based on Defendants' understanding that interrogatories would be counted by the number of interrogatories propounded, not by the number of responses any individual served. When the parties expanded the prior stipulated 27-interrogatory limit to 37, they did not include any counting instruction that would have departed from this convention. *See* ECF No. 229 at 7 n.3. Now that Plaintiffs have taken the position that they will count interrogatories served on all named Plaintiffs as three separate interrogatories, rather than one, the current limit is not workable and impedes Defendants' ability to pursue relevant discovery.

This is compounded by the fact that Plaintiffs' proposed counting methodology—if applied unevenly—has a disparate impact on Defendants given the nature of the parties: because Plaintiffs are individuals while Defendants are corporate entities, a single interrogatory directed to a corporate Defendant often requires collecting and analyzing information from multiple custodians and data sources. As such, an interrogatory directed to a single Defendant would only count as one interrogatory under Plaintiffs' proposed methodology, whereas the same interrogatory directed to multiple Plaintiffs would count as multiple interrogatories notwithstanding the relative ease of answering it. To illustrate, in April 2026, Plaintiffs served Interrogatory No. 12 on Zuffa alone, which contained nine subparts directed to approximately fourteen Zuffa custodians whose device usage overlapped with TKO and Endeavor. Under Plaintiffs' own counting methodology, that single interrogatory nonetheless yielded nine categories of information across fourteen custodians relevant to all three Defendants, while purportedly counting as only one interrogatory against

Plaintiffs' limit. In contrast, when Defendants served a substantively identical interrogatory (No. 3) on the three named *Johnson* Plaintiffs in May 2026, it counted as three interrogatories under Plaintiffs' rule, despite yielding information from only three individuals. This example underscores why Plaintiffs' counting methodology, applied asymmetrically, and without a corresponding increase in the overall limit, would leave Defendants at a significant disadvantage in obtaining discovery. Defendants' proposal remedies this imbalance by modestly raising the numerical limit and balancing the way responses are counted.

That is especially warranted because, since the prior limit was negotiated, new issues have emerged requiring additional discovery. For example, it has recently come to light—in interrogatory responses served earlier this week—that all three named Plaintiffs in *Johnson* used ephemeral messaging applications to text about relevant issues, and that those applications were not covered by a litigation hold until ***June 2026***, five years into this litigation. There are also hotly disputed issues regarding, *e.g.*, market definition and developments in the combat sports space over the past several years. *E.g.*, ECF No. 711. Interrogatories are an efficient way to gather evidence regarding these and other relevant issues.

In contrast, Plaintiffs face no prejudice from this expansion. Plaintiffs remain free to object to any individual interrogatory on relevance or proportionality grounds, and adopting their proposed counting methodology ensures no disproportionate burden. Nor does the increase affect the case schedule. Given the number of issues at play, the relative efficiency of gathering information via interrogatories, and the absence of prejudice, Defendants respectfully request that the Court adopt the proposed compromise and set the limit at 50 per side in the *Johnson* action and 40 per side in the *Davis* action, administered under Plaintiffs' counting methodology as applied symmetrically to both sides, whereby interrogatories are to be counted by the number of individual responses required, including, as to Defendants, on a per-response basis.

## II. PLAINTIFFS' STATEMENT

Defendants ask this Court to sanction their effort to renege on the Parties' agreement limiting the number of interrogatories that may be served in these Actions, as So-Ordered by this Court. Yet, to date, Defendants have not demonstrated a need to expand the Parties' previously agreed to and

Court-ordered limits. Any need for additional interrogatories beyond the already expanded limits is speculative. As a result, Plaintiffs propose that the Parties' current expanded interrogatory limits remain in place, *i.e.*, 37 interrogatories per side that are counted based on the number of answers required by the answering party, but that if, once those interrogatories are used, a Party can demonstrate good cause to expand the limits (such as to cover a topic or subject that was not reasonably known to the parties in 2025 when they made their agreement), the Parties will meet and confer on whether further expanded limits to take discovery on such topics are appropriate.

Plaintiffs' proposal accounts for the purpose of these limits: to reduce the burdens on the Parties and incentivize them to consider whether particular forms of discovery are appropriate to gain the information they seek. By setting an ample limit of 37 interrogatories per side, the Parties can plan those topics on which they will pursue discovery via interrogatory and those topics more appropriate to pursue via document requests, depositions, or requests for admission. To the extent, despite such planning, a Party determines that additional interrogatories are needed to cover previously unknown topics or topics or issues that were not previously well-understood, the Parties can meet and confer and seek relief from the Court if necessary based on the specific circumstances then present.

Defendants' proposal disregards the history of this litigation and well-exceeds any reasonable need. Nearly three years ago, the *Johnson* Parties agreed and the Court so-Ordered a limit of 27 interrogatories per side. ECF No. 82 at 11 (Sept. 22, 2023). The agreement was clear and explicit as to how those 27 interrogatories would be counted:

> The Parties propose that each side may collectively serve no more than 27 interrogatories on the other side. Thus, for example, Defendants may serve 10 interrogatories that require a separate response from each Plaintiff and 7 interrogatories that require a joint response from Plaintiffs. Similarly, Plaintiffs may, for example, serve 5 interrogatories to Defendant Endeavor, 10 interrogatories to Defendant Zuffa, and 12 interrogatories that require a joint response from Defendants.

*Id.* This method of counting interrogatories is not unique to these current Actions; it is exactly the method the plaintiffs and Zuffa agreed to (and abided by) in the *Le* Action.

Following that agreement, two things happened: (1) the *Johnson* Plaintiffs filed an Amended Complaint that added a Defendant (the then-newly formed TKO Operating Company, LLC) and

added a Plaintiff (Tristan Connelly), *see* ECF No. 118 (December 15, 2023); and (2) in late May 2025, Plaintiffs Phil Davis and Mikhail Cirkunovs filed separate additional actions. *See Cirkunovs v. Zuffa LLC*, No. 2:25-cv-914; *Davis v. Zuffa LLC*, No. 2:25-cv-946. The Parties recognized that the introduction of three Plaintiffs and one Defendant, including in two new (but substantively related) cases warranted revisiting the originally agreed and ordered discovery limits. *See generally*, Joint Status Report, ECF No. 229 at 6-8. Counsel for the Parties across the three cases met and conferred and agreed that 5 additional depositions per side (10% increase over the prior agreement and order) and 10 additional interrogatories per side (37% increase over the prior agreement and order) would appropriately account for these developments. *Id.* at 6-7.

Above, Defendants now profess that they somehow did not understand that the agreed expanded limits on interrogatories from last year tracked the same counting methodology Zuffa agreed to in *Le* and Zuffa and Endeavor agreed to in *Johnson* three years ago. That is not credible, and if true, is unreasonable and should not be a basis to expand the limits now.

Despite these clear, agreed limits, on March 24, 2026, Defendants Zuffa and TKO served their First Set of Interrogatories on the *Johnson* Plaintiffs, which included 29 interrogatories each requiring an individual response from each *Johnson* Plaintiff (for a total of 87 interrogatories under the Parties' agreed counting methodology for purposes of the agreed and Court-ordered limits). *See* ECF No. 498 at 6-7.[2] When Plaintiffs raised with Defendants that these interrogatories did not comply with the limits, Defendants initially claimed that the Parties' 2025 agreement abandoned the prior counting methodology, which requires believing that the Parties agreed (without explicitly saying so) that the interrogatory limits had expanded from 27 interrogatories to as many as 185

[2] These interrogatories covered numerous topics that are inappropriate because, for example, they seek information that is not relevant (or at best marginally so) or which is readily obtained by other forms of discovery. For example, those interrogatories demanded information in Defendants' possession, custody, or control (*e.g.*, multiple interrogatories concerning compensation and "Gifts" received from UFC, dates of Bout offers from UFC, the Plaintiffs' release from the UFC, multiple interrogatories concerning Plaintiffs' appearance in the UFC's own promotional materials and events), information that is public (and could have been confirmed by a Request for Admission instead of an Interrogatory), and vague requests for descriptions of the "value that the UFC provided" the fighter.

(nearly a 700% increase). For such a massive deviation from the Parties' prior agreement to be unstated is not credible. Plaintiffs laid out this defect in both an April 14, 2026 email and in the Parties' April 14, 2026 Joint Status Report. *See* ECF No. 498 at 6-7.

In any event, Defendants did not take any action to withdraw or alleviate the burden on Plaintiffs to object to these noncompliant interrogatories, and instead requested that the Court expand the limit to 50 interrogatories ***per Party*** (a total of 150 Interrogatories) across the three cases (*Johnson*, *Cirkunovs*, *Davis*). *Id.* at 12; *see also id.* at 6-7. Plaintiffs complied with their discovery obligations by timely serving objections to Defendants' non-compliant interrogatories on April 23, 2026. After Plaintiffs endured the burden of objecting to 87 non-compliant interrogatories, Defendants withdrew the interrogatories on May 7, 2026.

Defendants again seek to expand the interrogatory limits far beyond the Parties' prior agreements. Today, August 13, 2026, Defendants proposed a limit that expands the original *Johnson* agreed and Court-ordered limit from 27 to 50 in *Johnson* alone (a nearly 200% increase) and a separate proposal for 40 interrogatories per side in *Davis*, for a total of 90 interrogatories (a nearly 250% increase across the two Actions), not accounting for likely additional interrogatories in *Cirkunovs*. Notably, Defendants already agreed that "[t]o accomplish the efficient coordination of discovery across the *Johnson* … and *Davis* Actions, … any discovery from the *Johnson* Action (including the *Le* discovery) should be considered as also produced or taken in the … *Davis* Action, and *vice versa*." ECF No. 229 at 5. Because *Davis* discovery can be used in *Johnson* and vice versa, there is no reasonable ground for having separate discovery limits in the two cases: many, if not most or even all, contention interrogatories would likely be the same as between the two actions. So the only purposes of additional case-specific interrogatories would be to obtain individual answers or to serve still more burdensome contention interrogatories. In any event, the currently allotted limits are more than enough to obtain both individual answers to relevant questions and serve contention interrogatories.

There have been no developments in the Actions that warrant increasing the interrogatory limits and Defendants have made no effort to meet their burden for doing so. Above, Defendants claim that they recently discovered through an interrogatory response served this week that the

*Johnson* Plaintiffs each used "ephemeral messaging" applications to "text about relevant issues, and that those applications were not covered by a litigation hold until ***June 2026***." None of that is true. First, Defendants have not shown that the *Johnson* Plaintiffs used the automated deletion settings on any apps (unlike Ari Emanuel, Mark Shapiro, and Tracy long, to name three who have been demonstrated to have intentionally used such settings to destroy relevant communications). Second, the apps Defendants refer to were not, as they claim, used for relevant purposes (instead, they were used, for example, for Kajan Johnson's scheduling and administrative purposes in running his gym years after retiring from his professional MMA career). Third, Plaintiffs were subject to a litigation hold for all relevant communications through the litigation; that Plaintiffs' counsel determined through ordinary diligence that these apps were not used for relevant purposes and thus did not undertake to collect them earlier is not the same thing as relevant messages not being subject to a litigation hold. Regardless, even if what Defendants claim were true (it is not), Defendants' contention still would not warrant additional interrogatories, and they do not explain otherwise. Instead, it appears to be part of their continuing retaliatory campaign to allege spoliation to distract from their own misconduct.

While it is also true that Endeavor retained separate counsel, that does not mean that Endeavor can abdicate its prior agreements on discovery limits in this case. Even so, the substitution of counsel does not warrant increasing the limits from the expanded limit of 37 for all three cases to 90 interrogatories for two cases. Further, *Cirkunovs* is now stayed pending appeal, and may never return to active discovery, thus offsetting any purported need for an increase in the interrogatory limits across the Actions due to Endeavor's new, separately retained counsel. Defendants' requested expansion beyond the Parties' agreement should be denied

Dated: August 13, 2026

Respectfully Submitted,

By: /s/ Joseph R. Saveri
Joseph R. Saveri (*Pro hac vice*)
Christopher Young (*Pro hac vice*)
Kevin E. Rayhill (*Pro hac vice*)
Itak Moradi (*Pro hac vice)*
SAVERI LAW FIRM, LLP
550 California St., Suite 910
San Francisco, CA 94104
Telephone: +1 (415) 500-6800
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: imoradi@saverilawfirm.com

Eric L. Cramer (*Pro hac vice*)
Michael Dell'Angelo (*Pro hac vice*)
Patrick F. Madden (*Pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bergermontague.com
Email: mdellangelo@bergermontague.com
Email: pmadden@bergermontague.com

Joshua P. Davis (*Pro hac vice*)
Robert Maysey (*Pro hac vice)*
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bergermontague.com
Email: rmaysey@bergermontague.com

*Counsel for Plaintiffs and the Proposed Class*

Richard A. Koffman (*Pro hac vice*)
Benjamin D. Brown (*Pro hac vice*)
Daniel H. Silverman (*Pro hac vice*)
Daniel Gifford (*Pro hac vice)*
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave., N.W.
Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com
Email: dgifford@cohenmilstein.com

By: /s/ *Christopher S. Yates*
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

SEAN M. BERKOWITZ *(Pro hac vice)*
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
JOSEPH AXELRAD (*Pro hac vice*)
joseph.axelrad@lw.com
DANIELLE LENECK (*Pro hac vice*)
danielle.leneck@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5500

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-1061

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
BENJAMIN J. CABRANES (*Pro hac vice*)
bcabranes@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

YOTAM BARKAI (*Pro hac vice*)
ybarkai@dirllp.com
MATTHEW L. KAMINER (*Pro hac vice*)
mkaminer@dirllp.com

W. Joseph Bruckner (*Pro hac vice*)
Brian D. Clark (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Phone: (612) 596-4001
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle J. Pozan (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Phone: (612) 339-6900
Email: kjpozan@locklaw.com

*Additional Counsel for Plaintiffs and the Proposed Class*

Michael J. Gayan
CLAGGETT & SYKES
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107
(702) 323-7777
mike@claggettlaw.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

DUNN ISAACSON RHEE LLP
11 Park Place
New York, NY 10007

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

By: /s/ *Rory T. Kay*
RORY T. KAY (NSBN 12416)
rkay@mcdonaldcarano.com
EMILY M. DENNIS (NSBN 16396)
edennis@mcdonaldcarano.com
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100

MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL*(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER *(Pro hac vice)*
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

*Attorneys for Defendant Endeavor Group Holdings, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of August, 2026, a true and correct copy of **RESPECTIVE PARTY STATEMENTS REGARDING THE INTERROGATORY LIMIT** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By: */s/ Ahmari Johnson*
An employee of Saveri Law Firm