MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL *(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER (*Pro hac vice*)
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

RORY T. KAY (No. 12416)
rkay@mcdonaldcarano.com
EMILY M. DENNIS (No. 16396)
edennis@mcdonaldcarano.com
MCDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Tel: (702) 873-4100

*Attorneys for Defendant Endeavor Group Holdings, Inc.*

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

[Additional counsel listed on signature]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, TKO OPERATING COMPANY, LLC f/k/a Zuffa Parent LLC (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS IN RESPONSE TO DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION** |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. The Motion Is Ripe. ........ 3

B. Plaintiffs Are Obligated To Collect, Review, And Produce Responsive Non-Privileged Communications. ........ 4

1. The Named Plaintiffs' Communications Are Relevant. ........ 5

2. Plaintiffs' Failure To Preserve And Produce Warrants Disclosure Sufficient To Assess The Scope Of Data Loss. ........ 8

3. The Motion Is Timely And Appropriately Before The Court. ........ 8

III. CONCLUSION ........ 10

## TABLE OF AUTHORITIES


**Page(s)**

**CASES**

*Austin v. United Parcel Serv., Inc.*, 2002 WL 31050867 (S.D. Iowa Sep. 13, 2002) .......... 10

*Bailey v. City of Bellevue*, Nebraska, 2020 WL 5664947 (D. Neb. Sep. 23, 2020) .......... 10

*Best Buy Stores, L.P. v. Manteca Lifestyle Ctr.*, LLC, 2011 WL 2433655 (E.D. Cal. June 14, 2011) .......... 6, 8

*Crump Ins. Servs., Inc. v. McGrath*, 2008 WL 11388598 (N.D. Cal. Aug. 19, 2008) .......... 9

*Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) .......... 6

*Feit Elec. Co., Inc. v. CFL Techs. LLC*, 2023 WL 3436346 (N.D. Ill. May 12, 2023) .......... 9

*Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620 (D. Nev. 1999) .......... 9

*Haviland v. Cath. Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040 (S.D. Iowa 2010) .......... 9

*Jensen v. Boston Ins. Co.*, 20 F.R.D. 619 (N.D. Cal. 1957) .......... 6

*Rodriguez v. Simmons*, 2011 WL 1322003 (E.D. Cal. Apr. 4, 2011) .......... 8

*United States v. North Coast Transp. Co.*, 8 F.R.D. 62 (W.D. Wash. 1947) .......... 7

*V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356 (D. Nev. 2019) .......... 8, 9

*V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297 (D. Nev. 2019) .......... 10

*Wilbur v. Cnty. of Waukesha*, 2016 WL 4082666 (E.D. Wis. July 29, 2016) .......... 9

## RULES

Rule 26(b)(1) .....7

## OTHER AUTHORITIES

C.B. Dollaway Fight History, https://www.sherdog.com/fighter/CB-Dollaway-22350 (last accessed Aug. 24, 2026) .....3

Kajan Johnson Fight History, https://www.sherdog.com/fighter/Kajan-Johnson-5615 (last accessed Aug. 24, 2026) .....3

Kajan Johnson MMA, https://kajanjohnsonmma.com (last visited Aug. 24, 2026) .....7

Tristan Connelly Fight History, https://www.sherdog.com/fighter/Tristan-Connelly-61364 (last accessed Aug. 24, 2026) .....4

Zuffa, LLC, TKO Operating Company, LLC, and Endeavor Group Holdings, Inc. (collectively, "Defendants"), submit this Reply in Support of Defendants' motion to compel Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly to produce documents in response to Defendants' First Set of Requests for Production to Plaintiffs (the "Motion").

## I. INTRODUCTION

Plaintiffs' opposition highlights their hypocritical approach to this litigation. For close to a year, Plaintiffs claimed that the mere use of ephemeral messaging applications warrants the imposition of sanctions against Defendants. But after finally admitting last month to Named Plaintiffs' own use of such messaging applications (Signal and Telegram in particular), Plaintiffs now contend that their use presents no problem at all. Plaintiffs' opposition and their recent interrogatory admissions confirm several facts:

- Plaintiffs began using Signal and other ephemeral messaging applications as early as 2020;[1]
- Plaintiffs were never instructed to preserve any messages on their Signal or Telegram applications until June 19, 2026; and
- Plaintiffs never attempted to collect any communications from any of the Named Plaintiffs' Signal or Telegram applications until August 4, 2026.

Without reviewing any actual messages on Signal or Telegram for responsiveness, Plaintiffs now claim that any messages sent via Signal or Telegram are not relevant or responsive to any claim, defense, or allegation in this litigation. But that explanation is inconsistent with Named Plaintiffs' text messages that refer to use of ephemeral messaging applications. Plaintiffs claim, for example, that Plaintiff Kajan Johnson's "Fight Team Chat," which Plaintiffs describe as "strategy" and "marketing" related to Mr. Johnson's combat sports business, KajanJohnsonMMA.com, has nothing to do with anything in this case. Axelrad Decl. Ex. 2 at 3. Nonsense. Mr. Johnson's website repeatedly markets and sells Mr. Johnson's status as a former

[1] Although Plaintiffs' responses to Endeavor's First Set of Interrogatories state that each Named Plaintiff downloaded Signal in 2020, there is evidence that at least Mr. Dollaway used the application earlier. Axelrad Decl. Ex. 11 at -893.

UFC fighter and, of course, communications around his efforts to monetize his UFC career are directly responsive to multiple of Defendants' discovery requests and directly relevant to various defenses Defendants may raise.

What is more, the Named Plaintiffs appear to have ***intentionally used ephemeral messaging applications because of their ephemeral qualities***. In January 2024, when Mr. Johnson wanted to discuss subjects relevant to the "Fight Team Chat," he asked another individual "Do you have Signal" before the conversation apparently moved to that platform. *See* Axelrad Decl. Ex. 24 at -267. Plaintiff Clarence Dollaway told another MMA fighter to [redacted] *id.* Ex. 10 at -878, highlighting Signal's [redacted] *id.* Ex. 29 at -298, and in another instance told his business partner, "You will thank me some day" after inviting him to download Signal, *id.* Ex. 11 at -893–94. These are unmistakable examples of intentional efforts to move a conversation from regular text messaging to a disappearing message app such as Signal.

Even though the Named Plaintiffs used Signal and Telegram extensively, Plaintiffs said nothing for years and only admitted to such use in June 2026. On August 6, 2026, following Defendants' filing of this Motion, the Court made clear: "[T]here have been discovery requests propounded throughout this litigation. ***All parties have an ongoing obligation to respond to them for the entirety of the case whenever they encounter material***." Dkt. No. 720 at 22:4–7 (emphasis added). This Motion is necessary because Plaintiffs failed to meet that obligation.

Plaintiffs' opposition includes a last-minute concession to collect, review, and produce communications responsive to Defendants' First RFPs, but limits the agreement by saying that Plaintiffs will produce "subject to" their objections. *See* Dkt. No. 727 ("Opp.") at 20. The record is clear: the Named Plaintiffs used Signal and Telegram to communicate about facially relevant topics, but Plaintiffs did not even begin collecting from those applications until this month—five years after this litigation began and six years after the Named Plaintiffs first downloaded Signal. *See generally* Silverman Decl. Ex. 2.

Plaintiffs must produce all non-privileged documents and communications responsive to the First RFPs as written as well as vendor collection reports of the Named Plaintiffs' devices to determine what has been lost.

## II. ARGUMENT

### A. The Motion Is Ripe.

Plaintiffs contend that they mooted the Motion by agreeing to collect and produce from Signal and Telegram. They did not. Plaintiffs expressly refuse to review or produce documents responsive to the First RFPs *as written*, offering only to "produce any documents responsive to the First RFPs, subject to the objections and offer of production in Plaintiffs' R&Os, should any exist." Opp. at 20. Their offer resolves nothing. It preserves every objection this Motion challenges, and by conditioning production on existence, it seeks to insulate Plaintiffs from the consequences of their failure to preserve. Instead, Plaintiffs should be required to produce documents responsive to each RFP in the first set, without regard to their objections. And without an examination of Named Plaintiffs' devices to confirm what ESI remains and what is missing, Plaintiffs can simply respond that no responsive communications exist when the reality is that none were preserved.

The gap between Plaintiffs' offer and Plaintiffs' obligation is stark. Plaintiffs admit they are still "investigating the date range of Signal messages," and they make no representation whatsoever about whether they were able to collect any ESI from Telegram—just as their interrogatory responses refused to answer as to any application other than Signal. Silverman Decl. Ex. 2 at 8–9. What Plaintiffs offer, then, is to produce whatever they deem relevant from whatever happened to survive in Signal as of June 2026—nearly a decade after the start of the putative class period and six years after Named Plaintiffs admit they first downloaded Signal. *Id.* at 6–7. Even if anything survived Plaintiffs' failure to preserve, on Plaintiffs' own self-serving relevance rule, there would be effectively nothing to produce. According to Plaintiffs, anything post-dating the Named Plaintiffs' professional MMA careers is beyond the scope of discovery, Opp. at 3, 15, 17–19, which would exclude everything after 2018 for Johnson, 2020 for Dollaway, and 2022 for Connelly, *see id.* at 8, 16, 19.[2] Plaintiffs' interrogatory responses claim that each Named Plaintiff

---

[2] *See* Kajan Johnson Fight History, https://www.sherdog.com/fighter/Kajan-Johnson-5615 (last accessed Aug. 24, 2026); C.B. Dollaway Fight History, https://www.sherdog.com/fighter/CB-Dollaway-22350 (last accessed Aug. 24, 2026) (showing Dollaway's last fight in December 2019); Tristan Connelly Fight History, https://www.sherdog.com/fighter/Tristan-Connelly-61364 (last accessed Aug. 24, 2026) (showing Connelly's last fight as October 2022).

first downloaded Signal in or around 2020, meaning for Johnson and Dollaway, Plaintiffs would apparently deem every communication on Signal or Telegram categorically irrelevant. If responsive documents have been lost, Plaintiffs' offer gives Defendants no relief at all.

To the extent Plaintiffs argue that their responses to Endeavor's First Set of Interrogatories somehow satisfy Defendants' request for an examination of Named Plaintiffs' devices, they are likewise incorrect. Plaintiffs refused to answer the interrogatories as to any application except Signal. Silverman Decl. Ex. 2. And even as to Signal, Plaintiffs provided no information regarding whether their belated collection successfully captured ESI for the full relevant time period or whether any ESI was lost. *See id.* In fact, after over five years of *Johnson* pending before this Court and after almost a year of leveling spoliation allegations against Defendants, Plaintiffs still do not know whether and to what extent the Named Plaintiffs preserved any of their Signal messages. *See, e.g.*, *id.* at 8 ("Counsel is currently investigating the date range of Signal messages in Johnson's possession, custody, or control"). Indeed, it is unclear whether Plaintiffs are even capable of reviewing and producing the documents and communications requested by the First RFPs. As a result, Defendants seek production of all documents and communications responsive to the First RFPs as written and vendor collection reports of the Named Plaintiffs' devices. The Motion is ripe for resolution of these requests.

### B. Plaintiffs Are Obligated To Collect, Review, And Produce Responsive Non-Privileged Communications.

While Plaintiffs make much about their agreement to collect and produce communications from Signal and Telegram, they continue to refuse to produce *all documents and communications* responsive to the First RFPs from those applications. Plaintiffs should not be permitted to unilaterally narrow their discovery obligations, especially when their attempt to do so appears intended to paper over, at least, Plaintiffs' lack of preservation of responsive communications. And because Plaintiffs only began preserving Signal messages in the last several weeks (after Defendants called out their conduct, and five years after this litigation began), the Court should order Plaintiffs to produce vendor collection reports for the Named Plaintiffs' devices and then report to the Court on the scope of data loss and whether any responsive communications can be

recovered from those devices.

**1. The Named Plaintiffs' Communications Are Relevant.**

Plaintiffs do not dispute that the First RFPs seek relevant documents and communications. Instead, Plaintiffs argue that Defendants have not established the relevance of various unproduced Signal and Telegram communications which are referenced in Plaintiffs' productions. Plaintiffs' nonsensical argument is based not on any review by Plaintiffs' counsel, but instead on bare claims about the relevance of references to Signal and Telegram communications contained in the Named Plaintiffs' text messages, all of which suggest the corresponding Signal and Telegram chats are highly relevant and responsive. And since Plaintiffs have confirmed that the Named Plaintiffs were only instructed to preserve Signal within the last several weeks (and have said nothing about their efforts to preserve Telegram), it is unclear how Plaintiffs can make such a representation about the substance of what is contained within the Named Plaintiffs' actual Signal and Telegram accounts. The requested communications are relevant for the following reasons:

***First***, the references sprinkled throughout their text message production suggest the conversations the Named Plaintiffs intentionally moved over to Signal are relevant to the claims in this case and Defendants' defenses. For example, Plaintiffs described the Signal "Fight Team Chat" as an internal chat used to discuss "fight strategy, marketing, gym class coverage, and other logistics." Axelrad Decl. Ex. 2 at 3. A standing chat among Mr. Johnson, his business partners, and other fighters to discuss "marketing" and "strategy" is precisely where communications responsive to Defendants' discovery requests are likely to reside, including, for example:

- the "provision of [Named Plaintiffs'] services in connection with any COMBAT SPORT," (RFP No. 4);
- "AGREEMENTS between [Named Plaintiffs] and any SPONSOR, INCLUDING any actual or potential approach, solicitation, negotiation, inquiry, proposal," (RFP No. 7);
- "any actual or potential opportunity for [Named Plaintiffs] related to any SPONSOR," (RFP No. 8); and
- "AGREEMENTS entered into between YOU and any PERSON or PROMOTER for YOUR services as an agent, manager, PROMOTER, coach, trainer, cornerman, or other

service provided to any ATHLETE," (RFP No. 10).

This is more than enough to compel discovery. *Jensen v. Boston Ins. Co.*, 20 F.R.D. 619, 622 (N.D. Cal. 1957) ("There is no hard and fast rule regarding the degree of particularity with which documents sought by a motion to produce must be described. It is generally considered to be sufficient in this regard if the documents are denominated by categories, so long as the categories are defined in a reasonably specific manner."); *see also Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC*, 2011 WL 2433655, at *9 (E.D. Cal. June 14, 2011) (citing *Jensen*, 20 F.R.D. at 622).

In response, Plaintiffs claim that all discovery post-dating the Named Plaintiffs' professional MMA careers has no connection whatsoever to this action. Opp. at 14 (Plaintiffs limiting their discovery responses to only their "professional mma" careers). That is wrong as a matter of law. Dkt. No. 543 at 12–14. Discovery is not confined to Plaintiffs' self-serving definition of the relevant market, and Defendants' proposed market encompasses combat sports generally, including MMA, jiu-jitsu, boxing, muay tai, and other disciplines. Mr. Johnson's own representations undermine Plaintiffs' claim that the "Fight Team Chat" is outside the scope of discovery as Mr. Johnson confirms that he competed as a professional boxer as recently as 2025 and that he "still compete[s]." Axelrad Decl. Ex. 8 at 2. In other words, his combat sports career is ongoing, and related communications, including those concerning his services as an athlete or promoter, are plainly relevant and discoverable. *See* Dkt. No. 543 at 10–15.

***Second***, the Named Plaintiffs' ability to capitalize on their status as current or former UFC fighters bears directly on the offsetting benefits of Defendants' alleged conduct under the rule of reason. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 993–94 (9th Cir. 2023). Mr. Johnson invokes the UFC throughout his website on which he markets gym memberships and MMA, jiu-jitsu, and other classes. *See* Axelrad Decl. Ex. 8 at 1–2. Indeed, Johnson's status as a former UFC fighter is an essential part of his marketing and sales pitch, with his website prominently stating:

- "I spent years fighting at the highest level in the UFC—and I built this gym to give people the kind of training that actually works;"
- "From a northern town with no elite coaching… to the UFC… to building a gym that gives the next generation what I never had;" and

- "That journey eventually took me to the UFC, where I fought for 5 years and went toe-to-toe with some of the best in the world—including current UFC lightweight champion Islam Makhachev."

*See id.* at 2; Kajan Johnson MMA, https://kajanjohnsonmma.com (last visited Aug. 24, 2026). Plaintiffs offer no authority to suggest this evidence is outside the scope of discovery, and Rule 26(b)(1) does not require Defendants to prove their case in order to discover evidence bearing upon it.

Similarly, Plaintiffs do not deny that Mr. Connelly used Telegram to send promotional and marketing videos and to communicate with trainers. Nor do they deny that promotions secured on the strength of the Named Plaintiffs' UFC careers are relevant to their claims and Defendants' defenses. To the contrary, they have already produced these sorts of documents and videos in this litigation. Axelrad Decl. Exs. 24–25. Just not from Signal or Telegram. Of course, this is because the Named Plaintiffs' ability to leverage their UFC careers to obtain promotional and marketing opportunities goes directly to the offsetting benefits of Defendants' alleged conduct. In opposition, Plaintiffs argue that Defendants cannot show that the *particular videos* sent via Telegram are relevant to any claim or defense. But that is the point: because Plaintiffs never reviewed or produced the videos, Defendants cannot confirm their contents or whether Mr. Connelly traded on his status as a UFC fighter to secure the relevant promotion. *United States v. North Coast Transp. Co.*, 8 F.R.D. 62, 63 (W.D. Wash. 1947) ("If the [documents] could be described in all detail, no order for production at this time would be necessary; their contents would be known.").

As to Mr. Dollaway, despite apparent Signal messages with business contacts, Plaintiffs claim, without support, that Mr. Dollaway's Signal use is limited to messages with his wife and wave away the evidence of his consistent use of Signal with other fighters as "obviously irrelevant and highly prejudicial." Opp. at 19. Plaintiffs do not explain why Mr. Dollaway's messages with other fighters are supposedly irrelevant or why they are prejudicial because, of course, they have never seen them and therefore do not know their content. Plaintiffs improperly place the burden on Defendants to specifically explain the relevance of communications Plaintiffs have never produced. But that is not the law. *Best Buy Stores, L.P.*, 2011 WL 2433655, at *9; *Rodriguez v.*

*Simmons*, 2011 WL 1322003, at *4 (E.D. Cal. Apr. 4, 2011) ("There is no hard and fast rule regarding the degree of particularity with which documents must be described.") (citation omitted).[3]

**2. Plaintiffs' Failure To Preserve And Produce Warrants Disclosure Sufficient To Assess The Scope Of Data Loss.**

Consistent with the law, the Court recently instructed: "All parties have an ongoing obligation to respond to [discovery requests] for the entirety of the case whenever they encounter material." Dkt. No. 720 at 22:4–8; *see also V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366–67 (D. Nev. 2019) ("When no responsive documents are found or a dispute arises out of the completeness of the production that is made, the [responding party] must come forward with an explanation of the search conducted 'with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.'"). But that has not happened here. Plaintiffs failed to meet the standard they staked out and admit to only beginning to preserve Signal messages starting in June 2026—six years after the Named Plaintiffs first downloaded Signal. Vendor collection reports identifying what was collected from the Named Plaintiffs' devices, and the date ranges of that material, will allow the Court to measure what survived against the years Plaintiffs concede they were using these applications. Defendants produced the same reports from their e-discovery vendors on a far thinner record.

**3. The Motion Is Timely And Appropriately Before The Court.**

Despite the Parties' ongoing discovery obligations, Plaintiffs argue Defendants waited too long (and, at the same time, moved too quickly) to seek their responsive Signal and Telegram communications. *See* Opp. at 13–19. Plaintiffs are wrong for two reasons.

***First***, Defendants did not forfeit their right to compel communications responsive to the First RFPs. Plaintiffs cannot have it both ways: Defendants supposedly should have discovered the Named Plaintiffs' Signal and Telegram use by combing Plaintiffs' productions, yet Plaintiffs

---

[3] Without a hint of irony given Plaintiffs' discovery of Defendants, Plaintiffs also claim the collection and review of the three Named Plaintiffs' devices would be unduly burdensome. Regardless, since Plaintiffs have already agreed to conduct a review, albeit an insufficient one, any burden argument is moot.

conducted a linear review of those same materials and claim they had no idea the Named Plaintiffs used ephemeral messaging applications. That is as nonsensical as it is unreasonable. Defendants had no reason to suspect that Plaintiffs were using the very applications Plaintiffs were simultaneously telling the Court are indicative of spoliation. And Plaintiffs did not confirm their Signal use until responding to Defendants' interrogatories in June. Axelrad Decl. ¶¶ 9–10. So, any purported "delay" should be measured from the date Plaintiffs admitted their use of ephemeral messaging applications (June 19, 2026), not from their November 2023 responses and objections to the First RFPs.

Even measured from when Plaintiffs claim Defendants should have known of their Signal and Telegram use (sometime after July 2025), the Motion is timely.[4] Opp. at 5. Motions to compel filed during the discovery period, like Defendants', are "rarely . . . considered untimely," *Crump Ins. Servs., Inc. v. McGrath*, 2008 WL 11388598, at *2 (N.D. Cal. Aug. 19, 2008) (quoting *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999)); particularly where no depositions have yet occurred, no dispositive motions have yet been briefed, Plaintiffs have identified no prejudice to them, and Defendants had no reason to suspect Plaintiffs were withholding an entire category of ESI, *see V5 Techs.*, 332 F.R.D. at 360–61, 364, 366 (factors weighed in favor of finding a motion to compel timely despite 11-month delay). Plaintiffs identify no Ninth Circuit case to the contrary.[5] Moreover, this Court instructed the parties to file any motion to compel before the

---

[4] To the extent Plaintiffs argue that the timeliness clock started when they first served responses and objections to the First RFPs, that does not change the outcome here. *See Crump Ins. Servs., Inc. v. McGrath*, 2008 WL 11388598, at *2 (N.D. Cal. Aug. 19, 2008); *V5 Techs.*, 332 F.R.D. at 360–61.

[5] Plaintiffs' out-of-circuit authorities are distinguishable because they generally involve a motion filed much closer to the discovery cutoff, well after the parties had already reached an impasse. *Feit Elec. Co., Inc. v. CFL Techs. LLC*, 2023 WL 3436346, at *11 (N.D. Ill. May 12, 2023) (finding motion to compel untimely where the parties had been at "impasse for several years on [the relevant] issue"); *Haviland v. Cath. Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010) (finding motion to compel untimely where it was filed 11 days prior to the close of fact discovery); *Wilbur v. Cnty. of Waukesha*, 2016 WL 4082666, at *3 (E.D. Wis. July 29, 2016) (denying motion to compel filed on the very last day of discovery, despite the moving party being aware of the disagreement for over a year); *Austin v. United Parcel Serv., Inc.*, 2002 WL 31050867, at *4 (S.D. Iowa Sep. 13, 2002) (rejecting motion to compel where granting the request would "amount to a wholesale reopening of discovery only two months prior to the scheduled trial

substantial completion deadline—precisely what Defendants did. Dkt. No. 720 at 37:5–7.

***Second***, Defendants pressed Plaintiffs for weeks for an answer to a basic question: whether Plaintiffs were withholding responsive documents and communications from Signal, Telegram, or any other application. Plaintiffs refused to answer. Axelrad Decl. ¶¶ 9–19. After Defendants stated their intention to move to compel, Plaintiffs confirmed they would not reconsider their responses and objections to the First RFPs and would not collect, review, or produce additional communications responsive to those RFPs. Axelrad Decl. Ex. 16 at 8–9. Rather than indulge Plaintiffs' continued foot-dragging, Defendants filed the instant Motion. *See V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 303 (D. Nev. 2019) ("There is no point in the Court requiring further conferral efforts when [the opposing party] know[s] [the movant's] positions (as displayed in writing) yet continue[s] to dispute the motion.").[6] Defendants' motion to compel is properly before the Court and should be granted.

## III. CONCLUSION

For the foregoing reasons and those set forth in the Motion, Defendants respectfully request that the Court grant the Motion and compel Plaintiffs to collect, review, and produce all documents and communications responsive to the First RFPs as written, regardless of the application on which they are stored, and provide a vendor collection report for each of the Named Plaintiffs' digital devices and report on the Signal and Telegram messages that remain so that the Court can assess the nature and extent of any data loss.

---

date") (cleaned up); *Bailey v. City of Bellevue, Nebraska*, 2020 WL 5664947, at *5 (D. Neb. Sep. 23, 2020) (challenging 18 discovery responses after months of discovery conferences and a meet and confer).

[6] Plaintiffs' recent responses to Endeavor's First Set of Interrogatories confirm the Motion was necessary. Plaintiffs' responses only address Signal but not Telegram, withhold the date on which any hold notice may have been issued, and disclose nothing about the Signal material actually in Plaintiffs' possession (if any). *See* Silverman Decl. Ex. 2 at 6–9. Rather than moot this Motion, as Plaintiffs claimed they would, those responses leave open the central issue of what responsive ESI Plaintiffs may have that has not yet been produced.

Dated: August 24, 2026

Respectfully Submitted,


By: /s/ *Maaren A. Shah*
MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL *(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER *(Pro hac vice)*
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

RORY T. KAY (No. 12416)
rkay@mcdonaldcarano.com
EMILY M. DENNIS (No. 16396)
edennis@mcdonaldcarano.com
MCDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Tel: (702) 873-4100

*Attorneys for Defendant Endeavor Group Holdings, Inc.*

By: /s/ *Christopher S. Yates*
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

SEAN M. BERKOWITZ *(Pro hac vice)*
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
JOSEPH AXELRAD (*Pro hac vice*)
joseph.axelrad@lw.com
DANIELLE LENECK (*Pro hac vice*)
danielle.leneck@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5500

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-1061

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
BENJAMIN J. CABRANES (*Pro hac vice*)
bcabranes@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

YOTAM BARKAI (*Pro hac vice*)
ybarkai@dirllp.com
MATTHEW L. KAMINER (*Pro hac vice*)
mkaminer@dirllp.com
DUNN ISAACSON RHEE LLP

11 Park Place
New York, NY 10007

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Reply in Support of Defendants' Motion to Compel Plaintiffs to Produce Documents in Response to Defendants' First Set of Requests for Production was served on August 24, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list. The documents filed under seal were subsequently served on the appropriate counsel of record via electronic mail.

*/s/ Christopher S. Yates*
Christopher S. Yates (*Pro hac vice*) of
LATHAM & WATKINS LLP