MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL *(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER (*Pro hac vice*)
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

RORY T. KAY (No. 12416)
rkay@mcdonaldcarano.com
EMILY M. DENNIS (No. 16396)
edennis@mcdonaldcarano.com
MCDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Tel: (702) 873-4100

*Attorneys for Defendant Endeavor Group Holdings, Inc.*

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

[Additional counsel listed on signature]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, TKO OPERATING COMPANY, LLC f/k/a Zuffa Parent LLC (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS IN RESPONSE TO REQUESTS FOR PRODUCTION NOS. 48-56 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

# TABLE OF CONTENTS


Page(s)

I. INTRODUCTION ... 1

II. RELEVANT BACKGROUND ... 2

A. Plaintiffs' Case Is Premised On Alleged Resource Disparity Between Fighters And Defendants. ... 2

B. Plaintiffs Contend That The Cost Of Litigating The Merits Justifies Deciding Any Spoliation Issues First. ... 3

C. Plaintiffs Refuse To Amend Their Interested Parties Disclosure. ... 3

D. Plaintiffs Refuse To Produce Any Materials Concerning Third-Party Funding. ... 4

III. ARGUMENT ... 5

A. Plaintiffs' Litigation Funding Arrangement Is Relevant To Plaintiffs' Likely Trial Themes and Defendants' Defense. ... 5

B. Defendants Are Entitled To Information Concerning How Named Plaintiffs' Legal Expenses Are Being Paid. ... 7

C. Any Litigation Funding Arrangement Is Relevant To Adequacy. ... 8

D. Plaintiffs' Boilerplate Objections Are Improper And Do Not Excuse Their Failure To Produce. ... 9

IV. CONCLUSION ... 9

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Berger v. Seyfarth Shaw, LLP*,
2008 WL 4570687 (N.D. Cal. Oct. 14, 2008) ..... 7

*Bryant v. Mattel, Inc.*,
573 F. Supp. 2d 1254 (C.D. Cal. 2007) ..... 7, 8

*CFE Int'l LLC v. Turrent Schnaas*,
2026 WL 2387028 (S.D. Tex. Aug. 17, 2026) ..... 6

*Cont'l Circuits LLC v. Intel Corp.*,
435 F. Supp. 3d 1014 (D. Ariz. 2020) ..... 6, 7

*Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*,
2023 WL 4750822 (W.D.N.C. July 24, 2023) ..... 6

*Gbarabe v. Chevron Corp.*,
2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) ..... 8

*Haghayeghi v. Guess?, Inc.*,
2016 WL 9526465 (S.D. Cal. Mar. 21, 2016) ..... 8

*Kristensen v. Credit Payment Servs., Inc.*,
2014 WL 6675748 (D. Nev. Nov. 25, 2014) ..... 9

*Le v. Zuffa, LLC*,
No. 2:15-cv-01045-RFB-BNW (D. Nev.), ECF No. 839 ..... 1

*Nunes v. Lizza*,
2021 WL 7186264 (N.D. Iowa Oct. 26, 2021) ..... 6

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..... 8

*United States v. Blackman*,
72 F.3d 1418 (9th Cir. 1995) ..... 7

*V5 Techs. v. Switch, Ltd.*,
334 F.R.D. 306 (D. Nev. 2019) *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, 2020 WL 1042515 (D. Nev. Mar. 3, 2020) ..... 7

## RULES

Fed. R. Civ. P.
26(e) .......... 7
37 .......... 1

Local Rule
7.1-1 .......... 3
7.1-1(c) .......... 7
26-6 .......... 1

Pursuant to Local Rule 26-6 and Federal Rule of Civil Procedure 37, Zuffa, LLC, TKO Operating Company, LLC, and Endeavor Group Holdings, Inc. (collectively, "Defendants"), move for an order compelling Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly to produce all documents and communications responsive to Request Nos. 48–56 of Defendants' Second Set of Requests for Production of Documents to Plaintiffs (the "Motion").

## I. INTRODUCTION

Plaintiffs have repeatedly put the parties' relative resources at the center of this litigation but refuse to produce materials or answer any questions related to any outside litigation funding they may have secured to prosecute this case. Throughout this litigation, Plaintiffs have sought to cultivate a David vs. Goliath narrative with what they claim is a well-funded combat sports promoter on one side, and fighters who "can't feed [their] children" on the other. The same theme, pressed by the same counsel, was repeated throughout *Le* and persists in *Johnson*. *See, e.g., Le v. Zuffa, LLC*, No. 2:15-cv-01045-RFB-BNW (D. Nev.), ECF No. 839 at 36. Most recently, at the September 3, 2026 status conference, Plaintiffs' counsel argued that resolution of their spoliation allegations was urgently required and should precede the close of fact discovery and dispositive briefing because "class certification and summary judgment" are "incredibly expensive." Dkt. No. 756, Sept. 3, 2026 Hr'g Tr., at 107:10–20.

Defendants' Requests for Production Nos. 48–56 (the "RFPs") seek documents and communications related to any third-party litigation funding arrangement Plaintiffs may have entered in connection with the *Johnson* case. Plaintiffs have refused to produce documents responsive to these requests, asserting that the RFPs seek privileged or irrelevant information, are unduly burdensome, and are intended to harass.

These objections are baseless. Beyond the inequity of Plaintiffs having made the parties' respective financial capacities a centerpiece of their case while refusing to engage in discovery on this very subject, discovery into Plaintiffs' use of any third-party funding is essential for several reasons. First, courts routinely permit discovery into a party's litigation funding where, as here, the party's financial resources are part of its narrative and likely trial themes, because such materials can be used to refute the narrative raised at trial. Second, who is paying the Named

Plaintiffs' legal expenses bears directly on the credibility and bias of the Named Plaintiffs as fact witnesses. There are any number of litigation funding arrangements that would bear directly on the credibility of the Named Plaintiffs including, for example, funding by a competitor of Defendants or by a party with a financial interest in a competitor of Defendants. Third, any funder's economic stake, control rights, or veto rights implicate whether the Named Plaintiffs and their counsel can adequately represent the putative class.

Plaintiffs' unsupported, boilerplate objections do not establish otherwise. In any event, Defendants do not seek privileged materials or attorney work product. The RFPs seek the identity of any third-party funder of this litigation, the terms of any funding arrangement, and the extent of any funder's involvement in or control over it. The Court should order Plaintiffs to produce those materials, or to the extent they do not exist, to say so.

## II. RELEVANT BACKGROUND

### A. Plaintiffs' Case Is Premised On Alleged Resource Disparity Between Fighters And Defendants.

Plaintiffs' Amended Complaint alleges that the UFC "has foreclosed competition and gained, maintained, and enhanced its position as the dominant promoter of MMA and one of the most powerful organizations in professional sports." Dkt. No. 118 ("AC") ¶ 19. The UFC allegedly "generates approximately $900 million dollars in annual revenues and has profit margins higher than all or nearly all other major professional sports." *Id.* That purportedly "allows [the UFC] to exploit the MMA Fighters on whose backs the business rests." *Id.* Plaintiffs allege that fighters accordingly "go substantially undercompensated," with many earning in the low five figures per year from their agreements with the UFC and capturing a disproportionately low share of the UFC's revenues. *Id.* ¶¶ 19, 141, 144. The result, according to Plaintiffs, is that "the UFC has garnered and maintained unrivaled bargaining power vis-à-vis Professional MMA Fighters." *Id.* ¶ 102.

This same theme also featured prominently in *Le*, presented by the same counsel. For instance, both at summary judgment and class certification, the *Le* plaintiffs argued that Defendants exploited fighters' lack of financial means to coerce them into agreements favorable

to the UFC. *See Le* Dkt. Nos. 926 at 9 ("If you don't get your bout agreement, you don't get paid, you don't get money, you can't feed your children."), 518-3 at 52 n. 220 (similar). And the Court credited that position in granting class certification. *Le* Dkt. No. 839 at 36 ("Because Zuffa fighters did not get paid unless they fought, this enabled Zuffa to use various strategies related to the timing, placement, number and opponents of a fighter's bouts to coerce fighters into renewing their contracts early or extending their contracts in order to earn a paycheck."). The UFC's purported financial strength and fighters' relative lack of resources has been a central theme throughout *Le* and now in *Johnson* and *Davis*.

**B. Plaintiffs Contend That The Cost Of Litigating The Merits Justifies Deciding Any Spoliation Issues First.**

Consistent with that record, Plaintiffs have pressed the Court to decide any spoliation issues *before* class certification, *before* dispositive briefing, and *before* the close of fact and expert discovery—reversing their own earlier agreement that spoliation briefing follow the close of fact discovery. Dkt. No. 756, Sep. 4, 2026 Hr'g Tr., at 43:13–44:15, 72:25–73:9, 107:10–20; *see also* Dkt. No. 728 at 10-11. The reason Plaintiffs gave was cost. At the September 3, 2026 status conference, Plaintiffs' counsel argued that a sanctions determination—including potentially terminating sanctions against Defendants—should precede the close of fact discovery and dispositive briefing because "class certification and summary judgment" are "incredibly expensive," even though discovery would lead to additional evidence likely bearing on the spoliation issues. Dkt. No. 756, Sep. 3, 2026 Hr'g Tr., at 107:10–20.

**C. Plaintiffs Refuse To Amend Their Interested Parties Disclosure.**

Plaintiffs filed their certificate of interested parties on June 23, 2021. Dkt. No. 2. On December 15, 2023, Plaintiffs amended their complaint and added Plaintiff Tristan Connelly as well as various allegations. Dkt. No. 118. On May 7, 2026, Defendants requested confirmation that Plaintiffs did not intend to update or otherwise supplement their certificate of interested parties, as required by Local Rule 7.1-1. Axelrad Decl. ¶ 6, Ex. C. Plaintiffs responded on May 15, 2026 that they would confirm, but so far, have offered no reason why they have not supplemented their response with respect to Mr. Connelly, nor given any indication as to whether

their certificate of interested parties, filed more than five years ago, otherwise remains complete and accurate. *Id.*

**D. Plaintiffs Refuse To Produce Any Materials Concerning Third-Party Funding.**

On March 2, 2026, Defendants served their Second Set of Requests for Production to Plaintiffs ("Second Set of RFPs"). Those requests sought, among other things, documents and communications related to any third party sources of funding for Plaintiffs' pursuit of their claims in *Johnson*. Axelrad Decl. Ex. A. Specifically, Defendants served RFPs seeking the following:

- RFP No. 48: any engagement letter or other writing memorializing Plaintiffs' arrangements with any third-party sources of financial support for the *Johnson* case;
- RFP No. 49: documents sufficient to show the parameters of any third-party funding arrangement;
- RFP No. 50: documents and communications exchanged between Plaintiffs and any litigation funder or potential litigation funder;
- RFP No. 51: documents provided to any third-party litigation funder in connection with actual or potential funding;
- RFP No. 52: documents relating to due diligence conducted by any third-party litigation funder relating to the *Johnson* case;
- RFP No. 53: documents related to any control, approval, consent, or veto rights held or asserted by any third-party litigation funder over Plaintiffs' litigation strategy or other litigation-related decisions;
- RFP No. 54: documents and communications relating to any actual or potential conflict of interest arising from any funding arrangement;
- RFP No. 55: documents and communications governing Plaintiffs' interaction with any third-party litigation funder; and
- RFP No. 56: documents governing Plaintiffs' fee agreements and arrangement with counsel in *Johnson*.

*Id.* at 10–11.

On April 1, 2026, Plaintiffs served their responses and objections to the Second Set of RFPs. Axelrad Decl. Ex. B. Plaintiffs objected to each of the RFPs (1) "on the grounds it seeks documents and information protected by the attorney-client privilege and/or work product doctrine;" (2) "to the extent that it seeks documents or information that are not relevant to any claim or defense of any party" because "the burden of the discovery on Plaintiffs plainly outweighs any potential benefit to Defendants;" and (3) because it "appears calculated to harass Plaintiffs." *Id.* at 25–32. Plaintiffs refused to produce any documents or information in response to the RFPs. *Id*.

On April 17, 2026, the parties met and conferred. Axelrad Decl. ¶ 5. Plaintiffs repeated their objection that the RFPs did not seek relevant or discoverable information and maintained their refusal to produce responsive documents. *Id.* On May 8, 2026, Defendants informed Plaintiffs that they were "continu[ing] to consider Plaintiffs' positions on RFP Nos. . . . 48-56 (the Litigation Funder RFPs) and reserve[d] all rights with respect to those requests." Dkt. No. 543-16. After Plaintiffs' counsel argued that litigation costs justified advancing spoliation proceedings against Defendants, Defendants renewed their request on September 14, 2026, explaining that responsive materials may bear on Named Plaintiffs' and Plaintiffs' counsel's adequacy to represent the putative class and on Plaintiffs' own recent claims about their litigation costs, among other issues. Axelrad Decl. Ex. D. The next day, Plaintiffs responded that they were "stand[ing] on their objections" and would "not produce documents in response to [the RFPs]," *id.* Ex. E, leaving Defendants no alternative but to file this Motion.[1]

## III. ARGUMENT

### A. Plaintiffs' Litigation Funding Arrangement Is Relevant To Plaintiffs' Likely Trial Themes and Defendants' Defense.

Litigation funding materials are relevant to rebut the resource-disparity theme Plaintiffs

[1] If Plaintiffs in fact do not have any litigation funding arrangement, then this Motion could have been entirely avoided if Plaintiffs had simply answered that they do not have any litigation funding relationship(s). That Plaintiffs have entirely refused to do so speaks volumes and all but confirms the existence of such a relationship.

have pressed to date—and will press at trial.[2] Numerous courts hold that materials concerning a plaintiff's litigation funding arrangement "concern Plaintiff's financial resources and could be used to refute any David vs. Goliath narrative at trial." *Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020); *see also CFE Int'l LLC v. Turrent Schnaas*, 2026 WL 2387028, at *4 (S.D. Tex. Aug. 17, 2026) ("Courts have repeatedly allowed discovery into the sources of a party's litigation funding when that party presents [a David vs. Goliath] narrative."); *Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*, 2023 WL 4750822, at *7 (W.D.N.C. July 24, 2023) (litigation funding materials "pertinent to trial themes"). A plaintiff need only preview such a narrative in its pleadings or other filings for discovery into funding arrangements to be appropriate. *See, e.g., Nunes v. Lizza*, 2021 WL 7186264, at *6 & n. 3 (N.D. Iowa Oct. 26, 2021) (complaint "preview[ed] this narrative" by contrasting small town business owner plaintiffs with "global media, information, and services company" defendant); *Cont'l Circuits LLC*, 435 F. Supp. 3d at 1019 ("[A]t least some evidence suggests that [a David vs. Goliath] narrative will be asserted in this case."); *Electrolysis Prevention Sols. LLC*, 2023 WL 4750822, at *7 (defendant argued plaintiff would present the "narrative of a supposed lone inventor fighting against a large defendant"); *CFE Int'l LLC*, 2026 WL 2387028, at *4 (defendants argued they would be "unable to efficiently and effectively defend themselves given the extraordinary costs and inconvenience" of remaining in forum).

The relevance of Plaintiffs' litigation funding arrangement is apparent across the Amended Complaint, which is rife with allegations of a David vs. Goliath dynamic between the putative *Johnson* class members and Defendants. For instance, Plaintiffs allege that the UFC's financial resources, market position, and power allow it to "exploit" "undercompensated" fighters. AC ¶ 19. Those are not throwaway allegations; they bear directly on the merits of Plaintiffs' antitrust theories, as this Court recognized in *Le*. *Le* Dkt. No. 839 at 36. That the *Le* plaintiffs—represented by the same counsel as Plaintiffs here—developed the same theme throughout summary judgment

---

[2] For the avoidance of doubt, any reference to any purported resource disparity between Plaintiffs and Defendants would be inappropriate at trial. Defendants will file the appropriate motion to prohibit such references at the appropriate time and reserve all rights.

and class certification briefing confirms that Plaintiffs are virtually certain to press it at trial. *See Le* Dkt. Nos. 596 at 24 ("If you don't get your bout agreement, you don't get paid, you don't get money, you can't feed your children."), 518-3 at 53 n. 220 (same). Defendants are entitled to discover the financial facts needed to meet that narrative. *See Cont'l Circuits LLC*, 435 F. Supp. 3d at 1019.

### B. Defendants Are Entitled To Information Concerning How Named Plaintiffs' Legal Expenses Are Being Paid.

Independent of Plaintiffs' trial themes, Defendants are entitled to discovery into whether key percipient witnesses' legal expenses are being paid by third parties. It is well established that "fee-payment arrangements are relevant to credibility and bias, and discoverable." *Berger v. Seyfarth Shaw, LLP*, 2008 WL 4570687, at *1 (N.D. Cal. Oct. 14, 2008). The same rule applies to plaintiffs who are critical fact witnesses and whose legal fees may be paid by a third party. *See Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1274 (C.D. Cal. 2007) (citing *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995)). That rule squarely covers the Named Plaintiffs here: Plaintiffs' Rule 26(a)(1) Initial Disclosures identified Kajan Johnson and Clarence Dollaway as likely to possess discoverable information, and Defendants intend to depose each of the Named Plaintiffs and call them at trial, including Plaintiff Connelly.[3] As key percipient witnesses, then,

[3] Plaintiffs' Initial Disclosures were served before Tristan Connelly was named as a Plaintiff. Dkt. No. 216-19. But the record demonstrates that Mr. Connelly also has critical, percipient knowledge, and Defendants intend to depose him. Indeed, Plaintiffs should have already supplemented their initial disclosures and certificate of interested parties given the commands of Federal Rule of Civil Procedure 26(e)(1) and Local Rule 7.1-1(c). *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019) *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*, 2020 WL 1042515 (D. Nev. Mar. 3, 2020) ("Plaintiff has provided a certificate that on its face complies with the local rules and Plaintiff is under a duty to supplement that filing to the extent necessary regardless of any discovery request being made."). Although *V5 Techs.* held that plaintiff's fee agreements and the identity of plaintiff's litigation funder were not discoverable, that case is easily distinguishable. 334 F.R.D. at 313. The court did not consider whether the plaintiff's fee agreement was discoverable because the plaintiff was likely to be a key, percipient witness at trial, nor whether the specter of a David vs. Goliath theme at trial warranted discovery of litigation funding materials. Further, that case was not a putative class action where the adequacy of named plaintiffs or their counsel to represent the class was at issue. Indeed, the court explicitly acknowledged that "[c]ourts have also been more receptive to allowing [litigation funding] discovery in the context of class actions when concerns have arisen regarding the adequacy of class counsel." *Id.* at 311 n. 5. Each of those facts weigh in favor of granting the Motion here.

Named Plaintiffs' "fee-payment arrangements are relevant to credibility and bias, and if asked in discovery, [Named Plaintiffs] must disclose who is paying [their] legal fees." *Bryant*, 573 F. Supp. 2d at 1274 (overruling objections to deposition questions seeking identity of party paying plaintiff's legal fees). Should Plaintiffs' litigation funding arrangement include any connection to Defendants' various competitors, or those with a financial interest in Defendants' competitors, this would certainly be information a jury would be entitled to hear to evaluate the Named Plaintiffs' credibility, among other things.

**C. Any Litigation Funding Arrangement Is Relevant To Adequacy.**

Plaintiffs' third-party litigation funding also bears on a threshold Rule 23 question: whether the Named Plaintiffs and their counsel can adequately represent the putative *Johnson* class. Courts in this Circuit repeatedly recognize that litigation funding agreements are relevant to the adequacy of putative class representatives. *See Gbarabe v. Chevron Corp.*, 2016 WL 4154849, at *1-2 (N.D. Cal. Aug. 5, 2016) (granting motion to compel production of litigation funding agreement because it "is relevant to the adequacy determination"); *Haghayeghi v. Guess?, Inc.*, 2016 WL 9526465, at *1 (S.D. Cal. Mar. 21, 2016) ("The litigation funding documents and retainer and fee agreements are relevant to whether Plaintiff would adequately protect the interests of the class."). As the *Haghayeghi* court explained, "uncovering conflicts of interest between the named parties and the class they seek to represent is a critical purpose of the adequacy inquiry." *Id.* (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 957 (9th Cir. 2009)). Plaintiffs offer no reason why that rationale does not apply with equal force to the Named Plaintiffs here.

Moreover, litigation funding arrangements are especially probative of adequacy where, as here, questions exist about putative class counsel's ability and willingness to fund the litigation. *See Gbarabe*, 2016 WL 4154849, at *2 (considering argument that counsel was solo practitioner potentially dependent on outside funding to prosecute case). Plaintiffs' counsel recently told the Court that the cost to Plaintiffs of litigating both class certification and the merits justified advancing spoliation proceedings. Dkt. No. 756, Sept. 3, 2026 Hr'g Tr., at 107:17-20. The objective of that request is evident: resolving this case before the merits of Plaintiffs' claims are ever tested (albeit on an individual basis as no class would have been certified).

### D. Plaintiffs' Boilerplate Objections Are Improper And Do Not Excuse Their Failure To Produce.

Against these various grounds for production, Plaintiffs offer no substantive response at all. Plaintiffs met each of the RFPs with the same three rote, boilerplate objections: (1) "to the extent that it seeks documents and information protected by the attorney-client privilege and/or work product doctrine;" (2) "to the extent that it seeks documents or information that are not relevant to any claim or defense of any party" because "the burden of the discovery on Plaintiffs plainly outweighs any potential benefit to Defendants;" and (3) because it "appears calculated to harass Plaintiffs." Axelrad Decl. Ex. B. "Federal courts have routinely held that boilerplate objections are improper." *Kristensen v. Credit Payment Servs., Inc.*, 2014 WL 6675748, at *4 (D. Nev. Nov. 25, 2014) (citations omitted). Courts in this Circuit recognize that "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all," and that "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of document are insufficient to assert a privilege." *Id.* (internal citations omitted). Plaintiffs have made no attempt to substantiate their claims of privilege, burden, or harassment as to any individual request, and for the reasons explained above those objections are meritless in any event.[4] Plaintiffs should be compelled to produce all nonprivileged materials responsive to the RFPs.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion and order Plaintiffs to produce all documents and communications responsive to RFP Nos. 48-56 within fourteen days, or, to the extent no such documents exist, to so state in response to each of RFP Nos. 48-56, and to identify on a privilege log any responsive document withheld on privilege or work product grounds.

---

[4] Defendants do not seek documents or communications covered by the attorney-client privilege or work product doctrine. Defendants are unaware of any reason to assume that every document or communication concerning Plaintiffs' litigation funding arrangement might be covered by such privileges, and Plaintiffs have given none.

Dated: September 30, 2026

Respectfully Submitted,


By: /s/ *Maaren A. Shah*
MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL*(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER *(Pro hac vice)*
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

*Attorneys for Defendant Endeavor Group Holdings, Inc.*

By: /s/ *Christopher S. Yates*
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

SEAN M. BERKOWITZ *(Pro hac vice)*
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
JOSEPH AXELRAD (*Pro hac vice*)
joseph.axelrad@lw.com
DANIELLE LENECK (*Pro hac vice*)
danielle.leneck@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5500

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-1061

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
BENJAMIN J. CABRANES (*Pro hac vice*)
bcabranes@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

YOTAM BARKAI (*Pro hac vice*)
ybarkai@dirllp.com
MATTHEW D. KAMINER (*Pro hac vice*)
mkaminer@dirllp.com
DUNN ISAACSON RHEE LLP

11 Park Place
New York, NY 10007

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Motion to Compel Plaintiffs to Produce Documents in Response to Requests for Production Nos. 48-56 and Memorandum of Points and Authorities in Support was served on September 30, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Christopher S. Yates*
Christopher S. Yates (*Pro hac vice*) of
LATHAM & WATKINS LLP