# EXHIBIT D

BERGER | MONTAGUE

MICHAEL DELL'ANGELO
*EXECUTIVE SHAREHOLDER & GENERAL COUNSEL*
**d** 215.875.3080 **m** 610.608.8766 mdellangelo@bm.net

September 2, 2026

**VIA Email**
Joseph Axelrad
LATHAM & WATKINS LLP
joseph.axelrad@lw.com

Re: *Kajan Johnson, et al. v Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.*, No. 2:21-cv-01189-RFB-BNW (D. Nev.)

Counsel:

Plaintiffs write in connection with their forthcoming Seventh Production of Documents, to be produced this week, and in response to the August 31, 2026 letter of Defendants Zuffa, LLC and TKO Operating Company (herein "UFC").

The UFC's letter demanded a "substantive written response addressing" certain purported deficiencies in Plaintiffs' document production, which was substantially completed *over a year ago*. As discussed below, multiple of these alleged deficiencies are not deficiencies at all, and have long since been explained. Moreover, Plaintiffs' Seventh Production, which contains a reproduction of Plaintiffs' complete 53,289-document production as well as roughly 3,600 additional documents, will address any legitimate concerns the UFC may have. The swift efforts Plaintiffs have undertaken over the last six weeks to investigate, review, and address the UFC's proffered concerns in a timely and comprehensive manner contrast markedly with Defendants' yearslong gamesmanship and delay regarding their own still-incomplete production.

As an initial matter, because the UFC's August 31 letter is riddled with misstatements and inaccuracies, Plaintiffs correct the record. The UFC's claim that Plaintiffs' *six-week* investigation into the UFC's ill-defined list of alleged deficiencies comprises "endless delay and posturing," UFC's Aug. 31 Ltr. at 1 n.1, strains credulity, particularly considering the UFC's own course of conduct. As the UFC is aware, Plaintiffs substantially completed their document production—conducting a linear review of sources of relevant ESI—in compliance with the Court-ordered, July 17, 2025 substantial completion deadline. For *a year* following that production, the UFC was silent. Not once prior to substantial completion did the UFC ask to meet and confer on the scope or contents of Plaintiffs' production, and not once after that production did the UFC raise any issues with the format or substance of Plaintiffs' production. Then, on July 14, 2026, the UFC raised—for the first time—certain alleged technical errors in Plaintiffs' production that supposedly rendered the production "not reasonably usable." UFC's July 14 Ltr. at 1. As Plaintiffs noted in response, the UFC's belated, hyperbolic claims raised two obvious inferences: first, that the UFC had not even attempted to

review, let alone use, Plaintiffs' production in the prior year, belying any claimed prejudice; and second, regardless, that the UFC's attempt to weaponize these "deficiencies" was simply another tactic to distract from their own discovery violations and production deficiencies.

As Plaintiffs further noted, "many of the supposed 'deficiencies' the UFC raises are not deficiencies, and several have already been addressed." Pls.' July 17 Ltr. at 2. Plaintiffs then substantively dispelled several of the UFC's erroneous claims, including a) that Plaintiffs' production of "standalone image files" suggested some deficiency, and b) that Plaintiffs' production of "blank pages" attached to responsive documents was improper. As Plaintiffs explained—and had already explained in court filings—each Plaintiff's linear review of his devices included his photographs file, "which includes myriad images that relate to his career as an MMA fighter, including photos of his training activities and screenshots of social media that are MMA related." ECF No. 556 at 16 & n.17. Plaintiffs' "broad production of responsive photographs," we explained, "is certainly not indicative of a deficiency in Plaintiffs' production, but rather the thoroughness of Plaintiffs' review and production efforts." Pls.' July 17 Ltr. at 2. Regarding the UFC's complaint that certain responsive documents contain "blank pages" as attachments, Plaintiffs explained that *as the UFC itself argued*, Plaintiffs were not at liberty to choose which attachments to a responsive document to produce. *Id.* The UFC cannot fault Plaintiffs for producing documents in the manner that the UFC insists that they must be produced. Plaintiffs further explained that even a "cursory review" of Plaintiffs' production made clear that "in many—if not all—cases, these blank or nearly-blank documents are simply components of email signatures and embedded graphics within emails that were rendered during processing as attachments." *Id.* at 2 n.1.

The UFC's letter demanded that Plaintiffs "reproduce the deficient materials," July 14 Ltr. at 4, but neither requested nor offered to meet and confer on their largely misguided concerns. Nonetheless, Plaintiffs further committed to "investigate the matters raised in the UFC's letter to ensure compliance with Plaintiffs' obligations and [] supply an overlay as appropriate based on the findings of such investigation," and to "work to ensure that any further production based on that ongoing process will incorporate any fixes determined to be appropriate relating to these issues." Pls.' July 17 Ltr. at 2-3. In the six weeks since then, Plaintiffs have undertaken significant and costly expedited efforts to review their entire 53,289-document production to comprehensively address the UFC's concerns. At no time in those intervening weeks has the UFC *ever* requested to meet and confer to discuss their July 14 letter, Plaintiffs' July 17 response, or the status of Plaintiffs' investigation.

Ignoring this sequence of events, the UFC's August 31 letter makes a series of demonstrably inaccurate claims. First, the UFC suggests that it "remain[s] available to meet and confer to discuss each of the foregoing issues" but "will not accept another open-ended commitment to 'investigate' without a concrete timeline and deliverables."

UFC Aug. 31 Ltr. at 3. But as noted above, the UFC *had never asked or offered* to meet and confer on the alleged deficiencies in Plaintiffs' production. Plaintiffs, of course, would have been available to do so, including by explaining the status of their ongoing investigation and reproduction. Instead, the UFC simply demanded that Plaintiffs provide a "substantive written response" to a list of alleged deficiencies by September 4, 2026—*in less than a week*—or the UFC would file a motion to compel. This demand continues the UFC's now-habitual refusal to comply with their meet-and-confer requirements under the Federal Rules, *see* Fed. R. Civ. P. 37(a)(1), and further evinces that the UFC's true purpose is not to resolve its newfangled Plaintiff-discovery disputes but instead to bring needless and spurious motions to distract from its own misconduct. *See, e.g.*, Pls. Opp'n Mot. Compel at 10, ECF No. 727 (noting that "[a]t no time during these three years leading up to the filing of the Motion did Defendants even *request* to meet and confer").

Second, the UFC claims that "Plaintiffs' July 17 response to our July 14 letter did not substantively address the specific issues and questions we raised." That is wrong. As discussed above, Plaintiffs' July 17 letter not only substantively addressed but in fact *resolved* multiple of the "issues and questions" the UFC's letter raised, including why images taken from each Plaintiff's photographs file were produced as standalone images, and why blank attachments to responsive documents were correctly produced. The UFC's failure to recognize these responses—and their continued insistence that Plaintiffs "explain" their already-explained production of standalone images[1]—suggest either a lack of diligence or a lack of good-faith interest in substantively resolving the alleged deficiencies.

In any event, as Plaintiffs committed six weeks ago, Plaintiffs have undergone a comprehensive investigation and review of their document production in response to Defendants' July 14 letter. Plaintiffs' forthcoming Seventh Production of Documents reflects Plaintiffs' diligent and good-faith efforts to address Defendants' concerns—to the extent not already addressed—regarding family relationships, metadata fields, and confidentiality designations.

Plaintiffs' Seventh Production of Documents will contain a reproduction of each document produced in Plaintiffs' first six productions of documents, along with a crosswalk spreadsheet indicating the corresponding Bates number for each previously produced document in the Seventh Production. The Seventh Production also includes approximately 3,600 new documents—comprising inadvertently withheld family members of responsive documents—each of which appears in the crosswalk without a

[1] The UFC's August 31 letter withdraws its demand that Plaintiffs "[r]eproduce all blank or improperly rendered documents, identify the cause of the blank pages, and provide the underlying content in a usable format," in apparent recognition that these blank documents—as Plaintiffs explained—were correctly produced as attachments to responsive family members.

corresponding original Bates number. The Seventh Production addresses each of the following:

**<u>Family Relationships</u>:** Due to technical errors in the production process, certain family relationships were inadvertently severed. In some instances, this resulted in the production of all family members without family relationships reflected in their metadata. In other instances, this resulted in the inadvertent withholding of certain parents or children of a responsive family member. Family relationships are correctly and accurately reflected in the document metadata in the Seventh Production, and all family members of responsive documents have been produced.[2]

**<u>Confidentiality Designations</u>:** Plaintiffs have reviewed the Confidentiality Designations applied to each document in Plaintiffs' document production, redesignated certain documents previously designated "Attorney's Eyes Only" as "Confidential" or non-confidential, and added a metadata field reflecting Confidentiality Designation.

**<u>Additional Metadata Fields</u>:** Plaintiffs have added a) date and participant metadata for all "chat" files, and b) additional fields indicated in the ESI Stipulation, including each of the following fields: All Custodians; Message ID; Conversation Index; Importance; Sensitivity; and Notation of Redaction Presence. Plaintiffs have also added a TextPath field that will link each document to its corresponding extracted text/OCR text file.

Along with Plaintiffs' prior substantive explanations in our July 17 letter, these additions address each concern the UFC raised in its July 14 and August 31 letters. As Plaintiffs noted in our July 17 letter, the UFC's insinuation that these minor, technical concerns with Plaintiffs' document production suggest any deficiency in Plaintiffs' thorough investigation and review is not well-taken. Moreover, Plaintiffs note again that the UFC possessed Plaintiffs' complete document production for *a year* before raising these basic technical concerns, undermining any claimed prejudice. Nonetheless, Plaintiffs expect that this comprehensive reproduction will resolve the instant dispute—in stark contrast to the UFC's ongoing unwillingness to answer even basic questions regarding its deficient document production without, and often despite, Court orders compelling disclosure.

Sincerely,

/s/ Michael Dell'Angelo

Michael Dell'Angelo

---

[2] For a very small number of families, it was determined that the produced family member was produced inadvertently, was itself irrelevant, and belonged to an irrelevant family. In such instances, Plaintiffs did not produce the entire family based on a single inadvertently produced attachment.