Michael Dell'Angelo (*Pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
mdellangelo@bergermontague.com

*Counsel for Plaintiffs and the Proposed Classes*

*Additional Counsel on Signature Page*

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

*Attorneys for Defendants Zuffa, LLC, TKO Operating Company, LLC, and Endeavor Group Holdings, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>ZUFFA, LLC, TKO OPERATING COMPANY, LLC f/k/a ZUFFA PARENT LLC (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>DEFENDANTS. | No.: 2:21-cv-01189-RFB<br><br>**JOINT STATUS REPORT RE DISCOVERY ISSUES** |

| | |
|---|---|
| MIKHAIL CIRKUNOVS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUFFA LLC, TKO OPERATING COMPANY, LLC f/k/a ZUFFA PARENT LLC (D/B/A ULTIMATE FIGHTING CHAMPIONSHIP and UFC) and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | No.: 2:25-cv-914-RFB |
| PHIL DAVIS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUFFA LLC, TKO GROUP HOLDINGS, INC. (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | No.: 2:25-cv-00946-RFB |

Pursuant to the Court's January 6, 2026 Minute Entry (ECF 366),[1] the Parties hereby submit a Joint Status Report concerning outstanding discovery issues.

**Plaintiffs' Position**

Defendants continue to conduct themselves as if they are above the law. Defendants' brazen bad-faith conduct in the Ninth Circuit and this Court since the January 6, 2026 Status Conference reinforces this Court's prior findings that "remedial action under Rules 26 and 37 with respect to this ongoing pattern of discovery violations" is "necessary." Nov. 20 Hr'g Tr. at 61:5-7; ECF 375.

**A. Linear Review of Dana White and Tracy Long's Chats**

The Court Ordered Defendants to produce all documents resulting from a "linear review of chats involving Mr. [Dana] White and Ms. [Tracy] Long by January 26, 2026." ECF 366. This Order required production of "all" of these Chats, which Defendants have acknowledged they understood and represented to the Ninth Circuit that they complied with. Reply in Support of Petition for a Writ of Mandamus at 2, *Zuffa LLC v. U.S. District Court*, No. 26-00415 (9th Cir. Jan. 27, 2026), Dkt. 11; *see also, e.g.*, Ex. 1 at 3 (acknowledging Order to "to conduct a linear review of communications for Mr. White and Ms. Long from 2014 to the present to be produced on January 26, 2026"). On January 26, Defendants produced 1,783 Chats collected from White and Long's devices, but their production letter represented the production was "rolling." Ex. 2. At 8:15am Pacific on January 28, Plaintiffs requested clarification by the close of business of the meaning of "rolling production" in this context, including confirmation that Defendants timely completed their Court-ordered production from White's and Long's devices. Ex. 3. But Defendants did not clarify or confirm on January 28. *Id.* At 5:35 PM Pacific on January 29, two full business days after Plaintiffs' requested clarification, Defendants admitted they violated the Court's Order (which they falsely told the Ninth Circuit they had complied with) stating their intent to make a further production of White and Long's Chats ***today***. Ex. 4. The paltry, incomplete January 26 production—more than six months after the paltry productions made by the substantial completion deadline—compounds the prejudice imposed by

[1] Unless specified, all ECF citations refer to docket entries in *Johnson v. Zuffa, LLC*, 2:21-cv-1189.

Defendants' conduct to date. Plaintiffs request that the Court issue an Order to show cause why Defendants have not met the Court-Ordered deadline.

In any event, Defendants' incomplete production of White and Long's Chats raises substantial new questions about Defendants' collection and review processes. Rather than cure Defendants' spoliation of White and Long's Chats, as Defendants have suggested this production somehow could, Defendants' production suggests additional spoliation of materials from within the minority of the relevant discovery period in which White and Long's Chats were purportedly collected. And while Plaintiffs continue to review Defendants' production, Plaintiffs have so far identified myriad signs that Defendants employed deficient processes in reviewing these documents.

First, Defendants have produced 0 Chat documents collected from White's iPhone 11 Pro connected to his -1092 number that were sent or received before January 28, 2021, despite disclosing that they collected documents from that device as early as July 3, 2020. Plaintiffs now know from analyzing AT&T's production of records corresponding to White's phone service that from July 3, 2019 through January 27, 2021—the day before the first Chat produced from White's -1092 device—White used an undisclosed iPhone 7. *See* ECF 373 at 3. Defendants are "looking into whether it is possible" to determine the number of text messages (versus Chats collected from various apps) that were collected from the iPhone 11 during this period of iPhone 7 use. Ex. 3.

Second, Defendants' production still contains a paltry volume of communications from White and Long's non-SMS communications apps and platforms, despite public evidence of White's use of Instagram and X (formerly Twitter). *See* ECF 352 at 3-4. Documents from within Defendants' latest production confirm that White's Instagram DMs include business-related communications with MMA industry actors. *See* Exs. 5 & 6. Yet, Defendants have implausibly produced only four communications documents collected from White's Instagram account, 12 from his WhatsApp account, and only one from Long's WhatsApp account.

Third, Defendants' claimed responsiveness rate of their Chat review (5%) raises questions around the sufficiency of Defendants' responsiveness determinations. It is implausible that 95% of communications on Defendants' employees' ***business-related devices*** are not responsive to

Plaintiffs' requests, especially as to individuals such as White who has a known proclivity for using Chats to send business-related correspondence, *e.g.*, ECF 290-4; Ex. 7; indeed, Defendants produced approximately 71% of White's Chats collected from his -0682 device.

Plaintiffs previously sought judicial intervention over Defendants' collection and review processes, *see* ECF 217; Defendants' conduct since only confirms the need for more supervision. Ample authority (and the process used in *Le*) supports orders requiring production of sample, non-privileged documents and/or audit of a party's review processes.[2] As noted in Plaintiffs' Motion for Sanctions, the Court can appoint a special master as a remedial measure to monitor and enforce party discovery obligations.[3] Plaintiffs believe that, following the spoliation hearing processes, a renewed request for such special master may be appropriate, but will reserve the right to request it for now.

**B. Linear Review of Defendants' Custodians' Chats**

The Court Ordered Defendants to linearly review Defendants' additional custodians' Daily Chat Threads and produce the responsive Chats by March 7, 2026. ECF 366. This deadline is more than reasonable given that the substantial completion deadline was over six months ago, ECF 189, and Plaintiffs gave Defendants ample notice that linear review was necessary after raising the significant gaps in Defendants' production of Chats, improperly culled by search terms, for months. *See* ECF 327-8 at 4-5; ECF 344 at 1. There has been no further production to date.

---

[2] *Winfield v. City of New York*, 2017 WL 5664852, at *11 (S.D.N.Y. Nov. 27, 2017) (granting plaintiffs' request for sample sets of non-privileged documents from 50 custodians to "increase transparency" and account for "human error in categorization that may have led to gaps in the [defendant's] production"); *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 495 (N.D. Ill. 2018) (ordering production of "a random sample of the null set" of documents the producing party asserted to be non-responsive); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610, 623-24 (D.N.J. 2020) (permitting plaintiffs to conduct a validation review on 5,000 allegedly non-responsive documents where defendants violated discovery protocol); *In re Broiler Chicken Antitrust Litig.*, 2018 WL 1146371, at *5 (N.D. Ill. Jan. 3, 2018) (ordering production of 3,000 sample documents to producing party and special master).

[3] *E.E.O.C. v. Fry's Elecs., Inc.*, 287 F.R.D. 655, 659-60 (W.D. Wash. 2012) (imposing sanctions and appointing special master "to review defendant's document retention, search, and disclosure activities throughout the course of this litigation" where "Defendant's failure to disclose highly relevant information in response to plaintiffs' discovery requests casts doubt on its prior assertions of diligence, compliance, and good faith and raises concerns regarding the veracity of its current assurances"); *see also* ECF 217 at 22-25 (collecting cases).

Defendants' unsubstantiated claim that they "are likely unable" to meet the Court-Ordered deadline is not credible.[4] Defendants cannot complain that the Order requires review of an "unprecedented volume of text messages" when they have not shown that the review burden is broader than their voluntary review in *Le*. Rather, Defendants are multi-billion-dollar corporations with vast resources sufficient to complete this review on schedule. Defendants' counsel's ability to expedite review in *United States v. Google* is illustrative: Google, represented by Defendants' lawyer William Isaacson, discovered in mid-August 2023 that it inadvertently failed to review 16 million potentially responsive documents including lengthy technical documents and presentations. *U.S. v. Google LLC*, 23-cv-108 (E.D. Va. Sept. 13, 2023) (ECF 422 at 4). Google retained over 700 reviewers on an expedited basis and completed the review by October 6, 2023, producing nearly 2 million documents. *Google*, ECF 444 at 2; ECF 492 at 1. By contrast, here, Defendants must review slightly more than one million short Daily Chat Threads, *see* ECF 346, over the same time period.

**C. Plaintiffs' Search Term Proposal is Reasonable**

Plaintiffs worked to narrow their initial all-discovery search term proposal to a workable set through three iterations following hit reports, yielding Plaintiffs "General Proposal." Ex. 8. Without further cooperation from Defendants to try to winnow the set or narrow the terms based on a showing that the terms are overbroad (such as samples of non-responsive documents captured by the terms), the General Proposal is appropriate and proportionate to the needs of the case. Plaintiffs propose that Defendants review 7,071,152 documents, which represents 73% of their total collection—a smaller proportion than the 81.6% of the documents on which Plaintiffs' search terms hit in *Le.*

[4] *E.g.*, *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379, 383 (C.D. Cal. 2009) (rejecting "unexplained and unsupported" objections to discovery and requiring "a declaration"); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188, 194-95 (C.D. Cal. 2006) (requiring "evidentiary declarations" to support discovery objections); *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1278 (D. Colo. 2011) (rejecting burden objections that were "devoid of any individualized factual analysis"); *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 707 (E.D. Mich. 2017) (dismissing unsubstantiated objection "that the 'cost of storing and processing the deluge of documents' would be burdensome" as "entirely undeveloped").

As with Plaintiffs' arbitration-specific search term proposal, Plaintiffs undertook substantial efforts to narrow their General Proposal in the Court-Ordered iterative exchange of proposals and hit reports, removing and suggesting limiters on terms returning high volumes of documents. And Plaintiffs narrowed these search terms without any input from Defendants on substantive ways to narrow their proposal. Even though Defendants are in the best position to know how to isolate responsive material within their own files—and despite the Court's statement that it would be helpful for Defendants to make a search term counterproposal, ECF 333 at 3, 9-10—Defendants have yet to propose a set of search terms in this action other than the "disingenuous" ones Defendants attempted to unilaterally apply. Nov. 20 Hr'g Tr. at 60:12-25.

Plaintiffs' General Proposal reflects reasonable efforts to hone search terms. The volume of documents hit by Plaintiffs' General Proposal is proportionate to the needs of the case given the "amount in controversy," Fed. R. Civ. P. 26(b)(1): Plaintiffs settled *Le* before trial for $375 million and the amount of money at stake here is likewise in the hundreds of millions (if not billions) of dollars. Moreover, Defendants' obligations are enhanced given the widespread spoliation here. *See* ECF 333 at 12. Defendants have never even attempted to substantiate the burden from applying Plaintiffs' search terms beyond conclusory claims that, as explained above, must be rejected.[5]

Defendants should be required to review documents hitting on the General Proposal and produce responsive documents no later than March 7, 2026.

---

[5] Defendants' claims of "unreasonably broad terms" rings hollow. First, Defendants offer no alternative method of locating the contract negotiations they have not produced. Second, other than the term "exclusive," which has obvious relevance, the "common industry terms" Plaintiffs propose could be largely removed if Defendants engaged with Plaintiffs on their long-running requests to produce documents related to the UFC's broadcast deals. Plaintiffs are willing to forgo their request that Defendants collect and produce documents hitting on the first and eighth term in the General Proposal, Ex. 7, which relate to broadcast deal-related terms if Defendants produce certain documents concerning these deals from their central files, including negotiations on consummated and failed proposals. *See* ECF 291-1 at 23. Third, Defendants' complaints about "company names" fail for similar reasons, as ESPN and Disney negotiated significant media rights deals with UFC, and thus the proposed limiters (that those terms appear within proximity of terms like "media rights" and "negotiat*") are not "meaningless" as Defendants claim. Likewise, the terms involving "UFC" require proximity to various other professional sports (to elicit evidence of comparisons like those at issue in *Le*); fighters' names (like a term involving Kevin and Andrea Lee); "distribut[ion]" of UFC "events,"; "competitor[s]" of UFC; the UFC's "compensation"; and other relevant topics.

**D. Device Disclosures and Hit Reports for Plaintiffs' Proposed Custodians**

The Court Ordered Defendants to "collect device disclosure information from the additional custodians proposed by Plaintiffs"[6] on or before March 7, 2026, and to provide a hit report when Plaintiffs' General Proposal is applied to their documents. ECF 366. The substantial completion deadline has long since passed, ECF 189, and Plaintiffs initially proposed these custodians over six months ago, ECF 217-36; no extension of these deadlines is warranted.

**E. Third-Party Subpoenas**

The Court found that certain discovery from third parties should be produced, Jan. 6, 2026 Hr'g Tr. at 33:15-35:13, and Plaintiffs are seeking this discovery despite Defendants' lack of cooperation. Consistent with the Court's instruction, ECF 366, Plaintiffs filed a Motion to Compel Production of responsive documents that exist on personal devices of Defendants' Las Vegas-based employees and executives. As explained further in Plaintiffs' Reply, ECF 383, Defendants' Opposition to this Motion, ECF 368, seeks to evade and delay responses.[7] Plaintiffs are in the process of attempting to transfer to this Court enforcement of similar subpoenas to non-local current and former employees, but many of these employees, including Ari Emanuel, have refused consent

[6] The Court should stand by its Order requiring these materials. Defendants' incorrectly claim that these custodians are "not remotely tethered" to the litigation, because each are either ***listed in UFC organization charts*** or are publicly affiliated with Defendants. *See* ECF 217-46. For example, the UFC's "Strategy" organizational chart shows Endeavor executives Keith Freidenberg and David Phillips as running the UFC strategy team with custodian Batchvarova; Sam Zussman was President of Events at Endeavor working alongside Zuffa executive and custodian Peter Dropick; and Albert Acosta, Zach Rose, Ajay Madkekar, and Tim Gardner are shown as "Additional Endeavor Support" to Batchvarova's team. *See id.* Plaintiffs also included current and former UFC employees based on their roles with the UFC, not the irrelevant subsequent employers Defendants disingenuously cite. For example, Chris Provino was Sr. Director of Athlete Development under custodian Reed Harris; Crowley Sullivan was the VP & GM for Fight Pass; Chika Yoshinaga and Brandon Stuckenberg each had roles in Financial Planning & Analysis under Batchvarova, and Nick Zombolas was Director of Ticketing Strategy and Revenue Management. Egon Durban, whom Defendants suggest is totally irrelevant due to his employment, ***is a member of Endeavor's Board of Directors***.

[7] The subpoenaed discovery is not "virtually the same," as Defendants claim; Plaintiffs seek non-cumulative business-related documents that exist on Defendants' employees and executives' devices (and Plaintiffs dispute Defendants' specious position that they lack possession, custody, or control over these documents). These Requests are thus "proportional to the needs of the case," requesting non-duplicative materials of the same scope as requests Plaintiffs negotiated with Defendants, which the recipients previously agreed to produce. ECF 327-27 at 2. These individuals are not strangers to this suit as "non-parties"; they are Defendants' employees and executives.

to transfer.

Plaintiffs have also served third-party subpoenas on the wireless carriers identified in Defendants' December 15, 2025 Device Disclosure; AT&T has produced records, including communications logs corresponding to devices belonging to Dana White and Hunter Campbell. Plaintiffs have not yet received productions from T-Mobile or Verizon of the phone records.

Finally, Plaintiffs served subpoenas on messaging apps, including those disclosed used by Defendants' employees and executives. *See* ECF 356 at 4 n.3. These apps have objected to production without the accountholder's consent and have requested identification of accounts at issue. Plaintiffs request that the Court: a) order Defendants to produce responsive documents from all messaging apps on custodial devices, including personal devices subject to Plaintiffs' Motion to Compel Production; b) order Defendants to obtain consents from their employees to the above-listed messaging apps' production of documents responsive to Plaintiffs' subpoenas, *see Facebook, Inc. v. Superior Ct.,* 46 Cal. App. 5th 109, 121 (Cal. Ct. App. 2020) ("[T]he trial court can order the account holder to consent to the disclosure by Facebook under section 2702(b)(3)." (quotation omitted)); and c) recommend transfer of these third-party subpoenas to the District of Nevada.

**F. Fighter Files**

The Court should Order Defendants to review and produce documents from the set of 136,573 that hit on Plaintiffs' Fighter File Search Term Proposal (91,564 of which do not hit on Plaintiffs' General Proposal) no later than March 7, 2026, Ex. 9, given the likely relevance of these materials to, *inter alia*, fighter contract negotiations. *See* Ex. 10 at 1; Jan. 6 Hr'g Tr. at 81:18-82:23.

**G. FightMetric; "Record Book"; and Granular Compensation Data**

The Court-Ordered March 7, 2026 deadline for Defendants to produce these structured data sets, ECF 366, is reasonable. The parties met and conferred on these requests on January 9, 2026.

**H. Second Set of RFPs**

The Court-Ordered March 10, 2026 deadline for Defendants to serve responses to Plaintiffs' re-issued Second Set of RFPs, ECF 366, is reasonable and need not be extended.

**I. Plaintiffs' First Set of Interrogatories**

The reasonable Court-Ordered deadlines for Defendants' " amended set of complete, non-evasive responses to Plaintiffs first set of interrogatories," ECF 366, need not be extended.

**J. Plaintiffs' First Set of Requests for Admissions ("RFAs")**

The Court's Ordered March 7, 2026 deadline for the production of certain videos subject to Plaintiffs' RFAs "created" or "received" by Defendants, ECF 366, is reasonable and need not be extended.

**<u>Defendants' Position</u>**

**A. Linear Review of Text Messages**

Pursuant to the Court's January 6 Order, Defendants completed a linear review of all daily chat threads belonging to custodians Dana White and Tracy Long and produced responsive documents to Plaintiffs on January 26, 2026. In total, Defendants produced 14,639 individual text messages, including 1,783 daily chat threads. Defendants intend to make an additional, small production of documents today, January 30—a production originally due on January 26 under the Court's January 6 Order before that Order was stayed by the Ninth Circuit.[8] Plaintiffs have also since asked that Defendants provide an additional device disclosure (never ordered by the Court) that details the first and last daily chat threads per application. As indicated to Plaintiffs, Defendants are investigating the feasibility of creating that additional supplemental, non-mandatory disclosure and will provide it assuming it is feasible and not unduly burdensome to do so.

Defendants are also undergoing a linear review of all daily chat threads in all collected mobile devices belonging to all other custodians (15 unique custodians, across 25 mobile devices).

---

[8] Plaintiffs are flatly incorrect to assert that Defendants had an obligation to produce anything on January 26 pursuant to the Court's original January 6 Order. As the Court and Plaintiffs are aware, the entirety of the Court's original January 6 Order was stayed by the Ninth Circuit on January 23, 2026. *In Re: Zuffa LLC, et al.*, No. 26-415, Order (Jan. 23, 2026) ("The district court's January 6, 2026 order is temporarily stayed.") That stay remained in effect throughout the purported period that Plaintiffs claim that Defendants should have made a production (which would have contravened the Ninth Circuit's order staying the Order).

As with Defendants' linear review of Mr. White's and Ms. Long's text messages, the current responsiveness rate of all text messages reviewed remains at about 5%—even after excluding all text messages with spouses, children, and personal doctors. Accordingly, Defendants respectfully ask the Court to reconsider this aspect of its January 6 Order. A number of alternatives exist for a more proportional and reasonable linear review, such as only reviewing text messages *between* key custodians. This alternative approach is consistent with other courts denying unduly burdensome reviews of millions of documents. *See, e.g.*, *Ashcraft v. Experian Info. Sols., Inc.*, 2018 WL 6171772, at *2 –3 (D. Nev. Nov. 26, 2018) (concluding that plaintiff's discovery requests that would require defendant to review millions of records and documents, even if the requests were reframed as only requiring "sufficient information" on the issues, could not be done in a manner proportional to the needs of the case); *Fox v. Arizona*, 2022 WL 17811675, at *5–6 (D. Ariz. Dec. 19, 2022) (denying wholesale review and production of all text communications to and from certain individuals within a certain time period, regardless of content).

While Defendants acknowledge the Court's order requiring Defendants to produce all resulting responsive text messages by March 9, 2026[9]—given the unprecedented volume of text messages for Defendants to linearly review—Defendants are likely unable to do so without seriously risking the inadvertent production of privileged and highly personal non-responsive materials. Defendants respectfully request a modest three-month extension of the Court's March 9 deadline to June 9, 2026—which is still more than two months before the end of fact discovery on August 14, 2026.

### B. Search Term Hit Reports

#### 1. Merits Search Terms

Defendants complied with the Court's January 6 Order (the "January 6 Order") and provided Plaintiffs with four different hit reports applying Plaintiffs' "general" search terms, including an

[9] The Court previously ordered that Defendants meet certain deadlines by March 7, which is a Saturday. Consistent with Federal Rule 6(a)(1)(C) (and absent any further clarification from the Court), Defendants will interpret the Court's March 7 deadline to fall to the next business day, March 9.

additional fourth hit report at Plaintiffs' request beyond the three that the Court requested. Despite this narrowing process, Plaintiffs' last set of search terms still yields **7,071,752** documents for Defendants' review. Plaintiffs' unreasonably broad search terms hit on approximately ***73%*** of the entire searchable set. As a point of reference, Plaintiffs' proposed searchable set of documents is nearly ***ten times*** what Defendants produced in *Le*, which was approximately 776,516 documents (in addition to the one-plus million documents already produced in *Johnson*).[10]

Plaintiffs' search term demand continues to suffer from systemic issues, including:

- Plaintiffs demand nearly 4,000 search strings, across 35 individual custodians, across each of their emails, Microsoft Teams, storage drives, and non-chat mobile files, and for a time range spanning more than a decade (*i.e.*, July 1, 2015 through January 7, 2026).
- Plaintiffs' search terms include unreasonably broad terms, including common first and last names (*e.g.*, Jones, Josh), common industry terms (*e.g.*, broadcast, stream, exclusive, pay-per-view), and company names (*e.g.*, ESPN, Disney, UFC (with hardly any limiting factors)).
- Plaintiffs' highest yielding search string results in ***772,474*** documents—just a few thousand less documents than *all* produced documents in *Le.*

Plaintiffs' current demands are a far cry from any attempt at a reasonable proposal. *See Cannata v. Wyndham Worldwide Corp.*, 2012 WL 528224, at *4-5 (D. Nev. Feb. 17, 2012) (ordering that search terms could not be "indiscriminate" unless "combined with narrowing criteria that sufficiently reduce the risk of overproduction"); *see also Andersen v. Stability AI Ltd.*, 2025 WL 870358, at *6 (N.D. Cal. Mar. 19, 2025) ("Indiscriminate terms, such as the producing company's name or its product name, which are inappropriate unless combined with narrowing search criteria

[10] Plaintiffs misleadingly suggest that because this *percentage* is less than in *Le*, the burden on Defendants to review is much less. But in *Le*, after subtracting overlapping hits and produced documents, Plaintiffs' search terms set yielded 603,431 documents—more than ten times *less* than the 7 million document hits that Plaintiffs ask Defendants to review. *See Le* Dkt. No. 244.

that sufficiently reduce the risk of overproduction."); *Est. of Mann v. Cnty. of Stanislaus*, 2022 WL 4029571, at *2 (E.D. Cal. Sept. 2, 2022). Plaintiffs' search terms are also precisely the kind of search terms that this Court rejected in *Le*. *See Le* Dkt. No. 272 (rejecting the application of company terms and names such as Strikef%, "Explosion Entertainment", Coker, Knapp, Chou, Ellner).

**2.** Fighter File Search Terms

Per the Court's order, Defendants have also uploaded Zuffa's and TKO's entire "Fighter File" to their eDiscovery vendor and have applied Plaintiffs' Fighter File search terms to this data set. As of this filing, Plaintiffs have requested Defendants run a single hit report which yields a staggering ***98.99%*** hit rate, for a total of 136,573 documents for review. Plaintiffs' Fighter File search terms suffer from many of the same defects as their "general" search terms. For example, Plaintiffs' Fighter File search terms include the names of every single person involved in the negotiation and transmission of fighter contracts, including "Long," "Tracy," "Hunter," "Dana," "White," etc. Despite the untethered nature of Plaintiffs' search terms and an almost 100% hit rate, Plaintiffs flatly refuse to make any modifications to their Fighter File search terms.

The Court should reject Plaintiffs' disguised attempt to have Defendants review the entirety of the Fighter File, which this Court already rejected in favor of the application of search terms.

**C. Collections from Plaintiffs' Proposed Additional 30 Custodians**

Defendants have actively engaged their eDiscovery personnel to collect from Plaintiffs' additional 30 proposed custodians, including all identified ESI sources that Defendants have current reason to believe may contain potentially relevant information, including custodians' mobile devices, emails, Microsoft Teams, and personal storage drives. As the majority of Plaintiffs' proposed custodians are no longer employed by Defendants (and have not been for many years), Defendants are in the time-consuming process of determining which files and ESI sources are in Defendants' current possession, custody, or control. Once identified—because Plaintiffs' requested time period spans more than a decade—Defendants estimate requiring several weeks to even upload the anticipated terabytes of resulting data onto their production workspace.

Defendants respectfully maintain that the addition of Plaintiffs' 30 custodians (in addition to Defendants' agreed-upon list of 35 custodians) is highly improper and disproportionate to the needs of the case. Plaintiffs' request for additional custodians would result in nearly ***triple*** the number of ordered custodians in *Le* (22). *See Le* Dkt. No. 207.[11] Plaintiffs' proposed custodians are also not properly tethered to the issues in the litigation, and Plaintiffs have not made a showing to the contrary. For example, Plaintiffs' proposed custodians include (1) numerous non-employees such as Christopher Provino (All Elite Wrestling), Jonathan Shin (Privacy), Crowley Sullivan (Athlete Advantage), Chika Yoshinaga (AllState), Nick Zombolas (AFC Bournemouth), Keith Friedenberg (Continuity Partners), Sam Zussman (Brooklyn Nets), (2) Defendants' counsel (Seth Krauss), (3) analytics personnel (Tim Gardner, Albert Acosta, Zach Rose), (4) accounting and finance employees (Ajay Madkekar, Brandon Stuckenberg, Chika Yoshingaga, David Phillips), and (5) people who have ***never*** been employed by Defendants (Egon Durban at Silver Lake).

Plaintiffs' unilateral selection of custodians is highly improper, and inconsistent with this Court's own ruling in *Le*. *Le* Dkt. No. 207 (only allowing plaintiffs to select an additional 6 custodians beyond the 16 proposed by Defendants); *accord Strategic Partners, Inc. v. FIGS, Inc.*, 2020 WL 2527056, at *7, 9 (C.D. Cal. Feb. 6, 2020) (denying plaintiff's motion to compel where plaintiffs had "not persuasively explained why it require[d] nine custodians" and that they "appear[ed] arbitrary"); *True Freight Logistics LLC v. Global Tranz Enterprises Inc.*, 2019 WL 4169004, *1, 4 (D. Ariz. Sept. 3, 2019) (denying plaintiff's request for 33 additional custodians for a period of almost six years and limiting production to 15 custodians whose accounts defendant had already searched); *Beavers-Gabriel v. Medtronic, Inc.*, 2015 WL 12746717, at *2, 8 (D. Haw. Mar. 24, 2015) (denying plaintiff's request for defendants to collect from 89 total custodians (beyond defendants' proposed 18 custodians) where plaintiff did "not provide[] sufficient information to determine whether the custodial list should be expanded").

---

[11] While the *Le* Court allowed an additional five Strikeforce custodians on June 3, 2016 (*Le* Dkt. No. 272), this figure still pales in comparison against what Plaintiffs request now.

Defendants respectfully ask the Court to reconsider its prior decision and to order further narrowing of the overbroad set of Plaintiffs' proposed custodians. If the Court declines, in order for Defendants to properly determine the scope of files in Defendants' possession, custody, or control and to timely upload and process what is likely to be many terabytes of data, Defendants respectfully request a modest two-month extension of the Court's March 9 deadline to May 9, 2026 to collect the files from Plaintiffs' additional custodians and to disclose certain information pertaining to their mobile devices containing responsive communications. This extension will not prejudice Plaintiffs, who will have months remaining in the current fact discovery period during which to utilize the supplemental produced material, and if necessary, depose, the additional custodians.

**D. Third Party Subpoena Recipients**

On January 9, 2026, Plaintiffs filed a motion to compel a production of documents responsive to up to 100 RFPs from eleven "Local Subpoena Recipients." *Johnson* Dkt. No. 356. The Local Subpoena Recipients, including one which resides outside the Court's jurisdiction, opposed the motion on January 23, 2026. (Dkt. No. 368.) While the Local Subpoena Recipients acknowledge the Court's intent to grant Plaintiffs' motion, the Local Subpoena Recipients respectfully maintain that Plaintiffs' requests impose an undue burden that is not proportional to the needs of the case or as against non-parties—particularly where the discovery Plaintiffs seek is virtually the same they have received from Defendants.

**E. Defendants' Responses to Plaintiffs' Requests for Production ("RFPs") and First Set Interrogatories**

On January 9, 2026, Plaintiffs reissued their second set of RFPs to Zuffa. Pursuant to the Court's January 6 Order, Zuffa anticipates timely serving responses and objections to Plaintiffs' RFPs on March 10, 2026.[12] Also on January 9, 2026, Plaintiffs served on Zuffa a third set of RFPs, primarily asking for privileged communications and attorney work product surrounding litigation holds and

[12] Plaintiffs improperly request that Defendants provide responses and objections within 30 days, despite the Court's January 6 Order allowing Defendants to respond within 60 days of service. Defendants will follow the Court-ordered deadlines.

Defendants' preservation efforts—the majority of which the Court vacated on January 27, 2026. Zuffa anticipates timely serving responses and objections within 30 days of service. Pursuant to the Court's January 6 Order, Defendants also anticipate timely producing on March 9, 2026 any responsive audio and video documents in response to Plaintiffs' prior third set of RFPs to Zuffa and Endeavor (and second set of RFPs to TKO) (RFP Nos. 95-97).[13] Pursuant to the Court's January 6 Order, Defendants also anticipate providing supplemental responses to Plaintiffs' First Set of Interrogatories by February 5, 2026, and a full response to Interrogatory No. 8 by March 9, 2026.

**F. Fighter Compensation, FightMetric, and "Record Book" data.**

Pursuant to the Court's January 6 Order, Defendants have met and conferred with Plaintiffs over Plaintiffs' requests surrounding fighter compensation and "HUB" data. Defendants have amply described their central files and systems in various letters to Plaintiffs, and continue to do so. Defendants anticipate timely producing more granular fighter compensation, FightMetric, and "record book" data (to the extent it exists and is in Defendants' possession, custody, or control) by the Court's-ordered March 9, 2026 deadline.

[13] Plaintiffs misleading labeled multiple sets of RFPs as their "second" and "third" set RFPs.

Dated: January 30, 2026

Respectfully Submitted,

By: /s/ Michael Dell'Angelo
Eric L. Cramer (*Pro hac vice*)
Michael Dell'Angelo (*Pro hac vice*)
Patrick F. Madden (*Pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
ecramer@bergermontague.com
mdellangelo@bergermontague.com
pmadden@bergermontague.com

Joshua P. Davis (*Pro Hac Vice*)
Kyla Gibboney (*Pro Hac Vice)*
Robert C. Maysey (*Pro Hac Vice*)
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Phone: (415) 215-0962
jdavis@bergermontague.com
kgibboney@bergermontague.com
rmaysey@bergermontague.com

*Counsel for Plaintiffs and the Proposed Classes*

Benjamin D. Brown (*Pro Hac Vice*)
Richard A. Koffman (*Pro Hac Vice*)
Daniel H. Silverman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., N.W., Suite 500
Washington, DC 20005
Phone: (202) 408-4600
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

By: /s/ Aaron T. Chiu
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8095

SEAN M. BERKOWITZ (*Pro hac vice*)
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@DIRLLP.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@DIRLLP.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004

Joseph R. Saveri (*Pro hac vice*)
Christopher Young (*Pro hac vice*)
Kevin E. Rayhill (*Pro hac vice*)
Itak Moradi (*Pro hac vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California St., Suite 1000
San Francisco, CA 94108
Telephone: +1 (415) 500-6800
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: imoradi@saverilawfirm.com

W. Joseph Bruckner (*Pro hac vice*)
Brian D. Clark (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Phone: (612) 596-4001/Fax: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle J. Pozan (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Phone: (612) 339-6900
Email: kjpozan@locklaw.com

*Additional Counsel for Plaintiffs and the Proposed Classes*

Michael J. Gayan
CLAGGETT & SYKES
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107
Tel: (702) 333-7777
mike@claggettlaw.com

*Liaison Counsel for Plaintiffs and the Proposed Classes*

DONALD J. CAMPBELL (No. 1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS (No. 5549)
jcw@campbellandwilliams.com
CAMPBELL & WILLIAMS
700 South 7th Street
Las Vegas, Nevada 89101
Tel: (702) 382-5222

*Attorneys for Defendant Zuffa, LLC, TKO Operating Company, LLC, and Endeavor Group Holdings, Inc.*