WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

[Additional counsel listed on signature page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**ZUFFA, LLC AND TKO OPERATING COMPANY, LLC'S MOTION REGARDING THE PROCEDURAL FRAMEWORK FOR THE OCTOBER 8–9, 2026 EVIDENTIARY HEARING AND ANY FURTHER PROCEEDINGS REGARDING ALLEGED SPOLIATION** |

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND .......... 2

A. Plaintiffs Identify No Missing Evidence Of Negotiations Involving The Named Plaintiffs .......... 2

B. The Parties' Competing Proposals For Access To Defendants' ESI .......... 3

C. The Court Orders An October 8–9, 2026, Evidentiary Hearing .......... 5

II. PROPOSED AMENDMENTS TO THE HEARING FRAMEWORK TO STREAMLINE THE HEARING AND COMPLY WITH RULE 26 .......... 5

A. Consistent With Plaintiffs' Burden, Plaintiffs' Expert Should Testify First .......... 5

B. The Court Should Disregard Any Analysis Plaintiffs' Expert Did Not Author Or Does Not Adopt .......... 7

C. Forensic Expert Testimony Should Not Include Legal Questions .......... 8

D. The Court Should Not Require Defendants To Prematurely Disclose Merits Expert Opinions On An Incomplete Record .......... 9

III. REQUEST FOR RELIEF .......... 12

## INTRODUCTION

Plaintiffs seek the extraordinary remedy of forensic examination of 23 of Zuffa and TKO's (together, "Defendants'") devices, yet until September 24—just two weeks before the hearing—had presented no forensic expert support for that request. Because Plaintiffs bear the burden on any motion for sanctions (just as Defendants will bear the burden on any motion with respect to Plaintiffs' spoliation of Signal and other evidence), Plaintiffs must therefore present their evidence first. The current framework for the October 8–9 hearing (the "October Hearing") is backwards: Defendants' expert, Adam Hart, would testify first, while Plaintiffs' expert would appear only if necessary. That would force Hart to rebut an "expert" proposal no expert has yet advanced under Rule 26 and could prevent cross-examine of the person whose opinions Plaintiffs ask the Court to adopt. Plaintiffs should be directed to disclose and present that expert first and, at minimum, permit Defendants the right to cross-examine any forensic expert whose opinions the Court considers.

In addition, the September 3 Minute Order states that "expert testimony is required on the issues of: (i) proposed production protocols; (ii) indicia of spoliation and/or intentional destruction of data; (iii) the severity of spoliation sanctions, if granted." Dkt. No. 759 (Minute Order) at 1–2. Whether any spoliation occurred is a question of law under Rule 37(e)—not one for an expert—and, even if spoliation occurred, the nature and severity of any sanction are legal questions, not ones for a witness, expert or otherwise. Accordingly, expert testimony at the October Hearing should be limited to technical forensic matters, reserving questions of spoliation, intent, prejudice, and sanctions to later briefing after any motion is filed.

Furthermore, Defendants ask the Court to postpone any requirement that they disclose or present *merits* expert opinions, including opinions concerning prejudice and the significance of allegedly missing data to their analyses, until Plaintiffs present their merits theories for this case, including through expert testimony. Plaintiffs have not disputed that their ultimate merits theories will be different from those copied from the *Le* complaint given the changes to the Promotional and Ancillary Rights (PAR) agreements and the global explosion of combat sports since *Le.* In fact, Plaintiffs admitted in 2024 that changes to PAR agreements in 2019 and 2020 necessarily

weakened their claims. Because any determination of prejudice under Rule 37(e) necessarily requires an analysis of relevance, Plaintiffs will need to tie any claims of missing ESI that cannot be replaced to their ultimate antitrust theory, whatever that may be. But even if Plaintiffs choose to continue to focus on PAR agreements or PAR agreement negotiations, Plaintiffs still have not identified any actual missing evidence, let alone missing evidence of negotiations with the Named Plaintiffs, who are the only plaintiffs with claims currently before the Court. Requiring Defendants' experts to disclose merits opinions (as the Court had suggested) before Plaintiffs settle on a merits theory and support their theory with reports compliant with Rule 26, would reverse the order of expert disclosure and force Defendants' expert opinions to rest on an incomplete record. *See* Dkt. No. 801 at 19–22.

## I. FACTUAL BACKGROUND

### A. Plaintiffs Identify No Missing Evidence Of Negotiations Involving The Named Plaintiffs

Plaintiffs' spoliation claims originated in Fall 2025, when Plaintiffs alleged "gaps" in text message data produced for two custodians—Dana White and Tracy Long—and have since morphed into an ever-expanding search across numerous additional custodians for evidence to support a spoliation theory. Plaintiffs have submitted attorney "analysis" of forensic extractions that purport to identify gaps in ROWID sequences across custodians' devices, which Plaintiffs' counsel wrongly contend are "evidence" of message deletion even though the Court's own expert said it was not.[1] *See, e.g.*, Dkt. No. 583 (June 3, 2026 Hr'g Tr.) at 28:16–25 (The Court noted that "Mr. Wedin has already actually explained . . . that RowID gaps do not equate to the deletion of messages . . . . And I agree with that."); Dkt. No. 539 at 10–11; Dkt. No. 578 at 7–8; Dkt. No. 606 at 21–25.

---

[1] Previously, in February 2026, Plaintiffs disclosed two experts in support of their Motion for Sanctions: Philip Favro and Veronica Perez. Dkt. No. 448. Mr. Favro was retained to opine on "the process that clients and counsel should generally undertake to preserve relevant information for litigation and [] to preserve relevant phone data." Dkt. No. 448-8 at 4. Ms. Perez reviewed collection reports, device disclosures, and produced documents, and opined on "indicators" of spoliation, but noted that a "physical forensic collection" would be necessary to fully "investigate." Dkt. No. 448-22 at 5–6. Neither has testified or given any further opinions in this case, including with regard to Plaintiffs' later spoliation analyses.

Plaintiffs initially focused on allegedly missing text messages. *See* Dkt. No. 288 at 9–10, 16, 18–19. But when the Court asked Plaintiffs to identify categories of documents that were available in *Le* but are absent from *Johnson*, *see* Dkt. No. 583 (June 3, 2026 Hr'g Tr.) at 11:11–20, Plaintiffs claimed that evidence of PAR agreement negotiations had been spoliated, *see* Dkt. No. 606 at 2; Dkt. No. 669 at 2–5.[2] Defendants, however, demonstrated that this evidence had been produced by identifying emails, internal communications, and text messages reflecting negotiations for all Named Plaintiffs. *See* Dkt. Nos. 686-3, 686-4.

Plaintiffs do not claim that negotiations between the Named Plaintiffs and the UFC are missing, and Plaintiffs have not identified any documents—missing or otherwise—evidencing the coercive tactics that their complaint alleges. And despite Defendants' production of millions of documents—including from the UFC's central electronic files, warehouses of hard-copy fighter files, and emails and texts from Tracy Long, Mick Maynard, Sean Shelby, and Hunter Campbell—Plaintiffs cannot identify any specific documents or communications missing from the Named Plaintiffs' negotiations with the UFC. *See* Dkt. No. 618 at 9–12; *Silva v. Panasonic Corp. of N. Am., Inc*, 2026 WL 2334134, at *2 (D. Nev. Aug. 12, 2026) (citing Fed. R. Civ. P. 37(e)) ("A party seeking sanctions under Rule 37(e) has a threshold duty to show that the ESI at issue was lost or destroyed."). Nor would deletion from one device satisfy Rule 37(e) if the same information was available on another device. *Oracle USA, Inc. v. Rimini St., Inc.*, 2020 WL 9209714, at *4 (D. Nev. Sept. 21, 2020) ("A court may not sanction a party for spoliation under FRCP 37(e) if the parties can restore or replace the lost ESI through feasible means.").

**B. The Parties' Competing Proposals For Access To Defendants' ESI**

Following the Court's excusal of Mr. Wedin, who had been appointed to conduct a neutral analysis of certain Defendants' devices,[3] Plaintiffs asserted that they needed greater access to

---

[2] Plaintiffs repeated their theory that ROWID gaps revealed missing text messages, and argued that data was missing from applications with messaging capabilities, such as WhatsApp, Signal, Instagram, and Snapchat. *See* Dkt. No. 606. Plaintiffs further alleged the missing evidence included "signing strategies," "recruiting" efforts, documents related to "retaining fighters," "budget strategy," and "developing fight cards." *See* Dkt. No. 669 at 5–9.

[3] On March 3, 2026, the Court appointed Plaintiffs' recommended expert, Eric Wedin, as a neutral expert to analyze certain Defendants' devices. Dkt. Nos. 466 (Mar. 3, 2026 Hr'g. Tr.) at

Defendants' ESI, ignoring the concerns that led the Court to appoint a neutral expert in the first place. The Court directed the parties to develop an access process. *See* Dkt. No. 652 at 21:2–22:25. On July 23, 2026, Plaintiffs proposed a two-phase process for extracting and producing specified forensic data from 23 mobile devices, which they supplemented on August 3 with a "Mobile Evidence Redaction Protocol." Dkt. Nos. 712-4, 712-5. Although Plaintiffs' counsel represented that the proposal had been developed and tested with assistance from Plaintiffs' consulting experts and could be implemented in hours or days per device, Plaintiffs did not initially submit an expert declaration supporting the proposal. *See* Dkt. Nos. 712-1, 712-4.

On August 20, Defendants submitted a counterproposal supported by a declaration from their expert, Adam Hart, based on his experience and industry standard methods, explaining that Plaintiffs' proposed process would expose attorney-client privileged and sensitive information, and would require an unvalidated alteration of forensic evidence. Dkt. No. 729-1 ¶¶ 17, 49. As an alternative, Defendants proposed a request-driven, device-by-device process using validated commercial forensic tools. Dkt. No. 729 at 21–23.

On September 1, Plaintiffs submitted Joseph Greenfield's first expert declaration, which explained that his team had provided and tested a protocol using available test data while acknowledging that it was "not designed to be all encompassing" given the unknown variables associated with forensic extractions. Dkt. No. 750-4 ¶¶ 8–13; *see also* Dkt. No. 779-1 at 27.

On September 24, Plaintiffs filed a supplemental declaration from Greenfield (Dkt. Nos. 779, 779-1), describing proposed analyses in Exhibits 2–12 and reporting tests performed on September 22, 2026, on three iPhones. The declaration is not a Rule 26(a)(2)(B) report, does not claim that Greenfield authored Plaintiffs' July 23 proposal or counsel's ROWID-gap and deletion analyses, and reports no testing on Android devices. The same day, Defendants submitted Hart's

---

18:12–17, 68:22–24, 471. While Mr. White's iPhone 11 Pro was in Mr. Wedin's custody, he caused it to be reset, but later testified that it had been erased before he received it. Dkt. No. 549 at 66:12–67:1; Dkt. No. 729 ¶¶ 97–103. Mr. Wedin acknowledged what had actually occurred (the iPhone was erased while in his possession) nearly two months later, after Defendants' expert exposed it, and admitted other errors in his work. Dkt. Nos. 651 at 61:12–63:18, 652 at 5:8–17. The Court excluded Mr. Wedin and his reports based on "mistakes" in his reports and "serious concerns about his candor." Dkt. No. 652 at 5:8–17.

supplemental declaration (Dkt. Nos. 780 at 1, 780-1), explaining Defendants' updated proposals—again based on Hart's experience and industry standard methods.. *See* Dkt. No. 801.

### C. The Court Orders An October 8–9, 2026, Evidentiary Hearing

At a hearing on September 3, 2026, the Court scheduled an evidentiary hearing to be held on October 8–9, 2026, at which the parties are expected to present expert forensic testimony. *See* Dkt. No. 756 (Sept. 3, 2026 Hr'g Tr.) at 112:3–8, 127:10–17.

The Court gave further guidance as to the expected framework of the October Hearing, including:

- **Court-Ordered Hearing Framework:** In a Minute Order following the September 3 hearing, the Court noted that the October Hearing will be just for the parties' forensic experts, from whom "expert testimony is required on the issues of: (i) proposed production protocols; (ii) indicia of spoliation and/or intentional destruction of data; (iii) the severity of spoliation sanctions, if granted." Dkt. No. 759 (Minute Order) at 1–2.

- **Expert Testimony Will Address The Impact Of Allegedly Missing Data:** The Court described a framework for expert testimony on "the significance of what the missing data might involve with their analysis." Dkt. No. 756 (Sept. 3, 2026 Hr'g Tr.) at 112:3–8. The Court noted it does not yet have this from Plaintiffs' expert and that this testimony "would be required in any motion for sanctions anyway." *Id.* at 112:13–20.

- **Defendants' Expert Will Be Heard *Before* Plaintiffs' Expert:** The Court stated, "we'll start with the defendants' expert, Hart, and then we'll proceed, *if necessary*, to the plaintiffs' expert." *Id.* at 127:17–22 (emphasis added); Dkt. No. 759 (Minute Order) at 1. Hart must address: (a) "the proposal/counterproposal and the viability of that," Dkt. No. 756 (Sept. 3, 2026 Hr'g Tr.) at 117:10–14; (b) his own counterproposal, *id.* at 124:5–7; and (c) whether Plaintiffs' proposal can "be done in a reliable way," *id.* at 63:23–64:5.

- **The Parties Must Come Prepared To Discuss Witness Lists For Future Spoliation Proceedings:** The Court noted that the parties should prepare a list of fact and expert witnesses for any spoliation proceedings which the Court will set after the October Hearing. *See* Dkt. No. 756 at 128:5–9.

## II. PROPOSED AMENDMENTS TO THE HEARING FRAMEWORK TO STREAMLINE THE HEARING AND COMPLY WITH RULE 26

### A. Consistent With Plaintiffs' Burden, Plaintiffs' Expert Should Testify First

The issue before the Court at the October Hearing is to what extent forensic extractions of 23 of Defendants' digital devices should be turned over to Plaintiffs and what protocol should be followed in doing so. Because "a motion for forensic examination is disfavored and is not subject

to liberal discovery principles . . . [t]he burden of persuasion is properly placed on the party seeking the forensic examination." *PlayUp*, 350 F.R.D. at 53 (cleaned up). Therefore, as the moving party, Plaintiffs bear the burden of establishing that a forensic examination is warranted to resolve their claims. *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, 53 (D. Nev. 2025) (citing *MGA Ent., Inc. v. Nat'l Prods. Ltd.*, 2012 WL 12886446, at *2 (C.D. Cal. Jan. 26, 2012)). The party having the burden of proof has the burden of presenting the evidence first; only then does the opposing party present evidence attacking the opponent's case. *See Mabrey v. United States*, 2006 WL 1891127, at *3 (D. Nev. July 7, 2006); 28 Victor J. Gold, Fed. Prac. & Proc. Evid. § 6164 (2d ed. Apr. 2026 update) (explaining that the "conventional order begins when the party who bears the burden of proof presents its case in chief"). Requiring Defendants to proceed first inverts that framework: Defendants would be forced to anticipate and rebut a forensic proposal that Plaintiffs have not yet presented or validated. That inversion is particularly prejudicial where Plaintiffs seek an "extraordinary remedy" requiring "substantial support"—not for one device, but for 23. *PlayUp*, 350 F.R.D. at 53.

Requiring Defendants' expert to testify first compounds that prejudice by **shifting the burden to Defendants to disprove the viability of *Plaintiffs'* protocol**, rather than requiring Plaintiffs to prove it. Defendants' expert cannot "anticipate" evidence Plaintiffs have not yet presented. *See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3, AFL-CIO*, 2002 WL 31093619, at *3 (S.D.N.Y. Sept. 17, 2002); *cf. U.S. Bank, N.A. v. Glogowski L. Firm, PLLC*, 339 F.R.D. 579, 580–81 (W.D. Wash. 2021). And if Plaintiffs' expert does not testify, Defendants would additionally be prejudiced by not having the opportunity to cross-examine Greenfield concerning the proposal Plaintiffs ask the Court to adopt. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043–44 (9th Cir. 2014) (cleaned up) (explaining that expert evidence is tested through "cross examination, contrary evidence, and attention to the burden of proof").

### B. The Court Should Disregard Any Analysis Plaintiffs' Expert Did Not Author Or Does Not Adopt

Because Plaintiffs have not disclosed a report that comports with Rule 26(a)(2)(B), the record for the October Hearing lacks the basic information Rule 26 is designed to provide.[4] A compliant report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). Greenfield's declarations provide neither. *See* Dkt. Nos. 750-4, 779-1. In other words, the prehearing record lacks any indication:

- **Whether Greenfield's protocol actually covers the 23 devices.** Greenfield built and tested his protocol on one publicly available test image: a full filesystem extraction of an iPhone 11 running iOS 17. Greenfield has disclosed no testing of an Android device. Ten of the 23 devices were never acquired by full file system extraction. While a standard Rule 26 report would tie Greenfield's opinions to the actual devices, without one, Defendants are left without any indication as to which of Greenfield's steps and scripts apply to each device's configuration (make, model, OS, extraction type, tool, container, and apps).

- **What facts and data Greenfield considered.** A Rule 26 report would list everything the expert considered, yet Greenfield's declaration cites only the September 3, 2026 transcript, Defendants' counter proposal and the Hart declaration (Dkt. No. 779-1 ¶ 8), as well as an unidentified "report from Mr. Wedin" (Dkt. No. 779-1 ¶ 13). Defendants have no information regarding whether he reviewed the device list, vendor extraction reports or carrier records, or what other documents, records, or filings Plaintiffs' counsel may have given him.

- **Whether results from three test iPhones extend to all 23 devices**. Greenfield relies on tests run on three "test" iPhones, but Greenfield is silent as to whether those results carry over to differently configured iPhones, different iPhone models, operating systems, and Android devices.

All of this—and much more—would have been known to Defendants and the Court before the October Hearing, had Plaintiffs disclosed a proper Rule 26(a)(2)(B) report. Absent that, at a minimum, Plaintiffs' expert should be required to identify each of the opinions and analyses from Plaintiffs' proposal that the expert authored or, alternatively, adopts. Any nonexpert analysis in

---

[4] Technical forensic examination falls squarely within the realm of expert testimony. *See United States v. Daniels*, 652 F. Supp. 3d 1191, 1194 (S.D. Cal. 2023) (finding testimony on Cellebrite extractions fell under Rule 702 "[b]ecause training and therefore specialized knowledge [] was required to operate, obtain, and interpret data").

Plaintiffs' protocol can then be excluded, without testimony at the hearing from either party's expert.

### C. Forensic Expert Testimony Should Not Include Legal Questions

Even if Plaintiffs had disclosed an expert, Rule 702 does not permit any expert from testifying about certain topics the Court has ordered. Specifically, the Court found "that expert testimony is required on the issues of: (i) proposed production protocols; (ii) indicia of spoliation and/or intentional destruction of data; (iii) the severity of spoliation sanctions, if granted." Dkt. No. 759. As explained below, the latter two issues extend beyond the permissible boundaries of expert testimony. Excluding them will also streamline the hearing reduce objections and argument that will prolong the testimony.

Whether evidence reflects legally cognizable indicia of spoliation is a matter of law. *See Westenberger v. Albertson's LLC*, 2019 WL 5578484, at *3 (D. Nev. Oct. 29, 2019). Although a forensic expert may assist the Court by identifying technical evidence of deletion, alteration, overwriting, or other circumstances bearing on the destruction of data, Ninth Circuit law prohibits an expert from crossing the line from technical analysis to legal conclusions. *See United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015) ("[A]n expert cannot testify to a matter of law amounting to a legal conclusion"); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058–60 (9th Cir. 2008) (same); *United States v. Whittemore*, 944 F. Supp. 2d 1003, 1010–11 (D. Nev. 2013), *aff'd*, 776 F.3d 1074 (9th Cir. 2015) (a "legal conclusion" is "inappropriate matter for expert testimony"); *see also Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (same).

Applying that rule in the spoliation context, the court in *Westenberger* excluded a technical expert's opinion that destruction of physical evidence constituted spoliation—even though the expert applied industry evidence-preservation standards—because "whether a party has spoliated evidence is a question of law." 2019 WL 5578484, at *3. So too here.

The same problem is even more pronounced with the Court's requirement of expert testimony concerning "the severity of spoliation sanctions." Dkt. No. 759. The nature and severity of any sanction are matters committed to the Court's legal judgment and discretion, not subjects

of specialized expert knowledge. *See Gregory v. Montana*, 118 F.4th 1069, 1076–77 (9th Cir. 2024) (reversing district court's imposition of spoliation sanctions for abuse of discretion). An expert may provide predicate technical facts relevant to that determination—for example, whether deleted information can be recovered or reconstructed or is available from other sources, whether deletion resulted from affirmative user action rather than an automated process, and the technical consequences of the loss. *See Tamman*, 782 F.3d at 552 ("In general, an expert may only testify as to scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue." (cleaned up)). But the expert may not determine that those facts constitute spoliation, supply the legally relevant finding of intent, or opine on what sanction the Court should impose. *Id.*; *see Westenberger*, 2019 WL 5578484, at *3–4.

### D. The Court Should Not Require Defendants To Prematurely Disclose Merits Expert Opinions On An Incomplete Record

At the September 3, 2026 hearing, the Court contemplated a "mini trial" before the conclusion of fact discovery and before any merits expert testimony is even disclosed. *See* Dkt. No. 756 (Sept. 3, 2026 Hr'g Tr.) at 110:16–18, 112:1–21. But that framework would require Defendants to litigate disputed elements of Rule 37(e) before those threshold issues have been resolved and, in doing so, prematurely disclose Defendants' expert testimony bearing on the merits of the underlying case. Neither is proper.

#### i. Assessing Prejudice Requires Assessing The Merits Of Plaintiffs' Claims

Prejudice under Rule 37(e) turns on the significance of information truly lost within the meaning of Rule 37(e)—in other words information that is not available from another source-—to the underlying case. *See Gregory*, 118 F.4th at 1078 (holding that Rule 37(e)(1) requires "a finding of prejudice to another party from loss of the information" before imposing even remedial sanctions). Indeed, Rule 37(e)(1) permits sanctions only to the extent "necessary to cure the prejudice" caused by the loss. Fed. R. Civ. P. 37(e)(1). Determining prejudice therefore requires assessing whether—and to what extent—the missing evidence bears on the claims and defenses at

issue. *See Lopez v. Cardenas Mts., LLC*, 2023 WL 3182658, at *6 (D. Nev. May 1, 2023) (imposing sanctions after finding the lost evidence relevant to a "central dispute" in the case). Expert testimony on prejudice would thus necessarily address the relevance and significance of the allegedly lost evidence to Plaintiffs' claims—and, in turn, the merits of those claims. *See In re High-Tech Emp. Antitrust Litig.*, 2014 WL 1351040, at *17 (N.D. Cal. Apr. 4, 2014) (recognizing that questions of relevance "no doubt implicate substantive antitrust law").

**ii. Any Expert Testimony On Prejudice Would First Require Plaintiffs To Disclose Their Merits Theories In *Johnson* In Advance Of Any "Mini-Trial" Given The Changes To PAR Agreements And Combat Sports Since *Le***

Plaintiffs' complaint pretends that nothing has changed since the *Le* case, even though that case concerned the world of combat sports that existed more than a decade ago. As Plaintiff Johnson recently admitted in a YouTube post, combat sports are now global with fighters coming from all over the world and events taking place all over the world. *See* Dkt. No. 796 at 11 (quoting Kajan Johnson) (regarding the international scope of UFC: "[The] UFC is completely global . . . . There are people from everywhere, everywhere in the world that you're competing against."). This means that the reality of one of the most fundamental components of an antitrust case, the definition of the market, is not accurately reflected in Plaintiffs' complaint.

In addition, Plaintiffs' merits expert in *Le* focused on PAR agreement provisions that he claimed locked fighters to the UFC effectively for their entire careers. *See Le* Dkt. No. 524-3 at 41. Setting aside that Phil Davis (the plaintiff in *Davis v. Zuffa*) chose to leave the UFC for a different combat sports promoter and that Plaintiff Johnson recently fought in a boxing event, the reality is that the PAR agreement provisions that Plaintiffs' expert relied on in *Le* are no longer the same.[5] Plaintiffs admitted to the Court that these changes—effected in 2019 and 2020—significantly impacted their view of the value of the *Johnson* case. *See, e.g.*, *Le* Dkt. No. 1036 (July 12, 2024 Hr'g Tr.) at 17–18 (Plaintiffs' counsel explaining key PAR agreement changes from *Le* to *Johnson*—such as "shortened exclusive negotiation periods" and "right to match [reduced]

[5] As recently as June 12, 2026, Plaintiffs represented that PAR agreements "are at the core of the case." Dkt. No. 606 (Pls.' Statement Regarding Missing Information for the Critical Custodians) at 2 n.2.

from one year to four months"—could "allow fighters to reach free agency sooner . . . and allow for competition"); *id.* at 23 (Plaintiffs' expert in *Le* relied on "a 30-month lock-in period," while in *Johnson* "that lock-in period is shorter"); Dkt. No. 136-1 (Pls.' Mem. of Law in Supp. of Mot. for Prelim. Approval of Settlement) at 22 (explaining that certification of the *Johnson* Settlement Class was uncertain due in part to post-*Le* PAR agreement changes that could have required a different model for demonstrating class-wide impact and damages). This necessarily means that Plaintiffs' merits case in *Johnson* and *Davis* will be fundamentally different from the merits case the same lawyers advanced in *Le.*

This makes the process contemplated by Rule 26 whereby the party with the burden of proof discloses its expert testimony first even more important because no one knows what Plaintiffs' new merits theory will be. Fed. R. Civ. P. 26; *Mabrey*, 2006 WL 1891127, at *4 (citing the former Fed. R. Civ. P. 26(a)(2)(C))[6]; *see also U.S. Bank, N.A.*, 339 F.R.D. at 581 ("Since plaintiffs generally bear the burden of proof . . . defendants [] will often produce expert reports solely for the purpose of contradicting or rebutting a plaintiff's report because defendants generally need not produce any evidence to prevail.").

A mini-trial with expert testimony on prejudice would invert that ordinary sequence, requiring Defendants to disclose their merits experts before the close of discovery. It would also force Defendants to guess at Plaintiffs' new theories, given that the allegations copied from the *Le* case no longer make sense. Defendants would then have to commit to expert opinions without the benefit of reviewing and responding to Plaintiffs' merits experts' opinions and arguments, whatever they may be.

Moreover, experts base their opinions "on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703; *see also Cleaver v. Transnation Title & Escrow, Inc.*, 2024 WL 326848, at *5 (D. Idaho Jan. 29, 2024) (explaining that an expert "must first be apprised of the evidence and then form [his] opinions"). Indeed, experts are "*entitled* to

---

[6] The court in *Mabrey* recognized two exceptions to this rule: (1) when the defending party bears the burden of proof on an affirmative defense requiring expert testimony, and (2) when the parties' stipulated discovery plan expressly provides for staggered expert disclosures. 2006 WL 1891127, at *3–5. Neither exception applies here.

know the facts before they form their opinions." *Booker v. P.A.M. Transp., Inc.*, 2024 WL 4664420, at *9 (D.N.M. Nov. 4, 2024) (emphasis in original) ("Defendants cannot be expected to produce expert reports when relevant fact discovery is still on-going."); *see also Garcia v. Arizona*, 2023 WL 8039630, at *7 (D. Ariz. June 6, 2023) ("Defendants . . . should be able to have their expert(s) evaluate the factual record in reaching their opinions.").

The Court's suggested approach would materially prejudice Defendants by disrupting the ordinary sequence of proof and requiring them to take—and defend—merits positions before Plaintiffs have disclosed the theories and evidence on which their claims depend.[7]

## III. REQUEST FOR RELIEF

Defendants respectfully request that the Court:

1. Require Plaintiffs to disclose the expert who authored their July 23, 2026, forensic proposal, if any;

2. Require Plaintiffs, as the party bearing the burden, to present their expert first in support of their proposal, and preserve Defendants' right to cross-examine any expert whose testimony or declarations the Court considers in connection with the spoliation proceedings;

3. Order Plaintiffs to identify and present any expert(s) who authored their July 23, 2026 forensic proposal at the October Hearing, and further specify any of the specific opinions and analyses from that proposal that the expert(s) authored or adopts, if any;

4. Limit forensic expert testimony at the October Hearing to technical forensic observations—including metadata analysis and protocol viability; and

5. Decline to require Defendants to disclose or present merits expert opinions, including on prejudice under Rule 37(e) and the significance of any allegedly missing data, until after Plaintiffs have provided their merits expert reports and theories.

---

[7] No class has been certified in this matter, and the Court has not entered a case management order governing expert discovery, depositions, or trial. The September 30, 2026, deadline for substantial completion of document production was just last week, Dkt. No. 662, and, to date, no depositions have been taken, and no expert discovery has occurred. The October Hearing will therefore take place while fact and expert discovery remain open, before Defendants have had an opportunity to depose Plaintiffs' witnesses, examine Plaintiffs' anticipated merits experts on whatever their new merits opinions are, or complete the factual record on which any expert opinion must be based. *See* Dkt. No. 756 (Sept. 3, 2026 Hr'g Tr.) at 128:4–9, 129:1–3.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court grant the relief requested.

Dated: October 7, 2026

Respectfully submitted,

By: /s/ *Christopher S. Yates*

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

SEAN M. BERKOWITZ *(Pro hac vice)*
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
JOSEPH AXELRAD (*Pro hac vice*)
joseph.axelrad@lw.com
DANIELLE LENECK (*Pro hac vice*)
danielle.leneck@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5500

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-1061

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
BENJAMIN J. CABRANES (*Pro hac vice*)
bcabranes@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

YOTAM BARKAI (*Pro hac vice*)
ybarkai@dirllp.com
MATTHEW D. KAMINER (*Pro hac vice*)
mkaminer@dirllp.com
DUNN ISAACSON RHEE LLP
11 Park Place
New York, NY 10007

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Zuffa, LLC And TKO Operating Company, LLC's Motion Regarding The Procedural Framework For The October 8–9, 2026, Evidentiary Hearing And Any Further Proceedings Regarding Alleged Spoliation was served on October 7, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Christopher S. Yates*
Christopher S. Yates (*Pro hac vice*) of
LATHAM & WATKINS LLP