[Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Kajan Johnson, Clarence Dollaway, and Tristan Connelly, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,

Defendants.

No.: 2:21-cv-01189-RFB-BNW

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS IN RESPONSE TO REQUESTS FOR PRODUCTION NOS. 48–56 (ECF NO. 793)**

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION .....1

II. BACKGROUND .....2

A. Defendants Serve Requests Seeking Every Document Concerning Any Litigation Funding, Including Counsel's Case Assessments, and Plaintiffs' Fee Arrangements .....2

B. Defendants Let the Requests Lie Dormant for Five Months .....3

C. Defendants Revive the Requests on One Theory, Then Move to Compel on Others .....4

III. LEGAL STANDARD .....5

IV. ARGUMENT .....6

A. Litigation Funding Is Not Relevant to Any Claim or Defense .....6

i. Plaintiffs' Antitrust Allegations Concern Fighters' Bargaining Power in the Market, Not the Financing of This Lawsuit .....6

ii. Defendants' Speculation About Witness Bias Does Not Justify Discovery .....8

iii. Adequacy Provides No Basis for Pre-Certification Funding Discovery .....9

B. Plaintiffs' Attorneys' Fee Agreements Are Irrelevant and Not Properly Before the Court .....10

C. The Requests Target Protected Work Product and Are Disproportionate to the Needs of the Case .....10

D. Plaintiffs' Objections Are Specific and Proper .....11

E. Defendants Failed to Meet and Confer on the Theories and Requests They Now Press, and Their Eleventh-Hour Motion Is Untimely .....12

V. CONCLUSION .....13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Berger v. Seyfarth Shaw, LLP*, 2008 WL 4570687 (N.D. Cal. Oct. 14, 2008) ... 8

*Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254 (C.D. Cal. 2007) ... 8

*CFE Int'l LLC v. Turrent Schnaas*, 2026 WL 2387028 (S.D. Tex. Aug. 17, 2026) ... 7

*Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127 (9th Cir. 1992) ... 10

*Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014 (D. Ariz. 2020) ... 7, 11

*Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*, 2023 WL 4750822 (W.D.N.C. July 24, 2023) ... 7

*Garcia v. Navy Fed. Credit Union*, 2024 WL 4529575 (S.D. Cal. Oct. 18, 2024) ... 5

*Garcia v. Serv. Emps. Int'l Union*, 332 F.R.D. 351 (D. Nev. 2019) ... 6, 12

*Gbarabe v. Chevron Corp.*, 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) ... 9

*Haghayeghi v. Guess?, Inc.*, 2016 WL 9526465 (S.D. Cal. Mar. 21, 2016) ... 9

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612 (D.N.J. 2019) ... 1, 6, 8, 9

*Invesco High Yield Fund v. Jecklin*, 2021 WL 1234503 (D. Nev. Mar. 31, 2021) ... 6, 12

*Kaplan v. S.A.C. Capital Advisors, L.P.*, 2015 WL 5730101 (S.D.N.Y. Sept. 10, 2015) ... 9

*Kristensen v. Credit Payment Servs., Inc.*, 2014 WL 6675748 (D. Nev. Nov. 25, 2014) ... 11

*Larson v. Bailiff*, 2015 WL 4425660 (S.D. Cal. July 17, 2015) ... 5

*Le v. Zuffa, LLC*,
No. 2:15-cv-01045-RFB-BNW (D. Nev.) ....................1, 2, 7, 9

*Shuffle Master, Inc. v. Progressive Games, Inc.*,
170 F.R.D. 166 (D. Nev. 1996)....................6, 12

*Space Data Corp. v. Google LLC*,
2018 WL 3054797 (N.D. Cal. June 11, 2018) ....................6, 11

*United States v. Blackman*,
72 F.3d 1418 (9th Cir. 1995) ....................8

*V5 Techs. v. Switch, Ltd.*,
334 F.R.D. 306 (D. Nev. 2019), *aff'd*, 2020 WL 1042515 (D. Nev. Mar. 3, 2020)....1, 6, 8, 10

**Rules**

Fed. R. Civ. P. 7.1 ....................4

Fed. R. Civ. P. 23(g)(1)(A)(iv) ....................9

Fed. R. Civ. P. 23(h) ....................10

Fed. R. Civ. P. 26(b)(1)....................5, 11

Fed. R. Civ. P. 26(b)(3)....................5, 10, 11

Fed. R. Civ. P. 26.1 ....................4

Fed. R. Civ. P. 37(a)(1)....................6

LR IA 1-3(f)....................6, 12

LR 7.1-1 ....................4

LR 26-6 ....................6

Nev. R. Prof'l Conduct 1.8(e)....................10

## I. INTRODUCTION

Defendants' Motion to Compel ("Mot."), ECF No. 793, seeks a sweeping inventory of the private financial and professional arrangements behind this lawsuit: every engagement letter, term sheet, and communication with any actual or "potential" litigation funder; every "pitch deck[], presentation[], memorand[um], case assessment[], budget[], workplan[], expert analys[is], and damages model[]" shared with any funder; every funder-generated "risk assessment[]" concerning the "case merits, damages, liability, or defenses"; and every document "governing" the Named Plaintiffs' fee arrangements with their own counsel. ECF No. 793-3 ("Defs' Ex. A") at 12–13 (RFP Nos. 48–56). By Defendants' own definitions, the requests reach not only Kajan Johnson, Clarence Dollaway, and Tristan Connelly, but also their "attorneys." *Id.* at 5–6. None of this bears on whether Defendants violated the antitrust laws. And much of it is precisely the material—counsel's assessments of the strengths, weaknesses, value, and strategy of the case—that the work-product doctrine exists to protect.

Courts in this District and elsewhere routinely reject requests like these absent a concrete, non-speculative showing that a party's litigation funding bears on a specific claim or defense. *See V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312–13 (D. Nev. 2019), *aff'd*, 2020 WL 1042515 (D. Nev. Mar. 3, 2020); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019). Defendants make no such showing. Each of their three theories fails on its own terms:

*First*, Defendants claim they need funding discovery to rebut a "David vs. Goliath" trial theme. But the allegations Defendants point to—the UFC's revenues and the market power it uses to suppress fighters' compensation—are the substance of Plaintiffs' monopsony claims. They describe the parties' relative bargaining power in the market for fighter services during the class period, not the parties' litigation budgets years later. Whether a third-party litigation funder is helping to finance this lawsuit today says nothing about whether the UFC suppressed fighter pay. And Defendants themselves insist that "any reference to any purported resource disparity between Plaintiffs and Defendants would be inappropriate at trial," and promise a motion to exclude it. Mot. at 6 n.2. Indeed, in preparing for the *Le v. Zuffa* trial, Defendants specifically agreed to exclude reference to attorneys' fees as well as any financial interest any counsel may have in the litigation. Defendants cannot simultaneously maintain and agree that a theme is inadmissible *and* that they need intrusive discovery to rebut it.

*Second*, Defendants' "credibility and bias" theory is speculative: "*Should* Plaintiffs' litigation funding arrangement include any connection to Defendants' various competitors . . . ." Mot. at 8 (emphasis added). The cases Defendants cite involved concrete, known fee-payment arrangements—most notably, a key witness whose legal fees were being paid by the requesting party's direct competitor and litigation adversary. Defendants identify nothing comparable here, nor could they. Plaintiffs' interest in this case is obvious to everyone: they are the plaintiffs.

*Third*, Defendants' adequacy theory is both premature and speculative. Class certification has not been briefed, and the adequacy of Plaintiffs and their counsel will be tested on a full record at that time. The only "question" Defendants raise about counsel's resources is a remark at the September 3, 2026 status conference about the inefficiency and expense of briefing class certification and summary judgment simultaneously with spoliation proceedings—a common-sense remark on sequencing with which the Court agreed. And Plaintiffs' counsel are the same firms that litigated *Le v. Zuffa* through class certification before this Court.

Finally, the Motion fails for threshold procedural reasons. After a single April 17, 2026 conference, Defendants let these requests sit dormant for five months. They revived them by letter on September 14, in part on theories (damages and spoliation-scheduling costs) that the Motion now abandons; omitted RFP No. 56 from that letter entirely; never conferred on the new theories they now advance; and then filed this Motion on the substantial completion deadline. This is the same eleventh-hour tactic the Court has already warned it would "look unfavorably upon." Aug. 6, 2026 Hr'g Tr. at 37:10. The Motion should be denied.

## II. BACKGROUND

### A. Defendants Serve Requests Seeking Every Document Concerning Any Litigation Funding, Including Counsel's Case Assessments, and Plaintiffs' Fee Arrangements

On March 2, 2026, Defendants served their Second Set of Requests for Production, which included nine requests (RFP Nos. 48–56) concerning litigation funding and Plaintiffs' arrangements with counsel. Defs' Ex. A at 12–13. The requests are not limited to the existence or identity of any funder Defendants baselessly speculate exists. They demand, among other things, "[a]ll DOCUMENTS and COMMUNICATIONS" exchanged with any actual or "potential" LITIGATION FUNDER, "including but not limited to . . . any analyses of YOUR claims, defenses, or strategies in this ACTION, and the expected

timing or outcome of the ACTION" (RFP No. 50); all documents provided to any funder, "including but not limited to pitch decks, presentations, memoranda, case assessments, budgets, workplans, expert analyses, and damages models" (RFP No. 51); all funder due-diligence materials, including "analyses, reports, risk assessments, memoranda, or summaries relating to case merits, damages, liability, or defenses" (RFP No. 52); and "[a]ll DOCUMENTS governing YOUR fee agreement(s) and arrangements with counsel in connection with the ACTION" (RFP No. 56). *See* Defs' Ex. A.

Defendants' definitions extend the requests further still. "LITIGATION FUNDER" means any non-party that has "provided, offered, advised, negotiated, or otherwise been involved in providing funding, financing, insurance, indemnification, cost-sharing, or other monetary or in-kind support," including "insurers, brokers, . . . PERSON(s), special purpose vehicles, and any intermediaries" to Plaintiffs in this litigation, which are further defined to expressly include Plaintiffs' attorneys. *Id.* at 5–6 (Definitions 18, 19).

Plaintiffs served timely Responses and Objections on April 1, 2026. ECF No. 793-4 ("Defs' Ex. B") at 27–34. Contrary to the Motion's description of "the same three rote, boilerplate objections," Mot. at 9, Plaintiffs' objections were tailored to each request. Plaintiffs objected that Defendants' definition of "YOU" swept in Plaintiffs' attorneys and thereby called for privileged communications and attorney work product (RFP Nos. 48–50, 53, 55); that requests not limited to Plaintiffs sought documents of third parties outside Plaintiffs' possession, custody, or control (RFP Nos. 51, 52, 54); that the requests called for privileged and work-product material, including, as to RFP No. 56, "attorney-client agreements and/or communications related to the provision of legal services"; that all the requests subject to this Motion sought irrelevant information and were disproportionate to the needs of the case; and that all the requests subject to this Motion appeared calculated to harass Plaintiffs and proposed class counsel. Defs' Ex. B at 27–34. The Motion omits the request-specific objections altogether. *Compare* Mot. at 5, 9, *with* Defs' Ex. B at 27–34.

### B. Defendants Let the Requests Lie Dormant for Five Months

The parties conferred by telephone once, on April 17, 2026. ECF No. 793-1 ("Axelrad Decl.") ¶ 5. Plaintiffs explained that the requests did not seek relevant or discoverable information. *Id.* Defendants stated that they disagreed, "would consider Plaintiffs' position," and reserved their rights. *Id.* On April 29,

2026, Plaintiffs followed up with a letter confirming Plaintiffs' position that the documents sought were "irrelevant and not discoverable" and "not proportional to the needs of the case." Ex. 1. Plaintiffs further stated that the "best explanation that Defendants could muster during the meet and confer was that documents regarding funding arrangements *could* be relevant to the jury's consideration of damages at trial." On May 8, 2026, Defendants wrote that they were "continu[ing] to consider Plaintiffs' positions" on these requests, but did not further respond to Plaintiffs' letter. Mot. at 5 (citing ECF No. 543-16).[1] Then Defendants said nothing more about these requests for more than four months.

Separately, on May 7, 2026, Defendants asked Plaintiffs to confirm that their certificate of interested parties remained accurate. ECF No. 793-5 ("Defs' Ex. C") at 2–4. That certificate states that there "are no known interested parties other than those participating in the case and the members of the putative class who are absent and unnamed." *Id.* at 4. Plaintiffs' counsel responded on May 15 that he believed no supplement was required and that Plaintiffs would confirm. *Id.* at 2. Plaintiffs' counsel subsequently determined that no supplement was required and that Plaintiffs' certificate fully complies with Local Rule 7.1-1, Federal Rule 7.1, and Federal Rule 26.1.

### C. Defendants Revive the Requests on One Theory, Then Move to Compel on Others

At the September 3, 2026 status conference, the parties addressed the sequencing of the spoliation proceedings relative to class certification and summary judgment. Plaintiffs' counsel observed that "it would be profoundly inefficient to try to brief class certification and summary judgment, and incredibly expensive, you know, if we're doing it simultaneously with—" at which point the Court responded: "So let me just help you, Mr. Dell'Angelo. We're not going to do that." Sept. 3, 2026 Hr'g Tr. at 107:17–22; *see* ECF No. 793-7 ("Defs' Ex. E") at 2–3.

Eleven days later, on September 14, Defendants sent a letter seizing on counsel's remark. ECF No. 793-6 ("Defs' Ex. D") at 2–3. The letter addressed only RFP Nos. 48–55—not RFP No. 56. *Id.* It asserted that the requested materials were relevant to "the appropriate measure of any damages recoverable by Plaintiffs" and to the Named Plaintiffs' adequacy, and that the discovery was "essential" to rebut Plaintiffs' supposed "assertion that the costs to Plaintiffs of continuing to litigate this case weigh in favor of expediting

[1] The Motion cites ECF No. 543-16 for this email, Mot. at 5, while the Axelrad Declaration cites ECF No. 534-16, Axelrad Decl. ¶ 7. Plaintiffs believe ECF No. 543-16 is the correct citation.

spoliation proceedings." *Id.* at 2. In the same breath, Defendants acknowledged that they "disagree that it would be appropriate for the Court to consider the parties' respective financial burdens in determining when to schedule any spoliation hearing." *Id.* at 2 n.1. Defendants demanded production within four days, by September 18. *Id.* at 3.

Plaintiffs responded the next day, explaining that counsel's remarks concerned "the inherent inefficiencies of proceeding to class certification and summary judgment briefing when a spoliation determination may materially affect the issues before the Court"—inefficiencies that "would be incurred irrespective of whether Plaintiffs have any third-party litigation funding"—and that the Court had already rejected the simultaneous-briefing proposal. Defs' Ex. E at 2–3. Plaintiffs stood on their objections. *Id.* at 3. The Axelrad Declaration identifies no telephonic, video, or in-person conference of any kind after April 17. *See* Axelrad Decl. ¶¶ 5–9. Defendants did not request a further conference, and none occurred.

On September 30, 2026—the substantial completion deadline—Defendants filed this Motion. ECF No. 793. The Motion abandons the damages theory on which Defendants' September 14 letter relied and instead advances theories Defendants never raised in any conference: that funding materials are needed to rebut a "David vs. Goliath" trial theme, Mot. at 5–7; that they bear on the Named Plaintiffs' "credibility and bias" as witnesses, *id.* at 7–8; and that the Motion should extend to Plaintiffs' fee agreements with counsel under RFP No. 56, *id.* at 4, 9.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "District courts have broad discretion to determine relevancy for discovery purposes," and "[l]imits should be imposed where the burden or expense outweighs the likely benefits." *Larson v. Bailiff*, 2015 WL 4425660, at *3 (S.D. Cal. July 17, 2015). "District courts also have broad discretion to limit discovery to prevent its abuse." *Garcia v. Navy Fed. Credit Union*, 2024 WL 4529575, at *1 (S.D. Cal. Oct. 18, 2024). Documents "prepared in anticipation of litigation or for trial by or for another party or its representative" are not discoverable absent a showing of "substantial need," and even then the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P.

26(b)(3)(A)–(B). Generally, funding arrangements are not discoverable absent a concrete, non-speculative showing that a party's litigation funding bears on a specific claim or defense. *See V5 Techs.*, 334 F.R.D. at 312–13, *aff'd*, 2020 WL 1042515 (D. Nev. Mar. 3, 2020).

"[D]iscovery motions may not be considered unless the party moving to compel has made a good-faith effort to meet and confer." *Invesco High Yield Fund v. Jecklin*, 2021 WL 1234503, at *1 (D. Nev. Mar. 31, 2021); *see* Fed. R. Civ. P. 37(a)(1); LR 26-6(c). To "meet and confer" means "to communicate directly and discuss in good faith the issues required," LR IA 1-3(f), through a face-to-face, telephonic, or video conference, *see* LR IA 1-3(f)(1), and the movant must "personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute," *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). "Untimeliness is sufficient ground, standing alone, to deny a discovery motion. Indeed, courts will often deny Rule 37(a) motions because the moving party delayed too long." *Garcia v. Serv. Emps. Int'l Union*, 332 F.R.D. 351, 354 (D. Nev. 2019) (citations omitted).

## IV. ARGUMENT

### A. Litigation Funding Is Not Relevant to Any Claim or Defense

Courts have recognized that litigation funding is, as a general matter, irrelevant to the merits of a case, and have permitted discovery into it only upon a specific showing that it bears on a claim or defense—for example, "where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or not being protected, or conflicts of interest exist." *In re Valsartan*, 405 F. Supp. 3d at 615. In this District, the court denied discovery of a plaintiff's litigation funding documents and fee agreements, and the district judge affirmed. *V5 Techs.*, 334 F.R.D. at 312–13, *aff'd*, 2020 WL 1042515. Other courts in this Circuit agree. *See, e.g.*, *Space Data Corp. v. Google LLC*, 2018 WL 3054797, at *1 (N.D. Cal. June 11, 2018) (denying motion to compel funding-related discovery as neither relevant nor proportional; funding "a side issue at best"). None of Defendants' three theories supplies the required showing.

#### i. Plaintiffs' Antitrust Allegations Concern Fighters' Bargaining Power in the Market, Not the Financing of This Lawsuit

Defendants' lead argument is that funding materials are needed to rebut a "David vs. Goliath"

narrative. Mot. at 5–7. But the allegations Defendants cite are not an abstract theme; they are the elements of Plaintiffs' claims. The Amended Complaint alleges that the UFC "has foreclosed competition and gained, maintained, and enhanced its position as the dominant promoter of MMA," that its dominance has allowed it to "exploit" fighters, and that fighters accordingly "go substantially undercompensated" relative to the revenues they generate. ECF No. 118 ¶¶ 19, 102, 141, 144; *see* Mot. at 2. Those are allegations of monopsony power and its anticompetitive effects in the market for fighter services. They will be proven or disproven with evidence about the UFC's contracts, its market share, fighter compensation, and economic analysis—not with evidence about who, if anyone, is helping to finance this lawsuit. The same is true of the *Le* findings Defendants quote: the Court's observation that "Zuffa fighters did not get paid unless they fought," which "enabled Zuffa to use various strategies related to the timing, placement, number and opponents of a fighter's bouts to coerce fighters into renewing their contracts," *Le v. Zuffa, LLC*, No. 2:15-cv-01045-RFB-BNW, ECF No. 839, at 36, describes Defendants' conduct in the market. Whether a fighter could afford to turn down a bout in 2018 has nothing to do with whether his lawsuit is financed in 2026.

Defendants' authorities do not hold otherwise. In each, the funding inquiry was tethered to a narrative about the litigation itself—for example, a "lone inventor" patent plaintiff's ability to take on a large defendant, *Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*, 2023 WL 4750822, at *7 (W.D.N.C. July 24, 2023) (*see* Mot. at 6), or a defendant's claimed inability to bear "the extraordinary costs and inconvenience" of litigating in the chosen forum, *CFE Int'l LLC v. Turrent Schnaas*, 2026 WL 2387028, at *4 (S.D. Tex. Aug. 17, 2026) (*see* Mot. at 6). None involved an antitrust class action in which the alleged disparity in *market* power is itself the substance of the claim. And Defendants' lead case, *Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1020–21 (D. Ariz. 2020), held that the litigation funding agreements at issue "satisfy the 'because of' test and constitute work product." *See* Section IV.C, *infra*.

Nor does counsel's September 3 remark put Plaintiffs' finances at issue. Counsel observed that briefing class certification and summary judgment simultaneously with spoliation proceedings would be "profoundly inefficient" and "incredibly expensive"—an observation that holds true for any litigant regardless of how its counsel is paid—and the Court agreed that it would not proceed that way. Sept. 3,

2026 Hr'g Tr. at 107:17–22.[2] That scheduling question has been resolved. And Defendants themselves have disclaimed any argument that "the parties' respective financial burdens" bear on the schedule. Defs' Ex. D at 2 n.1. A passing remark about efficiently sequencing litigation events at a status conference does not transform the question of whether a party has a confidential funding arrangement and, if so, the terms of any such theoretical arrangement, into a subject of discovery.

#### ii. Defendants' Speculation About Witness Bias Does Not Justify Discovery

Defendants next argue that the Named Plaintiffs' "fee-payment arrangements are relevant to credibility and bias." Mot. at 7–8. But the only potential source of bias Defendants identify is hypothetical: "Should Plaintiffs' litigation funding arrangement include any connection to Defendants' various competitors, or those with a financial interest in Defendants' competitors, this would certainly be information a jury would be entitled to hear." *Id.* at 8. Defendants merely theorize that any such arrangement exists. Even if *some* funding arrangement exists (an assertion for which Defendants have presented no evidence), Defendants cite no evidence of any connection to a competitor. A request premised on the bare possibility that several different interdependent relevant facts might exist is the definition of a fishing expedition, and it is precisely the type of speculation that courts have found insufficient to justify discovery of potential funding arrangements. *See V5 Techs.*, 334 F.R.D. at 312–13; *In re Valsartan*, 405 F. Supp. 3d at 615.

Defendants' cases underscore the point. In *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1274 (C.D. Cal. 2007), the witness's legal fees were being paid by MGA—Mattel's direct competitor and its adversary in the consolidated litigation—a known arrangement that plainly bore on the witness's potential bias toward a party. *United States v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995), on which *Bryant* relied, was a criminal case. And *Berger v. Seyfarth Shaw, LLP*, 2008 WL 4570687, at *1 (N.D. Cal. Oct. 14, 2008), addressed whether a key percipient witness's financial interests in the litigation were relevant (not

[2] Defendants have likewise commented on the expensive nature of the spoliation proceedings. *See* Decl. of Joseph Axelrad in Support of Zuffa and TKO's Counterproposal ¶ 5, ECF No. 729-2 ("On May 15, June 1, and June 29, 2026, Eric Wedin issued reports regarding his cell phone examinations. Responding to Eric Wedin's reports has cost Defendants over $500,000."). If such comments regarding the cost of litigation render everything related to those comments discoverable, as Defendants seem to argue, then Defendants' arrangements with Charles River Associates are likewise discoverable.

a plaintiff's funding arrangement). None of the cases authorize wholesale discovery into a named plaintiff's litigation funding on the theory that an undisclosed bias *might* turn up.

Moreover, the Named Plaintiffs' interest in this litigation is transparent. They are former UFC fighters—parties seeking damages for themselves and a proposed class of UFC fighters. Whether some hypothetical third party is contributing to the cost of that pursuit adds nothing to the obvious fact of the Named Plaintiffs' interest in the outcome. Defendants remain free to depose the Named Plaintiffs about their knowledge of the facts underlying their claims, which is what bears on their credibility as witnesses.

**iii. Adequacy Provides No Basis for Pre-Certification Funding Discovery**

Defendants' adequacy argument fares no better. Courts routinely reject the contention that a plaintiff's litigation funding is discoverable on adequacy grounds where, as here, the argument rests on speculation. *See, e.g., Kaplan v. S.A.C. Capital Advisors, L.P.*, 2015 WL 5730101, at *4–5 (S.D.N.Y. Sept. 10, 2015); *In re Valsartan*, 405 F. Supp. 3d at 615. Defendants identify no conflict between Plaintiffs and the putative class, no indication that any non-party is directing litigation or settlement decisions, and no evidence that the interests of the class are being compromised.

Defendants' principal authority illustrates what is missing. In *Gbarabe v. Chevron Corp.*, 2016 WL 4154849, at *1–2 (N.D. Cal. Aug. 5, 2016), the court considered concrete questions about whether proposed class counsel—a solo practitioner—could finance the litigation. Mot. at 8. Here, by contrast, Plaintiffs are represented by Berger Montague PC, Cohen Milstein Sellers & Toll PLLC, the Saveri Law Firm, LLP, and Lockridge Grindal Nauen PLLP—the same established antitrust firms that litigated *Le v. Zuffa* for nearly a decade, through class certification before this Court. Neither *Gbarabe* nor *Haghayeghi v. Guess?, Inc.*, 2016 WL 9526465, at *1 (S.D. Cal. Mar. 21, 2016), involved class counsel whose resources and adequacy the court had already evaluated in materially identical litigation.

In any event, adequacy will be determined at class certification, based on the individuals identified in the motion for class certification as proposed class representatives,[3] where Plaintiffs bear the burden of establishing it on a full record, and where proposed class counsel must address "the resources that counsel

[3] As the Court recently acknowledged, Plaintiffs are "perfectly entitled" to substitute a different named Plaintiff, so the current named Plaintiffs may not be the same class representatives at the class certification stage of this litigation. *See* Oct. 9, 2026 Hr'g Tr. at 56:16–57:23.

will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(iv). Class certification has not yet been briefed. Defendants' suggestion that Plaintiffs' counsel is seeking to resolve the case "before the merits of Plaintiffs' claims are ever tested," Mot. at 8, is not an adequacy argument at all; it is a complaint that Plaintiffs are pursuing sanctions for Defendants' broad, intentional spoliation, of which the Court has already found "significant indicia" of occurring. Nov. 20, 2025 Hr'g Tr. at 60:9–12, 62:1–20.

### B. Plaintiffs' Attorneys' Fee Agreements Are Irrelevant and Not Properly Before the Court

The Motion should also be denied as to RFP No. 56, which seeks "[a]ll DOCUMENTS governing YOUR fee agreement(s) and arrangements with counsel." Defs' Ex. A at 13. Defendants omitted RFP No. 56 from their September 14 letter, Defs' Ex. D at 2–3, and have not conferred about it since April. *See* Section IV.E, *infra*. Nor does the Motion offer any argument specific to it. Defendants' theories concern third-party funding; none explains why the terms on which the Named Plaintiffs retained their own counsel are relevant to any claim or defense. Because Defendants have not even attempted to meet their burden as to RFP No. 56, the Motion should be summarily denied as to that Request.

Regardless, Defendants' theories as to the relevance of any materials responsive to RFP No. 56 are invalid. *V5 Techs.*, 334 F.R.D. at 313, held that the plaintiff's fee agreements were not discoverable, as Defendants acknowledge. Mot. at 7 n.3. In a class action, counsel's fees are subject to the Court's review and approval under Rule 23(h) at the appropriate time; they are not a subject of merits discovery. And to the extent fee-related documents reflect the nature of the legal services rendered, counsel's strategy, or confidential attorney-client communications, they are privileged. *See Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). That contingent-fee counsel may advance litigation costs is commonplace and expressly permitted by the rules of professional conduct. *See* Nev. R. Prof'l Conduct 1.8(e)(1). It supplies no basis for discovery.

### C. The Requests Target Protected Work Product and Are Disproportionate to the Needs of the Case

Even if Defendants could show some marginal relevance of the Requests, the Motion would still fail. By their terms, RFP Nos. 50 through 52 seek counsel's "analyses of YOUR claims, defenses, or strategies," their "case assessments, budgets, workplans, expert analyses, and damages models," and

funders' "risk assessments" of the "case merits, damages, liability, or defenses." Defs' Ex. A at 12–13. Those materials are, by definition, prepared "because of" this litigation and reflect the "mental impressions, conclusions, opinions, or legal theories" of Plaintiffs' counsel. Fed. R. Civ. P. 26(b)(3)(B). The very case on which Defendants principally rely held that litigation funding agreements constitute work product. *Cont'l Circuits*, 435 F. Supp. 3d at 1020–21. Defendants have not attempted to show the "substantial need" required to overcome that protection, and no showing could reach opinion work product, even if the materials Defendants imagine existed. Fed. R. Civ. P. 26(b)(3)(A)(ii), (B).

Defendants' assurance that they "do not seek documents or communications covered by the attorney-client privilege or work product doctrine," Mot. at 9 n.4, cannot be squared with the requests they served (*see* Defs' Ex. A at 5–6, 12–13, expressly calling for counsel's analysis and including counsel as a responding party), the order they propose, or the fact that Defendants never sought to narrow the requests in response to Plaintiffs' objections. The discovery is grossly disproportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). Substantial completion has passed. The requests would impose real burdens—including disclosure of counsel's litigation strategy to their adversary—in exchange for information that, at best, relates to a "side issue" that will never be presented to the trier of fact. *Space Data*, 2018 WL 3054797, at *1. Defendants' own concession that resource disparity has no place at trial, Mot. at 6 n.2, confirms that the benefit of this discovery is minimal.

**D. Plaintiffs' Objections Are Specific and Proper**

Defendants' remaining argument—that Plaintiffs' objections are "boilerplate"—rests on a mischaracterization of the record. Mot. at 9. As shown above, Plaintiffs' objections are tailored to each request: they identify the specific definitions that sweep in counsel, the specific requests that reach documents outside Plaintiffs' possession, custody, or control, and, as to RFP No. 56, the specific category of privileged material at issue. Defs' Ex. B at 27–34. A chart summarizing the specific objections Plaintiffs lodged to each RFP is attached as Exhibit 2. Plaintiffs then explained their position at the April 17 conference and again in writing on September 15. Axelrad Decl. ¶ 5; Defs' Ex. E at 2–3. Defendants have never been in any doubt about the basis for Plaintiffs' objections. *Kristensen v. Credit Payment Servs., Inc.*, 2014 WL 6675748, at *5 (D. Nev. Nov. 25, 2014), on which Defendants rely, involved generalized

objections untethered to any particular request. Mot. at 9. That is not this case.[4]

### E. Defendants Failed to Meet and Confer on the Theories and Requests They Now Press, and Their Eleventh-Hour Motion Is Untimely

The Court should deny the Motion because Defendants have not properly met and conferred with Plaintiffs on the issues they now press. The only conference the parties held on these requests occurred on April 17, 2026—more than five months before Defendants moved. Axelrad Decl. ¶ 5. At its close, Defendants told Plaintiffs they "would consider Plaintiffs' position," *id.*, and on May 8 they confirmed they were still "consider[ing]" it, Mot. at 5. Defendants then did nothing for more than four months. A party that represents it is considering its adversary's position, and then lets its requests lie dormant for the better part of a fact discovery period, has not engaged in the "two-way communication" the Local Rules require. *Shuffle Master*, 170 F.R.D. at 171.

Defendants' September 14 letter did not cure the problem. It was not a conference; it was a written demand for production within four days, and the Axelrad Declaration identifies no telephonic, video, or in-person discussion, as required by this Court. *See* LR IA 1-3(f); Axelrad Decl. ¶¶ 8–9. More fundamentally, the letter rested on different theories than the Motion. The letter argued that funding materials bore on "the appropriate measure of any damages recoverable by Plaintiffs" and on the cost of litigating before the spoliation hearing. Defs' Ex. D at 2. The Motion drops the damages theory entirely and instead argues that funding materials are needed to rebut a trial theme and to impeach the Named Plaintiffs as witnesses. Mot. at 5–8. Plaintiffs never had an opportunity to confer on those theories—which is exactly the narrowing and focusing function the meet-and-confer requirement is designed to serve. And the letter did not mention RFP No. 56 at all, Defs' Ex. D at 2–3, so Defendants have not conferred about Plaintiffs' fee agreements with counsel since April.

Finally, Defendants filed the Motion on September 30, 2026—the substantial completion deadline—on requests that had been in dispute since April. The Court anticipated precisely this tactic, warning that it "would look unfavorably upon a motion to compel filed regarding discovery that we've

---

[4] Defendants' assertion that Plaintiffs' decision to stand on their objections "speaks volumes and all but confirms the existence of such a relationship," Mot. at 5 n.1, is unsupported by any authority. A party does not concede anything by declining to provide irrelevant discovery, and Defendants cannot manufacture relevance by speculating about what the answer might be.

been discussing this entire time two days or a week before the substantial completion deadline." Aug. 6, 2026 Hr'g Tr. at 36:25–37:12. Defendants offer no explanation for their delay other than counsel's September 3 remark, and, as shown above, that remark has nothing to do with whether litigation funding is discoverable. The Motion should be denied as untimely and for failure to meet and confer. *See Garcia*, 332 F.R.D. at 354; *Invesco*, 2021 WL 1234503, at *1.

## V. CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: September 24, 2026

Respectfully Submitted,

By: /s/ Joseph R. Saveri
Joseph R. Saveri (*Pro hac vice*)
Christopher Young (*Pro hac vice*)
Kevin E. Rayhill (*Pro hac vice*)
Itak Moradi (*Pro hac vice)*
SAVERI LAW FIRM, LLP
550 California St., Suite 910
San Francisco, CA 94104
Telephone: +1 (415) 500-6800
Email: jsaveri@saverilawfirm.com
Email: krayhill@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: imoradi@saverilawfirm.com

W. Joseph Bruckner (*Pro hac vice*)
Brian D. Clark (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Phone: (612) 596-4001
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle J. Pozan (*Pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Phone: (612) 339-6900
Email: kjpozan@locklaw.com

*Additional Counsel for Plaintiffs and the Proposed Class*

By: /s/ Michael Dell'Angelo
Eric L. Cramer (*Pro hac vice*)
Michael Dell'Angelo (*Pro hac vice*)
Patrick F. Madden (*Pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: +1 (215) 875-3000
Email: ecramer@bergermontague.com
Email: mdellangelo@bergermontague.com
Email: pmadden@bergermontague.com

Joshua P. Davis (*Pro hac vice*)
Robert Maysey (*Pro hac vice)*
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: +1 (415) 906-0684
Email: jdavis@bergermontague.com
Email: rmaysey@bergermontague.com

*Counsel for Plaintiffs and the Proposed Class*

Richard A. Koffman (*Pro hac vice*)
Benjamin D. Brown (*Pro hac vice*)
Daniel H. Silverman (*Pro hac vice*)
Daniel Gifford (*Pro hac vice)*
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave., N.W.
Suite 500 East, Tower
Washington, DC 20005
Telephone: +1 (202) 408-4600
Email: rkoffman@cohenmilstein.com
Email: bbrown@cohenmilstein.com
Email: dsilverman@cohenmilstein.com
Email: dgifford@cohenmilstein.com

*Additional Counsel for Plaintiffs and the Proposed Class*

Michael J. Gayan
CLAGGETT & SYKES
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107
(702) 323-7777
mike@claggettlaw.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on October 14, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Joseph R. Saveri*
Joseph R. Saveri