BENJAMIN D. BROWN (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, LLP
1100 New York Ave., N.W.,
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bbrown@cohenmilstein.com

MICHAEL C. DELL'ANGELO (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
mdellangelo@bergermontague.com

JOSEPH R. SAVERI (*pro hac vice*)
SAVERI LAW FIRM, LLP
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com

*Attorneys for Individual and Representative Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Kajan Johnson, Clarence Dollaway, and Tristan Connelly, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,

Defendants.

No.: 2:21-cv-01189-RFB-BNW

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS IN RESPONSE TO REQUESTS FOR PRODUCTION NOS. 10, 13 AND 25 (ECF NO. 796)**

# TABLE OF CONTENTS


**Page(s)**

I. INTRODUCTION ....... 1

A. Defendants Serve Overbroad First RFPs, and Plaintiffs Offer to Produce Relevant and Proportional Materials ....... 2

B. Defendants Fail to Pursue Their First RFPs, and Plaintiffs Conduct a Reasonable Investigation and Linear Review by the Substantial Completion Deadline ....... 2

C. Defendants' Misconduct Requires Repeated Extensions of Discovery Deadlines ....... 3

D. Defendants Bring Untimely, Last-Minute Motions to Compel Materials Responsive to Defendants' First RFPs "as Written" ....... 4

II. LEGAL STANDARD ....... 7

III. ARGUMENT ....... 8

A. Defendants' Last-Minute Demand to Reopen Plaintiffs' Offer of Production and Commence Discovery on Never-Before-Mentioned Sources is Plainly Untimely ....... 8

B. The Discovery Defendants Request Is Neither Relevant nor Proportional to the Needs of the Case ....... 12

IV. CONCLUSION ....... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agarwal v. Oregon Mut. Ins. Co.*,
2013 WL 211093 (D. Nev. Jan. 18, 2013)....10

*Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*,
2012 WL 1970017 (D. Nev. June 1, 2012), *aff'd*, 595 F. App'x 670 (9th Cir. 2014)....15

*Benedict v. State Farm Mut. Auto. Ins. Co.*,
2022 WL 60775 (D. Nev. Jan. 5, 2022)....15

*Berry v. Cnty.*,
2023 WL 1777467 (D. Minn. Feb. 6, 2023)....11

*Everett v. Aldi, Inc.*,
2009 WL 940379 (N.D. Ind. Apr. 6, 2009)....10

*Garcia v. Navy Fed. Credit Union*,
2024 WL 4529575 (S.D. Cal. Oct. 18, 2024)....7

*Garcia v. Serv. Emps. Int'l Union*,
332 F.R.D. 351 (D. Nev. 2019)....7, 8

*Gault v. Nabisco Biscuit Co.*,
184 F.R.D. 620 (D. Nev. 1999)....1, 10

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*,
2013 WL 492103 (E.D. Cal. Feb. 8, 2013)....9

*Hampton v. Nevada*,
2022 WL 118303 (D. Nev. Jan. 11, 2022)....8

*Haviland v. Catholic Health Initiatives-Iowa, Corp.*,
692 F. Supp. 2d 1040 (S.D. Iowa 2010)....9

*Herndon v. City of Henderson*,
507 F. Supp. 3d 1243 (D. Nev. 2020)....7, 8, 10

*Larson v. Bailiff*,
2015 WL 4425660 (S.D. Cal. July 17, 2015)....7

*Le v. Zuffa, LLC*,
No. 2:15-cv-01045 (D. Nev. Oct. 24, 2023)....13

*O'Neil v. Las Vegas Metro. Police Dep't*,
2026 WL 2859492 (D. Nev. Sept. 23, 2026)....10

*Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 8374741 (N.D. Cal. Dec. 4, 2023) ..... 15

*Shinn v. Baxa Corp.*, 2011 WL 13248410 (D. Nev. Nov. 9, 2011) ..... 8

*In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331 (N.D. Ill. 2005) ..... 9

*Thomason v. City of Fowler*, 2014 WL 4436385 (E.D. Cal. Sept. 9, 2014) ..... 10

*U.S. E.E.O.C. v. Pioneer Hotel*, 2014 WL 5045109 (D. Nev. Oct. 9, 2014) ..... 9

*Wheat v. Wal-Mart Assocs., Inc.*, 2024 WL 4452707 (E.D. Cal. Oct. 9, 2024) ..... 8

*Yotta Techs. Inc. v. Evolve Bank & Tr.*, 2026 WL 172502 (N.D. Cal. Jan. 22, 2026) ..... 8, 10, 11

**Court Rules**

Fed. R. Civ. P. 26(b)(1) ..... 7, 14

Fed. R. Civ. P. 26(b)(2)(C)(i) ..... 15

Fed. R. Civ. P. 37 ..... 10

Fed. R. Civ. P. 37(a) ..... 7, 8

## I. INTRODUCTION

At the August 6, 2026 status conference, the Court put the parties on notice that "the substantial completion deadline is a real deadline," and that it "would look unfavorably upon a motion to compel filed regarding discovery that we've been discussing this entire time two days or a week before the substantial completion deadline." Aug. 6, 2026 Tr. at 37:4-12, ECF No. 720. This Motion is precisely what the Court warned against. Filed *on* the deadline, it demands that Plaintiffs produce "all documents and communications relating to or generated through" their use of "commercial digital platforms," ECF No. 796 ("Mot.") at 3—a demand that, as Defendants first framed it on September 11, sweeps in "account registration and subscription records, website content, pages, posts, and digital products," along with "transaction records, invoices, receipts, and financial statements." Defs' Ex. Q at 2.

The problem is that Defendants had three years to seek these materials and never did. On November 13, 2023, Plaintiffs served Responses and Objections ("R&Os") to Defendants' First RFPs that set out a clear offer of production tied to Plaintiffs' professional MMA careers—an offer that did not include these materials. Defs' Ex. C; *see* Defs' Ex. Q. For the next twenty months, Defendants were silent. Plaintiffs then met the July 17, 2025 substantial completion deadline with a production of more than 50,000 documents responsive to Defendants' requests and subject to Plaintiffs' R&Os. ECF No. 727 at 3-5. For more than another year, Defendants remained silent. Then, on September 11, 2026—less than three weeks before the substantial completion deadline, more than eight months after fact discovery would have *closed* but for Defendants' own misconduct, and almost *three years* after receiving Plaintiffs' R&Os—Defendants demanded that Plaintiffs collect and produce from these new sources, notwithstanding the looming deadline and their failure to appropriately address Plaintiffs' R&Os. Defs' Ex. Q. When Plaintiffs pointed out these deficiencies, Defendants declared an impasse and, on the evening of September 30, filed this Motion—in addition to two other similarly belated motions.

The Motion is untimely. "[T]he requesting party cannot delay a motion to compel with impunity." *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999) (quotation omitted). Defendants offer no explanation for waiting nearly three years to challenge Plaintiffs' R&Os, and no excuse for raising never-before-requested sources of discovery on the eve of the deadline to move to compel.

Even if it were timely, the Motion fails on the merits. As Plaintiffs explained in opposing yet another of Defendants' pending motions to compel, Plaintiffs' post-career business activities are not relevant to any claim or defense, ECF No. 727 at 17—much less the *financial records* or *analytical data* of those businesses. And even if some subset of these materials *were* relevant, responding at this late stage would require launching an investigation into new sources—some not even in Plaintiffs' possession, custody, or control—that is not proportional to the needs of the case, much less after the substantial completion deadline has passed. Plaintiffs have already produced documents responsive to RFP Nos. 10, 13, and 25 from a wide range of custodial files, and the remaining materials Defendants cite are publicly available. The Motion should be denied.

# I. BACKGROUND

## A. Defendants Serve Overbroad First RFPs, and Plaintiffs Offer to Produce Relevant and Proportional Materials

On October 13, 2023, Defendants served their First RFPs. *See* Defs' Ex. B ("First RFPs"). The First RFPs sought a vastly overbroad and disproportionate set of documents, including, among other things, all documents relating to Plaintiffs' participation in "amateur . . . sporting events," "action films or theatrical performances," and "any other form of sport or entertainment involving physical exercise"—even if wholly unconnected to Plaintiffs' provision of professional MMA fighter services. *See, e.g.*, First RFPs at 1; RFP Nos. 6-15, 17, 21, 24. On November 13, 2023, Plaintiffs served timely R&Os to the First RFPs, objecting to Defendants' facially overbroad requests and committing to a narrower production aimed at adducing relevant evidence. *See* Defs' Ex. C.

## B. Defendants Fail to Pursue Their First RFPs, and Plaintiffs Conduct a Reasonable Investigation and Linear Review by the Substantial Completion Deadline

After Plaintiffs served their R&Os in November 2023, Defendants went silent. Defendants did not contact Plaintiffs to discuss the proposed production, the objections, or even the RFPs on which Plaintiffs expressly offered to meet and confer. Nor did Defendants ask about or seek to negotiate the sources of ESI Plaintiffs would search, the search terms or search methodology Plaintiffs would use, or the parameters for Plaintiffs' collection, review, and production of documents.

Despite Defendants' failure to pursue their RFPs, Plaintiffs—unlike Defendants—were committed to complying with their discovery obligations pursuant to the Federal Rules and meeting the Court-ordered July 17, 2025 substantial completion deadline. Plaintiffs conducted a reasonable investigation into responsive documents subject to the offer of production in their R&Os, including by conducting custodial interviews to identify likely sources of responsive evidence, and performed a linear review of every document collected from every source. After twenty months of silence from Defendants, Plaintiffs produced over 50,000 documents in response to the First RFPs by the July 2025 substantial completion deadline in reliance on their uncontested R&Os. *See* Pls.' Opp'n to Defs' Mot. to Compel at 4-5, ECF No. 727 ("Aug. Opp'n").

**C. Defendants' Misconduct Requires Repeated Extensions of Discovery Deadlines**

At the time of Plaintiffs' substantially complete production, discovery was set to close on January 16, 2026—six months after substantial completion. But Defendants, unlike Plaintiffs, did not come close to meeting the substantial completion deadline.[1] By substantial completion, Defendants had produced roughly one-tenth as many documents as in *Le*, the vast bulk of which were email transmissions of contracts by UFC Vice President Tracy Long. *See* ECF No. 217 at 12. As Plaintiffs noted, this included only 58 *total* documents from Dana White's custodial files, compared to more than 10,000 in *Le*. *Id.*

This delay was not attributable to mere negligence. As the Court found in November 2025, Defendants' failure to meet the substantial completion deadline resulted from "an ongoing pattern of discovery violations," including "the disingenuous use of search terms that have led to limited or minimal disclosure of relevant material, even when it is clear that such material must exist." Nov. 20, 2025 Tr. at 60:9-61:4, ECF No. 306; *see id.* ("There is no justification or explanation for this defiance of the Court's orders.").

As a result of this misconduct—and Defendants' well-documented failures to provide honest and accurate information across nearly a year of ensuing spoliation proceedings—the Court was forced to extend these discovery deadlines well beyond what the case schedule, which Plaintiffs diligently followed, contemplated. *See, e.g.*, Jan. 6, 2026 Tr. at 75:25-76:6, ECF No. 353 ("The defendants blew

[1] This deadline, moreover, had previously been extended from April to July at Defendants' request. *See* ECF No. 189.

through the discovery deadlines. I've already made findings about that. . . . [T]his is the circumstance brought on by the defendants' own failure to properly go through discovery in this case."); Aug. 6, 2026 Tr. at 18 ("We're now a year past when discovery should have closed."); Sept. 3, 2026 Tr. at 92:25-93:3, ECF No. 759 ("We're more than a year past when the deadlines should have happened. I have heard evidence, even today, of new information that clearly should have been disclosed years ago."). In July 2026, the Court set a final, revised substantial completion deadline of September 30, 2026 for the UFC—over 14 months after the substantial completion deadline Plaintiffs met, and over eight months after fact discovery was set to *close*. *See* July 2, 2026 Tr. at 57:18-19, ECF No. 656.

In setting that much-extended September 30 deadline, the Court informed Defendants that this extension would not excuse their failures to pursue fact discovery across the previous three years, and the Court warned Defendants against attempting eleventh-hour gamesmanship: though the Court noted that this substantial completion date was a firm deadline for parties to move to compel, it clarified that "I really don't want to be entertaining and would look unfavorably upon a motion to compel filed *regarding discovery that we've been discussing this entire time two days or a week before the substantial completion deadline*." Aug. 6, 2026 Tr. at 37:9-12 (emphasis added).

### D. Defendants Bring Untimely, Duplicative Last-Minute Motions to Compel Materials Responsive to Defendants' First RFPs "as Written"

Defendants did not heed the Court's warning. First, in August 2026, Defendants filed their first motion to compel documents responsive to their First RFPs (the "August Motion"). Almost *three years* after Plaintiffs served their R&Os to the First RFPs delineating a specific offer of production—and over a year after Plaintiffs substantially completed their production pursuant to those R&Os—Defendants' motion asked this Court to adjudicate Plaintiffs' R&Os afresh, and to order Plaintiffs to produce documents from Signal, Telegram, and all other sources of ESI responsive to Defendants' First RFPs "as written," notwithstanding Plaintiffs' timely, previously unchallenged R&Os and long-complete production pursuant to their objections. *See* ECF No. 709 at 9. As Plaintiffs responded, Defendants had never, in the prior three years, responded to Plaintiffs' R&Os or sought to negotiate the scope of Plaintiffs' document production; they could not *commence* that process more than a year after Plaintiffs' document production was substantially complete, and more than six months after the scheduled *close* of

fact discovery but for Defendants' misconduct. *See* ECF No. 727 at 5-10. The August Motion—and a determination of whether Plaintiffs must reopen their production and conduct a further review and production pursuant to a new scope—remains pending.

Then, on September 11, Defendants initiated the current dispute. Less than *three weeks* before the substantial completion deadline, Defendants Zuffa, LLC and TKO Operating Company, LLC (the "UFC") sent a letter to Plaintiffs claiming that the UFC had "determined that the Named Plaintiffs used several commercial platforms to market and advertise their services as promoters, coaches, trainers, or otherwise, often leveraging their experience or affiliation with the UFC." Defs' Ex. Q at 1. Citing Plaintiff Kajan Johnson's post-career public website, on which he advertises his private gym and services as an MMA instructor, as well as documents Plaintiffs had produced one year prior reflecting Johnson's public advertisements of his services, the UFC demanded that Plaintiffs "immediately produce all documents and communications relating to or generated through the Named Plaintiffs' use of commercial digital platforms, such as kajanjohnsonmma.com, Kajabi, YouTube, Instagram, Google Ads, Meta Ads, or any other similar forum," including "account registration and subscription records, website content, pages, posts, and digital products hosted on any such platform," and "transaction records, invoices, receipts, and financial statements." Defs' Ex. Q at 2. According to the UFC, "[s]uch documents would be responsive to multiple RFPs served by Defendants, including, but not limited to, RFP No. 25 (publicity materials, promotional events, internet site content, other media); RFP No. 13 (sources of income); and RFP No. 10 (services provided to any athlete)." *Id.*

The UFC offered no justification for its failure to raise this sweeping demand for a new investigation, review, and production of documents from a wide array of sources until the eve of the substantial completion deadline. To the contrary, the UFC admitted on a meet and confer that it had identified these documents through internet research of publicly available sources, and not through any late-breaking development that could have excused its delay.

Equally important, as Plaintiffs noted in response, the UFC did "not contend that the described documents are responsive to Defendants' First RFPs *subject to Plaintiffs' R&Os*." Defs' Ex. R at 7 (emphasis added). In particular, Plaintiffs had objected to RFP Nos. 10, 13, and 25 as substantially overbroad, and tailored their offer of production to discovery likely to adduce relevant evidence:

- RFP No. 10 requested documents and communications related to any actual or potential agreement for Plaintiffs' services as an agent, manager, promoter, coach, trainer, cornerman, or *any other service* provided to any "ATHLETE"—defined to include any participant in any amateur or professional sport, action film, or theatrical performance. First RFPs at 1, 8. Plaintiffs offered to produce all agreements governing their professional MMA fights, the MMA appearances they made, and the sponsorships they received. R&Os at 13 (Ex. C).
- RFP No. 13 requested documents sufficient to show all income from *any source other than a promoter*—that is, all non-MMA-related income—since Plaintiffs' first paid MMA fight. First RFPs at 9. Plaintiffs offered to produce documents sufficient to show their income from professional MMA events—bout payments, payments for related services, MMA sponsorship revenue, merchandising, and other payments for use of their identities. R&Os at 16 (Ex. C).
- RFP No. 25 requested all documents relating to any publicity material, publication, article, public appearance, promotional event, internet site content, speech, video, or other media that refers to Plaintiffs' experience or affiliation with the UFC. First RFPs at 11. Plaintiffs offered to produce any UFC-related publicity materials they created or that were created on their behalf, and to meet and confer on the rest of the Request. R&Os at 26–27 (Ex. C).

As Plaintiffs noted, even if the "broad, never-before-requested discovery" listed in the UFC's letter—including subscription records, website content, transaction records, and financial statements—were responsive to the First RFPs as written, the UFC "d[id] not even argue that these materials fall within Plaintiffs' offer of production." Defs' Ex. R at 2. The UFC's demand thus depended entirely on reopening R&Os that Defendants had left unchallenged for nearly three years, and requiring Plaintiffs to conduct an entirely new document review after the substantial completion deadline pursuant to that new scope. *Id.*

Moreover, Plaintiffs noted, *a month prior*, Defendants had brought the August Motion to compel all "electronic communications" responsive to the First RFPs "as written" notwithstanding Plaintiffs' R&Os. ECF No. 709 at 9, 11. And Plaintiffs had opposed that motion, in significant part, on the grounds that Defendants' demand to reopen those R&Os was untimely. Aug. Opp'n at 13-16. Plaintiffs further explained that the sole example of "Plaintiffs' use of commercial digital platforms" that the UFC's letter cited—Mr. Johnson's post-retirement use of online platforms to advertise his private training services and merchandise—is already encompassed by the August Motion, which argues that Mr. Johnson's post-career business activities bear on "the offsetting benefits of the UFC's alleged conduct under the rule of reason." Defs' Ex. R at 2 (quoting ECF No. 709 at 12). Indeed, Defendants' reply in support of the August Motion discussed Mr. Johnson's website "at length as an example of evidence within the scope of the parties' dispute." *Id.* at 2 (citing ECF No. 733 at 6-7). As Plaintiffs explained, "[u]ntil that Motion is

decided, it would be a waste of judicial resources and the parties' time to brief an entirely overlapping dispute." *Id.*

In response, the UFC failed to distinguish the August Motion, other than by the tautology that the motions are "distinct because [they] focused on different materials from different sources," Mot. at 7; failed to explain how any of the materials it sought were responsive to the First RFPs subject to Plaintiffs' R&Os; and failed to justify its extreme delay. Instead, the UFC simply reiterated that it would seek relief from the Court if Plaintiffs did not heed its demand and "agree to produce the requested materials." Defs' Ex. R at 6.

The parties met and conferred on September 25, 2026, Axelrad Decl. ¶ 8, at which the UFC failed to explain why it had not sought these materials previously; why the materials it requested were responsive subject to Plaintiffs' R&Os; or why, alternatively, the dispute was not subsumed by the August Motion. Five days later, on the substantial completion deadline, Defendants filed this Motion. ECF No. 796.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "District courts have broad discretion to determine relevancy for discovery purposes," and "[l]imits should be imposed where the burden or expense outweighs the likely benefits." *Larson v. Bailiff*, 2015 WL 4425660, at *3 (S.D. Cal. July 17, 2015). "District courts also have broad discretion to limit discovery to prevent its abuse." *Garcia v. Navy Fed. Credit Union*, 2024 WL 4529575, at *1 (S.D. Cal. Oct. 18, 2024). "Untimeliness is sufficient ground, standing alone, to deny a discovery motion. Indeed, courts will often deny Rule 37(a) motions because the moving party delayed too long." *Garcia v. Serv. Emps. Int'l Union*, 332 F.R.D. 351, 354 (D. Nev. 2019) (quotation omitted). This is particularly true where motions to compel are filed at or near discovery deadlines. *See Herndon v. City of Henderson*, 507 F. Supp. 3d 1243, 1248 (D. Nev. 2020) ("[D]eadlines do not grant the parties carte blanche rights to demand sizeable discovery requests up to the last possible minute. Discovery is meant to be a balanced and, hopefully, front-loaded process, not one involving deadline brinkmanship." (quoting *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040,

1044 (S.D. Iowa 2010))). "Discovery motions brought at the end of fact discovery should be about cleaning up loose ends, not redoing things from the beginning." *Yotta Techs. Inc. v. Evolve Bank & Tr.*, 2026 WL 172502, at *3 (N.D. Cal. Jan. 22, 2026).

## III. ARGUMENT

### A. Defendants' Last-Minute Demand to Reopen Plaintiffs' Offer of Production and Commence Discovery on Never-Before-Mentioned Sources is Untimely

On September 30, 2026—years after Plaintiffs served their R&Os, more than fourteen months after Plaintiffs substantially completed their production, eight months after fact discovery would have *closed* but for Defendants' misconduct, and on the day of the UFC's substantial completion deadline—Defendants filed this Motion. Three weeks prior, the UFC had identified a broad swath of never-before-mentioned "commercial digital" materials that Defendants now argue, for the first time, Plaintiffs must collect, review, and produce. Defendants' discovery demand—and their ensuing Motion—comes far too late.

"Untimeliness is sufficient ground, standing alone, to deny a discovery motion. Indeed, courts 'will often deny Rule 37(a) motions because the moving party delayed too long.'" *Garcia*, 332 F.R.D. at 354 (internal citations omitted); *see also Shinn v. Baxa Corp.*, 2011 WL 13248410, at *4 (D. Nev. Nov. 9, 2011) ("A party cannot delay a motion with impunity," particularly where delay is a "tactical decision[.]"). In determining whether a motion to compel is timely, courts consider a number of factors, including "(1) the length of time since expiration of the discovery deadline; (2) the length of time the moving party has known about the discovery; (3) whether the discovery deadline has been extended; (4) the explanation for the tardiness or delay; (5) whether dispositive motions have been scheduled or filed; (6) the age of the case; (7) any prejudice to the party from whom discovery is sought; and (8) disruption of the Court's schedule." *Hampton v. Nevada*, 2022 WL 118303, at *3 (D. Nev. Jan. 11, 2022). Even if a filing "predates what is generally the outer limit for seeking such relief, it will be deemed untimely if evaluation of these factors reveals undue delay." *Herndon*, 507 F. Supp. 3d at 1248.

Here, the *Hampton* factors weigh heavily in favor of a finding of untimeliness. First, though Defendants filed at the nominal deadline for motions to compel, courts frequently find that motions filed at or near the deadline without explanation for the delay are untimely. *See, e.g.*, *Wheat v. Wal-Mart*

*Assocs., Inc.*, 2024 WL 4452707, at *7 (E.D. Cal. Oct. 9, 2024) (denying motion to compel filed one day before deadline where court, as here, had "cautioned that [c]ompliance with these discovery cutoffs requires motions to compel be filed and heard sufficiently in advance of the cutoff so that the Court may grant effective relief within the allotted discovery time."). The Court's statement that it "would look unfavorably upon a motion to compel filed regarding discovery that we've been discussing this entire time two days or a week before the substantial completion deadline" fits squarely within this established practice of district courts. Aug. 6, 2026 Tr. at 37:9-12.[2] Moreover, given that Plaintiffs *met the July 2025 substantial completion deadline*, a more appropriate benchmark for the timeliness of Defendants' demands is the January 16, 2026 fact discovery deadline that would have prevailed absent Defendants' misconduct—by which date Defendants had still not asked a *single* question regarding Plaintiffs' collection, review, or substantially complete production.

The second and third factors likewise indicate untimeliness. As to the "length of time the moving party has known about the discovery," Defendants themselves admit to identifying the sources they request through "publicly available information," and even the Plaintiff-produced documents Defendants cite have been in their possession for well over a year. Mot. at 5. Defendants do not state *when* they made the decision to, apparently, perform a Google search of the Named Plaintiffs, but to the extent it was only days before the substantial completion deadline, this delay is attributable to Defendants' own lack of diligence. And as to "whether the discovery deadline has been extended," the Court has now extended the discovery deadline more than *seventeen months*—a delay attributable solely to Defendants' "ongoing pattern of discovery violations" and repeated "defiance of the Court's orders." Nov. 20, 2025 Tr. at 60:9-

[2] *See also, e.g.*, *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 2013 WL 492103, at *5 (E.D. Cal. Feb. 8, 2013) ("[S]everal district courts have articulated that where a party has waited to bring a motion to compel until the eve of a discovery deadline, the court is justified in denying the motion." (internal citations omitted) (quoting *Everett v. Aldi, Inc*., 2009 WL 940379, at *6 (N.D. Ind. Apr. 6, 2009))); *U.S. E.E.O.C. v. Pioneer Hotel*, 2014 WL 5045109, at *2 (D. Nev. Oct. 9, 2014) (denying motion to compel because it was filed on the last day of discovery, even though "the parties had approximately 10–11 months in which to conduct discovery" and "[t]he court granted two extensions of the discovery and other pretrial deadlines"); *Haviland,* 692 F. Supp. 2d at 1044 (affirming magistrate judge's denial of motions to compel as untimely where plaintiffs waited until eleven days before the deadline to file, despite having "fifteen months to pursue this particular line of discovery"); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) (rejecting motion to compel where there was "no legitimate excuse for the plaintiffs having waited until the last day of discovery to have filed their motion").

61:4. Courts are especially reluctant to entertain last-minute motions to compel where discovery deadlines have already been extended on account of the moving party's delay. *Herndon*, 507 F. Supp. 3d at 1249 (denying motion to compel filed on the day of deadline where court had granted prior extensions and cautioned that "diligence by the parties was lacking and that they needed to accelerate their discovery efforts").[3] Allowing Defendants to move now for these materials would reward their misconduct and delay, which is not what Rule 37 envisions.

The "explanation for the tardiness or delay"—none whatsoever, other than Defendants' apparent desire to sandbag Plaintiffs at the eleventh hour and distract from their own spoliation—and "the age of the case"—over a decade, during which time Defendants should have gained ample familiarity with the categories of plaintiff discovery they require to prove their case—both likewise strongly indicate untimeliness. The "prejudice to the party from whom discovery is sought," moreover, of allowing Defendants to demand myriad new sources of review and litigate Plaintiffs' R&Os afresh at the deadline would be significant. Where a "delay results in substantial prejudice to the party to whom it was directed ..., the court may hold that the requesting party has waived the right to compel response and disclosure." *Gault*, 184 F.R.D. at 622 (internal quotation omitted). This is particularly true where a party's delay in moving to compel would impose substantial discovery burdens on its opponent near the close of discovery. *See Yotta Techs. Inc.*, 2026 WL 172502, at *3 (denying motion to compel that was "technically compliant with the deadline to file a discovery motion," as "redoing a significant part of

[3] *See also Thomason v. City of Fowler*, 2014 WL 4436385, at *5 (E.D. Cal. Sept. 9, 2014) (emphasis and internal quotation marks omitted) (denying motion to compel as untimely because it was filed on "the last day of the non-dispositive motion deadline," the deadline had already been extended twice, and court had "warned the parties that compliance with the non-dispositive motion filing deadline requires motions to be filed and heard sufficiently in advance of the cutoff so that the Court may grant effective relief within the allotted time period"); *O'Neil v. Las Vegas Metro. Police Dep't*, 2026 WL 2859492, at *3 (D. Nev. Sept. 23, 2026) (finding that six extensions of discovery deadline weighed in favor of finding motion to compel untimely); *Agarwal v. Oregon Mut. Ins. Co*., 2013 WL 211093, at *5 (D. Nev. Jan. 18, 2013) (rejecting argument that "prior extensions of discovery . . . somehow excuse the late filing"); *Everett v. Aldi, Inc*., 2009 WL 940379, at *6 (N.D. Ind. Apr. 6, 2009) ("'Where a party waits to file a motion to compel until the eve of a discovery deadline, the court is justified in denying the motion,' particularly when coupled with the extra time already twice afforded to the parties, the long periods of discovery inactivity, and the lack of meritorious explanations for their inaction and delay." (quoting *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Servs. N. Am., L.L.C*., 2004 WL 3021842, at *6 (N.D. Ill. Dec. 30, 2004))).

[non-movant's] document production . . . [wa]s not proportional to the needs of the case," and observing that this was "especially true when [movant] . . . waited until long after that production was made to file this motion"); *id.* at *3 ("Discovery motions brought at the end of fact discovery should be about cleaning up loose ends, not redoing things from the beginning."); *see also Berry v. Cnty.*, 2023 WL 1777467, at *2 (D. Minn. Feb. 6, 2023) (holding that discovery demands that "call[ed] for additional searches for, review of, and production of ESI" near substantial completion deadline "violate[d] . . . the understanding and well-settled expectations of the Court and the parties").

Here, too, requiring Plaintiffs to collect and review documents from new, previously unnamed sources—over a year after substantial completion—would saddle Plaintiffs with unanticipated discovery obligations (including, among other things, locating a broad range of "subscription content, platform and transaction records, revenue data, and underlying agreements" from various third-party platforms) that are plainly not proportional to the needs of the case. More importantly, indulging Defendants' broader gambit to reopen Plaintiffs' R&Os—pursuant to which Plaintiffs have already conducted a linear review of *well over a million documents*—and potentially require Plaintiffs to re-review some or all of those documents anew would impose significant financial and logistical burdens on Plaintiffs and risk substantial further delay to the timely resolution of fact discovery.

Finally, as the Court has recognized, the "disruption of the Court's schedule" caused by Defendants' ongoing discovery failures is significant. *See, e.g.*, Jan. 6, 2026 Tr. at 75:25-76:6 ("The defendants blew through the discovery deadlines. I've already made findings about that. . . . [T]his is the circumstance brought on by the defendants' own failure to properly go through discovery in this case[.]"); Sept. 3, 2026 Tr. at 92:25-93:3 ("We're more than a year past when the deadlines should have happened. I have heard evidence, even today, of new information that clearly should have been disclosed years ago."). Allowing Defendants to proceed, "more than a year past when the deadlines should have happened," with exactly the "motion to compel filed regarding discovery that we've been discussing this entire time two days or a week before the substantial completion deadline" about which the Court warned, Aug. 6, 2026 Tr. at 37:9-12, would endorse only further delay and "disruption of the Court's schedule."

The Motion should be denied as untimely. Any other ruling would allow Defendants to benefit from the delays their misconduct caused and "effectively condone[] a disregard for the Court's orders . . . and a disrespect for the discovery process." Sept. 3, 2026 Tr. at 91:10-12. Defendants' defiance of their discovery obligations and deliberate effort to stall the Court's resolution of both spoliation proceedings and the merits—at great expense to both Plaintiffs and the Court—should not be tolerated.

**B. The Discovery Defendants Request Is Neither Relevant nor Proportional**

Even if Defendants' Motion were timely, it would lack merit. The materials Defendants seek concern Plaintiffs' post-career businesses, which are not relevant to any claim or defense—and the financial records of those businesses even less so. And even if some subset of these materials were relevant, collecting them from new sources at this stage would not be proportional to the needs of the case: Plaintiffs have already produced responsive documents from their custodial files, and the remaining materials Defendants identify are, by Defendants' own account, publicly available.

The question in this case is whether Defendants' monopsony scheme suppressed Plaintiffs' compensation as *professional MMA fighters*. Plaintiffs accordingly objected to RFP Nos. 10, 13, and 25 as overbroad and unduly burdensome, and limited their offer of production to their professional MMA careers: agreements governing their professional MMA fights, MMA appearances, and sponsorships; documents sufficient to show their income from professional MMA events and MMA-related sponsorships; and publicity materials created by or for Plaintiffs that relate to the UFC. Defs' Ex. C, R&O Nos. 10, 13, 25. As to RFP No. 10, Plaintiffs further objected that "the provision of training, and other common athlete services, are not at issue in this litigation." *Id.*, R&O No. 10. Defendants do not engage with these R&Os. They instead demand "all non-privileged documents responsive to RFP Nos. 10, 13, and 25," including every document "relating to or generated through" Plaintiffs' use of "commercial digital platforms." Mot. at 13.[4]

[4] The primary "platforms" Defendants cite consist of Mr. Johnson's YouTube channel, his Instagram account, his gym's website, and the websites and platforms where he advertises his online training course. *See* Mot. at 5-7; Axelrad Decl. Exs. A, H-M, S. For the other two Plaintiffs, Defendants cite only Mr. Connelly's instructor bios at two gyms where he coaches and Mr. Dollaway's profile on Cameo.com, where fans can book personalized video greetings for $25. *See* Axelrad Decl. Exs. N-P.

The "commercial" materials Defendants seek are neither relevant nor proportional to the needs of the case. Defendants recycle argument from their August Motion to assert that Plaintiffs' post-career promotion of their goods and services, and any income they earned as a result, bears on "the benefits they derived from fighting in the UFC." Mot. at 8-9; ECF No. 709 at 12 (Defendants contended that Mr. Johnson's "ability to leverage his status as a former UFC fighter to profit as a coach, trainer, and/or gym owner" goes "to the offsetting benefits of the UFC's alleged conduct under the rule of reason."). As Plaintiffs explained in opposing the August Motion, Defendants "do not explain what a fighter's post-career operation of an MMA gym—while potentially 'beneficial' to him in a colloquial sense—has to do with the distinct economic concept of 'procompetitive benefits' to challenged conduct under the rule of reason." ECF No. 727 at 17. The procompetitive-justification inquiry asks whether the *UFC's* challenged conduct—exclusive contracts, coercion, and acquisitions—increased output or quality in the market for professional MMA fighter services. *See, e.g.*, Defs' Renewed Mot. Summ. J. at 27-30, *Le v. Zuffa, LLC*, No. 2:15-cv-01045 (D. Nev. Oct. 24, 2023) (arguing that exclusive contracts "increas[ed] the quantity and quality of events"). Whether a former fighter later sells training courses, gym memberships, or merchandise in separate markets—even if he mentions his past experience as a UFC fighter—has no bearing on that question. Defendants' demand for "transaction records, invoices, receipts, and financial statements" from these businesses, Defs' Ex. Q at 2, is further removed still.[5]

Defendants argue to the contrary only by flagrantly misrepresenting the record in *Le*. Multiple times across the Motion, Defendants claim that, in *Le*, "this Court squarely held that Defendants were

[5] Indeed, Defendants' Motion proves the point. Though Defendants frame this dispute as one about Plaintiffs' post-career businesses, they devote much of their brief to Mr. Johnson's YouTube videos discussing the UFC. *See* Mot. at 2, 6-7. The statements they quote—that the "UFC is completely global" and that the UFC "is the only place that you can actually make that kind of money"—have nothing to do with any business venture or Plaintiffs' "promotion of their goods or services on the strength of the UFC's name and their prior affiliations with the UFC." Mot. at 2, 8, 11. Instead, they are simply Mr. Johnson's opinions about the UFC. And as Defendants know, Plaintiffs have collected their social media accounts, including Mr. Johnson's YouTube and Instagram accounts, are linearly reviewing them, and will produce relevant and responsive documents subject to their R&Os. ECF No. 798-21 at 3. Whatever the relevance of Mr. Johnson's social media posts about the UFC, that has nothing to do with whether it is relevant or proportional for Plaintiffs to investigate, review, and produce website content, transaction records, invoices, receipts, and financial statements from Plaintiffs' post-UFC businesses because they supposedly bear on Defendants' procompetitive justifications.

entitled to discovery on all 'combat related' income." Mot. at 3. Defendants quote the Court as holding that:

> [I]f they earn income because they're a well-known UFC fighter, and . . . they've generated income, and, you know, people are buying their DVDs or going to their workout video because they're a star in the UFC, that's combat related and that is MMA-generated income. [Plaintiffs do not have to provide discovery on income that is] completely unrelated.

Mot. at 3 (quoting *Le*, ECF No. 216 at 78:4-18). Defendants thus conclude: "In other words, this Court has already determined that materials related to Plaintiffs' ability to leverage their UFC affiliation—in any way, including monetarily—are 'combat related' and therefore material, relevant, and properly discoverable." *Id.* at 3-4.

The problem is that Defendants willfully misquote the Court. At the discovery hearing in *Le*, Magistrate Judge Leen—not "this Court"—described *Plaintiffs' agreement to produce* certain financial documents:

> ***So [Plaintiffs have] agreed that*** if they've generated income and, you know, people are buying their DVDs or going to their workout video because they're a star in the UFC, that's combat related and that is MMA-generated income. But if it is completely unrelated, they don't have to give you everything about every dime they've ever earned from whatever source for the period of time you're asking.

*Le*, ECF No. 216 at 78:12-18 (emphasis added). Defendants' brief simply erases the beginning of the sentence making clear the Court was describing Plaintiffs' *offer of production*, pretends that the Court made a holding on the scope of "material, relevant, and properly discoverable" materials, and then invokes the law of the case to argue that this non-holding is binding here. But Magistrate Judge Leen said no such thing, and Plaintiffs' offer of production in *Le*—a compromise position reached *pursuant to a meet-and-confer process Defendants initiated in* Le *on Plaintiffs' R&Os*—is not binding here.

Moreover, even if some subset of these materials were marginally relevant, compelling their collection now would not be proportional. Fed. R. Civ. P. 26(b)(1). First, Plaintiffs have already produced documents responsive to these RFPs *based on their investigation into sources likely to yield relevant evidence*. Plaintiffs produced roughly 57,000 documents from their custodial files, which Defendants acknowledge are responsive to the First RFPs, including RFP Nos. 10, 13, and 25. Mot. at 4. Defendants concede that those productions include documents reflecting Plaintiffs' use of the platforms they now cite. *Id.* at 6. Moreover, the remaining materials Defendants identify are, by Defendants' own

admission, largely publicly available. Under the Federal Rules, "the court must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "[C]ourts are disinclined to compel discovery when the responsive information is equally available to the propounding party from public sources." *Benedict v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 60775, at *2 (D. Nev. Jan. 5, 2022); *see also Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*, 2012 WL 1970017, at *4 (D. Nev. June 1, 2012), *aff'd*, 595 F. App'x 670 (9th Cir. 2014). That principle applies to content on public social media accounts and commercial websites. *See Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 8374741, at *1-2 (N.D. Cal. Dec. 4, 2023) (denying request to compel publicly available social media posts and product reviews).

Defendants concede that they identified Plaintiffs' promotional activities through "due diligence of publicly available information." Mot. at 5. Their supporting declaration attaches a transcript from a public YouTube video, screenshots of Plaintiffs' public websites, and links to Plaintiffs' public social media accounts. Axelrad Decl. ¶¶ 9, 14 & Exs. A, H-J, N-P, S. And Defendants represent that "[p]ublic sources confirm" Mr. Connelly's and Mr. Dollaway's promotional activities. Mot. at 6-7. Defendants have had access to these public sources for the entire three-year period since they served their RFPs, yet they failed to act. Reopening Plaintiff discovery after the deadline to require production of *publicly available* documents would turn the proportionality requirement on its head.

## IV. CONCLUSION

Defendants' Motion should be denied.

Dated: October 14, 2026

Respectfully submitted,

*/s/ Joseph R. Saveri*

Joseph R. Saveri (admitted *pro hac vice*)
Chris Young (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
Itak Moradi (admitted *pro hac vice*)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

*/s/ Daniel H. Silverman*

Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
Daniel Gifford (admitted *pro hac vice*)
Emily Marcus (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL, LLP**
1100 New York Ave., N.W., Suite 500, East Tower Washington, DC 20005

jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
krayhill@saverilawfirm.com
imoradi@saverilawfirm.com

W. Joseph Bruckner (admitted *pro hac vice*)
Brian D. Clark (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4001
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle Pozan (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Telephone: (612) 339-6900
kjpozan@locklaw.com

*Attorneys for Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly and the Proposed Class*

Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com
dgifford@cohenmilstein.com
emarcus@cohenmilstein.com

Michael Dell'Angelo (admitted *pro hac vice*)
Eric L. Cramer (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bergermontague.com
mdellangelo@bergermontague.com
pmadden@bergermontague.com

Joshua P. Davis (admitted *pro hac vice*)
Robert C. Maysey (admitted *pro hac vice*)
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (415) 906-0684
Facsimile: (215) 875-4604
jdavis@bergermontague.com
rmaysey@bergermontague.com

*Attorneys for Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly and the Proposed Class*

Michael J. Gayan
**CLAGGETT & SYKES**
4101 Meadows Lane, Ste. 100
Las Vegas, NV 89107
Telephone: (702) 333-7777
Fax: (702) 655-3763

*Liaison Counsel for Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on October 14, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Joseph R. Saveri*
Joseph R. Saveri