BENJAMIN D. BROWN (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL, LLP
1100 New York Ave., N.W.,
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bbrown@cohenmilstein.com

MICHAEL C. DELL'ANGELO (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
mdellangelo@bergermontague.com

JOSEPH R. SAVERI (*pro hac vice*)
SAVERI LAW FIRM, LLP
550 California Street, Suite 910
San Francisco, California 94109
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com

*Attorneys for Individual and Representative Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Kajan Johnson, Clarence Dollaway, and Tristan Connelly, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and Endeavor Group Holdings, Inc.,<br><br>Defendants. | No.: 2:21-cv-01189-RFB-BNW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL COMPLETE RESPONSES TO ENDEAVOR'S FIRST SET OF INTERROGATORIES AND FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS, AND DEFENDANTS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (ECF NO. 788)** |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ....................1

II. BACKGROUND ....................3

A. Defendants Fail to Pursue Their Own Discovery of Plaintiffs ....................3

B. Defendants' Widespread Spoliation and Systematic Efforts to Conceal It Emerge ....................4

C. Defendants Use Plaintiffs' Irrelevant, Long-Disclosed Signal and Telegram Messages to Manufacture a Discovery Dispute and Distract from Their Own Misconduct ....................5

D. Plaintiffs' Investigation and Linear Review Confirm Their Compliance with Their Discovery Obligations ....................7

E. Defendants Make Unreasonable, Last-Minute Discovery Demands Designed to Manufacture Motions to Compel ....................8

III. LEGAL STANDARD ....................10

IV. ARGUMENT ....................11

A. Plaintiffs' Second Amended Answers to Endeavor's First Interrogatories Moot Defendants' Motion ....................11

i. Plaintiffs Have Provided "Fulsome" Interrogatory Responses ....................11

ii. Plaintiffs Have Answered as to All of Endeavor's Enumerated "Ephemeral Messaging Applications" ....................13

iii. Plaintiffs Have Provided All Information the Interrogatories Request Regarding Their Devices ....................14

B. Defendants Are Not Entitled to Plaintiffs' Collection Reports ....................15

i. The Court Ordered Production of Defendants' Collection Reports Based on an Ongoing Pattern of Dishonest Disclosures ....................15

ii. Defendants Have Made No Showing of Spoliation—Let Alone That Messages Have Been "Intentionally Deleted" ....................17

iii. Collection Reports Would Provide No Relevant Information Defendants Do Not Already Have ....................21

C. Defendants Are Not Entitled to Production of Plaintiffs' Privileged Communications Relating to Their Preservation Obligations ....................21

D. Defendants Abandoned Their Third RFPs, and Their Demand Is Meritless ....................23

V. CONCLUSION ....................24

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Brown v. Albertsons, LLC*,
2017 WL 1957571 (D. Nev. May 11, 2017)....................20

*Garcia v. Navy Fed. Credit Union*,
2024 WL 4529575 (S.D. Cal. Oct. 18, 2024)....................11

*Gault v. Nabisco Biscuit Co.*,
184 F.R.D. 620 (D. Nev. 1999)....................25

*Invesco High Yield Fund v. Jecklin*,
2021 WL 1234503 (D. Nev. Mar. 31, 2021)....................25

*Larson v. Bailiff*,
2015 WL 4425660 (S.D. Cal. July 17, 2015)....................11

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
2016 WL 2957133 (N.D. Cal. May 23, 2016)....................21

*Picozzi v. Clark Cnty. Det. Ctr.*,
2018 WL 4101800 (D. Nev. Aug. 17, 2018)....................11

*Santos v. Baca*,
2015 WL 6956643 (D. Nev. Nov. 10, 2015)....................14

*Thomas v. Cricket Wireless, LLC*,
2020 WL 7344742 (N.D. Cal. Dec. 14, 2020)....................23

**Rules**

Fed. R. Civ. P. 26(e)(1)(A)....................14

Fed. R. Civ. P. 37(a)(1)....................25

Fed. R. Civ. P. 37(e)....................2, 20, 21

Fed. R. Civ. P. 26(b)(1)....................10, 19, 22

# I. INTRODUCTION

This omnibus motion to compel (the "Motion") is the spearhead of Defendants' pretextual campaign to avoid the consequences of their misconduct by falsely discrediting the Named Plaintiffs. After ignoring Plaintiff discovery for the better part of three years, Defendants found themselves facing significant potential sanctions for their widespread, intentional spoliation of critical evidence. So as the substantial completion deadline approached, Defendants devised this last-ditch strategy: reopen Plaintiffs' long-complete document production, launch a sweeping fishing expedition, and hope to turn up any evidence of ESI loss, relevant or not, that could distract from their own wrongdoing. Whatever they found—however unpersuasive—they would call "spoliation," in hopes that the false equivalence would sway the Court.

The problem with Defendants' strategy is that Plaintiffs, unlike Defendants, take their discovery obligations seriously. For the last four months, Defendants have probed Plaintiffs' openly acknowledged use of Signal and Telegram, desperately seeking any evidence that Plaintiffs (like Defendants) used these applications for *relevant* purposes, that Plaintiffs (like Defendants) used these applications' *autodelete functions* or otherwise intentionally destroyed messages, or that Plaintiffs (like Defendants) failed to disclose the true nature or extent of their use. Defendants' fishing expedition has come up empty. Despite demanding that Plaintiffs undergo onerous full file system extractions and respond to countless formal and informal discovery requests—all on an expedited timeline forced by Defendants' last-minute demands (which Plaintiffs complied with)—Defendants have adduced no evidence of misconduct following Plaintiffs' linear review of *years* of Signal chats covering *tens of thousands* of messages.

Defendants present no indication that any Plaintiff ever used any application's autodelete function or otherwise intentionally deleted messages. Each Plaintiff disclaims having done so, and Plaintiffs' counsel have uncovered no evidence to the contrary. Defendants have uncovered no evidence that any Plaintiff used Signal or Telegram for relevant and responsive purposes—with the exception of *two offhanded conversations* in an otherwise nonresponsive, yearslong chat thread of Plaintiff Johnson's private gym Signal chats—or that these applications were subject to any preservation obligation. And they have uncovered no indication that Plaintiffs have been anything but honest, forthright, and diligent in response to Defendants' myriad eleventh-hour requests. Instead, Defendants' entire claim to so-called

"spoliation" rests on the fact that, over five years of litigation, the Named Plaintiffs—*despite taking all reasonable precautions to preserve ESI*—have accidentally lost a small number of messages due to application-specific features of which Plaintiffs were unaware. Each of these inadvertent losses has been explained, and none comes close to establishing an inference of spoliation. *See, e.g.*, Fed. R. Civ. P. 37(e) (permitting sanctions only upon loss of ESI "[1] that *should have been preserved*" because "[2] a party failed to take *reasonable steps* to preserve it" (emphasis added)); *see id.* advisory committee's note to 2015 amendment ("The court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts.").

The contrast between these diligent efforts and Defendants' ongoing misconduct could not be starker. In addition to myriad other losses of critical ESI, for more than a year, Defendants' custodians concealed their Signal use in violation of multiple Court orders, including their executives' use of Signal's autodelete function to discuss business matters. And most stunningly, *as Defendants prepared to submit this Motion* baselessly accusing Plaintiffs of "hiding their own Signal use," yet more evidence of Defendants' Signal-related spoliation and misconduct emerged: On September 28, 2026—two days before the substantial completion deadline and the filing of this Motion—Defendants produced over 23,000 documents, buried among which were relevant Signal messages between Hunter Campbell and UFC Senior Vice President Reed Harris discussing UFC business. *See* Silverman Decl. Exs. 1-2. But Campbell had testified, under oath, that "the only two people I've ever talked to on [Signal] are two people in the military," Feb. 5, 2026 Tr. at 218:21-23, ECF No. 417, and the UFC *never* disclosed that Harris—another UFC custodian—used Signal. Rather than correct these flagrant misrepresentations, Defendants proceeded with this Motion, not only falsely accusing Plaintiffs of "hiding their own Signal use" but also, astonishingly, *repeating their now demonstrably false mantra* that "Signal was not used by [Defendants'] custodians for any purposes relevant to this case." Mot. at 2.

Undeterred, Defendants persist in their last-ditch strategy, bringing this kitchen-sink Motion at the substantial completion deadline demanding various forms of relief based on Plaintiffs' alleged spoliation. Each of Defendants' demands is meritless:

**Motion to Compel "Complete" Responses to Endeavor's First Interrogatories:** Defendants first demand supplemental responses to Endeavor's First Interrogatories, which request detailed

information on Plaintiffs' use, preservation, and collection of Signal and undefined other "ephemeral messaging application[s]." Mot. at 7. But when Endeavor made this demand *just five days before the substantial completion deadline*, Plaintiffs promptly agreed to provide supplemental interrogatory answers. Nonetheless, Defendants rushed to file this Motion, which has been mooted by Plaintiffs' subsequent service of the supplemental answers to which they committed. In reality, Defendants fabricated this dispute to malign the Named Plaintiffs, and to try to obtain vendor Collection Reports for every extraction Plaintiffs have performed. Endeavor's only basis for that demand is that the Court ordered Defendants to do the same. But the Court did so only after finding "significant indicia of spoliation" and an "ongoing pattern of discovery violations." Nov. 20, 2025 Tr. at 60:9-12, 62:1-2, ECF No. 306. Defendants have made no comparable showing, and they are not entitled to the same relief based on their false equivalence.

**Motion to Compel Responses to Endeavor's First RFPs:** Endeavor's RFP No. 1 seeks "[a]ll litigation hold notices, preservation notices, and similar directives issued in connection with this ACTION," along with every "reminder, reissuance, or modification" of those notices, every document "reflecting the transmittal, receipt, or acknowledgment" of those notices, and all directives "CONCERNING" these documents. That demand for counsel's communications with their clients and for counsel's work product is for the same materials that Defendants filed an emergency mandamus petition in the Ninth Circuit to shield—and there, from an order requiring only *in camera* disclosure after the Court found "significant indicia of spoliation." Defendants now ask the Court to order Plaintiffs to produce privileged communications directly to Defendants without *any* indicia of spoliation. Defendants have no basis to demand Plaintiffs' privileged communications absent evidence of misconduct, and there is none.

**Motion to Compel Responses to Defendants' Third RFPs:** Finally, Defendants filed a last-minute demand that Plaintiffs produce a vast set of cell phone carrier records in response to Defendants' Third Set of Requests for Production ("Third RFPs"). But Defendants abandoned these RFPs, failed to satisfy their meet-and-confer requirements, and cannot now move to compel on these requests.

## II. BACKGROUND

### A. Defendants Fail to Pursue Their Own Discovery of Plaintiffs

Over three years ago, on October 13, 2023, Defendants served their First RFPs. Plaintiffs served timely Responses and Objections ("R&Os") a month later. ECF Nos. 543-13, 556-5. Defendants then did

nothing. For the twenty months leading up to the Court-ordered July 17, 2025 substantial completion deadline, Defendants never sought to meet and confer on Plaintiffs' R&Os, never asked which sources of ESI Plaintiffs would search, and never raised any concern with Plaintiffs' production of more than 50,000 documents. *See* ECF No. 727 at 3-5 (outlining Defendants' failure to pursue Plaintiff discovery). Defendants remained silent for nearly another year after that production was complete. *Id.* at 5.

**B. Defendants' Widespread Spoliation and Systematic Efforts to Conceal It Emerge**

In late 2025, Defendants' own widespread, apparent spoliation of communications, including Signal messages—and their yearlong campaign to cover up that spoliation—emerged. As early as April 2025, during the meet-and-confer process that Plaintiffs initiated in 2024 on their own RFPs to Defendants, it became clear that there were serious issues with Defendants' preservation, identification, and collection of ESI. Plaintiffs—unlike Defendants—immediately asked Defendants to disclose the devices and communications applications used by their custodians. In response, for more than a year, Defendants stonewalled. Despite multiple Court orders *requiring* Defendants to disclose all applications and devices, Defendants' custodians failed to disclose that they had installed Signal, let alone that they had used it for relevant purposes. *See* ECF No. 791-1 at 8; ECF No. 291-2 at 9 n.11; ECF No. 527.

Then, on February 5, 2026, UFC Chief Business Officer Hunter Campbell admitted to having Signal on his phone, a fact he previously concealed in violation of these Court orders. Feb. 5, 2026 Tr. at 218:21-23, ECF No. 417. Next, on March 23, 2026, Defendants produced two screenshots of TKO executives Mark Shapiro and Ari Emanuel (as well as another now-TKO executive) using a Signal group chat to discuss Endeavor business with automatic-deletion settings enabled. But it was only by virtue of the Court's order directing the production of Defendants' third-party Collection Reports—discovery of which the UFC vigorously resisted—that the truth regarding Defendants' widespread Signal use was more fully revealed in May 2026. On May 11, 2026, Defendants produced Collection Reports from their discovery vendors confirming that Emanuel, Campbell, and Sean Shelby had Signal installed on their collected devices. ECF No. 527. On June 1, 2026, Defendants produced additional Collection Reports showing that Patrick Whitesell also had Signal installed on his collected device. ECF No. 560.

Throughout all this, Defendants categorically insisted that their custodians had never used Signal for relevant purposes. *See* Mot. at 2. Campbell testified, under oath, that "the only two people I've ever

talked to on [Signal] are two people in the military." Feb. 5, 2026 Tr. at 218:21-23, ECF No. 417. Defendants made the same assurances for Emanuel and Shapiro, representing that even though their review of Emanuel's device revealed "chat threads where they had been set to deleting message," with "no preserved message," Endeavor's custodians had assured counsel that Signal was "never [used for] UFC business." May 18, 2026 Tr. at 20:15-18, 25-26, ECF No. 549.

In recent days, it has become clear that these assurances of irrelevance were knowingly false, and that Defendants' misrepresentations to the Court continue to the present. On September 28, 2026—two days before the Court-ordered substantial completion deadline—the UFC produced 23,304 documents, buried among which were highly relevant daily Signal chats between Campbell and UFC Senior Vice President Reed Harris concerning UFC business and fighter relations. *See* Silverman Decl. Exs. 1-2. Those messages contradict Campbell's sworn testimony and reveal that Harris—whose Signal use the UFC never disclosed in response to the Court's orders—used Signal for UFC business too. Two days later, Defendants filed this Motion, repeating that their custodians never used Signal for any relevant purpose. Mot. at 2.

### C. Defendants Use Plaintiffs' Irrelevant, Long-Disclosed Signal and Telegram Messages to Manufacture a Discovery Dispute and Distract from Their Own Misconduct

In response to the exposure of their misconduct, Defendants have not come clean. Instead, they have launched the present campaign to reopen Plaintiffs' production and fish for evidence to distract from their own misconduct. On May 19, 2026—eight days after Defendants' Collection Reports revealed their custodians' undisclosed Signal use—Defendants Zuffa, LLC and TKO Operating Company, LLC (the "UFC") served Interrogatories asking Plaintiffs, *for the first time*, to identify every messaging application on their devices. ECF No. 727 at 6. On June 18, Plaintiffs answered fully and honestly, disclosing that each Plaintiff had downloaded Signal and/or Telegram, among other applications. ECF No. 637-15. Within hours, the UFC sent an apparently pre-written letter accusing Plaintiffs of nondisclosure, citing documents from Plaintiffs' own long-complete production that referenced Plaintiffs' Signal and Telegram use. ECF No. 709-3 at 2-3. As Plaintiffs explained, Defendants had *never before asked* Plaintiffs—in either formal or informal discovery—whether they had downloaded Signal or Telegram, or whether they had used those applications for any purpose, relevant or otherwise. *See* ECF No. 727 at 6-7. Regardless, the documents the UFC cited in its letter had been produced by the Court-ordered substantial completion deadline of July

17, 2025—meaning that Defendants had been in possession of Plaintiffs' documents referencing Signal and Telegram for almost a year. Together, these facts suggest that the UFC hoped Plaintiffs would follow its lead and provide incomplete, false, or misleading interrogatory responses, and had been preparing to spring a baseless "gotcha." But unlike the UFC, Plaintiffs complied with their discovery obligations and provided complete information on all applications as soon as they were asked.

Moreover, as Plaintiffs explained, the *very documents the UFC cited* revealed that Plaintiffs used Signal and/or Telegram for irrelevant and nonresponsive purposes, supporting Plaintiffs' decision not to collect and review those applications, and confirming that those applications were not subject to a preservation obligation. *See* ECF No. 727 at 8 (describing irrelevance of cited documents). Despite these explanations, Defendants persisted. On July 10, Endeavor served its First Interrogatories (the "Interrogatories"), demanding a "complete history" of Plaintiffs' use, retention, and collection of Signal, as well as any other undefined "ephemeral messaging application[s]." Defs' Ex. 5. In separate correspondence, Defendants demanded that Plaintiffs undergo full file system extractions of their devices, collect and review all Signal and Telegram messages, and produce responsive documents.

In response, Plaintiffs explained again that they did not use these applications for relevant purposes, and that collecting and reviewing these messages was unlikely to yield responsive documents and was disproportionate to the needs of the case. But unlike Defendants, Plaintiffs did not stonewall. In an effort to put Defendants' complaints to rest, they agreed to conduct full file system extractions of their devices, to review all Signal and Telegram messages, and to produce responsive messages—if any existed—subject to their R&Os.

On August 10—pending the results of their full file system extractions—Plaintiffs answered Endeavor's Interrogatories based on their ongoing investigation, confirming that no Plaintiff, to his best understanding, had ever enabled Signal's autodelete function, and disclosing that full file system extractions of Plaintiffs' devices were underway. Defs' Ex. 6 at 6-9. Plaintiffs further confirmed that no Plaintiff had ever understood his Signal and/or Telegram use to be relevant, responsive, or subject to a preservation obligation, but that each Plaintiff had nonetheless been instructed to preserve Signal messages *specifically*, regardless of their relevance, no later than June 19, 2026—the day after Defendants first placed Plaintiffs' Signal use at issue. Finally, Plaintiffs noted that the Interrogatories failed to define "ephemeral

messaging application"—a term that Plaintiffs have repeatedly explained is vague and indeterminate, *see, e.g.*, Aug. 6, 2026 Tr. at 33:13-34:1, ECF No. 720—so they agreed to answer as to the enumerated application Signal only. Despite these forthright responses and lack of any indicia of misconduct, on August 25, Endeavor served its First Request for Production ("RFP No. 1"), demanding that Plaintiffs produce a broad range of privileged documents pertaining to Plaintiffs' preservation obligations and communications with counsel about those obligations. *See* Defs' Ex. 29.

### D. Plaintiffs' Investigation and Linear Review Confirm Their Compliance with Their Discovery Obligations

Over the following month, Plaintiffs completed analyses of the full file system extractions of Mr. Johnson's and Mr. Dollaway's phones, while attempting extractions of Plaintiff Connelly's devices that failed due to Mr. Connelly's more-updated operating system. These extractions yielded Signal messages ranging from April 12, 2026, to the present for Mr. Johnson, and December 22, 2023, to the present for Mr. Dollaway. *See* Defs' Ex. 9 at 11. Plaintiffs investigated the date ranges for each, and each yielded a benign explanation:

On April 12, 2026, Mr. Johnson was forced to reset his iPhone due to a storage issue. Before doing so, he completed a full iCloud backup (in compliance with his preservation obligations) and transferred all contents onto the reset phone. However, unbeknownst to Mr. Johnson, Signal cannot be backed up via iCloud and was not included in the data transfer. *See* Defs' Ex. 9 at 11.

In December 2023, Mr. Dollaway stopped receiving push notifications for incoming Signal messages, causing him to miss several messages from his wife. In an effort to fix the problem, Mr. Dollaway redownloaded the application. However, unbeknownst to Mr. Dollaway, redownloading Signal—unlike other messaging applications—results in a loss of prior messages. *See* Silverman Decl. Ex. 3 at 14-15.

Notwithstanding these narrow, inadvertent losses, which occurred despite reasonable precautions, Plaintiffs' investigation yielded no evidence that any Plaintiff had failed to comply with his preservation obligations. Importantly, the investigation confirmed Plaintiffs' understanding that no Plaintiff had enabled autodelete, and that no ephemeral features had been enabled on Plaintiffs' devices. Moreover, Plaintiffs'

linear review of the thousands of Signal messages on Mr. Johnson's and Mr. Dollaway's phones revealed *no* responsive documents subject to Plaintiffs' R&Os.

But Plaintiffs did not stop there. Plaintiffs also identified and collected Signal messages from another member of the Fight Team Chat dating back to January 12, 2023—consisting of over 1,000 daily chats and over 10,000 individual messages—and conducted a linear review of these too. This review confirmed that autodelete had not been enabled on Mr. Johnson's phone (unlike the confirmed use of autodelete functionality by Shapiro and Emanuel). And it corroborated Plaintiffs' representation that this chat pertained to irrelevant, nonresponsive internal gym matters. Finally, it yielded exactly *two* chats that were responsive to the First RFPs subject to Plaintiffs' R&Os, covering a handful of one-off comments discussing relevant matters in the midst of otherwise nonresponsive threads over the course of three years. *See* Defs' Ex. 13 at 3-4.

On September 18, Plaintiffs served their First Amended and Supplemental Answers to Endeavor's Interrogatories (the "First Amended Answers") to provide these results, including a) precise download dates based on the full file system extractions; b) the date range of available messages on each device; c) the explanation for Mr. Johnson's lost messages; d) information regarding Plaintiffs' collection of the Fight Team Chat from another individual; and e) the results of Plaintiffs' investigations indicating no evidence of autodeletion on any device. *See* First Am. Answers at 7-11, Defs' Ex. 9. Plaintiffs also committed to further amend their Interrogatory Answers once Mr. Connelly's full file system extraction was complete. *Id.* at 11. And that same day, Plaintiffs produced the two responsive Signal chats their linear review had uncovered (a timeline far shorter than Defendants' reviews and productions). *See* Defs' Ex. 10 at 3.

### E. Defendants Make Unreasonable, Last-Minute Discovery Demands Designed to Manufacture Motions to Compel

Despite Plaintiffs' ongoing good-faith discovery efforts, Defendants persisted in manufacturing disputes to bring to the Court by the September 30, 2026 substantial completion deadline. On Friday, September 25—five days before the deadline—the parties met and conferred on Plaintiffs' First Amended Answers. On that call, and without advance notice, Endeavor posed *seventeen* detailed follow-up questions about Plaintiffs' use, retention, and collection of Signal. In addition, for the first time, Endeavor defined "ephemeral messaging application" as used in its Interrogatories to include Signal, Telegram, WhatsApp,

Facebook Messenger, and Instagram and demanded that Plaintiffs supplement their Interrogatory Answers as to those applications. Later that day, Endeavor sent a letter requesting substantive answers by September 28, and demanding that Plaintiffs again supplement their Answers. *See* Silverman Decl. Ex. 4.

Again, Plaintiffs were forthright. On September 28—the same day the UFC produced Campbell and Harris's Signal chats contradicting Defendants' sworn testimony—Plaintiffs provided available answers to Endeavor's questions. *See* Defs' Ex. 13. Plaintiffs provided additional information on their investigation, including the bases for their conclusions that Plaintiffs had not enabled autodelete; additional information regarding Mr. Johnson's inadvertent loss of Signal messages; and details on their efforts to replace those messages. *Id.* at 4-5. Moreover, Plaintiffs agreed to again amend their Interrogatory Answers to respond to Endeavor's questions, including by addressing Endeavor's newly enumerated list of "ephemeral messaging application[s]." *Id.* at 3. Defendants ignored these commitments and informed Plaintiffs they would move to compel anyway.

Defendants also used these final days before substantial completion to invent additional disputes to bring to the Court. First, on the parties' September 25 meet and confer, Endeavor demanded that Plaintiffs produce all documents responsive to RFP No. 1, including Plaintiffs' preservation notices and communications with counsel about their preservation obligations. Plaintiffs declined, explaining that such materials are privileged and protected work product, and that Defendants have not come close to making the showing of spoliation that could warrant intrusion into them. *See* Silverman Decl. Ex. 5.

Then, on Sunday, September 27, Defendants sent an email demanding for the first time that Plaintiffs produce "all nonprivileged documents responsive to Defendants' Third Set of RFPs," which seek every Plaintiff's cell phone carrier, call-detail, text-log, billing, and account records. *See* Silverman Decl. Ex. 6. Plaintiffs served objections to the Third RFPs on July 10, explaining that the requests were, among other things, irrelevant, overbroad, and disproportionate—and offering, as to each request, to meet and confer. Defs' Ex. 27 at 6-11. For the ensuing eleven weeks, Defendants never again mentioned their Third RFPs. Then, three days before substantial completion, Defendants sent an email misleadingly stating that "Defendants still do not have an answer from Plaintiffs as to whether they intend to produce all nonprivileged documents responsive to Defendants' Third Set of RFPs." Silverman Decl. Ex. 6 at 4. As Plaintiffs responded, that statement was "inaccurate, as Defendants never asked," and Plaintiffs demanded

that Defendants identify when they had satisfied their meet-and-confer requirements. *Id.* at 3. Defendants then—without identifying any prior conferral—attempted to declare an "impasse" such that Court intervention was appropriate. *Id.* at 2-3. Plaintiffs responded that the parties were not at an impasse; rather, "Defendants' failure to pursue their RFPs or engage in a good-faith meet-and-confer process over the last three months has prevented the parties from meaningfully negotiating Plaintiffs' objections and reaching resolution before the substantial completion deadline." *Id.* at 2.

On September 30, Defendants filed this omnibus Motion. The Motion asks the Court to order Plaintiffs, within fourteen days, to (1) serve "fulsome" supplemental answers to Interrogatory Nos. 1 and 2 "without limitation to Signal or to any time period," Mot. at 13-15; (2) complete full file system extractions of every device not already imaged and produce vendor Collection Reports for every extraction of every device or source, including the extraction of the Fight Team Chat from a third party, Mot. at 16-20; (3) produce all documents responsive to Endeavor's RFP No. 1, including Plaintiffs' litigation hold notices and their counsel's communications about them, Mot. at 21-23; and (4) produce cell phone carrier records and all other documents responsive to Defendants' Third RFPs, Mot. at 24-25.

Since then, Plaintiffs have done what they committed to do. On October 14, 2026, Plaintiffs served Second Amended and Supplemental Answers to Endeavor's First Interrogatories (the "Second Amended Answers"), Silverman Decl. Ex. 3. Those answers address each "ephemeral" application Endeavor identified, and state the date ranges of messages in Plaintiffs' possession, custody, or control; whether any disappearing-message feature was enabled on Plaintiffs' devices; and the dates and status of each collection. *Id.* at 13-15. They also provide the additional information Endeavor requested regarding Plaintiffs' devices and preservation efforts. *Id.*

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "District courts have broad discretion to determine relevancy for discovery purposes," and "[l]imits should be imposed where the burden or expense outweighs the likely benefits." *Larson v. Bailiff*, 2015 WL 4425660, at *3 (S.D. Cal. July 17, 2015). "District courts also have broad discretion to limit discovery to prevent its abuse." *Garcia v. Navy Fed. Credit Union*, 2024 WL

4529575, at *1 (S.D. Cal. Oct. 18, 2024). "The controlling case law requires [parties] to conduct a *reasonable inquiry* regarding their discovery responses and seek information *reasonably available* to them. It does not require them to make *every effort* to disclose *all discovery* [an adversary] requests." *Picozzi v. Clark Cnty. Det. Ctr.*, 2018 WL 4101800, at *4 (D. Nev. Aug. 17, 2018) (quotation omitted).

## IV. ARGUMENT

### A. Plaintiffs' Second Amended Answers to Endeavor's First Interrogatories Moot Defendants' Motion

Defendants' Motion first asks the Court to "order Plaintiffs to provide fulsome responses" to Endeavor's Interrogatories. Mot. at 13. But despite Defendants' conclusory allegations that Plaintiffs have been "evasive," *id.*, Defendants fail to identify a single Interrogatory Answer Plaintiffs have not provided in full. In reality, the demand for "fulsome responses" appears to be a pretense for Defendants to demand extensive discovery-on-discovery, including disclosure of Plaintiffs' device Collection Reports, without any justification. The Motion should be denied as moot as to the First Interrogatories, and Defendants' unsubstantiated demand for Plaintiffs' Collection Reports should be rejected.

#### i. Plaintiffs Have Provided "Fulsome" Interrogatory Responses

Notwithstanding Plaintiffs' stated commitment to serving amended answers, Defendants first bring a vaguely worded demand that the Court order Plaintiffs to provide "fulsome responses" to Endeavor's Interrogatory No. 2, which requests that Plaintiffs:

> Describe the complete history of YOUR retention and collection of Signal or any other ephemeral messaging application, which should include but not be limited to information about the date range of Signal or other ephemeral messages currently in YOUR possession, custody, or control, the date on which YOU first became aware that Signal or any other ephemeral or encrypted messaging application was potentially relevant to this ACTION or subject to preservation obligations, the date on which YOU first received or were informed of any litigation hold, preservation notice, or instruction to preserve Signal messages or any other ephemeral messaging communications in connection with this ACTION, and the date(s) on which Signal or other ephemeral messaging communications were collected from YOUR device(s) for purposes of this ACTION.

Defs' Ex. 5 at 4-5. But Defendants' claim that Plaintiffs' First Amended Answers were somehow "evasive," Mot. at 13, is belied by the very language they quote.

As Defendants note, Mr. Johnson's First Amended Answers explained that on April 12, 2026, Mr. Johnson reset his iPhone due to a storage issue, and that, unbeknownst to him, because "Signal cannot be

backed up via iCloud," his Signal data "was not included in the data transfer." First Am. Answers at 11. Mr. Johnson's Answer further states that counsel recovered the Fight Team Chat from January 12, 2023 through August 26, 2026 from another participant's device. *Id.* As a result, Mr. Johnson now "has Signal messages from January 12, 2023, to present in his possession, custody, or control." *Id.*[1]

Defendants feign a bizarre inability to interpret this straightforward language. According to Defendants, this Answer "fails to state" whether Johnson lost "all of his Signal messages prior to April 12, 2026," and "offer[s] no explanation of how to reconcile the statement that Johnson purportedly possesses Signal messages from January 12, 2023 to the present with this apparent destruction of messages." Mot. at 14. But Mr. Johnson's statement that his prior messages were "not included in the [April 12] data transfer" directly provides the former information, and his explanation that he "completed an extraction of Fight Team Chat messages from an individual who possessed all Signal messages from the Fight Team Chat from January 12, 2023, to August 26, 2026" provides the latter. *See* First Am. Answers at 11. Defendants' claim that this answer "force[s] Endeavor to try to read between the lines," Mot. at 14, is false; the information Endeavor seeks is contained in the lines themselves.

Similarly, Mr. Dollaway's First Amended Answers state that he "has Signal messages from December 22, 2023 to present" in his possession. First Am. Answers at 11. Defendants complain that this disclosure "does not explain whether he has all Signal messages from that period, or just some subset of them, nor does he explain why he lacks any Signal messages before December 22, 2023, despite having downloaded the app in 2018." Mot. at 14-15. But Endeavor's Interrogatory asks neither of these questions: it requests "the date range of Signal or other ephemeral messages currently in YOUR possession," and not Defendants' follow-up demands to further elaborate on that date range. Regardless, Plaintiffs' Second Amended Answers explain that a) Mr. Dollaway has never had ephemeral messaging or autodeletion

[1] Plaintiffs' First Amended Answers stated that Mr. Johnson's April 12, 2026 backup and his subsequent full file system extraction occurred on Mr. Johnson's iPhone 14. As reflected in the Second Amended Answers, the backup and full file system extraction occurred on Mr. Johnson's iPhone 16. Silverman Decl. Ex. 3 at 13. On May 7, 2025, Mr. Johnson purchased an iPhone 16 and transferred the contents of his iPhone 14 to the iPhone 16.

activated on his Signal;[2] and b) Mr. Dollaway lacks Signal messages before December 22, 2023, because he redownloaded the application due to issues receiving push notifications, not knowing that Signal—unlike other messaging applications—would not retain his messages. Second Am. Answers at 13, 15.

Plaintiffs' Answers are fully responsive to Endeavor's Interrogatories as written—and, in responding to follow-up questions outside the scope of those Interrogatories, indeed go beyond what the Federal Rules require. Defendants' baseless assertion that these comprehensive responses are somehow "evasive" is wrong and should be rejected.

**ii. Plaintiffs Have Answered as to All of Endeavor's Enumerated "Ephemeral Messaging Applications"**

Both Endeavor's Interrogatories demand responses as to "Signal or any other ephemeral messaging application." Defs' Ex. 5 at 4-5. As Plaintiffs objected—and have repeatedly emphasized to the Court—the term "ephemeral messaging application" is vague and refers to an indeterminate set of applications that may have some ephemeral features. *See* Aug. 6, 2026 Tr. at 33:20-23, ECF No. 720 ("[M]ost communication applications, right, at issue on both sides have ephemeral features."). Nonetheless, in follow-up correspondence, Endeavor again failed to identify a discrete list of ephemeral applications and insisted that Plaintiffs answer as to "any" application with any "auto-delete or disappearing message feature." Endeavor Aug. 25, 2026 Ltr., Defs' Ex. 7 at 3. Only on September 25, 2026, did Endeavor finally enumerate a complete list of "ephemeral messaging applications": Signal, Telegram, WhatsApp, Instagram, and Facebook Messenger. Silverman Decl. Ex. 4. On September 28, Plaintiffs agreed to supplement their Responses as to these applications. Defs' Ex. 13 at 3.

The Motion recognizes that Plaintiffs agreed to provide this information but seeks relief on the basis that Plaintiffs had "not yet served their supplemental responses" within *two days* of committing to do so, after Defendants' own inordinate delays in clarifying the Interrogatory. Mot. at 15. Plaintiffs' Second

---

[2] Defendants' only basis for questioning this representation is a small number of text messages, produced from Mr. Dollaway's own preserved iMessages, in which he passes along another individual's Signal contact information. *See* Mot. at 11 n.2 (citing Defs' Exs. 20-25). These messages date from years before December 22, 2023. *See* Second Am. Answers at 13. Sharing another person's Signal contact does not show that Mr. Dollaway himself ever exchanged a Signal message with that person, let alone that he did so after December 2023. All documents Defendants cite referencing this individual, moreover, predate Mr. Dollaway's service as a Named Plaintiff in this action. *See* Defs' Exs. 20, 22-25.

Amended Answers fulfill their commitment and moot the Motion as to the First Interrogatories. For Interrogatory No. 1, the Second Amended Answers respond as to Instagram, Facebook Messenger, WhatsApp, and Telegram, including download dates and whether auto-delete was ever enabled. Second Am. Answers at 8-9. For Interrogatory No. 2, they state when Plaintiffs learned of their preservation obligations, the date and method of every collection of each application, the date range of the messages in Plaintiffs' possession, and the devices from which messages were collected. *Id.* at 13-15. Rule 26(e) requires a party to supplement interrogatory answers "in a timely manner," Fed. R. Civ. P. 26(e)(1)(A), and Plaintiffs have done so at each step, in response to Endeavor's ever-shifting and escalating demands. Where the responding party has served the supplemental answers a motion seeks, the motion should be denied as moot. *See, e.g., Santos v. Baca*, 2015 WL 6956643, at *2 (D. Nev. Nov. 10, 2015) ("Where a party voluntarily provides the discovery that a motion to compel seeks, it moots the motion.").[3]

**iii. Plaintiffs Have Provided All Information the Interrogatories Request Regarding Their Devices**

Finally, Defendants claim that Plaintiffs have "improperly limited their interrogatory responses to exclude certain of their devices." Mot. at 15. Defendants are wrong. The Interrogatories request "the date range of Signal or other ephemeral messages currently in YOUR possession, custody, or control," and "the date(s) on which Signal or other ephemeral messaging communications were collected from YOUR device(s)." Defs' Ex. 5 at 4-5. Plaintiffs' Second Amended Answers directly provide this information for all ephemeral messaging applications: the date range of messages in Plaintiffs' possession, the date of collection for each application, and the method of collection for each application, including—to the extent applicable—the device from which it was collected.[4] Second Am. Answers at 13-15. That is all the Interrogatories ask for. Moreover, though Plaintiffs do not still possess their prior devices, the Second Amended Answers explain that they took reasonable steps to preserve all evidence contained on those

---

[3] The only information the Second Amended Answers do not yet provide pertains to Tristan Connelly, on whose devices—despite significant expense and effort—Plaintiffs have not yet been able to perform full file system extractions. Nonetheless, the Second Amended Answers provide preliminary answers as to all enumerated applications based on Connelly's logical extraction of his devices, and confirm that Connelly has not lost any identified ESI subject to a preservation obligation.

[4] Plaintiffs' cloud-based Facebook and Instagram extractions collected data directly from the applications and not from any particular device.

devices, including by backing up and transferring data to new devices. *Id.*; *see also* Pls.' Sept. 28, 2026 Ltr., Defs' Ex. 13 at 3-4. Defendants claim that Endeavor is "entitled to understand what efforts, if any, Plaintiffs took to collect from [their past devices] or preserve the evidence that they contain," Mot. at 16, but this information is explicitly provided by the Second Amended Answers.

Defendants also demand that Plaintiffs provide separate Interrogatory Answers for each of these prior devices—even though Plaintiffs have represented that they no longer possess these devices, and even though Defendants cannot explain how this information is responsive to Endeavor's request for either the "date range of Signal or other ephemeral messages *currently* in YOUR possession" or "*the date(s)* on which Signal or other ephemeral messaging communications *were collected* from YOUR device(s)," Defs' Ex. 5 at 4-5 (emphasis added), both of which the Second Amended Answers provide. Instead, Defendants argue that Plaintiffs "insisted on the same device-level accounting from Defendants, demanding that they 'determine that Signal has never been on the individuals' mobile devices.'" Mot. at 15 (quoting ECF No. 327-9 at 9-10). But Plaintiffs made this demand *only after Defendants' Court-ordered device disclosures omitted Signal entirely*—despite public reporting that Emanuel conducted Endeavor business on Signal—making an additional device-level accounting necessary. *See* ECF No. 791-1 at 8 (noting that "none of the individuals in the July 3 Information list Signal accounts," even though "recent reporting has revealed that Mr. Emanuel engaged in Endeavor business via Signal"); ECF No. 291-2 at 9 n.11 (Defendants' response that "there is nothing left for Defendants to disclose"); ECF No. 527 (Collection Reports later confirming Signal on Emanuel's, Campbell's, and Shelby's devices). Here, where Plaintiffs have been entirely forthcoming about the dates on which they downloaded each application, the date ranges of messages in their possession, and the dates, methods, and devices of collection, a device-level accounting would add no new information.

**B. Defendants Are Not Entitled to Plaintiffs' Collection Reports**

**i. The Court Ordered Production of Defendants' Collection Reports Based on an Ongoing Pattern of Dishonest Disclosures**

Plaintiffs have—in stark contrast to Defendants—been at all times forthright and honest in response to Defendants' last-minute discovery demands (even though, as Plaintiffs have noted, many of these demands have been grossly disproportionate, untethered to adducing relevant evidence, and propounded

for the obvious purpose of distracting from Defendants' own misconduct). Nonetheless, Defendants claim that Plaintiffs' responses are insufficient, and that Plaintiffs must produce vendor Collection Reports for "every image or extraction of every device" and of "any other device or source from which Plaintiffs have collected" in order to "verify (or not) Plaintiffs' answers." *See* Mot. at 16-17, 20. Defendants offer no basis for this demand, other than that the Court ordered Defendants to do the same. But the difference between the two circumstances is obvious. Despite Defendants' blasé representation that production of vendor Collection Reports goes "hand in hand with the Interrogatories," Mot. at 16, the Court did not order disclosure of Defendants' Collection Reports as a routine discovery matter. It ordered them over Defendants' vigorous objections after it found *multiple violations of its device disclosure orders*, including Defendants' custodians' repeated failures to honestly disclose the applications they downloaded and used. Indeed, after Defendants objected to producing Collection Reports on the basis that these Reports are "invasive" and require disclosure of information that is "sensitive in nature," the Court made express findings:

> But the issue I have . . . is I have a history here where the individuals have not been forthcoming about the apps on the phone. . . . I don't trust that simply what the individuals will say will be accurate. So we have to come up with a system whereby the parties and the Court can confirm what apps existed on the phone. . . . The issue is confirmation of what's there, and my concern is that that has not always been accurate which is why we're here today . . . .

May 18, 2026 Tr. at 146:3-18, ECF No. 549.

Here, by contrast, Defendants still cannot point to a *single* misrepresentation or disclosure failure Plaintiffs have made across four months of good-faith efforts. Defendants argue that "if what Defendants' custodians said about the applications on their phones cannot be relied upon, neither can Named Plaintiffs' say-so," Mot. at 17, but the supposed examples they cite prove Plaintiffs' point:

1) Defendants again state that Plaintiffs "did not disclose their use of Signal and Telegram until June 18, 2026." *Id.* But Defendants identify no obligation that Plaintiffs had to do so before Defendants finally *asked* via interrogatory in May 2026. As soon as Defendants served interrogatories requesting the information—nearly a year after Plaintiffs' substantially complete document production, and only after Defendants' own dishonest disclosures emerged—Plaintiffs provided honest, forthright, and complete responses.

2) Defendants state that Plaintiffs "swore to Signal download dates that proved wrong by years." *Id.* But Plaintiffs' initial Interrogatory Answers simply stated—based on their best understandings of their early Signal use *before Plaintiffs had time to complete their full file system extractions and forensic analyses*—that they downloaded Signal "around 2020." *See*

Defs' Ex. 6 at 6-7. Once those forensic analyses revealed exact download dates, Plaintiffs promptly amended their Answers to provide the exact dates. That Plaintiffs immediately and voluntarily provided the exact information their collections revealed—rather than, like Defendants, hiding that information—demonstrates why *further* disclosure of the Collection Reports is unwarranted. *See* First Am. Answers at 7-8.

3) Defendants again vaguely allege that Plaintiffs' Interrogatory Answers are "cagey" and "designed to obscure what data is actually missing." Mot. at 17. But as explained above, *see supra* Section IV.A.i, the Second Amended Answers provide precisely the "date range of Signal . . . messages" in their possession—and even go beyond the text of the Interrogatory by providing fulsome explanations for those date ranges. Defendants' unwarranted accusations, leveled *just days after* producing documents proving their own executives' undisclosed Signal use for UFC business, are dishonest and hypocritical.

This reed-thin list is the entirety of Defendants' "evidence" of misconduct. Absent any comparable "history here where the individuals have not been forthcoming," May 18, 2026 Tr. at 146:3-5, disclosure is neither necessary nor appropriate.

**ii. Defendants Have Made No Showing of Spoliation—Let Alone That Messages Have Been "Intentionally Deleted"**

Nor are Defendants correct that they have made any showing of spoliation that warrants production of Plaintiffs' Collection Reports. The Court ordered Defendants' Collection Reports based on Defendants' refusal to make sufficient disclosures and, after *already finding* "significant indicia of spoliation,"[5] sought them "to determine whether or not messages have been *intentionally deleted*." May 18, 2026 Tr. at 139:12-14 (emphasis added); Nov. 20, 2025 Tr. at 61:25-62:3.

Against their years of wiped and missing phones, deliberate use of autodeletion, and flouting of countless Court orders, Defendants point to Plaintiffs' minor, fully explained losses of irrelevant ESI despite their best efforts to preserve it. For all their rhetoric, the sole bases for Defendants' breathless allegations of spoliation are: 1) in April 2026, Mr. Johnson backed up and reset his phone due to a storage issue, unaware that his Signal messages would not transfer (which he promptly mitigated); and 2) in December 2023, Mr. Dollaway redownloaded Signal (which he used to discuss privileged medical

[5] This finding was based on a showing that included not only the clear evidence of Defendants' executives using Signal's auto-delete functionality, but also an overwhelming and ever-growing record of text message and/or device spoliation by many of Defendants' custodians. *See* Nov. 20, 2025 Tr. at 34:22-35:3. Such finding included "substantial evidence that messages were intentionally not preserved or deleted" and evidence of "a pattern of not" preserving evidence, May 18, 2026 Tr. at 20:24-21:2, which required the Court "to proceed from the possibility that individuals may not be fully forthright about their use of these apps," *id.* at 21:9-10.

information with his physician wife) to fix an error in receiving push notifications, not knowing he would lose his message history. Defendants' basis to claim these messages were subject to a preservation obligation is even thinner. Plaintiffs have reviewed *tens of thousands* of Signal messages covering approximately two thousand daily chat threads—including by voluntarily collecting the Fight Team Chat, the only Signal conversation Defendants have placed at issue, from a third party—and recovered exactly *two* responsive daily chats subject to Plaintiffs' R&Os. *See* Defs' Ex. 10 at 3. Given the immense outlay of time and expense Plaintiffs have undergone to recover these two chats—and the significant personal burden these efforts have placed on Mr. Johnson and the other Named Plaintiffs—there is little question that doing so has not proven "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).[6] That means that Plaintiffs were correct—as they have insisted since Defendants first placed Signal at issue—that Plaintiffs' Signal accounts were not subject to a preservation obligation.

Defendants likewise do not point to evidence that any ephemeral messaging feature—on Signal or any other application—has been enabled on Plaintiffs' devices. Indeed, Plaintiffs' own investigation, including discussions with other members of Plaintiffs' chats and linear reviews of all messages for indicia of autodeletion, confirmed Plaintiffs' understanding that autodelete had not been enabled. *See* Pls.' Sept. 28, 2026 Ltr., Defs' Ex. 13 at 4. Nonetheless, Defendants have continued to include in their briefs the misrepresentation—with no basis in any record evidence—that Plaintiffs used Signal and Telegram "expressly because of their disappearing-message features." Mot. at 7.[7] But while it appears that

---

[6] Nor do the documents from Plaintiffs' production that Defendants cite support any inference of relevance. As to Mr. Johnson, Defendants cite only the same example of Mr. Johnson asking a gym employee (a videographer whom they continue to refer to as a "fighter") to join the Fight Team Chat. *See* Mot. at 7. As to Mr. Connelly, Defendants cite no evidence of him using Signal—which he has not used since years before he joined this case—and cite evidence of him using Telegram only to send high-resolution videos to a friend and to a private flexibility trainer after his retirement. *See id*. Finally, as to Mr. Dollaway, Defendants continue to cite the same set of highly prejudicial, facially irrelevant communications from 2020 and 2021, *see id*. at 11 n.2, 19—the continued reference to which serves no purpose but to harass and intimidate the Named Plaintiffs.

[7] The *sole* document Defendants cite to support their claim that Plaintiffs used autodelete is a text conversation in which they claim Mr. Dollaway "touted Signal's 'disappearing messages.'" But even a cursory review of this document reveals the absurdity of Defendants' misleading claim. In that document, Mr. Dollaway sent a link to download Signal that (automatically) appended Signal's advertising materials describing the application, one page of which mentions Signal's capacity for "disappearing messages." *See* ECF No. 711, Ex. 29 at -298. Defendants provide no basis to conclude that Mr. Dollaway was endorsing the use of that functionality.

Defendants' custodians *in fact* used Signal for its disappearing-message feature, there is no reason to think Plaintiffs did the same.

As a result, despite Defendants' months of efforts, there remains no evidence that Plaintiffs have spoliated evidence *at all*—let alone that they have intentionally done so such that production of Collection Reports is appropriate. Though Defendants now pull an about-face from their longstanding litigating position and argue that the *mere fact* that Plaintiffs no longer possess certain ESI constitutes spoliation, this has never been Plaintiffs' position—and it is not the law.

Under Rule 37(e), the loss of ESI may constitute spoliation only where the information (1) "should have been preserved in the anticipation or conduct of litigation," and (2) was lost "because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). Plaintiffs' inadvertent loss of limited, irrelevant chat messages satisfies neither prong. *First*, as explained above, the lost messages were not subject to any preservation obligation. *See, e.g.*, *Brown v. Albertsons, LLC*, 2017 WL 1957571, at *5 (D. Nev. May 11, 2017) ("The duty to preserve evidence arises when the party has notice that the evidence is relevant to litigation."). Mr. Dollaway used Signal to communicate with his wife about privileged marital matters and confidential patient information, and Mr. Johnson's only Signal conversation Defendants have placed at issue—the Fight Team Chat—yielded two responsive daily chats across three years and ten thousand messages. *See* Pls.' Sept. 18, 2026 Ltr., Defs' Ex. 10 at 3; Pls.' Sept. 28, 2026 Ltr., Defs' Ex. 13 at 3. Information that is irrelevant and disproportionate to the needs of the case is not information that "should have been preserved." *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Another factor in evaluating the reasonableness of preservation efforts is proportionality.").

*Second*, even if Plaintiffs lost evidence that "should have been preserved," they did not "fail[] to take reasonable steps to preserve it." Before joining the case as a Named Plaintiff, each Plaintiff received a preservation notice instructing him to preserve relevant ESI. *See* Second Am. Answers at 13-15. After each Plaintiff's preservation obligation arose, he fulfilled this obligation diligently, preserving ESI on his devices and transferring his data when upgrading devices. As a result, each Plaintiff has successfully retained all ESI on nearly all applications and sources for the pendency of this litigation. The only instances in which Plaintiffs have not retained ESI, moreover, have occurred despite reasonable precautions. Mr. Johnson backed up his phone before resetting it; he did not know that Signal data cannot be transferred

through iCloud. Mr. Dollaway reinstalled Signal to fix a notification error, not knowing that—unlike virtually all messaging applications—doing so would erase his message history. *See* Second Am. Answers at 12-15.[8] These are not failures to take reasonable steps; they are inadvertent losses despite those reasonable steps. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (instructing that Rule 37(e) "does not call for perfection," and it "is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve"); *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *1 (N.D. Cal. May 23, 2016) ("Rule 37(e) now provides a genuine safe harbor for those parties that take 'reasonable steps' to preserve their electronically stored information.").

In amending Rule 37, the Advisory Committee also directed courts to "be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Plaintiffs are individual fighters with limited technological proficiency. Defendants are multibillion-dollar enterprises with sophisticated legal and IT departments and repeat players in antitrust litigation, including the *Le* action that has kept them under a litigation hold since December 2014. And remarkably, despite this disparity, even if any deficiency in Plaintiffs' preservation could be found, it would pale beside Defendants' own conduct: years of missing text messages from Dana White and Tracy Long while both were under a litigation hold, Nov. 20, 2025 Tr. at 20-23; Tracy Long's 30-day automatic deletion of her iMessages, ECF No. 527; Signal chats among Ari Emanuel, Mark Shapiro, and Nick Khan set to delete after eight hours, ECF No. 507; Mr. Emanuel's iPhone wiped without its Signal data ever being collected, ECF No. 637 at 1; the UFC's practice of setting up each of Mr. White's new phones "[a]s a new phone," with iCloud "always turned off" and no transfer of his prior messages, so

---

[8] Plaintiffs' investigation of the remaining applications confirms that Plaintiffs preserved nearly all of their ESI, and that the few minor gaps are reasonable in light of their efforts. Mr. Dollaway has Facebook messages dating to 2009, Instagram messages to 2015, and WhatsApp messages to 2016, and does not possess Telegram messages, which Defendants have never claimed he used for any purpose, relevant or otherwise. Mr. Connelly has WhatsApp messages dating to 2016, Facebook and Instagram messages to 2019, and Telegram messages to February 2023. Though a full file system extraction will confirm what Signal data may be recovered, it is his understanding that he has not used Signal since multiple years before he became a Named Plaintiff. And Mr. Johnson has Facebook messages dating to 2007, WhatsApp messages to May 2022, and Signal messages to January 2023; he lacks content only from an Instagram account that was hacked and involuntarily deleted in October 2023, and WhatsApp messages from a few months between his joining this case and May 2022, which he lost due to an inadvertent error backing up WhatsApp in 2022. *See* Second Am. Answers at 13-15.

that "every time he started with a new phone, he started anew," Feb. 5, 2026 Tr. at 60-63, ECF No. 417; Plaintiffs' repeated identification of new, previously undisclosed devices and phone numbers used by Defendants' custodians; and Defendants' continuing failure to accurately account for their misconduct—most recently, by failing to disclose that Hunter Campbell and Reed Harris used Signal for business purposes. Defendants' attempt to equate fighters' inadvertent, fully disclosed losses of small numbers of irrelevant personal messages despite reasonable precautions with their own executives' intentional, systemic, ongoing failures to comply with their preservation obligations only underscores how far Defendants fall short of those obligations.

#### iii. Collection Reports Would Provide No Relevant Information Defendants Do Not Already Have

Finally, Defendants allege categories of information Plaintiffs "refuse to provide" that the Collection Reports would purportedly include. Mot. at 20. But Defendants had most of this information before they filed their Motion, and the Second Amended Answers contain the rest. Defendants say the Reports would show "what data has been collected and from which devices," which devices "have been imaged and which have not," which messaging applications are or were installed, and "the date ranges of the data that survives." Mot. at 20. Plaintiffs' verified Answers state each of those facts, for each application, together with the date and method of each collection. Second Am. Answers at 8-9, 13-15. What the Collection Reports would add is not relevant: an inventory of every application and account on three individuals' personal phones and tablets, unrelated to any messaging application at issue. Those materials are not relevant to any claim or defense, and their production is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In reality, the purpose behind Defendants' request is clear: it is the next step in their fishing expedition for any evidence that Plaintiffs committed misconduct similar to their own. The Court should not indulge that expedition any longer.[9]

### C. Defendants Are Not Entitled to Production of Plaintiffs' Privileged Communications Relating to Their Preservation Obligations

[9] Defendants' request for full file system extractions of every available device is also moot. Mr. Johnson's iPhone 16 and Mr. Dollaway's iPhone 16 Pro Max and iPad Pro were fully extracted in August 2026, Plaintiffs no longer possess their earlier devices, and Mr. Connelly's extractions are forthcoming. Second Am. Answers at 11-13. Defendants also demand additional device data and information from the non-party who provided the Fight Team Chat. This information is in the control of the third party, not Plaintiffs.

Endeavor's RFP No. 1 seeks "[a]ll litigation hold notices, preservation notices, and similar directives issued in connection with this ACTION," along with every "reminder, reissuance, or modification," every document "reflecting the transmittal, receipt, or acknowledgment," and all directives "CONCERNING" these documents. Defs' Ex. 29. These demands—for counsel's communications with their clients regarding document preservation generally, in the context of ongoing spoliation proceedings—cover the categories of material that Defendants filed an emergency mandamus petition in the Ninth Circuit to protect against disclosure. Mandamus Pet. at 21-22. The order Defendants challenged, moreover, required only an *in camera* production of a narrow set of those communications—and only after the Court found "significant indicia of spoliation" based on years of missing messages from Defendants' CEO and other key executives. Nov. 20, 2025 Tr. at 62:1-21. Defendants now ask the Court to order production of "*all documents* responsive to" RFP No. 1, Mot. at 24 (emphasis added), directly to Defendants, on a record containing no such finding and no evidence that Plaintiffs failed to comply with their preservation obligations. Indeed, even if Defendants' request were limited to formal preservation notices and not surrounding, privileged conversations—a limitation neither the RFP nor the Motion contains—production would not be warranted. Defendants attempt to invoke law-of-the-case doctrine, arguing: "It is the law of the case that litigation hold notices are relevant and subject to discovery, especially when one party raises questions about the adequacy of the document preservation of the other side." Mot. at 21. But the Court did not hold that litigation hold notices are discoverable simply because one party "questions" another's document preservation efforts. Instead, the Court has held only that "in the context of resolving spoliation, *when the Court has made a threshold finding* [of spoliation], [litigation holds] *can* be disclosed." Feb. 11, 2026 Tr. at 26:1-4, ECF No. 431 (emphasis added); *see Thomas v. Cricket Wireless, LLC*, 2020 WL 7344742, at *2-3 (N.D. Cal. Dec. 14, 2020). The Court has made no such threshold finding here, nor, as explained above, have Defendants made such a showing.

Moreover, unlike Defendants, Plaintiffs have *already provided* all non-privileged information regarding their preservation efforts to which Endeavor could feasibly be entitled. Endeavor claims that it requires Plaintiffs' privileged communications "to understand what efforts Plaintiffs took at any time to preserve Signal and other relevant communications, including whether Plaintiffs were told to preserve anything when Plaintiffs filed this suit, as well as the contents of the June 19, 2026 'specific instruct[ion]'

to preserve Signal messages." Mot. at 21. But Plaintiffs have answered exactly these questions: their Second Amended Answers set forth their efforts to preserve each ephemeral application; information regarding Plaintiffs' preservation instructions upon joining this case; and the relevant contents of their specific, subsequent instruction to preserve Signal messages "regardless of their potential relevance to this action." Second Am. Answers at 8-9, 13-15. No further disclosure of privileged communications is needed to duplicate the information Plaintiffs have already voluntarily provided.

Finally, to the extent the Court orders production of any documents in response to RFP No. 1, its order must be "limited to the holds themselves and not any sort of communication . . . about the holds"—the limitation Defendants themselves insisted upon and the Court adopted. Feb. 11, 2026 Tr. at 26:8-11, ECF No. 431. Indeed, in seeking emergency mandamus review, Defendants described the Court's disclosure order as "breathtakingly overbroad," arguing that "[e]ven *in camera* review" would "irreparably prejudice" them. Mandamus Pet. at 21-22. Now, they demand that Plaintiffs produce these very "communications to clients about legal strategy," Feb. 11, 2026 Tr. at 26:1, ECF No. 431, *directly to Defendants*. This includes, but is not limited to, their demand for counsel's June 2026 communications with Plaintiffs regarding Defendants' attempts to place their Signal use at issue, *see* Mot. at 21-22, which would require Plaintiffs to disclose strategic discussions with their counsel regarding a live, ongoing discovery dispute.[10] If *in camera* disclosure of such communications based on a substantial showing of spoliation would have "irreparably prejudice[d]" Defendants, disclosure *to Defendants* of these communications absent *any* showing of spoliation would surely do the same. The Motion should be denied.

### D. Defendants Abandoned Their Third RFPs, and Their Demand Is Meritless

Finally, the Court should not entertain Defendants' untimely request to compel production of Plaintiffs' carrier records in response to Defendants' Third RFPs. As set forth above, Plaintiffs served R&Os on July 10, 2026, offering as to each request to meet and confer, Defs' Ex. 27 at 6-11; Defendants said nothing for eleven weeks, then demanded on Sunday, September 27 that Plaintiffs commit to full production within three days. When Plaintiffs noted the untimeliness of this last-minute demand, Defendants declared an impasse without conferring on a single objection. *See* Silverman Decl. Ex. 6 at 2-

[10] Nor do these communications bear on the relevant question here: whether Plaintiffs complied with their preservation obligations *before* June 2026, when Defendants first placed Plaintiffs' Signal use at issue.

4. A party that lets its requests lie dormant for months and then moves to compel on the eve of the deadline has abandoned them. *See Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999) ("[T]he requesting party cannot delay a motion to compel with impunity." (quotation omitted)). Indeed, the Court anticipated exactly this tactic and warned that it "would look unfavorably upon a motion to compel filed regarding discovery that we've been discussing this entire time two days or a week before the substantial completion deadline." Aug. 6, 2026 Tr. at 36:25-37:12, ECF No. 720. Defendants' accusation that Plaintiffs "refus[ed] to meet and confer," Mot. at 12, inverts the record: Plaintiffs offered to confer in July, and Defendants did not take them up on that offer. Their email on the eve of substantial completion—designed to green-light an already-written motion, not to confer in good faith—does not meet the requirements of the Federal Rules. *See Invesco High Yield Fund v. Jecklin*, 2021 WL 1234503, at *1 (D. Nev. Mar. 31, 2021) ("[D]iscovery motions may not be considered unless the party moving to compel has made a good-faith effort to meet and confer."); Fed. R. Civ. P. 37(a)(1).

The requests fail on the merits as well, by Defendants' own standards. Defendants contend that Plaintiffs' carrier records must "be subject to the same standard applied to Defendants' custodians." Mot. at 23. But Defendants' custodians' carrier records were produced only after the Court found "significant indicia of spoliation," Nov. 20, 2025 Tr. at 62, and Defendants resisted that discovery at every step. Those carrier records were necessary, moreover, to address years of missing text messages *and devices* from Defendants' custodians. *See* Apr. 21, 2026 Tr. at 41, ECF No. 513 (statement by UFC counsel that "I cannot . . . make a representation to you about what the number of phones are" that White had used, and response by the Court that "it seems to me, a straightforward way to deal with this [is to go] to the carrier"). Plaintiffs, meanwhile, have already disclosed their devices and every messaging application at issue, along with the date ranges and collection history for each. *See* ECF No. 637-15; Second Am. Answers at 8-9, 13-15. There is no allegation that Plaintiffs have spoliated devices as Defendants have, and carrier records would not provide information on the "ephemeral messaging applications" Defendants have placed at issue. Production of Plaintiffs' call and text logs would add nothing, amply justifying Plaintiffs' objections. The Court should deny the Motion as to the Third RFPs.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion.

Dated: October 14, 2026

Respectfully submitted,


/s/ Joseph R. Saveri

Joseph R. Saveri (admitted *pro hac vice*)
Chris Young (admitted *pro hac vice*)
Kevin E. Rayhill (admitted *pro hac vice*)
Itak Moradi (admitted *pro hac vice*)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
krayhill@saverilawfirm.com
imoradi@saverilawfirm.com

W. Joseph Bruckner (admitted *pro hac vice*)
Brian D. Clark (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4001
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle Pozan (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
1165 N. Clark Street, Ste. 700
Chicago, IL 60610
Telephone: (612) 339-6900
kjpozan@locklaw.com

*Attorneys for Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly and the Proposed Class*

/s/ Daniel H. Silverman

Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
Daniel Gifford (admitted *pro hac vice*)
Emily Marcus (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL, LLP**
1100 New York Ave., N.W., Suite 500, East Tower Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com
dgifford@cohenmilstein.com
emarcus@cohenmilstein.com

Michael Dell'Angelo (admitted *pro hac vice*)
Eric L. Cramer (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bergermontague.com
mdellangelo@bergermontague.com
pmadden@bergermontague.com

Joshua P. Davis (admitted *pro hac vice*)
Robert C. Maysey (admitted *pro hac vice*)
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, CA 94111
Telephone: (415) 906-0684
Facsimile: (215) 875-4604
jdavis@bergermontague.com
rmaysey@bergermontague.com

*Attorneys for Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly and the Proposed Class*
Michael J. Gayan
**CLAGGETT & SYKES**
4101 Meadows Lane, Ste. 100

Las Vegas, NV 89107
Telephone: (702) 333-7777
Fax: (702) 655-3763

*Liaison Counsel for Plaintiffs Kajan Johnson, Clarence Dollaway, and Tristan Connelly and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on October 14, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Joseph R. Saveri*
Daniel H. Silverman