MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL *(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER (*Pro hac vice*)
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

RORY T. KAY (No. 12416)
rkay@mcdonaldcarano.com
EMILY M. DENNIS (No. 16396)
edennis@mcdonaldcarano.com
MCDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Tel: (702) 873-4100

*Attorneys for Defendant Endeavor Group Holdings, Inc.*

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

[Additional counsel listed on signature page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS IN RESPONSE TO REQUESTS FOR PRODUCTION NOS. 48–56 (ECF NO. 793)** |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Resource Disparity Is A Central Theme Of Plaintiffs' Litigation Strategy ..... 2

B. Litigation Funding Is Relevant Now To Assess The Credibility And Adequacy Of The Named Plaintiffs And Their Counsel ..... 4

C. Plaintiffs Cannot Label The RFPs Speculative While Withholding Relevant Evidence ..... 6

D. Defendants Do Not Seek Privileged Materials ..... 7

E. Defendants' Motion Is Timely And Properly Raised ..... 8

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES


**Page(s)**

**CASES**

*Bryant v. Mattel, Inc.*,
573 F. Supp. 2d 1254 (C.D. Cal. 2007) ....1

*Berger v. Seyfarth Shaw, LLP*,
2008 WL 4570687 (N.D. Cal. Oct. 14, 2008)....5

*CFE Int'l LLC v. Turrent Schnaas*,
2026 WL 2387028 (S.D. Tex. Aug. 17, 2026) ....3

*Cont'l Cirs. LLC v. Intel Corp.*,
435 F. Supp. 3d 1014 (D. Ariz. 2020) .... *passim*

*Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*,
2023 WL 4750822 (W.D.N.C. July 24, 2023)....3

*Garcia v. Serv. Emps. Int'l Union*,
332 F.R.D. 351 (D. Nev. 2019)....9

*Gbarabe v. Chevron Corp.*,
2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) ....4, 5, 7

*Haghayeghi v. Guess*
*?, Inc.*, 2016 WL 9526465, at *1 (S.D. Cal. Mar. 21, 2016) ....5, 7

*Impact Engine, Inc. v. Google LLC*,
2020 U.S. Dist. LEXIS 145636 (S.D. Cal. Aug. 12, 2020) ....8

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*,
405 F. Supp. 3d 612 (D.N.J. 2019) ....2, 6

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
2015 WL 5730101 (S.D.N.Y. Sept. 10, 2015), *aff'd*, 141 F. Supp. 3d 246 (S.D.N.Y. 2015) ....6

*Nunes v. Lizza*,
2021 WL 7186264 (N.D. Iowa Oct. 26, 2021) ....3

*Shuffle Master, Inc. v. Progressive Games, Inc.*,
170 F.R.D. 166 (D. Nev. 1996)....9

*V5 Techs. v. Switch, Ltd.*,
334 F.R.D. 297 (D. Nev. 2019)....5, 9, 10

**RULES**

Fed. R. Civ. P. 23(g)(1)(A)(iv) ....................5
Fed. R. Civ. P. 37(a)(1) ....................9
L.R. 26-6(c) ....................9
Rule 23 ....................2, 5

Defendants Zuffa, LLC, TKO Operating Company, LLC, and Endeavor Group Holdings, Inc. (collectively, "Defendants") submit this Reply in Support of Defendants' Motion to Compel Plaintiffs to Produce Documents in Response to Requests for Production Nos. 48–56 (Dkt. No. 793, "Motion" or "Mot.").

## I. INTRODUCTION

Plaintiffs could have ended this dispute more than six months ago with a single sentence: "No third party is funding this litigation." They have not; making it all but certain that they are receiving the support of a third-party litigation funder. Plaintiffs' stonewalling and refusal to provide any information about their litigation funder has created two fundamental inequities:

- ***First***, without any information as to the identity of Plaintiffs' litigation funder, the Court and Defendants are unable to adequately assess witness credibility and the adequacy of class representatives and counsel. *See Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1274 (C.D. Cal. 2007) ("[F]ee-payment arrangements are relevant to credibility and bias, and . . . Bryant must disclose who is paying his legal fees.").
- ***Second***, by denying this discovery, Plaintiffs are depriving Defendants of the ability to rebut the near-constant David versus Goliath theme Plaintiffs have leaned on since the inception of this litigation. *See Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020) (finding "little difficulty concluding" that litigation funding discovery was "relevant . . . to refute [plaintiffs'] David vs. Goliath narrative . . .").

Rather than provide this information, Plaintiffs have castigated Defendants' arguments as "theoretical" and "hypothetical." Dkt. No. 820 ("Opp." or "Opposition") at 8–9. But if a litigation funder were truly a matter of "speculation," denying it would cost Plaintiffs nothing and would have saved the Parties and the Court the time, cost, and effort of this Motion. Their blanket refusal to provide any response confirms that the requested discovery matters. Indeed, Plaintiffs' Opposition confirms the relevance and necessity of this discovery:

- Plaintiffs do not dispute that a third party's payment of a key witness's legal fees is "relevant to credibility and bias, and discoverable," Mot. at 7;
- Plaintiffs do not dispute that each Named Plaintiff is a key percipient witness whom

Defendants will depose and call at trial, *id.* & n.3;

- Plaintiffs do not dispute that courts in this Circuit have compelled production of funding and retainer agreements as relevant to Rule 23 adequacy, *id.* at 8; and
- Plaintiffs' primary authority recognizes that funding discovery is warranted where "a non-party is making ultimate litigation or settlement decisions" or "conflicts of interest exist," *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (cited by Opp. at 6)—*precisely* the control, consent, veto, and conflict information that Defendants' RFP Nos. 53 and 54 seek.

And while Plaintiffs attempt to conjure procedural defects, the record indicates otherwise. The Parties appropriately met and conferred, followed up with written correspondence, Plaintiffs refused to produce any documents, and Defendants timely moved.[1]

The Court should grant the Motion and order Plaintiffs to produce responsive documents within fourteen days or state that none exist, and to log anything withheld as privileged. In particular, the Court should order Plaintiffs to immediately confirm whether any third-party funding arrangement exists, identify any funder, and produce any funding agreement and documents sufficient to show any funder's control, consent, or veto rights (RFP Nos. 48, 49, and 53).

## II. ARGUMENT

### A. Resource Disparity Is A Central Theme Of Plaintiffs' Litigation Strategy

After centering their claims on the Parties' respective financial resources for more than a decade, Plaintiffs now resist straightforward discovery into whether they are funded by a third party. To do so, Plaintiffs attempt to recast their eleven years of rhetoric regarding Defendants' financial resources as nothing more than a reference to antitrust "elements" and not their trial theme. This new position is flatly contradicted by the record as Plaintiffs have continually painted the UFC as a "multi-billion dollar corporation" with "vast resources" that "exploit[s]" "substantially

[1] Plaintiffs' conduct here is much more troubling if, in fact, they do not have the support of any third-party litigation funder. Requiring the Parties to engage in the full briefing of a motion, and the resulting time and resources expended by the Court, where the entire issue could have been mooted by a one-sentence response would be the height of inefficiency and raise many of the same questions Judge Weksler has already raised into Plaintiffs' billing habits. *See* Dkt. No. 766.

undercompensated" fighters. Dkt. No. 118 (Amended Complaint) ¶ 19; Dkt. No. 217 at 12 n.21 ("Plaintiffs, who unlike Defendants are not multi-billion dollar businesses . . . ."); Dkt. No. 288 at 44 n.47 (describing Mr. White as "the President of a multi-billion dollar organization"); Dkt. No. 386 at 4 ("Defendants are multi-billion-dollar corporations with vast resources . . . ."); Dkt. No. 556 at 15 (describing Defendants as "three multi-billion dollar corporations").

The law is clear that discovery into third-party litigation funding is relevant to "refute" the sort of "David vs. Goliath narrative" that Plaintiffs have asserted. *CFE Int'l LLC v. Turrent Schnaas*, 2026 WL 2387028, at *4 (S.D. Tex. Aug. 17, 2026) ("Courts have repeatedly allowed discovery into the sources of a party's litigation funding when that party presents [a David versus Goliath] narrative."); *Electrolysis Prevention Sols. LLC v. Daimler Truck N. Am. LLC*, 2023 WL 4750822, at *7 (W.D.N.C. July 24, 2023) (granting discovery into litigation funding materials where they were relevant to trial themes); *Cont'l Cirs. LLC*, 435 F. Supp. 3d at 1019. Where, as here, plaintiffs "preview" a wealth-disparity "narrative" in their pleadings before trial, discovery into litigation funding is warranted. *Nunes v. Lizza*, 2021 WL 7186264, at *6 & n.3 (N.D. Iowa Oct. 26, 2021) (granting discovery into litigation funding where complaint "preview[ed] [wealth disparity] narrative" by contrasting small town business owner plaintiffs with "global media, information, and services company" defendant). And Plaintiffs concede that litigation funding is discoverable where, as here, financial disparity is "tethered to a narrative about the litigation itself." Opp. at 7.

Here, Plaintiffs have made the alleged financial disparity between Defendants and the putative class a central tenet, trial theme, and narrative of their case. In *Le,* Plaintiffs sought to present evidence that "Zuffa extracted billions of dollars from the company, primarily to benefit [] its owners and executives[, and] . . . incurred extravagant business expenses, such as private jets . . . ." *Le* Dkt. No. 978 at 29; *see also Le* Dkt. No. 1000 (seeking to present "evidence" of "corporate waste on private jets, [and] . . . multi-hundred-million-dollar dividends to . . . [] private

shareholders").[2] This rhetoric has only continued in *Johnson* where Plaintiffs repeatedly invoke wealth disparity to seek favorable discovery rulings. *See, e.g.*, Dkt. No. 217 at 12 n.21 (framing Defendants' productions as insufficient compared to "Plaintiffs, who unlike Defendants are not multi-billion dollar businesses"); Dkt. No. 386 at 4 (arguing discovery deadlines cannot be extended for "Defendants[, who have] vast resources . . ."); Dkt. No. 556 at 15 (opposing a motion to compel because "three multi-billion dollar corporations [can] review[] and produce[] many more documents than three individual professional MMA fighters"); Dkt. No. 756 (Sept. 3, 2026 Hr'g Tr.) at 107:17–20 (arguing that spoliation proceedings should be expedited because "class certification and summary judgment" are "incredibly expensive"). The law requires only "some evidence" that Plaintiffs will rely on a David versus Goliath trial theme to warrant discovery into litigation funding. *See* Mot. at 6; *Cont'l Cirs. LLC*, 435 F. Supp. 3d at 1019. Plaintiffs' own arguments and remarks across more than a decade of briefing in *Le* and *Johnson* clear the "some evidence" threshold many times over. Allowing this discovery and requiring Plaintiffs to confirm the identity of their third-party litigation funder would prevent Plaintiffs from potentially weaponizing a fiction: if, for example, a well-capitalized funder is backing Plaintiffs, then any argument about disparity in resources would lack essential context if this discovery is denied. Plaintiffs' decade-plus reliance on the theme of resource disparity, and intent to continue to do so, has made evidence of litigation funding plainly relevant and discoverable.

### B. Litigation Funding Is Relevant Now To Assess The Credibility And Adequacy Of The Named Plaintiffs And Their Counsel

Evidence of litigation funding is relevant not only to rebut Plaintiffs' trial themes, but also to test adequacy and credibility and to prepare a defense at class certification. Consistent with that principle, courts permit discovery into third-party funding to assess adequacy, credibility, and bias in advance of class certification. *See, e.g.*, *Gbarabe v. Chevron Corp.,* 2016 WL 4154849, at *1–2 (N.D. Cal. Aug. 5, 2016) (granting a motion to compel the funding agreement because it "is relevant

---

[2] Although Defendants will move in limine to bar improper "resources" evidence at trial, if that motion is denied, Defendants need discovery to rebut Plaintiffs' contentions. Notably, even though Plaintiffs criticize Defendants for filing this Motion while claiming this evidence has "no place at trial," Plaintiffs do not state they will refrain from introducing these themes at trial. *See generally* Opp.

to the adequacy determination"); *c.f. Berger v. Seyfarth Shaw, LLP*, 2008 WL 4570687, at *1 (N.D. Cal. Oct. 14, 2008) (finding that "fee-payment arrangements are relevant to credibility and bias, and discoverable"). Even the court in *V5 Technologies v. Switch, Ltd.*, a case on which Plaintiffs rely heavily in their Opposition, acknowledged that discovery into litigation funding may be "allow[ed] . . . in the context of class actions" to address elements of class certification, such as "the adequacy of class counsel." 334 F.R.D. 306, 312 n.5 (D. Nev. 2019).[3]

Plaintiffs contend that discovery into the adequacy of counsel is premature because class certification has not yet been briefed, Opp. at 9–10, but the record on which adequacy will be decided is built in fact discovery, not at class certification.[4] Plaintiffs cannot insist that adequacy be tested on a full record while withholding the very documents that would complete it.[5] "[U]ncovering conflicts of interest" between the Named Plaintiffs, their counsel, and "the class they seek to represent" at this stage is "critical" to preparing an opposition to class certification. *Haghayeghi v. Guess?, Inc.*, 2016 WL 9526465, at *1 (S.D. Cal. Mar. 21, 2016). Rule 23 requires the Court to consider "the resources that counsel will commit to representing the class," Fed. R. Civ. P. 23(g)(1)(A)(iv)—and whether those resources come from a third party holding its own economic or control rights is part of that inquiry. In the face of this case law, Plaintiffs fall back

---

[3] Absent from Plaintiffs' Opposition is any attempt to address some of the most concerning implications of a third-party litigation funder for this lawsuit: whether and to what extent Plaintiffs' lawsuit is funded by one or more of the many competitors to the UFC. If true, this fact would undeniably be relevant to any assessment of the Named Plaintiffs' credibility and adequacy, including the adequacy of Plaintiffs' counsel. As noted above, Plaintiffs could easily and swiftly put these concerns to rest by simply answering Defendants' straightforward discovery requests.

[4] Plaintiffs criticize *Berger* and *Gbarabe* as factually distinct from the matter at hand. Opp. at 8, 9. But *Berger* allowed discovery into the financial interests of a "key . . . witness," just as Defendants seek discovery into the financial interests of the Named Plaintiffs, who are key witnesses in this case. *Berger*, 2008 WL 4570687, at *1. Likewise, *Gbarabe* considered whether class counsel could adequately finance the litigation. *See Gbarabe*, 2016 WL 4154849, at *2. In light of Plaintiffs' own statements that pursuing this case through class certification and summary judgment may be prohibitively expensive, *Gbarabe* is directly on point. *See* Dkt. No. 756 (Sept. 3, 2026 Hr'g Tr.) at 107:10–20. Far from limiting discovery, both decisions compelled the type of discovery at issue here.

[5] Plaintiffs likewise claim that challenges to "counsel's fees" can be heard after certification. *See* Opp. at 10 (citing *V5 Techs.*, 334 F.R.D. at 313). However, Plaintiffs' own authority recognizes that courts are "receptive to allowing such discovery in the context of class actions" to test counsel's adequacy. *V5 Techs.*, 334 F.R.D. at 312.

on their counsel's representation of the *Le* class. But the question is whether any third party holds rights in *this* case that could diverge from the interests of members of *this* purported class. An adequacy finding in a different case, involving a different class, with different issues, years before any *Johnson* funding arrangement could have been made, does not answer that question. Nor does Plaintiffs' suggestion that they may substitute Named Plaintiffs, Opp. at 9, n.3, because it still leaves the adequacy of class counsel squarely at issue.[6]

### C. Plaintiffs Cannot Label The RFPs Speculative While Withholding Relevant Evidence

Plaintiffs further dismiss Defendants' relevance arguments as "speculation." Opp. at 8–9.[7] Of course, if the existence of a litigation funder were mere speculation, Plaintiffs could simply confirm they have none. Instead, Plaintiffs spend pages arguing that Defendants need to make a more "specific" showing before obtaining discovery into Plaintiffs' funding arrangements. That argument ignores the "relatively low bar" for relevance, *Cont'l Cirs. LLC*, 435 F. Supp. 3d at 1018–19, and it is circular: Plaintiffs fault Defendants for lacking evidence that a funding arrangement exists, while refusing to provide any discovery—including even confirmation—of such an arrangement. If the rule were as Plaintiffs describe, no party could ever obtain discovery into a funding arrangement its adversary chose to conceal. Plaintiffs' own standard confirms the point: funding discovery is appropriate where "a non-party is making ultimate litigation or settlement decisions" or "conflicts of interest exist," *In re Valsartan*, 405 F. Supp. 3d at 615, and RFP Nos. 53

---

[6] Discovery into Plaintiffs' third-party litigation funding arrangement is relevant regardless of whether Plaintiffs follow the Court's cue to swap out the Named Plaintiffs in an attempt to insulate Plaintiffs from the Named Plaintiffs' now-admitted and widespread spoliation of data.

[7] Plaintiffs' cases on this point are distinguishable. The court in *Kaplan v. S.A.C. Cap. Advisors, L.P.* denied discovery into third-party litigation funding where class counsel had made an "explicit representation" to the court that they "ha[d] sufficient resources to see the case through to trial and appeal, if need be." 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015), *aff'd*, 141 F. Supp. 3d 246 (S.D.N.Y. 2015). Plaintiffs' counsel have made no such representation here. To the contrary, they asked the Court to advance spoliation proceedings because of the cost of litigating both class certification and the merits. Dkt. No. 756 (Sept. 3, 2026 Hr'g Tr.) at 107:17–22. Likewise, in *V5 Techs.* and *In re Valsartan*, the plaintiffs did not rely on a David versus Goliath theme, and in neither case did the defendants seek funding discovery to test the adequacy of the Named Plaintiffs or their counsel.

and 54 seek exactly that information.

Regardless, there is plenty of indication that a third-party litigation funder may be staking Plaintiffs' case. Plaintiffs' counsel has openly admitted that *Johnson* would involve a "doomed trip to the Ninth Circuit and the Supreme Court," that nobody "would have brought the *Johnson* case if *Le* didn't exist," and that "no firm" would take such an "uphill battle." *Le* Dkt. No. 1036 (July 12, 2024 Hr'g Tr.) at 16:20–21; 19:1–4; 42:1–7; 87:7–8. For these same reasons, *Le* plaintiffs' counsel explained that the *Johnson* claims were of "little value" and that "the likelihood that the [*Johnson*] claim is worth more than $3,000" was "very low." *Id*. at 86:17; 89:14–15. Yet counsel have also claimed that they spent more than 205 hours and sought nearly ***$180,000*** in attorneys' fees and costs to brief and argue a single motion to compel. Dkt. No. 444 at 1. The combination of that prodigious spending and so modest an expected recovery raises unanswered questions about how and why this litigation is being funded—questions that go to adequacy and that only the requested documents can answer. *See Haghayeghi*, 2016 WL 9526465, at *1 (holding "litigation funding documents" relevant to "whether Plaintiff would adequately protect the interests of the class"); *see also Gbarabe*, 2016 WL 4154849, at *2. Defendants have presented more than just "some evidence" that litigation funding is relevant, which is all that is required. *Cont'l Cirs. LLC*, 435 F. Supp. 3d at 1019.

**D. Defendants Do Not Seek Privileged Materials**

Plaintiffs devote much of their Opposition to resisting production of privileged information—a request Defendants never made and expressly disclaim. The RFPs seek straightforward, non-privileged information regarding "the identity of any third-party funder of this litigation, the terms of any funding arrangement, and the extent of any funder's involvement in or control over it." Mot. at 2; *see, e.g.*, Dkt. No. 793-3 at 12–13 (requesting production of documents "sufficient to identify the persons and/or entities funding this action," "the nature of the funding arrangement," "when the funding arrangement commenced," and documents relating to "any . . . conflict of interest arising from any funding arrangement"). Defendants request that anything withheld on privilege or work-product grounds be logged, and the rest be produced with redactions if appropriate, as is typical in discovery. Mot. at 9 & n.4. Plaintiffs' privilege and work-product

objections provide no basis for their refusal to produce anything. Whether a funder exists and who it is are facts, not counsel's mental impressions. Contrary to Plaintiffs' reading, Opp. at 7, *Cont'l Circuits* confirms the point: "the fact that the agreements exist" is not protected work product because it "does not reveal the mental impressions or strategies of the attorneys." 435 F. Supp. 3d at 1020. The court there also found funding materials relevant before addressing protection, *id.* at 1019, ordered disclosure of the identities of all persons with a financial interest in the litigation, *id.* at 1024, and nothing in that decision excuses a party from producing non-protected material (with any necessary redactions) or logging what it withholds.

But rather than make even a minimal effort to meet their discovery obligations by confirming whether a litigation funder exists, Plaintiffs stonewalled with boilerplate objections. Dkt. No. 793-4 at 27–34.[8] Plaintiffs' Opposition repeats those same rote objections. Opp. at 3, 10–12. To the extent any funding agreement is commercially sensitive, keeping "private financial arrangements out of the public domain" is "the purpose of a Protective Order"—not a basis for withholding discovery to which Defendants are entitled. *See Impact Engine, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 145636, at *5 (S.D. Cal. Aug. 12, 2020). The Court should order Plaintiffs to produce all non-privileged documents responsive to the RFPs, and to log anything withheld.

**E. Defendants' Motion Is Timely And Properly Raised**

In a last-ditch attempt to avoid the merits of this discovery dispute, Plaintiffs attempt to manufacture various procedural deficiencies with Defendants' Motion. Their efforts fail.

***First,*** the Motion is timely. Defendants served the RFPs on March 2, 2026, and met and conferred with Plaintiffs on April 17, 2026, after Plaintiffs had served their Responses and Objections. Mot. at 3–6. On May 8, 2026, Defendants told Plaintiffs that they were "continu[ing] to consider Plaintiffs' positions on RFP Nos. . . . 48–56 []" and reserved all rights. Dkt. No. 543-16 at 3. At the September 3, 2026, status conference, Plaintiffs' counsel argued that spoliation proceedings should conclude before class certification and dispositive briefing—despite the

---

[8] Although Plaintiffs provide a chart which they claim shows they made "specific objections," *see* Dkt. No. 820-3 (Pls.' Ex. 2), their chart shows they made near-identical privilege, work product, relevance, proportionality, and harassment objections to every RFP, varying only in whether they added one of two boilerplate scope objections.

incomplete record—because "class certification and summary judgment" are "incredibly expensive." Dkt. No. 756 (Sept. 3, 2026 Hr'g Tr.) at 107:17–22. Having placed the Parties' relative resources at the center of scheduling and potential case disposition, Plaintiffs cannot now argue that Defendants' Motion—filed just weeks later after further meet and confer efforts—is untimely. *See* Dkt. No. 793-6 at 2–3; Dkt. No. 793-7 at 3. In any event, fact discovery is still open, and dispositive motions are months away. As Plaintiffs' cited case law holds, "[i]t has long been clear in this District that, absent unusual circumstances, the outer limit for filing a motion to compel is the deadline for filing dispositive motions." *Garcia v. Serv. Emps. Int'l Union*, 332 F.R.D. 351, 354 (D. Nev. 2019) (cited by Opp. at 6) (denying as untimely a motion to compel filed four months after the dispositive motion deadline, when summary judgment motions were already "fully briefed"). Plaintiffs cite no contrary authority.

***Second***, Plaintiffs are wrong that Defendants failed to meet and confer. Plaintiffs' central complaints are that Defendants purportedly did not describe all of their arguments for why discovery was appropriate during the meet and confer process and failed to include RFP No. 56 in one piece of correspondence. But Plaintiffs identify no authority requiring a party to detail every single argument it may make in a motion to compel before a meet and confer can be deemed complete. The rule requires only a good faith effort, which is precisely what Defendants made. *See* Fed. R. Civ. P. 37(a)(1); L.R. 26-6(c). Indeed, Plaintiffs admit the Parties met and conferred telephonically on the RFPs and sent numerous rounds of correspondence providing several potential bases for the requested discovery. In response, Plaintiffs stated clearly that they "[would] not produce documents in response to [the RFPs]." Dkt. No. 793-7 at 3. Under such circumstances, "[t]here is no point in . . . further conferral efforts when [Plaintiffs] know [Defendants'] positions (as displayed in writing) yet continue to dispute the motion." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 303 (D. Nev. 2019) (cleaned up).[9]

---

[9] Plaintiffs' cited case law is distinguishable. In *Shuffle Master, Inc. v. Progressive Games, Inc.*, the court found there were inadequate conferral efforts where the moving party had "never personally discussed with opposing counsel a reasonable resolution to their discovery dispute other than to once inform Shuffle Master . . . that its interrogatory responses were incomplete." 170 F.R.D. 166, 172 (D. Nev. 1996). Here, by contrast, the Parties met and conferred telephonically on

***Third***, Plaintiffs contend that the Motion raises new arguments not discussed in prior meet-and-confers, namely, that litigation funding discovery is needed to rebut alleged financial disparity and impeach the Named Plaintiffs. Opp. at 12. Plaintiffs draw a distinction without a difference. Defendants stated in their September 14, 2026 letter that Plaintiffs' counsel's statements about resource disparity motivated Defendants to pursue the Motion and that Defendants seek to investigate the "adequacy" of the Named Plaintiffs. Dkt. No. 793-1 ¶ 8; Dkt. No. 793-6 at 2. Thus, the arguments in the Motion are implicitly and explicitly captured in Defendants' letter. In any case, Plaintiffs categorically stood on their objections and refused to produce any documents in their letter and in their Opposition. Dkt. No. 793-7 at 3. There is no evidence that another meet and confer would have caused Plaintiffs to produce the requested discovery. *See V5 Techs.*, 334 F.R.D. at 303.

***Fourth***, Plaintiffs assert that there is no basis for the Court to hear RFP No. 56, because it was "omitted" from Defendants' September 14, 2026 letter. Opp. at 10. Plaintiffs provide no authority supporting the notion that Defendants' inadvertent exclusion of RFP No. 56 from a single piece of correspondence justifies denying the Motion as to that request. Defendants raised that RFP in the Parties' April 17, 2026 telephonic meet-and-confer and raised it again in multiple rounds of subsequent correspondence. *See* Dkt. No. 820-2 at 4–5; Dkt. No. 543–16 at 3. Plaintiffs were given ample opportunity to address the dispute as to RFP No. 56.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion and order Plaintiffs to produce all non-privileged documents and communications responsive to RFP Nos. 48–56 within fourteen days, or, to the extent no such documents exist, to so state in response to each of RFP Nos. 48–56, and to identify on a privilege log any responsive document withheld on privilege or work product grounds. In particular, Defendants request that Plaintiffs be ordered to immediately confirm whether or not a litigation funder exists, identify any funder, and

---

April 17, 2026, and discussed the merits of the RFPs; Defendants then explained their position in writing and requested production of responsive documents. Dkt. No. 793-1 ¶¶ 5-9; Dkt. No. 793-6 at 2–3; Dkt. No. 793-7 at 3. Plaintiffs refused. Plaintiffs cannot credibly claim that Defendants made no attempt to resolve this dispute before moving to compel.

produce any funding agreement and documents sufficient to show any funder's control, consent, or veto rights.

Dated: October 21, 2026

By: /s/ *Maaren A. Shah*
MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL *(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER *(Pro hac vice)*
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

RORY T. KAY (No. 12416)
rkay@mcdonaldcarano.com
EMILY M. DENNIS (No. 16396)
edennis@mcdonaldcarano.com
MCDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Tel: (702) 873-4100

*Attorneys for Defendant Endeavor Group Holdings, Inc.*

Respectfully Submitted,

By: */s/ Christopher S. Yates*
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

SEAN M. BERKOWITZ *(Pro hac vice)*
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
JOSEPH AXELRAD (*Pro hac vice*)
joseph.axelrad@lw.com
DANIELLE LENECK (*Pro hac vice*)
danielle.leneck@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5500

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-1061

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
BENJAMIN J. CABRANES (*Pro hac vice*)
bcabranes@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

YOTAM BARKAI (*Pro hac vice*)
ybarkai@dirllp.com
MATTHEW D. KAMINER (*Pro hac vice*)
mkaminer@dirllp.com
DUNN ISAACSON RHEE LLP

11 Park Place
New York, NY 10007
Tel: (212) 389-9704

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Defendants' Reply In Support of Motion to Compel Plaintiffs to Produce Documents in Response to Requests for Production Nos. 48–56 was served on October 21, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Christopher S. Yates*
Christopher S. Yates (*Pro hac vice*) of
LATHAM & WATKINS LLP