MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL *(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER (*Pro hac vice*)
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

RORY T. KAY (No. 12416)
rkay@mcdonaldcarano.com
EMILY M. DENNIS (No. 16396)
edennis@mcdonaldcarano.com
MCDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Tel: (702) 873-4100

*Attorneys for Defendant Endeavor Group Holdings, Inc.*

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

[Additional counsel listed on signature page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS IN RESPONSE TO REQUESTS FOR PRODUCTION NOS. 10, 13, AND 25** |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. The Requested Materials Are Relevant .......... 3

B. The Requested Materials Are Proportional To The Needs Of The Case .......... 5

C. The Motion Is Timely .......... 7

i. Defendants Moved By The Court's Deadline, On A Dispute That Arose Just Weeks Earlier .......... 7

ii. The *Hampton* Factors Confirm The Motion Is Timely .......... 9

III. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agarwal v. Or. Mut. Ins. Co.*,
2013 WL 211093 (D. Nev. Jan. 18, 2013) ........ 11

*Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*,
2012 WL 1970017 (D. Nev. June 1, 2012) ........ 7

*Benedict v. State Farm Mut. Auto. Ins. Co.*,
2022 WL 60775 (D. Nev. Jan. 5, 2022) ........ 7

*Big City Dynasty v. FP Holds., L.P.*,
336 F.R.D. 507 (D. Nev. 2020) ........ 4

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975) ........ 5

*Crump Ins. Servs., Inc. v. McGrath*,
2008 WL 11388598 (N.D. Cal. Aug. 19, 2008) ........ 8

*Docklight Brands Inc. v. Tilray Inc.*,
2023 WL 5206392 (W.D. Wash. Aug. 14, 2023) ........ 6

*Everett v. Aldi, Inc.*,
2009 WL 940379 (N.D. Ind. Apr. 6, 2009) ........ 11

*Garcia v. Serv. Emps. Int'l Union*,
332 F.R.D. 351 (D. Nev. 2019) ........ 11

*Gault v. Nabisco Biscuit Co.*,
184 F.R.D. 620 (D. Nev. 1999) ........ 8, 11

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*,
2013 WL 492103 (E.D. Cal. Feb. 8, 2013) ........ 11

*Hampton v. Nevada*,
2022 WL 118303 (D. Nev. Jan. 11, 2022) ........ 8

*Herndon v. City of Henderson*,
507 F. Supp. 3d 1243 (D. Nev. 2020) ........ 11

*In re Apple iPhone Antitrust Litig.*,
2021 WL 718650 (N.D. Cal. Feb. 24, 2021) ........ 4

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
791 F.2d 1356 (9th Cir. 1986) ........ 1, 3

*Mastaba, Inc. v. Lamb Weston Sales, Inc.*, 23 F. Supp. 3d 1283 (E.D. Wash. 2014) .......... 6

*Militante v. Banner Health*, 2023 WL 12073895 (D. Ariz. Dec. 20, 2023) .......... 6

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678 (C.D. Cal. 2009) .......... 6

*O'Neil v. Las Vegas Metro. Police Dep't*, 2026 WL 2859492 (D. Nev. Sep. 23, 2026) .......... 11

*Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 8374741 (N.D. Cal. Dec. 4, 2023) .......... 7

*Thomason v. City of Fowler*, 2014 WL 4436385 (E.D. Cal. Sep. 9, 2014) .......... 11

*V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356 (D. Nev. 2019) .......... 9

*Wheat v. Wal-Mart Assocs. Inc.*, 2024 WL 4452707 (E.D. Cal. Oct. 9, 2024) .......... 11

*Yotta Techs. Inc. v. Evolve Bank & Tr.*, 2026 WL 172502 (N.D. Cal. Jan. 22, 2026) .......... 10

**RULES**

Fed. R. Evid. 801(d)(2)(A) .......... 4

Defendants Zuffa, LLC, TKO Operating Company, LLC, and Endeavor Group Holdings, Inc. (collectively, "Defendants") submit this Reply in Support of Defendants' Motion to Compel Plaintiffs to Produce Documents in Response to Requests for Production Nos. 10, 13, and 25 (Dkt. No. 796, "Motion" or "Mot.").

## I. INTRODUCTION

Plaintiffs do not dispute the central fact underlying this Motion: that the Named Plaintiffs sell goods and services by marketing their UFC careers, and that they have not produced the records of those businesses. Mr. Johnson sells his Kajabi-hosted[1] "Pro Fight Guide" as the work of a "UFC Veteran." Axelrad Decl. Ex. S. He markets memberships to his gym by telling customers that he "spent years fighting at the highest level in the UFC." *Id.* Ex. H. He promotes a course to "Make More Money as a Fighter!" and tells more than 100,000 YouTube subscribers that "the UFC . . . is the only place that you can actually make that kind of money." *Id.* Exs. A at 31:34, 39:33, I. Mr. Connelly and Mr. Dollaway also monetize their status as ex-UFC fighters: their affiliations with the UFC are at the core of their commercial endeavors. *Id.* Exs. N–P. Plaintiffs do not deny any of this. Instead, they ask the Court to look the other way, and to treat the records of those businesses and income streams (what they sold, how they marketed their goods and services, and what they earned) as having nothing to do with a case about the value of their UFC affiliation. The Court should decline to do so.

Plaintiffs hide behind a narrowly alleged market definition, confined to North America, to argue that the materials sought by the Motion are irrelevant because they fall outside the Named Plaintiffs' "professional MMA careers." Dkt. No. 821 ("Opp." or "Opposition") at 12. But Plaintiffs do not, and cannot, dispute that an antitrust plaintiff "may recover only to the 'net' extent of its injury," and that benefits flowing from the challenged conduct "must be deducted from the gross damages." Mot. at 9 (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986)). Plaintiffs claim the UFC suppressed their

[1] Kajabi markets itself as a website on which "experts" can "build, market, sell, and deliver their work," including the ability to "build courses, coaching programs, digital products, memberships, communities, and high-value client experiences." https://www.kajabi.com/.

compensation; thus, the income they earn by trading on their UFC careers is part of what those careers were worth. Plaintiffs also wave away Mr. Johnson's statement that the "UFC is completely global" as "simply [his] opinions." Opp. at 13–14 n.5. But Mr. Johnson's statement is a named plaintiff's own admission about the UFC's global market presence that directly contradicts the North American geographic market that he alleges in this case and that underpins his monopsonization claim. While Plaintiffs allege a narrow relevant product and geographic market, the determination of the relevant antitrust market and thus the merits of Plaintiffs' claims is often ultimately a fact issue, and Defendants are entitled to seek discovery on *their* theory of the facts and the law—discovery is not limited by an opponent's theory.

Plaintiffs' burden and proportionality arguments describe a motion that Defendants did not file. Contrary to Plaintiffs' assertion that they must re-review "well over a million documents" (Opp. at 11), Defendants seek specific records from a handful of identified accounts that the Named Plaintiffs themselves own and control. Further, Plaintiffs' claim that the materials are "publicly available" (Opp. at 14–15) conflates public-facing content with private financial records. While Defendants can see Mr. Johnson's YouTube and Pro Fight Guide pages, for example, they cannot see his subscriber and sales data, his transaction records, his advertising accounts, the agreements underlying any of the commercial platforms with which he engages, or how much he has made profiting off his affiliation with the UFC. Plaintiffs can easily, and should, produce these documents.

Unable to defend withholding these documents, Plaintiffs devote most of their Opposition to timing. That argument fails at the threshold. Defendants filed the Motion on September 30, the deadline the Court set for substantial completion of document productions. This is not a dispute the parties had been "discussing this entire time." Rather, by Plaintiffs' own account, it began on September 11. Opp. at 5. Defendants raised the issue, met and conferred, and promptly brought it to the Court in less than three weeks. Plaintiffs cannot fault Defendants for taking time to uncover what they were unable to find in Plaintiffs' (deficient) productions when Plaintiffs made those productions all but impossible to search.

Plaintiffs cannot make their UFC affiliation the linchpin of their post-UFC commercial

endeavors and then withhold the records showing what that affiliation has earned them, while suing the UFC for failing to adequately compensate them. The Court should grant the Motion.

## II. ARGUMENT

### A. The Requested Materials Are Relevant

Tellingly, Plaintiffs' Opposition barely addresses relevance. What little it offers rests on a single premise: that the Named Plaintiffs' post-career businesses operate in "separate markets" and have "no bearing" on any claim or defense. Opp. at 12–13. Plaintiffs' silence on everything else is telling. They do not dispute that benefits flowing to antitrust plaintiffs from a defendant's alleged conduct must be deducted from any damages. *See* Mot. at 9. They relegate Defendants' market definition argument to a footnote, dismissing Mr. Johnson's own admission that the market here is global (and not limited to North America as he alleges) as an "opinion[]." *See* Mot. at 10–11; Opp. at 13 n.5. And they ignore entirely the authority holding that a party's theory of market definition does not limit the opposing party's discovery. *See* Mot. at 12–13. Those concessions are dispositive here.

The Named Plaintiffs' UFC affiliation is not incidental to their businesses. It *is* the business. Mr. Johnson markets his Kajabi-hosted "Pro Fight Guide" as the work of a "UFC Veteran." Axelrad Decl. Ex. S. He tells YouTube viewers he "fought in the UFC for a number of years against some of the top talent in the world." *Id.* Ex. I. He sells gym memberships on his website by announcing that he "spent years fighting at the highest level in the UFC." *Id.* Ex. H. The other Named Plaintiffs do the same: Mr. Connelly's instructor biographies and Mr. Dollaway's Cameo profile trade on their UFC careers. *Id.* Exs. N–P. Records of what the Named Plaintiffs sold, how they marketed it, and what they earned on the strength of their UFC careers go directly to the offsetting benefits of the challenged conduct, to any claimed damages, and to market definition. Mot. at 8–11. The marketing materials show that the Named Plaintiffs leveraged their UFC careers; the transaction and revenue records show what that leverage was worth. Plaintiffs claim the financial records are "further removed still." Opp. at 13. Not so. They are the measure of the very offset. *See L.A. Mem'l Coliseum*, 791 F.2d at 1367 ("An antitrust plaintiff may recover only to the 'net' extent of its injury; if benefits accrued to it because of an antitrust violation, those benefits

must be deducted from the gross damages caused by the illegal conduct.”). Plaintiffs do not engage at all with *Coliseum*.

Plaintiffs’ “separate markets” argument is a merits argument dressed up as a discovery objection. Whether the Named Plaintiffs’ post-UFC income reflects benefits of the challenged contracts is a merits question; it is not a reason to withhold discovery. “The Court can’t manage discovery by assuming merits outcomes . . . .” *In re Apple iPhone Antitrust Litig.*, 2021 WL 718650, at *2 (N.D. Cal. Feb. 24, 2021). “[A] party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent’s theory.” *Big City Dynasty v. FP Holds., L.P.*, 336 F.R.D. 507, 511 (D. Nev. 2020) (citation omitted). Plaintiffs cite nothing to the contrary.

Nor can Plaintiffs dismiss Mr. Johnson’s statement that the “UFC is completely global,” an admission directly undermining the alleged North American geographic market, as “simply Mr. Johnson’s opinions.” Opp. at 13 n.5. A named plaintiff’s own description of the market in which he competed is a party admission on a contested issue at the heart of this case. *See* Fed. R. Evid. 801(d)(2)(A). Plaintiffs’ effort to recast that admission as mere “opinion” only confirms how damaging it is.

Plaintiffs’ narrower argument—that procompetitive benefits concern only output and quality in the market for fighter services, so a former fighter’s later earnings have “no bearing,” Opp. at 13—fares no better. The opportunities a UFC career opens to fighters are part of what fighters receive in exchange for their services under the challenged contracts, and thus bear directly on whether those contracts suppressed fighter compensation at all. And even if Plaintiffs were right about the rule of reason, the same records would remain relevant to damages under *Coliseum*, which Plaintiffs do not address.

Finally, Plaintiffs’ attack on *Le* backfires. *Le* confirms that these materials are relevant and discoverable. *First*, the same plaintiffs’ counsel made the same argument in *Le*: they asked the Court to limit similar requests to “income from MMA events,” arguing that income unrelated to plaintiffs’ MMA careers was “simply irrelevant.” *Le* Dkt. No. 213 at 40–42. Magistrate Judge Leen did not accept that line. She reasoned that if Plaintiffs claim the UFC is “the only game in

town," then "compensation in related fields" would be "somewhat probative," which plaintiffs' counsel conceded was "arguably" so. *Le* Dkt. No. 216 at 59:24–60:10. She then set the scope at all "combat sports-related activities," expressly including income earned "because they're a well-known UFC fighter." *Id.* at 59:9–60:15, 77:21–78:21. Plaintiffs offer no principled reason why the same line should not apply here, and their own responses to RFP No. 13 already commit them to produce documents sufficient to show "merchandising and other payments for use of their identities." Axelrad Decl. Ex. C at 16. *Second*, *Le* shows exactly why this evidence matters. In certifying the class, the Court found that Zuffa "ha[d] not presented sufficient evidence" that its contracts were procompetitive. *Le* Dkt. No. 839 at 39, 41–42. Records showing what Plaintiffs earned by leveraging their UFC careers are some of that evidence: they show the value the UFC's model created for its fighters. Plaintiffs, and the Court, cannot fault Zuffa for a lack of procompetitive evidence in one case and then deny that evidence in the next.

**B. The Requested Materials Are Proportional To The Needs Of The Case**

Plaintiffs' proportionality argument fares no better. Plaintiffs offer two points: that the materials are publicly available, and that they have already produced documents from the Named Plaintiffs' custodial files. Opp. at 14–15. Neither assertion answers the Motion. Plaintiffs' productions contain only passing references to these platforms, *see id.* at 14, and the substantive records are, by definition, not public.

*First*, Plaintiffs identify no specific burden. A party resisting discovery must "carry a heavy burden of showing why discovery [should be] denied." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Plaintiffs do not come close. They assert only that collection would require "launching an investigation into new sources." Opp. at 2. They offer no declaration, and no estimate of volume, cost, or time. The sources at issue are a small set of accounts that the Named Plaintiffs themselves operate, including a Kajabi account, ad accounts, a gym website, and the associated transaction records. Plaintiffs claim that some materials are "not even in Plaintiffs' possession, custody, or control," Opp. at 2, but never say which ones, or why they cannot obtain them from their accounts on the platforms they utilize for their businesses. Meanwhile, Plaintiffs represent that they "have collected their social media accounts, including Mr. Johnson's YouTube

and Instagram accounts, are linearly reviewing them, and will produce relevant and responsive documents subject to their R&Os." Opp. at 13 n.5. Plaintiffs cannot collect and review these sources with one hand while claiming with the other that producing responsive material from them is disproportionate. *See Mastaba, Inc. v. Lamb Weston Sales, Inc.*, 23 F. Supp. 3d 1283, 1300 (E.D. Wash. 2014) (responding party's ongoing search for additional documents responsive to the same requests was "indicative of a low burden"); *Docklight Brands Inc. v. Tilray Inc.*, 2023 WL 5206392, at *4 (W.D. Wash. Aug. 14, 2023) (set of documents for review found proportional where counsel had already agreed to review and produce the same categories of documents). And Plaintiffs' posturing that they would have to potentially re-review "well over a million documents," Opp. at 11, is nothing more than a strawman—it attacks a request Defendants never made.

*Second*, public availability is no excuse. An objection that information is "equally available" to the requesting party "is insufficient to resist a discovery request." *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (citation omitted). What matters is "the parties' relative access," and "[t]he mere fact that the information may be available to Defendants from other sources does not suggest disproportionality." *Militante v. Banner Health*, 2023 WL 12073895, at *6 (D. Ariz. Dec. 20, 2023) (citation omitted). But more fundamentally, Plaintiffs conflate the public-facing platform posts with what lies behind them. While Defendants can see a public YouTube video or a website page, they cannot see what the Named Plaintiffs earned, or how they targeted their advertising. Those facts live in, for example, Named Plaintiffs' Kajabi accounts, subscription and transaction records, Google and Meta ad accounts, and related financial records, none of which is public. And even as to public content, "[w]ithout a representation from Plaintiff about what was in existence, Defendants could not know whether they had discovered all that was available." *Id.*; *see also id.* at *8 (compelling production of public social media content plaintiff failed to show defendants could download more easily).[2] The Named Plaintiffs are aware of, and can export, the contents of their own accounts in minutes; Defendants cannot.

---

[2] Plaintiffs' argument is, of course, hypocritical as they sought (and the Court ordered) a review of public-facing UFC social media. The same rules must apply to both sides.

Plaintiffs' own authorities prove the point. *Roblox* excused production of public posts only where the producing party identified every relevant account, and it compelled production of everything else, including "social media posts that are no longer available online, posts that have been taken down, and non-public content." *Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 8374741, at *2 (N.D. Cal. Dec. 4, 2023). That is exactly the category of material at issue here. *Benedict* and *Assurance* are further afield: they involved public court records, not a party's own commercial accounts. *Benedict v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 60775, at *2 (D. Nev. Jan. 5, 2022); *Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*, 2012 WL 1970017, at *4 (D. Nev. June 1, 2012).

### C. The Motion Is Timely

Unable to defend withholding records central to their own claims, Plaintiffs devote most of their Opposition to timing. Yet their timeliness argument fails too. Plaintiffs concede, as they must, that Defendants filed this Motion on the deadline the Court set for substantial completion. Opp. at 8. Any "delay" is of Plaintiffs' own making: Plaintiffs made incomplete and difficult-to-search productions, and Defendants learned the breadth of what was missing only by searching beyond those productions. Plaintiffs cannot make deficient productions and then claim the Motion is untimely because it took Defendants time to uncover the full extent of what was missing. In any event, Plaintiffs make no argument—nor could they—about how they were prejudiced by any purported delay.

#### i. Defendants Moved By The Court's Deadline, On A Dispute That Arose Just Weeks Earlier

The Court instructed the parties that September 30 was the deadline for substantial completion and related motions. Dkt. No. 720 at 15:1–3, 37:4–7. Plaintiffs concede that Defendants filed the Motion on that deadline. Plaintiffs instead lean on the Court's further remark that it would "look unfavorably upon a motion to compel filed regarding discovery that we've been discussing this entire time two days or a week before the substantial completion deadline." *Id.* at 37:9–12. But this is not a dispute the parties had been "discussing this entire time." *Id.* By Plaintiffs' own account, it was not until "September 11 [that] Defendants initiated the current

dispute." Opp. at 5. Plaintiffs press the point throughout their brief, describing the materials at issue as "never-before-requested discovery" from "never-before-mentioned sources" that Defendants seek "for the first time." Opp. at 1, 6, 8. Yet, in the same breath, Plaintiffs call this Motion "[d]uplicative" of Defendants' August motion and an "entirely overlapping dispute," complaining that Defendants discussed Mr. Johnson's website "at length" in that briefing. *Id.* at 4, 6–7. Both cannot be true.[3]

The record confirms that Defendants moved promptly. Defendants' September 11 letter identified the missing materials and asked a simple question: had Plaintiffs collected, reviewed, or produced any of them? Axelrad Decl. Ex. Q. Plaintiffs refused to answer on September 15, refused again on September 22, and held that position at the parties' September 25 meet and confer. Mot. at 7–8; Axelrad Decl. ¶ 8, Ex. R. Defendants filed the Motion five days later. That is not the eleventh-hour gamesmanship the Court warned against; it is a dispute raised, conferred on, and presented to the Court in less than three weeks.[4]

That timing alone defeats Plaintiffs' argument. September 30 was the deadline for substantial completion and related motions; fact discovery has not closed, and, in fact, no deadline has been set. "A motion to compel filed during the discovery period would rarely be considered untimely." *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999); *see also Crump Ins. Servs., Inc. v. McGrath*, 2008 WL 11388598, at *2 (N.D. Cal. Aug. 19, 2008). Plaintiffs' own lead authority says the same: "A motion to compel filed before the discovery cutoff is generally considered timely." *Hampton v. Nevada*, 2022 WL 118303, at *3 (D. Nev. Jan. 11, 2022) (citation omitted). While Plaintiffs quote *Gault* and *Hampton* at length, they never confront this language.

---

[3] To the extent Plaintiffs suggest this Motion is subsumed by Defendants' pending motion, that is wrong. The prior motion concerns Plaintiffs' failure to collect, review, and produce communications from Signal, Telegram, and other messaging applications. *See* Dkt. No. 709. This Motion concerns marketing content, account and subscription records, ad account records, transaction and revenue data, and agreements generated through commercial digital platforms such as Kajabi, kajanjohnsonmma.com, YouTube, Instagram, Google Ads, and Meta Ads. *See generally* Mot. That both motions arise under the same RFPs, and that Mr. Johnson's website appeared in the August briefing as an example of relevant evidence, does not make them the same dispute.

[4] Plaintiffs argue that the timeliness of the Motion should instead be measured against the January 16, 2026 fact discovery deadline. Opp. at 9. But that deadline was superseded by the ***operative*** deadline: September 30.

In addition, Plaintiffs represent that they are currently conducting a linear review of Plaintiffs' documents. Opp. at 13 n.5. Given that ongoing review—being conducted after the deadline for substantial completion of document production—Plaintiffs can hardly complain about timeliness.

**ii. The *Hampton* Factors Confirm The Motion Is Timely**

Plaintiffs' *Hampton* analysis does not help them. The Motion was filed on the Court's deadline, within the schedule the Court set, and before any dispositive motions have been scheduled or briefed. *See V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 365 (D. Nev. 2019) (explaining that because the discovery cutoff had not passed and the "deadline for filing dispositive motions has not expired in this case and, instead, remains set for a date several months away . . . [t]his factor militates in favor of finding that the motion is timely"). Nor do prior extensions of the case schedule make a motion filed on the very date the Court designated any less timely. *See id.* at 364 (explaining that a "significant additional period for discovery" made the factor "neutral"). Plaintiffs' attempt to blame those extensions on Defendants is a distraction; it has nothing to do with whether Plaintiffs must produce their own documents. The remaining factors that Plaintiffs invoke (the explanation for any delay, Defendants' diligence, and prejudice) each favor Defendants.[5]

*Explanation for delay.* To the extent there was any delay, Plaintiffs caused it. Plaintiffs' productions were made in a format that makes searching and systematic review all but impossible. *See* Mot. at 5. Only after Defendants raised metadata problems did Plaintiffs produce more than 3,000 documents they claimed were "inadvertently" withheld, and they did not reproduce their documents to supposedly address the metadata issues until September 30, the day Defendants filed this Motion. *Id.* at 5 & n.1. Many of these deficiencies remain unresolved. Plaintiffs cannot fault Defendants for failing to promptly locate documents that Plaintiffs' own deficient productions made nearly impossible to find. *See V5 Techs.*, 332 F.R.D. at 365 (eleven-month delay "not unreasonable given the specific circumstances," including the opposing party's conduct).

*Defendants' diligence.* Defendants acted promptly once they identified the gap. Defendants

---

[5] Plaintiffs, when discussing the age of the case, say the case is "over a decade" old. Opp. at 10. It is not. This action was filed in 2021.

found only passing references to the Named Plaintiffs' use of Kajabi, YouTube, Instagram, Google Ads, kajanjohnsonmma.com, and similar platforms in screenshots and text messages, and none of the substantive marketing content, account and subscription records, transaction and revenue data, or underlying agreements those references revealed. Mot. at 5. Without Defendants' additional diligence, Defendants would not have known many of these materials were missing at all. Plaintiffs' suggestion that Defendants should have done a "Google search" sooner misses the point. Opp. at 9. Public sources revealed that the platforms exist and that the Named Plaintiffs use them; the non-public records were never produced and cannot be obtained from any public source. And much of the public content is new: Mr. Johnson's video, "The Truth About Being a Pro UFC Fighter in 2026," was posted only in September 2026, *see* Axelrad Decl. Ex. I, and his Instagram post directing followers to purchase his "Pro Fight Guide" was posted on August 12, 2026, *id.* Ex. J. Defendants cannot be faulted for failing to move to compel on content that did not yet exist.

*Absence of prejudice*. Plaintiffs identify no real prejudice. They invoke the burden of re-opening their objections to Defendants' requests and reviewing "new, previously unnamed sources" of documents. Opp. at 10–11. But Plaintiffs say they have already "collected their social media accounts, including Mr. Johnson's YouTube and Instagram accounts, are linearly reviewing them, and will produce relevant and responsive documents subject to their R&Os." Opp. at 13 n.5. Having already undertaken that collection and review, Plaintiffs can hardly claim prejudice from producing what it yields.[6] And some of what Plaintiffs are withholding does not require revisiting anything. In response to RFP No. 25, Plaintiffs agreed to produce "any publicity materials . . . created by Plaintiffs or on their behalf that are related to the UFC." Axelrad Decl. Ex. C at 26–27. That describes, for example, Mr. Johnson's Kajabi marketing for his "Pro Fight Guide" as the work of a "UFC Veteran," and his website's account of years "fighting at the highest level in the UFC." *Id.* Exs. H, S. In response to RFP No. 13, Plaintiffs agreed to produce documents sufficient to show

---

[6] *Yotta* does not help Plaintiffs. There, the court denied a motion that would have required "redoing a significant part of" the opposing party's document production. *Yotta Techs. Inc. v. Evolve Bank & Tr.*, 2026 WL 172502, at *3 (N.D. Cal. Jan. 22, 2026). Defendants seek nothing of the kind. They ask for records from a discrete set of identified platform accounts—not a re-review of the documents Plaintiffs have already produced.

"merchandising and other payments for use of their identities." *Id*. Ex. C at 16. Defendants raised Plaintiffs' failure to produce even these agreed-upon materials in the Motion, and Plaintiffs have no response. Mot. at 11 n.4. Producing what Plaintiffs promised years ago imposes no cognizable prejudice. And the balance of what Defendants seek (Kajabi records, ad account records, and subscription and transaction records) is a limited, readily identifiable universe of documents, not a do-over of Plaintiffs' productions. Plaintiffs' authorities do not suggest otherwise. Nearly all of Plaintiffs' cases involved a motion heard or filed after the close of discovery or so close to the ultimate Rule 16 discovery cutoff that the court could not grant relief within the discovery period.[7]

Ultimately, Plaintiffs' theory would turn the discovery rules on their head by rewarding a responding party for producing incomplete and unsearchable materials, and for refusing to state what it collected, while penalizing the requesting party for the time it took to discover what those productions omitted in the first place. The Federal Rules do not permit that result, and the Court should reject it.

---

[7] *See, e.g.*, *Garcia v. Serv. Emps. Int'l Union*, 332 F.R.D. 351, 353 (D. Nev. 2019) (denying as untimely a renewed motion to compel filed four months after the dispositive motion deadline); *Herndon v. City of Henderson*, 507 F. Supp. 3d 1243, 1254 (D. Nev. 2020) (denying motion to compel where "[m]otions for summary judgment [were] pending" because it "may disrupt the established schedule for the case"); *Gault*, 184 F.R.D. at 621–22 (denying motion to compel filed 76 days after the close of discovery, where the motion was filed "after the court's decision on . . . motion for summary judgment, and on the eve of trial"); *Wheat v. Wal-Mart Assocs. Inc.*, 2024 WL 4452707, at *7 (E.D. Cal. Oct. 9, 2024) (denying motion filed the day before the fact discovery cutoff and set for hearing "approximately four weeks after the non-expert discovery deadline," leaving no "time to provide effective relief prior to the discovery deadline"); *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 2013 WL 492103, at *6 (E.D. Cal. Feb. 8, 2013) (denying motions noticed for hearing on the last day of discovery because "[b]y noticing the hearings on their respective Motions to Compel for the last day of discovery, the Court is without the means to provide any effective relief prior to the discovery cutoff"); *O'Neil v. Las Vegas Metro. Police Dep't*, 2026 WL 2859492, at *5 (D. Nev. Sep. 23, 2026) (denying motion filed after the discovery cutoff in part because it would lead to a disruption of the Court's schedule); *Agarwal v. Or. Mut. Ins. Co.*, 2013 WL 211093, at *5 (D. Nev. Jan. 18, 2013) (denying omnibus motion filed "after the close of discovery, after the dispositive motions deadline, and after the summary judgment was fully briefed"); *Thomason v. City of Fowler*, 2014 WL 4436385, at *5 (E.D. Cal. Sep. 9, 2014) (denying motion noticed for hearing six weeks "after the close of fact discovery," after defendants had moved for summary judgment, where the dispute spanned over 200 requests and resolving it would have required extending "all pre-trial and trial deadlines"); *Everett v. Aldi, Inc.*, 2009 WL 940379, at *4 (N.D. Ind. Apr. 6, 2009) (denying motion to compel filed "on the eve of the close of discovery").

## III. CONCLUSION

For the foregoing reasons and those set forth in the Motion, Defendants respectfully request that the Court grant the Motion and compel Plaintiffs to produce all non-privileged documents and communications responsive to RFP Nos. 10, 13, and 25, including all documents relating to or generated through Plaintiffs' use of commercial digital platforms.

Dated: October 21, 2026


By: /s/ *Maaren A. Shah*
MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL *(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER *(Pro hac vice)*
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

RORY T. KAY (No. 12416)
rkay@mcdonaldcarano.com
EMILY M. DENNIS (No. 16396)
edennis@mcdonaldcarano.com
MCDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Tel: (702) 873-4100

*Attorneys for Defendant Endeavor Group Holdings, Inc.*


Respectfully Submitted,


By: /s/ *Christopher S. Yates*
CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

SEAN M. BERKOWITZ *(Pro hac vice)*
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700

LAURA WASHINGTON (*Pro hac vice*)
laura.washington@lw.com
JOSEPH AXELRAD (*Pro hac vice*)
joseph.axelrad@lw.com
DANIELLE LENECK (*Pro hac vice*)
danielle.leneck@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5500

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-1061

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
BENJAMIN J. CABRANES (*Pro hac vice*)
bcabranes@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

YOTAM BARKAI (*Pro hac vice*)
ybarkai@dirllp.com
MATTHEW D. KAMINER (*Pro hac vice*)
mkaminer@dirllp.com
DUNN ISAACSON RHEE LLP

11 Park Place
New York, NY 10007
Tel: (212) 389-9704

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Defendants' Reply in Support of Motion to Compel Plaintiffs to Produce Documents in Response to Requests for Production Nos. 10, 13, and 25 was served on October 21, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*<u>/s/ Christopher S. Yates</u>*
Christopher S. Yates (*Pro hac vice*) of
LATHAM & WATKINS LLP