Joseph R. Saveri (*Pro Hac Vice*)
Christopher K.L. Young (*Pro Hac Vice*)
Kevin E. Rayhill (*Pro Hac Vice*)
Itak Moradi (*Pro Hac Vice*)
T. Brent Jordan (*Pro Hac Vice*)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 315-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
krayhill@saverilawfirm.com
imoradi@saverilawfirm.com
tbjordan@saverilawfirm.com

*Counsel for Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Zuffa LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC) and Endeavor Group Holdings, Inc.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES AND EXPENSES AS TO DOMINANCE MMA PER COURT ORDER ECF NO. 471** |

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................................1

II. ARGUMENT ..............................................................................................................2

A. Dominance Attempts to Falsely Limit the Scope of the Fees Ordered by the Court.....2

B. The Saveri Law Firm Attorneys who Worked on this Action are Well-Qualified and Deeply Familiar with the Facts, Parties, and Theories. ..................................................4

C. Plaintiffs Have Provided a Detailed Accounting of the Work Performed Which Satisfies Local Rule 54-14. ..........................................................................................8

III. CONCLUSION ..........................................................................................................10

## I. INTRODUCTION[1]

In its March 3, 2026 Minutes of Proceedings, the Court instructed Plaintiffs to file a motion for fees as a sanction for "Dominance's failure to comply with their own discovery obligations, as well as this Courts prior orders." ECF No. 471. This was the Court's response to nearly two years of Dominance seeming to engage with Plaintiffs on discovery, only to pull out the rug at the last minute. Plaintiffs have sought and received three Orders from the Court to enforce Dominance's compliance, yet to this day Dominance has produced only a tiny fraction of the documents **the Court has twice ordered Dominance to produce in response to Dominance's failures to comply with its discovery obligations**.

Thus the cause and the focus of this motion is Dominance's intransigence, and Plaintiffs' fees provide the vehicle through which the Court can address Dominance's intentional failures to comply with the Court's Orders. As Judge Boulware stated at the March 3, 2026 Hearing, "I am very concerned . . . about your client's [i.e. Dominance's] conduct in this case. I absolutely intend to impose fees in this case. I just don't want to see any further resistance to Court orders." ECF No. 466 at 9:3–5.

The Court's September 24, 2026 Minute Order asked Plaintiffs to provide more detail about the hours devoted to obtaining Dominance's compliance. In submitting that filing, Plaintiffs voluntarily reduced the number of hours they seek in the Fee Motion and ensured the time and descriptions submitted satisfy the *Kerr* factors and LR 54-14. Plaintiffs' rates are reasonable in light of the level of skill and experience Plaintiffs bring to the action and the amount of effort they have expended attempting to obtain Dominance's discovery, and are those paid by its hourly clients. The Rates are well within rates charged by attorneys of similar skill and experience in the District of Nevada.

While Plaintiffs believe the Supplemental Motion provides the detail the Court requested,

[1] Plaintiffs respectfully file this submission one day after the seven-day deadline due to technical barriers resulting from the Microsoft Suite outage on November 12, 2026, which impeded Plaintiffs' ability to timely finalize and file their submission. Dominance agreed to not object to Plaintiffs filing one day later. Plaintiffs note, however, that Dominance maintains its position that Plaintiffs are not entitled to file a reply in connection with the supplemental briefing.

Plaintiffs have added additional detail to address Dominance's critiques. *See infra*, §II.C. The Court also asked for more information about the attorneys' qualifications. Plaintiffs provide that here as well. *See infra*, §II.B.

Plaintiffs respectfully request that the Court grant their Supplemental Motion for Fees.

## II. ARGUMENT

### A. Dominance Attempts to Falsely Limit the Scope of the Fees Ordered by the Court.

Dominance begins its Response to Plaintiffs' Supplemental Motion for Attorneys' Fees and Expenses as to Dominance MMA (ECF No. 853, the "Response") by trying to create a false equivalence between limitations on a third party's obligations in responding to a subpoena on the one hand, and the Court's imposition of a contempt sanction on Dominance on the other. Response at 1. The former arises from language in Federal Rule of Civil Procedure 45(d)(2)(B)(ii), which protects a non-party from significant expense resulting from subpoena compliance. Dominance raised its scope objections in its response to Plaintiffs' Motion to Compel. The Court has already addressed this repeatedly by limiting the subpoena's scope and focusing the subsequent proceedings on compliance with the more narrow subpoena. Plaintiffs have complied with the Court's instruction, only seeking production of the narrowed subpoena. If Dominance were to seek costs of compliance, including costs for unnecessary review and other work the Court did not authorize, Plaintiffs would respond at that time. That is not the subject of this motion.[2]

Conversely, Plaintiffs' application for compensation is authorized by Federal Rule of Civil Procedure 45(g), Local Rule 11-8(e) and the Court's inherent powers. The Court has inherent power

---

[2] Judge Boulware has been crystal clear that Dominance is not to conduct linear review of the documents collected by HOLO in late February and revealed to Plaintiffs and the Court for the first time at the March 3, 2026 hearing. ECF No. 466, March 3, 2026 Transcript at 11 ("I want them to turn over everything that they have, right. That means whatever the 120,000 that Holo has, turn it over."); *see also id.* at 12 ("So what I would expect is that all of the information regarding the three custodians, right, would be **turned over based upon search terms** that the plaintiffs have provided after review of the material for any privilege. And I will give your client 30 days to do that.") (emphasis added). That order is final. Dominance still refuses to follow it and appears to be trying to use these proceedings regarding costs to circumvent or undercut Judge Bouleware's order.. *See* Supplemental Motion at 2.

to issue sanctions, including an order to reimburse a party's reasonable fees and expenses incurred as a result of another party's failure or refusal to comply with a court order. *Foshee v. Mastec Network Sols., Inc*, No. 1:20-cv-00890-AWI-SAB, 2021 WL 5529891, at *9 (E.D. Cal. Nov. 24, 2021).

Dominance also attempts to avoid responsibility and limit its liability by asserting that "the Court intended to award fees limited to those incurred in bringing Plaintiffs' Application for an Order to Show Cause." Response at 1. Dominance also wrongly asserts that "Plaintiffs' Supplement also continues to seek fees for activities well beyond the limited conduct that gave rise to the Court's fee directive." *Id.* at 3. Both are false. The Court's guidance was broad and reasonably encompasses all of Dominance's misconduct, including its noncompliance with multiple prior orders, which continues to this day. Indeed, the Court's Order that Plaintiffs file a motion for fees arises as a contempt sanction for "Dominance's failure to comply with their own discovery obligations, **as well as this Court's prior orders.**" ECF No. 471 (emphasis added). The reference to multiple orders makes the Court's intention crystal clear.

Moreover, everything that Dominance references here merely confirms the extraordinary measures Plaintiffs have been forced to undertake in a good faith but ultimately futile attempt to obtain Dominance's discovery in accordance with the Court's Orders. For example, Dominance asserts, "Plaintiffs request $70,487.50 for a sweeping category encompassing nearly ten months of, inter alia, scheduling negotiations, vendor discussions, correspondence, research, and internal coordination . . . ." Response at 3. That Plaintiffs had to engage in a sweeping category of work for ten months is the point. All of this effort could have been avoided had Dominance not engaged in intentional foot-dragging, obfuscation and delay. Plaintiffs have spent months of attorney time attempting to obtain Dominance's compliance with a subpoena the Court narrowed in response to Dominance's objections and a fully briefed hearing. The amount of time devoted is a direct response to and was necessitated by Dominance's conduct.

The implication that Plaintiffs have not proceeded in good faith or consistently with the Court's orders is also false. Having litigated the scope of the subpoena before Judge Boulware and obtained an order requiring compliance (ECF No. 245), Plaintiffs promptly applied and adhered to the Court's Order. Plaintiffs devoted hours to engaging with Dominance to negotiate a vendor

contract, only to be met with Dominance's refusal to sign the fully negotiated contract. Plaintiffs similarly negotiated custodians and devices to be collected and search terms to be applied. Dominance reneged on that agreement too: Dominance has not collected the devices of two of the three agreed custodians and remarkably claims they no longer have access to the devices or the documents contained therein. Moreover, with the exception of a tiny production comprising roughly two percent of the HOLO documents Dominance was ordered to produce, Dominance has refused to produce the documents it has collected unless Plaintiffs agree to pay Counsel's name partner his full fee to conduct a linear review that the Court has instructed Dominance not to perform.

Dominance complains that Plaintiffs' proposed fees are more than co-counsel Berger Montague sought in its recent motion to compel. Opp. at 1. The argument is a non-sequitur. The fees sought by BMPC related to the drafting and arguing of one motion. Here, the record shows Dominance's refusal to comply and Plaintiffs' corresponding efforts to obtain compliance have taken months.

Plaintiffs have worked assiduously to reach accommodation at every turn. All for naught. The Court has authorized Plaintiffs to seek their fees related to all of these efforts.

Dominance has no one to blame but itself. If Dominance had simply produced the documents the Court ordered it to produce, Plaintiffs would not be asking for these fees and expenses. Indeed, the reason the Court instructed Plaintiffs to file their Fee Motion is that for nearly two years, since it was served with Plaintiffs' subpoena on January 14, 2025, Dominance has refused to comply with the subpoena, or with any of the Court's Orders commanding Dominance to produce documents responsive to Subpoena Request Nos. 5–11 (ECF No. 245). To this day, Dominance has failed to comply with nearly any aspect of any of the Court's Orders. This is sanctionable conduct. Dominance must pay.

### B. The Saveri Law Firm Attorneys who Worked on this Action are Well-Qualified and Deeply Familiar with the Facts, Parties, and Theories.

Plaintiffs provide brief descriptions of the qualifications of the Saveri Law Firm attorneys that have handled negotiations with Dominance.

**Joseph R. Saveri**

Joseph R. Saveri has handled complex litigation since 1987. He has performed virtually every aspect of complex and class action litigation, including factual and economic analysis of market conditions and pricing practices, drafting of pleadings, law and motion matters, organizing ediscovery, creating a discovery plan, administering and directing on-line review of documents requiring coordination of dozens of lawyers fluent in English and foreign languages, propounding written discovery, taking and defending percipient and expert witness depositions, organizing the factual record, briefing and arguing summary judgment, and leading trial and appellate work.

In 1992 he joined the plaintiffs' firm Lieff Cabraser Heimann & Bernstein (LCHB) in San Francisco, where he established and built their antitrust and intellectual property practice, which was recognized in 2012 as one of the top five practice groups in California. During his final years there he was managing partner. In May 2012 he started the Saveri Law firm. During the last fourteen years he has built the firm from a two-person operation to a thirty-four attorney boutique shop that handles class actions and other complex litigation, primarily in antitrust.

Through his management experience he has learned to staff cases with sufficient attorneys with the requisite skill sets to ensure the best possible outcome without overstaffing. Throughout this process, the team negotiating with Dominance has been lean and efficient. Mr. Saveri has limited his time on this case, delegating the work required to more junior attorneys and staff at lower hourly rates.

**Kevin E. Rayhill**

Kevin Rayhill is of counsel at the Saveri Law Firm, where he has specialized in antitrust class actions and other complex litigation for over fourteen years. He was part of the team that litigated *Le v. Zuffa, LLC*, Case No. 15-cv-01045_RFB-BNW (D. Nev.), the predecessor to the instant class action, from pre-filing investigation through final settlement. He has handled every phase of that and other class actions, including pre-filing factual investigation, drafting complaints, drafting and responding to written discovery and negotiating compliance, managing teams of document reviewers, managing document productions, taking and defending depositions, drafting and arguing discovery motions and dispositive motions, working with experts to draft reports and

prepare for depositions, preparing for trial, and negotiating settlements. Mr. Rayhill has achieved successful outcomes for workers, consumers, and victims of data breaches, taking on some of the biggest corporations in the world in many industries, including high-tech, professional sports, social media, defense contracting, apartment rentals, pharmaceuticals, automotive parts, chemicals, and dental aligners, among others. To date, these cases have resulted in settlements exceeding $1 billion. Mr. Rayhill's legal writing has been published in the California Daily Journal.

**Itak Moradi**

Ms. Moradi joined the Firm in 2023, bringing more than a decade of experience in complex litigation in state and federal court. Her work at the Firm covers the full spectrum of case development and litigation, including trial. She currently helps manage the Firm's lead counsel responsibilities in *In re Juul Labs, Inc. Antitrust Litigation*, No. 21-cv-02345-WHO (N.D. Cal.), and its steering committee responsibilities in *In re Insulin Pricing Litigation*, No. 2:23-md-3080-BRM-LDW (D.N.J.). She too was part of the team that litigated *Le v. Zuffa, LLC*, Case No. 15-cv-01045-RFB-BNW (D. Nev.).

Ms. Moradi is a former senior associate at Knox Ricksen LLP (Knox) in Walnut Creek, California. While there for six years, she handled complex, multi-party *qui tams* involving multi-million-dollar fraud and conspiracy actions against health care professionals, attorneys, and other corporate actors. Her responsibilities as senior associate covered the full spectrum of case development and litigation, including presenting trials.

From 2020 to the present, she has been selected by Super Lawyers as a Northern California "Rising Star." She has been named by the *National Law Journal* as a "Rising Star of the Plaintiffs Bar" in its Elite Trial Lawyers Awards (2025), by Lawdragon as among the "Lawdragon 500 X – The Next Generation (2025)," and by Best Lawyers as "One to Watch" (2024-present). She is a member of the San Francisco Trial Lawyers Association, Iranian American Bar Association and is a fellow of the Litigation Counsel of America.

Ms. Moradi volunteers as a board member and attorney for the Coalition of Concerned Legal Professionals (CCLP), San Francisco Chapter, and provides free legal services on housing and wage issues for San Francisco and Oakland residents. In 2018, she and CCLP successfully initiated a U.S.

Department of Housing and Urban Development investigation into 300+ unlawful eviction notices that were ultimately withdrawn.

In 2026, Ms. Moradi and Mr. Rayhill were part of a team that received the California *Daily Journal's* California Lawyer of the Year (CLAY) award and was honored for "Outstanding Antitrust Litigation Achievement in Private Law Practice" by the American Antitrust Association for its work securing a $385 million settlement on behalf of UFC fighters in the *Le* case. Through their work on that case, including preparing for trial, Ms. Moradi and Mr. Rayhill have acquired a deep understanding of the facts, theories, and players issues in the instant litigation.

**T. Brent Jordan**

Brent Jordan joined the Firm as counsel in 2024, after many years representing plaintiffs in class actions and other complex litigation. He has helped prosecute class claims arising under consumer protection and antitrust statutes, environmental protection laws, and common law breach of contract, negligence, and trespass, among other claims. In addition to his work on this litigation, Mr. Jordan is one of the lead attorneys in the Firm's representation of cardholders in *Visa Debit Card Antitrust Litigation*, No. 24-cv-7435 (S.D.N.Y.), which is being prosecuted in coordination with an action brought by the United States Department of Justice. Mr. Jordan has helped lead serial class actions brought against various life insurers across the United States, and was the first-chair questioning attorney on behalf of all class plaintiffs at key depositions of major defendants in a large RICO action against Lloyd's of London syndicates filed in the United States District Court for the District of New Jersey. Mr. Jordan has also held leadership roles in several environmental class actions.

Mr. Jordan served a two-year term as law clerk for the Honorable Raymond L. Erickson, United States Magistrate Judge for United States District Court, District of Minnesota, with chambers in Duluth. He has presented on civil procedure issues at bar association seminars and has been published by Philadelphia's The Legal Intelligencer, with commentary on recent United States Supreme Court decisions.

### C. Plaintiffs Have Provided a Detailed Accounting of the Work Performed Which Satisfies Local Rule 54-14.

In their supplemental Motion for Fees, Plaintiffs addressed the Court's request to provide a reasonable itemization and description of the work performed by organizing the work performed into seven discrete tasks. Tasks 2, 3, and 4 relate to drafting the Application for an Order to Show Cause, drafting the reply, and preparing for argument, respectively. Tasks 5 and 6 relate to drafting the Motion for Fees and the Reply, respectively. Task 7 relates to drafting the Renewed OSC Motion. Plaintiffs believe the detail provided in the Supplemental Motion speaks for itself. Each attorney that helped draft a particular filing is included and their hours provided.

Plaintiffs provide additional detail regarding Task 1, which includes efforts to obtain Dominance's compliance with the Court's Orders over an extended period. In the Supplemental Motion, Plaintiffs described individual categories of work involved in seeking Dominance's compliance with the Court's Orders, but did not detail each task by attorney and hours worked. That detail is provided below. All of this work was necessary and required. A brief description of each of the categories follows.

| **Task 1 Detail** | **Time Period** | **Saveri** | **Rayhill** | **Jordan** | **Moradi** |
|---|---|---|---|---|---|
| Internal Coordination Strategy | *Throughout* | 3.1 | 1.2 | 2 | 1.4 |
| Scheduling Order Negotiation | 9/25–10/25 | 0 | 4.2 | 6.3 | 5.9 |
| Court Communications | 10/25 | 0 | 0 | 0 | 0.3 |
| Custodial Device Negotiation And Research | 10/25–1/25; 6/26 | 0 | 4.1 | 0.1 | 0.5 |
| Compliance With Scheduling Order | 11/25–1/26 | 0.5 | 1 | 2.1 | 3.3 |
| Enforcement Of OSC Order | 3/26–7/26 | 7.2 | 14.3 | 5.8 | 3 |
| Prep For Meet And Confer | 9/25–1/26 | 1.6 | 4.2 | 3.4 | 0 |
| **TOTAL** | | **12.4** | **29** | **19.7** | **14.4** |

The categories include the following:

**Internal coordination strategy**: This includes internal meetings and communications among the Plaintiffs' attorneys to discuss case strategy relating to obtaining Dominance's discovery. These communications occurred throughout the period running from September 2025 through July 2026.

**Negotiation of scheduling order**: This includes communications and meet-and-confers with Dominance from September 2025, when the Court ordered the Parties to negotiate a proposed scheduling order setting deadlines for certain milestones (ECF No. 245), running through October 13, 2025, when the Parties submitted the Proposed Joint Scheduling Order for the Court's approval. ECF No. 265.

**Court communications**: This refers to one instance in October 2025 inquiring about the status of proposed orders pending before the Court.

**Custodial device negotiation and research**: This category includes communications and meet-and-confers between the parties relating to Plaintiffs' attempts to identify and secure the mobile devices of custodians Firdaws Khalim and Terrell Hunsinger Jr., whom Counsel had identified as being in possession of discoverable documents and information. These efforts took place primarily in October and November 2025, and again in June 2026. Dominance appears to have not maintained them.

**Compliance with scheduling order**: Plaintiffs made persistent efforts to obtain Dominance's compliance with the production deadlines set forth in the Scheduling Order throughout the months of November and December 2025 and January 2026, including emails that went unanswered for weeks despite deadlines in the Scheduling Order that were being missed. On January 5, 2026, Dominance informed Plaintiffs that they would not be producing the documents the Court had ordered them to produce in its August 29, 2025 Minute Order.

**Enforcement of OSC Order**: On March 9, 2026, the Court issued its minutes from the March 3, 2026 hearing on Plaintiffs Application for an Order to Show Cause why Third Party Dominance MMA, LLC Should not be Held In Contempt For Defying The Court's Prior Order and other issues. The Court granted in part Plaintiffs Show Cause Application, after which Plaintiffs engaged in a series of meet-and-confers and communications with Dominance attempting to gain

their compliance. These efforts lasted from March 9, 2026 through July of 2026.

**Preparation for meet and confer**: This category refers to review of documents and communications in preparation for meet and confers with Dominance. These took place throughout the period running from August 29, 2025 through July 31, 2026.

Plaintiffs' attorneys Itak Moradi, Kevin Rayhill, and T. Brent Jordan were primarily responsible for negotiations and communications with Dominance, with guidance from Mr. Saveri. They worked cooperatively to share the workload and cover for one another when duties in other cases or with a different third party prevented one of the attorneys from participating. For written work product, typically one attorney would draft a communication of other document and seek input and revisions from one or both of the others, as well as Mr. Saveri. The shared duties included drafting filings and correspondence, meeting and conferring telephonically, performing legal research, and strategizing internally amongst themselves and with Mr. Saveri or, infrequently, with other co-counsel.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court order the payment of attorneys' fees and expenses in the amount of $216,317.68.

Dated: November 13, 2026

Respectfully submitted,

*/s/ Joseph R. Saveri*
Joseph R. Saveri

Joseph R. Saveri (*pro hac vice*)
Christopher K.L. Young (*pro hac vice*)
Kevin E. Rayhill (*pro hac vice*)
Itak Moradi (*pro hac vice*)
T. Brent Jordan (*pro hac vice*)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone:(415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
krayhill@saverilawfirm.com
imoradi@saverilawfirm.com
tbjordan@saverilawfirm.com

Eric L. Cramer (admitted *pro hac vice*)
Michael Dell'Angelo (admitted *pro hac vice*)
Patrick F. Madden (admitted *pro hac vice*)
**BERGER MONTAGUE, P.C.**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
ecramer@bm.net
mdellangelo@bm.net
pmadden@bm.net

Joshua P. Davis (admitted *pro hac vice*)
**BERGER MONTAGUE, P.C.**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 906-0684
Facsimile: (215) 875-4604
jdavis@bm.net

Benjamin D. Brown (admitted *pro hac vice*)
Richard A. Koffman (admitted *pro hac vice*)
Daniel H. Silverman (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Avenue, N.W., Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408 4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
dsilverman@cohenmilstein.com

W. Joseph Bruckner (admitted *pro hac vice*)
Brian D. Clark (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4001
Facsimile: (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

Kyle Pozan (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
1165 N. Clark Street, Suite 700
Chicago, IL 60610
Telephone: (612) 339-6900
kjpozan@rlocklaw.com

*Counsel for Plaintiffs Kajan Johnson and Clarence Dollaway and the Proposed Class*

Michael J. Gayan
**CLAGGET & SYKES**
4101 Meadows Lane, Suite 100
Las Vegas, NV 89107
Telephone: (702) 333-7777
Facsimile: (702) 655-3763

*Liaison Counsel for Plaintiffs Kajan Johnson and Clarence Dollaway and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on November 13, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*<u>/s/ Joseph R. Saveri</u>*
Joseph Saveri
SAVERI LAW FIRM, LLP