# EXHIBIT 3

BERGER | MONTAGUE

MICHAEL DELL'ANGELO
EXECUTIVE SHAREHOLDER & GENERAL COUNSEL
d 215.875.3080 m 610.608.8766 mdellangelo@bm.net

November 18, 2026

**VIA Email**
Sam Cleveland
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue, 9th Floor
New York, NY 10016

Re: *Johnson v. Zuffa, LLC*, Case No. 2:21-cv-01189 (D. Nev.); Response to Endeavor's October 30, 2026 Letter Regarding Plaintiffs' Responses to Endeavor's Discovery Requests

Dear Sam:

I write in response to your October 30, 2026 letter concerning Plaintiffs' October 15, 2026 responses and objections to Endeavor Group Holdings, Inc.'s ("Endeavor") First Set of Requests for Admission (Nos. 1–8) (the "RFAs"), Second Set of Requests for Production (Nos. 2–7) (the "RFPs"), and Second Set of Interrogatories (Nos. 3–5) (the "Interrogatories"), and concerning the parties' October 23, 2026 meet and confer.

Please explain the purpose for Endeavor's pursuit of its foregoing discovery requests and its subsequently served discovery requests. Specifically, please clarify what, if any, proper purpose Endeavor believes that discovery has and why it does not unreasonably and vexatiously multiply the proceedings. Absent an appropriate explanation, for the reasons stated below, Plaintiffs will not respond to these requests further.

As you know, Endeavor has repeatedly requested that Plaintiffs in *Johnson, Davis,* and *Cirkunovs* (the "UFC Litigation") dismiss Endeavor as a party. In response to Endeavor's requests, on October 26, 2026, counsel for Endeavor and Plaintiffs held a call during which Plaintiffs indicated that they were prepared to dismiss Endeavor and planned to withdraw or substitute Mr. Johnson as a Named Plaintiff. Counsel next discussed the dismissal of Endeavor and Mr. Johnson on November 3, 2026. On November 9, 2026, the parties again discussed Plaintiffs' proposed dismissal of Endeavor and the dismissal or substitution of Mr. Johnson. Counsel for Endeavor conveyed that Endeavor objected to the dismissal of Mr. Johnson and would not consent to disclosing to the Court at the November 12, 2026 hearing the terms the parties had discussed regarding Plaintiffs' proposed dismissal of Endeavor. On

November 10, 2026, Plaintiffs filed their Motion to Substitute Gray Maynard for Kajan Johnson as a Named Plaintiff and for Leave to File Second Amended Complaint (ECF No. 856) (the "Motion to Substitute"). That same day, Plaintiffs sent counsel for Endeavor a draft Stipulation of Dismissal pursuant to Rule 41, without a Rule 408 designation. On November 11, 2026, counsel for Plaintiffs wrote to counsel for all parties to request a meet and confer to discuss the suspension of Mr. Johnson's discovery obligations considering the pending Motion to Substitute.

To date, Endeavor has failed to respond to Plaintiffs' request for a meet and confer. Nor has Endeavor provided a substantive response to Plaintiffs' proposed stipulation dismissing Endeavor. And at the November 12, 2026 hearing, Endeavor stated its objection to the dismissal of Mr. Johnson. Rather than secure its requested dismissal, Endeavor has inexplicably chosen to continue pursuing the foregoing discovery requests, to serve a wave of new discovery primarily directed to Mr. Johnson, and to send a discovery letter, all in under two weeks. For example, on October 23, 2026, Endeavor served its Third Set of Requests for Production on Plaintiffs. On October 30, 2026, Endeavor sent the aforementioned letter pursuing its earlier discovery requests. And on November 4, 2026, Endeavor served its Second Set of Requests for Admission on Plaintiffs, including over 100 requests.

In contrast to the substantial discovery burdens that Endeavor has sought to impose on Plaintiffs generally and Mr. Johnson in particular, on November 16, 2026, counsel for Endeavor requested a two-week extension to respond to Plaintiffs' recently served Requests for Admission due November 20 and November 23, stating "[t]hese are quite a heavy lift for my client that I would like to avoid if we will be dismissed soon." (November 16, 2026 email from M. Shah to M. Dell'Angelo.) Tellingly, Endeavor did not propose that Plaintiffs should be afforded reciprocal relief from their obligations to respond to Endeavor's far more extensive discovery requests considering the likelihood that Endeavor will be dismissed soon.

Considering the procedural posture, we can only conclude that Endeavor is not pursuing this discovery for a proper purpose and is resisting the substitution of Mr. Johnson and its own dismissal from this action to unreasonably and vexatiously multiply the proceedings. Even if Endeavor's actions were for a proper purpose, its letter omits several points discussed during the meet and confer, and this letter addresses those omissions. This letter sets out Plaintiffs' positions on each issue you raise, along with proposals for resolving them without the need for motion practice.

## I. Requests for Admission

**RFA Nos. 1–8.** Your letter calls Plaintiffs' responses "not credible" and asserts that the information sought is "unambiguously within Plaintiffs' knowledge." You are

wrong. Rule 36(a)(4) expressly permits a responding party to state that it lacks knowledge or information sufficient to admit or deny when, after reasonable inquiry, the information it knows or can readily obtain is insufficient. That is the situation here, for three reasons.

*First*, the RFAs are not limited to the Named Plaintiffs' own experiences. Only RFA Nos. 1 and 2 concern Plaintiffs' own promotion agreements. RFA Nos. 3 through 8 ask whether Plaintiffs are "aware of any instance" in which Endeavor engaged in specified conduct with respect to *any* MMA athlete over the entire class period. For example, they ask whether Endeavor "influenced, directed, approved, reviewed, or participated in" any agreement between any UFC athlete and any other Defendant (RFA No. 5), or "set, approved, or made any decision regarding" the compensation paid to any athlete for any UFC bout (RFA No. 6). Those requests concern Endeavor's internal conduct, not facts within the Named Plaintiffs' personal knowledge. Moreover, Endeavor's own Instruction No. 3 defines the knowledge Plaintiffs must draw on to include information held by their counsel, experts, and consultants. Plaintiffs' "awareness," as Endeavor has defined it, therefore depends on the discovery record, which is far from complete.

*Second*, at the time of Plaintiffs' responses, that record was incomplete largely because Endeavor's own production was incomplete. As you know, Endeavor vigorously resisted producing documents and delayed its production. The timing of Endeavor's production relative to service of its RFAs is a function of Endeavor's litigation conduct. Indeed, as Plaintiffs explained in their responses, Endeavor had not then substantially completed its document production. Regardless, the information that would allow Plaintiffs to admit or deny these requests is in Endeavor's possession: what Endeavor did, through whom, and when. Although the deadline for Endeavor to substantially complete its document production has since recently passed, Plaintiffs are still reviewing that production, which Plaintiffs received barely two weeks ago. Any assessment of whether Endeavor's production is complete, and of what it shows about Endeavor's role, is subject to that review, and Plaintiffs reserve all rights with respect to any deficiencies they identify.

*Third*, every RFA turns on the defined term "ENDEAVOR," which includes "all persons . . . acting or purporting to act on Endeavor Group Holdings, Inc.'s behalf, including managers, agents, [and] representatives." As Plaintiffs' objections explain, it is unclear whether that definition reaches conduct Endeavor undertook through Zuffa, LLC, TKO Operating Company, LLC, and the UFC. Plaintiffs allege that Endeavor has owned and controlled those entities since it acquired Zuffa in August 2016. Your letter does not address this ambiguity, and the answer to nearly every RFA depends on it. For example, whether a Named Plaintiff "entered into a PROMOTION AGREEMENT with

ENDEAVOR" (RFA No. 1) depends on whether a promotion agreement with Zuffa, entered while Zuffa was owned and controlled by Endeavor, counts as an agreement with "ENDEAVOR." Plaintiffs made this point clear during the parties' meet-and-confer teleconference, but Endeavor's letter ignores the issue.

**RFA No. 6.** Your letter does not separately address RFA No. 6 or Plaintiffs' objection that it seeks information that is the subject of expert testimony. As Plaintiffs explained during the meet and confer, that objection is not the sole basis for Plaintiffs' response. The request is also compound, vague, and premature for the reasons discussed above. Having considered Endeavor's position, Plaintiffs maintain the expert-discovery objection to the extent RFA No. 6 would require Plaintiffs to address the causes or amount of compensation suppression. In any event, as Plaintiffs noted during the meet and confer, withdrawing that objection would not change Plaintiffs' response.

**RFA No. 7.** Your letter states that Plaintiffs "purport not to understand the meaning of the word 'retaliate.'" That characterization is imprecise. Plaintiffs objected that "retaliated" is vague and ambiguous as used in RFA No. 7, and that the request calls for a legal conclusion about what conduct constitutes retaliation. Thus, it is not that Plaintiffs "purport not to understand the meaning of the word 'retaliate,'" but rather that Endeavor has failed to define it, leaving Plaintiffs without the ability to ascertain the meaning in the RFA. During the meet and confer, you stated that Endeavor intends the term's ordinary dictionary meaning, while also stating that Endeavor was using the term as Plaintiffs use it in the Amended Complaint. Those descriptions conflict. You also stated that you would take back the question of whether Endeavor could provide further clarification. Your letter cites passages from the Amended Complaint, each describing retaliation by "the UFC." *See* Am. Compl. ¶¶ 104, 107; *id.* at 32. RFA No. 7, by contrast, asks about retaliation by "ENDEAVOR," which runs into the problem with the definition of "ENDEAVOR" described above. If Endeavor (i) confirms that it uses "retaliate" in RFA No. 7 in the same sense as the Amended Complaint uses it as to the UFC, and (ii) provides the clarification of "ENDEAVOR" requested above, Plaintiffs will not decline to respond to RFA No. 7 on the ground that "retaliate" is vague. However, Plaintiffs will require a sufficient period to review Endeavor's recent document productions to determine whether any bear on the issue before providing a supplemental response. Plaintiffs' remaining objections to RFA No. 7 are preserved.

## II. Requests for Production

Your letter asks Plaintiffs to confirm whether they will produce all responsive, non-privileged documents, or instead will withhold documents based on their non-privilege objections. Plaintiffs will comply with Rule 34(b)(2)(C). As to Mr. Johnson specifically, the Motion to Substitute is pending, and Endeavor has not responded to

Plaintiffs' request to meet and confer regarding the suspension of Mr. Johnson's discovery obligations. Absent agreement, Plaintiffs intend to move for a protective order and reserve the right to seek broader relief regarding discovery generally and as to Endeavor. To the extent this discovery proceeds as to the remaining Plaintiffs and Endeavor remains a party, Plaintiffs will produce responsive, non-privileged documents in their possession, custody, or control that are located after a reasonable search. With that production, Plaintiffs will confirm in writing whether any responsive documents have been withheld based on an objection and, if so, identify the objection, as Rule 34(b)(2)(C) requires.

Two further points. First, as stated in Plaintiffs' responses, Plaintiffs will not reproduce documents that Defendants themselves produced to Plaintiffs. That is not withholding documents based on an objection; it simply avoids needless duplication. Second, several of the RFPs seek documents that, by their nature, are primarily in Defendants' files. One example is documents reflecting Endeavor's role in negotiating, executing, or approving agreements between the UFC and its athletes. Plaintiffs' objection that such documents are in Defendants' possession does not mean that Plaintiffs are withholding responsive documents in their own possession, custody, or control.

## III. Interrogatories

Your letter asserts that the "appropriate time" for Plaintiffs to answer Interrogatory Nos. 3–5 is now. Plaintiffs disagree. As explained above, Plaintiffs question Endeavor's motives in pursuing this discovery and do not believe that any discovery should proceed, at a minimum, as to Mr. Johnson until the Court resolves the pending Motion to Substitute. Considering the circumstances, the "appropriate time" to answer Endeavor's contention interrogatories is not now. Even setting timing aside, these are contention interrogatories in the most literal sense. Interrogatory No. 3 asks Plaintiffs to identify "each and every specific act" Endeavor took in furtherance of the alleged scheme, including dates, individuals involved, and a detailed description of each act. Interrogatory No. 4 asks for "all facts, including all persons, documents, and information," supporting the allegation that Endeavor independently participated in the scheme. Interrogatory No. 5, which your letter does not mention, asks for all facts showing that Endeavor caused or contributed to the suppression of fighter compensation, including the amount attributable to Endeavor. Rule 33(a)(2) expressly provides that the Court may order that such an interrogatory "need not be answered until designated discovery is complete," and courts in this Circuit routinely defer contention interrogatories until substantial discovery has occurred. *See, e.g.*, *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985); *United Ass'n Nat'l*

*Pension Fund v. Carvana Co.*, No. CV-22-02126-PHX-MTL, 2026 WL 2979494 (D. Ariz. Oct. 5, 2026).

Deferral is especially warranted here. Interrogatory Nos. 3 and 4 seek details of Endeavor's own conduct, including the acts, dates, and individuals involved. That information is in Endeavor's knowledge and documents, and to the extent that information appears in Endeavor's recent productions, Plaintiffs require sufficient time to review and analyze those productions. Endeavor's position, which would require Plaintiffs to identify "each and every" such act before Plaintiffs have completed their review of Endeavor's production, would yield an incomplete answer that Endeavor would later seek to treat as a limit on Plaintiffs' case. Interrogatory No. 5's demand for "the amount attributable to Endeavor" is a damages-apportionment question that is properly the subject of expert discovery.

Plaintiffs did not suggest during the meet and confer that their obligation to supplement under Rule 26(e) excuses them from answering. Subject to the foregoing, Plaintiffs' position is that these interrogatories should be answered, if at all, once the record allows a meaningful response. To that end, if Endeavor remains a party, Plaintiffs anticipate that they will serve responses to Interrogatory Nos. 3 and 4 shortly after the close of discovery. Likewise, if Endeavor remains a party, Plaintiffs will respond to Interrogatory No. 5 in accordance with the schedule for expert discovery.

***

Plaintiffs remain available to meet and confer further on any of these issues. Nothing in this letter waives any of Plaintiffs' objections, rights, or positions, all of which are expressly reserved.

Sincerely,

*/s/ Michael Dell'Angelo*

Michael Dell'Angelo