WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

[Additional counsel listed on signature page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, TKO OPERATING COMPANY, LLC f/k/a ZUFFA PARENT LLC (d/b/a ULTIMATE FIGHTING CHAMPIONSHIP and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**ZUFFA, LLC AND TKO OPERATING COMPANY, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT AND DISMISS PLAINTIFF KAJAN JOHNSON AND ADD GRAY MAYNARD AS A PLAINTIFF** |

# TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

I. BACKGROUND ..... 4

A. Johnson Initiated This Lawsuit As The Lead Named Plaintiff And Has Prosecuted It For Over Five Years ..... 4

B. Johnson's UFC Career ..... 4

C. Plaintiffs Pursued Extensive Discovery From Defendants In Johnson's Name ..... 5

D. Johnson Has Resisted Producing Discovery Responsive And Relevant To The Merits Of Plaintiffs' Claims And Defendants' Defenses ..... 5

E. While Continuing To Resist Production Of Relevant Discovery On The Merits, Johnson Admits To The Loss Of His Signal Data And Other ESI In August 2026; Defendants Notice Johnson's Deposition ..... 7

F. The Court Suggests Plaintiffs Could "Strategically" Change Named Plaintiffs ..... 7

G. Plaintiffs File A Motion To "Substitute" Gray Maynard For Kajan Johnson ..... 8

H. Plaintiffs Seek A Protective Order To Prevent Johnson From Complying With Discovery Obligations ..... 9

I. The Record Contains No Evidence That Defendants' Discovery Requests Interfere With Johnson's Family or Business Obligations ..... 9

II. LEGAL STANDARDS ..... 9

III. ARGUMENT ..... 10

A. Plaintiffs' Motion Is A Rule 41(a)(2) Dismissal In Disguise ..... 11

B. Allowing Johnson To Withdraw Would Cause Defendants Significant Legal Prejudice ..... 13

i. Plaintiffs' Discovery-Burden Rationale Is Pretext ..... 14

ii. Discovery Specific To Johnson Is Relevant To Class Certification ..... 16

iii. Johnson's Evidence Undercuts Plaintiffs' Market Definition ..... 16

iv. Johnson's Businesses Are Relevant To Procompetitive Benefits And Damages ..... 17

v. Only Johnson Can Answer For His Spoliation ..... 17

vi. Johnson Lives In Canada, And Adding Maynard Would Restart Discovery ..... 18

C. Even If The Court Looks Past Rule 41(a)(2), Plaintiffs Cannot Show Good Cause Under Rule 16(b)(4) Or Excusable Neglect Under LR 26-3 ..... 18

i. Plaintiffs Were Not Diligent ..... 19

ii. Plaintiffs' Failure To Address Excusable Neglect Is Independently Fatal ..... 20

D. Rule 21 Does Not Give Plaintiffs A Separate Or Easier Path ..... 20

E. Leave Should Be Denied Even Under Rule 15(a) ..... 21

F. At A Minimum, The Court Should Condition Any Withdrawal On Johnson's Completion of Discovery And An Opportunity To Take Discovery Of Maynard ..... 22

IV. REQUEST FOR RELIEF ..... 24

CONCLUSION ..... 24

## INTRODUCTION

Plaintiffs' motion to "substitute" a named plaintiff is a thinly veiled effort to excise evidence from the record that eviscerates Plaintiffs' class certification and merits case. Plaintiffs' motion is brought under the wrong rule because Plaintiffs know that they cannot show the good cause required to amend a complaint after the deadline set in the scheduling order or meet the requirements of Local Rule 26-3 to show excusable neglect. The law is clear that a named plaintiff seeking to leave a class action he commenced with discovery pending is seeking a Rule 41 dismissal. The cases are uniform that in such circumstances the Court must consider the prejudice to the defendants and either deny the motion to amend or condition it on the named plaintiff's compliance with his discovery obligations and potentially paying defendants' costs. Plaintiffs' motion should be denied or conditioned as set forth below.

Kajan Johnson has been the lead named Plaintiff prosecuting this suit against the UFC for over five years. Yet it was not until two weeks ago, with Johnson facing a deposition, five motions to compel relevant evidence that undermines the merits of this case (and that should have been produced years ago), and having to account for his recently admitted spoliation of evidence, that his counsel first sought to withdraw him as a named plaintiff.

The reality is that Plaintiffs do not want facts surrounding Johnson's career and conduct in this litigation in the record at class certification, summary judgment, or trial. Plaintiffs allege that Johnson is typical of the class, yet the contractual provisions they challenge as exclusionary were never applied to him. The UFC released him, leaving him free to sign with any other promoter. Taking Plaintiffs' allegation of typicality at face value, Johnson's experience demonstrates that the challenged conduct did not operate uniformly across the class. And a supposedly typical fighter who was never "locked in" undermines Plaintiffs' ability to establish antitrust impact through common proof. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–66 (9th Cir. 2022) (en banc). Johnson's UFC career fighting outside the United States, his post-UFC career, and his public statements—including that the "UFC is completely global . . . . There are people from everywhere, everywhere in the world that you're competing against"—further undermine Plaintiffs' market definition, claims of common injury, and supposed damages.

Dkt. No. 798-2. Johnson's admissions are critical evidence for a jury to evaluate. *Fraley v. Facebook Inc.*, 2012 WL 555071, at *3 (N.D. Cal. Feb. 21, 2012) ("If anything, the fact that [a named plaintiff] may soon be dismissed from the lawsuit makes even more relevant" discovery into allegations "that will be a part of the record in this case.").

An untimely motion seeking to amend the complaint and drop the lead named plaintiff is not a tool for scrubbing the record of merits evidence, least of all at this late stage, when doing so would plainly prejudice Defendants. Plaintiffs incorrectly invoke Rule 21, but they ask to amend the Complaint almost two-and-a-half years after the deadline in the scheduling order. Moreover, what they seek—to relieve Johnson of his role as a named plaintiff while allowing him to remain a putative class member—is effectively a voluntary dismissal without prejudice under Rule 41(a)(2), available only "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2); *Sherman v. Yahoo! Inc.*, 2015 WL 473270, at *2 (S.D. Cal. Feb. 5, 2015); *Opperman v. Path, Inc.*, 2015 WL 9311888, at *1–2 (N.D. Cal. Dec. 22, 2015). The Ninth Circuit affirmed the denial of a Rule 41(a)(2) dismissal that was a "thinly veiled attempt[] to avoid discovery" after years of litigation in *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996). Moreover, "[a] named plaintiff simply cannot avoid the obligation to sit for a deposition merely by filing a request to withdraw," *Gallegos v. Atria Mgmt. Co.*, 2016 WL 11824850, at *9 (C.D. Cal. Nov. 14, 2016). Here, what Plaintiffs seek is worse than an ordinary voluntary dismissal. A plaintiff who voluntarily dismisses his claim gives up both the burdens *and* the benefits of litigation. Johnson would give up only the burdens. He would avoid testifying and producing merits discovery central to Defendants' defense, yet still share in any class recovery. Mot. at 7.

Under the appropriate standards, the dispositive question is: what prejudice would Defendants suffer if Johnson were dismissed or withdrawn as a plaintiff? Where a plaintiff seeks dismissal while merits discovery directed to him remains outstanding, courts deny dismissal or condition it on the completion of that discovery to avoid the prejudice that would otherwise result. *See Exxon Valdez*, 102 F.3d at 432. The prejudice here would be manifest. Granting the Motion would deprive Defendants, five years into this litigation, of highly probative merits testimony and evidence that Johnson has wrongly withheld for years, including:

- the fact that none of the challenged UFC contract provisions, including the Champion's Clause, Right to Match, and Retirement Clause, was ever applied to Johnson;
- Johnson's statements confirming a global combat sports market, which undercut Plaintiffs' attempt to limit the relevant market to North America; and
- evidence of Johnson's extensive post-UFC career, including how he has monetized, and continues to market, his UFC affiliation.

Plaintiffs' discovery-burden rationale is pretext and unsupported by the record. Johnson's tune changed only after his spoliation came to light and because he is now being called to account for it. It would be "simply unfair to allow [Johnson] to walk away from [his discovery] obligations when it appears that [he] has information pertinent to the case that [he] initiated and that defendant[s] must continue to defend." *Opperman*, 2015 WL 9311888, at *3 (citation omitted). Plaintiffs offer no evidence, not even a declaration from Johnson, nor do they cite any record evidence to support *counsel's claim* that his discovery obligations have become unbearable. That claim surfaced only after the Court suggested "swapping" Johnson as a named plaintiff given his spoliation and "the headlight of the train coming."

Plaintiffs' proposal to add Gray Maynard only compounds the prejudice. Johnson lives in Canada; discovery Defendants do not get from him now is discovery they will likely never get. No discovery has been taken from Maynard, and the parties jointly proposed a March 1, 2027 close of fact discovery. Adding him now would force Defendants to start discovery from scratch on a new named plaintiff when it has taken Defendants years to pry minimal discovery out of Johnson. Mot. at 2, 8, 10. *See, e.g.*, *Osakan v. Apple Am. Grp.*, 2010 WL 1838701, at *5 (N.D. Cal. May 5, 2010) ("allowing Plaintiffs to add new plaintiffs at this juncture would require the Defendants to conduct new and/or additional discovery. . . . The need to conduct additional discovery is considered prejudicial.").

The Motion also fails procedurally. First, Rule 21 addresses misjoinder and is not a proper vehicle for seeking to dismiss a named Plaintiff and add a new one. *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1215 (9th Cir. 2018) ("'Nothing on the face of Rule 21 allows substitution of parties.'" (quoting *Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 191 n.13 (9th Cir. 1989)). Second, the deadline to add parties passed on June 17, 2024, nearly 29 months before Plaintiffs filed this Motion. Plaintiffs therefore must show good cause under Rule 16(b)(4),

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir. 1992), and excusable neglect under Local Rule 26-3. They can show neither. Under Rule 16, diligence is paramount, and a lack of diligence ends the good cause inquiry. *Id.* at 609. This is especially true where a party seeks to add a new named plaintiff five years into the case. *See In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (finding no good cause where the course of litigation "should have alerted plaintiffs to their named plaintiff inadequacies"). Plaintiffs also ignore Local Rule 26-3 entirely and never even mention excusable neglect, much less attempt to show it. That omission alone is fatal to their bid to add Maynard. *See Anderson v. United States*, 2026 WL 1079648, at *1, *3, *6 (D. Nev. Jan. 28, 2026) (moving party's failure to address excusable neglect independently required denial of motion to amend).

The Court should deny the Motion. Alternatively, it should condition any withdrawal on Johnson sitting for his noticed deposition and completing outstanding discovery, expedited discovery of Maynard, and Plaintiffs bearing Johnson-specific fees and costs, with Johnson remaining a named plaintiff until those conditions are met.

# I. BACKGROUND

## A. Johnson Initiated This Lawsuit As The Lead Named Plaintiff And Has Prosecuted It For Over Five Years

Johnson filed this action on June 23, 2021, and has been the lead named plaintiff since. Dkt. No. 1; Dkt. No. 118; Axelrad Decl. ¶ 4. Over the next five years, Johnson traveled from Canada to many hearings in Las Vegas, while Plaintiffs pursued extensive discovery from Defendants in his name. *Id.* ¶ 5.

## B. Johnson's UFC Career

Johnson competed in the UFC from February 26, 2014 to October 10, 2018. *Id.* ¶ 7. Each of Johnson's four class-period bouts took place outside the United States—specifically in Canada, England, and Russia. *Id.* None of his four opponents was from the United States. *Id.* The contract provisions Johnson challenges, including the Champion's Clause, Right to Match, and Retirement Clause, were never applied to Johnson. *Id.* ¶ 8. Upon release, the UFC did nothing to prevent him from signing with another promoter. *Id.* Johnson subsequently competed as a professional boxer

(as recently as 2025), *id.* ¶ 9, Ex. 1, and he now trains athletes in multiple combat sports disciplines. Dkt. No. 709-10. Today, Johnson owns a gym, sells a "Pro Fight Guide" which he markets as "the most in-depth professional fight guide" and attributes its creation to "***UFC Veteran Kajan Johnson.***" Dkt. No. 798-20. Johnson also runs a YouTube channel with 116,000 subscribers featuring many videos about the UFC. Dkt. Nos. 709-10; 798-2; 798-9; 798-10; *see* Mot. at 2. His website touts that he "spent years fighting at the highest level in the UFC." Dkt. No. 798-9. In a video titled "The Truth About Being a Pro UFC Fighter In 2026," Johnson stated that the "***UFC is completely global*** . . . . ***There are people from everywhere, everywhere in the world that you're competing against.***" Dkt. No. 798-2 (emphasis added). In the same video, he acknowledged that in the UFC "***you can make crazy amount of money in a very short period of time***," and that "you can have one fight and in that one fight, you make millions of dollars." *Id.* (emphasis added). He also admitted that after fighting in the UFC, "[i]t's so much easier to do business." *Id.*

### C. Plaintiffs Pursued Extensive Discovery From Defendants In Johnson's Name

Discovery opened on September 22, 2023. Dkt. No. 124 at 2; Mot. at 3. Plaintiffs served 89 requests for production on Zuffa, 77 on TKO, and 94 on Endeavor, plus 25 subpoenas to current and former employees containing 2,410 requests. Dkt. Nos. 274 at 4; 224 at 3; 224-3; 224-4; 327-27 at 2. Zuffa and TKO reviewed tens of millions of pages of documents and have now produced over 1.3 million documents encompassing 6.9 million pages in response to Johnson's discovery efforts. Axelrad Decl. ¶ 10.

### D. Johnson Has Resisted Producing Discovery Responsive And Relevant To The Merits Of Plaintiffs' Claims And Defendants' Defenses

On October 13, 2023, Defendants served their First Set of Requests for Production (RFPs) on Plaintiffs, including Johnson. Dkt. No. 274 at 3. The requests sought, among other things, documents and communications concerning Plaintiffs' services "in connection with any Combat Sport" (RFP No. 4); agreements for Plaintiffs' services as a "coach, trainer, cornerman, or other service provided to any Athlete" (RFP No. 10); income from sources other than fight promoters (RFP No. 13); and publicity materials, internet content, and videos referring to Plaintiffs' UFC

experience or affiliation (RFP No. 25). Dkt. No. 543-13; *see also* Dkt. No. 709 at 5. Defendants defined "communications" to include communications of any kind, including "***electronic communications***," and Plaintiffs did not object to that definition. Dkt. No. 543-13. Plaintiffs declared their production "substantially complete," Dkt. No. 274 at 2, yet Johnson himself produced only 11,522 documents, Axelrad Decl. ¶ 10.

On March 2, 2026, Defendants served a Second Set of RFPs seeking offers from other promoters, agent communications about "potential contracts with the UFC or any other Promoter," endorsement and likeness agreements, and social-media posts about the UFC "or any other promoter." Dkt. No. 543 at 5–7; Dkt. No. 543-14 (RFP Nos. 36–41). Zuffa and TKO also served interrogatories about Johnson's non-UFC income. Mot. at 9; Dkt. No. 856-7. Despite promising to "perform a search for and produce documents," Johnson had produced nothing in response by May 15, 2026. Dkt. No. 543-15; Dkt. No. *543 at 6*.

On June 18, 2026, Plaintiffs disclosed ***for the first time*** the Named Plaintiffs' use of Signal and Telegram, then refused to produce those messages because Defendants' 2023 requests "did not specifically request app communications." Dkt. No. 709-3; Dkt. No. 709-5 at 2.

On May 15, 2026 and August 3, 2026, Defendants moved to compel responses to both sets of RFPs. Dkt. Nos. 543, 709. Defendants moved to compel a full file-system extraction of Plaintiffs' devices and a sworn accounting of their collection and review, Dkt. No. 709 at 5, and filed motions seeking vendor collection reports, carrier records, and litigation-funding materials, Dkt. Nos. 788, 793. The communications at issue include Johnson's messages with other fighters in his Signal "Fight Team Chat." Dkt. No. 616 at 17.

On September 30, 2026, Defendants moved to compel documents responsive to RFP Nos. 10, 13, and 25 from Johnson's website and his Kajabi, YouTube, Instagram, Google Ads, and Meta Ads accounts, including sales, revenue, and subscriber data bearing on fighters' competitive alternatives and Johnson's claimed injury, and Zuffa and TKO subpoenaed Kajabi. Dkt. No. 796 at 1–6; Dkt. No. 832 at 3; Mot. at 10; Dkt. No. 856-11.

Each of these motions seeking to compel plainly relevant, responsive and highly probative discovery was fully briefed before Plaintiffs filed this Motion, and each remains pending.

### E. While Continuing To Resist Production Of Relevant Discovery On The Merits, Johnson Admits To The Loss Of His Signal Data And Other ESI In August 2026; Defendants Notice Johnson's Deposition

Plaintiffs first disclosed Johnson's Signal use on June 18, 2026 and then instructed him to preserve his Signal communications the next day. Dkt. No. 616-18 at 6; Dkt. No. 727-3 at 6. Then, on October 14, 2026, Johnson verified an interrogatory answer stating that he downloaded Signal "on January 28, 2017," Dkt. No. 823-4 at 7, and he began using Signal before filing his Complaint. *See* Dkt. No. 792-5 at 2. However, on April 12, 2026, Johnson reset his iPhone 14, erasing every Signal message he had sent or received since January 2017. Dkt. No. 823-4 at 12.

When Plaintiffs finally attempted to collect Johnson's Signal data on August 6, 2026, the forensic extraction of Johnson's iPhone 14 only recovered Signal messages dating back to April 12, 2026. Dkt. No. 823-4 at 12.

Defendants moved to compel on September 30, 2026, and argued, among other things, that Johnson's spoliation of relevant messages in his Signal "Fight Team Chat" was prejudicial to Defendants. Dkt. No. 796. At the October 9, 2026 hearing, the Court stated that it will "decide the spoliation issue before discovery closes." Dkt. No. 817 at 54:3–5.

On October 28, 2026, Defendants noticed Johnson's deposition for December 10, 2026. Dkt. No. 856-14.

### F. The Court Suggests Plaintiffs Could "Strategically" Change Named Plaintiffs

At the October 9, 2026 status conference, defense counsel noted that they were pursuing discovery into spoliation by Plaintiffs. Dkt. No. 817 at 54:21-56:1. In response, the Court offered:

> Now, I will say one other thing, [counsel], I want to address, is that ***when it comes to named plaintiffs and who's a named plaintiff, that can change***. And so, Mr. Dell'Angelo, one of the things I would be concerned about is we go through all this work, and then you say, "Well, we're going to swap this named plaintiff for another named plaintiff," which you're actually perfectly entitled to do. I'm not saying you don't do that . . . . But if that's something that's going to happen, please don't wait until we've done all of this work on one plaintiff. Now, ***you could strategically make that choice***, but I'm saying if you know that ahead of time, right, fine. But it's also possible, right, that ***you could see, right, you know, the headlight of the train coming and decide to switch***, too. And you're entitled to do that. I just hope we can do that expeditiously if you decide that's what you want to do. Because, again, there – the law is actually very clear about the plaintiffs having flexibility about swapping in and out named plaintiffs and when that happens, actually. But when it comes to spoliation, I just – I would like to have some notice so we don't put in the work if we think that's going to happen.

*Id.* at 56:16–57:13 (emphasis added). Plaintiffs interpreted this to be "the Court's invitation" to move to amend their Complaint. Mot. at 10.

**G. Plaintiffs File A Motion To "Substitute" Gray Maynard For Kajan Johnson**

Plaintiffs filed their Motion on November 10, 2026, nearly 29 months after the June 17, 2024 deadline to add parties.[1] Mot. at 1; *id.* at 8. By then, Johnson had admitted that his April 12, 2026 phone reset erased his Signal messages, and his October 14, 2026 sworn interrogatory answers disclosed the loss of all Instagram messages before October 20, 2023 and all WhatsApp messages before May 5, 2022. Dkt. No. 823-4 at 12–13. Five motions to compel were pending, Dkt. Nos. 543, 709, 788, 793, 796; requests for admission were outstanding; and Johnson's deposition had been noticed for December 10, 2026, Mot. at 6 & Ex. 14.

Plaintiffs ask the Court to withdraw Johnson as a named plaintiff "without prejudice to his rights as a member of the proposed classes," to substitute Gray Maynard in his place, and to grant leave to file a Second Amended Complaint. *Id.* at iii–iv. Plaintiffs describe Maynard as a professional mixed martial artist who "competed in the UFC for more than a decade" and identify two class-period bouts, both in Las Vegas: July 7, 2017 and October 6, 2018. *Id.* at 2. Maynard is not presently a party, and no discovery has been taken from him. Axelrad Decl. ¶ 6; *see* Mot. at 2, 12–13. Plaintiffs state that Maynard "is prepared to promptly respond to written discovery," and claim the discovery Defendants may need from him is "modest." Mot. at 2, 10, 13. The Motion does not address whether Maynard would sit for a deposition, or whether his devices and messaging accounts have been preserved or collected. *See generally id.*

At the November 12, 2026 status conference, Plaintiffs asked the Court to stay all discovery directed to Johnson pending resolution of the Motion, explaining their "expectation" that "one way or another, he'll no longer serve in a representative plaintiff capacity." Dkt. No. 864 at 50:16-51:2. The Court declined to stay Johnson's discovery at that time. *Id.* at 53:24-54:2.

---

[1] Plaintiffs claim to have alerted counsel for Endeavor on October 26, 2026 about their plan to take the Court's suggestion and seek to dismiss Johnson's claims. *See* Mot. at 5–6. Counsel for Zuffa and TKO were not part of the supposed conversation identified by plaintiffs and received no notice before serving Johnson's deposition notice.

**H. Plaintiffs Seek A Protective Order To Prevent Johnson From Complying With Discovery Obligations**

On November 19, 2026, Plaintiffs moved for a protective order staying all discovery directed to Johnson until the Court rules on this Motion, including all requests for admission, his December 10, 2026 deposition, the Kajabi subpoena, and the Johnson-specific portions of the pending motions to compel (Dkt. Nos. 543, 709, 788, 793, 796). Dkt. No. 867 at 1–2, 16–17. Plaintiffs argue that, once withdrawn, Johnson would be an absent class member subject to discovery only on a heightened showing. *Id.* at 12–13.[2]

**I. The Record Contains No Evidence That Defendants' Discovery Requests Interfere With Johnson's Family or Business Obligations**

Plaintiffs' Motion asserts that "[t]he persistent and invasive nature" of Defendants' discovery requests to Johnson "has become a substantial distraction from his ability to care for his young family and run his small business." Mot. at 1, 7. But Plaintiffs offer no evidence to support that assertion. The Motion characterizes Defendants' discovery as "invasive" three times, without identifying any factual basis for that characterization. *Id.* at 1, 7, 11. And although Plaintiffs repeatedly invoke Johnson's "family" and "small business" as grounds for his withdrawal, they cite no declaration or other record evidence establishing that Defendants' discovery requests have interfered with either. *See id.* at iii, 1, 7, 12, 13.

## II. LEGAL STANDARDS

Where a scheduling order sets a deadline for amending pleadings and joining parties, the standards under Rule 16 (not Rule 15) control. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). A schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The good cause inquiry "primarily considers the diligence of the party seeking the amendment," and "[i]f that party was not diligent, the inquiry should end." *Mammoth*, 975 F.2d at 609. The movant bears the burden of establishing diligence.

---

[2] At the November 12, 2026 status conference, Plaintiffs orally sought to stay discovery as to Johnson. Dkt. No. 864 at 50:16–24. The Court stated, "I'm not going to decide that issue until I decide the motion to amend." *Id.* at 53:20–24. Zuffa and TKO oppose a stay of any Plaintiff's discovery obligations, reserve all rights, and will separately respond to Plaintiffs' motion for a protective order.

*Doe v. Boys & Girls Clubs of S. Nev.*, 2025 WL 2161147, at *3 (D. Nev. July 29, 2025).

In this District, a request made after the deadline "will not be granted unless the movant also demonstrates that the failure to act was the result of excusable neglect." LR 26-3; *see Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 764–65 (9th Cir. 2017) (applying former LR 26-4); *Bank of N.Y. Mellon v. Pomeroy*, 2019 WL 1429612, at *7 (D. Nev. Mar. 30, 2019) (Boulware, J.). The Court must address good cause and excusable neglect before reaching leave to amend; Rule 15(a) "becomes relevant only if" those threshold requirements are met. *See Greybill v. Naphcare, Inc.*, 2025 WL 2640205, at *2 (D. Nev. Sept. 12, 2025); *Hillcrest Invs., Ltd. v. Chi. Title Co. of Nev., Inc.*, 2021 WL 4268439, at *3 (D. Nev. Sept. 19, 2021) (Boulware, J.). Under Rule 15(a), prejudice to the opposing party carries "the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

Courts treat a named plaintiff's request to withdraw while remaining a putative class member as a Rule 41(a)(2) motion. *Sherman*, 2015 WL 473270, at *1–2; *Opperman*, 2015 WL 9311888, at *1–2. Under such circumstances, the Court must determine "(1) whether to allow dismissal; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed." *Solano v. Kroger Co.*, 2022 WL 3143352, at *4 (D. Or. May 3, 2022), *report and recommendation adopted*, 2022 WL 3139884 (D. Or. Aug. 4, 2022); *Opperman*, 2015 WL 9311888, at *2. Where the requested dismissal "would not dispose of the entire case," the Court "must consider the effect of the dismissal on other parties to the litigation." *Solano*, 2022 WL 3143352, at *4. Dismissal should be denied, or conditioned, where the defendant shows "plain legal prejudice," meaning "prejudice to some legal interest, some legal claim, [or] some legal argument." *Opperman*, 2015 WL 9311888, at *2 (quoting *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001), and *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996)). "The inability to conduct sufficient discovery for a defense can amount to legal prejudice," *Sherman*, 2015 WL 473270, at *4, and "plaintiffs generally should not be permitted to escape their discovery obligations by moving to withdraw," *Solano*, 2022 WL 3143352, at *4.

## III. ARGUMENT

Plaintiffs did not simply ask that Johnson be permitted to withdraw. They chose to move

to amend the Complaint and add a new named plaintiff nearly 29 months after the deadline to do so. A request to add a party after the scheduling-order deadline must satisfy Rule 16(b)(4)'s good-cause standard and LR 26-3's excusable-neglect requirement, *Mammoth*, 975 F.2d at 607–09; LR 26-3, and Plaintiffs do not even attempt to show excusable neglect. The Motion thus fails at the threshold. And to the extent Plaintiffs seek only Johnson's exit, that request is a Rule 41(a)(2) dismissal that cannot be granted without ensuring Defendants are not prejudiced.

**A. Plaintiffs' Motion Is A Rule 41(a)(2) Dismissal In Disguise**

Though styled as a motion to substitute a named Plaintiff, Plaintiffs effectively seek to voluntarily dismiss Johnson's claims without prejudice. Under Rule 41, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Courts apply that rule when a named plaintiff seeks to withdraw while remaining an absent class member. *Sherman*, 2015 WL 473270, at *1–2; *Opperman*, 2015 WL 9311888, at *1–2. Dismissal "is not automatic," *Dysthe v. Basic Research, LLC*, 273 F.R.D. 625, 628 (C.D. Cal. 2011), and until the Court rules, the plaintiff "remains a named plaintiff," with all of a party's obligations, *Fraley*, 2012 WL 555071, at *2.

The touchstone of the Rule 41(a)(2) inquiry is prejudice to the defendant. Courts find "plain legal prejudice" where dismissal would leave the remaining parties "unable to conduct sufficient discovery" to "adequately defend themselves," *Westlands*, 100 F.3d at 97, and "plaintiffs generally should not be permitted to escape their discovery obligations by moving to withdraw," *Solano*, 2022 WL 3143352, at *4. Accordingly, where a plaintiff seeks dismissal while merits discovery directed to him is outstanding, courts deny the request or condition it on completion of that discovery. *See Exxon Valdez*, 102 F.3d at 432; *Sherman*, 2015 WL 473270, at *4, *7; *Gallegos*, 2016 WL 11824850, at *9. Permitting Johnson to exit without the very discovery *Westlands* identifies as the core of legal prejudice—and without conditions to cure that prejudice—would be a departure from binding Ninth Circuit standards.

Plaintiffs try to avoid Rule 41 through semantics, insisting that Johnson's claims "are not being dismissed" because he is "withdrawing only as a named plaintiff and proposed class representative." Mot. at 7 n.3. That distinction collapses upon inspection. The Court has not

certified a class, and class certification briefing has not begun. *Id.* at 2. Before certification, there is no class. Unnamed members of a proposed but uncertified class are nonparties and the only parties are the named plaintiffs and defendants. *See Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (describing as "novel and surely erroneous" the "argument that a nonnamed class member is a party to the class-action litigation before the class is certified").

Johnson's individual claims are the only claims he has before this Court, and the proposed Second Amended Complaint would remove him from the caption. Mot. at 7 n.3. Once that happens, nothing of Johnson's remains before the Court; his claims "survive" only in that he may share in a recovery if a class is later certified and plaintiffs obtain a judgment in their favor. That is not an alternative to a dismissal without prejudice. It *is* a dismissal without prejudice.

The cases confirm that a named plaintiff cannot use withdrawal to escape discovery. "A named plaintiff simply cannot avoid the obligation to sit for a deposition merely by filing a request to withdraw." *Gallegos*, 2016 WL 11824850, at *9; *accord Opperman*, 2015 WL 9311888, at *4. And in *Exxon Valdez*, the Ninth Circuit affirmed denial of a Rule 41(a)(2) motion that was a "thinly veiled attempt[] to avoid discovery" after defendants "had spent two and a half years and substantial amounts of money to obtain discovery." 102 F.3d at 432–33.

Here, Plaintiffs ask for more than any of those plaintiffs did. A plaintiff who dismisses his claim with prejudice gives up both the burdens and the benefits of the case; Johnson would shed only the burdens. Withdrawal would absolve Johnson from sitting for deposition or answering party discovery—including about his public statements detrimental to Plaintiffs' case and his spoliation of evidence years after suing Defendants. As an absent class member, he could be reached for discovery only on a heightened showing of necessity. *See Dysthe*, 273 F.R.D. at 629. Yet his claims would remain "live," and he would remain positioned to share in any judgment or settlement. Mot. at 7, 11. Meanwhile, Defendants would lose the testimony and discovery of the lead named plaintiff—evidence bearing on the merits of his individual claim and on the merits and certification of the class claims—while still facing those claims.

Rule 41(a)(2)'s requirement of a court order "on terms that the court considers proper" exists to prevent exactly that one-sided exit. And Plaintiffs know Rule 41 applies: before filing,

they represent they raised with Endeavor "dismissing Mr. Johnson under Rule 41." Mot. at 12. They cannot accomplish through Rule 21 what Rule 41 does not allow.

### B. Allowing Johnson To Withdraw Would Cause Defendants Significant Legal Prejudice

Johnson seeks to withdraw after three years of resisting merits discovery and, more recently, discovery into his spoliation. Defendants' October 2023 requests sought his combat-sports work, coaching and training agreements, non-promoter income, and materials referring to his UFC affiliation; their March 2026 requests sought offers from other promoters, agent communications, endorsement agreements, and social-media posts about the UFC "or any other promoter." Plaintiffs declared their production "substantially complete" without producing a single Signal or Telegram message, produced nothing in response to the March 2026 requests before Defendants moved to compel, and that discovery remains the subject of pending motions. *Id*; Dkt. No. 274 at 2.

Meanwhile, the facts Defendants have uncovered on their own—largely from Johnson's public statements—cut directly against Plaintiffs' case. He fought every class-period bout outside the United States, was never subject to the challenged provisions, boxed professionally after his UFC release, has built a business on his affiliation with and career in the UFC, and has told his 116,000 YouTube subscribers that the "UFC is completely global" and that a fighter can make "millions of dollars" in a single UFC bout. Defendants are entitled to confirm those facts through Johnson's documents, his sworn admissions, and his deposition so that the jury can consider the testimony of an allegedly typical member of the putative class.

Because the Motion is, in substance, a Rule 41(a)(2) dismissal, the salient question is what Defendants would lose. The answer is substantial evidence critical to their defense. Before class certification, Defendants are entitled to test the named plaintiffs' claims through party discovery—documents, sworn interrogatory answers, admissions that bind Johnson as a party, and a deposition usable at class certification, summary judgment, and trial. Once Johnson withdraws, Defendants could seek discovery from him, if at all, only as a foreign nonparty and likely only on a heightened showing of necessity. *See Dysthe*, 273 F.R.D. at 629 (discussing heightened standard for absent

class members). The discovery Johnson seeks to escape is not peripheral: it was served in 2023 and March 2026, it is the subject of fully briefed motions to compel, Dkt. Nos. 543, 709, 796, and it goes to market definition, common impact, procompetitive justifications, and damages. Plaintiffs offer no explanation for how Johnson can be relieved of that discovery while retaining the right to recover on the very claims it tests. Allowing Johnson to withdraw now, after he has withheld that discovery, would force Defendants to defend against his claims and the class claims he pleaded without the evidence that most directly undermines them.

**i. Plaintiffs' Discovery-Burden Rationale Is Pretext**

Plaintiffs' *counsel* argue Johnson is withdrawing because Defendants' discovery has become a "distraction" from his family and business, Mot. at 1, 2, 7, 12, 13, but Plaintiffs cite no *evidence* to support that. *See Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("arguments and statements of counsel are not evidence") (citation omitted). Plaintiffs submitted nothing from Johnson himself—no declaration, no affidavit, not a word of sworn testimony explaining his sudden, supposed change of heart. For years, Johnson embraced the role of named plaintiff, traveling from Canada to Las Vegas for numerous hearings in this case. Axelrad Decl. ¶ 5. He repeatedly and publicly expressed opinions on his perceived success at litigating his claims. *See id.* Ex. 2 ("UFC is DONE-ZO bro"); Ex. 3 ("I'm telling you, this next lawsuit, which is Johnson versus Zuffa, yes, that Johnson, Kajan Johnson . . . we're gonna win"); Ex. 4 ("this ufc lawsuit is a goddamn rollercoaster"; "I cannot wait to see what [Sean Shelby] has to say").

And the discovery Plaintiffs characterize as invasive is the same type of discovery Plaintiffs have demanded from Defendants, directed at the same subjects: the merits of the case, market definition, contracts, and alleged injury, as well as the preservation and loss of ephemeral messages. *Id.* ¶ 11. Johnson was perfectly fine with this discovery while he was issuing it.

The reality is that Johnson's tune suddenly changed because he was facing a deposition that would confirm his statements on the merits and which would address his expansive spoliation. As noted above, the discovery which would have otherwise led to the disclosure of Johnson's widespread apparent spoliation was issued in 2023, not in 2026. Only in 2026, after Defendants

pressed on irregularities in his production, did Johnson disclose that he used Signal, that no one had told him to preserve those messages until June 2026, and that he had lost years of Signal, Instagram, and WhatsApp data. The discovery Plaintiffs now complain about simply asks him to confirm the scope of that loss. Mot. at 6. That, not any supposed discovery burden, is the real reason Johnson now seeks to withdraw.

Nor was the recent discovery "late." It is a product of Johnson's own belated disclosures, not any delay by Defendants. The Court observed at the November 12 status conference that many requests directed to Johnson came "in the past month," Dkt. No. 864 at 53:11–13, but that discovery could not have been served earlier. Johnson reset his iPhone 14 and erased his Signal data on April 12, 2026. Plaintiffs did not disclose his Signal use until June 18, 2026; a forensic extraction on August 6, 2026 recovered Signal messages only from April 12, 2026 forward; and Johnson then gave three different sworn accounts of his messaging history in roughly two months, the last of which, on October 14, 2026, disclosed for the first time the loss of all Instagram messages before October 20, 2023 and all WhatsApp messages before May 5, 2022. Defendants cannot take discovery into spoliation that has not been disclosed. Each round of discovery followed the disclosure that prompted it, as Endeavor's counsel explained at the November 12 status conference. Dkt. No. 864 at 55:18–56:11.

Plaintiffs cannot turn the timing and scope of Johnson's own spoliation into a shield. Because Johnson's evidence loss occurred recently, it reaches back across years of messages spanning much of the class period—*nine years* of Signal data alone. The broader the loss, the more discovery it requires. Plaintiffs now crow about the volume of that discovery as an "onslaught" justifying Johnson's exit. But the volume of discovery is a function of what Johnson lost, not overreach by Defendants. And whether the requests came from Endeavor or from Zuffa and TKO is beside the point: the question under Rule 41(a)(2) is whether Defendants would suffer legal prejudice, and the question under Rule 16(b)(4) is whether Plaintiffs were diligent and can show good cause.

Plaintiffs' handling of Johnson's outstanding discovery confirms the point. Johnson's responses have been late, incomplete, and repeatedly amended. The pattern is now at its end point:

Johnson is trying to kick his discovery obligations down the road in the hope that, if the Court grants his withdrawal, he will never have to comply. That is, by definition, using withdrawal "to escape [] discovery obligations." *Solano*, 2022 WL 3143352, at *4.

**ii. Discovery Specific To Johnson Is Relevant To Class Certification**

Plaintiffs allege that Johnson's claims are typical of the claims of the proposed class. Dkt. No. 118 ¶ 40. Taking that allegation at face value, Johnson's experience is evidence of how the challenged conduct operated across the class—and it shows that the conduct did not operate uniformly. The Champion's Clause, Right to Match, and Retirement Clause were never applied to him; the UFC released him; nothing prevented him from signing with another promoter; and he went on to compete as a professional boxer. He was never "locked in." To certify a class, Plaintiffs must show antitrust impact can be established through common proof, *see Olean*, 31 F.4th at 664–66, and a fighter who was never subject to the challenged provisions and moved freely to another promoter is direct evidence that impact cannot be proven on a classwide basis.

Courts consistently recognize that this kind of named-plaintiff testimony is "likely to be relevant to class certification issues," and that its relevance does not disappear because the plaintiff "no longer wishes to be burdened with this litigation." *Sherman*, 2015 WL 473270, at *7; *Dysthe*, 273 F.R.D. at 629. The fact that other named plaintiffs remain "does not render [the withdrawing plaintiff's] testimony concerning her allegations to be any less relevant." *Fraley*, 2012 WL 555071, at *3.

**iii. Johnson's Evidence Undercuts Plaintiffs' Market Definition**

Plaintiffs allege a narrow market for services provided by elite MMA athletes in the United States, or in the alternative, North America. Dkt. No. 118 ¶¶ 66-68, 75. Yet Johnson's own words and career directly undermine that market definition. He has said publicly that the ***"UFC is completely global"*** and that "***people from everywhere, everywhere in the world***" compete in it. Dkt. No. 798-2 at 5. His UFC bouts were against international athletes and all took place outside the United States, he competed as a professional boxer as recently as 2025, and he trains athletes across multiple combat sports disciplines. *Id.* His communications with agents and managers

about offers from non-MMA or international promoters are direct evidence of transferable skills and competitive alternatives bearing on both the product and geographic market.

The ABA Model Jury Instructions for Civil Antitrust Cases, which the Ninth Circuit relies upon as a source for civil jury instructions, allow a defendant to submit an instruction regarding its own proposed relevant market—which means that a defendant is naturally entitled to discovery to help establish that market. *See* Ninth Circuit Manual of Model of Civil Jury Instructions § 14 (Antitrust); ABA Model Jury Instructions in Civil Antitrust Cases 3.A.4. "Plaintiffs do not get to unilaterally decide what information is relevant. Nor can they contend that only information relevant to their claims—and not [defendants'] defenses—is relevant." *Benanav v. Healthy Paws Pet Ins. LLC*, 2023 WL 5227702, at *10 (W.D. Wash. Aug. 15, 2023). Defendants are entitled to discovery from Johnson supporting their own market definition, which their experts will use in their analyses; they will be prejudiced without it.

**iv. Johnson's Businesses Are Relevant To Procompetitive Benefits And Damages**

Johnson has spent his post-UFC career leveraging his UFC affiliation. That affiliation is not incidental to his businesses; it *is* the business. Under the rule of reason, courts must "balance the restriction's anticompetitive harms against its procompetitive benefits." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 993–94 (9th Cir. 2023). And "[a]n antitrust plaintiff may recover only to the 'net' extent of its injury; if benefits accrued to it because of an antitrust violation, those benefits must be deducted from the gross damages caused by the illegal conduct." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986). Johnson's businesses are thus direct evidence of the procompetitive benefits UFC affiliation confers and of the offsetting benefits that must be netted against any claimed damages, and Defendants would be prejudiced without discovery into them before he leaves the case.

**v. Only Johnson Can Answer For His Spoliation**

Johnson recently admitted that his phone reset erased all of his Signal data since 2017, and that he lost all Instagram messages before October 20, 2023 and all WhatsApp messages before May 5, 2022. Dkt. No. 823-4 at 12–13. His answers do not say clearly what he lost, how, or from

which devices, and his sworn interrogatory responses remain inconsistent and unexplained. *Id.* Only Johnson can explain his phone reset, his lost devices and data, his Signal settings, and the preservation instructions he received. The Court has said it will "decide the spoliation issue before discovery closes," Dkt. No. 817 at 54:3–5, and Defendants need Johnson's discovery to determine whether the lost ESI "cannot be restored or replaced through additional discovery," Fed. R. Civ. P. 37(e). And while Plaintiffs press spoliation sanctions against Defendants, the Court has made clear that the parties will be held to consistent positions. Dkt. No. 864 at 64. Removing Johnson as a party now would shield the lead named plaintiff's own preservation failures from the scrutiny Plaintiffs demand of Defendants.

**vi. Johnson Lives In Canada, And Adding Maynard Would Restart Discovery**

Because Johnson lives in Canada, if he is dismissed without first sitting for his deposition and completing his outstanding discovery, Defendants will likely never obtain it, and will be left without a critical deposition usable at class certification, summary judgment, and trial. Meanwhile, no discovery has been taken from Gray Maynard. The parties jointly proposed March 1, 2027 as the close of fact discovery, Mot. at 8, leaving roughly three months to conduct complete discovery of a new named plaintiff, *id.* at 2. Plaintiffs' assurance that the discovery Defendants need from Maynard "is modest," *id.* at 10, is unsupported. It has taken the UFC years to get minimal productions out of Johnson.

**C. Even If The Court Looks Past Rule 41(a)(2), Plaintiffs Cannot Show Good Cause Under Rule 16(b)(4) Or Excusable Neglect Under LR 26-3**

Plaintiffs fare no better if the Court treats the Motion as they frame it, a request to amend the pleadings and change the parties. The deadline to amend pleadings and add parties expired June 17, 2024, so Plaintiffs must clear Rule 16(b)(4) and LR 26-3 before Rule 15's "freely give[n]" standard comes into play. Rule 16's standards "may not be short-circuited by an appeal to those of Rule 15." *Mammoth*, 975 F.2d at 610. This Court consistently treats Rule 16 as the threshold once a scheduling order has been entered, and reaches Rule 15 only if good cause is shown. *Hillcrest*, 2021 WL 4268439, at *3; *Proficio Mortg. Ventures, LLC v. Fed. Sav. Bank*, 2018

WL 2138527, at *1 (D. Nev. May 9, 2018); *Littlefield v. Nevada ex rel. Dep't of Pub. Safety*, 2015 WL 1470549, at *1 (D. Nev. Mar. 31, 2015). Plaintiffs cannot meet the Rule 16 requirements.

**i. Plaintiffs Were Not Diligent**

Plaintiffs filed this Motion on November 10, 2026, almost two-and-a-half years after the deadline. Mot. at 8. Courts deny leave on far shorter delays. *See Mammoth*, 975 F.2d at 607, 609–10 (four months; "[f]ailing to heed clear and repeated signals" is not diligence); *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023) (eight months, no explanation); *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017); *Mainor v. Experian Info. Sols., Inc.*, 2019 WL 286696, at *1–2 (D. Nev. Jan. 22, 2019) (facts known before deadline); *Bank of N.Y. Mellon*, 2019 WL 1429612, at *7–8; *Hillcrest*, 2021 WL 4268439, at *3. Even Plaintiffs' own authority from this Court confirms that good cause "primarily considers the diligence of the party seeking the amendment." *Myles v. Fono*, 2026 WL 747158, at *2 (D. Nev. Mar. 16, 2026).

Plaintiffs' claim that "the need for this amendment did not exist" until 2026, Mot. at 11, does not withstand scrutiny. Discovery to Plaintiffs began in October 2023, months before the deadline. *Id.* at 3. By agreeing to serve as a class representative, Johnson knew from the day he filed suit that he "would have to participate in discovery and provide testimony." *Fraley*, 2012 WL 555071, at *3. The recent discovery Plaintiffs now complain of was triggered by Johnson's own conduct: his April 12, 2026 phone reset, Plaintiffs' June 18, 2026 disclosure of his Signal use, and his October 14, 2026 admission of additional losses. A party cannot manufacture good cause out of his own discovery violations.[3] The facts that undermine the merits case, including where Johnson fought, what his contract said, and what he did after the UFC, were known to him and his counsel when he filed suit in 2021. Disregarding the scheduling order on this record would "reward the indolent and the cavalier." *Mammoth*, 975 F.2d at 610.

Nor can Plaintiffs hide behind the Court's October 9 remarks. The Court asked for notice so that it and Defendants would not "put in the work" on spoliation only to see a named plaintiff

[3] Discovery burdens cannot constitute changed circumstances warranting substitution; holding otherwise would create a perverse incentive for a plaintiff to invoke that burden as a means of evading scrutiny.

swapped out. Dkt. No. 817 at 56:16–57:13. By then, Defendants had already done significant work as to Johnson's spoliation. A request for prompt notice is not a finding of good cause, and it does not excuse years of delay.

**ii. Plaintiffs' Failure To Address Excusable Neglect Is Independently Fatal**

Plaintiffs' Motion never mentions LR 26-3 or excusable neglect. In this District, that omission alone warrants denial. *See D.S. v. Clark Cnty. Sch. Dist.*, 2023 WL 5748720, at *3, *6 (D. Nev. May 22, 2023) (denying motion to add plaintiffs filed nine months after deadline because counsel did not carry the excusable-neglect burden); *Anderson*, 2026 WL 1079648, at *1, *3, *6 (failure to address excusable neglect independent basis to deny motion to amend). The movant bears the burden on excusable neglect. *D.S.*, 2023 WL 5748720, at *3.

Plaintiffs could not carry that burden in any event. Courts weigh the nonexclusive equitable factors drawn from: "(1) the danger of prejudice to the opposing party, (2) the length of the delay and the potential impact on the proceedings, (3) the reason for the delay, and (4) whether the moving party acted in good faith." *Bank of N.Y. Mellon*, 2019 WL 1429612, at *7 (citing *Branch Banking*, 871 F.3d at 765). In *Branch Banking*, the movants argued at length that amendment would not prejudice their opponent but offered "no explanation at all for their delay," and the Ninth Circuit held that the district court acted within its discretion in finding the neglect inexcusable. 871 F.3d at 765. So too here. The delay exceeds two years, comparable to the two-year delay found inexcusable in *Parker v. Joe Lujan Enterprises, Inc.*, 848 F.2d 118, 121 (9th Cir. 1988). While Plaintiffs' proffered reasons for dismissal are pretextual—and unsupported by the record—the prejudice to Defendants is concrete.

**D. Rule 21 Does Not Give Plaintiffs A Separate Or Easier Path**

Plaintiffs lead with Rule 21, telling the Court that it "need not look beyond" that rule. Mot. at 9. But Plaintiffs selectively quote Rule 21. The full rule reads: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The first and third sentences, which Plaintiffs omitted, show what the rule is for: preventing an action

from failing because of misjoinder or nonjoinder. Plaintiffs do not claim Johnson was misjoined, nor could they. Their lead Rule 21 case confirms the point: *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989), permitted dropping a dispensable, nondiverse party to preserve jurisdiction, not swapping out a lead plaintiff to avoid his discovery. Moreover, the law is clear that "Rule 21 is a method for the court to effect joinder, not a basis for allowing plaintiffs to amend their complaint." *Feske v. MHC Thousand Trails Ltd. P'ship*, 2013 WL 1120816, at *3 (N.D. Cal. Mar. 18, 2013); *accord Firsov v. City & Cnty. of Honolulu*, 2023 WL 12267265, at *1–2 (D. Haw. Dec. 14, 2023) ("Rule 21, however, only applies in instances of misjoinder or nonjoinder of parties . . . . The appropriate procedure to add a [party] is to file a motion to amend the Complaint pursuant to Federal Rule of Civil Procedure 15.") (emphasis added); *Bain*, 891 F.3d at 1215 ("'Nothing on the face of Rule 21 allows substitution of parties.'" (quoting *Sable*, 890 F.2d at 191 n.13)).

And in a putative class action, a court in this Circuit refused to allow plaintiffs to "start anew" by replacing their named plaintiffs "[a]fter almost one year of motion practice, fairly extensive discovery," and motion practice "dealing with issues particular to" the original plaintiffs, holding that it "will not permit amendments that amount to a 'back-door attempt to begin the action anew.'" *Velazquez v. GMAC Mortg. Corp.*, 2009 WL 2959838, at *4 (C.D. Cal. Sept. 10, 2009) (citation omitted). This case has five years of litigation behind it.

Rule 21 also cannot override the scheduling order, which *Mammoth* holds is controlled by Rule 16. 975 F.2d at 607–09. Plaintiffs' own authorities fold Rule 21 into the Rule 15 framework, Mot. at 8, and Plaintiffs concede that "some courts" require good cause under Rule 16(b)(4), *id.* at 10. And Rule 21's "just terms" requirement imports the same prejudice inquiry, and the same authority to impose conditions, as Rule 41(a)(2). Rule 21 thus rises or falls with Rules 16, 15, and 41.

**E. Leave Should Be Denied Even Under Rule 15(a)**

Even if the Court reached Rule 15(a), undue delay, bad faith, and prejudice—which "carries the greatest weight"—all weigh against leave. *Eminence Capital*, 316 F.3d at 1052. The case is five years old, the amendment deadline expired more than two years ago, and the Motion arrives on the eve of a noticed deposition and in the middle of spoliation discovery directed at

Johnson. The Motion also reflects a dilatory and tactical motive: removing a named plaintiff whose claims and conduct have become a liability to Plaintiffs' case.

Plaintiffs' substitution cases do not hold otherwise. Each asked whether the departing plaintiff's claims remained "live," so that a case or controversy survived. *See In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2021 WL 5848055, at *1–2 (N.D. Cal. Dec. 9, 2021); *Castillo v. United Rentals (N. Am.), Inc.*, 2018 WL 3429936, at *3 (W.D. Wash. July 16, 2018); *Aguilar v. Boulder Brands, Inc.*, 2014 WL 4352169, at *9 (S.D. Cal. Sept. 2, 2014). That is not the question here—and the answer helps Defendants: because Johnson's claims survive, his exit is a dismissal without prejudice governed by Rule 41(a)(2). *Aguilar* also applied Rule 16(b)(4) before Rule 15(a), as Plaintiffs must here. 2014 WL 4352169, at *6. And *Hard Disk Drive* applied Rule 15 and found no prejudice only because defendants had not shown the substitution would "adversely affect [their] ability to obtain or produce discovery." 2021 WL 5848055, at *2. It would here: Johnson's deposition is noticed, motions to compel his discovery are pending, and his spoliation is unresolved. None of Plaintiffs' cases let a named plaintiff walk away on similar facts.

### F. At A Minimum, The Court Should Condition Any Withdrawal On Johnson's Completion of Discovery And An Opportunity To Take Discovery Of Maynard

If the Court is inclined to permit Johnson to withdraw, it should do so only on conditions. A court may "condition a Rule 41(a)(2) dismissal on a plaintiff's deposition or production of discovery." *Opperman*, 2015 WL 9311888, at *3 (quoting *Sherman*, 2015 WL 473270, at *7). Courts in this Circuit routinely do so. *See, e.g.*, *Corbett v. Pharmacare U.S., Inc.*, 2022 WL 2835847, at *7 (S.D. Cal. July 20, 2022) (granting dismissal without prejudice on the condition that plaintiff respond to discovery requests); *Gamboa v. Apple Inc.*, 2026 WL 2032989, at *3 (N.D. Cal. July 14, 2026) (conditioning plaintiff's withdrawal with prejudice on her responses to defendants' requests for admission, interrogatories, and requests for production).

**Deposition.** Johnson should be required to sit for the deposition Defendants noticed for December 10, 2026. "[D]efendants are entitled to take the deposition of a named plaintiff notwithstanding the plaintiff's intention to withdraw from the case, especially where the plaintiff's claims formed the basis of the class action and the plaintiff has been a named plaintiff from the

start of the action." *Gallegos*, 2016 WL 11824850, at *9. *Sherman* conditioned withdrawal on the plaintiff's deposition, finding that the defendant "would be legally prejudiced if it was prevented from deposing" him. 2015 WL 473270, at *7, *9. *Benanav* required a withdrawing plaintiff to respond to outstanding interrogatories and sit for a deposition before he could be dismissed. 2023 WL 5227702, at *10. "[P]erforming one deposition, which was already supposed to have been performed, cannot be considered a burden." *Dysthe*, 273 F.R.D. at 629 (citation omitted). Courts that have declined to condition withdrawal on a deposition did so when no deposition had been noticed. *See Opperman*, 2015 WL 9311888, at *4–5. Plaintiffs' gamesmanship and pretextual excuses should not deprive Defendants of this opportunity.

**Outstanding Written Discovery.** Johnson should also be required to fully respond to all pending discovery. In *Opperman*, the court conditioned withdrawal on further responses to written discovery already served, even though it did not appear that the plaintiff sought dismissal to evade discovery, because she may have had "information pertinent to the case [she] initiated and that defendants must continue to defend." 2015 WL 9311888, at *3 (citation omitted). The same was true in *Floyd v. Amazon.com Inc.*, where the court compelled discovery from a plaintiff who had moved for voluntary dismissal because the discovery had been served "long before" he sought to withdraw. 2024 WL 3845869, at *3 (W.D. Wash. Aug. 16, 2024). As *Benanav* put it, a withdrawing plaintiff "should not be permitted to 'walk away from' his discovery obligations when he has relevant information and chose to litigate this case." 2023 WL 5227702, at *10.

**Discovery Of Maynard.** If Maynard is added, he should be required to produce all non-privileged documents requested by Defendants, and to respond to Defendants' requests for admission and interrogatories, within fourteen days of the Court's order, and to sit for deposition in January or February 2027.[4]

**Fees And Costs.** Dismissal should also be conditioned on Plaintiffs' payment of the fees and costs tied to discovery of Johnson that cannot be reused. "[T]he defendants' interests can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs

---

[4] Plaintiffs can no longer argue that this litigation has been delayed because of Defendants. Amending the Complaint to add Maynard at this late juncture will materially delay the litigation.

and attorney fees." *Westlands*, 100 F.3d at 97. The Ninth Circuit has reaffirmed that courts "can award costs and attorney's fees as a condition of dismissal without prejudice under Rule 41(a)(2)." *Kamal*, 88 F.4th at 1286. Fees should be awarded "for work which cannot be used in any future litigation of these claims," *Westlands*, 100 F.3d at 97, separating work "rendered useless" from work "which might be of use" going forward, *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993). The forensic work and motions practice concerning Johnson's devices and spoliation will not carry over to Maynard or the remaining Named Plaintiffs.[5]

## IV. REQUEST FOR RELIEF

Defendants respectfully request that the Court deny the Motion. Alternatively, if the Court is inclined to permit Johnson's withdrawal, it should be conditioned on the Court ordering that:

1. Johnson sit for his noticed deposition before any withdrawal or dismissal takes effect;
2. Johnson provide complete responses to the discovery served on him before Plaintiffs filed this Motion—including Defendants' First Set of Requests for Production (served October 13, 2023) and Second Set of Requests for Production (served March 2, 2026), the discovery that is the subject of Dkt. Nos. 543, 709, 788, 793, and 796, and the requests for admission served October 28 and 30, 2026—before any withdrawal or dismissal takes effect;
3. Maynard produce all non-privileged documents requested by Defendants and respond to Defendants' requests for admission and interrogatories within fourteen days of the Court's order, and sit for deposition in January or February 2027;
4. Plaintiffs pay Defendants' reasonable attorneys' fees and costs for Johnson-specific work that cannot be used in the continuing litigation, including the forensic work and motions practice concerning Johnson's devices and spoliation; and
5. Johnson remain a named plaintiff, subject to all of a party's discovery obligations, unless and until these conditions are satisfied.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion or, in the alternative, grant the Motion only on the conditions set forth above.

---

[5] If the Court imposes conditions, Plaintiffs should be given a reasonable period to accept them or withdraw the Motion. *See Sherman*, 2015 WL 473270, at *8 (citing *Lau v. Glendora Unified Sch. Dist.*, 792 F.2d 929, 930 (9th Cir. 1986)). Absent acceptance, Johnson should remain a named plaintiff subject to all of a party's discovery obligations.

Dated: November 24, 2026

Respectfully submitted,

By: /s/ *Christopher S. Yates*

CHRISTOPHER S. YATES (*Pro hac vice*)
chris.yates@lw.com
AARON T. CHIU (*Pro hac vice*)
aaron.chiu@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600

SEAN M. BERKOWITZ *(Pro hac vice)*
sean.berkowitz@lw.com
LATHAM & WATKINS LLP
330 North Wabash Ave, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700

JOSEPH AXELRAD (*Pro hac vice*)
joseph.axelrad@lw.com
DANIELLE LENECK (*Pro hac vice*)
danielle.leneck@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd, Suite 1100
Los Angeles, CA 90067
Tel: (424) 653-5500

DAVID L. JOHNSON (*Pro hac vice*)
david.johnson@lw.com
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-1061

WILLIAM A. ISAACSON (*Pro hac vice*)
wisaacson@dirllp.com
JESSICA PHILLIPS (*Pro hac vice*)
jphillips@dirllp.com
AGBEKO PETTY (*Pro hac vice*)
apetty@dirllp.com
BENJAMIN J. CABRANES (*Pro hac vice*)
bcabranes@dirllp.com
DUNN ISAACSON RHEE LLP
401 Ninth Street NW
Washington, DC 20004
Tel: (202) 240-2900

YOTAM BARKAI (*Pro hac vice*)
ybarkai@dirllp.com
MATTHEW D. KAMINER (*Pro hac vice*)
mkaminer@dirllp.com
DUNN ISAACSON RHEE LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 389-9704

SAMUEL R. MIRKOVICH (No. 11662)
srm@cwlawlv.com
PHILIP R. ERWIN (No. 11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street, Ste. A
Las Vegas, NV 89101
Tel: (702) 382-5222

*Attorneys for Defendants Zuffa, LLC and TKO Operating Company, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Zuffa, LLC and TKO Operating Company, LLC's Opposition to Plaintiffs' Motion to Amend Complaint and Dismiss Plaintiff Kajan Johnson and Add Gray Maynard as a Plaintiff was served on November 24, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Christopher S. Yates*
Christopher S. Yates (*Pro hac vice*) of
LATHAM & WATKINS LLP