MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL *(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER (*Pro hac vice*)
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

Rory T. Kay (NSBN 12416)
rkay@mcdonaldcarano.com
Emily M. Dennis (NSBN 16396)
edennis@mcdonaldcarano.com
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Tel: (702) 873-4100

*Attorneys for Defendant Endeavor Group Holdings, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC, TKO Operating Company, LLC f/k/a Zuffa Parent LLC (d/b/a Ultimate Fighting Championship and UFC), and ENDEAVOR GROUP HOLDINGS, INC.,<br><br>Defendants. | Case No.: 2:21-cv-01189-RFB-BNW<br><br>**ENDEAVOR'S OPPOSITION TO PLAINTIFFS' MOTION TO SUBSTITUTE GRAY MAYNARD FOR KAJAN JOHNSON AS A NAMED PLAINTIFF AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. Plaintiffs File Suit and Defendants Serve Discovery on Plaintiffs ..... 3

B. Plaintiffs Accuse Defendants of Spoliation, Seek Sanctions, and Demand Spoliation-Related Discovery ..... 4

C. Mr. Johnson's Spoliation Comes to Light ..... 5

III. ARGUMENT ..... 7

A. Plaintiffs Incorrectly Rely on Rule 21 When They Must Also Satisfy Rules 15, 16, and 41(a)(2) ..... 7

B. There Is No Good Cause Under Rule 16 to Modify the Schedule to Allow Amendment ..... 8

C. Even if the Court Finds that Rule 16 Is Satisfied, Plaintiffs Still Cannot Meet the Rule 15 Standard ..... 14

D. If the Court Permits Substitution, the Court Should Take Measures to Address the Prejudice to Defendants ..... 18

E. Plaintiffs' Oral Motion for a Stay ..... 20

IV. CONCLUSION ..... 21

Defendant Endeavor Group Holdings, Inc. ("Endeavor") submits this Opposition to Plaintiffs' Motion to Substitute Gray Maynard for Kajan Johnson as a Named Plaintiff and for Leave to File Second Amended Complaint (ECF No. 856, "Motion" or "Mot.").

## I. INTRODUCTION

Plaintiff Kajan Johnson has been litigating this case actively against Defendants for more than five years. He has attended multiple court hearings in person. He has published frequent social media posts, including commenting on this litigation and trying to garner support for it. Yet now, with fact discovery nearly complete, Plaintiff Johnson wishes abruptly to withdraw as a named Plaintiff—yet continue to passively benefit as an absent class member. The real reason for this withdrawal is never mentioned in Plaintiffs' Motion: after aggressively pursuing spoliation sanctions against Defendants for more than a year, Johnson does not wish to answer for his own extensive loss of relevant information and communications across multiple platforms for up to a decade. The Federal Rules do not support amendment of the complaint here, where Mr. Johnson's main motivation is to avoid accountability for his widespread spoliation and failure to act diligently. Plaintiffs may not rely on Rule 21 of the Federal Rules of Civil Procedure; they acknowledge that they must also satisfy Rules 15 and 16, which require, among other things, diligence, good faith, and lack of prejudice to Defendants. Plaintiffs cannot meet their burden under this standard.

Mr. Johnson's explanation for his last-minute departure request—that discovery has become a "persistent distraction" to his family and professional life—is entirely pretextual. Participation in discovery is a requirement for serving as a named plaintiff in a class action. The recent discovery requests to Mr. Johnson about which Plaintiffs complain relate to emerging information about Mr. Johnson's extensive spoliation of relevant Signal, Instagram, and WhatsApp messages—the full scope of which only came to light in October 2026. The discovery Mr. Johnson complains about is also, in many respects, a mirror image of discovery first served by Plaintiffs on Defendants (including as recently as late October) as part of a relentless campaign to try to prove spoliation notwithstanding what the underlying evidence shows. Indeed, the discovery served on Mr. Johnson pales in comparison to the vast amount of information Plaintiffs have sought—and received—about supposed spoliation by certain of Defendants' custodians.

The real reason Plaintiffs want to drop Mr. Johnson from the case is transparent: to avoid any accountability for his spoliation and deprive Defendants of relevant evidence. In that context, it is clear that Plaintiffs cannot meet Rule 16's required showing of diligence. Either Plaintiffs were unaware of Mr. Johnson's spoliation due to their lack of diligence, or knew about that spoliation and failed to disclose it. In either case, substituting out Mr. Johnson more than two and a half years after the deadline for amendments to the pleadings—and more than five years into the case—is highly inappropriate when Plaintiffs did not act diligently to discover and disclose the spoliation that led to the Motion.

Moreover, doing so would create significant prejudice on Endeavor—not least of which being the inability to argue that Mr. Johnson should be held to the same (unattainable) preservation standard to which Plaintiffs seek to hold Endeavor and to pursue appropriate remedies for Mr. Johnson's loss of evidence. Endeavor has also invested substantial time and energy into investigating Mr. Johnson's loss of evidence, which bears on the merits of the case, class certification, and Endeavor's responses to Plaintiffs' own spoliation allegations. All this effort would be for naught if Mr. Johnson is dismissed, to say nothing of the substantial cost that would be incurred by starting discovery from square one for the proposed new named Plaintiff, Gray Maynard. This prejudice is reason enough to deny the Motion.

Though the Motion can and should be denied based on Rule 16 alone, if the Court reaches the analysis under Rule 15, Plaintiffs cannot meet those requirements either. Engaging in widespread spoliation and then seeking to avoid the consequences is not a good faith justification for substitution, especially when Plaintiffs have been advocating for grave spoliation sanctions against Defendants.

Allowing substitution here—after Endeavor has invested extensive time and resources in investigating Mr. Johnson's spoliation—would prejudice Endeavor by rendering worthless the discovery Endeavor has received to date from Mr. Johnson and by requiring entirely new discovery from Mr. Maynard. It would also enshrine a massively unfair double standard: faced with evidence of their own spoliation, which is more egregious than anything that has been alleged (much less shown) against Endeavor, Plaintiffs can seek to rely on the get-out-of-jail-free card of substitution,

evading any accountability for Mr. Johnson's (and his counsel's) own conduct while hypocritically continuing their spoliation campaign against Defendants.

At a minimum, if the Court is inclined to grant the Motion, the prejudice Endeavor would face from that substitution weighs strongly in favor of imposing conditions on Mr. Johnson's substitution, including that he meet his discovery obligations (including his deposition) before departing the case and that Endeavor may seek sanctions against Plaintiffs for Mr. Johnson's spoliation, even if he is no longer a named Plaintiff.

The Motion should be denied, or in the alternative, granted with conditions to address the prejudice substitution would cause to Endeavor.

## II. BACKGROUND

### A. Plaintiffs File Suit and Defendants Serve Discovery on Plaintiffs

Named Plaintiffs Mr. Johnson and Clarence Dollaway filed this putative class action in June 2021 on behalf of MMA fighters who fought in UFC-promoted bouts on or after July 1, 2017. ECF No. 1. The Court's January 2024 Scheduling Order set June 17, 2024, as the deadline to amend pleadings and add parties. ECF No. 124; Mot. at 8. Throughout the litigation, Defendants served ordinary written discovery requests on Plaintiffs, including requests for production and interrogatories, that are typical of discovery from a named plaintiff in a putative antitrust class action. *See, e.g.*, ECF No. 798-3, 856-7, 792-24, 856-6, 856-8, 856-9, 856-10, 856-12, 856-16; Exs. 1, 2, 3. For instance, in October 2023, Defendants served requests for production seeking documents about, among other things, Plaintiffs' finances, fight history, other sources of compensation, and other bouts plaintiffs purportedly could have participated in, as well as documents concerning Plaintiffs' allegations against Defendants. ECF No. 798-3. In response to these requests, Plaintiffs agreed to produce certain documents, and the parties have met and conferred about discovery issues. ECF No. 798-4. Defendants also served interrogatories on Plaintiffs in March 2026, which sought similar types of information concerning allegations in the complaint, Plaintiffs' fight history, other fight opportunities Plaintiffs had, and other sources of revenue, including those Plaintiffs realized by virtue of their participation in UFC. ECF No. 856-7.

### B. Plaintiffs Accuse Defendants of Spoliation, Seek Sanctions, and Demand Spoliation-Related Discovery

Plaintiffs first sought sanctions, including dispositive sanctions, in July 2025, citing Defendants' alleged violation of the Court-ordered device disclosures. *See* ECF No. 217. As to Endeavor, Plaintiffs accused certain custodians of using Signal and other ephemeral-messaging applications and of failing to preserve relevant communications. *See* ECF No. 788 at 3–4. Plaintiffs moved for spoliation sanctions, seeking an adverse inference and case-terminating relief. *See* ECF No. 448.

Following Plaintiffs' spoliation sanctions motion, the Court permitted expansive spoliation-related discovery. As part of that process, Plaintiffs served extensive formal discovery on Defendants regarding their devices and preservation practices and also sought various forms of purportedly spoliation-related materials through other informal means. This includes interrogatories seeking the carrier, phone number, serial number, IMEI, and applications for each custodian's devices, and detailed information about Dana White's phone (Nos. 12–13); requests for carrier records, call and text logs, and app activity logs (Nos. 96–103) and for all documents on each "loss event" affecting Ari Emanuel's, Mark Shapiro's, and Patrick Whitesell's devices (Nos. 105–106). ECF Nos. 784-6, 784-9, 791-3; Ex. 4. Plaintiffs sought additional disclosures about Defendants' custodians' purported Signal usage, as well as their usage of various other applications, *e.g.*, ECF Nos. 327 at 19–21, 331 at 24, and served thirteen subpoenas on companies that operate communication applications, among voluminous other discovery. ECF Nos. 356-27, 358.

But even after Endeavor went to painstaking lengths to investigate Plaintiffs' complaints, Plaintiffs demanded more. On April 1, 2026, Plaintiffs served a set of interrogatories asking for detailed device and account information for "each and every Custodian," including device serial number, device make and model, and all applications. *See* ECF No. 784-6. In seeking detailed information about applications used by certain of Defendants' custodians, Plaintiffs have argued that custodial interviews are inadequate and "flawed" to address this issue and that a vendor report is necessary because it "analyzes the phone [and] tells you all the communication apps that are on there, but it also tells you what was collected and what wasn't collected." May 18, 2026 Hr'g Tr.

51:5–18. More recently, on October 21, 2026, Plaintiffs served 91 requests for admission regarding three Endeavor custodians' devices, Signal use, deletion settings, ESI preservation, and litigation holds. Ex. 5.

Through this process, Defendants have provided discovery that is unusual, if not unprecedented, in scope, including device disclosures, vendor collection reports, detail about custodial interviews, litigation holds, carrier records, and information about counsel's review of recovered Signal data. *See, e.g.*, ECF Nos. 333, 560, 615 at 5–7.

**C. Mr. Johnson's Spoliation Comes to Light**

In March 2026, as spoliation increasingly became the focus of this litigation, Defendants sought parallel discovery from Plaintiffs, such as information about the devices and applications each Plaintiff used and their preservation efforts. ECF No. 856-6. The purpose of this discovery was at least in part to demonstrate that Plaintiffs were holding Defendants to an unreasonable standard of perfection—for example, hunting for evidence of deletion even among custodians for whom there was no suggestion they had ever lost data, and requiring disclosure and preservation of every single messaging medium regardless of whether it was likely to contain relevant messages.

Plaintiffs' responses to Defendants' discovery requests laid bare just how unreasonable their spoliation claims had been. Plaintiffs repeatedly served inaccurate or incomplete responses that they were later forced to amend, and those discovery responses, when further information was eventually provided, revealed they had failed to preserve broad swathes of relevant documents. *See, e.g.*, ECF Nos. 788 at 4, 829 at 4, 11. On June 18, 2026, Plaintiffs admitted in response to Defendants' interrogatories that each named Plaintiff had Signal installed on his device, as well as other applications with ephemeral messaging capabilities, ECF No. 616-18 at 5–9—even though Plaintiffs had been arguing for months that Defendants' mere usage of Signal was evidence of intentional spoliation. Documents produced by Plaintiffs also revealed that they used Signal routinely, [redacted]. *See, e.g.*, ECF Nos. 616-4, 616-6, 616-7, 616-8, 616-9, 616-11, 616-12, 616-13, 616-14, 616-15, 616-16, 616-17, 711-5, 711-15, 711-16, 711-17.

When it became clear that Plaintiffs used ephemeral messaging applications, Defendants

promptly followed up with additional discovery requests to better understand the named Plaintiffs' use of those applications and their efforts to collect and preserve from them. Endeavor sent a letter expressing concerns regarding Plaintiffs' use of Signal on June 26, 2026, and served interrogatories regarding Signal use on July 10, 2026. ECF Nos. 856-4, 856-10. Additionally, given interrogatory responses suggesting Plaintiffs had not been instructed to even preserve Signal messages until after Defendants first served spoliation-related discovery requests, *see* ECF No. 829 at 8–9, on August 25, 2026, Endeavor requested the litigation holds and other preservation notices that had been issued to Plaintiffs, ECF No. 792-24 at 7. After continued objection from Plaintiffs, Defendants moved to compel information and documents responsive to these requests on September 30, 2026, the substantial completion deadline for Plaintiffs. ECF No. 788.

Notwithstanding Plaintiffs' evasive and evolving discovery responses, what discovery they did provide confirmed that each named Plaintiff likely engaged in spoliation. Plaintiffs' sworn answers admit that Mr. Johnson lost his Signal data in an April 12, 2026 phone reset, his original Instagram account after a hack, and WhatsApp messages before May 5, 2022; that Mr. Dollaway deleted and reinstalled Signal in December 2023, losing all prior messages; and that Mr. Connelly has no Telegram data before February 14, 2023. ECF No. 829-2 at 8–15. Plaintiffs also admitted that Plaintiffs were not instructed to preserve Signal communications until ***June 2026***, five years after this action was filed and almost a year after Plaintiffs had begun accusing Defendants' custodians of spoliation based on Signal use. *Id.* at 11–12. Plaintiffs also admitted that Mr. Johnson's phone was not properly collected until ***August 2026***. *Id.* at 11.

Despite apparently extensive Signal use, *e.g.*, ECF No. 788 at 7, Plaintiffs only produced two Signal messages, from the "Fight Team" chat, which—because Mr. Johnson deleted all prior Signal messages in April 2026, nearly five years into this case—were recovered from a third-party participant in that group. *See* ECF Nos. 789 at 10, 823 at 11, 829 at 5–6. Those chats concern issues central to this case, [redacted]. *See* ECF No. 789 at 10–11.

Plaintiffs' purported explanations for their loss of years' worth of evidence were dubious. They included: that Mr. Johnson was forced to "reset" his phone because his phone lacked sufficient

storage space for Mr. Johnson to record a video, and that this resulted in deletion of all his prior Signal data; and that his Instagram account was allegedly "hacked" and then deleted by Instagram against his will. ECF No. 829-2 at 14–15. Given these dubious assertions, on October 23, 2026, Endeavor served requests for documents substantiating those claims. ECF No. 856-12. Mere hours later, Plaintiffs served mirror-image requests on Endeavor, apparently in retaliation. Ex. 4. On November 23, 2026, Plaintiffs served their responses and objections, in which they refuse to produce any documents and take the position that Mr. Johnson will not participate in discovery. Ex. 6.

On October 21, 2026, Plaintiffs served 91 requests for admission on Endeavor concerning issues related to Plaintiffs' spoliation arguments, such as Endeavor's custodians' use of Signal and preservation of certain communications. Ex. 5. On November 4, 2026, Endeavor served Requests for Admission that seek precisely the same type of information, including about named Plaintiffs' use of certain applications, any use of auto-delete settings, and preservation obligations. ECF No. 856-16. Plaintiffs have not yet responded to these requests for admission.

## III. ARGUMENT

### A. Plaintiffs Incorrectly Rely on Rule 21 When They Must Also Satisfy Rules 15, 16, and 41(a)(2)

Plaintiffs' suggestion that the Court may resolve this Motion solely under Rule 21, Mot. at 9–10, is incorrect. While Rule 21—"Misjoinder and Nonjoinder of Parties"—permits the Court to "add or drop a party," Plaintiffs cite no authority that they may drop Mr. Johnson and add Mr. Maynard based on this rule alone. They may not—a fact that Plaintiffs tacitly acknowledge by spending much of the Motion on Rules 15 and 16. Mot. at 8–9, 11–14.

Rule 21 does not allow parties to amend pleadings after the deadline. Instead, Rules 15 and 16 supply the proper procedure for doing so. "Rule 21 is a method for the court to effect joinder, not a basis for allowing plaintiffs to amend their complaint." *Feske v. MHC Thousand Trails Ltd. P'ship*, 2013 WL 1120816, at *3 (N.D. Cal. Mar. 18, 2013); *see also Firsov v. City & Cnty. of Honolulu*, 2023 WL 12267265, at *1–2 (D. Haw. Dec. 14, 2023) ("Rule 21, however, ***only applies*** in instances of misjoinder or nonjoinder of parties, which is not applicable here . . . [because] the

appropriate procedure to add a [party] is to file a motion to amend the Complaint pursuant to Federal Rule of Civil Procedure 15.") (emphasis added).[1] And since Defendants have answered the complaint, Plaintiffs need Court approval to dismiss Mr. Johnson's claims. Fed. R. Civ. P. 41(a)(2).

### B. There Is No Good Cause Under Rule 16 to Modify the Schedule to Allow Amendment

Plaintiffs must satisfy Rule 16's higher good-cause standard to amend their complaint because their proposed substitution comes more than two and a half years after the June 17, 2024, amendment deadline. ECF No. 124; *see also* Fed. R. Civ. P. 16(b)(4); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (Rule 16 governs once a scheduling order has issued). The good cause standard "primarily considers the diligence of the party seeking the amendment"; "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "If that party was not diligent, the inquiry should end." *Id.; see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of request to amend). Plaintiffs bear the burden of establishing their diligence. *Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 638 (D. Nev. 2021) ("The party seeking modification of the scheduling order bears the burden of establishing diligence.") (citation omitted). Prejudice to the opposing party "supplies an additional reason for denying the motion," *Coleman,* 232 F.3d at 1295, and courts may consider whether attempts to amend "violate the spirit of Rule 16 itself." *Mammoth Recreations*, 975 F.2d at 610.[2] When a party requests to

---

[1] Plaintiffs' own authorities confirm this point. *See In re Lithium Ion Batteries Antitrust Litig.*, 2016 WL 948874, at *3–4 (N.D. Cal. Mar. 14, 2016) (analyzing the motion under Rule 15(a)); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2021 WL 5848055, at *1 & n.2 (N.D. Cal. Dec. 9, 2021) (referencing that plaintiffs brought their motion under Rule 21 in a footnote but analyzing the issue under Rule 15(a)); *Aguilar v. Boulder Brands, Inc.*, 2014 WL 4352169, at *6, *9 (S.D. Cal. Sept. 2, 2014) (applying Rules 16(b)(4) and 15(a) to a motion to substitute a putative class member for a named plaintiff). Whatever label Plaintiffs attach to this Motion, Rule 21 does not allow Plaintiffs to simply drop a party that no longer wishes to participate in this action; they must satisfy their burden under Rules 15 and 16 to amend their complaint.

[2] Plaintiffs erroneously imply that requiring them to meet the standard explicitly laid out in the Federal Rule is the minority rule. *See* Mot. at 10 (stating that "[s]ome courts have held" that a party adding a party after a scheduling-order deadline must show good cause). That is incorrect. Courts across this Circuit apply Rule 16(b)(4)'s good-cause requirement, and Plaintiffs are not exempt from it merely because they invoked the wrong rule. *See, e.g., Zyda v. Four Seasons Hotels &*

extend a case deadline after the deadline, it must show "that the failure to act was the result of excusable neglect." LR 26-3. Here, Plaintiffs cannot establish diligence, and amendment would cause substantial prejudice to Endeavor.

**i. Mr. Johnson Did Not Act Diligently in Seeking Substitution**

Even if taken at face value, Mr. Johnson's purported reason for substitution—that complying with his discovery obligations has become burdensome and disruptive, *e.g.*, Mot. at 1—does not establish diligence. In fact, it shows the opposite.

This case has been pending for over five years, the parties have engaged in over three years of discovery, and the deadline for the substantial completion of document productions has come and gone. If Mr. Johnson believed he could not meet his discovery obligations, he should have made that clear years ago, before the pleading amendment deadline passed, or should never have agreed to serve as a named Plaintiff in the first place. Proceeding through years of discovery, past the substantial completion deadline, and then seeking to be substituted at the last minute, only after the Court invited Plaintiffs to seek to substitute named Plaintiffs facing spoliation issues, ECF No. 817 at 54:3–57:6, is a paradigmatic lack of diligence. *See Roberts v. Cate*, 2012 WL 1499136, at *3 (E.D. Cal. Apr. 27, 2012) (amending complaint with facts known to a plaintiff for three years "fails to demonstrate [plaintiff's] diligence in seeking to amend"); *Smith v. Las Vegas Metro. Police Dep't*, 2024 WL 4046295, at *3 (D. Nev. July 29, 2024) (plaintiff failed to show "diligent efforts to identify" parties plaintiff sought to add to complaint and "[w]aiting until late in the discovery period to fill in these types of blanks is antithetical to the diligence required to modify the governing case management deadline to amend or add parties many months after it expired"), *report and recommendation adopted*, 2024 WL 4615860 (D. Nev. Oct. 30, 2024); *Mendoza v. Zirkle Fruit Co.*, 222 F.R.D. 439, 444 (E.D. Wash. 2004) (finding "the plaintiffs have failed to establish good cause to modify the scheduling order" where "the discovery process had been underway for over 10 months when the current scheduling order was discussed and entered" and "[a]t the time, the

---

*Resorts*, 371 F. Supp. 3d 803, 810–11 (D. Haw. 2019) (refusing to allow plaintiffs to amend case schedule to add named plaintiff under Rule 16 for lack of good cause); *Plascencia v. Lending 1st Mortg.*, 2012 WL 253319, at *4–6 (N.D. Cal. Jan. 26, 2012) (same); *Wilson v. Frito-Lay N. Am., Inc.*, 2017 WL 3478776, at *2–3 (N.D. Cal. Aug. 14, 2017) (same).

plaintiffs did not mention the need to add new plaintiffs”).

Similarly, discovering facts that render him unfit to serve as a named Plaintiff—such as Mr. Johnson’s unwillingness to participate in discovery and his competing business and family obligations—years into litigation is not diligent. That is something Plaintiffs’ counsel could have, and should have, discovered long ago. *See In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (finding lack of good cause to add named plaintiff fourteen months after the amendment deadline where the course of litigation “should have alerted plaintiffs to their named plaintiff inadequacies” and plaintiffs showed “little care in the selection of adequate and typical class representatives”); *Osakan v. Apple Am. Grp.*, 2010 WL 1838701, at *3, 6 (N.D. Cal. May 5, 2010) (finding plaintiff’s good cause argument “unavailing” because he sought to “avoid the potential determination that he is not a proper plaintiff” on the basis of facts plaintiff knew for almost a year and denying leave to amend).

Tellingly, Plaintiffs provide no support for the proposition that complying with discovery poses a burden sufficient to justify their proposed eleventh-hour amendment, and instead rely on generic statements of burden devoid of substance. *E.g.*, Mot. at 1 (discovery is “invasive and . . . persistent”); *id.* at 12 (discovery has taken an unspecified “toll”). These are contradicted by Mr. Johnson’s own conduct. He had no complaints about discovery for the first five years of the case, subjected Defendants to extraordinary discovery burdens, and has flown internationally to attend hearings voluntarily and post about them on social media. *See, e.g.*, ECF No. 118 ¶ 34 (Mr. Johnson is a resident of Canada); https://www.instagram.com/p/DaRnmB5IME2/ (showing Mr. Johnson outside the District of Nevada courthouse describing a hearing).

More fundamentally, it is no secret that a named plaintiff in a class action will be subject to discovery. “A named plaintiff in a large antitrust class action assumes obligations to the class and a duty to produce its books and records in class action discovery.” *Milk Prods.*, 195 F.3d at 436–38; *see also Fraley v. Facebook Inc.*, 2012 WL 555071, at *3 (N.D. Cal. Feb. 21, 2012) (“[T]he court must conclude that Fraley’s legitimate desire to protect her privacy does not outweigh the relevance or propriety of Facebook proceeding to take Fraley’s deposition. As Fraley herself notes in her declaration, by agreeing to be a class representative, she understood that she would have to

participate in discovery and provide testimony."); *Burnett v. Ford Motor Co.*, 2015 WL 3540886, at *2 (S.D.W. Va. June 4, 2015) ("[W]hen . . . individuals agreed to participate in the case in a representative capacity, they should have realized that they would be expected to respond to discovery requests at some point in the proceedings."). That is all Mr. Johnson is being asked to do, and if he was not up to the task of fully participating in discovery, he should have sought to be substituted years ago. This excuse provides no good cause for his exit from the case at this juncture.

While Plaintiffs claim that discovery Defendants recently served is especially burdensome, *e.g.*, Mot. at 11–12, that assertion too evidences a lack of diligence—and reveals that Plaintiffs' justification for a late-game amendment is pretextual. The reality is that, while Plaintiffs were lobbing spoliation allegations against Defendants and seeking case-terminating sanctions, Mr. Johnson was not preserving relevant documents, and he engaged in multiple waves of data loss during litigation he initiated. ECF No. 829-2 at 13–14. This only fully came to light recently, in October 2026, *id.*—hence, Defendants' recent discovery requests about which Mr. Johnson complains. As Plaintiffs admit, "[n]early all of the discovery" Defendants have sought of Mr. Johnson recently is related to Mr. Johnson's devices, Mot. at 11–12, and required by Plaintiffs' belatedly disclosed failure to meet their preservation obligations. It is especially telling that after years of participating in discovery, Mr. Johnson only sought to be substituted after the Court suggested that Plaintiffs may seek to substitute named Plaintiffs after a discussion about their spoliation. ECF No. 817 at 54:3–57:6.

Indeed, the discovery requests about which Mr. Johnson complains both concern his recently disclosed spoliation and mirror the exact same discovery Plaintiffs served on Defendants.[3] For instance, Plaintiffs complain about the Requests for Admission that Endeavor served on November 4, 2026,[4] but those Requests closely track the 91 spoliation-related RFAs Plaintiffs

---

[3] Plaintiffs point to Defendants' subpoena to Kajabi, Mot. at 5, but that is a subpoena to a third party. It is unclear why it imposes a burden on Mr. Johnson. In any event, Mr. Johnson put himself and his business at issue by filing this case, and the subpoena should not have come as a surprise.

[4] Plaintiffs suggest Defendants' discovery requests were retaliation for the indication that he wished to leave this case. Mot. at 6–7, 11–12. They were not: Mr. Johnson remained a party, Plaintiffs had not said whether or when he would seek to be dropped, and the requests seek admissions on the same facts at issue in the pending motions and the spoliation proceeding. A

served on Endeavor on October 21, 2026, and all concern Plaintiffs' recently uncovered document preservation failures and spoliation. Plaintiffs cannot fault Endeavor for seeking discovery on spoliation promptly after those issues came to light—especially after having spent over a year seeking the same information from Endeavor, on a much broader scale.

Nor were Plaintiffs diligent in preventing, disclosing, or remediating Mr. Johnson's spoliation, which is what led to the new discovery he now says he cannot comply with. Mr. Johnson's preservation obligations arose, at the latest, upon his filing of this case in June 2021, and discovery from Plaintiffs has been ongoing since at least October 2023. Yet the events causing Mr. Johnson's loss of years' worth of messages—at least those of which Defendants are aware—occurred in 2022 (WhatsApp), 2023 (Instagram), and April 2026 (Signal). ECF No. 829-2 at 14–15. Plaintiffs did not seek to amend until months, or even years, after those events, even as they sought aggressive discovery from Defendants and case-terminating sanctions for alleged spoliation, including based on the mere use of ephemeral messaging. ECF No. 789 at 7–8. Had Plaintiffs acted diligently to discover and disclose that spoliation—or better yet, to prevent it—they could have sought to substitute Mr. Johnson long ago, with far less disruption to the case, or would not have needed to substitute him at all. Instead, they failed to preserve his documents, then failed to disclose their lack of preservation, and even now, hide behind evasive discovery responses that obscure the full scope of Mr. Johnson's spoliation. *See* ECF No. 830 at 5–7. There is no plausible reading of this timeline under which Plaintiffs exercised diligence, and Rule 16 does not allow a party to benefit from such gamesmanship. *See Mammoth Recreations*, 975 F.2d at 609–10; *Begley v. Cnty. of Kauai*, 2019 WL 1982513, at *3 (D. Haw. May 3, 2019) ("A scheduling order should not be amended to allow a party to 'benefit[ ] from ... gamesmanship'") (citing *In re Cathode Ray Tube Antitrust Litig.*, 2014 WL 4954634, at *2 (N.D. Cal. Oct. 1, 2014)).

#### ii. Substitution of Mr. Maynard for Mr. Johnson Would Prejudice Defendants

Because Plaintiffs cannot show diligence, and thus cannot show good cause, the "inquiry

---

plaintiff may not suspend his discovery obligations merely by announcing an intent to withdraw. Until the Court rules, he remains subject to Rules 26 through 37. *See Dysthe v. Basic Rsch., L.L.C.*, 273 F.R.D. 625, 628–29 (C.D. Cal. 2011); *Fraley*, 2012 WL 555071, at *2–3.

should end" there. *Mammoth Recreations*, 975 F.2d at 609. However, prejudice to the opposing party can "suppl[y] an additional reason for denying the motion." *Coleman*, 232 F.3d at 1295; *Osakan*, 2010 WL 1838701, at *3 (same). As explained in more detail below, *see infra* Section III.C.i, Endeavor would face severe prejudice if Mr. Maynard were substituted for Mr. Johnson. Plaintiffs concede that modifying the case schedule to allow for substitution might cause "disruption." Mot. at 12. That is an understatement.

Among other things, substitution would deprive Endeavor of evidence necessary to understand Plaintiffs' spoliation and hold Plaintiffs to the same preservation standards they have sought to apply to Endeavor. Mr. Johnson's spoliation-related discovery responses have already undermined his insistence that any mistaken disclosure is an effort to "misrepresent[] the results [of investigations into the location of relevant documents] to the Court to conceal . . . spoliation," ECF No. 450 at 11; his claim that the mere usage of ephemeral messaging apps is intentional spoliation; and his insistence that Endeavor undertake extensive and burdensome discovery into messaging apps that were never used for relevant purposes. Allowing Plaintiffs to substitute Mr. Johnson now would mean they could simply walk away from these inconvenient facts, leaving Endeavor to face spoliation allegations without one of its most potent defenses.

Substitution would also "unilaterally foreclose discovery on relevant subjects" such as market definition. As just one example, the two Fight Team chats that Plaintiffs produced concern [redacted]. ECF No. 794 at 62–76. *See Gamboa v. Apple Inc.*, 2026 WL 2032989, at *3 (N.D. Cal. July 14, 2026) (holding, in antitrust class action, that "[d]iscovery obligations under the Federal Rules of Civil Procedure apply to plaintiffs and defendants alike," and "it would be unfair to unilaterally foreclose discovery on relevant subjects through [a plaintiff's] withdrawal"). Substitution would also nullify five years of discovery into Mr. Johnson's adequacy as a class member. And it would make the remaining discovery and litigation substantially more costly and less efficient for Defendants and the Court by requiring Defendants to start over at square one with respect to discovery from Mr. Maynard. *See, e.g.*, *Osakan*, 2010 WL 1838701, at *5 ("allowing Plaintiffs to add new plaintiffs at this juncture would require the Defendants to conduct new and/or

additional discovery. . . . The need to conduct additional discovery is considered prejudicial."). This prejudice easily warrants denying amendment.

### C. Even if the Court Finds that Rule 16 Is Satisfied, Plaintiffs Still Cannot Meet the Rule 15 Standard

Although Plaintiffs' failure to satisfy Rule 16 dooms their Motion, it merits emphasis that they cannot satisfy even Rule 15's lower standard for amendment, which independently warrants denial. *Mammoth Recreations*, 975 F.2d at 608 (upon showing good cause under Rule 16(b), the moving party must still demonstrate that amendment is proper under Rule 15). Leave should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), but that does not mean the standard is a rubber stamp, particularly years into litigation. *See, e.g.*, *Benanav v. Healthy Paws Pet Ins. LLC*, 2023 WL 5227702, at *5 (W.D. Wash. Aug. 15, 2023) (denying leave to amend under Rule 15 where the defendant "would be prejudiced by the late amendment" and the court had already extended discovery deadlines multiple times). Instead, courts consider five factors under Rule 15: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Nearly every factor here weighs against granting Plaintiffs' Motion.

#### i. Granting Plaintiffs' Motion Would Prejudice Endeavor

Prejudice to the opposing party is the "touchstone inquiry under rule 15(a)." *Vyas v. Vyas*, 2017 WL 6551110, at *4 (C.D. Cal. May 8, 2017). Increased delay and the need for additional discovery—as well as the associated costs—are classic examples of prejudice that warrants denying leave to amend. *See, e.g.*, *Velazquez v. GMAC Mortg. Corp.*, 2009 WL 2959838, at *3–4 (C.D. Cal. Sept. 10, 2009) (denying motion for leave to amend where defendants argued substituting named plaintiffs before class certification imposed undue prejudice, including "substantial new discovery burdens" and "moot[ing] the substantial amount of discovery that has already been completed"); *Dream Marriage Grp., Inc. v. Anastasia Int'l, Inc.*, 2012 WL 3024227, at *4 (C.D. Cal. July 23, 2012) (denying motion for leave to amend that involved adding additional parties because it "would drastically increase Defendant's time, expenses, and resources for defending this Action," noting that prejudice exists where amendment requires "extensive additional discovery").

Here, Endeavor faces precisely these types of prejudice.

***First***, Endeavor would be prejudiced if it is not able to seek appropriate sanctions against Plaintiffs for Mr. Johnson's spoliation. It would also be prejudiced by losing the opportunity to develop evidence to rebut Plaintiffs' allegations of spoliation against them, as described above. Dismissing Mr. Johnson would thus "deprive Defendants of using his evidence to defend against the claims of the putative class while liberating him from the discovery obligations that he knowingly and freely undertook." *In re Duramax Diesel Litig.*, 2020 WL 5596096, at *3 (E.D. Mich. Sept. 18, 2020).

***Second***, the schedule would need to be adjusted if the Court grants Plaintiffs' Motion, causing delay and additional expense for Defendants and prolonging resolution of this matter. As noted by Plaintiffs, the parties have both proposed March 1, 2027, as the close of fact discovery. Mot. at 8; ECF No. 728. Adding a new class representative at this stage throws that into question, as it requires collecting, processing, and producing his documents; potential motions to compel based upon those productions; and his deposition. Given the pace of Plaintiffs' discovery thus far, there is no indication that this can be accomplished in the next four months.

***Third***, Defendants' significant investment of time and resources, including attorneys' fees, incurred in obtaining merits discovery from Mr. Johnson over years of litigation will have been wasted. The Court noted on October 9 the concern that a substitution of any named Plaintiff could render useless "all [the] work" Defendants had done to seek discovery from the named Plaintiff being substituted and investigate his spoliation. ECF No. 817 at 56:16–57:6. Permitting substitution now would do just that—impose a type of prejudice that courts have found warrants denying amendment. *See Velazquez*, 2009 WL 2959838, at *2–4 (denying leave to substitute a new named plaintiff in a putative class action where named plaintiffs "elected to withdraw" and substitution would require defendants to "re-do" the discovery as to the named plaintiffs and "re-explor[e] the same issues"); *Hitt v. Ariz. Bev. Co.*, 2009 WL 4261192, at *6 (S.D. Cal. Nov. 24, 2009) (denying motion to amend because it "would effectively moot the Plaintiff-specific work Defendants have done"). The prejudice is especially pronounced given the advanced stage of these proceedings, the amount of discovery Mr. Johnson has engaged in thus far, and the fact that his

deposition was noticed for December 10, ECF No. 856-14. *See Velazquez*, 2009 WL 2959838, at *3–4 (denying motion for leave to amend where defendants argued substituting named plaintiffs before class certification imposed undue prejudice, including "substantial new discovery burdens" and "moot[ing] the substantial amount of discovery that has already been completed").

Plaintiffs' only response is that Mr. Maynard is purportedly ready to participate in discovery. Mot. at 12. But this says nothing about the additional discovery that will be needed once Defendants receive his responses or the fact that Defendants will be forced to start the discovery process from the beginning. Instead, it confirms that substituting Mr. Maynard now would require costly additional discovery by Defendants while wasting what has already been done with respect to Mr. Johnson. Defendants have already invested substantial attorney time and expense in obtaining discovery from Mr. Johnson, including device, account, and carrier requests; Signal and ephemeral-messaging requests, *e.g.*, ECF Nos. 543, 709, 788, 793, 796, 828, 829, and 832; the file system extraction and sworn-accounting dispute; preparation for and participation in the October 9 hearing; and Mr. Johnson's December 10, 2026 noticed deposition.

#### ii. Plaintiffs' Request to Amend Reflects Bad Faith

Plaintiffs' plain goal in seeking substitution is to shield themselves from the consequences of their own failure to preserve relevant evidence. *See supra* II.C. Plaintiffs implicitly concede as much: they say that Mr. Johnson wants to withdraw because discovery directed to his "personal devices, private communications, and business finances" has become "invasive and persistent." Mot. at 6. But the discovery into Mr. Johnson's devices and communications is the direct result of what Plaintiffs' own sworn discovery responses revealed: years of lost Signal, WhatsApp, and Instagram messages. The burden of accounting for those losses is not an unfair imposition; it is an ordinary incident of serving as a class representative who lost relevant evidence.

The sequence of events reinforces the point. In June 2026, around the same time named Plaintiffs were told for the first time to preserve their Signal data, Plaintiffs represented that Mr. Johnson's Signal communications were "neither responsive nor relevant." ECF No. 711-2 at 4. Mr. Johnson's initial responses, served in August 2026, stated that he downloaded Signal "in or around 2020" but did not disclose the April 2026 reset, which was disclosed only in amended

answers served on September 18 and October 14, 2026 after Defendants continued to push for fulsome interrogatory responses. ECF Nos. 792-4 at 12; 829-2 at 14. Despite years of litigation and months of ongoing discovery, it was not until shortly after these losses came to light and after the Court raised swapping out a named Plaintiff on October 9 in light of their spoliation issues that Plaintiffs indicated to Endeavor, on October 26, that Mr. Johnson was considering asking to withdraw. Mot. at 5–6. Plaintiffs' attempt to evade accountability for their own discovery failures is not a good-faith basis for amendment. *See Rieken v. Timberland Bank*, 639 F. Supp. 3d 1128, 1134 (W.D. Wash. 2022) ("Courts will not permit amendments that amount to a back-door attempt to begin the action anew.") (cleaned up); *Dream Marriage*, 2012 WL 3024227, at *3 (finding bad faith where the motion for leave to amend was brought to "remedy a perceived flaw" caused by Plaintiffs' misrepresentations).

**iii. Plaintiffs Have Unduly Delayed Seeking Leave to Amend**

As Plaintiffs note, discovery has been ongoing since October 2023, yet Plaintiffs offer no explanation for their delay in seeking to substitute Mr. Johnson other than his hope to avoid discovery. Mot. at 3; *see Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990) (a court assessing delay asks whether the moving party knew or should have known the relevant facts earlier). That Plaintiffs' Motion would only further delay what has already been a years-long discovery process weighs against amendment. *See supra* III.C.i; *Dream Marriage*, 2012 WL 3024227, at *4 (denying motion to amend and add parties because it "would drastically increase Defendant's time, expenses, and resources for defending this Action," and noting that prejudice exists where amendment requires "extensive additional discovery").

**iv. Plaintiffs Have Already Amended**

Finally, Plaintiffs have already amended their complaint once, in December 2023, when they filed their Amended Complaint. ECF No. 118. That prior opportunity to select their class representatives weighs against further amendment, particularly where they previously added a new Plaintiff years ago. *See Dream Marriage*, 2012 WL 3024227, at *3 (noting that failure to join a party in prior amendments indicated undue delay and bad faith, and weighed in favor of denying motion for leave to amend). As the Ninth Circuit has noted, a "court's discretion to deny leave to

amend is particularly broad where plaintiff has previously amended." *Allen*, 911 F.2d at 373.

### D. If the Court Permits Substitution, the Court Should Take Measures to Address the Prejudice to Defendants

Because Plaintiffs are seeking dismissal of Mr. Johnson's claims by having him depart as a named Plaintiff, and because Defendants have already answered the Amended Complaint, Mr. Johnson's claims "may be dismissed at the plaintiff's request only by court order, ***on terms that the court considers proper***." Fed. R. Civ. P. 41(a)(2) (emphasis added). Courts apply Rule 41 when a named Plaintiff seeks to be dropped from a putative class action. *See Sherman v. Yahoo! Inc.*, 2015 WL 473270, at *2–5 (S.D. Cal. Feb. 5, 2015) (applying Rule 41 in the context of withdrawing named plaintiff who will remain absent member of class); *Opperman v. Path, Inc.*, 2015 WL 9311888, at *2–3 (N.D. Cal. Dec. 22, 2015) (same). Rule 41(a)(2) is largely intended to address prejudice to defendants associated with a plaintiff's dismissal of its claims, such as when defendants would not be able to "adequately defend themselves" without discovery from the dismissing plaintiff. *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996).

To partially ameliorate the prejudice that could result because of the dismissal of a plaintiff, courts often condition dismissal on the provision of discovery by the withdrawing plaintiff. *E.g.*, *Gallegos v. Atria Mgmt. Co.*, 2016 WL 11824850, at *9–10 (C.D. Cal. Nov. 14, 2016) ("Plaintiff is cautioned that . . . she is required to comply with her discovery obligations . . . even if she at some point withdraws as a named plaintiff in this action"); *Gamboa*, 2026 WL 2032989, at *2 (conditioning the withdrawal of Gamboa as lead plaintiff on Plaintiffs providing discovery responses related to spoliation of her email account); *Plavin v. Grp. Health Inc.*, 2022 WL 2310183, at *14 (M.D. Pa. June 27, 2022) (withdrawal "conditioned on the taking of Mr. Plavin's deposition and his compliance with any outstanding discovery"); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 305 (D.D.C. 2000) ("The Court therefore finds it proper for protection of defendants that the production of all documents and the answering of all interrogatories . . . be a prerequisite to a voluntary dismissal."); *Rodriguez v. Google LLC*, 2025 WL 2326790, at *2 (N.D. Cal. Aug. 12, 2025) (requiring deposition of class member upon his withdrawal as class representative because "it would be unfair to allow [the withdrawn class representative] to bury the evidence of his own

engagement with discovery obligations when his deposition is plainly pertinent to the case that he helped initiate and which Google must continue to defend"). Failing to address the conditions for a voluntary dismissal under this Rule is an abuse of discretion. *See JRA Architects & Project Managers, P.S.C. v. First Fin. Grp., Inc.*, 375 F. App'x 42, 43 (1st Cir. 2010) ("Where, as here, the district court provides no explanation for dismissing a case without prejudice and without imposing any conditions on the moving party, such as paying the opposing party's attorneys' fees or costs, and no reason for doing so is apparent from the record . . . the best we can do . . . is to conclude that the district court abused its discretion by not exercising it.") (cleaned up).

As explained above, substituting Mr. Maynard for Mr. Johnson would impose significant prejudice to Endeavor. The surviving evidence from Mr. Johnson's custodial files shows that he possesses (or has destroyed) evidence central to this case, not all of which has been produced, and the spoliation of his devices is detrimental to Defendants' ability to litigate on the merits. Halting the inquiry into Mr. Johnson's spoliation hinders Defendants' ability to collect evidence they could use to oppose Plaintiffs' spoliation motion, support their own spoliation motions, resist class certification on the grounds that Plaintiffs or their counsel are inadequate, or seek summary judgment. *See Gamboa*, 2026 WL 2032989, at *2 ("[D]iscovery related to email preservation and deletion may be relevant to spoliation sanctions or arguments that [the Defendant] may raise regarding the adequacy of Hagens Berman to serve as class counsel. . . . [F]oreclosing discovery altogether [on the issue of lead plaintiff's spoliation] would prejudice [Defendant]'s ability to make [these arguments]"). If the Court is inclined to permit substitution, the Court should mitigate the prejudice to Endeavor by imposing conditions here.

Specifically, the Court should condition Mr. Johnson's withdrawal on his compliance with discovery obligations, including: (i) providing fulsome responses to Defendants' pending interrogatories and requests for admission, including the supplementation Defendants seek in their pending motions to compel; (ii) sitting for his previously noticed deposition; and (iii) producing all responsive documents, including those that Plaintiffs have committed to providing and those at issue in pending motions to compel. Additionally, the Court should ensure that Defendants are permitted to seek sanctions for Mr. Johnson's spoliation. If the Court finds that Mr. Johnson

spoliated evidence, the Court should also fashion a remedy that holds Plaintiffs responsible for Mr. Johnson's spoliation, notwithstanding that he may no longer be a named Plaintiff.

The Court should also implement the following measures to mitigate harm to Defendants upon substitution: first, before any replacement is substituted, including Mr. Maynard, Plaintiffs must certify that the replacement has implemented a litigation hold and preserved all devices, accounts, and messaging applications used since July 2017. Second, Defendants should be permitted to take all necessary discovery from Mr. Maynard. Plaintiffs say that Mr. Maynard is "prepared to promptly respond to written discovery." Mot. at 2. If so, they can have no objection to an order providing that: (i) Mr. Maynard must produce all documents responsive to Defendants' existing requests for production within fourteen days; (ii) Mr. Maynard must respond to other existing discovery, including interrogatories and requests for admission, within fourteen days; (iii) Defendants may issue additional discovery requests to Mr. Maynard; and (iv) Defendants may depose Mr. Maynard after written discovery of him is complete.

Additionally, any discovery from Mr. Maynard in response to pre-existing requests should not count against the limits previously set in this action. As noted by Plaintiffs' Motion, Defendants propounded various requests to pursue discovery from Mr. Johnson, and they structured their discovery plan on the understanding that Mr. Johnson would remain a party to this action. Counting responses to this discovery from Mr. Maynard against the limits set before his involvement in the case would penalize Defendants for a change that Plaintiffs, not Defendants, chose to make, and only after significant discovery had already taken place.

### E. Plaintiffs' Oral Motion for a Stay

At the status conference on November 12, 2026, Plaintiffs orally moved for a stay of discovery as to Mr. Johnson, pending the outcome of this Motion. ECF No. 864 at 50:16–24. Endeavor will respond separately to Plaintiffs' formal Motion for a Protective Order Staying Discovery Directed to Kajan Johnson Pending Resolution of Plaintiffs' Motion to Substitute, ECF No. 867, and for now, simply preserves its position that no stay is warranted solely based on the proposed substitution and reserves all rights.

**IV. CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion. In the alternative, if the Court grants the Motion, it should do so only on the conditions set out in Section III.D.

Dated: November 24, 2026

Respectfully Submitted,

By: s/ *Maaren A. Shah*
MAAREN A. SHAH *(Pro hac vice)*
maarenshah@quinnemanuel.com
ELLISON W. MERKEL *(Pro hac vice)*
ellisonmerkel@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue, 9th Floor
New York, New York 10016
Tel: (212) 849-7000

KRISTIN N. TAHLER *(Pro hac vice)*
kristintahler@quinnemanuel.com
WILLIAM R. SEARS *(Pro hac vice)*
will.sears@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

Rory T. Kay (NSBN 12416)
rkay@mcdonaldcarano.com
Emily M. Dennis (NSBN 16396)
edennis@mcdonaldcarano.com
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Tel: (702) 873-4100

*Attorneys for Defendant Endeavor Group Holdings, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Endeavor's Opposition to Plaintiffs' Motion to Substitute Gray Maynard for Kajan Johnson as a Named Plaintiff and for Leave to File Second Amended Complaint was served on November 24, 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

*/s/ Sam Cleveland*
Sam Cleveland (*Pro hac vice*) of
QUINN EMANUEL URQUHART &
SULLIVAN LLP